**SHER TREMONTE LLP**
Yonatan Y. Jacobs
Erica A. Wolff (admitted *pro hac vice*)
Michael Tremonte (admitted *pro hac vice*)
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
YJacobs@shertremonte.com
EWolff@shertremonte.com
MTremonte@shertremonte.com
*Attorneys for Defendant Sean Combs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIZA GARDNER, | Case No. 24-CV-07729 |
|                Plaintiff, | **Oral Argument Requested** |
|    -against- | Return Date: March 17, 2025 |
| SEAN COMBS, et al. | |
|                Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SEAN COMBS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

**Page(s)**

TABLE OF AUTHORITIES ....................................................................... iii

PRELIMINARY STATEMENT .................................................................1

BACKGROUND ........................................................................................5

LEGAL STANDARD ...............................................................................10

ARGUMENT ............................................................................................12

I.     THE FAC SHOULD BE DISMISSED AGAINST MR. COMBS
FOR LACK OF PERSONAL JURISDICTION ..................................12

     A.    Plaintiff's Allegation that the Tortious Conduct Occurred
in New Jersey Should Not Be Credited ....................................13

     B.    Absent the Allegation that the Tortious Conduct Occurred
in New Jersey, the Court Lacks Personal Jurisdiction Over
Mr. Combs and Therefore Must Dismiss the Case as to
Him ............................................................................................18

II.    PLAINTIFF HAS FAILED TO STATE A MANN ACT
CLAIM ..............................................................................................20

     A.    The Civil Remedy Provisions Upon Which Plaintiff Relies
Do Not Provide a Private Right of Action for Mann Act
Violations ..................................................................................21

     B.    To the Extent the Mann Act Contains a Civil Remedy
Provision, It Does Not Apply to Gardner's Claims .................22

          1.    Gardner Has No Private Right of Action for Mann
Act Violations ................................................................23

          2.    Even if Plaintiff Could Have Brought a Mann Act
Claim,  Any Such Claim Expired Decades Before
She Brought Suit ............................................................25

C.    In Any Event, the Allegations in the FAC Do Not State a
      Claim Against Mr. Combs for a Mann Act Violation
      Pursuant to CAVRA ...................................................................27

III.    TO THE EXTENT THE FAC CAN BE READ TO ASSERT
        CLAIMS FOR VIOLATION OF THE TVPA, SUCH CLAIMS
        FAIL ......................................................................................................31

IV.    PLAINTIFF'S COMMON LAW TORT CLAIMS MUST BE
       DISMISSED WITH PREJUDICE AS TO MR. COMBS...................33

A.    Plaintiff's Claims for Assault, Battery, and NIED Are
      Time-Barred and their Revival Is Unconstitutional as
      Applied to Mr. Combs.................................................................34

B.    The NIED Claim is Insufficiently Pled.....................................39

CONCLUSION .........................................................................................40

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................10

*Barjo v. Cherian*,
  349 F. Supp. 3d 510 (D. Md. 2018)......................................................33

*Basse v. Bank of Am., N.A.*,
  No. 22-03674 (GC) (RLS), 2023 WL 2696627 (D.N.J. Mar. 29, 2023)..............20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................... 10, 32

*Bowen v. Georgetown Univ. Hosp.*,
  488 U.S. 204 (1988) ...............................................................................24

*Bradley v. Chiron Corp.*,
  136 F.3d 1317 (Fed. Cir. 1998)..............................................................13

*Bullock v. Borough of Roselle*,
  Civ. No. 17-13208 (KM), 2018 WL 4179481 (D.N.J. Aug. 31, 2018) ...............34

*Burtch v. Milberg Factors, Inc.*,
  662 F.3d 212 (3d Cir. 2011)...................................................................11

*Carteret Sav. Bank, FA v. Shushan*,
  954 F.2d 141 (3d Cir. 1992)...................................................................11

*Cisneros v. Aragon*,
  485 F.3d 1226 (10th Cir. 2007)..............................................................23

*City of Pittsburgh v. W. Penn Power Co.*,
  147 F.3d 256 (3d Cir. 1998)...................................................................11

*Colliton v. Cravath, Swaine & Moore, LLP*,
  No. 08 CIV 0400 (NRB), 2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008)..... 13, 14

*South. Burl. Cty. N.A.A.C.P. v. Township of Mt. Laurel*,
  67 N.J. 151 (N.J.)..................................................................................36

*Danziger & De Llano, LLP v. Morgan Verkamp LLC*,
948 F.3d 124 (3d Cir. 2020)...................................................................19

*Decker v. Princeton Packet, Inc.*,
116 N.J. 418 (N.J. 1989).......................................................................39

*DeJames v. Magnificence Carriers, Inc.*,
654 F.2d 280 (3d Cir. 1981)..................................................................18

*Ditullio v. Boehm*,
662 F.3d 1091 (9th Cir. 2011)...............................................................33

*Doe v. Roman Catholic Diocese of Jefferson City*,
862 S.W.2d 338 (Mo. 1993) .................................................................38

*Doe v. Schneider*,
Civil Action No. 08-3805, 2013 WL 5429229 n.8 (E.D. Pa. Sept. 30, 2013)......26

*Drew v. Householder*,
Case No. 6:22-cv-3211-MDH, 2023 WL 8789744 (W.D. Mo. Dec. 19, 2023)...33

*E.C. v. Choice Hotels Intl., Inc.*,
No. 2:22-cv-3811, 2024 WL 1142162 (S.D. Ohio Mar. 14, 2024) ......................23

*Express Freight Sys. Inc. v. YMB Enterprises, Inc.*,
No. CV1912001SDWLDW, 2019 WL 7494730 (D.N.J. Dec. 18, 2019) ............11

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009)..................................................................10

*Gause v. Chase Home Fin. LLC*,
No. 09-CV-4886 (JS), 2010 WL 843945 (E.D.N.Y. Mar. 9, 2010)......................13

*Greene v. Woodlawn Unit Sch. Dist. #209*,
No. 22-CV-2727, 2023 WL 6216943 (S.D. Ill. Sept. 25, 2023).................... 25, 26

*IMO Indus., Inc. v. Kiekert AG*,
155 F.3d 254 (3d Cir. 1998)................................................................ 18, 19

*Korotki v. Levenson*,
No. 20-11050, 2012 WL 2650775 (D.N.J. June 28, 2011)...................................11

*Lander v. ABF Freight Sys., Inc.*,
   459 F. App'x 89 (3d Cir. 2012)................................................................24

*Landgraf v. USI Film Prods.*,
   511 U.S. 244 (1994)..........................................................................24

*Liberty Bell Equip. Corp. v. Coastal Tool Supply, LLC*,
   No. 18-3019, 2018 WL 5885455 (E.D. Pa. Nov. 9, 2018)............................ 12, 30

*McCargo v. Camden Cty. Jail*,
   693 F. App'x 164 (3d Cir. 2017)............................................................27

*Mesalic v. Fiberfloat Corp.*,
   897 F.2d 696 (3d Cir. 1990)................................................................18

*Mickel Drilling Partners ex rel. Mickel v. Cabot Oil & Gas Corp.*,
   No. 3:CV-11-0061, 2012 WL 4953081 (M.D. Pa. Oct. 16, 2012).............. passim

*Mitchell v. Roberts*,
   469 P.3d 901 (Utah 2020)..................................................................38

*Nattah v. Bush*,
   770 F. Supp. 2d 193 (D.D.C. 2011)........................................................33

*Oawlawolwaol v. Boy Scouts of Am.*,
   No. 21-cv-4714 (PKC) (JMW), 2021 WL 4355880 n.1 (E.D.N.Y Sept. 24, 2021)
   ..........................................................................................6

*O'Connor v. Sandy Lane Hotel Co., Ltd.*,
   496 F.3d 312 (3d Cir. 2007)................................................................19

*Palm Beach Strategic Income, LP v. Salzman*,
   No. 10-CV-26 (JS)(AKT), 2011 WL 1655575 (E.D.N.Y. May 2, 2011)  13, 14, 16

*Panzino v. Cont'l Can Co.*,
   71 N.J. 298 (N.J. 1976)......................................................................36

*Phillips v. County of Allegheny*,
   515 F.3d 224 (3d Cir. 2008)................................................................10

*Ratha v. Rubicon Resources, LLC*,
   111 F.4th 946 (9th Cir. 2024)..............................................................32

*Rivers v. Roadway Exp., Inc.*,
  511 U.S. 298 (1994)................................................................................24

*Shovah v. Mercure*,
  44 F. Supp. 3d 504 (D. Vt. 2014) ...........................................................26

*Singleton v. Clash*,
  951 F. Supp. 2d 578 (S.D.N.Y. 2013)......................................................26

*State v. Short*,
  131 N.J. 47 (N.J. 1993)............................................................................36

*Twiss v. State Dep't of Treasury*,
  124 N.J. 461 (N.J. 1991)..........................................................................36

*U.S. ex rel. Bogart v. King Pharmaceuticals*,
  410 F. Supp. 2d 404 (E.D. Pa. 2006) .......................................................25

*United States ex re. Lesnik v. ISM Vuze*m *d.o.o., 112 F.4th 816, 821 (9*th Cir.

*United States v. Brand*,
  467 F.3d 179 (2d Cir. 2006)......................................................................28

*United States v. Holland*,
  381 F.3d 80 (2d Cir. 2004) .............................................................. 29, 30

*United States v. Jones*,
  909 F.2d 533 (D.C. Cir. 1990) .................................................................31

*United States v. Kincherlow*,
  88 F.4th 897 (11th Cir. 2023)...................................................................28

*United States v. Marcavage*,
  609 F.3d 264 (3d Cir. 2010)......................................................................35

*United States v. Nitschke*,
  843 F. Supp. 2d 4 (D.D.C. 2011) .............................................................28

*United States v. Robinson*,
  No. CRIM. 05-CR-443, 2007 WL 790013 (M.D. Pa. Mar. 14, 2007)................29

*United States v. Sabatino*,
  943 F.2d 94 (1st Cir. 1991) ......................................................................30

*United States v. Sweet,*
  107 F.4th 944 (10th Cir. 2024) ...............................................................................28

*United States v. Taylor*,
  239 F.3d 994 (9th Cir. 2001)...................................................................................30

*United States v. Thomas*,
  410 F.3d 1235 (10th Cir. 2005)...............................................................................28

*United States v. Vinton*,
  946 F.3d 847 (6th Cir. 2020)...................................................................................28

*Velez v. Sanchez,*
  693 F.3d 308 (2d Cir. 2012)....................................................................................33

*W.S. v. Hildreth,*
  252 N.J. 506 (N.J. 2023).........................................................................................35

*Wallace v. New York City Dep't of Corr.,*
  No. 95-CV-4404, 1996 WL 586797 (E.D.N.Y. Oct. 9, 1996) ..............................13

*Wood v. Wood*,
  No. CV 16-995, 2017 WL 57186 (W.D. Pa. Jan. 5, 2017)...................................22

**Statutes**

18 U.S.C. § 1581 .......................................................................................................31

18 U.S.C. §1595 ............................................................................................... passim

18 U.S.C. § 1591 ................................................................................................. 31, 32

18 U.S.C. § 2251 .......................................................................................................23

18 U.S.C. § 2252 .......................................................................................................23

18 U.S.C. § 2255 ............................................................................................... passim

18 U.S.C. § 2421 ............................................................................................... passim

18 U.S.C. § 2422 ............................................................................................... passim

18 U.S.C. § 2423 ............................................................................................... passim

18 U.S.C. § 2442 ..................................................................................................23

18 U.S.C. § 2443 ..................................................................................................23

18 U.S.C. § 7101 ....................................................................................................3

22 U.S.C. § 7101 ...........................................................................................21, 22

42 U.S.C. § 1981 .................................................................................................24

N.C. Gen. Stat. § 1-17 .......................................................................................37

N.J.S.A. § 2A:14-2 .........................................................................................5, 34

N.J.S.A. § 2A:14-2a .......................................................................................5, 34

N.J.S.A. § 2A:14-2a(a)(1) .............................................................................5, 35

Pub. L. No. 106-386, 114 Stat. 1464 ................................................................21

Pub. L. No. 108-193, 117 Stat. 2875 (2003) ...................................................32

Sections 2423(a) ..........................................................................................29, 30

Utah Code § 78B-2-308(7) ................................................................................38

Rules

Fed. R. Civ. P. 12(b)(2) ................................................................................11, 12

Fed. R. Civ. P. 12(b)(2) and 12(b)(6) ..............................................................1, 2

Federal Rule of Civil Procedure 8(a)(2) ..........................................................32

NY CPLR § 214-g ..........................................................................................6, 37

NY CPLR § 214-j ...................................................................................................6

Rule 12(b)(6) ......................................................................................................13

This memorandum of law is respectfully submitted on behalf of Defendant Sean Combs ("Mr. Combs") in support of his motion under Fed. R. Civ. P. 12(b)(2) and 12(b)(6) for an order dismissing the First Amended Complaint (ECF No. 42) (the "FAC") with prejudice.

## PRELIMINARY STATEMENT

The FAC is the *fourth* attempt by Plaintiff Liza Gardner ("Plaintiff" or "Gardner") to extract payment from Mr. Combs for an encounter that purportedly occurred thirty-four years ago when Gardner alleges she attended a music industry event in New York. The first time Gardner attempted to pursue claims against Mr. Combs was in November 2023, when, following a much-publicized lawsuit against Mr. Combs that was quickly settled, Gardner filed an action in New York, alleging that she had been assaulted in New York City in 1990 when she was eighteen or older. A few months later, Plaintiff amended her pleading, this time alleging she was sixteen in 1990. After being confronted with the dispositive argument that any claims premised on this alleged encounter were time-barred under New York law, Plaintiff sought to withdraw her New York complaint without prejudice, claiming she had just "learned" that the purported misconduct actually occurred in New Jersey (where, it just so happens, the statute of limitations for such claims had not run). Her third attempt to pursue claims against Mr. Combs was thus a lawsuit commenced in New Jersey State court on June 6, 2024, in which

Plaintiff alleged she had been assaulted not in New York, but rather, in New Jersey. *See generally* ECF No. 1-1.  Following Defendants' removal of the New Jersey action to this Court, Plaintiff's counsel threatened to destroy diversity by adding a new defendant—Donald Degrate (a.k.a. Devante Swing) ("Swing")—and changing existing allegations of citizenship.  After facing pushback for such gamesmanship, Plaintiff ultimately did not move to remand and the litigation has remained in federal court.

Plaintiff filed the FAC—her fourth version of the pleading—on October 8, 2024.  ECF No. 42.  The FAC added allegations against a third individual Defendant, Swing, claiming (for the first time across Gardner's many pleadings) that Swing had facilitated the alleged assaults by, among other things, witnessing the conduct and failing to intervene.  Notwithstanding the lengths Plaintiff has travelled to find a foothold for this lawsuit, her fourth pleading fails to state any claims for relief and fails to establish personal jurisdiction over Mr. Combs.  It should therefore be dismissed with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

First, the FAC should be dismissed completely with respect to Mr. Combs for lack of personal jurisdiction.  Plaintiff does not allege that this Court has general jurisdiction over Mr. Combs.  Rather, she hinges personal jurisdiction on the allegation that the tortious conduct happened in New Jersey—contrary to

allegations made in her initial two pleadings filed in New York State Court that the conduct happened in New York.  The Court can and should discredit Plaintiff's belated assertion that the conduct occurred in New Jersey: this assertion, which blatantly contradicts her prior allegations, is a transparent and improper effort by Plaintiff and her counsel to game the judicial system.  Since commencing this litigation in November 2023 in New York, Plaintiff has made a series of supposed "revelations" about significant "facts" at suspiciously convenient junctures—for example, "learning" that the conduct occurred in New Jersey after realizing her action was barred in New York and "learning," just after the action was removed to this Court on diversity grounds, that Defendant Aaron Hall ("Hall") and a potential new defendant shared citizenship with Plaintiff.  The Court should not reward such gamesmanship and should instead dismiss the action against Mr. Combs for want of jurisdiction as the only basis for personal jurisdiction is manufactured.

Second, Plaintiff's claim for violation of the Mann Act fails for at least three reasons.  First, the statutes pursuant to which she purports to sue do not provide a private right of action for a violation of the Mann Act.  Instead, she cites two other federal statutes—18 U.S.C. §§ 1595 and 7101 *et seq.*—neither of which encompasses a private cause of action for a Mann Act violation.  Second, although federal law presently provides a private cause of action for a Mann Act violation pursuant to 18 U.S.C. § 2255, the Child Abuse Victim's Rights Act ("CAVRA"), it

does not support Plaintiff's decades-old claim.  In 1990, CAVRA, which provides minors with private causes of action for violations of certain federal criminal laws proscribing sexual misconduct, did not apply to Mann Act violations and carried a six-year statute of limitations.  Though subsequent amendments have expanded CAVRA's scope and statute of limitations, under settled law, those amendments do not apply retroactively to Gardner's allegations.  Third, even if the Court held that Plaintiff could take advantage of CAVRA (which she cannot), her claim would fail because she has not and cannot plead the elements of a violation of 18 U.S.C. §§ 2421, 2422(b), or 2423(a) of the Mann Act.

Third, to the extent Plaintiff's pleading can be read to assert a claim pursuant to the Trafficking Victims Protection Act (the "TVPA"), that claim also fails. Although 18 U.S.C. §1595(a) provides a civil remedy for TVPA violations and other penal code provisions within Chapter 77 of Title 18 of the U.S. Code, Gardner has not alleged that Mr. Combs violated any statutes within that chapter, let alone pled facts satisfying the elements of any such statute.  Moreover, even if she had, the civil remedy would not be available to her because it was enacted in 2003 (thirteen years after the alleged encounter) and does not apply retroactively.

Finally, Plaintiff's claims for battery, assault and negligent infliction of emotional distress ("NIED") must also be dismissed.  As a threshold matter, these claims are time-barred by New Jersey's two-year statute of limitations for such

torts.  *See* N.J.S.A. § 2A:14-2.  And a 2019 amendment to the New Jersey Child

Sexual Abuse Act, N.J.S.A. § 2A:14-2a (the "CSAA Amendment"), which

dramatically expands the statute of limitations for claims based on injuries

resulting from sexual misconduct, is unconstitutional as applied and therefore does

not resuscitate Plaintiff's claims.  As relevant here, the CSAA Amendment extends

the statute of limitations for individuals who suffered injuries as a result of sexual

misconduct while they were minors until they are fifty-five years old, including by

opening up time-barred claims for purported victims who have not yet reached the

age of fifty-five.  N.J.S.A. § 2A:14-2a(a)(1).  This expansive retroactive extension

of the statute of limitations violates fundamental Due Process Rights under the

New Jersey Constitution, at least as applied here where already-present risks of

faded memories and ulterior motives have been exacerbated by Plaintiff's repeated

attempts to change her narrative to obtain litigation advantages.

Finally, Plaintiff's NIED claim should be dismissed for the additional reason

that the FAC fails to plead the requisite elements of that tort.  For the foregoing and

following reasons, the Court should dismiss all claims against Mr. Combs with

prejudice.

## **BACKGROUND**

In May 2022, the New York State legislature passed the Adult Survivors Act

("NY ASA"), creating a two-year lookback window in which alleged victims of

adult sexual assault could temporarily file previously time-barred claims. NY CPLR § 214-j.  A similar revival window for alleged child victims in New York, the Child Victims Act of 2019 ("NY CVA") (NY CPLR § 214-g), had previously closed on August 14, 2021.  *Oawlawolwaol v. Boy Scouts of Am.*, No. 21-cv-4714 (PKC) (JMW), 2021 WL 4355880, at *1 n.1 (E.D.N.Y Sept. 24, 2021).  The NY ASA's lookback window ran from November 24, 2022, to November 24, 2023.  On November 23, 2023—one day before the NY ASA's lookback window closed, and six days after the settlement of a lawsuit against Mr. Combs by an ex-girlfriend garnered substantial media attention—Plaintiff filed a lawsuit in New York State Court asserting claims for battery, assault, and NIED against Mr. Combs and others (the "First Complaint").  Jacobs Decl., Ex. A.  In that first complaint, which Plaintiff's counsel signed on penalty of perjury, Plaintiff alleged, among other things: (1) she had been "invited to NYC by close friends who were members of a chart-topping record group;" (2) Defendant Hall lived in New York City at the relevant time; (3) Mr. Combs and Hall sexually assaulted her, with assistance from certain corporate entities, at Hall's apartment *in New York* in 1990; and (4) at that time, Plaintiff was of "statutory age or older."  *Id.* ¶¶ 2, 6, 12-13, 15-21.  Plaintiff's First Complaint does not mention New Jersey.  On March 12, 2024, Gardner amended her pleading and alleged – contrary to her First Complaint – that she was a minor at the time of the alleged misconduct in 1990.  Jacobs Decl., Ex. B ¶ 17

6

(the "Second Complaint"). Again, this pleading made no reference to New Jersey. Rather, it reasserted that all of the relevant conduct occurred in New York City. *See id.* ¶¶ 6-8, 17-18, 20, 23-24.

On April 11, 2024, Defendant UMG Recordings, Inc. ("UMGR") moved to dismiss Plaintiff's Second Complaint arguing, among other things, that Gardner's claims were time-barred because they were not covered by the NY ASA and did not fall within the CVA's revival window. Jacobs Decl., Ex. C at 6-10. Faced with this dispositive argument, on May 4, 2024, Plaintiff sought to voluntarily dismiss her New York State case, asserting she had just "received information" that the alleged rape occurred in New Jersey, not New York. *Id.,* Ex. D. Conveniently, New Jersey's statute of limitations for such claims had not run.

Following dismissal of her New York action, Plaintiff re-filed her suit in New Jersey State court (the "Third Complaint"). ECF No. 1-1. This time, Gardner newly alleged (contrary to the allegations in her First and Second Complaints) that Hall lived in New Jersey at the relevant time and that the alleged sexual misconduct occurred at his apartment in New Jersey. This version of Plaintiff's pleading included eight causes of action, three of which—battery, assault/sexual assault, and NIED—named Mr. Combs. *Id.* On July 12, 2024, UMGR removed the New Jersey action to this Court, on diversity grounds. ECF Nos. 1, 7. Plaintiff's counsel responded to the notice of removal by positing for the very first

7

time (and contrary to Plaintiff's allegations in her First and Second Complaints (Jacobs Decl., Ex. A ¶ 6; *id.*, Ex. B ¶ 7)) that Hall was a citizen of North Carolina (where Plaintiff resided); he threatened to seek remand on the basis that diversity was therefore lacking.  ECF No. 36-1.  Counsel also threatened to add as a defendant Swing, whom he claimed – without support – resided in North Carolina. *Id.*

Plaintiff's counsel never proffered any support for his contentions that Hall and/or Swing were domiciled in North Carolina, and ultimately, he abandoned his threats to seek remand.  On October 8, 2024, Plaintiff filed the FAC—her fourth pleading to date.  ECF No. 42.  The FAC does not allege that Hall is (or ever was) a citizen of North Carolina.  *Id.* ¶¶ 9-10.  It alleges Hall "was at all relevant times a resident of and domiciled in" New Jersey and "currently resides in one of the following States: Georgia, Ohio, California, or Florida."  *Id.*  Gardner makes these allegations notwithstanding her contrary allegations in two prior pleadings that Hall "was at all relevant times a resident of and domiciled in the State of New York."  Jacobs Decl., Ex. A ¶ 6; *id.*, Ex. B ¶ 7.  Although the FAC adds Swing as a defendant, it likewise does not plead he is a citizen of North Carolina.  The FAC also includes various corporate defendants, including UMGR.

In its current iteration, Plaintiff's pleading alleges that in 1990, when she was sixteen years old, she "was invited to New Jersey by close friends," and

8

"Dalvin DeGrate and DeVante Swing[,] and other members of the group Jodeci."
FAC ¶¶ 3, 26.  She alleges that she and her friend Monica Case attended an event
at "the end of summer into the fall of 1990" at the "New York City offices" of
corporate defendant MCA, Inc., where they "were provided with a lot of alcohol"
and marijuana.  *Id.* ¶¶ 34-36, 38.  Plaintiff alleges she "attended dinner with
members of Jodeci, Combs, and Hall" and that "Combs and Hall were very
flirtatious and handsy" with her and her friend.  *Id.* ¶ 37.  Plaintiff alleges that,
"Hall invited" Gardner and others to travel to New Jersey that night.  *Id.* ¶ 141.
Elsewhere in her complaint, Gardner alleges that both Hall and Mr. Combs
purportedly extended the invitation to Hall's home.  *Id.* ¶ 41.  She alleges that the
corporate defendants "transported [Plaintiff] to the home of Hall through cabs or
private cars from New York to New Jersey."  *Id.*; *see also id.* ¶¶ 36, 44, 141.
Thereafter the FAC alleges that, "[w]hile at Hall's apartment . . . , Ms. Gardner was
offered more alcohol and was physically forced into having sex with Combs
against her will," while defendant "Swing was in the room."  *Id.* ¶¶ 47, 49.  This is
the *first* mention, across all four of Plaintiff's pleadings, that Swing was present at
the afterparty, let alone that he witnessed the alleged sexual misconduct.  Plaintiff
did not mention Swing's name at all in her First Complaint.  None of her prior
pleadings included any allegations that he witnessed an alleged rape.  That

9

allegation surfaced only after Plaintiff's counsel threatened to add Swing as a defendant in an attempt to destroy diversity jurisdiction.

Gardner further claims that after her alleged encounter with Mr. Combs, Hall forced Plaintiff to have sex with him. *Id.* ¶ 51. Finally, Plaintiff alleges that the following day, Mr. Combs "came to the home where Ms. Gardner and her friends were staying" and "assault[ed] and chok[ed her][.]" *Id.* ¶ 56. Based on these allegations, Plaintiff asserts four claims against Mr. Combs: battery, assault/sexual assault, NIED, and violation of the Mann Act. *Id.* ¶¶ 108-38, 200-13. She brings these and other claims against the other defendants.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). On a Rule 12(b)(6) motion, the court must accept all well-pleaded allegations as true, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and draw all reasonable inferences from well-pleaded facts in the plaintiff's favor. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). However, allegations that

10

are inherently not credible, as well as legal conclusions are not entitled to the presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011); *Mickel Drilling Partners ex rel. Mickel v. Cabot Oil & Gas Corp.*, No. 3:CV-11-0061, 2012 WL 4953081, at *5-6 (M.D. Pa. Oct. 16, 2012).   On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), the court must apply the same standard to the allegations. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

On a motion to dismiss, a court may consider matters of public record, *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998), including state court filings and prior pleadings. *Korotki v. Levenson*, No. 20-11050, 2012 WL 2650775, at *3 (D.N.J. June 28, 2011).  In deciding a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), "the court may consider sworn affidavits or other documents in its jurisdictional analysis." *Express Freight Sys. Inc. v. YMB Enterprises, Inc.*, No. CV1912001SDWLDW, 2019 WL 7494730, at *2 (D.N.J. Dec. 18, 2019), *report and recommendation adopted sub nom. Express Freight Sys., Inc. v. Ymp Enterprises, Inc.*, No. 19-12001 (SDW)(LDW), 2020 WL 70954 (D.N.J. Jan. 6, 2020).

## **ARGUMENT**

## I.   **THE FAC SHOULD BE DISMISSED AGAINST MR. COMBS FOR LACK OF PERSONAL JURISDICTION**

The entire FAC should be dismissed as to Mr. Combs, pursuant to Fed. R. Civ. P. 12(b)(2) because this Court lacks personal jurisdiction over him.  Plaintiff does not allege that Mr. Combs is domiciled in the state of New Jersey (nor could she).  *See* FAC ¶ 8 (alleging Mr. Combs "was at all relevant times a resident of and domiciled in the State of New York.").  Rather, the sole basis upon which Plaintiff asserts jurisdiction over Mr. Combs is her belated and contradicted allegation that the purported tortious conduct happened in New Jersey rather than New York[1]—a change she made in a transparent effort to find a forum where her claim may be deemed timely.  Consistent with other courts that have declined to reward such gamesmanship, this Court should not accept as true these allegations that flat-out contradict those in Gardner's original pleadings filed in New York State Court— and should dismiss the action in its entirety for lack of jurisdiction.

---

[1]     The FAC also includes a vague, group pleading that "individual defendants possessed real estate in New Jersey."  FAC ¶ 16(d).  This ambiguous allegation cannot be construed as alleging that Mr. Combs possessed real estate in New Jersey (he did not) because it is contradicted by numerous other allegations that Mr. Combs resided in New York and that the premises relevant to Plaintiff's claim was occupied by Defendant Hall, *see, e.g.*, *id.* ¶¶ 8, 10, 41.  *See, e.g.*, *Liberty Bell Equip. Corp. v. Coastal Tool Supply, LLC*, No. 18-3019, 2018 WL 5885455, at *3 (E.D. Pa. Nov. 9, 2018) (court need not accept as true vague or conclusory allegations, particularly where contradicted by facts alleged).

A.    **Plaintiff's Allegation that the Tortious Conduct Occurred in New Jersey Should Not Be Credited**

Although typically a court must accept a plaintiff's allegations as true on a motion to dismiss, a court should not do so where, as here, material facts alleged in an amended pleading directly contradict those made repeatedly in prior pleadings. Numerous courts, including the Middle District of Pennsylvania, the Federal Circuit Court, and within the Second Circuit have addressed this precise issue and held that a court need not unequivocally credit allegations in an amended pleading under circumstances akin to those involved here.  *See Mickel Drilling*, 2012 WL 4953081, at *5-6 (citing *Palm Beach Strategic Income, LP v. Salzman*, No. 10-CV-26 (JS)(AKT), 2011 WL 1655575, at *5 (E.D.N.Y. May 2, 2011), *aff'd*, 457 F. App'x 40 (2d Cir. 2012); *Wallace v. New York City Dep't of Corr.*, No. 95-CV-4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996); *Colliton v. Cravath, Swaine & Moore, LLP*, No. 08 CIV 0400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x 535 (2d Cir. 2009); *Gause v. Chase Home Fin. LLC*, No. 09-CV-4886 (JS), 2010 WL 843945, at *2 (E.D.N.Y. Mar. 9, 2010); *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1325-26 (Fed. Cir. 1998)).  Notwithstanding that "in a typical case, a prior inconsistent pleading should not trump the Court's obligation under Rule 12(b)(6) to accept a complaint's allegations as true," these courts have held that "a district court has no obligation to accept as true an amended complaint's allegations, if they directly contradict the facts set forth in [the]

13

original complaint."[2]  *Palm Beach*, 2011 WL 1655575, at *5-6 (citations and internal quotation marks omitted).

In determining whether to credit contradictory amended allegations, courts consider the following: (1) the amount of time between the original pleading and the amended pleading; (2) the number of times the plaintiff asserted the initial allegation; (3) the rationale (if any) for the change; (4) whether the plaintiff credibly learned the "new" or "different" information when it claims to have; (5) whether the plaintiff is represented by counsel; and (6) whether the plaintiff engaged in prior conduct indicating a lack of trustworthiness.  *See Mickel Drilling*, 2012 WL 4953081, at *7; *Palm Beach*, 2011 WL 1655575, at *5-6.  In *Mickel Drilling* and *Palm Beach*, the plaintiffs initially asserted breach of contract claims premised on one contract, but later amended the pleadings to allege that, contrary to their initial pleading, an entirely different contract controlled.  *Mickel Drilling*, 2012 WL 4953081, at *1-3; *Palm Beach*, 2011 WL 1655575, at *1-4.  Applying the foregoing factors, those courts held that the plaintiffs' amendments—which materially altered the factual bases for their claims—should not be credited.  *Id.* Here, this Court should reach the same conclusion and decline to credit Gardner's

---

[2]    At least one court has held that "dubious and contradictory factual allegations" in an amended complaint can subject a party to Rule 11 sanctions. *Colliton*, 2008 WL 4386764, at *14.

belated allegations that the tortious conduct happened in New Jersey in light of her prior inconsistent pleadings that it happened in New York.

First, Plaintiff pressed her allegation that the alleged sexual misconduct occurred in New York City for nearly six months—that is, right up until the time she was faced with the fatal argument that her claims were time-barred under New York law.  Second, over the course of those six months, Plaintiff did not merely assert the allegation on one occasion.  Rather, she made the allegation in the First Complaint, filed in November 2023, and then she repeated it when she amended her complaint in March 2024.  *See, e.g.*, Jacobs Decl., Ex. A ¶¶ 6, 13-14, 16-19, 21; *id*., Ex. B ¶¶ 7, 8, 17-18, 29-30, 32-34, 36.

Next, Plaintiff's counsel did not offer a credible explanation for the sudden, fundamental change in Plaintiff's allegations.  On May 4, 2024, a few weeks after receiving a motion to dismiss identifying the fatal deficiency in Gardner's claim under New York law, Plaintiff's counsel wrote to the presiding New York Supreme Court justice, claiming that he and Plaintiff had "in the last 72 hours" "received information from several [unidentified] witnesses of a former employee of . . . Uptown Records, and a Bad Boy Records executive" that after Plaintiff "went to dinner in New York City" she "was taken to New Jersey, where the rape occurred" and where "Hall, Jodeci, and other artists lived[.]"  *Id*., Ex. D at 1.  Plaintiff's counsel did not explain the circumstances under which these purported witnesses

15

allegedly came forward, nor did he explain why he failed to uncover that Hall and Jodeci purportedly lived in New Jersey, and that the alleged rapes purportedly occurred in New Jersey when he investigated Gardner's claim prior to filing (an investigation he presumably took seriously as he personally verified the First Complaint). That Plaintiff had this epiphany just weeks after learning her claim was time-barred in New York and after her counsel had *sworn under penalty of perjury* that Hall and the members of Jodeci (described as Plaintiff's "close friends") lived in New York is, to put it charitably, not credible. The purported revelation is especially suspicious considering that in the First Complaint Plaintiff stated that "[r]ecently," *i.e.*, not long before November 23, 2023, "several members of [Jodeci] have confirmed Ms. Gardner's claims in this Complaint." *Id.*, Ex. A ¶ 13 n.1. It is patently unbelievable that in November of 2023 "several" Jodeci members would think that they lived in New York and attended an afterparty at Hall's apartment in New York, but would be proven wrong half a year later by unnamed employees of Uptown Records and Bad Boy Records.

Moreover, "Plaintiff[ is], and ha[s] been since the inception of this litigation, represented by counsel. Thus, [her] pleadings are not entitled to any special leniency afforded to *pro se* litigants." *Mickel Drilling*, 2012 WL 4953081, at *7; *see also Palm Beach*, 2011 WL 1655575, at *6.

16

Finally, Plaintiff and counsel's history of dubious conduct in this litigation further weighs against crediting her late-stage amendments.  Throughout this case, Plaintiff and her counsel have made a series of unsupported and inconsistent factual and legal contentions, each transparently designed to obtain a litigation advantage, garner media attention, and/or extract a settlement from Mr. Combs. First, Plaintiff, in a complaint verified by her attorney, pled she was an adult in 1990 when the allege assault occurred; then about four months later she alleged she was 16 years old in that same year.  Second, upon realizing that Plaintiff's claims were time-barred in New York, Plaintiff withdrew her New York action, and then re-filed in New Jersey on a different set of facts (ECF No. 1-1).  Third, after the New Jersey action was removed to federal court, Plaintiff's counsel contended, contrary to the allegations made in *three different pleadings*, that Hall lived in North Carolina, the same state as Plaintiff (which, if true, would destroy diversity). And (presumably in case that contention proved untenable), Plaintiff's counsel further threatened to add a new defendant (Swing) whom he claimed just so happened to be a North Carolina citizen as well.  ECF No. 36-1.  Notwithstanding these contentions, Plaintiff's counsel never proffered evidence that either of these individuals lived in North Carolina, never moved for remand, and ultimately filed another amended complaint that did *not* allege either Hall or Swing were citizens of North Carolina.  *See* FAC ¶¶ 9-11.  For all of these reasons, this case qualifies as

17

one of the "rare cases" in which there is no "good reason" for the "contradictory" allegations in Plaintiff's narrative, and those changes should not be accepted as true. *Mickel Drilling*, 2012 WL 4953081, at *6.

> **B.     Absent the Allegation that the Tortious Conduct Occurred in New Jersey, the Court Lacks Personal Jurisdiction Over Mr. Combs and Therefore Must Dismiss the Case as to Him**

The only basis on which this Court has personal jurisdiction over Mr. Combs is a fiction: Plaintiff's false allegation that she was in New Jersey in 1990 with Mr. Combs. Without this fabrication, the Court lacks jurisdiction and must dismiss the FAC as to Mr. Combs.

"[T]o exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry. First, the court must apply the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction; then, the court must apply the precepts of the Due Process Clause of the Constitution." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998). In New Jersey, this inquiry is collapsed because New Jersey courts look to federal law for purposes of personal jurisdiction. *See DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 284 (3d Cir. 1981); *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 698 n.5 (3d Cir. 1990). As relevant here, specific jurisdiction allows a court to exercise personal jurisdiction over a non-resident defendant, like Mr. Combs, when: (1) the defendant purposefully avails himself of the privilege of

conducting activities within the forum; (2) the litigation arises out of or relates to at least one of those activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007). All three elements must be met to establish personal jurisdiction. *Id.* When an intentional tort is alleged, the court must apply "a slightly refined version of" that test, known as the *Calder* effects test, pursuant to which a plaintiff must show that (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in New Jersey; and (3) the defendant intentionally aimed his alleged tortious conduct at New Jersey making New Jersey the focal point of the tortious activity. *See id.* at 317 n.2; *IMO Indus.*, 155 F.3d at 265-66.

Once the Court discredits Plaintiff's inconsistent and unreliable allegation that she and Mr. Combs were in New Jersey on the night in question, the FAC is devoid entirely of allegations that Mr. Combs partook in any activity in or directed any conduct at New Jersey, let alone conduct giving rise to Gardner's claims. Under such circumstances, this Court's exercise of jurisdiction over Mr. Combs would not be fair or just. Consequently, Plaintiff cannot satisfy the requirements of personal jurisdiction as to Mr. Combs, and the FAC must be dismissed as to him completely. *See e.g.*, *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020) (court lacked personal jurisdiction over defendant

where defendant was not domiciled in the forum and did not direct suit-related

conduct to the forum); *Basse v. Bank of Am., N.A.*, No. 22-03674 (GC) (RLS),

2023 WL 2696627, at *3-5 (D.N.J. Mar. 29, 2023) (same).

## II.    PLAINTIFF HAS FAILED TO STATE A MANN ACT CLAIM

In her Tenth Cause of Action, Plaintiff purports to assert a claim against

Mr. Combs for a Mann Act violation.  This claim must be dismissed because the

Mann Act does not provide a private right of action for conduct alleged to have

occurred in 1990, and even if it did, Plaintiff has not pled and cannot plead the

requisite elements.  Plaintiff's attempt to plead otherwise fails for at least three

reasons.  First, Plaintiff appears to rely upon 18 U.S.C. § 1595(a) as the basis for

her purported private right of action under the Mann Act, but that statutory

provision does not provide a private right of action under the Mann Act at all (it

pertains to an entirely different set of federal laws—laws for which Plaintiff does

not and could not assert a cause of action).  Indeed, at the time of the alleged

misconduct in question there was no private right of action for violation of the

Mann Act.  Second, to the extent subsequent statutory amendments (which Plaintiff

fails to plead) created a private right of action for Mann Act violations and/or

removed the statute of limitations for any such claims, those amendments are not

retroactive and thus do not apply to conduct that allegedly occurred years before

their passage.  Finally, even if Plaintiff were permitted to bring a private cause of

action for violation of the Mann Act premised on conduct that allegedly occurred 1990 (and she cannot), Plaintiff could not adequately plead the necessary elements for such a claim.  For all these reasons, Plaintiff's Mann Act claim must be dismissed with prejudice.

### A.    The Civil Remedy Provisions Upon Which Plaintiff Relies Do Not Provide a Private Right of Action for Mann Act Violations

Plaintiff's Tenth Cause of Action purports to bring a claim for violation of the Mann Act, 18 U.S.C. §§ 2421, 2422(b), and 2423(a).  FAC at p. 45, title of Tenth Cause of Action (titled "Mann Act Violations").  Read in the light most favorable to Plaintiff, Gardner appears to assert that she has a private right of action for the alleged violation of the foregoing statutory provisions pursuant to 22 U.S.C. § 7101, *et seq.* and 18 U.S.C. § 1595(a).  *See id.* ¶¶ 205, 207.  However, neither statute establishes a private right of action for the Mann Act.

Both 22 U.S.C. § 7101 *et seq.* and 18 U.S.C. § 1595(a) ("Section 1595(a)") relate to an entirely different set of federal laws, including the Trafficking Victims Protection Act of 2000 (the "TVPA")[3], *United States ex re. Lesnik v. ISM Vuzem d.o.o.*, 112 F.4th 816, 821 (9th Cir. 2024), a law under which Plaintiff does not (and cannot)[4] assert a claim.  22 U.S.C. § 7101 *et seq.* itself does not include a civil

---

[3]    The TVPA, Pub. L. No. 106-386, 114 Stat. 1464, is a statutory scheme that is "codified as amended in scattered titles of the U.S.C.," *id.*, including Section 1595.

[4]    *See infra* Section III.

remedy.  Rather, the corresponding civil remedy is codified in Section 1595(a), which does not cover the Mann Act.  Section 1595(a) provides that "[a]n individual who is a victim of a violation of *this chapter* may bring a civil action against the perpetrator . . . ."  18 U.S.C. § 1595(a) (emphasis added).  As used therein, "this chapter" refers to Chapter 77 of Title 18 of the U.S. Code (*i.e.*, the Chapter in which Section 1595(a) can be found), which includes various provisions of the TVPA.  The Mann Act is in Chapter 117, not Chapter 77.  Thus, Section 1595(a), on its face, provides no private right of action for a Mann Act violation.  *See, e.g.*, *Wood v. Wood*, No. CV 16-995, 2017 WL 57186, at *8 (W.D. Pa. Jan. 5, 2017) (explaining that Section 1595(a) does not provide a civil remedy for a Mann Act violation because they belong to different chapters).  Because neither Section 1595(a) nor 22 U.S.C. § 7101 *et seq.* establishes a private cause of action for a Mann Act violation, the Court should dismiss the Tenth Cause of Action.

**B.    To the Extent the Mann Act Contains a Civil Remedy Provision, It Does Not Apply to Gardner's Claims**

As explained, the FAC fails to identify any statutory authority authorizing civil claims for Mann Act violations and instead inexplicably cites provisions of different federal laws under which Plaintiff asserts no cause of action.  While 18 U.S.C. § 2255, the Child Abuse Victim's Rights Act ("CAVRA") (which Plaintiff fails to cite), does provide a private right of action for Mann Act claims involving

22

minors, for the reasons set forth *infra*, CAVRA does not apply to Gardner's claims.

There are at least two reasons why.

        1.    <u>Gardner Has No Private Right of Action for Mann Act Violations</u>

First, Plaintiff cannot employ CAVRA to recover on a purported Mann Act

violation that occurred in 1990 because CAVRA did not apply to the Mann Act at

that time. CAVRA provides a private right of action for alleged victims of certain

sexual misconduct who were minors at the time of the misconduct. *See* 18 U.S.C.

§ 2255. Congress has revised CAVRA many times, often altering the statute of

limitations and the applicable underlying offenses. *See E.C. v. Choice Hotels Intl.,*

*Inc.*, No. 2:22-cv-3811, 2024 WL 1142162, at *2 (S.D. Ohio Mar. 14, 2024). In

1990, the time of the alleged sexual misconduct, CAVRA applied only to violations

of 18 U.S.C. §§ 2251 and 2252—neither of which comes within the Mann Act—

and it was governed by a six-year statute of limitations. *Id.* § 2255 (1986); *see also*

*Cisneros v. Aragon*, 485 F.3d 1226, n.3 (10th Cir. 2007) ("[T]he version [of 18

U.S.C. § 2255] in effect from enactment in October 1986 until the 1998

amendment referred only to violations of §§ 2251 and 2252."). Accordingly, at the

time in question, neither CAVRA nor any other statute provided a private right of

action for violations of 18 U.S.C. §§ 2421, 2442, 2443.

Although CAVRA was amended in 1998 to provide a private right of action

for alleged child victims of the Mann Act, 18 U.S.C. § 2255(a) (1998), that

amendment does not supply Gardner with a civil Mann Act remedy because it is not retroactive.  It is well settled that there is a "presumption against retroactive legislation [that] is deeply rooted in our jurisprudence," which arises because "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly[.]" *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994).  Consequently, "congressional enactments . . . will not be construed to have retroactive effect unless their language requires this result."  *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).  Because the 1998 Amendment to CAVRA substantially expanded liability pursuant to CAVRA to include Mann Act violations (among others), it triggers a presumption against retroactivity.  *Landgraf*, 511 U.S. at 280.  Nothing in the 1998 amendment to CAVRA, or its legislative history, evinces an intent for it to apply retroactively.  Accordingly, it cannot be applied to cover Plaintiff's claims.  *See, e.g.*, *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 302-14 (1994) (holding amendment to 42 U.S.C. § 1981 could not be applied retroactively because it enlarged the category of conduct subject to liability); *Lander v. ABF Freight Sys., Inc.*, 459 F. App'x 89, 92 (3d Cir. 2012) (holding that amendments made by the ADA Amendments Act did not have retroactive effect because that statute "does not expressly prescribe that it is retroactively applicable" and such application "would have the disfavored effect of expanding . . . liability for past

conduct"); *U.S. ex rel. Bogart v. King Pharmaceuticals*, 410 F. Supp. 2d 404, 408

(E.D. Pa. 2006) (holding new statute, the New Mexico False Claims Act, did not

apply to causes of action that accrued before its enactment).

### 2.    Even if Plaintiff Could Have Brought a Mann Act Claim, Any Such Claim Expired Decades Before She Brought Suit

Even if CAVRA had applied to Mann Act violations in 1990 (and it

positively did not), any such claim based on Plaintiff's allegations would have

expired *twenty-eight years* ago, in 1996, at the conclusion of the six-year statute of

limitations period then in effect.  *See* 18 U.S.C. § 2255 (1986).[5]  Because the claim

would have expired prior to the 1998 amendment that added the Mann Act to

CAVRA's purview, it would be irrelevant if that amendment applied retroactively

(which it does not) because the amendment does not authorize revival of expired

claims.  *See Greene v. Woodlawn Unit Sch. Dist. #209*, No. 22-CV-2727, 2023 WL

6216943, at *11 (S.D. Ill. Sept. 25, 2023) (explaining that certain CAVRA

"amendments are irrelevant if Plaintiff's claim expired before" those amendments

were enacted).

Moreover, while CAVRA's statute of limitations was abrogated entirely by a

2022 amendment, 18 U.S.C. § 2255(b) ("There shall be no time limit for the filing

of a complaint commencing an action under this section."), that amendment does

---

[5]    The 1998 amendment to CAVRA maintained the six-year statute of limitations.  18 U.S.C. § 2255(b) (1998).

not save Plaintiff's purported claim (even if she had one) because it is not retroactive. "[A]n increased statute of limitations" cannot "be used in order to revive an untimely claim 'absent clear congressional intent to the contrary.'" *Doe v. Schneider*, Civil Action No. 08-3805, 2013 WL 5429229, at *5 n.8 (E.D. Pa. Sept. 30, 2013). Here, there is no such intent. To the contrary, when Congress amended CAVRA in September 2022 to eliminate the statute of limitations entirely, it explicitly limited the amendment's applicability to claims that were not time-barred as of the date of the amendment's enactment on September 16, 2022: Section 3 of the Eliminating Limits to Justice Act, which addresses the applicability of the 2022 CAVRA amendment, provides that the amendment applies to "any claim or action that" as of the date of its enactment on September 16, 2022, "would not have been barred" under 18 U.S.C. § 2255(b) "as it read on the day before the date of the enactment of this act[.]" *See Greene*, 2023 WL 6216943, at *3 n.3 (quoting Section 3 of the Eliminating Limits to Justice Act); *see also Singleton v. Clash*, 951 F. Supp. 2d 578, 592 (S.D.N.Y. 2013), (holding 2013 CAVRA amendment extending statute of limitations from six to ten years should not apply retroactively because "Section 2255 is silent as to retroactivity and there is no evidence of congressional intent to apply retroactively to revive" previously time-barred claims); *Shovah v. Mercure*, 44 F. Supp. 3d 504, 508 n.5 (D. Vt. 2014) (same). Thus, even if Plaintiff had had a Mann Act claim (she did not), it would

unquestionably be time-barred.  *See McCargo v. Camden Cty. Jail*, 693 F. App'x 164, 166 (3d Cir. 2017) (affirming dismissal with prejudice where "amendment of the complaint would be futile because the statute of limitations clearly had expired" at the time of filing).

### C.    In Any Event, the Allegations in the FAC Do Not State a Claim Against Mr. Combs for a Mann Act Violation Pursuant to CAVRA

Even if Gardner had a private right of action under the Mann Act, she could not state such a claim.  Plaintiff alleges that the Defendants, including Mr. Combs, violated three separate sections of the Mann Act: 18 U.S.C. §§ 2421(a), 2422(b), and 2423(a).  *See* FAC Tenth Cause of Action.  The FAC does not (and cannot) plead the requisite elements of any of those subsections.

First, Plaintiff has not and cannot plead a claim for violation of 18 U.S.C. § 2422(b) because she does not allege that Mr. Combs used "the mail or any facility or means of interstate or foreign commerce" to "persuade, induce, entice, or coerce" Plaintiff to engage in criminal sexual conduct.  Section 2422(b) provides the following:

> Whoever, **using the mail or any facility or means of interstate or foreign commerce**, or within the special maritime and territorial jurisdiction of the United States **knowingly persuades, induces, entices, or coerces any individual** who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

*Id.* (emphasis added).  "To establish enticement under § 2422(b), the [plaintiff] must prove four elements: that an individual (i) used a facility of interstate commerce; (ii) to knowingly persuade, induce, or entice, or to attempt to persuade, induce or entice; (iii) any individual who is younger than eighteen-years old; (iv) to engage in sexual activity of a criminal nature."  *United States v. Brand*, 467 F.3d 179, 201-02 (2d Cir. 2006), *abrogated on other grounds by United States v. Cabrera*, 13 F.4th 140 (2d Cir. 2021); *accord United States v. Kincherlow*, 88 F.4th 897, 903 (11th Cir. 2023); *United States v. Vinton*, 946 F.3d 847, 852 (6th Cir. 2020); *United States v. Thomas*, 410 F.3d 1235, 1245 (10th Cir. 2005).  "The core of criminality for an 18 U.S.C. § 2422(b) offense is not the performance of the sexual acts themselves *but rather persuasion and the attempt to persuade*."  *United States v. Sweet*, 107 F.4th 944, 959 (10th Cir. 2024) (emphasis added) (citation and internal quotation marks omitted).  "The intent to persuade, moreover, must be an intent to persuade *using a means of interstate commerce*."  *United States v. Nitschke*, 843 F. Supp. 2d 4, 11 (D.D.C. 2011) (emphasis added) (holding intent to persuade not satisfied where "there are no facts that prove—and the government does not even argue—that Defendant intended to directly persuade a minor through a means of interstate commerce" (emphasis omitted)).  The FAC is devoid of any allegations that Mr. Combs used any facility or means of interstate commerce to persuade, induce, or entice any alleged sexual misconduct.  *See generally* FAC.

Second, Plaintiff cannot plead that Mr. Combs violated Sections 2421(a) or 2423(a) of the Mann Act because she does not allege any facts giving rise to an inference that he transported her across state lines, let alone that he did so with the intent of committing criminal sexual misconduct.  Sections 2423(a) provides:

> A person **who knowingly transports** an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, **with intent that the individual engage** in prostitution, or **in any sexual activity for which any person can be charged with a criminal offense**, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. 2423(a).  Section 2421(a) is nearly identical, except that it applies to the transportation of "any individual" without regard for age and includes a different criminal penalty.  *See* 18 U.S.C. § 2421(a); *United States v. Holland*, 381 F.3d 80, 84 (2d Cir. 2004) (comparing Sections 2421 and 2423).  The statutes share the same elements, except that as to Section 2423(a), the individual at issue must be younger than eighteen.  "To support a conviction under 18 U.S.C. § 2423(a), the government must prove, *inter alia*, that a defendant who transports a minor in interstate commerce specifically intended that the minor engage in prostitution or illicit sexual activity."  *United States v. Robinson*, No. CRIM. 05-CR-443, 2007 WL 790013, at *9 (M.D. Pa. Mar. 14, 2007).

Nowhere in the FAC does Plaintiff allege that *Mr. Combs* transported her across state lines at all, let alone that he did so with the purpose of her engaging in

illicit sexual activity.  Rather, Plaintiff unambiguously alleges that the corporate defendants—not Mr. Combs—were responsible for transporting Plaintiff and others from New York to New Jersey.  *See, e.g.*, FAC ¶¶ 36, 41, 44, 141.  To satisfy the transport element, a plaintiff must plead that the defendant did something more than simply inviting or suggesting travel.  For example, in *United States v. Holland*, the Second Circuit held the defendant had "transported" individuals by "[i]nviting travel, purchasing tickets, *and* accompanying individuals on trips."  381 F.3d at 87 (emphasis added).  Likewise, in *United States v. Taylor*, the defendant was convicted of violating Section 2423(a) where, *inter alia*, he "arranged," "purchased," *and* accompanied a minor's interstate travel.  239 F.3d 994, 996–97 (9th Cir. 2001).  Reading the FAC in the light most favorable to Plaintiff, she makes only the single allegation that Mr. Combs invited Gardner to New Jersey— without any allegation or inference that he bore any responsibility for actualizing the transportation—but this does not come anywhere close to satisfying the transportation pleading requirement for Sections 2421(a) and 2423(a).[6]  *See, e.g.*, *United States v. Sabatino*, 943 F.2d 94, 99 n.2 (1st Cir. 1991) (observing that the transportation element is satisfied where "the defendant personally or through an

---

[6]     The Court should not even credit this allegation given that elsewhere Gardner alleges that only Hall invited Gardner and others to the afterparty where the alleged misconduct purportedly occurred (FAC ¶ 141).  *See, e.g.*, *Liberty Bell Equipment Corp.*, 2018 WL 5885455, at *3.

agent *performed* the proscribed act of transporting" (emphasis added) (quoting *United States v. Jones*, 909 F.2d 533, 540 (D.C. Cir. 1990))).

For these reasons, even if Plaintiff could assert a Mann Act claim under CAVRA (which, as explained above, she cannot), dismissal would be required because Plaintiff fails to plead the necessary elements of violations of 18 U.S.C. §§ 2421(a), 2422(b), and 2423(a).

## III.    TO THE EXTENT THE FAC CAN BE READ TO ASSERT CLAIMS FOR VIOLATION OF THE TVPA, SUCH CLAIMS FAIL

As set forth *supra*, in her attempt to assert a Mann Act claim, Plaintiff invokes the TVPA, a statute she does not allege was violated.  Even if Plaintiff had asserted a cause of action under the TVPA, that claim would fail.

Although 18 U.S.C. § 1595 provides a civil cause of action for a violation of the TVPA (among other statutes), the FAC's allegations do not come close to stating a Section 1595 claim.  To state a claim under Section 1595, a plaintiff must allege that she or he "is a victim of a violation of" Chapter 77 of Title 18 of the United States Code, 18 U.S.C. § 1595(a), which is an expansive statutory scheme that includes numerous criminal provisions, each of which has different elements, *see* 18 U.S.C. § 1581 *et seq*.

For example, 18 U.S.C. § 1591 makes it a crime for a defendant to "knowingly" and (1) "in or affecting interstate or foreign commerce . . . recruit[], entice[], harbor[], transport[], provide[], obtain[], advertise[], maintain[],

31

patronize[], or solicit[] by any means a person" (2) "knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . will be used [(3)] to cause the person to engage in a commercial act." 18 U.S.C. § 1595(a). Plaintiff does not allege that Mr. Combs violated this (or any other provision of Chapter 77); if she had, that claim would have failed because Plaintiff does not plead that she participated in "a commercial sex act"[7] (nor do the facts alleged in the FAC – or any prior complaint she has filed – give rise to an inference that any commercial sex act occurred).

Indeed, Gardner has not identified *any* statute in Chapter 77 that was purportedly violated, let alone alleged facts giving rise to an inference that the elements of any such statute have been satisfied. Accordingly, she has not pled a claim for a TVPA violation. *See Twombly*, 550 U.S. at 555 (Federal Rule of Civil Procedure 8(a)(2) requires that a pleading "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests").

Moreover, Section 1595(a)—TVPA's civil remedy provision—was not enacted until 2003. Pub. L. No. 108-193, 117 Stat. 2875 (2003); *see also Ratha v. Rubicon Resources, LLC*, 111 F.4th 946, 951-52 (9th Cir. 2024) (describing history of TVPA). That provision was not retroactive, meaning—even if Plaintiff had

---

[7]    A "commercial sex act" is defined as a "sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3).

asserted a TVPA claim (which she did not)—Plaintiff still could not now employ Section 1595(a) to provide a civil remedy for conduct alleged to have occurred thirteen years prior to the amendment's enactment. *See, e.g.*, *Ditullio v. Boehm*, 662 F.3d 1091, 1099 (9th Cir. 2011) (holding civil remedy provided by Section 1595 does not apply retroactively to pre-enactment conduct); *Velez v. Sanchez*, 693 F.3d 308, 325 (2d Cir. 2012) (same); *Nattah v. Bush*, 770 F. Supp. 2d 193, 205 (D.D.C. 2011) (same); *Barjo v. Cherian*, 349 F. Supp. 3d 510, 515-16 (D. Md. 2018) (same); *Drew v. Householder*, Case No. 6:22-cv-3211-MDH, 2023 WL 8789744, at *2 (W.D. Mo. Dec. 19, 2023) (collecting cases holding TVPA does not apply retroactively and holding the same). As such, were Plaintiff to assert a TVPA claim pursuant to 18 U.S.C. § 1595(a), it too would fail.

## IV.    PLAINTIFF'S COMMON LAW TORT CLAIMS MUST BE DISMISSED WITH PREJUDICE AS TO MR. COMBS

Plaintiff asserts three common law tort claims against Mr. Combs, all of which should be dismissed. Her claims for assault, battery, and NIED are all barred by the applicable two-year statute of limitations. The New Jersey State Legislature's recent amendment extending the statute of limitations for claims related to injuries arising from sexual misconduct beyond the limitations period effective in most states in the country should not operate to revive those previously time-barred claims because, as applied here, the extension of the statute of limitations violates Mr. Combs' constitutional due process rights. Even if the

33

Court holds that the expanded statute of limitations is constitutional, dismissal is appropriate because Plaintiff fails to plead an NIED claim and insofar as her claims for assault, battery, and NIED relate to allegations that Mr. Combs choked her, they are not covered by the recent amendment because choking does not constitute sexual misconduct.

### A. Plaintiff's Claims for Assault, Battery, and NIED Are Time-Barred and their Revival Is Unconstitutional as Applied to Mr. Combs

The tort claims that Plaintiff lodges against Mr. Combs should be dismissed because these decades-old claims are time-barred, and their revival as to Mr. Combs pursuant to the December 1, 2019 amendment to the New Jersey Child Sexual Abuse Act, N.J.S.A. § 2A:14-2a (the "CSAA Amendment"), violates Mr. Combs' Due Process rights under the New Jersey State Constitution.

Plaintiff asserts claims for assault, battery, and NIED that arise out of conduct that occurred 34 years ago, in 1990. FAC ¶¶ 35-38, 41, 46-57. Under New Jersey law, however, all three of those causes of action are subject to a two-year statute of limitations, meaning that they expired decades ago and should be dismissed. *See* N.J.S.A. § 2A:14-2; *Bullock v. Borough of Roselle*, Civ. No. 17-13208 (KM), 2018 WL 4179481, at *9–10 (D.N.J. Aug. 31, 2018). Notwithstanding the two-year statute of limitations, Gardner alleges her claims are viable because the CSAA Amendment extended the applicable statute of

limitations.  *See* FAC ¶¶ 111, 118, 124, 135.  However, the CSAA Amendment's expansive enlargement of the statute of limitations is, at least as applied here, a gross violation of due process.  A statute may be found to violate the constitutional rights of a particular defendant even if the statute is not *per se* unconstitutional. *See United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010).

In relevant part, the CSAA Amendment provides an extended window for a plaintiff to file a suit for "injuries resulting from" sexual misconduct that runs "within 37 years after the minor reaches the age of majority [*i.e.*, by age 55], or within seven years from the date of reasonable discovery of the injury and its causal relationship to the act, whichever date is later."  N.J.S.A. § 2A:14-2a(a)(1). "The amendment was explicitly made retroactive, applying to child sexual abuse that 'occurred prior to, on or after' December 1, 2019."  *W.S. v. Hildreth*, 252 N.J. 506, 512 (N.J. 2023) (quoting N.J.S.A. § 2A:14-2a(a)(1)).  In other words, for sexual misconduct-related injuries, the amendment converts a two-year statute of limitations into a decades' long statute of limitations, including as to claims that would have expired ages ago.

Such an aggressive expansion of the statute of limitations violates fundamental Due Process Rights protected under the New Jersey State Constitution, at least as applied in this case.  Art.1, par.1 of the New Jersey State Constitution protects "the basic state constitutional requirements of substantive due

process and equal protection of the laws." *South. Burl. Cty. N.A.A.C.P. v. Township of Mt. Laurel*, 67 N.J. 151, 174–75 (N.J.), *app. dismissed, cert. denied*, 423 U.S. 808 (N.J. 1975). New Jersey courts have held that "[r]etroactive legislation that impairs or destroys a 'vested right' may violate the due process clauses" of the United States or New Jersey Constitution. *Twiss v. State Dep't of Treasury*, 124 N.J. 461, 469 (N.J. 1991) (quoting *Panzino v. Cont'l Can Co.*, 71 N.J. 298, 304 (N.J. 1976)). Indeed, the New Jersey Supreme Court has found that the defense of a statute of limitations may qualify as such a "vested right." *See State v. Short*, 131 N.J. 47, 54 (N.J. 1993) (collecting cases). The rights implicated by the revival of Gardner's time-barred claims here are particularly acute: while cases lacking forensic or documentary evidence—such as Gardner's case—always present concerns of faded memories, the circumstances under which Gardner's claims were brought—*i.e.*, on the heels of a much publicized settlement against Mr. Combs—and have evolved—*i.e.*, with material facts changing each time Plaintiff encountered an argument or procedural development that threatened her claims—should give any arbiter pause. Mr. Combs, whose celebrity and wealth make him particularly vulnerable to fabricated accusations, should not be forced to defend against outrageous, uncorroborated claims, brought *decades* after the encounter in question, particularly where those claims have shifted so materially over time.

Although many states have passed statutes to temporarily revive time-barred claims for sexual assault and/or expand statutes of limitations, New Jersey's aggressive expansion of the statute of limitations goes far beyond what most other states have done. *See, e.g.*, N.M. Code § 37-1-30 ("An action for damages based on personal injury caused by childhood sexual abuse shall be commenced by a person before the latest of . . . the person's twenty-fourth birthday[] or [] three years from the date" of disclosure "to a licensed medical or mental health care provider in the context of receiving health care"); Ohio Code § 2305.111(c) ("an action for assault or battery brought by a victim of childhood sexual abuse based childhood sexual abuse, or an action brought by a victim of childhood sexual abuse asserting any claim resulting from childhood sexual abuse, shall be brought within twelve years after the cause of action accrues . . . ."); N.C. Gen. Stat. § 1-17(d) ("[A] plaintiff may file a civil action against a defendant for claims related to sexual abuse suffered while the plaintiff was under 18 years of age until the plaintiff attains 28 years of age.").  Its retroactive application of that expanded statute of limitations is even rarer.  For example, in New York, the legislature passed two statutes that temporarily revived previously time-barred claims for sexual assault and also expanded the statute of limitations for such claims going forward; however, the legislature did not make that expansion retroactive. *See* N.Y. C.P.L.R. §§ 214-g, 214-j.

In the various states where legislatures did retroactively extend statutes of limitations for such claims, courts have deemed those expansions unconstitutional. For example, in 2016, the Utah State Legislature enacted a statute providing "that certain civil claims against perpetrators of sexual abuse may be asserted, even if" time barred as of the date of the statute's enactment if (similarly to the CSAA Amendment) they are "brought within 35 years of the victim's 18th birthday, or within three years of the effective date of this Subsection (7), whichever is longer." *Mitchell v. Roberts*, 469 P.3d 901, 902-03 (Utah 2020) (quoting Utah Code § 78B-2-308(7)).  Utah's legislature expressed its clear intent that the statute have retroactive effect.  The Utah Supreme Court, however, held that the statute violated Utah's constitution because it "depriv[ed] a defendant of a vested statute of limitations defense."  *Id.* at 903.  Similarly, the Missouri Supreme Court held that a "childhood sexual abuse statute" that "authorize[d] causes of action that [were] barred under statutes of limitation applicable prior to . . . the effective date of the statute" was unconstitutional under the Missouri Constitution because "once the original statute of limitation expires and bars the plaintiff's action, the defendant has acquired a vested right to be free from suit[.]"  *Doe v. Roman Catholic Diocese of Jefferson City*, 862 S.W.2d 338, 339, 341 (Mo. 1993).  This Court should reach the same conclusion here.

**B.    The NIED Claim is Insufficiently Pled**

Plaintiff's NIED claim should be dismissed for the additional reason that she alleges (falsely) that Mr. Combs engaged in *intentional* conduct.  NIED is defined as "*negligent* conduct that is the proximate cause of emotional distress in a person to whom the actor owes a legal duty to exercise reasonable care." *Decker v. Princeton Packet, Inc.*, 116 N.J. 418, 429 (N.J. 1989) (emphasis added).  To establish liability, "a plaintiff must prove that defendant's conduct was negligent and proximately caused plaintiff's injuries.  The negligence of defendant, however, depends on whether defendant owes a duty of care to the plaintiff, which is analyzed in terms of foreseeability." *Id.*  Furthermore, "it must be reasonably foreseeable that the tortious conduct will cause genuine and substantial emotional distress or mental harm to [the] average persons." *Id.* at 430.  In the FAC, however, Plaintiff does not allege that Mr. Combs' conduct was negligent.  To the contrary, she alleges that his conduct was "willful," "intentional[]," and "conscious[]."  FAC ¶¶ 110, 125, 134.  Logically, Plaintiff cannot allege that Mr. Combs' conduct was both intentional and negligent, and the Court should dismiss the NIED claim against Mr. Combs.

## **CONCLUSION**

For the foregoing reasons, Mr. Combs respectfully requests that the Court issue an order dismissing with prejudice Plaintiff's claims for assault, battery, NIED, and violations of the Mann Act as to Mr. Combs.


Dated: New York, New York
      December 17, 2024

Respectfully submitted,
*/s/ Yonatan Y. Jacobs*

Yonatan Y. Jacobs
Erica A. Wolff
Michael Tremonte
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
YJacobs@shertremonte.com
EWolff@shertremonte.com
MTremonte@shertremonte.com

*Attorneys for Defendant Sean Combs*