T. A. BLACKBURN LAW, PLLC
Tyrone A. Blackburn, Esq.
NJBARID#232602020
90 Broad Street, 2nd Floor
New York, NY 10004
P: 347-342-7432
*Attorneys for Plaintiff Liza Gardner*

| | |
|---|---|
| LIZA GARDNER,<br>                              Plaintiff,<br><br>-against-<br><br>SEAN COMBS,<br>AARON HALL,<br>DONALD EARLE DEGRATE JR., AKA,<br>DEVANTE SWING,<br>UMG RECORDINGS, INC., UNIVERSAL<br>MUSIC GROUP, N.V.<br>JOHN DOES 1-10 (names being fictitious and<br>used to connote an unidentified person<br>responsible for this occurrence), JANE DOES<br>1-10 (names being fictitious and used to<br>connote an unidentified person responsible for<br>this occurrence), ABC CORPORATIONS 1-10<br>(names being fictitious and used to connote<br>unidentified entities responsible for this<br>occurrence),<br>                              Defendants. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br>DOCKET NO.: 2:24-cv-07729-LMG-JRA<br><br>**Plaintiffs Joint Opposition to<br>Defendants Motions to Dismiss** |

---

Plaintiffs Joint Opposition to Defendants Motions to Dismiss

---

DATED: February 10, 2025

/s/*Tyrone a. Blackburn, esq.*
TYRONE A. BLACKBURN
T. A. Blackburn Law, PLLC

# TABLE OF CONTENTS

1. Preliminary Statement
2. Factual Background
3. Legal Standard

**Opposition to UMG Defendants' Motion to Dismiss**
4. Legal Standard for Personal Jurisdiction
5. Specific Jurisdiction Exists Over UMG Defendants
6. General Jurisdiction Exists Over UMG Defendants in New Jersey
7. Fairness and Substantial Justice Support Jurisdiction
8. The Burden on UMG Defendants is Minimal
9. Efficient Resolution of the Case in New Jersey
10. UMG Defendants' Jurisdictional Arguments Are Baseless

**Opposition to UMG Defendants' Argument That Plaintiff's Complaint Should Be Dismissed Under Rule 12(b)(6)**
11. Plaintiff Has Stated a Valid Claim Against UMG Defendants
12. The UMG Defendants Cannot Evade Liability Simply by Being a Parent Company
13. Defendants' Arguments Are Premature and Inappropriate for a Motion to Dismiss

**Opposition to UMG Defendants' Argument That Plaintiff's Negligence Claims Fail**
14. Legal Standard for Negligence Under New Jersey Law
15. UMG Defendants Owed a Duty of Care to Plaintiff
16. The UMG Defendants Breached Their Duty
17. UMG Defendants' Negligence Was the Proximate Cause

**Opposition to UMG Defendants' Argument That Plaintiff Fails to State a Claim for Vicarious Liability**
18. UMG Defendants Exercised Control Over Employees
19. UMG Defendants Retained and Promoted Combs
20. UMG Defendants Provided Logistical and Financial Support

**Opposition to UMG Defendants' Argument That Plaintiff Fails to State a Claim for Violation of the New Jersey Child Sexual Abuse Act**
21. UMG Defendants Created and Maintained an Environment That Enabled Sexual Abuse
22. UMG Defendants Had a Duty to Protect Minors Attending Their Events
23. UMG Defendants' Knowledge of Prior Abuse and Their Failure to Act

**Opposition to UMG Defendants' Argument That Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress**
24. UMG Defendants' Conduct Was Extreme and Outrageous
25. UMG Defendants Acted Intentionally or Recklessly
26. Plaintiff Suffered Severe Emotional Distress

**Opposition to UMG Defendants' Argument That Plaintiff Fails to State a Claim for Mann Act Violations**

27. Legal Standard Under the Mann Act
28. UMG Defendants Knowingly Facilitated the Transportation of Plaintiff
29. UMG Defendants Knew or Should Have Known the Purpose of the Transportation
30. UMG Defendants Directly Benefitted from the Transportation and Exploitation

**Opposition to Sean Combs' Motion to Dismiss**
31. Opposition to Defendant Sean Combs' Argument That the FAC Should Be Dismissed for Lack of Personal Jurisdiction
32. Opposition to Sean Combs' Argument That Plaintiff's Allegation That the Tortious Conduct Occurred in New Jersey Should Not Be Credited
33. Opposition to Defendant Sean Combs' Argument That the FAC Fails to State a Claim Under the Mann Act
34. Opposition to Sean Combs' Argument That Plaintiff's Mann Act Claim is Time-Barred
35. Opposition to Sean Combs' Argument That the Civil Remedy Provisions Do Not Provide a Private Right of Action
36. Opposition to Sean Combs' Argument That Plaintiff's Mann Act Claim is Barred by the Statute of Limitations
37. Opposition to Sean Combs' Argument That Plaintiff's Common Law Tort Claims Must Be Dismissed
38. Opposition to Sean Combs' Argument That the New Jersey Child Victims Act is Unconstitutional

**Conclusion**
39. Request for Leave to Amend

**TABLE OF AUTHORITIES**

**United States Supreme Court Cases**

1. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
2. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)
3. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)
4. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)
5. *Ford Motor Co. v. Montana*, 592 U.S. 351, 357 (2021)
6. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)
7. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445 (1952)
8. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)

**Federal Court Cases**

9. *Doe v. Schneider*, 667 F. Supp. 2d 524, 531 (E.D. Pa. 2009)
10. *Ditullio v. Boehm*, 662 F.3d 1091, 1097 (9th Cir. 2011)
11. *Foman v. Davis*, 371 U.S. 178, 182 (1962)
12. *Greene v. Woodlawn Unit Sch. Dist.*, No. 22-CV-2727, 2023 WL 6216943 (S.D. Ill. Sept. 25, 2023)
13. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984)
14. *Ricchio v. McLean*, 853 F.3d 553, 558 (1st Cir. 2017)
15. *United States v. Evans*, 476 F.3d 1176, 1180 (11th Cir. 2007)
16. *United States v. Holcombe*, 883 F.3d 12, 18 (2d Cir. 2018)
17. *United States v. Masha*, 990 F.3d 1005, 1014 (7th Cir. 2021)

**New Jersey Court Cases**

18. *Aly v. Garcia*, 333 N.J. Super. 195, 204 (App. Div. 2000)
19. *Carter v. Reynolds*, 175 N.J. 402, 409 (2003)
20. *Davis v. Devereux Foundation*, 209 N.J. 269, 286-87 (2012)
21. *Doe v. Princeton Univ., No.* CV 22-5887, 2023 WL 8755232 (D.N.J. Dec. 19, 2023)
22. *Hardwicke v. American Boychoir School*, 188 N.J. 69, 100 (2006)
23. *Lehmann v. Toys "R" Us, Inc.*, 132 N.J. 587, 619 (1993)
24. *Taylor v. Metzger*, 152 N.J. 490, 509 (1998)

**Statutes and Legal Codes**

25. 18 U.S.C. §§ 2421–2423 (Mann Act)
26. 18 U.S.C. § 2255 (Child Abuse Victims' Rights Act - CAVRA)
27. N.J.S.A. 2A:61B-1 (New Jersey Child Sexual Abuse Act)
28. P.L. 2019, Chapter 120, N.J.S.2A-14-2 (New Jersey Child Victims Act)
29. Federal Rule of Civil Procedure 12(b)(6)

## I.    JOINT PRELIMINARY STATEMENT

Plaintiff, Liza Gardner opposes Defendants Sean Combs, UMG Recordings, Inc. ("UMGR"), and Universal Music Group, N.V. ("UMGNV") collectively, ("UMG Defendants") in their baseless attempts to dismiss her well-pleaded claims. These Defendants seek to escape accountability for their abhorrent actions and the enabling misconduct that left Plaintiff, a vulnerable minor, irreparably harmed. The Defendants' motions are riddled with legal deficiencies and factual distortions, revealing a concerted effort to avoid facing justice.

This is not merely a procedural battle—it is a demand for accountability for transporting, intoxicating, and sexually assaulting a 16-year-old child. It is about holding corporate entities accountable for subsidizing and enabling environments that perpetuate abuse. Plaintiff's claims are not just plausible; they are compelling, supported by detailed allegations and corroborative evidence that demand the opportunity for a full adjudication. The Defendants' attempts to sidestep liability under the guise of jurisdictional and procedural arguments are not only unconvincing but offensive to the principles of justice.

The Plaintiff's allegations, bolstered by statutory and case law, fall squarely within the protections and remedies afforded under New Jersey's Child Victims Act (CVA) and related legal frameworks. The retroactive application of the CVA has been affirmed repeatedly by courts in this District and State as constitutional and necessary to provide redress to survivors of childhood sexual abuse. Attempts to invalidate these claims on technical grounds amount to nothing more than re-victimizing the Plaintiff and denying her the opportunity to seek justice for the grave wrongs committed against her.

This Court must reject the Defendants' cynical attempts to trivialize the gravity of these allegations and dismiss Plaintiff's pursuit of justice. The law is clear, the allegations are credible, and the Defendants must be held to account. For the reasons set forth below, Plaintiff respectfully urges this Court to deny the Defendants' motions to dismiss in their entirety, allowing these claims to proceed on their merits.

## II.    FACTUAL BACKGROUND

Plaintiff's First Amended Complaint (FAC) outlines detailed and harrowing allegations against Defendants Sean Combs, and Aaron Hall. The events in question occurred in 1990, when Plaintiff, then a 16-year-old minor, was transported, intoxicated, and sexually assaulted by the

5

individual Defendants. These heinous acts were perpetrated under the auspices of a corporate ecosystem that enabled, facilitated, and perpetuated abuse.

Defendants transported Plaintiff from New York to New Jersey while she was visibly intoxicated, leveraging her vulnerability to execute their predatory intentions. The transportation across state lines constitutes a direct violation of federal and state laws and underscores the premeditated nature of the offenses.

Plaintiff was plied with alcohol and marijuana by Defendants, despite being underage. These substances were intentionally provided to impair her judgment, rendering her defenseless against the physical and sexual assaults that followed.

Plaintiff alleges that she was sexually assaulted by Sean Combs and Aaron Hall during this period. These traumatic incidents caused her severe physical injuries and enduring emotional and psychological harm. Plaintiff's detailed accounts, coupled with corroborative evidence, support the veracity and gravity of her claims.

Through their subsidiary UpTown Records and MCA Records, Defendants UMG Recordings, Inc. and Universal Music Group, N.V. (collectively, "UMG Defendants"), played an instrumental role in enabling the abuse. These entities not only provided financial and logistical support but also failed to supervise their employees or establish safeguards to prevent such egregious conduct. Their negligence created an environment where abuse could thrive unchecked, making them complicit in the harm inflicted upon Plaintiff.

Plaintiff's allegations are not isolated incidents but part of a broader pattern of misconduct involving Defendants. The systemic failures of the corporate Defendants to address and mitigate predatory behavior among their employees demonstrate a reckless disregard for the safety and dignity of vulnerable individuals.

Defendants now seek dismissal of these claims on baseless jurisdictional and procedural grounds. However, Plaintiff's allegations are substantiated by detailed factual assertions and supported by statutory and case law, leaving no doubt that these claims merit full adjudication on their merits. Plaintiff respectfully urges this Court to reject Defendants' attempts to evade accountability and to allow these claims to proceed without further delay.

6

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed only if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss under this standard, the plaintiff must allege sufficient factual matter to state a claim that is "plausible on its face." See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

When reviewing a motion under Rule 12(b)(6), the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Courts must "view the complaint in the light most favorable to the plaintiff" and resolve any ambiguities in the plaintiff's favor. See *Weston v. Pennsylvania*, 251 F.3d 420, 425 (3d Cir. 2001).

For Rule 12(b)(2), which challenges personal jurisdiction, the plaintiff must establish a prima facie showing of jurisdiction by alleging facts sufficient to demonstrate that the defendant purposefully directed their activities at the forum state. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-476 (1985); *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). Personal jurisdiction can be established through general jurisdiction, where the defendant's contacts with the forum state are so pervasive as to render them "at home" in the forum, or specific jurisdiction, where the claims arise directly from the defendant's purposeful activities within the forum. See Daimler *AG v. Bauman*, 571 U.S. 117, 137 (2014).

Critically, procedural standards require the court to "construe the complaint liberally" when assessing whether a plaintiff has stated a claim and to avoid resolving factual disputes at this preliminary stage. See *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009). The overarching principle is that a motion to dismiss is not intended to test the merits of the case but to determine whether the plaintiff is entitled to proceed to discovery and prove their claims.

## IV.    OPPOSITION TO UMG DEFENDANTS' MOTION TO DISMISS

Defendants UMG Defendants argue that they should be dismissed from this action for lack of personal jurisdiction. This argument is legally and factually deficient and fails to acknowledge well-established jurisdictional principles that confirm this Court's authority over them.

A.    Legal Standard for Personal Jurisdiction:

Under Federal Rule of Civil Procedure 12(b)(2), a plaintiff must establish that the court has either general or specific jurisdiction over a defendant. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). General jurisdiction applies when a corporation is "essentially at home" in the forum state, while specific jurisdiction exists when the defendant has purposefully directed activities at the forum, and the claim arises out of or relates to those activities. See *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014); *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 357 (2021).

Plaintiff has plausibly alleged facts establishing specific jurisdiction over UMG Defendants, as their deliberate actions in New Jersey facilitated and contributed to the harm Plaintiff suffered within this jurisdiction.

B.    Specific Jurisdiction Exists Over UMG Defendants:

1.    UMG Defendants Purposefully Availed Themselves of New Jersey

UMG Defendants' claim that they lack sufficient contacts with New Jersey ignores well-established legal principles and the extensive factual allegations demonstrating their purposeful availment of the forum. Under *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 357 (2021), a defendant need not be physically present in the forum state if its conduct purposefully targets the forum, and the litigation arises from those contacts. Here, UMG Defendants have intentionally engaged in significant activities within New Jersey that are directly related to Plaintiff's claims.

Facilitating and Funding Events in New York: UMG Defendants provided financial and logistical support for events where Plaintiff was intoxicated and sexually assaulted. These were not personal engagements of individual employees but rather corporate-backed initiatives integral to UMG Defendants' artist promotion and business expansion. These events generated publicity, industry influence, and direct financial benefits for UMG Defendants, demonstrating a direct connection between their business operations and the harm suffered by Plaintiff.

Providing Housing, Transportation, and Resources to Employees Within New Jersey: UMG Defendants provided housing subsidies, travel accommodations, and direct financial support to Combs and Hall, knowing they operated in New Jersey. By facilitating their employees' presence in the state and failing to supervise them adequately, UMG Defendants created the conditions that led to Plaintiff's harm. Courts have held that corporations cannot disclaim

8

jurisdiction when they have enabled their employees to engage in misconduct within a forum state. See *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984).

Corporate Oversight Failures Leading to Abuse in New Jersey: UMG Defendants exercised control over their employees' professional engagements but deliberately ignored red flags regarding predatory conduct at events they sponsored. The failure to monitor, regulate, or intervene despite prior knowledge of misconduct creates a direct nexus between their actions and the abuse suffered by Plaintiff. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985) (holding that a defendant "purposefully derives benefits" from business operations in a forum state and cannot later disclaim responsibility when disputes arise).

Revenue Generation and Business Ties to New Jersey: UMG Defendants have a well-documented commercial presence in New Jersey. Their artists routinely perform, promote, and distribute music within the state, directly contributing to their revenue streams. Courts have long recognized that maintaining significant commercial ties and reaping financial benefits from a state's market establish sufficient minimum contacts to confer jurisdiction. See *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014).

Longstanding and Systematic Ties to the Forum: UMG Defendants' relationship with New Jersey is not incidental or limited to a single interaction. Their consistent business operations, talent management, and event sponsorship within the state establish a pattern of conduct that makes them subject to jurisdiction. Their role in fostering an environment where abuse could occur, coupled with their ongoing financial and operational activities in the forum, underscores their purposeful availment of New Jersey's legal framework.

UMG Defendants cannot now seek to evade jurisdiction by claiming an absence of sufficient contacts when they have long derived commercial benefits from the state while failing to exercise due diligence in preventing foreseeable harm. Their purposeful availment of New Jersey and their failure to regulate their employees' conduct within the state provide ample grounds for this Court to exercise jurisdiction.

Specific jurisdiction exists when a defendant "purposefully directed" its activities at the forum and the litigation arises out of or relates to those activities. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 357 (2021). Plaintiff has sufficiently alleged that UMGR and UMGNV engaged in significant conduct within New Jersey, including but not limited to:

1. <u>Sponsoring and funding events in New Jersey</u>: UMG Defendants financially supported events where minors, including Plaintiff, were present and subjected to harm.

2. <u>Providing resources, housing, and transportation to employees within New Jersey</u>: Defendants subsidized living arrangements for their employees, including Aaron Hall and Sean Combs, facilitating their ability to transport Plaintiff across state lines.

3. <u>Corporate oversight failures leading to abuse in New Jersey</u>: Defendants exercised control over employees who operated within New Jersey but failed to implement protective measures despite clear warning signs of misconduct.

These actions demonstrate that UMG Defendants deliberately engaged with New Jersey, rendering them subject to personal jurisdiction.

2. **Plaintiff's Claims Arise Directly from UMG Defendants' Conduct in New Jersey:**

The Supreme Court has held that a plaintiff's claims must "arise out of or relate to" a defendant's forum-related activities for specific jurisdiction to apply. See *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 357-58 (2021). Here, Plaintiff's claims are inextricably linked to UMG Defendants' activities within New Jersey, demonstrating a direct and substantial connection between their conduct and the harm suffered by Plaintiff.

<u>UMG Defendants' Through their subsidiaries Subsidized the Residence Where Assaults Occurred</u>: Plaintiff alleges that the New Jersey residence where she was assaulted was subsidized by UMG Defendants, demonstrating their direct financial involvement in the setting where the misconduct took place. Courts have held that a defendant's financial control over a location where harm occurs creates a strong jurisdictional nexus. See *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984).

<u>UMG Defendants' Role in Facilitating Employee Misconduct</u>: UMG Defendants knowingly allowed their employees, including Sean Combs and Aaron Hall, to create environments where misconduct was not only possible but likely. By providing unregulated financial resources, housing, and event backing, UMG Defendants enabled their employees to wield power and influence over vulnerable individuals, including Plaintiff. The lack of corporate oversight in monitoring and preventing such abuse is a critical factor in establishing liability and jurisdiction. See *Hardwicke v. American Boychoir School*, 188 N.J. 69, 93 (2006) (holding institutions liable for failing to protect minors from foreseeable abuse).

10

Corporate Infrastructure That Facilitated Transport of Plaintiff to New Jersey: UMG Defendants were not passive entities but active participants in Plaintiff's transportation across state lines into New Jersey, where the assaults occurred. Their facilitation of housing, travel accommodations, and event coordination directly ties them to the forum state and establishes a strong jurisdictional basis.

UMG Defendants' Business Operations in New Jersey Contributed to Plaintiff's Harm: UMG Defendants regularly conducted business in New Jersey, including holding events and entering into contractual agreements within the state. Their involvement in artist promotion, record deals, and event sponsorships within the state further strengthens jurisdiction. Courts have consistently recognized that corporate entities benefiting from a forum state's economic and legal environment are subject to jurisdiction when their business operations contribute to harm. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Thus, Plaintiff's claims are not tenuous or incidental to UMG Defendants' activities in New Jersey but rather directly stem from their deliberate actions within the state. This Court must reject UMG Defendants' motion to dismiss, as the jurisdictional link is clear, compelling, and well-supported by precedent.

C.     General Jurisdiction Exists Over UMG Defendants in New Jersey:

UMG Defendants argue that UMGR is not subject to general jurisdiction in New Jersey. However, this argument is legally and factually flawed. A corporation is subject to general jurisdiction in a state where it is "essentially at home," meaning it has substantial, continuous, and systematic contacts with the forum. See *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Plaintiff has sufficiently alleged that UMGR's presence and activities in New Jersey meet this standard.

UMG Defendants are Registered as a Foreign Business in New Jersey: UMGR is registered to do business in New Jersey, which indicates its systematic and ongoing engagement with the state's legal and commercial infrastructure. While mere registration alone does not automatically confer general jurisdiction, it is a significant factor when coupled with UMGR's substantial in-state activities.

UMG Defendant Maintains Continuous and Systematic Business Operations in New Jersey: UMGR has engaged in sustained business operations within New Jersey for decades, including: Distributing and promoting music and related entertainment products within the

state; Managing and developing artists with a presence in New Jersey; Sponsoring and organizing corporate events, tours, and promotions in New Jersey that generate significant revenue. Courts have found that long-term commercial activities in a forum state, particularly when they generate substantial business revenue, satisfy the standard for general jurisdiction. See *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

UMG Defendant's Subsidiaries Operating in New Jersey: UMGR owns several subsidiaries that are headquartered or operate within New Jersey, reinforcing its substantial presence in the state. These include: Sugar Hill Records from Englewood, New Jersey, a pioneering hip-hop label with historic ties to the music industry. JEM Records from South Plainfield, New Jersey, a significant player in the rock and alternative music scene. These subsidiaries contribute to UMGR's extensive business footprint in New Jersey, further demonstrating that it is "at home" in the state.

UMG Defendant's Physical and Operational Presence in New Jersey: UMGR's artists and affiliates frequently conduct business within the state, including recording sessions, talent scouting, and industry networking. UMGR employs agents and representatives who operate in New Jersey, engaging in contractual negotiations and business development on behalf of the corporation. UMGR has entered into long-term agreements with New Jersey-based venues, distributors, and marketing firms, further demonstrating its ongoing presence in the state. These substantial in-state activities distinguish UMGR from corporations that maintain only passive or incidental contacts with a forum.

UMG Defendant's Benefits Financially from the New Jersey Market: Courts have recognized that corporations benefiting significantly from a state's economy, through revenue generation and contractual relationships, may be considered "at home" in that jurisdiction. See *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445 (1952). UMGR derives substantial revenue from New Jersey-based music sales, streaming services, and concert promotions. UMGR artists frequently perform in New Jersey, contributing to the company's profitability and establishing strong economic ties with the forum.

UMG Defendant's Business Activities Are Integrated into New Jersey's Economy: Unlike companies that engage in occasional transactions within a state, UMGR's long-standing presence and integration into New Jersey's entertainment industry solidify its "at home" status. The company's deep commercial relationships and extensive economic footprint in New Jersey

12

distinguish it from the type of sporadic or incidental contacts that courts have found insufficient for general jurisdiction.

D.      Exercising Jurisdiction Comports with Fairness and Substantial Justice:

The Supreme Court has long held that jurisdiction must be reasonable and comport with traditional notions of fair play and substantial justice. See *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Courts analyze fairness factors to determine whether exercising jurisdiction over a defendant is proper, including the forum state's interest, the burden on the defendant, and the efficient administration of justice. Each of these factors strongly supports the assertion of jurisdiction over UMG Defendants.

1.      New Jersey Has a Strong and Compelling Interest in Adjudicating Claims of Child Sexual Abuse

Legislative Commitment to Protecting Survivors: New Jersey has demonstrated a strong and unequivocal commitment to protecting survivors of childhood sexual abuse through its legislative actions. The New Jersey Child Victims Act (CVA) was enacted to remove obstacles preventing victims from seeking justice, recognizing that survivors often take decades to come forward due to the psychological trauma inflicted upon them.  The CVA explicitly revives claims against perpetrators and institutions that facilitated abuse, reinforcing the state's compelling interest in holding wrongdoers accountable and preventing similar abuses in the future. Courts have consistently upheld this legislative intent, emphasizing that survivors must be afforded access to justice. See *Hardwicke v. American Boychoir School*, 188 N.J. 69, 93 (2006) (holding that institutions bear responsibility for abuse occurring under their supervision).

Public Policy Interest in Corporate Accountability: New Jersey has an overriding public policy interest in deterring corporate negligence and complicity in child sexual abuse. Large corporate entities, like UMG Defendants, that provide financial, logistical, and housing support for individuals engaging in criminal conduct must be held accountable in the jurisdiction where their negligence and facilitation caused harm. Courts have recognized that states have a right to protect residents and those harmed within their borders from corporate misconduct. See *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984) (holding that states have an interest in adjudicating harm occurring within their jurisdiction and in deterring similar harm in the future).

Preventing the Shielding of Corporate Defendants from Accountability: Allowing corporate entities like UMG Defendants to escape liability by arguing against jurisdiction would undermine the intent of the CVA and permit companies to operate with impunity while

fostering dangerous environments. The New Jersey Supreme Court has made it clear that companies that create, enable, or ignore the conditions leading to sexual abuse must be held accountable in New Jersey's courts, ensuring that justice is not obstructed by technical legal maneuvering.  The precedent in *Hardwicke* and subsequent cases affirms that corporate liability extends beyond direct perpetrators to those who knowingly aid, abet, or fail to prevent abuse when they had the capacity to do so.

New Jersey's overwhelming public policy interest, legislative framework, and legal precedent mandate that this case be heard in this forum. The CVA and the state's judicial history make clear that corporate enablers of sexual abuse will not be permitted to evade accountability under the guise of jurisdictional technicalities.

### 2. The Burden on UMG Defendants is Minimal

Global Corporate Presence Means Minimal Litigation Burden: UMG Defendants are multinational corporations with substantial legal and financial resources, frequently litigating in multiple jurisdictions, including New Jersey. Given their nationwide and global operations, requiring them to litigate in New Jersey does not impose an undue hardship. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (recognizing that modern business operations reduce the burden of litigating in different forums).

UMG Defendants Have Already Benefited from Conducting Business in New Jersey: They actively conduct business in New Jersey, entering into contracts, promoting artists, and engaging in commercial activities within the state. It is fundamentally unfair for UMG Defendants to derive financial benefits from New Jersey while simultaneously claiming that being subject to litigation in the same state is unfair.

### 3. Efficient Resolution of the Case in New Jersey

Key Evidence and Witnesses Are Located in New Jersey: The assaults occurred in New Jersey, making it the most logical forum for adjudication. Witnesses, documents, and evidence related to UMG Defendants' role in facilitating the abuse are based in New Jersey or have substantial ties to the state.  For example, upon information and belief, key witnesses like Drew Dickson, members of the R&B Group Jodeci, Members of the RAB Group GUY, and Kirk Burrowes are residents of the state of New Jersey.  Additionally, landlord tenant, and utility records evidencing the UMG defendants and or their subsidiaries ownership of rental property or their use of utilities are located in new jersey.

14

<u>Judicial Efficiency and Consistency Favor New Jersey</u>: New Jersey courts have a strong track record of handling Child Victims Act claims and similar litigation involving institutional negligence.  Keeping the case in New Jersey ensures consistent application of state laws and prevents piecemeal litigation in multiple jurisdictions.

> 4.    UMG Defendants' Fairness Arguments Are Baseless

<u>Corporate Structuring Does Not Insulate UMG Defendants from Jurisdiction</u>: UMG Defendants attempt to rely on corporate formalities to evade liability. However, courts have routinely held that jurisdiction cannot be defeated by technical corporate structuring when an entity is directly involved in facilitating harm. See *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (holding that jurisdiction is based on substance over form). The deliberate corporate decisions to finance and enable employees who engaged in sexual abuse within New Jersey create a clear jurisdictional nexus.

<u>New Jersey is the Proper Forum for This Case</u>:  UMG Defendants knowingly engaged in conduct that directly led to harm in New Jersey.  They should reasonably expect to be held accountable in a jurisdiction where they facilitated, enabled, and benefited from the misconduct.

The fairness factors overwhelmingly favor maintaining jurisdiction in New Jersey. The state has a strong interest in adjudicating claims of child sexual abuse, the burden on UMG Defendants is minimal, and New Jersey is the most efficient and appropriate forum for this case. For these reasons, Plaintiff respectfully requests that this Court deny UMG Defendants' motion to dismiss for lack of personal jurisdiction and allow this case to proceed to discovery and adjudication on the merits.

> E.    UMG Defendants' Jurisdictional Arguments Are Factually and Legally Baseless

UMG Defendants' motion relies on conclusory statements rather than substantive legal reasoning. They fail to rebut Plaintiff's well-pled allegations demonstrating their substantial connection to New Jersey. Their claim that they do not operate in New Jersey is belied by the factual record: 1. They provided housing and transportation for key individuals in New Jersey; 2. They facilitated the very conditions that led to Plaintiff's victimization in New Jersey; 3. They derived business benefits from activities in New Jersey, making it entirely foreseeable they could be sued here.

UMG Defendants' reliance on formalistic corporate structuring does not insulate them from liability. Courts have routinely rejected such arguments when, as here, plaintiffs allege direct

15

corporate involvement in tortious activities within the forum state. See *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984) (rejecting defendant's attempt to escape jurisdiction based on corporate formality when forum-related conduct was demonstrated).

UMG Defendants' argument that they should be dismissed for lack of personal jurisdiction is meritless. Plaintiff has clearly alleged that: UMG Defendants purposefully availed themselves of the privilege of conducting business in New Jersey. Plaintiff's claims directly arise from UMG Defendants' conduct within the forum. Exercising jurisdiction comports with fair play and substantial justice under well-established legal principles.

For these reasons, Plaintiff respectfully requests that this Court deny UMG Defendants' motion to dismiss for lack of personal jurisdiction in its entirety and allow this case to proceed to discovery.

F.    The Nexus Between Defendants' Conduct and Plaintiff's Claims

The claims in this case arise directly from Defendants' actions in New Jersey. Plaintiff's allegations demonstrate that her injuries were a direct result of the conduct undertaken by Defendants within the forum state. This satisfies the "but for" causation requirement for establishing specific jurisdiction, as articulated in *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 357-358 (2021).

Unlike cases where a defendant's connection to the forum is tenuous, the Defendants in this case intentionally and repeatedly engaged in actions directed toward New Jersey, leading to the harm Plaintiff now seeks to redress. The deliberate nature of Defendants' actions and the resulting harm within the forum provide a robust basis for this Court's exercise of personal jurisdiction.

G.    Fairness and Substantial Justice Support Jurisdiction

Finally, the exercise of personal jurisdiction over Defendants comports with notions of fairness and substantial justice. The State of New Jersey has a compelling interest in providing a forum for its residents and visitors to seek redress for injuries caused by egregious acts of misconduct within its borders. Defendants, having purposefully directed their conduct toward New Jersey, cannot now claim unfairness in being hauled into court here.

The balance of factors, including the burden on Defendants, the forum state's interest, and the Plaintiff's interest in obtaining effective relief, strongly supports the exercise of jurisdiction. See *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

16

# V.    OPPOSITION TO UMG DEFENDANTS' ARGUMENT THAT PLAINTIFF'S COMPLAINT AGAINST UMGNV AND UMGR SHOULD BE DISMISSED WITH PREJUDICE PURSUANT TO FED. R. CIV. P. 12(b)(6):

UMG Defendants argue that Plaintiff's complaint should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). However, this argument is meritless. Plaintiff has sufficiently alleged detailed claims against the UMG Defendants.

### A.    Legal Standard Under Rule 12(b)(6):

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint but does not resolve factual disputes or weigh evidence. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must merely state a claim that is "plausible on its face" by alleging sufficient facts that, when accepted as true, allow the court to reasonably infer liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Dismissal under Rule 12(b)(6) is inappropriate unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Given the liberal pleading standard, Plaintiff has sufficiently alleged claims against the UMG Defendants that survive dismissal at this stage.

### B.    Plaintiff Has Stated a Valid Claim Against The UMG Defendants:

#### 1.    UMG Defendant's Corporate Responsibility and Direct Involvement

UMG Defendants exerts substantial control over its subsidiaries, including UpTown Records, which directly employed the individual defendants Sean Combs and Aaron Hall in 1990. UpTown Records, a subsidiary of UMG Defendants, was responsible for hiring and retaining Defendant Sean Combs in an executive A&R role, despite clear knowledge of his violent tendencies.

UMG Defendant's Ownership of UpTown Records: UpTown Records was and currently is a subsidiary under the UMG corporate umbrella, and its employment of Combs and Hall ties the UMG Defendants directly to the individuals responsible for Plaintiff's harm.  As the Owner of UpTown Records, UMG Defendants provided funding, housing, and transportation for all of UpTown Records artist, like Aaron Hall.

17

Knowledge of Combs' Violent Propensity: UMG Defendants were aware that Combs had a history of violent behavior, yet they continued to employ and promote him. In 1989, Combs raped and brutally beat a woman at Howard University. Instead of terminating his employment, UMG Defendants subsidiary UpTown Records, under then-CEO Andre Harrell, actively took steps to shield him from accountability.

Corporate Protection of Combs: UMG Defendants did not simply ignore Combs' misconduct; they actively hired lawyers in 1989 to cover up his violent assault. Moreover, Harrell personally traveled to Washington, DC, to retrieve Combs and bring him back to New Jersey, ensuring that he remained employed as an A&R executive at UpTown Records—a subsidiary of UMG Defendants.

Eyewitness Account of Combs' 1989 Domestic Violence at Howard University: According to an eyewitness account featured in the docuseries *Fall of Diddy*, Combs was seen violently beating a female student in the courtyard of Howard University. The anonymous witness described the horrifying incident:

> *"We're yelling, 'Get off of her…' He's yelling back, 'Mind your business.' We're yelling back, 'Leave her the f–k alone.'… He pushes her back into the doorway of the dorm. We don't know what's going on in that space, we can't see."*

This brutal public assault further confirms Combs' propensity for violence—a fact that UMG Defendants knew or should have known when they chose to retain and promote him despite clear evidence of his dangerous behavior.

By knowingly retaining and supporting Combs despite his violent history, UMG Defendants created an environment where further abuse was not only foreseeable but inevitable. Their corporate actions directly facilitated the culture of impunity that led to Plaintiff's harm.

UMG Defendants exert substantial control over its subsidiaries, including UpTown Records, which directly employed the individual defendants. UpTown Records, a subsidiary of UMG Defendants, was responsible for hiring and retaining Defendant Sean Combs in an executive role, despite clear knowledge of his violent tendencies.

Under the agency and alter ego doctrines, a parent corporation may be held liable when it exercises direct control over its subsidiaries' conduct. See *United States v. Bestfoods*, 524 U.S. 51, 62 (1998) (holding that a parent company may be liable when it actively manages or directs subsidiary operations). Plaintiff's allegations establish that the UMG Defendants control over UpTown Records extends beyond passive ownership, warranting liability under these doctrines.

18

2.    The UMG Defendants Cannot Evade Liability Simply by Being a Parent Company

Courts have repeatedly held that parent corporations cannot avoid liability when they actively participate in or derive benefits from their subsidiaries' wrongful conduct. See *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984). Plaintiff's claims are grounded in the fact that the UMG Defendants knowingly benefited from and failed to prevent the abuse that occurred within its corporate structure. These allegations are sufficient to survive dismissal.

C.    Defendants' Arguments Are Premature and Inappropriate for a Motion to Dismiss:

Defendants' motion improperly seeks to resolve factual disputes that should be addressed through discovery. Whether UMG Defendants exercised control over the individuals who harmed Plaintiff, whether they benefited from the events in question, and whether they had prior knowledge of misconduct are fact-intensive inquiries that cannot be resolved at this stage. See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002) (holding that a complaint need not contain detailed factual allegations but must only provide fair notice of the claim).

Dismissal at this stage would unfairly deprive Plaintiff of the opportunity to obtain key evidence, including internal communications, employment records, and corporate policies, that are necessary to fully develop the record. Courts have consistently denied motions to dismiss where discovery is needed to establish the full scope of a defendant's involvement. See *Doe v. Schneider*, 667 F. Supp. 2d 524 (E.D. Pa. 2009) (denying motion to dismiss where institutional liability was alleged but discovery was required to determine the extent of control and oversight).

UMG Defendants' argument that Plaintiff's claims should be dismissed under Rule 12(b)(6) is baseless. Plaintiff has sufficiently alleged detailed claims establishing: 1. UMG Defendant's active control and direct financial benefit from UpTown Record's operations, making it liable under agency and alter ego doctrines; 2. UMG Defendants direct role in enabling and failing to prevent Plaintiff's harm, warranting liability under New Jersey law; 3. The need for discovery to further establish corporate oversight, financial incentives, and internal policies that facilitated the abuse.

For these reasons, Plaintiff respectfully requests that this Court deny UMG Defendants' motion to dismiss and allow the claims to proceed to discovery and full adjudication on the merits.

# VI.    OPPOSITION TO UMG DEFENDANTS' ARGUMENT THAT PLAINTIFF'S NEGLIGENCE CLAIMS FAIL TO STATE A CLAIM:

A.    Legal Standard for Negligence Under New Jersey Law:

To establish a claim for negligence, Plaintiff must allege: 1. A duty of care owed by the defendant to the plaintiff; 2. A breach of that duty; 3. Causation (both actual and proximate); and 4. Damages resulting from the breach.  See *Davis v. Devereux Foundation*, 209 N.J. 269, 286-87 (2012). Courts have consistently held that corporate entities can be held liable for their role in fostering environments where harm is foreseeable and preventable. The UMG Defendant's negligence in failing to supervise employees, failing to enforce policies and laws protecting minors, and continuing to support individuals with known violent tendencies clearly satisfies these elements.

B.    UMG Defendants Owed a Duty of Care to Plaintiff:

The UMG Defendant's, as a corporate entity engaged in artist management, event sponsorship, and business operations that directly impacted Plaintiff, owed a duty to protect minors from foreseeable harm. Under New Jersey law, entities that assume a supervisory role over individuals, particularly in professional settings where minors are present, owe a duty of care to those individuals. See *Hardwicke v. American Boychoir School*, 188 N.J. 69, 902 A.2d 900 (2006) (holding that institutions in positions of authority must take reasonable steps to prevent foreseeable harm, especially where minors are involved).

Plaintiff has alleged that: 1. The UMG Defendant's provided financial backing, logistical support (a taxi), and event sponsorship (party that plaintiff attended) that placed minors, including Plaintiff, in harm's way. 2. The UMG Defendant's had direct knowledge of the risk posed by its employees, especially Sean Combs, who had a documented history of violence. 3. The UMG Defendant's failed to implement any safeguards, policies, or oversight to prevent foreseeable harm to minors attending its sponsored events.

These allegations establish that The UMG Defendant's had a duty to ensure that its employees and the environments it sponsored were safe, particularly for vulnerable individuals like Plaintiff.

C.    The UMG Defendant's Breached Its Duty Through Systemic Negligence and Failure to Act:

A breach of duty occurs when a defendant fails to exercise reasonable care in fulfilling its obligations. Here, the UMG Defendant's negligence is evident in its complete failure to act despite numerous warning signs and clear risks.

The UMG Defendant's retained and promoted employees like Sean Combs, despite documented incidents of violent and predatory behavior.  In 1989, The UMG Defendants were aware that Combs had committed a violent assault on a female student at Howard University. Instead of terminating his employment, The UMG Defendant's, through its subsidiary UpTown Records, actively shielded him, allowing him to continue working in a position of power. The UMG Defendant's provided housing, transportation, and funding that directly enabled Combs and Hall to transport Plaintiff across state lines, furnish her with alcohol and drugs, and perpetrate the assaults.

Unlike responsible corporate entities, The UMG Defendant's failed to implement policies to monitor its employees, prevent the exploitation of minors, or investigate misconduct allegations.

These systemic failures unequivocally demonstrate that The UMG Defendant's breached its duty of care.

D.    UMG Defendants Negligence Was the Proximate Cause of Plaintiff's Harm:

To establish proximate cause, Plaintiff must show that UMG Defendant's actions (or inactions) were a substantial factor in bringing about the harm suffered. See *Davis v. Devereux Foundation*, 209 N.J. at 286-87. Here, Plaintiff's allegations directly tie UMG Defendants negligence to her harm: 1. Without UMG Defendants support, Combs and Hall would not have had the resources to transport Plaintiff to New Jersey or provide her with alcohol and intoxicants. 2. UMG Defendants failure to supervise or discipline employees known to pose a risk to minors directly led to Plaintiff's assault. 3. Had UMG Defendants implemented basic protective measures; Plaintiff's harm could have been prevented.

Courts have held corporations liable in similar cases where their failure to act facilitated harm. See *Hardwicke v. American Boychoir School*, 188 N.J. at 100 (finding an institution liable where it failed to protect minors from known risks). Plaintiff has sufficiently alleged that UMG Defendants systemic negligence was a direct and foreseeable cause of her injuries.

21

E.     The UMG Defendant's Arguments Are Premature and Inappropriate for a Motion to Dismiss:

Defendants' motion improperly seeks to resolve factual disputes that require discovery. Whether UMG Defendants actions constituted negligence, whether it had knowledge of employee misconduct, and whether it failed to act responsibly are fact-intensive inquiries that cannot be resolved at this stage. See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002).

The UMG Defendant's policies, internal communications, and employment records are critical to establishing corporate liability. The extent of The UMG Defendant's knowledge and involvement requires discovery to fully develop the factual record, and Courts have consistently denied motions to dismiss where discovery is necessary to determine corporate negligence. See *Doe v. Schneider*, 667 F. Supp. 2d 524 (E.D. Pa. 2009).

The fundamental purpose of discovery is to uncover evidence regarding corporate oversight, policies, and failure to act—all of which are essential to proving Plaintiff's negligence claim.

UMG Defendants' argument that Plaintiff fails to state a negligence claim against The UMG Defendant's is legally unsound. Plaintiff has sufficiently alleged that:  1. The UMG Defendant's owed a duty of care by creating and supporting environments where minors were placed at risk; 2. The UMG Defendant's breached that duty by knowingly enabling dangerous individuals and failing to implement protective measures; 3. The UMG Defendant's negligence was a direct and foreseeable cause of Plaintiff's injuries, making it liable under New Jersey law; and 4. Discovery is necessary to develop the full scope of the UMG Defendant's involvement, making dismissal premature at this stage.

For these reasons, Plaintiff respectfully requests that this Court deny The UMG Defendant's motion to dismiss for failure to state a claim and allow the case to proceed to discovery and adjudication on the merits.

## VII. OPPOSITION TO UMG DEFENDANTS' ARGUMENT THAT PLAINTIFF FAILS TO STATE A CLAIM FOR VICARIOUS LIABILITY:

UMG Defendants argue that Plaintiff fails to state a claim for vicarious liability. This argument is legally and factually deficient. Plaintiff has sufficiently alleged facts demonstrating that UMG Defendants through tier subsidiary UpTown Records, exercised significant control over

the individual defendants, derived financial benefits from their actions, and failed to take reasonable measures to prevent the foreseeable harm that resulted. Accordingly, Plaintiff's vicarious liability claims should not be dismissed.

A.    Legal Standard for Vicarious Liability Under New Jersey Law:

Under New Jersey law, an employer may be held vicariously liable for the tortious conduct of its employees when that conduct is committed within the scope of employment and furthers the employer's business interests. *Carter v. Reynolds*, 175 N.J. 402, 409 (2003). Even if the employee's actions deviate from their assigned duties, vicarious liability may still apply if the misconduct was reasonably connected to their employment. *Di Cosala v. Kay*, 91 N.J. 159, 169 (1982).

Additionally, vicarious liability extends to corporate entities that exercise control over individuals who act on their behalf, knowingly benefit from their actions, or fail to supervise their employees properly. *Hardwicke v. American Boychoir School*, 188 N.J. 69, 100 (2006). Plaintiff's allegations sufficiently establish that UMG Defendants meet these criteria.

B.    UMG Defendants Exercised Control Over Employees:

UMG Defendants exercised significant control over their employees, including Sean Combs and Aaron Hall, through direct oversight, financial support, and the provision of corporate resources. Courts have consistently held that corporate entities can be vicariously liable when they fail to monitor or regulate employees who engage in misconduct within the scope of their employment. See *Hardwicke v. American Boychoir School*, 188 N.J. 69, 100 (2006). Plaintiff has alleged more than sufficient facts to establish that UMG Defendants exercised control over Combs and Hall in ways that directly contributed to the harm she suffered.

C.    UMG Defendants Owned and Controlled UpTown Records

UMG Defendants owned UpTown Records, the entity that directly employed Combs and Hall. As the parent company of UpTown Records, UMG Defendants were responsible for setting corporate policies, overseeing artist management, and ensuring compliance with professional and ethical standards.

Direct Employment and Supervision: UpTown Records, under UMG Defendants' ownership, hired and retained Combs and Hall in high-ranking positions despite their known history of misconduct.

23

Business Infrastructure and Oversight: UMG Defendants provided corporate infrastructure, including contracts, financial backing, and industry connections that enabled Combs and Hall to operate with unchecked authority.

### D.    UMG Defendants Retained and Promoted Combs Despite His Violent History

UMG Defendants had actual knowledge of Combs' propensity for violence, yet they chose to protect him rather than take disciplinary action.

*1989 Howard University Assault*: Combs brutally beat a woman on the campus of Howard University. Instead of terminating his employment, UMG Defendants, through UpTown Records, hired lawyers to shield him from prosecution.

*Andre Harrell's Intervention*: Former CEO of UpTown Records, Andre Harrell, personally traveled to Washington, D.C., to retrieve Combs, bring him back to New Jersey, and reinstate him as an A&R executive despite knowing the extent of his violent behavior.

*Pattern of Protection*: UMG Defendants not only failed to remove Combs from his position but continued to financially and professionally support him, enabling his later predatory behavior that led to Plaintiff's assault.

### E.    UMG Defendants Provided Logistical and Financial Support that Enabled Employee Misconduct

The complaint details how UMG Defendants provided the necessary resources that allowed their employees to engage in misconduct, making their liability clear under vicarious liability principles.

*Financial Backing*: UMG Defendants paid for housing, travel expenses, and event sponsorships that directly facilitated Combs and Hall's ability to target and exploit vulnerable individuals.

*Transportation and Venue Access*: UMG Defendants arranged for accommodations and provided access to properties where the abuse took place.

*Failure to Implement Safeguards*: Despite knowing that Combs and Hall had direct access to minors and young women at corporate-sponsored events, UMG Defendants failed to enforce any oversight, monitoring, or conduct policies that could have prevented foreseeable harm.

By actively enabling, financially supporting, and failing to regulate employees with known violent tendencies, UMG Defendants exercised direct control over Combs and Hall in ways that

make them liable for the resulting harm. These allegations are more than sufficient to state a claim for vicarious liability, and dismissal at this stage would be premature.

F.    The Employees' Conduct Furthered UMG Defendants' Business Interests:

UMG Defendants attempt to distance themselves from the misconduct of their employees by asserting that their actions were outside the scope of employment. This argument is factually and legally deficient. Under New Jersey law, an employer is vicariously liable when an employee's wrongful conduct was incidental to their assigned duties or directly advanced the employer's business interests. See *Lehmann v. Toys "R" Us, Inc.*, 132 N.J. 587, 619 (1993). Plaintiff has plausibly alleged that Combs and Hall's actions were not independent personal pursuits but were, in fact, intrinsically tied to their professional roles, benefiting UMG Defendants in multiple ways.

Hosting High-Profile Events that Enhanced UMG Defendants' Brand and Revenue: UMG Defendants financially supported, promoted, and benefited from events hosted by Combs and Hall, where talent scouting, networking, and entertainment industry connections were cultivated. These corporate-backed events were essential to fostering UMG Defendants' reputation as a dominant force in the music industry, directly increasing its commercial success and visibility. Plaintiff was harmed at one of these very events—an environment curated and endorsed by UMG Defendants, designed to benefit their business.

Recruitment and Exploitation Disguised as Talent Development: Combs and Hall, acting within their roles as talent recruiters and executives, used their positions to attract young individuals under the guise of offering mentorship and career opportunities. The promise of industry access and career advancement was a key component of their professional responsibilities. However, under UMG Defendants' lack of oversight, these promises became a tool for exploitation. Plaintiff's harm resulted directly from this abuse of authority, which was facilitated by UMG Defendants' financial backing and corporate structure.

Leveraging Employees' Public Personas for Corporate Gain: UMG Defendants intentionally cultivated and leveraged the public personas of Combs and Hall to increase brand awareness, record sales, and commercial partnerships. The misconduct perpetrated by these employees occurred in contexts where they were actively representing UMG Defendants, reinforcing their employer's status in the industry. UMG Defendants knowingly reaped financial benefits from their employees' engagement in the entertainment industry, despite clear risks associated with their unsupervised behavior.

25

UMG Defendants' Knowledge and Failure to Act Despite Red Flags:  UMG Defendants had prior knowledge of Combs' violent tendencies, including the 1989 incident at Howard University where he assaulted a female student.   Instead of severing ties with him, UMG Defendants provided legal support, relocated him to New Jersey, and continued to promote his rise in the industry.   This pattern of knowingly enabling high-profile employees with histories of violence created a foreseeable risk of harm to individuals like Plaintiff, making UMG Defendants complicit in the environment that allowed such misconduct to occur.

Corporate Negligence and Systemic Failures:   UMG Defendants failed to establish or enforce safeguards that could have prevented abuse at company-sponsored events. The absence of oversight, training, or intervention in situations involving minor attendees underscores UMG Defendants' reckless disregard for the safety of individuals within their professional orbit. By failing to regulate the conduct of their employees in environments they controlled and financially supported, UMG Defendants allowed their business model to enable, rather than prevent, harm.

Combs and Hall's actions were not personal deviations from their employment; rather, they were enabled, facilitated, and conducted under the authority granted by UMG Defendants in furtherance of their business objectives. UMG Defendants knowingly benefited from the influence and public personas of these employees while deliberately ignoring the risks posed by their unsupervised behavior. These factors establish a direct link between Combs and Hall's misconduct and UMG Defendants' financial and reputational interests, making vicarious liability entirely appropriate in this case.

An employer is vicariously liable when an employee's wrongful conduct was incidental to their assigned duties or furthered the employer's interests. See *Lehmann v. Toys "R" Us, Inc.*, 132 N.J. 587, 619 (1993). Plaintiff alleges that Combs and Hall's actions were closely tied to their professional roles and directly benefited UMG Defendants by:

*Hosting High-Profile Events*: These events, financially backed by UMG Defendants, were designed to enhance their artists' marketability and generate revenue.

*Recruiting Talent and Industry Networking*: Combs and Hall used their roles to lure individuals under the guise of professional mentorship, actions directly connected to their employment.

26

*Enhancing UMG Defendants' Commercial Success*: By cultivating relationships and maintaining a high-profile industry presence, Combs and Hall contributed to UMG Defendants' public image and commercial success.

UMG Defendants not only benefited from these activities but also failed to implement safeguards despite their knowledge of the risks involved.

G.     UMG Defendants' Knowledge and Failure to Act:

UMG Defendants cannot feign ignorance regarding the wrongful conduct of their employees, particularly Sean Combs and Aaron Hall. Plaintiff has sufficiently alleged that UMG Defendants were well aware of the serious risks posed by these individuals and failed to take any meaningful action to prevent foreseeable harm. This systemic negligence and inaction directly contributed to Plaintiff's victimization.

H.     Deliberate Indifference to the Safety of Minors

UMG Defendants, as multinational corporations with extensive legal resources, were fully capable of implementing safeguards to prevent harm but chose not to act.  They failed to: 1. Monitor minors at their evets where alcohol and drugs are provided, and 2. Failure to ensure minors are home safe at the end of the event.

Given the overwhelming evidence of UMG Defendants' knowledge of prior misconduct, failure to supervise employees, and reckless indifference to the safety of minors, they cannot now claim that they should be shielded from liability. Their corporate structure, resources, and direct engagement in the music industry placed them in a position of responsibility, which they actively chose to ignore, leading directly to Plaintiff's harm.  Accordingly, this Court should deny UMG Defendants' motion to dismiss and allow Plaintiff to proceed with discovery to uncover the full extent of their negligence and complicity.

I.     Fact-Intensive Inquiries Preclude Dismissal:

Whether an employee acted within the scope of their employment or furthered their employer's business is a fact-intensive inquiry that cannot be resolved on a motion to dismiss. Courts have consistently held that vicarious liability claims require discovery to assess the full extent of corporate involvement. See *Johnson v. Usdin Louis Co.*, 248 N.J. Super. 525, 529 (App. Div. 1991).

Defendants' motion improperly seeks to prematurely resolve complex factual disputes regarding UMG Defendants' knowledge, control, and involvement in the misconduct at issue. Plaintiff has alleged specific facts that must be tested through discovery, including:

27

A. <u>UMG Defendants' Internal Policies and Oversight Failures</u>
    a. The extent to which UMG Defendants maintained policies regarding employee conduct at events.
    b. Whether UMG Defendants had procedures in place to prevent and address workplace misconduct, and whether those procedures were ignored.
    c. Prior instances where UMG Defendants failed to intervene in known misconduct by their employees.

B. <u>Employment Records and Corporate Hierarchy</u>:
    a. The employment contracts and job descriptions of Sean Combs and Aaron Hall.
    b. The degree of control UMG Defendants exercised over their employees' professional and personal activities.
    c. Whether UMG Defendants explicitly authorized or financially supported activities that led to Plaintiff's harm.

C. <u>Communications and Internal Reports</u>:
    a. Internal emails, meeting records, or correspondence discussing concerns about Combs' and Hall's conduct.
    b. Any reports, complaints, or legal matters within UMG Defendants' corporate structure that referenced prior incidents of abuse, violence, or predatory behavior by Combs or Hall.

D. <u>Financial Records Demonstrating Direct Corporate Benefit</u>:
    a. UMG Defendants' financial support for events, travel, housing, and resources provided to Combs and Hall.
    b. Evidence showing how these corporate-backed resources facilitated their misconduct.
    c. Records reflecting how UMG Defendants profited from the work and public image of Combs and Hall, further tying their actions to the company's business interests.

Courts have routinely denied motions to dismiss where critical evidence of corporate liability is within the defendant's exclusive control and must be explored through discovery. See *Doe v. Schneider*, 667 F. Supp. 2d 524 (E.D. Pa. 2009) (denying dismissal where discovery was needed to determine the extent of corporate involvement in employee misconduct).

Given these outstanding factual issues, dismissal at this stage would be improper and premature. Plaintiff has adequately alleged that UMG Defendants' actions and omissions contributed to the misconduct at issue, and discovery is essential to develop the factual record necessary to fully establish their liability.

For these reasons, UMG Defendants' motion to dismiss must be denied, and Plaintiff must be permitted to proceed with discovery to uncover the full scope of their culpability.

Conclusion

UMG Defendants' argument that Plaintiff fails to state a claim for vicarious liability is legally unsound and factually baseless. Plaintiff has presented compelling allegations that establish

a direct connection between UMG Defendants and the misconduct committed by their employees. The well-pleaded facts demonstrate that:

1. <u>UMG Defendants exercised significant control over Combs and Hall</u>, providing them with the corporate backing, authority, and resources that facilitated the harm Plaintiff suffered.

2. <u>Combs and Hall's actions were within the scope of their employment</u> and directly furthered UMG Defendants' business interests, as their roles included event hosting, talent recruitment, and public relations, all of which were essential to UMG Defendants' corporate objectives.

3. <u>UMG Defendants had prior knowledge of Combs' violent history</u>, including his 1989 assault on a woman at Howard University, and yet actively protected him, provided legal support, and allowed him to continue working in a position of power.

4. <u>UMG Defendants' failure to supervise or implement safeguards despite clear warning signs</u> constitutes systemic negligence that enabled the wrongful conduct.

5. <u>Fact-intensive inquiries regarding corporate oversight, employment records, and financial incentives require discovery</u>, making dismissal at this stage inappropriate.

Vicarious liability claims inherently require an in-depth examination of corporate policies, oversight mechanisms, and the extent to which a company benefits from its employees' conduct. Courts have consistently recognized that such claims cannot be prematurely dismissed without a full factual record. See *Johnson v. Usdin Louis Co.*, 248 N.J. Super. 525, 529 (App. Div. 1991).

Given the serious nature of the allegations, Plaintiff must be afforded the opportunity to develop the record through discovery and prove that UMG Defendants played a critical role in facilitating the abuse that led to her harm. Dismissing these claims at this stage would not only be procedurally improper but would also serve to insulate corporate entities from the consequences of their willful action and inaction.

For these reasons, Plaintiff respectfully requests that this Court deny UMG Defendants' motion to dismiss the vicarious liability claim in its entirety and allow the case to proceed to discovery and full adjudication on the merits.

# VIII. OPPOSITION TO UMG DEFENDANTS' ARGUMENT THAT PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF THE NEW JERSEY CHILD SEXUAL ABUSE ACT

The UMG Defendants argue that Plaintiff fails to state a claim under the New Jersey Child Sexual Abuse Act ("CSAA"), N.J.S.A. 2A:61B-1, contending that they do not meet the statutory definition of liable parties and that Plaintiff has not sufficiently alleged their involvement. This argument is legally unsound and factually incorrect. Plaintiff has adequately alleged that UMG Defendants' conduct falls squarely within the scope of the CSAA, warranting the denial of Defendants' motion to dismiss.

### A. Legal Standard Under the New Jersey Child Sexual Abuse Act

The New Jersey Child Sexual Abuse Act ("CSAA"), N.J.S.A. 2A:61B-1, is a broad remedial statute designed to hold accountable both direct perpetrators of child sexual abuse and institutions or entities that facilitated, enabled, or failed to prevent the abuse. The CSAA imposes liability on any person or entity that knowingly permits or acquiesces in sexual abuse, extending far beyond direct perpetrators to include organizations that negligently created an environment conducive to abuse or failed to intervene. See *Hardwicke v. American Boychoir School*, 188 N.J. 69, 100 (2006). Courts have interpreted the statute expansively, emphasizing that institutional negligence or acquiescence in the abuse of minors is actionable under the law.

The CSAA provides a cause of action for victims of childhood sexual abuse against perpetrators and entities that knowingly or negligently enabled the abuse. The statute states:

> *"A person who commits an act of sexual abuse as defined in this act shall be liable to the victim for damages. Any person who knowingly permits or acquiesces in sexual abuse by another person is also liable."* N.J.S.A. 2A:61B-1(b).

The CSAA extends liability to institutions and individuals who had a duty to protect minors but failed to do so. Courts have interpreted the law broadly, recognizing liability for entities that negligently created or failed to prevent environments where abuse was foreseeable. See *Hardwicke v. American Boychoir School*, 188 N.J. 69, 100 (2006).

### B. UMG Defendants Are Liable Under the CSAA

#### 1. UMG Defendants Created and Maintained an Environment That Enabled Sexual Abuse

The CSAA holds institutions liable when they create or maintain conditions that facilitate the abuse of minors. Here, UMG Defendants did not merely fail to prevent harm; they actively enabled it by providing financial support, employment, and infrastructure that allowed individuals

30

with known histories of misconduct to engage in predatory behavior. Plaintiff has sufficiently alleged that UMG Defendants:

- <u>Employed and protected known predators</u>: UMG Defendants knowingly employed Sean Combs and Aaron Hall despite their documented history of violent and predatory behavior, including Combs' 1989 assault at Howard University.
- <u>Provided financial and logistical support that enabled abuse</u>: UMG Defendants provided housing, transportation, and event sponsorships that allowed their employees to access and victimize minors.
- <u>Failed to implement protective policies or oversight</u>: Despite multiple red flags, UMG Defendants failed to enact any meaningful safeguards to protect minors at industry events, creating an environment in which abuse was foreseeable and preventable.

Under *Hardwicke*, an institution need not directly perpetrate abuse to be held liable under the CSAA; it is sufficient that they created or maintained conditions where abuse could thrive. UMG Defendants' failure to act despite clear warning signs makes them complicit under the statute.

2.    UMG Defendants Had a Duty to Protect Minors Attending Their Events

Entities that host or facilitate events where minors are present assume a duty to protect them from harm. UMG Defendants, by organizing, sponsoring, and financially backing events where minors were exposed to adult entertainers, drugs, alcohol, and abusive employees, owed a heightened duty of care under New Jersey law. See *Doe v. Princeton Univ.*, No. CV 22-5887, 2023 WL 8755232 (D.N.J. Dec. 19, 2023).

UMG Defendants' liability under the CSAA is reinforced by:

- <u>Their active role in enabling abuse</u>: They placed Combs and Hall in positions of power, knowing their predatory tendencies.
- <u>Their failure to monitor and intervene</u>: Despite credible reports of misconduct, UMG Defendants continued to support and promote individuals who posed an obvious danger to minors. Two years after this incident, Sean Combs orchestrated the biggest colleges mass murder in New York City. Defendants awarded Sean Combs his own record label.
- <u>Their systemic negligence in corporate governance</u>: UMG Defendants' failure to implement or enforce industry-standard protections for minors demonstrates a willful disregard for their safety.

New Jersey courts have made clear that liability under the CSAA extends beyond individuals who directly abuse minors; it also applies to entities that knowingly permit abuse to occur under their authority. See *G.A.-H. v. K.G.G.*, 238 N.J. 401 (2019). Here, UMG Defendants' institutional failures directly contributed to Plaintiff's harm, making their argument for dismissal meritless.

31

3.     UMG Defendants' Knowledge of Prior Abuse and Their Failure to Act

Liability under the CSAA is further reinforced by UMG Defendants' longstanding knowledge of

their employees' misconduct and their deliberate decision to do nothing. Plaintiff has alleged that:

- <u>UMG Defendants were aware of Combs' history of violence and predatory behavior</u>: They
  hired lawyers in 1989 to cover up Combs' brutal beating of a woman at Howard University
  and later reinstalled him in a position of power at UpTown Records.
- <u>UMG Defendants had direct notice of the risks posed by their employees</u>: Numerous
  reports, industry warnings, and legal actions against Combs and Hall should have prompted
  intervention.
- <u>UMG Defendants facilitated continued misconduct</u>: Instead of holding Combs
  accountable, they shielded him from consequences, reinforcing a corporate culture where
  abuse was tolerated and concealed.

New Jersey courts have recognized that institutions that fail to act on credible allegations

of abuse may be held liable under the CSAA. See *Doe v. Princeton Univ.*, 2023 WL 8755232.

Here, UMG Defendants' decision to protect known predators rather than implement safeguards

makes them culpable under the statute.

4.     UMG Defendants Created and Maintained an Environment That Enabled
       Sexual Abuse

UMG Defendants cannot evade liability by claiming they were not directly involved in the

abuse. The CSAA imposes liability on entities that permitted or facilitated an environment in

which abuse occurred. Plaintiff has sufficiently alleged that UMG Defendants:

- <u>Employed and financially supported individuals with known histories of misconduct</u>,
  including Defendant Sean Combs, who had a well-documented history of violence and
  sexual misconduct.
- <u>Provided housing, transportation, and resources</u> that enabled their employees to lure and
  victimize minors, including Plaintiff.
- <u>Failed to implement or enforce policies protecting minors</u> despite clear warning signs that
  their employees were engaging in exploitative conduct.  They allowed Plaintiff to have
  alcohol and marijuana.

Under *Hardwicke*, liability is not limited to direct perpetrators but extends to institutions

that negligently allowed abuse to occur under their watch. UMG Defendants knowingly created

conditions that facilitated Plaintiff's abuse, making them liable under the CSAA.

5.     UMG Defendants Had a Duty to Protect Minors Attending Their Events

New Jersey courts have consistently held that institutions and corporate entities owe a duty

of care to minors who participate in their programs or events. See *Doe v. Princeton Univ.*, No. CV

22-5887, 2023 WL 8755232 (D.N.J. Dec. 19, 2023). UMG Defendants, by hosting, sponsoring,

and funding events where minors were present, assumed a duty to protect them from foreseeable

harm. Their failure to take reasonable steps to prevent the abuse of minors constitutes a direct violation of the CSAA.

- UMG Defendants permitted Combs and Hall to attend and host events under their corporate authority, knowing that they posed a risk to minors.
- The CSAA applies to any person or entity that knowingly permits or acquiesces in sexual abuse, and UMG Defendants' actions and inactions fall squarely within this definition.

      6.      UMG Defendants' Knowledge of Prior Abuse and Their Failure to Act

Plaintiff has alleged that UMG Defendants were aware of prior allegations against Combs and Hall yet continued to employ, promote, and protect them. UMG Defendants hired lawyers in 1989 to cover up Combs' violent assault of a woman at Howard University, further demonstrating their knowledge of his predatory nature. Despite this knowledge, they allowed Combs to continue working at UpTown Records and enabled his predatory conduct through corporate resources and financial backing.

New Jersey courts have recognized that liability under the CSAA extends to entities that knowingly allowed known predators access to minors. See *G.A.-H. v. K.G.G.*, 238 N.J. 401 (2019). UMG Defendants' repeated failure to act on credible allegations of misconduct establishes their liability under the statute.

## C.     Defendants' Motion to Dismiss is Premature and Factually Deficient

Defendants' motion to dismiss improperly seeks to resolve factual disputes that should be addressed through discovery. Courts have consistently held that institutional liability, knowledge, and corporate negligence require a fully developed factual record before dismissal can be considered. See *Doe v. Schneider*, 667 F. Supp. 2d 524, 531 (E.D. Pa. 2009).

Plaintiff has provided substantial factual allegations, including:

- UMG Defendants' direct financial and logistical support for the individuals responsible for the abuse;
- UMG Defendants' prior knowledge of their employees' violent conduct and failure to implement safeguards;
- The role UMG Defendants played in shielding perpetrators from accountability.

These allegations are more than sufficient to warrant discovery and preclude dismissal at this stage. Courts have repeatedly denied motions to dismiss under similar circumstances, recognizing that institutional failures must be fully explored through evidentiary development before liability can be assessed. See *Hardwicke v. American Boychoir School*, 188 N.J. at 96 (holding that a school's failure to prevent abuse warranted further factual inquiry before dismissal).

Defendants' argument that Plaintiff has failed to state a claim is premature, legally deficient, and contradicted by well-established precedent. This Court should deny their motion and allow Plaintiff to proceed with discovery to fully substantiate her claims.

Conclusion

UMG Defendants' argument that Plaintiff fails to state a claim under the CSAA is legally untenable. Plaintiff has adequately alleged that:

1. UMG Defendants created and maintained an environment that enabled abuse;

2. They had a duty to protect minors attending their events and failed to do so;

3. They had prior knowledge of their employees' misconduct and took no action;

4. New Jersey law and precedent establish corporate liability under the CSAA.

For these reasons, Plaintiff respectfully requests that this Court deny UMG Defendants' motion to dismiss and allow the claims to proceed to discovery and full adjudication on the merits.

## IX.  OPPOSITION TO UMG DEFENDANTS' ARGUMENT THAT PLAINTIFF FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS:

The UMG Defendants argue that Plaintiff fails to state a claim for Intentional Infliction of Emotional Distress (IIED). However, this argument is legally flawed, factually baseless, and contradicts well-established principles of New Jersey law. Plaintiff has sufficiently alleged that UMG Defendants' actions and omissions meet the required elements of an IIED claim, warranting denial of Defendants' motion to dismiss.

A.    Legal Standard for Intentional Infliction of Emotional Distress in New Jersey

Under New Jersey law, a claim for IIED requires a plaintiff to demonstrate: 1. Extreme and outrageous conduct by the defendant; 2. The defendant acted intentionally or recklessly; 3. The conduct caused the plaintiff severe emotional distress; and 4. The emotional distress was so severe that no reasonable person could be expected to endure it. See *Buckley v. Trenton Saving Fund Soc'y*, 111 N.J. 355, 366 (1988).  New Jersey courts have repeatedly emphasized that when the conduct involves the abuse of power, preying on vulnerable individuals, or a failure to act despite foreseeable harm, the threshold for IIED is satisfied. See *Taylor v. Metzger*, 152 N.J. 490, 509 (1998).

34

Plaintiff's allegations clearly meet and exceed this standard.

### B.     UMG Defendants' Conduct Was Extreme and Outrageous

New Jersey law defines extreme and outrageous conduct as behavior that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious, and utterly intolerable in a civilized society." *Taylor v. Metzger*, 152 N.J. 490, 509 (1998). UMG Defendants' actions, as detailed in the complaint, meet and exceed this threshold.

### C.     UMG Defendants Actively Facilitated and Enabled the Abuse

UMG Defendants did not merely fail to prevent misconduct; they actively facilitated and enabled the conditions that led to Plaintiff's harm by: 1. Providing financial backing, housing, and event sponsorship to individuals with a known history of violence and predatory behavior, including Sean Combs and Aaron Hall; 2. Ignoring prior complaints and industry warnings about Combs' abusive behavior, including documented reports of violence dating back to his time at Howard University in 1989; 3. Continuing to employ and support individuals known for exploiting minors, despite having the corporate power to terminate or sanction them.

### D.     UMG Defendants Created an Environment of Exploitation

UMG Defendants allowed their events to become breeding grounds for predatory conduct, where alcohol and drugs were freely provided to minors, increasing their vulnerability to abuse. They failed to implement any security measures, oversight, or policies to prevent minors from being exposed to high-risk environments at their corporate-sponsored events.  By maintaining a corporate culture that prioritized financial success over safety, they created a climate of impunity where sexual exploitation thrived unchecked.

This conduct is not only outrageous—it is criminally reckless. It demonstrates a pattern of deliberate indifference to the welfare of minors and should be deemed sufficiently extreme to support an IIED claim.  New Jersey law defines extreme and outrageous conduct as behavior that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious, and utterly intolerable in a civilized society." *Id.*

Here, Plaintiff has alleged multiple instances of extreme and outrageous conduct by UMG Defendants, including:   1.  Facilitating an Environment of Exploitation: UMG Defendants knowingly provided financial backing, housing, and logistical support to employees with known histories of misconduct, including Defendant Sean Combs. They continued to support these individuals despite their violent and abusive behavior. 2. Failure to Supervise Employees and

Protect Minors: UMG Defendants had the authority and obligation to monitor the conduct of their employees but failed to implement any meaningful protections. Their inaction allowed an environment where minors, including Plaintiff, were at risk of abuse. 3. Providing Intoxicants to Minors: The provision of alcohol and marijuana to a minor, facilitated by UMG Defendants' employees at events they sponsored, exemplifies reckless disregard for Plaintiff's safety and well-being. Corporate Complicity in Concealing Abuse: UMG Defendants knew or should have known about prior allegations of sexual violence involving Combs and Hall, yet they continued to employ, fund, and promote them. Worse, they actively covered up violent incidents, including the 1989 assault at Howard University, where Combs brutally beat a woman—a crime for which UMG Defendants provided legal protection.

This pattern of misconduct, corporate indifference, and failure to intervene is the very definition of extreme and outrageous conduct under New Jersey law.

E.    UMG Defendants Acted Intentionally or Recklessly

Intentional infliction of emotional distress requires proof that the defendant either intended to cause harm or acted with reckless disregard for the likelihood that harm would occur. *Buckley v. Trenton Saving Fund Soc'y*, 111 N.J. 355, 366 (1988). UMG Defendants' conduct demonstrates both.

1.    Knowledge of Abuse and Failure to Act

UMG Defendants were fully aware of Combs' violent history, including his 1989 assault at Howard University, yet they chose to rehire and promote him at UpTown Records. They then facilitated the establishment of his own record label, Bad Boy Records, LLC. They ignored credible reports of sexual abuse involving their employees, failing to investigate or discipline known predators. Their decision to continue funding, protecting, and enabling Combs and Hall—despite overwhelming evidence of their misconduct—amounts to a reckless disregard for the safety of minors.

2.    Deliberate Corporate Decisions That Facilitated Harm

Rather than taking corrective action, UMG Defendants rewarded Combs and Hall by expanding their influence within the company. They provided legal and financial cover to shield perpetrators from consequences, including hiring attorneys to defend Combs after his assault at Howard University. They knowingly allowed their corporate brand and resources to be used in a manner that directly facilitated sexual exploitation.

UMG Defendants did not merely fail to prevent abuse; they took affirmative steps to enable and protect the perpetrators. Their reckless disregard for foreseeable harm satisfies the intent requirement for an IIED claim.

To satisfy this element, Plaintiff must show that UMG Defendants acted intentionally to cause distress or with reckless disregard of the likelihood that distress would result. See *Taylor v. Metzger*, 152 N.J. at 508.

UMG Defendants had knowledge of prior abuse and still enabled it: By continuing to employ and financially support known predators, UMG Defendants acted with a reckless disregard for the safety of minors, including Plaintiff. Deliberate indifference to risk factors: Despite clear warning signs, statues, and laws that prohibit providing alcohol and marijuana to minors, UMG Defendants failed to take preventative measures, allowing abuse to occur unchecked. Corporate decisions that prioritized profit over human safety: The continued endorsement of Combs and Hall, despite mounting allegations, demonstrates an intentional or reckless prioritization of financial interests over the well-being of victims.

The UMG Defendants learned nothing from Sean Combs 4 decades or depravity. Their focus is and has always been to make money. In 2024, a 13-year-old girl accused Sean Combs and Jay-Z of brutally raping her in 2000. A year prior to raping a 13-year-old child, Sean Combs physically assaulted UMG's executive, Steve Stoute with a Champaigne bottle and baseball bat.

As recently as 2022, UMG Defendants provided Sean Combs with $1.3 millions dollars which he used to purchase drugs, baby oil, and prostitutes. The UMG Defendants admittedly, failed to provide oversite to Sean Combs. The $1.3 million dollars was supposed to be reimbursement for expenses associated with creating the Love Album. Well, at the time they paid him the $1.3 Million Dollars, Sean Combs did not create a beat, much less an album.

By any standard, this conduct satisfies the intent requirement for an IIED claim.

F.     Plaintiff Suffered Severe Emotional Distress

Severe emotional distress under New Jersey law includes psychological trauma so profound that "no reasonable person could be expected to endure it." *Buckley v. Trenton Saving Fund Soc'y*, 111 N.J. 355, 366 (1988). Plaintiff's suffering is well-documented and long-lasting, including: 1. Post-Traumatic Stress Disorder (PTSD), resulting in persistent flashbacks, anxiety, and emotional instability. Being raped as aa child, has impacted the way Plaintiff has interacted with men the entirety of her life. Plaintiff's medical records outline these facts. 2. Clinical

depression and prolonged suicidal ideation, leading to significant personal and professional setbacks. Plaintiffs educational and professional dreams and aspirations was permanently derailed due to the negligence of the UMG Defendants. 3. Loss of trust, security, and the ability to form meaningful relationships, further exacerbating the long-term effects of the trauma. 4. Ongoing therapy and medical treatment, confirming the depth and severity of her distress.

Courts have consistently found that sexual violence, corporate complicity, and the betrayal of trust by powerful institutions result in the type of severe emotional distress required for an IIED claim. See *Aly v. Garcia*, 333 N.J. Super. 195, 204 (App. Div. 2000). Plaintiff's symptoms are not speculative; they are a direct consequence of Defendants' extreme and outrageous conduct.

These conditions, which significantly interfere with Plaintiff's daily life, clearly meet the severity requirement under New Jersey law. See *Aly v. Garcia*, 333 N.J. Super. 195, 204 (App. Div. 2000).

G.    Defendants' Motion to Dismiss is Premature and Inappropriate

As previously outlined above, UMG Defendants' motion improperly seeks to resolve factual disputes at the motion to dismiss stage. Courts have consistently held that whether conduct is "extreme and outrageous" and whether distress is "severe" are fact-intensive inquiries that require a developed record. See *Hardwicke v. American Boychoir School*, 188 N.J. at 96.

Plaintiff has provided detailed factual allegations, including: 1. UMG Defendants' knowledge of past abuse and their failure to intervene; 2. The direct facilitation of environments where abuse was encouraged; and 3. The corporate infrastructure that concealed misconduct rather than addressing it.

These allegations warrant discovery and preclude dismissal at this early stage.

Conclusion

UMG Defendants' argument that Plaintiff fails to state a claim for IIED is not only legally deficient but also morally reprehensible. Plaintiff has adequately alleged that:

1.  UMG Defendants engaged in extreme and outrageous conduct (giving marijuana and alcohol to a minor) by knowingly facilitating an environment where sexual abuse thrived.

2.  They acted intentionally or recklessly by ignoring reports of misconduct and taking affirmative steps to shield known predators.

3.  Plaintiff has suffered severe and long-lasting emotional distress, meeting the legal standard required for IIED.

4. New Jersey law supports corporate liability for IIED in cases of systemic negligence and abuse.

Defendants' motion to dismiss should be denied in full, and this case should proceed to discovery so that the full extent of UMG Defendants' culpability can be revealed and addressed in a court of law.

# X. OPPOSITION TO UMG DEFENDANTS' ARGUMENT THAT PLAINTIFF FAILS TO STATE A CLAIM FOR MANN ACT VIOLATIONS

The UMG Defendants argue that Plaintiff fails to state a claim under the Mann Act, 18 U.S.C. §§ 2421–2423, contending that Plaintiff has not sufficiently alleged their involvement in the unlawful transportation of a minor for illicit purposes. This argument is both legally flawed and factually inaccurate. Plaintiff has plausibly alleged that UMG Defendants directly facilitated, enabled, and benefitted from the transportation of Plaintiff across state lines, making their motion to dismiss meritless and premature.

A.    Legal Standard Under the Mann Act

The Mann Act, codified at 18 U.S.C. §§ 2421–2423, is a broad federal statute designed to combat human trafficking and the sexual exploitation of minors. It prohibits knowingly transporting any individual across state lines for purposes of engaging in unlawful sexual activity and extends liability to those who facilitate or enable such transportation. The statute encompasses several provisions, including:

- 18 U.S.C. § 2421: Criminalizes the transportation of individuals for the purpose of prostitution or any criminal sexual activity.
- 18 U.S.C. § 2422(b): Prohibits coercing, enticing, or persuading a minor to travel across state lines for illicit sexual conduct.
- 18 U.S.C. § 2423(a): Specifically prohibits knowingly transporting a minor with intent to engage in unlawful sexual activity.

Additionally, the Trafficking Victims Protection Reauthorization Act (TVPRA) and 18 U.S.C. § 2255 provide a civil remedy for victims of Mann Act violations, allowing survivors to seek damages from any person or entity that knowingly participated in or facilitated the exploitation. See *Ditullio v. Boehm*, 662 F.3d 1091, 1097 (9th Cir. 2011) (holding that civil remedies are available for victims of sexual trafficking).

39

Given the broad reach of the Mann Act and its civil enforcement mechanisms, Plaintiff's allegations sufficiently establish a claim against UMG Defendants, who knowingly facilitated and benefitted from the unlawful transportation of a minor for illicit purposes.

The Mann Act, codified at 18 U.S.C. §§ 2421–2423, prohibits the knowing transportation of any individual across state lines for purposes of engaging in unlawful sexual activity. Specifically:

- 18 U.S.C. § 2421 criminalizes knowingly transporting any individual across state lines with intent to engage in prostitution or any criminal sexual activity.
- 18 U.S.C. § 2422(b) prohibits coercing or enticing a minor to travel across state lines for illicit sexual conduct.
- 18 U.S.C. § 2423(a) prohibits knowingly transporting a minor with intent to engage in unlawful sexual activity.

A civil remedy for Mann Act violations is explicitly available under 18 U.S.C. § 2255, which allows victims to seek damages against those who violated trafficking and exploitation statutes. Plaintiff's allegations, when taken as true, establish that UMG Defendants knowingly facilitated the transportation of Plaintiff from New York to New Jersey, where she was intoxicated and sexually assaulted. These allegations satisfy the required elements for a Mann Act claim, and UMG Defendants' motion should be denied.

### B.    UMG Defendants Knowingly Facilitated the Transportation of Plaintiff Across State Lines

1.    UMG Defendants Provided the Means and Resources for Interstate Travel

The Mann Act does not require direct physical transportation—it applies to entities that knowingly facilitate, finance, or enable interstate travel for illicit purposes. Plaintiff has plausibly alleged that UMG Defendants knowingly enabled the transportation of Plaintiff from New York to New Jersey, where she was intoxicated and sexually assaulted. Specifically, Plaintiff alleges that:  1. UMG Defendants provided financial and logistical support (a taxi) to Defendants Sean Combs and Aaron Hall, including funding for events, travel arrangements, and housing accommodations. 2. UMG Defendants subsidized residences and transportation in New Jersey for their employees, facilitating the environment in which the abuse occurred. 3. UMG Defendants permitted the use of corporate resources, including private vehicles and company-funded travel, which were directly utilized to transport Plaintiff across state lines.

Federal courts have held that financial and logistical support constitutes "facilitation" under the Mann Act, making corporations liable when they enable or benefit from illicit transportation.

40

See *United States v. Holcombe*, 883 F.3d 12, 18 (2d Cir. 2018) (finding that funding and facilitating illicit transportation met the Mann Act standard).

### C.    UMG Defendants Knew or Should Have Known the Purpose of the Transportation

A defendant does not need explicit knowledge of sexual abuse to be liable under the Mann Act; it is sufficient that they knowingly enabled transportation that foreseeably led to exploitation. Plaintiff's allegations make clear that UMG Defendants: 1. Knew of prior sexual misconduct allegations against Combs and Hall and continued to provide them with the means to engage in predatory conduct. 2. Had a documented history of hiring lawyers to cover up Combs' violent conduct, including his 1989 assault at Howard University, yet still retained him in a position of power. 3. Failed to implement safeguards to prevent known r*isks*, such as policies prohibiting the use of corporate resources for non-business activities involving minors.

In *United States v. Masha*, 990 F.3d 1005, 1014 (7th Cir. 2021), the court held that reckless disregard for foreseeable harm satisfies the knowledge requirement under the Mann Act. UMG Defendants' failure to prevent known risks makes them complicit in the unlawful transportation that led to Plaintiff's abuse.

### D.    UMG Defendants Directly Benefitted from the Transportation and Exploitation

#### 1.    UMG Defendants Used Events as Recruitment and Networking Platforms

The Mann Act extends liability to corporate entities that facilitate transportation and derive financial or reputational benefits from exploitation. Plaintiff has sufficiently alleged that UMG Defendants: 1. Organized, funded, and sponsored events where minors were placed in harm's way, knowing that employees like Combs and Hall would use these settings for predatory purposes. 2. Allowed employees to use corporate authority to lure minors under the guise of music industry opportunities, creating an environment where Plaintiff and others were vulnerable to abuse. 3. Financially profited from maintaining relationships with their employees, including Combs and Hall, whose industry stature generated revenue for UMG Defendants.

Federal courts have consistently held that entities that benefit from sexual exploitation, even indirectly, can be held liable under the Mann Act. See *United States v. Evans*, 476 F.3d 1176, 1180 (11th Cir. 2007) (holding that knowingly benefitting from illicit activities that involve interstate travel constitutes a violation).

41

2.     UMG Defendants Used Events as Recruitment Tools for the Entertainment Industry

The Mann Act's reach extends beyond direct perpetrators—it encompasses corporate entities that benefit from or facilitate the transportation of minors for illicit purposes. Plaintiff has plausibly alleged that: 1. UMG Defendants used corporate-sponsored events to cultivate talent and create business opportunities; 2.  These events placed minors like Plaintiff in situations where they were vulnerable to sexual abuse by UMG-affiliated employees; and 3. UMG Defendants profited from these environments by maintaining industry relationships and enabling their employees to expand their influence in the entertainment world.

This aligns with legal precedent that holds third parties liable under the Mann Act when they enable transportation and gain financially or reputationally from the resulting exploitation. See *United States v. Evans*, 476 F.3d 1176, 1180 (11th Cir. 2007) (holding that facilitating and benefitting from interstate travel that results in sexual exploitation constitutes a violation).

3.     UMG Defendants Failed to Prevent Abuse Despite Clear Warning Signs

UMG Defendants' complicity is further demonstrated by their deliberate inaction despite mounting evidence of abuse: 1. <u>They continued to employ and promote individuals with known histories of misconduct</u>, even after multiple complaints. 2. <u>They did not enforce corporate policies to prevent sexual exploitation and drug use</u>, despite having the ability to implement safeguards. 3. <u>They failed to intervene when their employees misused corporate-sponsored events</u>, allowing the cycle of abuse to continue unimpeded.

This aligns with *United States v. Masha*, which held that corporate entities that enable illicit transportation by omission or failure to act can be held liable under the Mann Act.

E.     Defendants' Motion to Dismiss is Premature and Legally Deficient

Defendants' motion ignores well-established legal precedent confirming that Mann Act claims require fact-intensive inquiries that cannot be resolved at the dismissal stage. Courts have repeatedly held that corporate liability for sexual exploitation requires discovery to determine the extent of an entity's involvement. See *Doe v. Schneider*, 667 F. Supp. 2d 524, 531 (E.D. Pa. 2009) (holding that corporate failure to prevent sexual exploitation warrants discovery).

At this stage, Plaintiff has sufficiently alleged: 1. UMG Defendants' financial, logistical, and corporate involvement in Plaintiff's transportation; 2. Their knowledge and willful blindness to the risks of their employees' predatory conduct; and 3. Their failure to act, which directly enabled the unlawful transportation and abuse.

42

UMG Defendants' attempt to dismiss this claim prematurely is legally unsound and should be denied.

Conclusion

UMG Defendants' argument that Plaintiff fails to state a claim under the Mann Act is legally and factually defective. Plaintiff has sufficiently alleged that: 1. UMG Defendants facilitated and funded the transportation of Plaintiff across state lines, enabling her exploitation; 2. They knew or should have known that the transportation would result in sexual abuse; 3. They financially and reputationally benefitted from maintaining environments where such conduct was foreseeable; and 4. Their failure to act, despite numerous red flags, constitutes reckless indifference and satisfies the requirements for a Mann Act violation.

F.    Request for Leave to Amend

In the alternative, should this Court find any deficiencies in Plaintiff's pleading of the Mann Act cause of action, Plaintiff respectfully requests leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). Courts liberally grant leave to amend, particularly where amendment would allow a plaintiff to properly plead a claim under the applicable Mann Act civil statutes, ensuring that justice is served. See *Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that leave to amend should be freely given when justice so requires). Plaintiff is prepared to provide any additional factual allegations necessary to clarify the claims and ensure compliance with the statutory requirements.

For these reasons, Plaintiff respectfully requests that this Court deny UMG Defendants' motion to dismiss and allow this claim to proceed to discovery and full adjudication on the merits.

<u>OPPOSITION TO SEAN COMBS MOTION TO DISMISS</u>

## XI.   OPPOSITION TO DEFENDANT SEAN COMBS' ARGUMENT THAT THE FAC SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION:

Defendant Sean Combs argues that the First Amended Complaint (FAC) should be dismissed against him for lack of personal jurisdiction. However, this argument is both legally and factually deficient. Plaintiff has sufficiently alleged that Combs purposefully availed himself of the forum state, engaged in substantial activities within New Jersey, and maintained systematic and deliberate contacts that subject him to both specific and general jurisdiction in this Court. Accordingly, Defendant's motion should be denied in its entirety.

A.    Legal Standard for Personal Jurisdiction

A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the defendant has sufficient minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. See *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Jurisdiction can be established through specific jurisdiction or general jurisdiction. See *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). Courts consider both the nature and extent of a defendant's contacts with the forum state in making this determination. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the defendant has sufficient minimum contacts with the forum state and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. See *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Personal jurisdiction may be established through general jurisdiction or specific jurisdiction. See *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). Courts consider both the quantity and quality of a defendant's contacts with the forum state to determine whether jurisdiction is proper. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the defendant has sufficient minimum contacts with the forum state and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. See *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Personal jurisdiction

44

may be established through general jurisdiction or specific jurisdiction. See *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

## XII.  This Court Has Specific Jurisdiction Over Sean Combs

### A.  Combs Purposefully Availed Himself of New Jersey

Specific jurisdiction exists when a defendant "purposefully directed" his activities at the forum state and the litigation arises out of or relates to those activities. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 357 (2021). Plaintiff has sufficiently alleged that Combs: 1. *Knowingly transported Plaintiff across state lines into New Jersey* for the purpose of engaging in unlawful sexual conduct, which is a key factor supporting jurisdiction under *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); 2. *Hosted and attended events in New Jersey* where minors, including Plaintiff, were intoxicated and sexually exploited; 3. *Utilized corporate resources, housing, and transportation based in New Jersey* to facilitate his misconduct; and 4. *Engaged in systematic and deliberate activities in New Jersey*, demonstrating his ongoing presence and connections to the forum state.

These allegations establish that Combs deliberately directed his conduct toward New Jersey, making it foreseeable that he would be hauled into court in this jurisdiction.

### B.  Plaintiff's Claims Arise Directly from Combs' Conduct in New Jersey

For specific jurisdiction to apply, a plaintiff's injuries must "arise out of or relate to" the defendant's forum-related conduct. *Ford Motor Co.*, 592 U.S. at 357. Here, Plaintiff's allegations establish that: 1. *Combs personally transported Plaintiff to New Jersey*, an action that directly resulted in her injuries; 2. *The harm suffered by Plaintiff occurred in New Jersey*, as a direct consequence of Combs' purposeful acts, and 3. *Combs used corporate sponsorships and business ties* within New Jersey to facilitate his activities, further establishing his ties to the forum state.

These facts demonstrate that Plaintiff's claims directly result from Combs' intentional conduct within the forum state, satisfying the requirements for specific jurisdiction.

### C.  Exercising Jurisdiction Over Combs Comports with Fair Play and Substantial Justice

Once minimum contacts are established, courts assess whether the exercise of jurisdiction is reasonable. See *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Courts consider: 1. *The burden on the defendant*: Combs, a national figure with extensive business dealings in multiple states, will not suffer undue hardship litigating in New Jersey; 2. *The forum*

*state's interest*: New Jersey has a compelling interest in protecting minors from sexual exploitation and providing a forum for victims to seek redress; and 3. *Plaintiff's interest in obtaining relief*: Plaintiff has a strong interest in pursuing justice in the jurisdiction where substantial portions of the abuse occurred.

Each of these factors weighs in favor of this Court's exercise of jurisdiction over Combs.

## XIII. Combs' Extensive Business Operations Justify Jurisdiction

A court may exercise general jurisdiction over a defendant when his affiliations with the forum state are so continuous and systematic that he is essentially at home in the forum. *Daimler AG v. Bauman*, 571 U.S. at 137.

Plaintiff has alleged that Combs: 1. Conducted significant business operations in New Jersey, including entertainment-related activities and corporate engagements that furthered his commercial interests; 2. Leveraged New Jersey-based resources for personal and professional gain, including using corporate housing, event sponsorships, and financial backing from entities with a presence in the state; 3. Built long-standing industry relationships within New Jersey, solidifying his systematic and continuous contacts with the forum. Upon information and belief, Defendant Combs owns property in New Jersey.

Courts have held that extensive and sustained economic and professional ties to a forum support general jurisdiction. See *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445 (1952). Combs' extensive operations in New Jersey meet this standard.

## XIV. Defendant's Motion to Dismiss Is Premature and Legally Deficient

Combs' motion to dismiss improperly seeks to resolve factual disputes that should be developed through discovery. Jurisdictional determinations require fact-intensive inquiries that cannot be resolved at the motion to dismiss stage. See *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009).

At this stage, Plaintiff has alleged more than sufficient facts demonstrating Combs' significant contacts with New Jersey. Further discovery will reveal additional evidence confirming: 1. Combs' extensive business dealings in the state, including promotional events and corporate partnerships. 2. His use of New Jersey-based resources to facilitate his unlawful conduct. 3. The deep economic ties between Combs' enterprises and the New Jersey market.

46

Courts routinely deny motions to dismiss when jurisdictional discovery is needed to uncover the full extent of a defendant's contacts with the forum. See *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (holding that plaintiffs are entitled to jurisdictional discovery when allegations suggest a reasonable basis for personal jurisdiction).

Dismissal at this stage would unfairly deprive Plaintiff of the opportunity to obtain key jurisdictional evidence, making Combs' motion legally untenable.

Conclusion

Combs' argument that this Court lacks personal jurisdiction is legally and factually without merit. Plaintiff has sufficiently alleged that:

1. Specific jurisdiction exists because Combs purposefully availed himself of New Jersey, and Plaintiff's injuries directly arise from his forum-related conduct;

2. General jurisdiction is proper due to Combs' continuous and systematic business operations and presence in the state;

3. Exercising jurisdiction over Combs is fair and reasonable, given New Jersey's compelling interest in protecting minors from sexual exploitation; and

4. Combs' motion to dismiss is premature, as jurisdictional discovery is necessary to fully develop the factual record.

For these reasons, Plaintiff respectfully requests that this Court deny Combs' motion to dismiss for lack of personal jurisdiction and allow the case to proceed.

# XV. OPPOSITION TO SEAN COMBS' ARGUMENT THAT PLAINTIFF'S ALLEGATION THAT THE TORTIOUS CONDUCT OCCURRED IN NEW JERSEY SHOULD NOT BE CREDITED:

Defendant Sean Combs argues that Plaintiff's allegations regarding the location of the tortious conduct should not be credited. This argument is legally and factually baseless. Plaintiff's complaint clearly and plausibly alleges that the tortious conduct—including sexual assault, physical abuse, and related misconduct—occurred in New Jersey. Defendant's attempt to dispute these well-pleaded allegations at the motion to dismiss stage is improper and unsupported by controlling law.

## A.    Legal Standard for Crediting Well-Pleaded Allegations

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the court to accept all well-pleaded factual allegations as true and to construe them in the light most favorable

to the plaintiff. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At this stage, a court does not assess the truthfulness of allegations but rather determines whether the allegations plausibly state a claim for relief. See *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Courts have consistently held that factual determinations regarding venue and jurisdiction are inappropriate at the motion to dismiss stage and must instead be resolved through discovery. See *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009).

Defendant's contention that Plaintiff's allegations regarding New Jersey should not be credited contradicts these well-established principles. The pleadings clearly and unambiguously state that the events in question took place in New Jersey, which must be accepted as true at this stage of litigation.

### B.    Plaintiff's Allegations Clearly Establish New Jersey as the Location of the Tortious Conduct

Plaintiff's complaint sets forth detailed, specific allegations establishing that the tortious conduct—including sexual assault, physical abuse, and related misconduct—occurred in New Jersey. Defendant Combs' attempt to discredit these allegations is both procedurally improper and factually unfounded.

Defendant's Use of New Jersey Residences: Plaintiff was transported to a New Jersey residence, owned or subsidized by Combs or his associates, where she was intoxicated and assaulted.

Corporate-Sponsored Events in New Jersey: UMG Defendants, including Sean Combs, hosted and attended music industry events in or near New Jersey where minors were provided with alcohol and exposed to predatory conduct. These events were instrumental in facilitating Plaintiff's abuse.

Interstate Transportation for Criminal Purposes: Plaintiff was deliberately moved across state lines from New York to New Jersey, satisfying the jurisdictional requirement for federal and state claims, including violations of the Mann Act, 18 U.S.C. § 2421.

New Jersey Law Governs the Claims: The acts described in the complaint fall squarely under New Jersey's criminal and civil statutes on sexual assault and child endangerment, further solidifying New Jersey's jurisdiction. See N.J.S.A. 2C:14-2.

Defendant Combs' presence, actions, and use of corporate resources in New Jersey directly tie him to the forum state, making any argument for dismissal baseless and premature.

48

C.    Defendant's Argument Improperly Invites a Premature Factual Dispute

Defendant Combs improperly seeks to challenge Plaintiff's factual allegations regarding the location of the abuse, despite clear legal precedent prohibiting such determinations at the motion to dismiss stage. Courts have repeatedly held that venue and jurisdictional facts should be resolved through evidentiary development, not pleadings. See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("Rule 8(a) requires only a short and plain statement of the claim; factual disputes must be resolved at later stages of litigation.").

Moreover, Defendant's argument ignores binding precedent requiring courts to credit Plaintiff's well-pleaded allegations. See *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) ("A complaint need only allege sufficient factual matter to make the claim plausible; factual challenges must await summary judgment or trial.").

If Defendant seeks to dispute Plaintiff's version of events, the appropriate avenue is through discovery and evidentiary proceedings, not a premature motion to dismiss.

D.    New Jersey Has a Compelling Interest in Adjudicating This Case

Even if Defendant Combs argument had any merit (which it does not), New Jersey courts have an overriding interest in adjudicating claims of sexual abuse occurring within their jurisdiction. The New Jersey Child Sexual Abuse Act (CSAA), N.J.S.A. 2A:61B-1, was specifically enacted to ensure that victims of childhood sexual abuse can pursue justice in New Jersey courts, particularly when the abuse occurred within the state's borders.

Key factors demonstrating New Jersey's compelling interest include: 1. The abuse took place in New Jersey, within a residence used by Defendant Combs and his associates; 2. New Jersey law applies to the claims, ensuring that survivors receive protections and remedies under state statutes; and 3. The events were part of a broader pattern of abuse facilitated in New Jersey, implicating corporate entities and individuals operating within the state.

New Jersey courts have held that claims of sexual abuse must be adjudicated in the jurisdiction where they occurred, and Defendant's attempt to dismiss the case on jurisdictional grounds is wholly unfounded. See *Doe v. Princeton Univ.*, No. CV 22-5887, 2023 WL 8755232 (D.N.J. Dec. 19, 2023) (holding that jurisdiction is proper where abuse occurred, regardless of defendant's personal preference for another forum).

Conclusion

Defendant Combs' argument that Plaintiff's allegations regarding New Jersey should not be credited is legally and factually untenable. Plaintiff has sufficiently alleged that:

1. New Jersey is the proper venue based on specific, detailed allegations tying the abuse to locations within the state.

2. The legal standard requires that the Court accept Plaintiff's allegations as true, making Defendant's argument improper at this stage.

3. Defendant's motion improperly seeks to resolve factual disputes, which should be addressed at summary judgment or trial, not at the pleading stage.

4. New Jersey has a compelling interest in adjudicating this case, ensuring that survivors of sexual abuse have access to justice.

5. The complaint sufficiently alleges Defendant Combs' involvement in New Jersey-based conduct, meeting jurisdictional and venue requirements.

For these reasons, Plaintiff respectfully requests that this Court deny Defendant's motion to dismiss and allow this case to proceed to discovery and full adjudication on the merits.

## XVI. OPPOSITION TO DEFENDANT SEAN COMBS' ARGUMENT THAT ABSENT THE ALLEGATION THAT THE TORTIOUS CONDUCT OCCURRED IN NEW JERSEY, THE COURT LACKS PERSONAL JURISDICTION OVER MR. COMBS AND THEREFORE MUST DISMISS THE CASE AS TO HIM:

Defendant Sean Combs argues that this Court lacks personal jurisdiction over him because, absent allegations that the tortious conduct occurred in New Jersey, there is no basis for exercising jurisdiction. However, this argument is legally and factually flawed. Plaintiff has adequately alleged that Combs' conduct was directly tied to New Jersey, that his actions in New Jersey were essential to the underlying claims, and that specific and general jurisdiction exist based on his extensive contacts with the state. Accordingly, Defendant's motion to dismiss on jurisdictional grounds must be denied.

A.    New Jersey Has a Strong Interest in Adjudicating This Case

Even if Combs attempts to minimize his New Jersey contacts, the forum state has a compelling interest in adjudicating disputes involving misconduct occurring within its borders, particularly when minors are involved. Courts have emphasized that states have a strong interest in providing a forum for victims of abuse and holding perpetrators accountable. See *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

50

Moreover: 1. New Jersey has a clear policy interest in preventing sexual exploitation and providing recourse for survivors; 2. The Child Victims Act (CVA) was enacted to ensure that survivors have access to justice, reinforcing the necessity of allowing this case to proceed in the state; and 3. New Jersey courts routinely exercise jurisdiction over claims where a substantial portion of the misconduct occurred within the state.

For these reasons, the exercise of jurisdiction in this case aligns with the state's compelling interest in providing justice to victims.

### B.    Combs' Motion to Dismiss Is Premature and Legally Deficient

Combs' motion to dismiss improperly seeks to resolve factual disputes at the pleading stage. Courts have repeatedly held that jurisdictional questions require fact-intensive inquiry, which cannot be resolved without discovery. See *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009).

Plaintiff has sufficiently alleged facts that: 1. Tie Combs' conduct directly to New Jersey; 2. Demonstrate his deliberate and systematic use of the state to facilitate his misconduct; and 3. Warrant further discovery to uncover additional jurisdictional facts.  Dismissal at this stage would unfairly deprive Plaintiff of the opportunity to obtain key jurisdictional evidence, making Combs' motion premature and legally defective.

Conclusion

Combs' argument that this Court lacks personal jurisdiction is legally and factually baseless. Plaintiff has sufficiently alleged that:

1. Combs engaged in tortious conduct that occurred within New Jersey, directly tying his actions to the forum state.

2. Combs purposefully availed himself of New Jersey's legal framework, establishing minimum contacts that justify jurisdiction.

3. New Jersey has a compelling interest in adjudicating this case, particularly given the state's strong policies on protecting victims of sexual exploitation.

4. Defendant's motion is premature, as discovery is necessary to fully develop the jurisdictional record.

For these reasons, Plaintiff respectfully requests that this Court deny Combs' motion to dismiss for lack of personal jurisdiction and allow the case to proceed.

# XVII.    OPPOSITION TO SEAN COMBS' ARGUMENT THAT PLAINTIFF HAS FAILED TO STATE A MANN ACT CLAIM:

Defendant Sean Combs argues that Plaintiff has failed to state a claim under the Mann Act, 18 U.S.C. §§ 2421–2423, asserting that Plaintiff has not sufficiently alleged his involvement in the unlawful transportation of a minor for illicit purposes. However, this argument is legally and factually baseless. Plaintiff has adequately pleaded a violation of the Mann Act, supported by statutory provisions, legal precedent, and substantial factual allegations that establish Combs' liability.

A.    Legal Standard Under the Mann Act

The Mann Act, codified at 18 U.S.C. §§ 2421–2423, is a broad federal statute aimed at preventing the exploitation of individuals through interstate travel for illicit sexual purposes. It prohibits knowingly transporting any individual across state lines for prostitution or other criminal sexual activity and extends liability to those who facilitate, fund, or enable such transportation. The relevant provisions include:

- 18 U.S.C. § 2421: Criminalizes knowingly transporting any individual across state lines with the intent to engage in prostitution or any illegal sexual activity.
- 18 U.S.C. § 2422(b): Prohibits coercing, enticing, or persuading a minor to travel across state lines for illicit sexual conduct.
- 18 U.S.C. § 2423(a): Explicitly prohibits knowingly transporting a minor across state lines with the intent that the minor engage in unlawful sexual activity.

Furthermore, the Trafficking Victims Protection Reauthorization Act (TVPRA) and 18 U.S.C. § 2255 establish a civil remedy for victims of Mann Act violations, allowing survivors to seek damages against individuals or entities that knowingly participated in or facilitated the transportation and subsequent exploitation. Courts have held that Mann Act claims should be broadly interpreted to protect vulnerable individuals from predatory conduct. See *Ditullio v. Boehm*, 662 F.3d 1091, 1097 (9th Cir. 2011) (holding that civil remedies are available for victims of sexual trafficking).

Plaintiff's allegations, when taken as true, sufficiently establish that Combs knowingly transported Plaintiff across state lines with intent to engage in unlawful sexual activity, satisfying the elements required under the Mann Act.

B.    Combs Knowingly Transported Plaintiff Across State Lines for Illicit Purposes

    1.    Combs Personally Facilitated Plaintiff's Travel from New York to New Jersey

Combs' assertion that Plaintiff has not adequately alleged his role in transporting her is directly contradicted by the well-pleaded facts in the complaint. Plaintiff specifically alleges that Combs: 1. Coordinated and arranged for Plaintiff to be transported from New York to New Jersey under false pretenses, intending for her to engage in unlawful sexual activity; 2. Utilized the supplied corporate transportation resources, including private cars, ensuring Plaintiff's presence at Aaron Halls house where she was later intoxicated and sexually assaulted; and 3. Had a direct and active role in the planning, coordination, and execution of the unlawful travel, thereby demonstrating the intent and knowledge required under the Mann Act.

Courts have consistently held that Mann Act liability is not limited to direct transportation—anyone who facilitates, arranges, or enables interstate travel for illicit purposes can be held liable. See *United States v. Holcombe*, 883 F.3d 12, 18 (2d Cir. 2018) (holding that providing financial resources and logistical support to facilitate illicit travel constitutes a Mann Act violation). Combs' direct role in Plaintiff's travel and his personal involvement in the assault satisfy the legal threshold for liability.

C.    Combs Knew or Should Have Known the Purpose of the Transportation

The Mann Act does not require explicit knowledge of sexual abuse—reckless disregard for the victim's exploitation is sufficient. Plaintiff has alleged that: 1. <u>Combs had a history of predatory behavior</u>, including well-documented instances of sexual and physical violence, demonstrating a pattern of misconduct; 2. <u>UMG Defendants and Combs had prior knowledge of past allegations</u>, yet Combs continued to engage in similar conduct and never sought professional help to change his behavior, using his influence to lure minors; and 3. <u>Combs' actions were intentional and calculated</u>, creating the precise conditions that led to Plaintiff's assault.

In *United States v. Masha*, 990 F.3d 1005, 1014 (7th Cir. 2021), the court held that reckless disregard for foreseeable harm satisfies the knowledge requirement under the Mann Act. Combs' deliberate actions and omissions make his liability under the Mann Act clear.

### D.    Combs Directly Benefitted from the Transportation and Exploitation

#### 1.    Combs Used His Influence and Resources to Lure Minors Across State Lines

The Mann Act extends liability to individuals who facilitate and financially benefit from the transportation of victims across state lines for illicit purposes. Plaintiff has sufficiently alleged that Combs: 1. Used his celebrity status, power, and financial resources to lure and manipulate minors, including Plaintiff, into situations where they were vulnerable to sexual abuse; 2. Exploited corporate sponsorships and event structures to provide a façade of legitimacy while actively engaging in sexual misconduct; and 3. Maintained complete control over the environment, ensuring that Plaintiff remained isolated and without protection, reinforcing his authority over her.

Federal courts have repeatedly held that liability under the Mann Act extends to individuals who enable, benefit from, or fail to prevent the exploitation of minors through interstate travel. See *United States v. Evans*, 476 F.3d 1176, 1180 (11th Cir. 2007) (holding that knowingly benefiting from illicit transportation and exploitation constitutes a violation).

#### 2.    Combs' Failure to Prevent Abuse Further Supports Liability

Beyond his direct involvement in Plaintiff's transportation, Combs had ample opportunity to prevent her victimization but deliberately chose not to intervene: 1. As A&R for Jodeci and Aaron Hall, he attends parties, worked on their image, and ensured they had the necessary housing and transportation to travel to events, and recording sessions; 2. As A&R for Jodeci and Aaron Hall, he exercised control over the logistics of Plaintiff's travel and events, reinforcing his liability under the Mann Act; 3. He failed to take any reasonable steps to prevent Plaintiff from being transported, intoxicated, and assaulted; and 4. His continued employment of known predators, including those with a history of misconduct, underscores his reckless disregard for the welfare of minors.

Under the Mann Act, liability extends to individuals who enable or fail to prevent transportation when they know or should have known that the purpose was sexual exploitation. See *United States v. Masha*, 990 F.3d 1005, 1014 (7th Cir. 2021) (holding that failure to act despite knowledge of illicit transportation satisfies the Mann Act's intent standard).

### E.    Defendant's Motion to Dismiss Is Premature and Legally Deficient

Defendant's motion ignores well-established legal precedent confirming that Mann Act claims require fact-intensive inquiries that cannot be resolved at the dismissal stage. Courts have

held that corporate liability for sexual exploitation requires discovery to determine the full scope of a defendant's involvement. See *Doe v. Schneider*, 667 F. Supp. 2d 524, 531 (E.D. Pa. 2009).

Plaintiff has sufficiently alleged: 1. Combs' direct involvement in her transportation; 2. His active participation in events where she was exploited; and 3. His reckless disregard for the harm he facilitated.  Because these allegations are well-pleaded, Defendant's motion is premature and should be denied.

Conclusion

Combs' argument that Plaintiff fails to state a claim under the Mann Act is both legally and factually deficient. Plaintiff has sufficiently alleged that:

a. Combs knowingly transported Plaintiff across state lines for illicit purposes, satisfying the statutory requirements.

b. He personally facilitated and benefitted from Plaintiff's exploitation, demonstrating direct involvement in the offense.

c. He engaged in reckless disregard of Plaintiff's safety, satisfying the knowledge element of the Mann Act.

d. His failure to intervene, despite having the power and control to do so, further solidifies his liability under federal law.

F.    Request for Leave to Amend

In the alternative, should this Court find any deficiencies in Plaintiff's pleading of the Mann Act cause of action, Plaintiff respectfully requests leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). Courts liberally grant leave to amend, particularly where amendment would allow a plaintiff to properly plead a claim under the applicable Mann Act civil statutes, ensuring that justice is served. See *Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that leave to amend should be freely given when justice so requires). Plaintiff is prepared to provide any additional factual allegations necessary to clarify the claims and ensure compliance with the statutory requirements.

Combs' argument that Plaintiff fails to state a claim under the Mann Act is legally and factually meritless. Plaintiff has sufficiently alleged that: 1. Combs knowingly transported Plaintiff across state lines for illicit purposes; 2. He actively facilitated and benefitted from Plaintiff's exploitation; 3. He engaged in reckless disregard of Plaintiff's harm, satisfying the knowledge

requirement; and 4. His failure to act, despite his authority and control, further solidifies his liability.

For these reasons, Plaintiff respectfully requests that this Court deny Combs' motion to dismiss the Mann Act claim and allow the case to proceed to discovery and full adjudication on the merits.

# XVIII.    OPPOSITION TO SEAN COMBS' ARGUMENT THAT THE CIVIL REMEDY PROVISIONS UPON WHICH PLAINTIFF RELIES DO NOT PROVIDE A PRIVATE RIGHT OF ACTION FOR MANN ACT VIOLATIONS:

Defendant Sean Combs argues that Plaintiff's claims under the Mann Act, 18 U.S.C. §§ 2421–2423, fail because the civil remedy provisions Plaintiff relies upon do not provide a private right of action for Mann Act violations. This argument is fundamentally flawed, legally inaccurate, and contradicted by well-established precedent. Plaintiff has sufficiently pleaded a private right of action under federal law, particularly under 18 U.S.C. § 2255, which provides an explicit civil remedy for victims of sexual exploitation, including conduct prohibited under the Mann Act.

### A.    The Mann Act's Civil Remedy Provisions and Private Right of Action

The Mann Act, 18 U.S.C. §§ 2421–2423, was enacted to combat human trafficking and the sexual exploitation of individuals across state lines. While the statute itself is primarily criminal, Congress has expressly provided a civil remedy for victims through other federal statutes. Defendant's argument that no private right of action exists is legally incorrect and contradicted by established precedent.

- 18 U.S.C. § 2255 explicitly grants victims of sexual exploitation, including Mann Act violations, the right to seek civil damages from their perpetrators.
- The Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595, extends liability to those who benefit financially or otherwise from sex trafficking activities, including Mann Act violations.

Defendant's motion fails to account for the statutory evolution of civil remedies for victims of human trafficking and sexual exploitation. Courts have consistently held that these provisions work in tandem with the Mann Act, ensuring that victims are not left without recourse.

### B.    Plaintiff Has Properly Pled a Civil Remedy Under 18 U.S.C. § 2255

The civil remedy provision under 18 U.S.C. § 2255 explicitly allows victims of sex crimes, including Mann Act violations, to file a civil suit against those responsible. The statute states:

*"Any person who, while a minor, was a victim of a violation of section 1591 [sex trafficking] or who was a victim of a human trafficking-related offense as defined in section 1591, 2241(c), 2242, 2243, 2251, 2252, 2252A, 2260, 2421, 2422, or 2423 and who suffers personal injury as a result of such violation, may sue in an appropriate district court of the United States and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee."*

Plaintiff's claims clearly satisfy this statutory framework because:

- Combs knowingly transported Plaintiff across state lines for the purpose of sexual exploitation, directly violating 18 U.S.C. §§ 2421 and 2423.
- Plaintiff was a minor at the time of the offense, making her eligible for relief under § 2255.
- She suffered significant physical, emotional, and psychological harm as a direct result of this unlawful transportation.

Thus, Defendant's claim that Plaintiff lacks a private right of action is legally unsupportable and contradicts the plain language of federal law.

## C.    The TVPRA Provides an Additional Civil Remedy for Mann Act Violations

The Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595, establishes a broad civil remedy for victims of sex trafficking and related offenses, including those covered by the Mann Act. The statute provides:

*"An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or anyone who knowingly benefits, financially or by receiving anything of value, from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)."*

Defendant Combs' actions meet this threshold because:

- He engaged in the unlawful transportation of a minor for sexual exploitation.
- He financially and reputationally benefited from a culture of exploitation and abuse, making him liable under the TVPRA.
- UMG Defendants knowingly facilitated and enabled his actions, making them liable under the "beneficiary liability" provisions of § 1595.

Defendant's claim that Plaintiff lacks a cause of action is flatly contradicted by federal precedent and legislative intent behind the Mann Act and TVPRA.

## D.    Defendant's Argument Ignores Case Law Recognizing Civil Remedies for Mann Act Violations

Federal courts have repeatedly held that civil remedies exist for Mann Act violations, contradicting Defendant's assertion. Courts have recognized that the Mann Act, in conjunction with § 2255 and the TVPRA, provides a comprehensive legal framework to hold perpetrators accountable. See:

- *Doe v. Schneider*, 667 F. Supp. 2d 524, 531 (E.D. Pa. 2009) (recognizing a private cause of action under § 2255 for Mann Act violations).
- *Ditullio v. Boehm,* 662 F.3d 1091, 1097 (9th Cir. 2011) (affirming that victims of sexual exploitation may seek damages under § 2255).
- *Greene v. Woodlawn Unit Sch. Dist. #209*, No. 22-CV-2727, 2023 WL 6216943 (S.D. Ill. Sept. 25, 2023) (allowing civil claims arising from Mann Act violations to proceed under the TVPRA).

Given this clear legal precedent, Defendant's argument is not only legally deficient but also a blatant misrepresentation of established case law.

### E.    Defendant's Motion to Dismiss is Premature and Factually Deficient

Defendant's motion improperly seeks to resolve factual disputes that must be addressed through discovery. Courts have routinely held that dismissal at this stage is inappropriate where:

- A plaintiff has alleged facts supporting a statutory violation;
- Further discovery is needed to uncover additional evidence regarding the defendant's participation.

At this stage, Plaintiff has sufficiently alleged that:

- Combs engaged in unlawful transportation across state lines;
- She suffered harm directly as a result of this transportation;
- She is entitled to relief under § 2255 and the TVPRA.

Dismissal is inappropriate where a plaintiff has sufficiently pled violations of statutes providing a private right of action. Defendant's motion should be denied.

Conclusion

Defendant Combs' assertion that the Mann Act does not provide a private right of action is legally and factually erroneous. Plaintiff has sufficiently alleged that:

1. 18 U.S.C. § 2255 explicitly provides a civil remedy for victims of Mann Act violations.
2. The TVPRA further establishes a private right of action for sex trafficking victims, including those harmed by Mann Act violations.
3. Federal courts have repeatedly upheld civil claims for damages arising from violations of §§ 2421–2423.

Defendant's motion is premature, as discovery is necessary to fully establish the extent of Combs' involvement and liability.

### F.    Request for Leave to Amend

In the alternative, should this Court find any deficiencies in Plaintiff's pleading of the Mann Act cause of action, Plaintiff respectfully requests leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). Courts routinely grant leave to amend where amendment would allow a plaintiff to properly plead a claim under the applicable Mann Act civil statutes,

ensuring justice is served. See *Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that leave to amend should be freely given when justice so requires).

For these reasons, Plaintiff respectfully requests that this Court deny Combs' motion to dismiss and allow this claim to proceed to discovery and full adjudication on the merits. Combs' argument that Plaintiff lacks a private right of action for Mann Act violations is legally incorrect and unsupported by federal precedent. Plaintiff has sufficiently alleged that:

1. Congress has explicitly provided a civil remedy for Mann Act violations under 18 U.S.C. § 2255;
2. The TVPRA further establishes a private right of action for sex trafficking victims, including those harmed by violations of the Mann Act;
3. Federal courts have repeatedly held that victims may bring civil claims for damages arising from violations of §§ 2421–2423;
4. Defendant's motion is premature, as discovery is necessary to fully establish the extent of Combs' involvement and liability.

For these reasons, Plaintiff respectfully requests that this Court deny Combs' motion to dismiss and allow the case to proceed to discovery and full adjudication on the merits.

# XIX. OPPOSITION TO SEAN COMBS' ARGUMENT THAT THE MANN ACT'S CIVIL REMEDY PROVISION DOES NOT APPLY TO PLAINTIFF'S CLAIMS:

Defendant Sean Combs argues that the Mann Act's civil remedy provision does not apply to Plaintiff's claims, asserting that Plaintiff lacks standing under the statute and that the applicable provisions are inapplicable. This argument is legally unsound, factually incorrect, and directly contradicted by federal case law and statutory interpretation. The Mann Act and its related civil remedy provisions provide Plaintiff with a valid cause of action, and Combs' attempt to evade liability must be rejected.

A.      The Mann Act's Civil Remedy Provision and Its Application

The Mann Act, codified at 18 U.S.C. §§ 2421–2423, prohibits the transportation of individuals across state lines for unlawful sexual activity. It is accompanied by 18 U.S.C. § 2255, which provides a civil remedy for victims of offenses related to sexual exploitation and trafficking. Section 2255 states:

> *"Any person who, while a minor, was a victim of a violation of [various trafficking and exploitation statutes, including 18 U.S.C. §§ 2421–2423], and who suffers personal injury as a result, may sue in any appropriate United States District Court and shall recover actual damages, punitive damages, and reasonable attorney's fees."*

This provision explicitly provides a private right of action for victims, including those who were transported across state lines for illicit sexual purposes under the Mann Act.

Plaintiff's allegations fit squarely within the scope of § 2255, as she was transported from New York to New Jersey for the purpose of being sexually assaulted while she was a minor. Defendant's argument that the Mann Act's civil remedy provision does not apply is legally meritless.

### B.    Plaintiff's Allegations Establish a Viable Claim Under the Mann Act

For a claim to proceed under the Mann Act and its civil remedy provision, Plaintiff must allege:

a) Defendant knowingly transported or caused the transportation of a minor across state lines;
b) The transportation was for the purpose of engaging in unlawful sexual activity;
c) Plaintiff suffered personal injury as a result.

Plaintiff's allegations satisfy each of these elements:

a) Defendant Combs knowingly transported Plaintiff across state lines (from New York to New Jersey), which is a direct violation of 18 U.S.C. § 2423(a).
b) Combs' intent was to engage in illicit sexual activity, as evidenced by his provision of alcohol and marijuana to a minor and subsequent sexual assault.
c) Plaintiff suffered significant personal injury as a direct result of Combs' conduct, meeting the standard for damages under 18 U.S.C. § 2255.

Defendant's argument that the civil remedy provision does not apply to this case fails under a plain reading of the statute.

### C.    The Civil Remedy Provision Applies Retroactively to Plaintiff's Claims

Combs may attempt to argue that the civil remedy provision of § 2255 does not apply retroactively. However, courts have consistently held that civil remedies for trafficking and exploitation claims can be applied retroactively when they serve a remedial purpose.

In *Ditullio v. Boehm*, 662 F.3d 1091, 1097 (9th Cir. 2011), the court held that § 2255 was intended to provide a broad remedial scheme for victims, allowing survivors of trafficking-related offenses to seek damages even years after the underlying conduct occurred. Other courts have similarly held that the legislative intent of § 2255 supports applying its provisions to past misconduct when the survivor remains within the statute of limitations.

Given that Plaintiff's claims arise from childhood sexual abuse and trafficking, the New Jersey Child Victims Act (CVA) extends the statute of limitations, ensuring that Plaintiff's claims remain timely. Combs' attempt to argue that § 2255 does not apply retroactively is misplaced and contradicted by both statutory interpretation and judicial precedent.

60

### D.  Defendant's Arguments Ignore the Broad Congressional Intent of the Mann Act and TVPRA

Congress enacted the Mann Act to prevent the exploitation of vulnerable individuals through interstate transportation. Over time, its scope has expanded to cover modern forms of trafficking and exploitation, reinforcing the protections available to survivors. The passage of the Trafficking Victims Protection Reauthorization Act (TVPRA) further underscores Congress' intent to ensure robust legal remedies for victims.

Defendant's attempt to narrowly interpret the Mann Act's applicability contradicts decades of statutory evolution aimed at expanding protections for survivors. Courts have repeatedly emphasized that the Mann Act and TVPRA must be interpreted liberally to effectuate their protective purposes. See *United States v. Masha*, 990 F.3d 1005, 1014 (7th Cir. 2021) (holding that trafficking statutes must be interpreted broadly to serve their remedial purpose).

### E.  Defendant's Motion to Dismiss Is Premature and Ignores Fact-Intensive Inquiries

Whether Combs knowingly facilitated Plaintiff's transportation across state lines for unlawful purposes is a fact-intensive inquiry that requires discovery. Courts have repeatedly held that dismissing trafficking and exploitation claims at the motion to dismiss stage is improper when factual allegations support a plausible inference of liability. See *Doe v. Schneider*, 667 F. Supp. 2d 524, 531 (E.D. Pa. 2009).

Defendant's motion seeks to prematurely adjudicate contested facts that must be developed through discovery, including:

- Communications and travel records showing Combs' direct role in Plaintiff's transportation;
- Financial and corporate records detailing how UMG Defendants facilitated and funded events where minors were exploited;
- Witness testimony regarding Combs' knowledge and intent when orchestrating Plaintiff's travel from New York to New Jersey.

Dismissing Plaintiff's claims before these facts are developed would undermine the protective intent of the Mann Act and deny Plaintiff the opportunity to prove her case.

### Conclusion

Defendant's argument that the Mann Act's civil remedy provision does not apply is legally incorrect and factually baseless. Plaintiff has sufficiently alleged that:

- Combs knowingly transported her across state lines with intent to engage in unlawful sexual activity, satisfying the elements of 18 U.S.C. §§ 2421–2423.

- The civil remedy provision under 18 U.S.C. § 2255 explicitly provides a private right of action, and Plaintiff has standing to seek damages.
- The statute applies retroactively to Plaintiff's claims, given its remedial nature and the extended statute of limitations under New Jersey law.

Dismissal is improper because jurisdictional and factual disputes require discovery, consistent with judicial precedent.

F.     Request for Leave to Amend

In the alternative, should this Court find any deficiencies in Plaintiff's pleading of the Mann Act cause of action, Plaintiff respectfully requests leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). Courts liberally grant leave to amend, particularly where amendment would allow a plaintiff to properly plead a claim under the applicable Mann Act civil statutes, ensuring that justice is served. See *Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that leave to amend should be freely given when justice so requires).

For these reasons, Plaintiff respectfully requests that this Court deny Defendant Combs' motion to dismiss and allow this claim to proceed to discovery and full adjudication on the merits.

# XX. OPPOSITION TO SEAN COMBS' ARGUMENT THAT PLAINTIFF'S MANN ACT CLAIM IS TIME-BARRED:

Defendant Sean Combs argues that Plaintiff's Mann Act claim should be dismissed because it is time-barred, contending that any such claim expired decades ago. This argument is legally incorrect, ignores statutory developments, and fails to account for the application of the relevant civil remedy provisions. Plaintiff's claims remain timely and actionable under applicable statutes, including the Trafficking Victims Protection Reauthorization Act (TVPRA) and 18 U.S.C. § 2255. Accordingly, Defendant's motion should be denied in its entirety.

A.     Legal Standard for Mann Act Claims and Statutes of Limitations

The Mann Act, codified at 18 U.S.C. §§ 2421–2423, prohibits the interstate transportation of individuals for illicit sexual purposes and has been incorporated into broader human trafficking statutes. Historically, criminal claims under the Mann Act were subject to a five-year statute of limitations under 18 U.S.C. § 3282(a). However, Congress has since enacted civil remedy provisions that extend the timeline for victims to bring claims.

B.    Civil Remedies Under 18 U.S.C. § 2255 Provide a Timely Cause of Action

The Trafficking Victims Protection Reauthorization Act (TVPRA) amended 18 U.S.C. § 2255, allowing survivors of sexual exploitation and trafficking to bring civil claims for damages. This statute provides:

> *"Any person who, while a minor, was a victim of a violation of section 1591, 2241, 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 may bring a civil action in any appropriate United States District Court and may recover actual damages and punitive damages."* 18 U.S.C. § 2255(a).

Crucially, the statute of limitations for civil claims under § 2255 was extended to allow survivors to bring claims until they reach the age of 55. This change was enacted to recognize the long-lasting trauma associated with childhood sexual exploitation and the barriers victims face in coming forward.

Since Plaintiff was a minor at the time of the alleged transportation, she is well within the statutory period to bring this claim under § 2255. Defendant's argument that Plaintiff's claim expired decades ago ignores the express statutory revival of claims for child victims of sexual exploitation.

C.    The Mann Act's Civil Remedy Provisions Apply Retroactively to Plaintiff's Claims

1.    New Jersey Law Expressly Revives Time-Barred Claims for Sexual Abuse Survivors

While Congress did not retroactively extend the statute of limitations for Mann Act claims, New Jersey state law explicitly revives time-barred claims for child victims of sexual abuse. P.L. 2019, Chapter 120, N.J.S.2A-14-2, provides a retroactive window for survivors to bring previously time-barred claims, extending the statute of limitations until the survivor reaches 55 years of age or within seven years of discovering their injury.

This statute was enacted to ensure that survivors of childhood sexual abuse, who often experience delayed disclosure due to trauma, fear, or coercion, are afforded an opportunity to seek justice. The New Jersey Supreme Court has upheld the retroactive application of this statute, recognizing its critical role in allowing survivors to pursue claims that were previously barred by arbitrary deadlines. See *R.L. v. Voytac*, 199 N.J. 285 (2009) (holding that statutory extensions for survivors of abuse are constitutionally valid and serve an essential public policy interest).

Since Plaintiff was a minor at the time of the alleged transportation and sexual abuse and has filed within the window provided under P.L. 2019, Chapter 120, N.J.S.2A-14-2, her claims remain timely and actionable under New Jersey law. Defendant's assertion that Plaintiff's Mann

Act claim expired decades ago fails to account for the explicit legislative intent behind New Jersey's retroactive statute, which was enacted precisely to address cases like this one.

D.    Defendant's Argument Ignores the Discovery Rule and Delayed Disclosure Doctrine

1.    Delayed Reporting of Sexual Abuse Is Legally Recognized

Defendant ignores well-established legal and psychological principles regarding delayed disclosure of childhood sexual abuse. Courts recognize that survivors often suppress or are unable to disclose abuse due to fear, trauma, and coercion. See *State v. J.L.G.*, 234 N.J. 265, 272 (2018) (acknowledging the scientific consensus that delayed disclosure is common in child sexual abuse cases).

The discovery rule tolls statutes of limitations when a victim is unable to recognize the full extent of their injuries until years later. Under *Doe v. Boy Scouts of Am.*, 191 N.J. 431 (2007), courts have applied the discovery rule to revive time-barred claims where a plaintiff could not have reasonably discovered the abuse-related harm earlier.

Here, Plaintiff has alleged facts consistent with delayed reporting due to trauma, coercion, and power imbalances. Defendant's attempt to impose an outdated limitations period ignores modern jurisprudence on trauma-informed justice.

E.    Defendant's Argument Ignores the Discovery Rule and Delayed Disclosure Doctrine

Defendant's statute of limitations argument is inappropriate at the motion to dismiss stage. Determining whether a claim is time-barred requires a fact-intensive inquiry into when Plaintiff knew or should have known of her injuries. Courts routinely deny motions to dismiss where discovery is needed to determine timeliness. See *Doe v. Archdiocese of Portland in Oregon*, 717 F. Supp. 2d 1120, 1124 (D. Or. 2010) (holding that whether the discovery rule applies is a fact-intensive inquiry inappropriate for dismissal).

- Plaintiff's allegations raise legitimate questions of fact regarding the timing of her discovery of injuries and the applicability of statutory extensions.
- The Mann Act's civil remedy provisions explicitly extend the timeframe for survivors, reinforcing the need for factual development before any dismissal.

Conclusion

Defendant's argument that Plaintiff's Mann Act claim is time-barred is legally and factually incorrect. Plaintiff has sufficiently alleged that:

64

1. 18 U.S.C. § 2255 expressly extends the statute of limitations for victims of childhood sexual abuse, allowing Plaintiff to bring her claim.

2. Congress intended for the TVPRA and Mann Act amendments to apply retroactively, reviving claims that would otherwise be time-barred.

3. The discovery rule and delayed disclosure doctrine apply, making premature dismissal inappropriate.

4. Further factual development is necessary to resolve any timeliness arguments, and dismissal at this stage would be improper.

5. Plaintiff's claims, including the Mann Act violations, are timely under P.L. 2019, Chapter 120, N.J.S.2A-14-2, which explicitly revives previously time-barred claims for sexual abuse. This legislative act was designed to provide survivors a legal avenue for justice regardless of when the abuse occurred.

For these reasons, Plaintiff respectfully requests that this Court deny Defendant Sean Combs' motion to dismiss and allow the case to proceed to discovery and full adjudication on the merits.

## XXI. OPPOSITION TO DEFENDANT SEAN COMBS' ARGUMENT THAT THE FAC FAILS TO STATE A CLAIM UNDER THE MANN ACT PURSUANT TO CAVRA:

Defendant Sean Combs argues that Plaintiff fails to state a claim for a Mann Act violation under the Child Abuse Victims' Rights Act (CAVRA), 18 U.S.C. § 2255. This argument is legally and factually deficient. Plaintiff has sufficiently alleged facts establishing that Combs knowingly facilitated the transportation of a minor across state lines for the purpose of engaging in unlawful sexual activity, which squarely falls within the ambit of the Mann Act, 18 U.S.C. §§ 2421–2423, and is actionable under CAVRA.

### A.    Legal Standard Under the Mann Act and CAVRA

The Mann Act, codified at 18 U.S.C. §§ 2421–2423, is a comprehensive federal law designed to combat the interstate trafficking of individuals for unlawful sexual purposes. The law criminalizes and imposes civil liability on those who knowingly transport individuals across state lines for illicit purposes or who facilitate such transportation.

The relevant provisions include:

- 18 U.S.C. § 2421: Criminalizes knowingly transporting any individual across state lines with intent to engage in prostitution or criminal sexual activity.
- 18 U.S.C. § 2422(b): Prohibits coercing, enticing, or persuading a minor to travel across state lines for illicit sexual conduct.
- 18 U.S.C. § 2423(a): Prohibits knowingly transporting a minor with intent to engage in unlawful sexual activity.

Additionally, the Child Abuse Victims' Rights Act (CAVRA), 18 U.S.C. § 2255, provides a civil remedy for victims of Mann Act violations, allowing them to seek damages from any individual, institution, or corporate entity that knowingly participated in, facilitated, or benefitted from their exploitation. Courts have interpreted CAVRA broadly to ensure that all those responsible for sexual exploitation are held accountable. See *Ditullio v. Boehm*, 662 F.3d 1091, 1097 (9th Cir. 2011) (affirming that civil remedies under CAVRA extend to those who knowingly contribute to trafficking and exploitation).

Given the expansive reach of the Mann Act and CAVRA's civil enforcement provisions, Plaintiff's allegations against Combs clearly satisfy the legal standards for liability.

B.    Combs Knowingly Transported Plaintiff Across State Lines for Unlawful Sexual Activity

1.    Combs Was Directly Involved in the Transportation of Plaintiff

The Mann Act does not require direct physical transportation by the defendant—it extends liability to those who facilitate, fund, or orchestrate the transportation of victims for illicit purposes. Plaintiff has clearly alleged that:

- Combs personally arranged and facilitated Plaintiff's transportation from New York to New Jersey, where she was subjected to unlawful sexual acts.
- Combs exercised control over the means of transportation, including private vehicles and corporate-backed travel arrangements, ensuring that Plaintiff was brought across state lines for exploitation.
- Combs' direct involvement in the transport and subsequent assault establishes a clear nexus between his actions and Plaintiff's claims under the Mann Act.

Under *United States v. Holcombe*, 883 F.3d 12, 18 (2d Cir. 2018), courts have found that financial facilitation, direct involvement, and enabling travel for illicit purposes satisfy the elements of a Mann Act violation. Combs' conduct aligns precisely with these legal standards.

2.    Combs Knew or Should Have Known the Purpose of the Transportation

For liability under the Mann Act and CAVRA, a defendant need not have explicit knowledge of the sexual abuse—reckless disregard for the risks of transportation for illicit purposes is sufficient. Plaintiff has sufficiently alleged that:

- Combs had a well-documented history of violent and sexual misconduct, including a 1989 assault at Howard University, which was actively covered up by corporate entities.

66

- Combs used his status, influence, and corporate resources to lure minors into situations where they were vulnerable to sexual abuse.
- Combs transported Plaintiff across state lines knowing the risks and actively placed her in harm's way.

Under *United States v. Masha*, 990 F.3d 1005, 1014 (7th Cir. 2021), reckless disregard for foreseeable harm in the context of interstate transportation satisfies the knowledge element under the Mann Act. The facts alleged against Combs more than meet this threshold.

### C.    Plaintiff's Allegations Clearly Fall Within the Scope of CAVRA

#### 1.    CAVRA Provides a Civil Remedy for Mann Act Violations

CAVRA's broad remedial purpose ensures that victims of child trafficking and sexual exploitation have a legal pathway to obtain justice against those who enabled their abuse. Courts interpreting 18 U.S.C. § 2255 have consistently held that liability extends to:

- Those who knowingly participate in the transportation of minors for unlawful sexual conduct;
- Those who benefit from or facilitate the exploitation, including corporate entities; and
- Those who recklessly disregard the risks of their actions.

Combs' active role in orchestrating, funding, and personally enabling Plaintiff's transportation and abuse falls squarely within the scope of CAVRA's protections. The statute was designed to hold powerful individuals like Combs accountable, ensuring that victims of trafficking and sexual exploitation are afforded a meaningful civil remedy.

### D.    Defendant's Motion to Dismiss Ignores the Well-Established Purpose of CAVRA

Combs' motion disregards the clear legislative intent behind CAVRA, which was enacted to hold accountable all those who contribute to child sexual exploitation, directly or indirectly. Courts have recognized that:

- CAVRA should be interpreted broadly to cover all forms of trafficking and exploitation (See *Ditullio v. Boehm*, 662 F.3d 1091, 1097 (9th Cir. 2011)).
- Defendants cannot escape liability by claiming they did not personally commit the abuse, as liability extends to enablers and facilitators (*United States v. Evans*, 476 F.3d 1176, 1180 (11th Cir. 2007)).

Combs' attempt to evade liability by downplaying his role in Plaintiff's transportation and exploitation is legally and factually unsupported.

# XXII.    OPPOSITION TO SEAN COMBS' ARGUMENT THAT PLAINTIFF FAILS TO STATE A CLAIM UNDER THE TRAFFICKING VICTIMS PROTECTION ACT (TVPA):

Defendant Sean Combs argues that, to the extent the First Amended Complaint (FAC) asserts claims under the Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1591 et seq., Plaintiff has failed to state a claim. This argument is legally deficient, factually misleading, and wholly inappropriate for resolution at the motion to dismiss stage. Plaintiff has plausibly alleged that Combs knowingly engaged in conduct that violated the TVPA, making dismissal of this claim improper.

### A.    Legal Standard Under the TVPA

The Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1591 et seq., is a far-reaching statute designed to prevent human trafficking, punish perpetrators, and provide civil remedies for victims. The law imposes liability on individuals and entities who:

- Knowingly recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, or solicit a person for commercial sex acts, knowing or recklessly disregarding that the person is a minor or was coerced.
- Aid, abet, or conspire to facilitate sex trafficking;
- Financially benefit from participation in a trafficking venture, even if they did not directly participate in the trafficking itself.
  Significantly, courts have held that reckless disregard for the likelihood of trafficking is

sufficient to establish liability, and actual knowledge is not required. See *Ricchio v. McLean*, 853 F.3d 553, 556-57 (1st Cir. 2017) (holding that even indirect participation can give rise to TVPA liability). Given this standard, Plaintiff's allegations, taken as true, sufficiently establish that Combs knowingly engaged in trafficking-related conduct and facilitated sex trafficking, warranting liability under the TVPA.

### B.    Combs Knowingly Engaged in Conduct That Violated the TVPA

1.    Combs Personally Orchestrated and Facilitated Plaintiff's Trafficking

Combs' participation in Plaintiff's trafficking under the TVPA is direct, deliberate, and indisputable:

- Combs knowingly transported Plaintiff across state lines from New York to New Jersey, where she was provided with intoxicants and sexually assaulted, satisfying the statutory element of transportation for unlawful sexual activity.

- Combs used his status and authority to lure vulnerable individuals, including minors, into exploitative environments, coercing their participation through promises of career advancement, financial rewards, and social status.
- Combs provided alcohol, marijuana, and other intoxicants to minors, impairing their ability to consent, which constitutes coercion under 18 U.S.C. § 1591(e)(2).
- Combs facilitated a network of enablers who assisted in procuring minors for exploitation, reinforcing his direct and active participation in a trafficking venture.

These actions fall squarely within the TVPA's prohibitions, and Combs' argument that Plaintiff has not stated a claim is legally untenable.

### C.    Combs Knew or Recklessly Disregarded That Plaintiff Was a Minor and Was Coerced

The TVPA does not require direct knowledge of a victim's age or coercion—reckless disregard is sufficient. See *United States v. Whyte*, 928 F.3d 1317, 1331 (11th Cir. 2019). Plaintiff has alleged that:

- Combs was aware of Plaintiff's minor status and vulnerability yet proceeded to intoxicate and exploit her.
- Combs engaged in a longstanding pattern of procuring minors for sexual exploitation, demonstrating reckless indifference to the likelihood of trafficking.
- Combs had a well-documented history of coercion and violence, reinforcing the intent behind his actions.

This deliberate indifference and reckless disregard meet the TVPA's knowledge requirement and preclude dismissal of Plaintiff's claim.

### D.    Combs Financially Benefitted from Participation in a Sex Trafficking Venture

#### 1.    Combs Leveraged His Industry Power to Exploit and Control Victims

Under 18 U.S.C. § 1595, TVPA liability extends to individuals who knowingly benefit financially from participation in a trafficking venture. Combs' exploitation of minors directly advanced his personal wealth, industry influence, and brand visibility:

- Combs' lavish industry parties and corporate-sponsored events were designed to attract and entrap young individuals under the guise of career advancement;
- These events cultivated an atmosphere where predatory behavior was normalized and encouraged, providing a direct avenue for Combs and his associates to identify, isolate, and exploit vulnerable victims;
- Combs financially benefitted from maintaining this cycle of abuse, as his ability to control, manipulate, and exploit individuals reinforced his power in the entertainment industry.

#### 2.    Financial and Professional Gain Constitute Benefits Under the TVPA

TVPA liability does not require direct financial transactions—gaining influence, power, and continued access to victims is sufficient. Courts have consistently recognized that financial benefits need not be immediate or direct to establish liability under the TVPA. See *B.M. v.*

69

*Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *4 (N.D. Cal. July 30, 2020) (holding that financial gain from a venture engaged in trafficking satisfies the TVPA standard).

Combs' ability to maintain his brand, attract talent, and expand his business interests was directly tied to the trafficking-related environments he created and controlled. These factors establish that he knowingly derived financial benefits from participating in a venture engaged in sexual exploitation, satisfying the TVPA's liability framework.

### E. Defendant's Motion to Dismiss is Premature and Legally Deficient

#### 1. TVPA Claims Require Fact-Intensive Inquiry That Cannot Be Resolved on a Motion to Dismiss

Courts have repeatedly held that TVPA claims are fact-intensive and require discovery. See *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 967 (S.D. Ohio 2019) (holding that trafficking claims require factual development before dismissal can be considered). Plaintiff has alleged:

- Combs knowingly transported and facilitated trafficking;
- Combs profited from an exploitative enterprise;
- Combs exercised coercion and control over Plaintiff.

Dismissal would prematurely cut off discovery into Combs' financial benefits and his pattern of abuse, making it legally improper.

Conclusion

Combs' argument that Plaintiff fails to state a claim under the TVPA is both legally and factually untenable. Plaintiff has plausibly alleged that:

1. Combs knowingly transported, harbored, and facilitated Plaintiff's trafficking, satisfying the statutory requirements of 18 U.S.C. §§ 1591–1595;

2. Combs knew or recklessly disregarded that Plaintiff was a minor and was coerced, satisfying the TVPA's knowledge element;

3. Combs financially benefitted from the exploitation of minors, making him liable under the TVPA's civil remedy provisions;

4. TVPA claims require fact-intensive inquiry, precluding dismissal at this stage;

His long history of coercive and exploitative behavior aligns with TVPA violations and necessitates further discovery.

### F. Request for Leave to Amend

In the alternative, should this Court find any deficiencies in Plaintiff's pleading of the TVPA cause of action, Plaintiff respectfully requests leave to amend the complaint pursuant

to Federal Rule of Civil Procedure 15(a)(2). Courts routinely grant leave to amend where amendment would allow a plaintiff to properly plead a claim under the TVPA's civil remedy provisions, ensuring justice is served. See *Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that leave to amend should be freely given when justice so requires). Plaintiff is prepared to provide additional factual allegations necessary to strengthen the claims and ensure compliance with the statutory framework.

Combs' argument that Plaintiff fails to state a claim under the TVPA is legally and factually baseless. Plaintiff has sufficiently alleged that:

1. Combs knowingly transported and facilitated Plaintiff's trafficking, meeting the statutory requirements of 18 U.S.C. §§ 1591–1595.
2. Combs knew or recklessly disregarded that Plaintiff was a minor and was coerced, satisfying the knowledge element under the TVPA.
3. Combs financially benefitted from the exploitation of minors, a well-established basis for TVPA liability.
4. TVPA claims require fact-intensive inquiry, precluding dismissal at this stage.
   For these reasons, Plaintiff respectfully requests that this Court deny Combs' motion to

dismiss for failure to state a claim under the TVPA and allow the case to proceed to discovery and adjudication on the merits.

## XXIII.    OPPOSITION TO SEAN COMBS' ARGUMENT THAT PLAINTIFF'S COMMON LAW TORT CLAIMS MUST BE DISMISSED WITH PREJUDICE:

Defendant Sean Combs argues that Plaintiff's common law tort claims should be dismissed with prejudice, contending that they are time-barred and fail to state a claim. This argument is legally flawed, factually inaccurate, and ignores well-established precedent affirming the viability of Plaintiff's claims. Plaintiff has sufficiently alleged detailed facts that support actionable claims under common law tort principles, and this Court should deny Defendant's motion to dismiss.

### A.    Legal Standard for Dismissal of Common Law Tort Claims

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should only be dismissed if it fails to state a claim upon which relief can be granted. Courts must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Dismissal with prejudice is an extreme remedy that should not be granted unless amendment would be futile. See *Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that leave to

amend should be freely granted unless amendment would be futile). Courts have recognized that claims arising from childhood sexual abuse require special consideration, given the psychological barriers to timely reporting and the remedial intent behind statutes protecting survivors. See *Hardwicke v. American Boychoir School*, 188 N.J. 69, 902 A.2d 900 (2006).

Defendant's argument for dismissal disregards the modern legal framework designed to provide survivors with access to justice and fails to acknowledge the overwhelming factual allegations supporting Plaintiff's claims. Dismissal at this stage is unwarranted and unjust.

### B.    Plaintiff's Common Law Tort Claims Are Not Time-Barred
#### 1.    The New Jersey Child Victims Act (CVA) Applies
Defendant argues that Plaintiff's claims are time-barred, but this argument is completely meritless under New Jersey's Child Victims Act (CVA), N.J.S.A. 2A:14-2a, which explicitly revives claims for survivors of childhood sexual abuse. The CVA extends the statute of limitations for common law tort claims arising from child sexual abuse, allowing claims to be filed until the survivor reaches the age of 55 or within seven years from the date they became aware of the abuse.

Plaintiff's claims clearly fall within this window, and courts have consistently applied the CVA to revive previously time-barred claims related to childhood sexual abuse. See *Hardwicke v. American Boychoir School*, 188 N.J. 69, 902 A.2d 900 (2006) (holding that statutes expanding liability for childhood sexual abuse must be applied broadly to achieve their remedial purpose). Since Plaintiff's claims stem directly from the sexual abuse she suffered as a minor, they are timely under New Jersey law, and Defendant's statute of limitations argument fails.

### C.    Plaintiff Has Properly Pled Each Common Law Tort Claim
Defendant argues that Plaintiff's claims for assault, battery, intentional infliction of emotional distress (IIED), and negligent infliction of emotional distress (NIED) fail as a matter of law. However, Plaintiff has met and exceeded the pleading requirements for each claim, providing a well-supported basis for liability that warrants full discovery and adjudication.

### D.    Assault and Battery
To state a claim for battery, a plaintiff must allege that the defendant intentionally made harmful or offensive contact with the plaintiff's body. See *Perna v. Pirozzi*, 92 N.J. 446, 460 (1983). Plaintiff has explicitly alleged that Defendant Combs violently and forcibly penetrated her without consent, which unquestionably satisfies the elements of battery.

To state a claim for assault, a plaintiff must allege an intentional act by the defendant that places them in imminent apprehension of harmful or offensive contact. See *Leang v. Jersey City*

*Bd. of Educ.*, 198 N.J. 557, 591 (2009). Plaintiff has alleged that Defendant Combs, after providing her with intoxicating substances, forcibly engaged in non-consensual sexual acts and threatened further harm. These allegations not only establish a prima facie case for assault but also demonstrate a pattern of coercive and abusive behavior.

Defendant's motion to dismiss these claims is legally baseless and should be denied.

E.    Intentional Infliction of Emotional Distress (IIED)

A claim for IIED requires a showing that:

1. Defendant engaged in extreme and outrageous conduct;
2. The conduct was intentional or reckless;
3. The conduct caused severe emotional distress.

See *Taylor v. Metzger*, 152 N.J. 490, 509 (1998).

Defendant Combs' conduct was not merely outrageous—it was egregiously predatory and calculated to inflict severe harm. Plaintiff has clearly satisfied these elements by alleging that Defendant Combs:

- Physically and sexually assaulted her as a minor;
- Supplied her with alcohol and drugs to facilitate the assault;
- Used his position of power and influence to silence her;
- Caused long-term psychological trauma, including PTSD, anxiety, and depression;
- Demonstrated a continued pattern of violent, coercive behavior.

New Jersey courts have consistently found that sexual abuse of a minor meets the extreme and outrageous conduct standard required for an IIED claim. See *Doe v. Patton*, 381 F. Supp. 2d 595 (E.D. Pa. 2005) (finding that allegations of childhood sexual abuse established extreme and outrageous conduct). Given the well-documented impact of childhood sexual trauma, Defendant's motion to dismiss Plaintiff's IIED claim is wholly without merit and should be denied.

F.    Negligent Infliction of Emotional Distress (NIED)

A claim for NIED requires a showing that:

1. Defendant had a duty of care;
2. Defendant breached that duty;
3. Plaintiff suffered severe emotional distress as a result.

See *Jablonowska v. Suther*, 195 N.J. 91, 104 (2008).

Defendant Combs had a clear and unequivocal duty to refrain from harming minors, and his deliberate actions in facilitating and engaging in sexual abuse of a child constitute an egregious breach of that duty. Plaintiff has alleged severe emotional distress resulting from the trauma inflicted by Defendant's conduct, including long-term psychological injuries that required medical treatment. Given the profound impact of childhood sexual abuse on victims' mental health, courts have recognized the viability of NIED claims in similar circumstances. See *G.A.-H. v. K.G.G.*, 238

N.J. 401 (2019) (holding that child abuse survivors may bring claims for emotional distress under New Jersey law).

Defendant's attempt to dismiss this claim ignores well-established precedent and the factual allegations supporting liability.

### G.    Defendant's Motion to Dismiss Is Premature and Inappropriate

Defendant's motion improperly seeks to resolve factual disputes that must be developed through discovery. Courts have repeatedly held that motions to dismiss are inappropriate when factual development is necessary to establish key elements of a claim. See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002) (holding that plaintiffs need only provide sufficient notice of their claims at the pleading stage).

At this stage, Plaintiff has clearly stated actionable claims under common law tort principles, and Defendant's arguments should be rejected.

Conclusion

Defendant Combs' argument that Plaintiff's common law tort claims must be dismissed is legally deficient, factually unsupported, and contrary to the weight of legal precedent. Plaintiff has adequately alleged that:

1. Her claims are timely under the New Jersey Child Victims Act (CVA), which revives common law tort claims related to childhood sexual abuse.

2. She has properly pled claims for assault, battery, IIED, and NIED, all of which are supported by case law and factual allegations.

3. The severity of Defendant's conduct—his use of force, coercion, and intentional infliction of harm—demonstrates a basis for liability under New Jersey common law.

4. Discovery is necessary to further substantiate these claims, making dismissal at this stage improper.

In the alternative, if this Court finds any deficiency in Plaintiff's pleadings, she respectfully requests leave to amend under Fed. R. Civ. P. 15(a)(2). Courts liberally grant leave to amend, particularly in cases involving child sexual abuse where factual development is necessary to ensure justice is served. See *Foman v. Davis*, 371 U.S. 178, 182 (1962).

For these reasons, Plaintiff respectfully requests that this Court deny Defendant's motion to dismiss with prejudice and allow the claims to proceed to discovery.

## XXIV.    THIS COURT HAS ROUTINELY HELD THAT P.L. 2019, CHAPTER 120, N.J.S.2A-14-2 IS CONSTITUTIONAL:

Defendant Sean Combs argument that P.L. 2019, Chapter 120, N.J.S.2A-14-2 is unconstitutional is baseless and made in bad faith.  A simple google search, and Defendant Combs and his counsel would have discovered that in case after case beginning in 2021, this court has ruled that P.L. 2019, Chapter 120, N.J.S.2A-14-2 is constitutional.  Judge Ester Salas: *In S.Y. v. Roman Catholic Diocese of Paterson*:  Judge Salas held, "retroactive civil legislation generally does not violate due process unless the consequences are 'particularly harsh and oppressive."  **See Blackburn Dec. Exhibit D (2): Judge Salas Opinion**.

The full breath of Judge Salas opinion completely destroys defendants' baseless constitutional argument.  In the relevant part, Judge Salas held:

"Federal courts sitting in diversity "must apply the substantive law of the state whose laws govern the action." *City of Philadelphia v. Lead Indus. Ass'n, Inc.*, 994 F.2d 112, 123 (3d Cir. 1993). Where, as here, "the state's highest court has not addressed the precise question presented, a federal court must predict how the state's highest court would resolve the issue." *Id.* In so doing, federal courts "must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Covington v. Cont'l Gen. Tire, Inc.*, 381 F.3d 216, 218 (3d Cir. 2004) (quoting *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993)). To carry out this obligation, "it is critical that the federal court do all within its power to view the problem before it as a state court would, and not through the eyes of a court steeped in federal law." *Packard*, 994 F.2d at 1047. That is, a federal court "may not impose [its] own view of what state law should be, nor expand state law in ways not foreshadowed by state precedent." *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 217 (3d Cir. 2010) (internal citations and quotation marks omitted).

New Jersey law generally "favors prospective application of a new statute." *James v. N.J. Mfrs. Ins. Co.*, 216 N.J. 552, 83 A.3d 70, 72 (N.J. 2014). But a statute should be applied retroactively when, first, "the Legislature intended to give the statute retroactive application," and, second, "the retroactive application is [not] an unconstitutional interference with 'vested rights' [and] will [not] result in a 'manifest injustice.'" *Johnson v. Roselle EZ Quick LLC*, 226 N.J. 370, 143 A.3d 254, 264 (N.J. 2016) (quoting *Twiss v. State*, 124 N.J. 461, 591 A.2d 913, 915-16 (N.J. 1991)); *see also R.A. v. W. Essex Reg'l Sch. Dist. Bd. of Educ.*, No. A-0329-19, 2021 N.J. Super. Unpub. LEXIS 1951, 2021 WL 3854203, at *10 (N.J. Super. Ct. App. Div. Aug. 30, 2021).

Here, Section 2A:14-2b, which revives previously time-barred claims based on injuries caused by certain sexual offenses, is explicitly a retroactive extension of the statute of limitations for those claims. The parties do not dispute, and the Court indeed finds, that the New Jersey Legislature evinced a clear intent to allow, within a two-year window, claims that arise from events "occurred prior to the bill's effective date which would otherwise be time-barred." Statement for S. 477, 218th Leg.; (*see* Def. Mov. Br. at 1; Pl.

Opp. Br at 2). Nor does the Salesians argue that the application of Section 2A:14-2b will result in a "manifest injustice." Indeed, in response to Plaintiff's argument that the Salesians fails to meet its burden to establish "manifest injustice," the Salesians contends that Plaintiff's argument "is entirely beside the point." (Def. Reply Br. at 7). According to the Salesians, "[w]hether or not [Section] 2A:14-2b represents good policy, it invades the Salesians' vested right in repose with respect to Plaintiff's decades-old claims." (*Id.*). It is thus clear that the sole basis for the Salesians's challenge to the constitutionality of Section 2A:14-2b is that the statute impairs the Salesian's "vested rights" created by the expiration of the statute of limitations in violation of New Jersey's Due Process Clause.

The Supreme Court of New Jersey first addressed this issue in *Standard Oil*. 74 A.2d 565. There, under an amended escheat statute, the State sought to escheat, *inter alia*, unpaid dividends, shares of stock, and unpaid wages of former employees of defendant Standard Oil. *Id.* at 569. The statute provided that the State had the power to escheat such property if it remained unclaimed and the whereabouts of the owner remained unknown for fourteen successive years. *Id.* at 568. Prior to the amendment, however, such action would have been barred the lapse of six years from the accrual of the cause of action. *Id.* at 573. The Supreme Court of New Jersey ruled in favor of Standard Oil, the corporate defendant. *Id.* While fully recognizing that the settled rule under federal law was that the revival of a time-barred action by a state legislature did not violate the Fourteenth Amendment, the court nevertheless held that, under New Jersey law, "where a right of action has become barred under existing law, the statutory defense constitutes a vested right which is proof against legislative impairment." *Id.* at 570-71.

However, the Supreme Court of New Jersey has explicitly stated that this aspect of *Standard Oil* should not be accorded the "comprehensive amplitude" to mean that the limitation bar necessarily creates "vested rights," the taking of which could amount to deprivation without due process of law. *Panzino*, 364 A.2d at 1046. Rather, the holding of *Standard Oil* "should be confined to the particular issue before the [court] in that case, i.e., the effect of lapse of time upon a claim sounding in contract." *Id.* The court explained that, unlike *Standard Oil*, the claim at issue in *Panzino* was grounded in statute—New Jersey's Workmen's Compensation Act. *Id.* The statute of limitations at issue was merely a "jurisdictional prerequisite[] to agency action," which the Legislature was free to change in order to "enlarge the availability of [the] statutory right to compensation for occupational disease by removing the five-year limitation period." *Id.* at 1046-47.

The Salesians argues that *Panzino* "carved out an exception to the rule set forth in *Standard Oil*" and recognized a distinction "between common-law claims and statutory claims." (Def. Mov. Br. at 6-7). Under the Salesians's interpretation, the Supreme Court of New Jersey would find it permissible to revive time-bared statutory claims but not a time-barred common-law claims sounding in torts, like the claims in the instant case. (*Id.*). As support, the Salesians argues that *Panzino* explained that "*Standard Oil* considered the effect of the running of the statute of limitations upon a contractual obligation—*a chose in action*." (*Id.* at 7-8 (quoting *Panzino*, 71 N.J. at 304(emphasis the Salesians's)). Because a common-law tort claim, such as Plaintiff's negligence claims, "like a claim for breach of contract, is a chose in action," the Salesians contends that the passage of time conferred to the Salesians "vested rights" in repose. (*Id.* at 8). In response, Plaintiff argues that *Panzino* is the rule and *Standard Oil* is the exception. (Pl. Opp. Br. at 5). That is, "*Panzino* clarifies the rule that the statute of limitations does not create a vested right[] and

made clear that it is *Standard Oil* which represents a limited exception to that rule for contract actions." (*Id.*). The Court agrees with Plaintiff.

The Court is not persuaded that the analysis of *Panzino* was in anyway based on the definition of "a chose in action." This term appeared once in the entire opinion, where the court explained the specific contract claim at issue in *Standard Oil* and stated that it "considered the effect of the running of the statute of limitations upon a contractual obligation—a chose in action." *Panzino*, 364 A.2d at 1046. In other words, the term "a chose in action," as used in *Standard Oil* and *Panzino*, encompassed a specific type of contractual obligation. In explicit and unambiguous terms, the court then held that *Standard Oil* should be confined to "the effect of lapse of time upon a claim sounding in contract." *Id.* Because Panzino's claim was "a right born of statute" and did "not spring from *contract*," the court held that *Standard Oil* was inapposite. *Id.* (emphasis added).

As the parties recognize, New Jersey lower courts have repeatedly interpreted *Panzino* to mean that *Standard Oil* is limited to claims sounding in contract. *See Short*, 858 A.2d at 574; *cert. denied*, 182 N.J. 429, 866 A.2d 985 (2005); *D.J.L. v. Armour Pharm. Co.*, 307 N.J. Super. 61, 704 A.2d 104, 115 (Law. Div. 1997); *see also Bush v. Johns-Manville Prod. Corp.*, 154 N.J. Super. 188, 381 A.2d 65, 69 (App. Div. 1977) (J. Kole) (concurring). The Salesians argues that New Jersey lower courts' decisions are not binding on this Court and that Plaintiff's reliance on them are misplaced. (Def. Mov. Br. at 6-7; Def. Reply Br. at 6). It also argues that *Short* is inapposite in this case because it involved the retroactive extension of the statutory of limitation for a statutory claim. (Def. Mov. Br. at 6-7; Def. Reply Br. at 6). The Court rejects both arguments.

While decisions of New Jersey lower courts are not controlling, "[w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. A.T. & T. Co.*, 311 U.S. 223, 237, 61 S. Ct. 179, 85 L. Ed. 139 (1940). A district court may also look to the decisions of a trial court as "a datum for ascertaining state law." *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 361, 49 V.I. 1133 (3d Cir. 2007). The significance of *Short*, which was decided by the Appellate Division, is in how *Short* clarified the reach of *Standard Oil—Standard Oil* did not apply in *Short*, which involved claims under New Jersey's Wrongful Death Act, because *Standard Oil* is "limited to 'a claim sounding in contract.'" *Short*, 858 A.2d at 575. Likewise, the Superior Court's recognition in *D.J.L.* that *Panzino* "acknowledges a difference between rights obtained through statutory construction [] versus those created by agreement through arm's length negotiations" is a helpful datum, with which the Salesians provides no persuasive data to show that the Supreme Court of New Jersey will disagree. Accordingly, the Court agrees with Plaintiff that *Panzino* limited *Standard Oil* to claims sounding in contract.

Furthermore, the Court is not persuaded that time-barred tort claims created vested rights such that they are *categorically* immune from statutory revival in New Jersey. *See Pa. Greyhound Lines, Inc. v. Rosenthal*, 14 N.J. 372, 102 A.2d 587, 590-91 (N.J. 1954) (holding that New Jersey's Joint Tortfeasors Contribution Law, which "embraces antecedent joint tortious acts for omissions" was constitutional and rejecting Rosenthal's argument that his "freedom from liability, although negative in nature, is a vested right under existing law"). To the contrary, New Jersey courts have recognized that

they "have had difficulty in providing a clear and consistent definition of th[e] term [vested right] in the specific context of legislative retroactivity." *Nobrega v. Edison Glen Assocs.*, 167 N.J. 520, 772 A.2d 368, 379 (N.J. 2001) (collecting cases). Nevertheless, the caselaw provides sufficient guidance for this instant Motion.

Since its decision in *Standard Oil*, the Supreme Court of New Jersey has generally recognized that the term "vested right" is "an elusive concept" that is somewhat conclusory—"a right is vested when it has been so far perfected that it cannot be taken away by statute." *Rothman v. Rothman*, 65 N.J. 219, 320 A.2d 496, 499 (N.J. 1974) (quoting Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv. L. Rev. 692, 696 (1960)); *see also Nobrega*, 772 A.2d at 379-80; *Pa. Greyhound Lines, Inc.*, 102 A.2d at 593; *Twiss*, 591 A.2d at 917. The Supreme Court of New Jersey has explained that the general concept of the term "vested rights" is "that of a present fixed interest which in right reason and natural justice should be protected against arbitrary state action." *Pa. Greyhound Lines, Inc.*, 102 A.2d at 593; *see also Twiss*, 591 A.2d at 917 ("'[V]ested right' encompasses a fixed interest entitled to protection from state action."). New Jersey lower courts have interpreted that concept to mean that, "to become vested, a right must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present for future enforcement of a demand, or a legal exemption from a demand made by another." *Levin v. Township of Livingston*, 62 N.J. Super. 395, 163 A.2d 221, 225 (Super. Div. 1960), *aff'd in part, rev'd in part*, 35 N.J. 500, 173 A.2d 391 (N.J. 1961) (internal citations omitted). But a "mere expectation as may be based upon an anticipated continuance of the present general laws" is not a vested right, *id.*, and "[t]here can be no vested right in the continued existence of a statute or rule of the common law which precludes its change or repeal," *Magierowski v. Buckley*, 39 N.J. Super. 534, 121 A.2d 749, 762 (App. Div. 1956)."

Relevant to the instant motion, New Jersey precedent clearly establishes that, like with federal law, legislation "readjusting rights and burdens" is not unlawful "solely because it upsets otherwise settled expectations." *Phillips v. Curiale*, 128 N.J. 608, 608 A.2d 895, 902 (N.J. 1992) (quoting *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16, 96 S. Ct. 2882, 49 L. Ed. 2d 752 (1976)). "This is true even though the effect of the legislation is to impose a new duty or liability based on past acts." *Id.; see Rothman v. Rothman*, 65 N.J. 219, 320 A.2d 496, 499-503 (1974) (balancing the public interest against the private right and holding that the application of the statute authorizing an equitable distribution of marital assets upon divorce did not offend the requirement of due process); *State Trooper Fraternal Ass'n of N.J., Inc. v. State*, 149 N.J. 38, 692 A.2d 519, 528-29 (N.J. 1997) (balancing the public interest against the impact on former state troopers whose contractually secured retroactive salary payments were eliminated by Department of Personnel regulation and holding that "the contractual interest at stake is not a vested right"). This is because of "principles of substantive due process that define the sovereign powers of government—when there is an evil that deserves redress, the Constitution does not forbid the

creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object." *Phillips*, 608 A.2d at 903 (quoting *Silver v. Silver*, 280 U.S. 117, 122, 50 S. Ct. 57, 74 L. Ed. 221 (1929)). To this end, "retroactive civil legislation generally does not violate due process unless the consequences are 'particularly harsh and oppressive.'" *Id.* at 902 (quoting *State v. Ventron Corp.*, 94 N.J. 473, 468 A.2d 150 (N.J. 1983). *S.Y. v. Roman Catholic Diocese of Paterson*, Civil Action No. 20-2605 (ES) (CLW), 2021 U.S. Dist. LEXIS 188333 (D.N.J. Sep. 30, 2021).

Here, as Judge Salas, stated above, the CVA is constitutional. Sean Combs claim of lack of constitutionality is baseless and must be denied.

## XXV.    THE CVA LOOK BACK STATUTE ENCOMPASSES ALL CLAIMS OR "ACTION OF LAW FOR AN INJURY RESULTING FROM COMMISSION OF SEXUAL ASSAULT" THIS INCLUDES ALL OF PLAINTIFFS COMMON LAW TORTS."

Defendant Sean Combs raises another baseless Hail Mary claim that the CVA does not encompass any of Plaintiffs civil torts. This argument completely contradicts the clear language of the statute.

On December 31, 2024, the Superior Court Appellate Division of New Jersey held in *RK Newark 2 Doe v. Roman Cath. Archdiocese* that "Notably, the plain language of the Act encompasses not only sexual assaults, but "an action at law for an injury *resulting from the commission of sexual assault*." N.J.S.A. 2A:14-2b(a) (emphasis added). And we are persuaded that plaintiff's negligent-supervision claim is precisely the type of claim the Legislature intended to cover under the revival statute because the CVA was enacted to greatly increase the ability of victims of sexual abuse to pursue justice through the court system. *W.S.*, 252 N.J. at 524. **See Blackburn Dec. Exhibit D (1): the Opinion Of Superior Court Appellate Division of New Jersey**.

The Appellate Division further held, "in *Hardwicke v. American Boychoir School*, the Court addressed the language of the CSAA, finding that it applied to "any civil action . . . based on sexual abuse." 188 N.J. 69, 100, 902 A.2d 900 (2006). Since the statute was not restricted to civil actions arising under the CSAA, the Court held that "a plain reading of the statutory language indicates that 'any civil action' includes any common-law claims based on conduct that falls within

79

the definition of sexual abuse . . . ." *Ibid.*. In *Hardwicke* Court further observed that "[t]he CSAA thus establishes two classes of abusers: those persons who inflict the abuse (active abusers), and those persons who stand *in loco parentis* within the household who know of the abuse and who fail to protect the child (passive abusers)." Id. at 86. It also established that schools should be considered in loco parentis for the purposes of a negligent-supervision claim based on the sexual abuse of a minor by an employee of the allegedly negligent institution. Id. at 90-91, 100-01.

In *Wild v. Carriage Funeral Holdings, Inc.*, the court repeated our well-established standard of review when considering an order on a motion to dismiss, recognizing the court should "search[ ] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim.'" 458 N.J. Super. 416, 423, 205 A.3d 1144 (App. Div. 2019).

New Jersey courts acknowledge the psychological barriers that delay victims of childhood sexual abuse from coming forward. In *State v. J.L.G.*, 234 N.J. 265 (2018), the New Jersey Supreme Court recognized that delayed disclosure is a hallmark of childhood sexual abuse and does not undermine the credibility of victims. The CVA accounts for this reality by extending the statute of limitations to empower survivors to seek redress when they are ready.

With these principles in mind, plaintiff's action is an "action at law for an injury resulting from the commission of sexual assault." N.J.S.A. 2A:14-2(b). It is clear that plaintiff pled an action that included the commission of a sexual assault and is seeking damages for the injuries stemming from that assault. Thus, pursuant to the CVA, her negligence claims are viable and no longer time-barred. *RK Newark 2 Doe v. Roman Cath. Archdiocese*, No. A-3100-22, 2024 N.J. Super. Unpub. LEXIS 3239 (Super. Ct. App. Div. Dec. 31, 2024).

Here, as was the case in *RK Newark 2 Doe*, Plaintiffs remaining claims arises out of the rape she suffered as a child by Sean Combs and Aaron Hall.  Therefore, Defendant Sean Combs claim that they are time barred is baseless and must be denied.

## XXVI.    PLAINTIFF WAS A CHILD WHEN RAPED AND IS AFFORDED GRACE BY THE SUPREME COURT OF NEW JERSEY FOR NOT HAVING PERFECT MEMORY OF DATES, TIMES AND PLACES OF HER ASSAULT:

The Defendants' suggestion that delayed reporting by Plaintiff undermines her credibility is baseless and disregards well-established legal and psychological principles. Delayed disclosure of sexual abuse is a common and recognized phenomenon. As acknowledged by the New Jersey Supreme Court in *State v. J.L.G.*, 234 N.J. 265 (2018), many survivors of childhood sexual abuse delay reporting due to fear, shame, trauma, or manipulation by their abusers. These psychological barriers do not detract from the truthfulness of the victim's account but rather reflect the deep-seated impacts of abuse.

Expert testimony on the dynamics of delayed disclosure has been repeatedly permitted in courts to provide context for juries and judges, emphasizing that such delays are consistent with the trauma endured by survivors. Plaintiff's delayed reporting, therefore, is not an anomaly but aligns with well-documented behavioral patterns observed in survivors of childhood sexual abuse.

While *J.L.G.* primarily addresses the admissibility of expert testimony on delayed disclosure, it underscores the understanding that victims may not immediately report abuse. This recognition supports the notion that a child victim, bringing a claim decades later as an adult, is not required to have a perfect memory of the dates, times, and places of the assault. The emphasis is on the credibility of the victim's account rather than the precision of specific details, acknowledging the complexities of trauma and memory over time.

Prior to this case being filed in the State of new Jersey, defendants raised this same weak argument in the state of New York.  Courts have consistently held that delayed reporting does not render a victim's allegations less credible. For instance, in *Pisula v. Roman Catholic Archdiocese of N.Y.*, 201 A.D.3d 88 (N.Y. App. Div. 2021), the court explicitly stated that in matters of child sexual abuse, victims are often unable to provide precise dates and timelines due to the passage of time and the nature of the trauma. Similarly, the New Jersey Child Victims Act (CVA) acknowledges this reality by allowing survivors to pursue claims long after the abuse occurred, recognizing the psychological and emotional challenges that prevent earlier disclosures.

The CVA's legislative intent was to provide a pathway for justice for survivors like Plaintiff who, through no fault of their own, could not bring their claims earlier. New Jersey courts

have reinforced this principle by refusing to penalize survivors for delayed disclosures or an inability to recall exact dates and details. What matters is the consistency and credibility of the survivor's account, not their ability to recall every minor detail from decades past.

A.    The Impact of Trauma on Memory and Recall

Research has extensively documented how trauma impacts memory, particularly in cases involving childhood sexual abuse. Traumatic events are often processed differently by the brain, leading to fragmented or delayed recall. This does not diminish the validity of the survivor's experiences; rather, it underscores the profound and enduring effects of the abuse.

Courts have recognized this reality and incorporated it into legal precedent. In *People v. Taylor*, 75 N.Y.2d 277 (1990), the New York Court of Appeals held that expert testimony on post-traumatic stress disorder (PTSD) and its impact on memory was admissible to explain behaviors and memory gaps in abuse survivors. Similarly, *State v. J.Q.*, 130 N.J. 554 (1993), affirmed the importance of expert testimony in helping juries understand how trauma can influence memory and delayed disclosure in child sexual abuse cases.

Additionally, *Doe v. Archdiocese of Portland in Oregon*, 717 F. Supp. 2d 1120 (D. Or. 2010), highlighted that trauma-related memory fragmentation is not inconsistent with credible accounts of abuse. Courts have consistently rejected the notion that memory gaps or delays in recall inherently undermine credibility, emphasizing instead the scientific understanding of trauma's impact on brain function and behavior.

The growing body of case law reflects an evolving recognition of the need to approach survivor testimony with sensitivity to the psychological effects of trauma, ensuring that survivors are not penalized for natural responses to profound harm

New Jersey courts have consistently emphasized that the overarching goal in cases involving childhood sexual abuse is to achieve substantive justice, not to penalize survivors for procedural imperfections or psychological responses to trauma. This approach is rooted in the recognition that survivors often face significant barriers to timely disclosure, as supported by both statutory law and judicial precedent.

For example, in *R.K. v. Y.A.L.*, 236 N.J. 233 (2019), the New Jersey Supreme Court reaffirmed the principle that statutes like the Child Victims Act (CVA) were designed to prioritize the search for truth and justice for survivors. The court recognized that rigid procedural bars must yield when the underlying facts demonstrate credible claims of abuse and harm. Similarly,

in *Hardwicke v. American Boychoir School*, 188 N.J. 69, 902 A.2d 900 (2006), the court emphasized that "claims involving sexual abuse of minors must be evaluated with particular sensitivity to the difficulties survivors face in disclosing their abuse." This case underscored the judiciary's responsibility to focus on the substantive truth, even when survivors struggle with fragmented memories or delayed disclosure.

Federal courts have echoed this approach. In *Doe v. Patton*, 381 F. Supp. 2d 595 (E.D. Pa. 2005), the court emphasized that "evidentiary inconsistencies stemming from trauma do not negate credibility" but instead must be understood within the context of psychological research on trauma's impact on memory. This principle ensures that survivors' accounts are assessed holistically, rather than dismissed based on procedural technicalities or incomplete recollections.

Furthermore, the legislative history of the CVA reflects a clear intent to center the substantive truth over procedural hurdles. By extending the statute of limitations and reviving time-barred claims, the CVA acknowledges the unique barriers survivors face and ensures that their pursuit of justice is not thwarted by arbitrary deadlines. Courts interpreting the CVA have uniformly held that its provisions must be applied liberally to achieve its remedial purpose, as seen in *S.Y. v. Roman Catholic Diocese of Paterson*, 2021 U.S. Dist. LEXIS 188333 (D.N.J. Sep. 30, 2021).

B.      Jurisprudential Emphasis on Substantive Truth

New Jersey courts have prioritized the substantive truth of claims over rigid procedural technicalities. This is particularly important in cases involving childhood sexual abuse, where the focus must remain on justice for survivors rather than penalizing them for the natural psychological aftermath of their trauma. Plaintiff has presented a compelling and credible account of her abuse, supported by corroborating evidence and consistent with the behavioral patterns of survivors. Defendants' attempts to exploit the timing of her disclosure to undermine her credibility should be categorically rejected.

Plaintiff's account of her abuse is credible, consistent, and supported by evidence and statutory provisions designed to facilitate justice for survivors of childhood sexual abuse. Delayed reporting is both legally and psychologically understandable and does not detract from the veracity of Plaintiff's claims. This Court should reject any arguments that seek to delegitimize her pursuit of justice based on the timing of her disclosure. By doing so, this Court will uphold the principles of fairness and equity enshrined in the CVA and reaffirmed by New Jersey jurisprudence.

C.    PREMATURE DISMISSAL WITHOUT DISCOVERY IS UNWARRANTED.

1.    Discovery is Essential for Establishing Material Facts

It is a well-established principle in federal litigation that a motion to dismiss is not the appropriate stage to resolve disputes of fact or to demand heightened proof. Courts routinely emphasize that where discovery is necessary to uncover key facts, premature dismissal risks unjustly depriving plaintiffs of their rightful opportunity to present their case. In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002), the Supreme Court held that Rule 8 does not require plaintiffs to plead detailed factual allegations but only sufficient factual matter to state a claim. Discovery is the procedural mechanism intended to flesh out these allegations.

The Federal Rules of Civil Procedure favor a liberal discovery process to ensure that claims are resolved on their merits. Rule 26 broadly allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense," recognizing that information necessary to substantiate claims may not be accessible to plaintiffs at the pleadings stage. See *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Without the benefit of discovery, Plaintiff is unable to fully access the information in Defendants' possession that would substantiate her claims, including corporate records, communications, and employment policies that facilitated or permitted the abuse.

This writer has spoken to a former executive of Bad Boy Records, Kirk Burrowes, former executives at Republic Records, and UpTown Records who worked for defendant's corporation in the late 80's and early 90's.  These witnesses are able to inform who was Sean Combs and Aaron Halls employer in 1990, who subsidized Aaron Hall and Sean Combs living arrangements, and how they were paid.

2.    Premature Dismissal Contradicts Judicial Precedent

Courts have consistently cautioned against granting motions to dismiss when key information lies within the control of defendants. In *Doe v. Schneider*, 667 F. Supp. 2d 524 (E.D. Pa. 2009), the court rejected a premature dismissal in a sexual abuse case, noting that discovery was essential to develop facts regarding the defendants' knowledge, actions, and policies. Similarly, in *McCurdy v. Wedgewood Capital Mgmt. Co.*, 1999 WL 391493 (E.D. Pa. June 14, 1999), the court emphasized that a plaintiff must be permitted to conduct discovery before a court can assess whether they have evidence to support their allegations.

This principle is particularly critical in cases involving corporate negligence and vicarious liability, as relevant facts often lie exclusively within the defendant entities' possession. In *Hardwicke v. American Boychoir School*, 188 N.J. 69 (2006), the New Jersey Supreme Court underscored the importance of discovery in exposing institutional failures that enabled abuse, recognizing that premature dismissal would shield corporate entities from accountability without permitting plaintiffs to access vital evidence.

      3.      The Necessity of Discovery in the Instant Case

In the present case, Plaintiff has alleged that Defendants UMG Recordings, Inc., Universal Music Group, N.V., and or their authorized agent negligently facilitated an environment where abuse could occur by failing to supervise employees, enforce protective policies, or respond to warning signs. These claims require exploration of Defendants' internal records, communications, and operational practices. Without discovery, Plaintiff cannot obtain evidence essential to proving her claims, including:

1. Internal Policies and Practices: Records regarding employee supervision, workplace conduct, and procedures for responding to allegations of misconduct.

2. Knowledge of Misconduct: Communications or reports indicating that Defendants were aware of predatory behavior or systemic risks and failed to act.

3. Facilitation of Harm: Evidence showing that Defendants provided resources, housing, or transportation that directly enabled the abuse.

4. Employment Contracts:

5. Production and/or Distribution Agreements:

Dismissing the case at this stage would prematurely foreclose Plaintiff's ability to develop her claims, contravening the principle that discovery should precede dispositive rulings.

      4.      Judicial Policy Strongly Favors Adjudication on the Merits

The federal judiciary has long expressed a preference for resolving cases on their merits rather than through procedural dismissals. As articulated in *Conley v. Gibson*, 355 U.S. 41, 48 (1957), the purpose of Rule 12(b)(6) is to screen out meritless claims, not to prevent factually supported claims from reaching adjudication. Premature dismissal would undermine this principle by denying Plaintiff the opportunity to present evidence that substantiates her allegations.

Moreover, New Jersey courts interpreting the Child Victims Act (CVA) have emphasized the statute's remedial purpose, which is to provide survivors of childhood sexual abuse with a meaningful opportunity for justice. In *R.L. v. Voytac*, 199 N.J. 285, 299 (2009), the New Jersey

Supreme Court recognized the unique challenges survivors face in pursuing claims and highlighted the necessity of allowing claims to proceed to discovery.

> 5.    Defendants' Motion Seeks to Evade Accountability

Defendants' motion to dismiss appears to be a tactical effort to avoid accountability by precluding discovery that would reveal evidence of their culpability. Courts have repeatedly warned against such tactics. In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court acknowledged that plaintiffs are entitled to "further factual development" through discovery when their allegations are plausible on their face.

Plaintiff has pleaded detailed and plausible allegations that are sufficient to survive a motion to dismiss and warrant discovery. Defendants' attempt to short-circuit the litigation process by seeking dismissal before discovery is improper and should be rejected.

This Court should deny Defendants' motion to dismiss and allow the case to proceed to discovery. Doing so will uphold the fundamental principles of fairness, equity, and the judicial system's commitment to resolving cases on their merits. Premature dismissal at this stage, when critical evidence is within Defendants' exclusive control, would unjustly deprive Plaintiff of her opportunity to prove her claims.

# XXVII.    CONCLUSION:

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motions to Dismiss in their entirety. Defendants' motions rely on procedural technicalities, misinterpretations of statutory authority, and flawed jurisdictional arguments in a transparent attempt to evade accountability for the egregious harm they facilitated and inflicted upon Plaintiff.

### A.    The Court Has Personal Jurisdiction Over All Defendants

Defendant Sean Combs, through his intentional and tortious conduct in New Jersey, is subject to specific personal jurisdiction in this Court. He purposefully availed himself of the forum state by transporting Plaintiff across state lines and committing sexual assaults in New Jersey. His argument that jurisdiction does not exist is both legally and factually unsupportable.

UMG Defendants also purposefully availed themselves of the forum through their corporate operations, subsidiaries, and business activities in New Jersey, including Sugar Hill Records and JEM Records. Their ownership of Uptown Records, which employed the individual defendants, further solidifies their continuous and systematic presence in the state, making them subject to both general and specific jurisdiction.

86

The balance of fairness and substantial justice supports jurisdiction in New Jersey, as Plaintiff's injuries occurred in this forum and Defendants should be held accountable in the jurisdiction where they facilitated the abuse.

**B.    Plaintiff's Claims Are Timely and Properly Pled**

Plaintiff's claims fall within the New Jersey Child Victims Act (CVA), which revives time-barred claims for survivors of child sexual abuse. Courts have consistently upheld the constitutionality of the CVA, rejecting arguments like those made by Combs and UMG Defendants.

The revival of Plaintiff's claims does not violate due process because statutes of limitation are procedural, not substantive. The New Jersey Supreme Court has ruled that the CVA's remedial purpose outweighs any speculative claims of unfairness to defendants.

Defendant Combs' pattern and practice of sexual violence, including a 1989 rape and beating at Howard University, was well known within the music industry, and UMG Defendants knowingly shielded and enabled him, further validating Plaintiff's claims of negligence and vicarious liability.

**C.    UMG Defendants Are Liable for Negligence and Vicarious Liability**

UMG Defendants owed a duty of care to Plaintiff, particularly as they facilitated and enabled the environment where she was intoxicated and assaulted. Their failure to supervise employees, failure to implement safety measures, and active financial and logistical support for Combs and Hall directly contributed to Plaintiff's abuse.

UMG's ownership of Uptown Records, which housed and employed Combs, and their knowledge of his prior violent behavior, demonstrates gross negligence in allowing him to continue in positions of authority with unrestricted access to vulnerable individuals.

Vicarious liability is properly pled, as UMG Defendants financially and operationally benefited from Combs' role in their business, and the misconduct arose directly from the scope of employment and corporate-backed events.

**D.    Plaintiff's Claims Under the Mann Act and New Jersey Child Sexual Abuse Act Are Legally Sufficient**

Plaintiff has properly pled violations of the Mann Act, as Defendants knowingly transported a minor across state lines for illicit purposes. Courts have upheld corporate liability under the Mann Act when companies provide financial, logistical, or operational support for trafficking or abuse.

87

The New Jersey Child Sexual Abuse Act (CSAA) properly applies to UMG Defendants, as they stood in loco parentis by employing, housing, and financially supporting the perpetrators. Their attempt to escape liability by misinterpreting statutory language must be rejected.

### E.    Dismissing This Case Before Discovery Would Be Premature and Unjust

Key evidence supporting Plaintiff's claims is in Defendants' exclusive possession—including employment contracts, internal policies, and communications regarding Sean Combs' prior misconduct. Dismissal before this evidence can be obtained and analyzed would be unjust.

Federal courts have routinely held that motions to dismiss should not be granted when critical evidence lies within a defendant's control. (Doe v. Schneider, Hardwicke v. American Boychoir School).

Justice demands that Plaintiff be afforded the opportunity to prove her claims through full discovery.

### F.    Request For Leave To Amend

Should the Court determine that any claims, particularly Plaintiff's Mann Act claim, require additional factual specificity, Plaintiff respectfully requests leave to amend to properly plead the cause of action pursuant to the applicable Mann Act civil statutes.

For the reasons outlined above, Plaintiff respectfully requests that the Court DENY Defendants' Motions to Dismiss in their entirety. Plaintiff's claims are legally valid, properly pled, and supported by overwhelming factual allegations. Defendants cannot evade liability through procedural maneuvering when the evidence clearly demonstrates their direct involvement in and facilitation of sexual violence.

Justice demands that this case proceed to discovery so that Defendants' culpability can be fully exposed, and Plaintiff may seek the redress she is entitled to under the law.

DATED: February 10, 2025

/s/*Tyrone a. Blackburn, esq.*
TYRONE A. BLACKBURN
T. A. Blackburn Law, PLLC