Exhibit D(i): Federal Indictment Of Sean Combs

## *RK Newark 2 Doe v. Roman Cath. Archdiocese*

Superior Court of New Jersey, Appellate Division

May 1, 2024, Argued; December 31, 2024, Decided

DOCKET NO. A-3100-22

**Reporter**

2024 N.J. Super. Unpub. LEXIS 3239 *; 2024 WL 5252005

RK NEWARK 2 DOE, Plaintiff-Appellant, v. ROMAN CATHOLIC ARCHDIOCESE OF NEWARK its priests, reverends, brothers, teachers, deacons, directors, officers, employees, agents, servants, representatives, members, and/or volunteers, and ST. FRANCIS OF ASSISI PARISH f/d/b/a ST. FRANCIS CATHOLIC SCHOOL f/d/b/a ST. FRANCIS OF ASSISI CATHOLIC SCHOOL, Defendants-Respondents.

**Notice:** NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION.

PLEASE CONSULT NEW JERSEY *RULE 1:36-3* FOR CITATION OF UNPUBLISHED OPINIONS.

**Prior History:  [*1]** On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-9070-21.

**Counsel:** Caroline McMahon argued the cause for appellant (Robins Kaplan LLP, attorneys; Caroline McMahon and Rayna E. Kessler, on the briefs).

Christopher H. Westrick and Megan A. Natale argued the cause for respondents Roman Catholic Archdiocese of Newark and St. Francis Catholic Church [1] (Carella, Byrne, Cecchi, Olstein, Brody & Agnello, PC, attorneys; Christopher H. Westrick, of counsel and on the briefs; Sean M. Kiley, John G. Esmerado, and Megan A. Natale, on the briefs).

**Judges:** Before Judges Vernoia, Gummer and Walcott-Henderson.

**Opinion by:** WALCOTT-HENDERSON

## Opinion

WALCOTT-HENDERSON, J.S.C. (temporarily assigned).

Plaintiff appeals from the dismissal with prejudice of her complaint against defendants the Roman Catholic Archdiocese of Newark (the Archdiocese) and St. Francis Catholic Church, Ridgefield Park (the Church defendants) based on a finding that the alleged minor-on-minor sexual abuse is not actionable under the *Child Victims Act Amendments (CVA or revival statute), N.J.S.A. 2A:14-2(a)* to *- 2(c)*, or the *New Jersey Child Sexual Abuse Act (CSAA), N.J.S.A. 2A:61B-1*. Plaintiff and the perpetrators who allegedly sexually assaulted her were minors at the time of the alleged assaults. Plaintiff argues: defendants' **[*2]** negligent supervision of school officials caused her injuries; her negligent-supervision claim may proceed under the CVA; and the trial court erred by finding plaintiff's negligent-supervision claim could not proceed under the CVA; and excluding her claim from the scope of the revival statute contradicts its legislative purpose.

---

[1] St. Francis Catholic Church, Ridgefield Park is improperly pleaded in the complaint as "St. Francis of Assisi Parish [formerly doing business as] St. Francis Catholic School [formerly doing business as] St. Francis of Assisi Catholic School."

Case 2:24-cv-07729-LMG-JRA   Document 63-4   Filed 02/11/25   Page 3 of 29 PageID: 3

2024 N.J. Super. Unpub. LEXIS 3239, *2

Following oral argument, the court granted defendants' motion to dismiss with prejudice pursuant to *Rule 4:6-2(e)*. Plaintiff subsequently filed a motion for reconsideration, which the court denied after hearing argument. We reverse both orders.

Plaintiff, an adult, alleges that in 1978, when she was a thirteen-year-old middle-school student, she was the victim of repeated sexual assaults perpetrated by her classmates. Plaintiff and her alleged abusers were minors at the times she was assaulted. Although these events are alleged to have taken place in 1978, plaintiff filed the instant complaint on November 29, 2021, pursuant to the CVA's statutory extension of the statute of limitations for injuries resulting from sexual assaults.

The CVA "extend[ed the] statute of limitations in civil actions for sexual abuse claims; expand[ed] categories of potential defendants in civil actions; [*3] [and] create[d a] two-year window for parties to bring previously time-barred actions based on sexual abuse." S. 477 (2018); *N.J.S.A. 2A:14-2(b)*.

The other statute relevant to this appeal is the CSAA, which authorizes civil actions for illness and injury based on sexual abuse, *N.J.S.A. 2A:61B-1(b)*, and defines "sexual abuse" as "an act of sexual contact or sexual penetration between a child under the age of [eighteen] years and an adult. A . . . person standing in loco parentis within the household who knowingly permits or acquiesces in sexual abuse by any other person also commits sexual abuse . . . ." *N.J.S.A. 2A:61B-1(a)(1)*. Thus, the statute imposes liability on both "active" and "passive" sexual abusers. *Hardwicke v. Am. Boychoir Sch., 188 N.J. 69, 86, 902 A.2d 900 (2006)*.

In her complaint plaintiff alleged the following causes of action: (1) negligence and/or gross negligence; (2) negligent and/or grossly negligent hiring, training, and supervision; (3) negligent and/or grossly negligent retention; (4) negligent infliction of emotional distress; and (5) punitive damages.

The causes of action are based on plaintiff's claims that defendants "permitted and acquiesced in the sexual abuse of plaintiff . . . on school grounds . . . ." Plaintiff alleged she was the victim of repeated, daily sexual assaults by her [*4] classmates over the course of many months. She detailed one particular assault that occurred on school property where a large group of students surrounded her, placed her in a chokehold, covered her mouth, restrained her legs and arms, and took turns touching her breasts and forcibly penetrating her vagina. Plaintiff alleged that this sexual assault occurred in the presence of Sister Catherine, the school's former principal and seminarian. She further alleged that immediately after this assault, Sister Catherine told her she should be ashamed of herself and to go to the bathroom and clean herself up.

Plaintiff further alleged defendant, the Archdiocese, employed and retained Sister Catherine and "gave her access to, and control and supervision over, children, including [p]laintiff." Plaintiff also averred Sister Catherine and defendants knew or should have known that she was the victim of repeated sexual assaults and knew or should have known there were "numerous students who had sexually abused, and/or were sexually abusing, children, including [p]laintiff."

Lastly, plaintiff avers defendants owed her a duty of reasonable care to protect her from harm and their actions and inaction [*5] created a foreseeable risk of harm to her. Plaintiff alleged neither Sister Catherine nor any other school agent ever did or said anything about the sexual assaults that she had endured.

The Church defendants denied the allegations of sexual assault in the complaint and filed a third-party complaint against the Estate of Sister Catherine.

Defendants moved for dismissal of plaintiff's complaint based on a failure to state a claim under *Rule 4:6-2(e)*, arguing that there was no active sexual abuser under the CSAA because the perpetrators of the alleged sexual assaults were minors at the time and New Jersey does not recognize minor-on-minor sexual assault; therefore, according to defendants, plaintiff's claims were not actionable. In their brief, defendants further argued that "[a]t most, [plaintiff's] complaint alleges [Sister Catherine], and only [Sister Catherine], was a passive abuser" and that "[g]iven the absence of an active sexual abuser, pursuant to the [CSAA], [Sister Catherine] cannot be a passive abuser." Defendants further contended the statutory authority relaxing the prior statute of limitations for child victims

Case 2:24-cv-07729-LMG-JRA    Document 63-4    Filed 02/11/25    Page 4 of 29 PageID:

2024 N.J. Super. Unpub. LEXIS 3239, *5

of sexual abuse, the CSAA, limits claims to injuries resulting from the commission [*6] of three forms of sexual misconduct: "1) sexual abuse as defined in *N.J.S.A. 2A:61B-1*; 2) a prohibited sexual act as defined in *N.J.S.A. 2A:30B-2*; or 3) any other crime of a sexual nature." Defendants further pointed out that the CSAA defines the term "sexual abuse" as acts of "sexual contact or sexual penetration between a child under the age of 18 years and an adult."

Plaintiff opposed the motion, asserting that the lack of supervision and supervisory procedures to prevent the sexual assaults were the grounds for her negligent-supervision claim, and "[t]his civil claim for the harm she suffered trigger[ed] the application of [the CVA]."

At oral argument on defendants' motion to dismiss, the court largely focused on plaintiff's age when the assaults occurred and the age of the students plaintiff claimed had sexually assaulted her. The argument focused on active versus passive abuse under the CSAA. Defendants' counsel argued that minor-on-minor abuse has no "active abuser" and that plaintiff's case must fail because the presence of an active abuser to whom liability can attach is required under the CSAA.

In addressing the three forms of sexual-misconduct claims encompassed by the CSAA, defendants' counsel asserted that [*7] plaintiff's injury could not proceed under "sexual abuse" because plaintiff had not been sexually abused by an adult, nor could it proceed under "child pornography" because "nothing in the complaint [alleged] that it [was] recorded by [Sister Catherine] or it was disseminated in any way." Defense counsel argued plaintiff had not pled "sexual assault or any other crime of a sexual nature" because "[f]or the act to be considered a crime, it's our position that it must be committed by an adult." Counsel listed the elements of the crime of aggravated sexual assault under *N.J.S.A. 2C:14-2*. In conclusion, defendants' counsel emphasized that the CSAA does not reference any criminal code that encompasses the type of offense committed against plaintiff, and therefore the complaint must be dismissed.

Plaintiff's counsel, however, responded that the CVA's two-year window for individuals to revive previously time-barred claims revives all crimes of a sexual nature, not just those three forms of sexual misconduct encompassed in the CSAA. Plaintiff's counsel also argued that defendant failed to recognize that a person actively commits the offense of aggravated sexual assault under *N.J.S.A. 2C:14-2*, by aiding or abetting another [*8] in the commission of the crime, *N.J.S.A. 2C:14-2(a)(5)*, and, thus, the crime committed against plaintiff was revived under the CVA.

In response, defendants' counsel reiterated his argument that the abuse committed against plaintiff cannot be revived because it was not committed by an adult, and then, directly addressing plaintiff's *N.J.S.A. 2C:14-2(a)(5)* argument, claimed that the conduct could not fall under that sub-section's definition of aggravated sexual assault because plaintiff did not claim she had sustained personal injury. [2] Defendant's counsel, once again, asserted New Jersey's criminal statutes only "apply to active abusers" and "in order for [plaintiff's] interpretation [under *N.J.S.A. 2C:14-2(a)(5)*] to be applicable here, it would have [had] to [have been] Sister Catherine [] committing these acts and/or somebody else above the age of 18 upon the plaintiff." Defendants' counsel argued Sister Catherine's awareness of the abuse does not amount to aiding and abetting, stating that to have aided and abetted, Sister Catherine would have had to "cordoned off a room specifically at the school, called down the minor abusers, and then called down plaintiff and facilitated the abuse."

Following oral argument, the court found [*9] "that but for the uncertainty of the age of any of the alleged active perpetrators of the alleged sexual abuse, the motion to dismiss would be granted"; however, pursuant to the parties' request to allow time for limited discovery on the age question, the court did not issue its written statement of

---

[2] Defendants appear to have abandoned this argument on appeal. It is absent from their brief. We limit our review to those issues raised in defendants' brief. *See Green Knight Cap., LLC v. Calderon, 469 N.J. Super. 390, 396, 264 A.3d 734 (App. Div. 2021)* (declining to reach an issue plaintiff had failed to raise or brief on appeal), *aff'd as modified, 252 N.J. 265, 284 A.3d 832 (2022); N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2, 105 A.3d 1145 (App. Div. 2015)* (finding "[a]n issue that is not briefed is deemed waived upon appeal")).

Case 2:24-cv-07729-LMG-JRA    Document 63-4    Filed 02/11/25    Page 5 of 29 PageID: -

2024 N.J. Super. Unpub. LEXIS 3239, *9

reasons or an order until approximately one month later, after plaintiff failed to provide additional submissions proving the perpetrators were over the age of eighteen.

In its written statement of reasons, the court found minor-on-minor sexual abuse is not actionable under the CVA and that there was no evidence to establish the active perpetrators were over eighteen years old. Accordingly, on March 3, 2023 the court issued an order dismissing plaintiff's complaint with prejudice.

Plaintiff moved for reconsideration, arguing that the court had failed to consider her common law claim of negligent supervision and how the CVA revived it. Defendants opposed plaintiff's motion for reconsideration, stating that the court's decision was legally sound. Plaintiff's counsel admitted that limited discovery revealed it was "likely not the case" that any of plaintiff's aggressors were over eighteen years **[*10]** old, but argued that even so, plaintiff's common law claim of negligent supervision should be revived under _N.J.S.A. 2A:14-2(b)_.

The court, however, asked "what is the negligent supervision tied to?," telling counsel that _N.J.S.A. 2A:14-2(b)_ would not revive an "independent claim" of negligent supervision unless it was tied to a crime of a sexual nature or sexual assault or sexual abuse. Plaintiff's counsel responded that "the basis is that the defendants had failed to establish and enforce supervisory procedures that caused plaintiff's assault. So [the negligent-supervision claim] is directly related to" the sexual assaults of plaintiff. The judge asked "[h]ow does it get from the statute [_N.J.S.A. 2A:14-2(b)_] over here to the common law claim of negligent supervision? I'm not following the path." Defendants' counsel then emphasized that "the [sexual assault criminal] statute states an actor is guilty of sexual assault if the actor commits an act of sexual penetration" and that under this definition, Sister Catherine was not an actor guilty of sexual assault, that plaintiff's complaint did not allege "that [Sister Catherine] facilitated or did something in some manner," and that plaintiff thus had failed to support the negligent-supervision **[*11]** claim with any viable sexual-assault claim. The court agreed with defendants and denied the reconsideration motion in a May 1, 2023 order.

On appeal, plaintiff raises the following points for our consideration:

POINT I
DEFENDANTS' NEGLIGENT SUPERVISION OF SCHOOL OFFICIALS, INCLUDING SISTER CATHERINE, CAUSED PLAINTIFF'S INJURIES

POINT II
PLAINTIFF'S NEGLIGENT SUPERVISION CLAIM MAY PROCEED UNDER _N.J.S.A. 2A:14-2[b]_, WHICH REVIVES CLAIMS OF INJURIES RESULTING FROM CRIMES OF A SEXUAL NATURE
A. New Jersey's Revival Statute Resurrects Claims of Injuries from Crimes of a Sexual Nature.
B. Plaintiff Alleges Suffering Multiple Crimes of a Sexual Nature, Providing the Basis for Plaintiff's Negligent Supervision Claim Under New Jersey's Revival Statute.
C. Minors as Young as Fifteen May Be Held Criminally Liable in New Jersey.

POINT III
THE TRIAL COURT ERRED BY FINDING THAT PLAINTIFF'S NEGLIGENT SUPERVISION CLAIM COULD NOT PROCEED UNDER NEW JERSEY'S REVIVAL STATUTE

POINT IV
THE LEGISLATIVE HISTORY OF S477 REQUIRES A BROAD READING OF THE STATUTE THAT SUPPORTS INCLUSION OF PLAINTIFF'S CLAIMS

The trial court's decision on a motion to dismiss is reviewed de novo under _Rule 4:6-2(e)_. _Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108, 203 A.3d 133 (2019)_. The proper focus of a

Case 2:24-cv-07729-LMG-JRA    Document 63-4    Filed 02/11/25    Page 6 of 29 PageID:

2024 N.J. Super. Unpub. LEXIS 3239, *11

motion to dismiss is on whether the **[*12]** plaintiff has pleaded a cause of action, not whether the plaintiff can prove what was pleaded. *Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989)*. Plaintiff is "entitled to every reasonable inference of fact." *Ibid.*. The complaint is read liberally "to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim." *Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252, 128 A.2d 281 (App. Div. 1957)*.

"Questions of statutory interpretation are also reviewed de novo." *W.S. v. Hildreth, 252 N.J. 506, 518, 287 A.3d 421 (2023)*. Because "[t]here is no more persuasive evidence of legislative intent than the words by which the Legislature undertook to express its purpose," *Perez v. Zagami, LLC, 218 N.J. 202, 209-10, 94 A.3d 869 (2014)*, this court must look first to the plain language of the statute, giving the "words their ordinary meaning absent any direction from the Legislature to the contrary," *TAC Assocs. v. N.J. Dept. of Env't Prot., 202 N.J. 533, 541, 998 A.2d 450 (2010)*, "and read them in context with related provisions so as to give sense to the legislation as a whole," *DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005)*.

"If the plain language leads to a clear and unambiguous result, then [the] interpretive process is over." *TAC Assocs., 202 N.J. at 541* (alteration in original) (quoting *Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195, 927 A.2d 543 (2007)*). Only if the language is ambiguous and susceptible "to more than one plausible interpretation," *DiProspero, 183 N.J. at 492*, should this court turn to extrinsic evidence to "effectuate the legislative intent in light of the language used and the objects sought to be achieved," *Merin v. Maglaki, 126 N.J. 430, 435, 599 A.2d 1256 (1992)* (quoting **[*13]** *State v. Maguire, 84 N.J. 508, 514, 423 A.2d 294 (1980)*).

Plaintiff maintains her claims against defendants are "straightforward common law claims for negligent supervision" based on defendants' lack of supervision and refusal to intervene to stop the assaults perpetrated against her. Plaintiff does not allege that she was sexually assaulted by any school official or defendant named in her complaint. Plaintiff cites to *Jerkins ex rel. Jerkins v. Anderson, 191 N.J. 285, 296-98, 922 A.2d 1279 (2007)*, in support of her argument that school officials and leaders must establish reasonable supervision practices to keep students safe throughout the school day, as well as *L.E. v. Plainfield Public School District, 456 N.J. Super. 336, 348, 194 A.3d 105 (App. Div. 2018)*, where a student was sexually assaulted by other students and, several years later, brought a successful negligent-supervision claim against the school district and its employees because they had a responsibility to prevent "unwanted sexual encounters between students."

In contemplating the viability of plaintiff's common law claim for negligent supervision, stemming from her minor classmates' alleged sexual assaults of her, at issue is whether plaintiff's negligent-supervision claim is permitted under the two-year filing window of the CVA and is actionable independently from a CSAA claim.

Defendants argue that the dismissal with prejudice of plaintiff's **[*14]** complaint must be affirmed because plaintiff fails to identify "an active abuser pursuant to *N.J.S.A. 2A:61B-1(a)(1)*." Further, defendants claim that "[m]inor on minor sexual abuse does not qualify as sexual abuse for purposes of the [CSAA]," therefore, [Sister Catherine] cannot be a passive abuser." They maintain that the revival statute extended the statute of limitations for injuries resulting from the commission of three independent forms of sexual misconduct: sexual abuse as defined in *N.J.S.A. 2A:61B-1*; a prohibited sexual act as defined in *N.J.S.A. 2A:30B-2*; or any other crime of a sexual nature. And, further, "the CSAA defines the term 'sexual abuse' as acts of sexual contact or sexual *penetration between a child under the age of 18 years and an adult*." Defendants further assert that "[t]he CSAA contemplates causes of action for child sex abuse in two (2) categories: 1) active abusers and 2) passive abusers. Both categories require an adult active abuser."

In considering the dismissal of plaintiff's common-law claims, we begin with a review of the relevant statutory language. The CVA statute provides that:

   Notwithstanding the statute of limitations provisions of *N.J.S.2A:14-2, section 2 of P.L.2019, c.120 (C.2A:14-2a), section 1 of P.L.1964, c.214 (C.2A:14-2.1)*, or any other statute, an action at law for an injury *resulting from* **[*15]** *the commission of sexual assault, any other crime of a sexual nature, a prohibited sexual act as defined in section 2 of P.L.1992, c.7 (C.2A:30B-2), or sexual abuse as defined in section 1 of P.L.1992, c.109 (C.2A:61B-1)*, that occurred prior to the effective date [Dec. 1, 2019] of P.L.2019, c.120 (C.2A:14-2a et al.), and

Case 2:24-cv-07729-LMG-JRA    Document 63-4    Filed 02/11/25    Page 7 of 29 PageID: 1750

2024 N.J. Super. Unpub. LEXIS 3239, *15

which action would otherwise be barred through application of the statute of limitations, may be commenced within two years immediately following the effective date.

[*N.J.S.A. 2A:14-2b(a)* (emphasis added).]

The plain language of the CVA makes clear that "an action at law" includes common-law and statutory claims. *N.J.S.A. 2A:14-2(b)*. We examined this issue in *Doe v. Estate of C.V.O., 477 N.J. Super. 42, 50, 303 A.3d 678 (App. Div. 2023)*, *certif. denied*, 257 N.J. 232, 313 A.3d 404 and 257 N.J. 242, 313 A.3d 409 and *257 N.J. 259, 313 A.3d 419 (2024)*, where the plaintiff sued his parents' estates, alleging common-law negligence, negligent-supervision and statutory claims under the CSAA stemming from sexual assault against him when he was a minor by his then thirteen-or fourteen-year-old sister. The plaintiff claimed he had reported the sexual assault to his mother and "wrote a letter to his father describing" the sexual assault, but "neither took any action to prevent the continued abuse." *Ibid.*. His CSAA claims against his parents alleged that they were passive abusers because they had "knowingly permitted or acquiesced in the sexual abuse.'" *Ibid.*.

The defendants moved to dismiss the plaintiff's **[*16]** complaint for failure to state a claim, maintaining the CSAA provided a cause of action only for "sexual contact or sexual penetration between a child under the age of [eighteen] and an adult" and the CVA extended the statute of limitations only "where there [was], in fact, a viable claim under the CSAA." *Id. at 51*. The motion court found a cause of action did not exist for sexual abuse under the CSAA because plaintiff's abuser was not an adult, and the passive-abuser claims against his parents' estates failed because they were derivative. *Id. at 49*.

We affirmed the court's decision in part, finding "the CSAA's definition of sexual abuse required an act against a child by 'an adult'" and that "a passive abuser claim is derivative and cannot stand without a cause of action for sexual abuse by an adult." *Id. at 58-59* (quoting *N.J.S.A. 2A:61B-1(a)*). We reversed in part on the issue of whether the plaintiff's common-law claims were precluded by the CSAA, concluding that those claims of negligence, gross negligence, and negligent infliction of emotional distress qualified for the statute-of-limitations extension under the CVA. *Id. at 60-62*. We reasoned "[t]he plain language of [the CVA] is clear that 'an action at law' includes common law **[*17]** and statutory claims. . . . Pursuant to the statute, a sexual assault action is a separately permitted 'action at law.'" *Id. at 60* (quoting *N.J.S.A. 2A:14-2(b)*). We also emphasized policy, reasoning that "were we to accept defendants' arguments that common law claims only are viable if there is a cognizable CSAA claim, then child victims who are sexually assaulted by another minor would be foreclosed from bringing common law causes of action." *Id. at 61*. The plaintiff's claims thus withstood the motion to dismiss. *Id. at 62*.

Applying our analysis in *C.V.O.*, we first note that the revival statute expressly applies to "an action at law for an injury resulting from the commission of sexual assault, any other crime of a sexual nature, a prohibited sexual act as defined in section 2 of P.L.1992, c.7 (C.2A:30B-2), or sexual abuse as defined in section 1 of P.L.1992, c.109 (C.2A:61B-1)." *N.J.S.A. 2A:14-2(b)*. And, we are aware from the legislative history that in enacting the supplementary two-year revival statutes of limitations, the CVA opened the door for previously time-barred common-law claims stemming from sexual assault. *Governor's Signing Statement to S. 477* (May 13, 2019). Notably, the plain language of the Act encompasses not only sexual assaults, but "an action at law for an injury *resulting from the commission of sexual* **[*18]** *assault*." *N.J.S.A. 2A:14-2b(a)* (emphasis added). And, we are persuaded that plaintiff's negligent-supervision claim is precisely the type of claim the Legislature intended to cover under the revival statute because the CVA was enacted to greatly increase the ability of victims of sexual abuse to pursue justice through the court system. *W.S.*, 252 N.J. at 524.

Here, plaintiff asserts defendants were at fault for failing to stop the sexual assaults she suffered, at the hands of her classmates, while at school. Plaintiff specifically claims Sister Catherine observed a sexual assault, failed to stop it, and later shamed her by telling her to go and clean herself up. We do not read the statute to require that plaintiff allege sexual assault only, precisely because the language permits legal action for injuries "resulting from" the commission of sexual assault. *N.J.S.A. 2A:14-2(b)*. Plaintiff, therefore, is not required to allege sexual assault by defendants' employees; clearly, this is not her claim. Plaintiff's claim is that she suffered injuries resulting from the sexual assaults allegedly perpetrated by others whom defendants failed to properly supervise. Defendants' legal

Case 2:24-cv-07729-LMG-JRA    Document 63-4    Filed 02/11/25    Page 8 of 29 PageID: 

2024 N.J. Super. Unpub. LEXIS 3239, *18

argument misconstrues the issue. Sexual abuse is only one of the four categories **[\*19]** into which plaintiff's claims may fall to enjoy revival under _N.J.S.A. 2A:14-2(b)_. Plaintiff's complaint clearly falls within the category of "an action at law for an injury _resulting from the commission of sexual assault_." _Ibid._.

Defendants further assert that plaintiff's allegations are insufficient to identify an underlying sexual crime in New Jersey and that a revived claim under the CVA could not rely on "passive abuse" by Sister Catherine or any other adult member of the Church's staff. They contend that the extension of the statute of limitations is only for "injuries resulting from the commission of sexual assault." Defendants are essentially arguing that if defendants observed a sexual assault of a child, they cannot be held liable because they did not commit the sexual assault. They maintain "it was not alleged that [Sister Catherine] or any adult actively abused [plaintiff] in any way. Further, there are no facts to suggest that [Sister Catherine] aided or abetted the minor abusers by way of assistance or support in the commission of the assault" and conclude "New Jersey's criminal sexual assault statutes . . . do not apply to those instances where passive abuse is alleged."

We reject these **[\*20]** arguments because although plaintiff is not alleging sexual assault by defendants or their employees, her claims for injuries resulting from the commission of sexual assaults is squarely covered by the statute's plain language. The alleged assaults, including allegations of touching and digital penetration by plaintiff's classmates, irrefutably falls within the enumerated offense of a "commission of sexual assault," even though perpetrated by a minor. _See N.J.S.A. 2C:14-2(a)_.

Defendants have misinterpreted plaintiff's argument on aiding and abetting. In her brief, plaintiff's only discussion of _N.J.S.A. 2C:14-2(a)(5)_ was to argue that each minor student's act of sexual assault was aided and abetted by the other minor students involved in the sexual abuse, to conclude that the abuse met the statutory definition of aggravated sexual assault. Based on defendants' brief and argument at the hearing, it is clear defendants believed plaintiff had argued Sister Catherine had aided and abetted the minor classmates in their commission of the assault on plaintiff. We see no evidence in plaintiff's brief to suggest such an argument. Plaintiff's sole claim directed at Sister Catherine is her claim of negligent supervision. Thus, we need **[\*21]** not address defendants' argument that Sister Catherine did not aid and abet the minor classmates. Plaintiff never claimed that she did.

Further, contrary to defendants' argument, the common-law allegations made by plaintiff relate to "an injury resulting from the commission of a sexual assault," as permitted under the CVA. Plaintiff's complaint alleges that Sister Catherine "permitted and acquiesced in the sexual abuse of [plaintiff] on school grounds." Plaintiff also "alleges personal physical injury damage claims, as well as other damage claims related thereto, as a result of her childhood sexual abuse." Specifically, plaintiff alleges that, in the presence of Sister Catherine, fellow students "put her in a choke hold, covered her mouth, held her arms and legs, and took turns touching her breasts and forcefully inserting their fingers into her vagina."

Defendants further argue the phrase in the CVA that limits recovery to "commission of sexual, [or] any other crime of a sexual nature," suggests that the underlying "sexual assault" must be a crime. While, generally, crimes may be committed only by adults, we read this remedial legislation broadly to cover the acts alleged in plaintiff's **[\*22]** complaint. _N.J.S.A. 2A:4-44_; _see Douglas v. Harris, 35 N.J. 270, 279, 173 A.2d 1 (1961)_.

Additionally, defendants' argument ignores that in 1978, when the assaults are alleged to have occurred, a juvenile could be waived to adult court and convicted of a crime at the age of fourteen or above. _See generally State v. R.G.D., 108 N.J. 1, 6-7, 527 A.2d 834 (1987)_ (explaining that in 1977, the juvenile waiver statute was amended to permit the waiver of juveniles fourteen years old or older to adult court). Thus, plaintiff did not have to establish the perpetrators were eighteen to establish they had committed a sexual assault under _N.J.S.A. 2C:14-2_. Significantly, we cannot ignore that juvenile adjudications are based on findings that a juvenile committed an offense which, if committed by an adult, would constitute a crime. _See State in the Int. of M.P., 479 N.J. Super. 492, 499, 323 A.3d 543 (App. Div.)_, _petition for certif. filed_, No. 089881 (Sept. 23, 2024).

The CVA does not require a criminal conviction for a sexual assault or for any crime. Instead, it extends the statute of limitations for actions for an injury resulting "from the commission of sexual assault [and] any of crime of a sexual nature." A juvenile can commit a sexual assault in violation of _N.J.S.A. 2C:14-2_ and can be adjudicated a delinquent

Case 2:24-cv-07729-LMG-JRA   Document 63-4   Filed 02/11/25   Page 9 of 29 PageID: 1750

2024 N.J. Super. Unpub. LEXIS 3239, *22

for having done so. Thus, a juvenile's violation of _N.J.S.A. 2C:14-2_, even where it does not result in a criminal conviction, **[*23]** constitutes the "commission of a sexual assault" within the CVA's plan language.

In _Hardwicke v. American Boychoir School_, the Court addressed the language of the CSAA, finding that it applied to "any civil action . . . based on sexual abuse." _188 N.J. 69, 100, 902 A.2d 900 (2006)._ Since the statute was not restricted to civil actions arising under the CSAA, the Court held that "a plain reading of the statutory language indicates that 'any civil action' includes any common-law claims based on conduct that falls within the definition of sexual abuse . . . ." _Ibid._. In _Hardwicke_ Court further observed that "[t]he CSAA thus establishes two classes of abusers: those persons who inflict the abuse (active abusers), and those persons who stand _in loco parentis_ within the household who know of the abuse and who fail to protect the child (passive abusers)." _Id. at 86_. It also established that schools should be considered in loco parentis for the purposes of a negligent-supervision claim based on the sexual abuse of a minor by an employee of the allegedly negligent institution. _Id. at 90-91, 100-01_.

In _Wild v. Carriage Funeral Holdings, Inc._, the court repeated our well-established standard of review when considering an order on a motion to dismiss, recognizing the court **[*24]** should "search[ ] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim.'" _458 N.J. Super. 416, 423, 205 A.3d 1144 (App. Div. 2019)_.

With these principles in mind, plaintiff's action is an "action at law for an injury resulting from the commission of sexual assault." _N.J.S.A. 2A:14-2(b)_. It is clear that plaintiff pled an action that included the commission of a sexual assault and is seeking damages for the injuries stemming from that assault. Thus, pursuant to the CVA, her negligence claims are viable and no longer time-barred.

As the court explained in _C.V.O._, "were we to accept defendants' arguments that common law claims only are viable if there is a cognizable CSAA claim, then child victims who are sexually assaulted by another minor would be foreclosed from bringing common law causes of action." _477 N.J. Super. at 49_. We are convinced that that result would be antithetical to the legislative intent supporting the revival statute. We find no support for such a narrow reading of the statute in view of the plain statutory language or clear legislative intent, "as illuminated by the Legislature's stated desire to expand the rights of victims of sexual assaults and other sexual **[*25]** misconduct." _E.C. by D.C. v. Inglima-Donaldson, 470 N.J. Super. 41, 47, 268 A.3d 1029 (App. Div. 2021)_. As noted in _W.S., 252 N.J. at 524_, the purpose of the CVA was to greatly increase the ability of victims of sexual abuse to pursue justice through the court system. This purpose is highlighted in the legislative history: "I cannot deny victims the ability to seek redress in court for sexual abuse that often leaves trauma that lasts a lifetime." _Governor's Signing Statement to S. 477_ (May 13, 2019).

Because plaintiff timely filed her complaint on November 29, 2021, within the two-year window authorized by the CVA, _N.J.S.A. 2A:14-2(b)_, and alleged cognizable common law causes of action derived from the alleged sexual assaults by her classmates, we reverse the dismissal order and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

---

End of Document

Exhibit D (ii): S.Y. v. Roman Catholic Diocese of Patersons

Not for Publication

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| S.Y., | |
| **Plaintiff,** | |
| v. | Civil Action No. 20-2605 (ES) (CLW) |
| **ROMAN CATHOLIC DIOCESE OF PATERSON, SALESIANS OF DON BOSCO, AND DON BOSCO TECHNICAL HIGH SCHOOL** | OPINION |
| **Defendants.** | |

SALAS, DISTRICT JUDGE

Before the Court is defendant Salesians of Don Bosco's (the "Salesians") motion to dismiss plaintiff S.Y.'s ("Plaintiff") complaint. (D.E. No. 6 ("Motion")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1. As set forth below, the Court DENIES the Salesians's Motion.

**I.    BACKGROUND**

Plaintiff initially brought this civil suit in the Superior Court of New Jersey in Passaic County on behalf of himself and all others similarly situated against the Salesians, Roman Catholic Diocese of Paterson, and Don Bosco Technical High School. (D.E. No. 1-1 ("Complaint" or "Compl.")). On March 1, 2020, the Salesians removed the action to this Court, invoking diversity jurisdiction under 28 U.S.C. § 1332(a)(1). (D.E. No. 1, Notice of Removal, ¶ 4). On September 30, 2020, Plaintiff voluntarily dismissed Roman Catholic Diocese of Paterson from the case. (D.E.

No. 3).  The remaining defendants in this instant case are the Salesians and Don Bosco Technical High School.

As alleged in the Complaint, from approximately 1973 to 1975, when Plaintiff was about thirteen to fifteen years old, he attended Don Bosco Technical High School.  (Compl. ¶ 37).  At that time, Father Sean Rooney was a priest and chemistry teacher at the school.  (*Id.* ¶ 38).  Plaintiff alleges that, shortly after their first meeting, Father Rooney began sexually assaulting and abusing him at school.  (*Id.* ¶¶ 39 & 41).  Plaintiff alleges that Father Rooney "forc[ed] Plaintiff to watch pornography, shower[ed] with Plaintiff, expos[ed] his penis to Plaintiff, masturbate[ed] Plaintiff, perform[ed] oral sex on Plaintiff, ejaculate[ed] on Plaintiff's body, forc[ed] Plaintiff to ejaculate on his body, and digitally penetrat[ed] Plaintiff's rectum."  (*Id.* ¶ 40).  These actions, Plaintiff alleges, constitute crimes of a sexual nature against him.  (*Id.* ¶¶ 36–42).

Further, Plaintiff claims that the defendants did not fulfill their duties to use reasonable care to protect Plaintiff from foreseeable harm by their agent or employee, Father Rooney.  They had such a duty, Plaintiff alleges, because the Salesians and Don Bosco Technical High School had a special relationship with him, as a Catholic follower and student, as well as with Father Rooney, as an employee or agent.  (*Id.* ¶¶ 10–13, 20–21 & 27–29).

Relying on Section 2A:14-2b of the New Jersey revival statute, which retroactively extends the statute of limitations resulting from a "crime of a sexual nature," Plaintiff alleges negligence claims against each defendant.  (*Id.* ¶¶ 81–89, Counts I–III).  The Salesians moves to dismiss the Complaint in its entirety, arguing that Section 2A:14-26 violates the Due Process Clause of the New Jersey Constitution, and that Plaintiff fails to allege sufficient facts under Federal Rule of Civil Procedure 12(b)(6).  (*See generally* D.E. No. 6-1 ("Def. Mov. Br.")).  In the alternative, the Salesians asks the Court to strike certain allegations in the Complaint regarding the Holy See,

2

which is not a party to this action, as immaterial, impertinent, and scandalous.  (*Id.* at 12–15).
Plaintiff filed an opposition (D.E. No. 13 ("Pl. Opp. Br.")), to which Salesians replied (D.E. No.
16 ("Def. Reply Br.")).

## II.     LEGAL STANDARD

### A.      Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient
factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft
v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556
U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for
more than a sheer possibility that a defendant has acted unlawfully," *id.*, and the burden is on the
defendant to show that the plaintiff has not stated a facially plausible claim, *see Davis v. Wells
Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

Determining whether there is "a plausible claim for relief will . . . be a context-specific task
that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*,
556 U.S. at 679.  "All allegations in the complaint must be accepted as true, and the plaintiff must
be given the benefit of every favorable inference to be drawn therefrom."  *Malleus v. George*, 641
F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)).
But a court does not accept as true the complaint's legal conclusions.  *Iqbal*, 556 U.S. at 678
("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is
inapplicable to legal conclusions.").   In the Third Circuit, courts' inquiry into a Rule 12(b)(6)
motion is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing

the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus*, 641 F.3d at 563.

Moreover, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." (citations and internal quotation marks omitted)).

Finally, the Third Circuit has permitted consideration of whether a claim is barred by the statute of limitations in the context of a motion to dismiss where the viability of such defense may be discerned from the complaint itself, *i.e.*, where the facts as pleaded demonstrate the untimeliness of the claim. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384, n.1 (3d Cir. 1994).

### B.     Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f), the Court may, upon motion or *sua sponte*, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint any redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the litigation." *Garlanger v. Verbeke*, 223 F.Supp.2d 596, 609 (D.N.J. 2002) (internal quotation marks omitted).

However, "[b]ecause of the drastic nature of the remedy, . . . motions to strike are usually 'viewed

with disfavor' and will generally 'be denied unless the allegations have no possible relation to the

controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'"

*Id.* (quoting *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993)).

## III.   DISCUSSION

Section 2A:14-2b of New Jersey Statutes is part of an act that is commonly known as New

Jersey's Child Victims Act, and it "eliminate[s] the statute of limitations in civil actions for

sexual abuse, expand[s] the categories of defendants who are potentially liable in these actions,

and codif[ies] the liability of public entities in these actions."  Statement for S. 477, 218th Leg.

(N.J. 2019) (enacted).  The pertinent part of Section 2A:14-2b states the following:

> Notwithstanding the statute of limitations provisions of
> N.J.S.2A:14-2, section 2 of P.L.2019, c.120 (C.2A:14-2a) , section
> 1 of P.L. 1964, c.214 (C.2A:14-2.1), or any other statute, an action
> at law for an injury resulting from the commission of sexual assault,
> any other crime of a sexual nature, a prohibited sexual act as defined
> in section 2 of P.L.1992, c.7 (C.2A:30B-2), or sexual abuse as
> defined in section 1 of P.L.1992, c.109 (C.2A:61B-1), that occurred
> prior to the effective date of P.L.2019, c.120 (C.2A:14-2a et al.), and
> which action would otherwise be barred through application of the
> statute of limitations, may be commenced within two years
> immediately following the effective date.

N.J. Stat. Ann. § 2A:14-2b(a).

Section 2A:14-2b creates a two-year window from December 1, 2019, the date the law

became effective, "for lawsuits to be filed for acts of sexual abuse that occurred prior to the bill's

effective date which would otherwise be time-barred."  Statement for S. 477, 218th Leg. (N.J.

2019) (enacted).  Here, the Complaint was filed on February 7, 2020, well within Section 2A:14-

2b's two-year window.  But because the Complaint alleges claims based on events occurred from

approximately 1973 to 1975, those claims would have been time-barred if not for Section 2A:14-

2b.  (*See* Compl. ¶ 38).

In its Motion, the Salesians argues that Section 2A:14–2b violates its rights to due process under the New Jersey Constitution.  (Def. Mov. Br. at 5–9.)  The Salesians contends that, under the New Jersey Constitution, "statute of limitations in civil cases created vested rights of which litigants cannot be deprived."  (Def. Mov. Br. at 5; Def. Reply Br. at 4 (quoting *State v. Short*, 618 A.2d 316, 320 (N.J. 1993); and then citing *State v. Standard Oil Co.*, 74 A.2d 565, 572 (N.J. 1950))).   According to the Salesians, when confronted with a statute reviving time-barred common-law claims sounding in tort, like the claims at issue here, the New Jersey Supreme Court would follow *Standard Oil* and find Section 2A:14-2b unconstitutional under the New Jersey Constitution.  (*See* Def. Mov. Br. at 7–9.)

In response, Plaintiff argues that *Standard Oil* is limited to "effect of lapse of time upon a claim sounding in contract."  (Pl. Opp. Br. at 5 (quoting in *Panzino v. Cont'l Can Co.*, 364 A.2d 1043, 1046 (N.J. 1976)).  Thus, with a claim sounding in common law torts, Plaintiff contends that "passage of the limitation period simply eliminates a procedural remedy, not a substantive right." (*Id.* at 6 (citing *Short v. Short*, 858 A.2d 571, 575)).  Plaintiff further argues that the Salesians fails to meet its burden to establish that a statute's retroactive application would result in a "manifest injustice."  (*Id.* at 12).  Indeed, according to Plaintiff, Section 2A:14-2b "cures a great injustice in which survivors of childhood sexual abuse, who typically require years to come to terms with the effect of such abuse, have been denied a remedy for the heinous acts committed upon them."  (*Id.* at 3).

## A.    Abstention

The Court first addresses a preliminary issue—whether it should abstain from the exercise of federal jurisdiction.  Defendant removed the instant action from the New Jersey Superior Court[1]

---

[1]    While Plaintiff did not timely raise the issue and the Court cannot remand the case *sua sponte* on this ground, the Court notes that the removal was improper as it violated the forum-defendant rule.  *See* 28 U.S.C. § 1441(b)(2)

and asks this Court to invalidate Section 2A:14-2b based on the New Jersey Constitution. In doing so, Defendant does not raise any argument based on the United States Constitution. Indeed, Defendant admits that "claim-revival statutes generally do not contravene the Due Process Clause in the Fourteenth Amendment to the United States Constitution," but argues that the instant case should be dismissed because "[New Jersey's] Constitution provides 'more due process protections' than those afforded by the United States Constitution." (Def. Mov. Br. at 5 (citing *Jamgochian v. N.J. State Parole Bd.*, 952 A.2d 1060, 1070 (N.J. 2008))).

As a court sitting in diversity, the Court is well aware of its limited role—it must apply the substantive law of the state whose laws govern the action. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 661 (3d Cir. 1980). Section 2A:14-2b, the constitutionality of which has not been addressed by New Jersey's highest court,[2] clearly involves a matter affecting an important public policy of the State of New Jersey. "Principles of federalism implicit in the United States Constitution dictate that, whenever possible, state courts should be given the opportunity to interpret their state constitutions." *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478 (3d Cir. 1998). Indeed, the Supreme Court of United States has warned against "premature adjudication" of federal constitutional questions when a federal court is asked to invalidate a state law. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 79 (1997). Abstention doctrines also require federal courts to allow the state courts,

---

("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."). At the time of removal, at least defendant Roman Catholic Diocese of Paterson "is organized as a not-for-profit corporation under the laws of the State of New Jersey." (Notice of Removal ¶ 7).

[2]    To the Court's knowledge, Judge Paul Boggard of the Superior Court of New Jersey, Morris County, upheld the constitutionality of Section 2A:14-2b.  *See T.M. v. Order of St Benedict of N.J., Inc.*, MRS-L-0399-17, LCV2020939413 (N.J. Sup. Ct., Law Division) (order dated May 26, 2020, stating that "motion to dismiss on statute of limitations grounds, constitutionality grounds [is]. . . denied").  The Court does not consider Judge Boggard's holding in this opinion because Judge Boggard's opinion was issued during oral argument and is not available to the public.

if possible, to address in the first instance questions of state constitutional law.  *Id.*; *see also Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).  To proceed otherwise, federal courts risk "friction-generating error when [the federal court] endeavors to construe a novel state Act not yet reviewed by the State's highest court."  *Arizonans for Official English*, 520 U.S. at 79.

With the Supreme Court's warnings in mind, the Court notes that, while the Salesians asks the Court to enter a declaratory judgment and invalidate Section 2A:14-2b based on the New Jersey Constitution, it is axiomatic that the Court's jurisdiction must be based on the Complaint, which seeks only legal relief.  (*See generally* Compl.).  This distinction is important because a federal district court has greater discretion to decline actions for declaratory judgments.  *Rarick v. Federated Serv. Ins. Co*., 852 F.3d 223, 227 (3d Cir. 2017).  When an action seeks legal relief, however, federal courts have a "virtually unflagging obligation" to exercise jurisdiction, subject only to a few "extraordinary and narrow exception[s]."  *Id.* (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).  One such "extraordinary and narrow exceptions" is potentially implicated here.  That is, abstention is appropriate where "there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar."  *Colo. River*, 424 U.S. at 814.  This type of abstention involves situations where "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."  *Id.* (citing *Burford v. Sun Oil Co*., 319 U.S. 315 (1943)).

The Court finds that the *Burford* abstention doctrine does not apply in this instant case, nor is any other abstention doctrine.  Specifically, as will be explained below, the Court finds that, while this case involves a state law on a matter of substantial public concern, with respect to the

instant case and arguments presented herein, the law on New Jersey's Due Process protection guaranteed by its Constitution as applied to a statute reviving time-barred claims appears to be settled. The Court thus addresses the parties' arguments on the merits regarding whether Section 2A:14-2b violated the New Jersey Constitution.

### B.  Constitutionality

Federal courts sitting in diversity "must apply the substantive law of the state whose laws govern the action." *City of Philadelphia v. Lead Indus. Ass'n, Inc.*, 994 F.2d 112, 123 (3d Cir. 1993). Where, as here, "the state's highest court has not addressed the precise question presented, a federal court must predict how the state's highest court would resolve the issue." *Id.* In so doing, federal courts "must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Covington v. Cont'l Gen. Tire, Inc.*, 381 F.3d 216, 218 (3d Cir. 2004) (quoting *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993)). To carry out this obligation, "it is critical that the federal court do all within its power to view the problem before it as a state court would, and not through the eyes of a court steeped in federal law." *Packard*, 994 F.2d at 1047. That is, a federal court "may not impose [its] own view of what state law should be, nor expand state law in ways not foreshadowed by state precedent." *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 217 (3d Cir. 2010) (internal citations and quotation marks omitted).

New Jersey law generally "favors prospective application of a new statute." *James v. N.J. Mfrs. Ins. Co.*, 83 A.3d 70, 72 (N.J. 2014). But a statute should be applied retroactively when, first, "the Legislature intended to give the statute retroactive application," and, second, "the retroactive application is [not] an unconstitutional interference with 'vested rights' [and] will [not]

result in a 'manifest injustice.'" *Johnson v. Roselle EZ Quick LLC*, 143 A.3d 254, 264 (N.J. 2016)

(quoting *Twiss v. State*, 591 A.2d 913, 915–16 (N.J. 1991)); *see also R.A. v. W. Essex Reg'l Sch.

Dist. Bd. of Educ.*, No. A-0329-19, 2021 WL 3854203, at *10 (N.J. Super. Ct. App. Div. Aug. 30,

2021).

Here, Section 2A:14-2b, which revives previously time-barred claims based on injuries

caused by certain sexual offenses, is explicitly a retroactive extension of the statute of limitations

for those claims.  The parties do not dispute, and the Court indeed finds, that the New Jersey

Legislature evinced a clear intent to allow, within a two-year window, claims that arise from events

"occurred prior to the bill's effective date which would otherwise be time-barred."  Statement for

S. 477, 218th Leg.; (*see* Def. Mov. Br. at 1; Pl. Opp. Br at 2).  Nor does the Salesians argue that

the application of Section 2A:14-2b will result in a "manifest injustice."  Indeed, in response to

Plaintiff's argument that the Salesians fails to meet its burden to establish "manifest injustice," the

Salesians contends that Plaintiff's argument "is entirely beside the point."  (Def. Reply Br. at 7).

According to the Salesians, "[w]hether or not [Section] 2A:14-2b represents good policy, it invades

the Salesians' vested right in repose with respect to Plaintiff's decades-old claims."  (*Id.*).  It is

thus clear that the sole basis for the Salesians's challenge to the constitutionality of Section 2A:14-

2B is that the statute impairs the Salesian's "vested rights" created by the expiration of the statute

of limitations in violation of New Jersey's Due Process Clause.

The Supreme Court of New Jersey first addressed this issue in *Standard Oil*.  74 A.2d 565.

There, under an amended escheat statute, the State sought to escheat, *inter alia*, unpaid dividends,

shares of stock, and unpaid wages of former employees of defendant Standard Oil.  *Id.* at 569.  The

statute provided that the State had the power to escheat such property if it remained unclaimed and

the whereabouts of the owner remained unknown for fourteen successive years.  *Id.* at 568.  Prior

to the amendment, however, such action would have been barred after the lapse of six years from the accrual of the cause of action. *Id.* at 573. The Supreme Court of New Jersey ruled in favor of Standard Oil, the corporate defendant. *Id.* While fully recognizing that the settled rule under federal law was that the revival of a time-barred action by a state legislature did not violate the Fourteenth Amendment, the court nevertheless held that, under New Jersey law, "where a right of action has become barred under existing law, the statutory defense constitutes a vested right which is proof against legislative impairment." *Id.* at 570–71.

However, the Supreme Court of New Jersey has explicitly stated that this aspect of *Standard Oil* should not be accorded the "comprehensive amplitude" to mean that the limitation bar necessarily creates "vested rights," the taking of which could amount to deprivation without due process of law. *Panzino*, 364 A.2d at 1046. Rather, the holding of *Standard Oil* "should be confined to the particular issue before the [court] in that case, i.e., the effect of lapse of time upon a claim sounding in contract." *Id.* The court explained that, unlike *Standard Oil*, the claim at issue in *Panzino* was grounded in statute—New Jersey's Workmen's Compensation Act. *Id.* The statute of limitations at issue was merely a "jurisdictional prerequisite[] to agency action," which the Legislature was free to change in order to "enlarge the availability of [the] statutory right to compensation for occupational disease by removing the five-year limitation period." *Id.* at 1046–47.

The Salesians argues that *Panzino* "carved out an exception to the rule set forth in *Standard Oil*" and recognized a distinction "between common-law claims and statutory claims." (Def. Mov. Br. at 6–7). Under the Salesians's interpretation, the Supreme Court of New Jersey would find it permissible to revive time-bared statutory claims but not a time-barred common-law claims sounding in torts, like the claims in the instant case. (*Id.*). As support, the Salesians argues that

*Panzino* explained that "*Standard Oil* considered the effect of the running of the statute of limitations upon a contractual obligation—*a chose in action*." (*Id.* at 7–8 (quoting *Panzino*, 364 A.2d at 304 (emphasis the Salesians's)).  Because a common-law tort claim, such as Plaintiff's negligence claims, "like a claim for breach of contract, is a chose in action," the Salesians contends that the passage of time conferred to the Salesians "vested rights" in repose. (*Id.* at 8).  In response, Plaintiff argues that *Panzino* is the rule and *Standard Oil* is the exception. (Pl. Opp. Br. at 5).  That is, "*Panzino* clarifies the rule that the statute of limitations does not create a vested right[] and made clear that it is *Standard Oil* which represents a limited exception to that rule for contract actions." (*Id.*).  The Court agrees with Plaintiff.

The Court is not persuaded that the analysis of *Panzino* was in anyway based on the definition of "a chose in action."  This term appeared once in the entire opinion, where the court explained the specific contract claim at issue in *Standard Oil* and stated that it "considered the effect of the running of the statute of limitations upon a contractual obligation—a chose in action." *Panzino*, 364 A.2d at 1046.  In other words, the term "a chose in action," as used in *Standard Oil* and *Panzino*, encompassed a specific type of contractual obligation.  In explicit and unambiguous terms, the court then held that *Standard Oil* should be confined to "the effect of lapse of time upon a claim sounding in contract." *Id.*  Because Panzino's claim was "a right born of statute" and did "not spring from *contract*," the court held that *Standard Oil* was inapposite. *Id.* (emphasis added).

As the parties recognize, New Jersey lower courts have repeatedly interpreted *Panzino* to mean that *Standard Oil* is limited to claims sounding in contract. *See Short*, 858 A.2d at 574; *cert. denied*, 866 A.2d 985 (2005); *D.J.L. v. Armour Pharm. Co.*, 704 A.2d 104, 115 (Law. Div. 1997); *see also Bush v. Johns-Manville Prod. Corp.*, 381 A.2d 65, 69 (App. Div. 1977) (J. Kole) (concurring).  The Salesians argues that New Jersey lower courts' decisions are not binding on this

Court and that Plaintiff's reliance on them are misplaced. (Def. Mov. Br. at 6–7; Def. Reply Br. at 6). It also argues that *Short* is inapposite in this case because it involved the retroactive extension of the statutory of limitation for a statutory claim. (Def. Mov. Br. at 6–7; Def. Reply Br. at 6). The Court rejects both arguments.

While decisions of New Jersey lower courts are not controlling, "[w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. A.T. & T. Co.*, 311 U.S. 223, 237 (1940). A district court may also look to the decisions of a trial court as "a datum for ascertaining state law." *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 361 (3d Cir. 2007). The significance of *Short*, which was decided by the Appellate Division, is in how *Short* clarified the reach of *Standard Oil*—*Standard Oil* did not apply in *Short*, which involved claims under New Jersey's Wrongful Death Act, because *Standard Oil* is "limited to 'a claim sounding in contract.'" *Short*, 858 A.2d at 575. Likewise, the Superior Court's recognition in *D.J.L.* that *Panzino* "acknowledges a difference between rights obtained through statutory construction [] versus those created by agreement through arms length negotiations" is a helpful datum, with which the Salesians provides no persuasive data to show that the Supreme Court of New Jersey will disagree. Accordingly, the Court agrees with Plaintiff that *Panzino* limited *Standard Oil* to claims sounding in contract.

Furthermore, the Court is not persuaded that time-barred tort claims created vested rights such that they are *categorically* immune from statutory revival in New Jersey. *See Pa. Greyhound Lines, Inc. v. Rosenthal*, 102 A.2d 587, 590–91 (N.J. 1954) (holding that New Jersey's Joint Tortfeasors Contribution Law, which "embraces antecedent joint tortious acts for omissions" was

13

constitutional and rejecting Rosenthal's argument that his "freedom from liability, although negative in nature, is a vested right under existing law"). To the contrary, New Jersey courts have recognized that they "have had difficulty in providing a clear and consistent definition of th[e] term [vested right] in the specific context of legislative retroactivity." *Nobrega v. Edison Glen Assocs.*, 772 A.2d 368, 379 (N.J. 2001) (collecting cases). Nevertheless, the caselaw provides sufficient guidance for this instant Motion.

Since its decision in *Standard Oil*, the Supreme Court of New Jersey has generally recognized that the term "vested right" is "an elusive concept" that is somewhat conclusory—"a right is vested when it has been so far perfected that it cannot be taken away by statute." *Rothman v. Rothman*, 320 A.2d 496, 499 (N.J. 1974) (quoting Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv. L. Rev. 692, 696 (1960)); *see also Nobrega*, 772 A.2d at 379–80; *Pa. Greyhound Lines, Inc.*, 102 A.2d at 593; *Twiss*, 591 A.2d at 917. The Supreme Court of New Jersey has explained that the general concept of the term "vested rights" is "that of a present fixed interest which in right reason and natural justice should be protected against arbitrary state action." *Pa. Greyhound Lines, Inc.*, 102 A.2d at 593; *see also Twiss*, 591 A.2d at 917 ("'[V]ested right' encompasses a fixed interest entitled to protection from state action."). New Jersey lower courts have interpreted that concept to mean that, "to become vested, a right must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present for future enforcement of a demand, or a legal exemption from a demand made by another." *Levin v. Township of Livingston*, 163 A.2d 221, 225 (Super. Div. 1960), *aff'd in part, rev'd in part*, 173 A.2d 391 (N.J. 1961) (internal citations omitted). But a "mere expectation as may be based upon an anticipated continuance of the present general laws" is not a vested right, *id.*, and "[t]here can be no vested right in the continued existence of a statute or rule of the common

law which precludes its change or repeal," *Magierowski v. Buckley*, 121 A.2d 749, 762 (App. Div. 1956).

Relevant to the instant motion, New Jersey precedent clearly establishes that, like with federal law, legislation "readjusting rights and burdens" is not unlawful "solely because it upsets otherwise settled expectations." *Philips v. Curiale*, 608 A.2d 895, 902 (N.J. 1992) (quoting *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16 (1976)). "This is true even though the effect of the legislation is to impose a new duty or liability based on past acts." *Id.*; *see Rothman v. Rothman*, 320 A.2d 496, 499–503 (1974) (balancing the public interest against the private right and holding that the application of the statute authorizing an equitable distribution of marital assets upon divorce did not offend the requirement of due process); *State Trooper Fraternal Ass'n of N.J., Inc. v. State*, 692 A.2d 519, 528–29 (N.J. 1997) (balancing the public interest against the impact on former state troopers whose contractually secured retroactive salary payments were eliminated by Department of Personnel regulation and holding that "the contractual interest at stake is not a vested right"). This is because of "principles of substantive due process that define the sovereign powers of government—when there is an evil that deserves redress, the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object." *Philips*, 608 A.2d at 903 (quoting *Silver v. Silver*, 280 U.S. 117, 122 (1929)). To this end, "retroactive civil legislation generally does not violate due process unless the consequences are 'particularly harsh and oppressive.'" *Id.* at 902 (quoting *State v. Ventron Corp.*, 469 A.2d 150 (N.J. 1983)).

Here, the Salesians does not appear to argue or provide any factual basis to suggest that the Child Victims Act's revival of the time-barred claims was in any way egregious, harsh, or oppressive. Nor does it argue that the public interest promoted by the Act was outweighed by the

impact it caused to the defendants. Rather, the sole basis of its objection to the Act is because the Act retroactively revived claims that "have for decades been indisputably barred." (Def. Reply Br. at 7). In other words, the Salesians argues that the revival statute upsets its "settled expectations" and "anticipated continuance of the present general laws." *See Philips*, 608 A.2d at 902; *Levin*, 163 A.2d at 225. But, without more, that is precisely the type of "expectation" that the New Jersey courts have repeatedly held insufficient to invalidate otherwise legitimate legislation. *Philips*, 608 A.2d at 903–04; *D.J.L.*, 704 A.2d at 115 ("An 'expectation,' or a mere 'hope,' even when reasonably based upon present law, is not a vested right.").

Accordingly, the Court does not find that Section 2A:14-2b's revival of time-barred tort claims violated the Salesians's due process rights protected under the New Jersey Constitution. *See W.F. v. Roman Cath. Diocese of Paterson*, No. 20-7020, 2021 WL 2500616 (D.N.J. June 7, 2021) (upholding the constitutionality of Section 2A:14-2b based on clear legislative intent and a lack of any due process violation or manifest injustice).

## C. Sufficiency of the Allegations

As a preliminary matter, the Court notes that the parties' briefs are woefully insufficient in addressing whether the Complaint meets the Rule 12(b)(6) standard. For example, the Salesians filed the wrong moving brief, which discusses the complaint in a different case concerning a plaintiff named "W.F.," who alleges sexual abuse by "Brother Alan Scheneman." (Def. Mov. Br. at 1). That case is currently pending before the Honorable Madeline Cox Arleo, U.S.D.J. *W.F. v. Roman Catholic Diocese of Paterson*, No. 20-7020 (D.N.J.). Moreover, Plaintiff declines to respond to the substance of the Salesians's arguments in his opposition brief, contending that the Salesians's arguments do not apply to the facts of this case and that, based on the erroneously filed brief alone, the Salesians's motion must be "denied on its face." (Pl. Opp. Br. at 1 & 13). In

response, the Salesians addresses the correct Complaint for the first time in its reply brief and argues that "the material allegations of the [c]omplaint in *W.F.* and the Complaint in this case are identical," such that the arguments in its moving brief still apply. (Def. Reply Br. at 8–9). That is, the Salesians argues that the Complaint alleges that the defendants "knew or should have known" that the alleged abuser had "a propensity to engage in the sexual abuse of children" without sufficient factual support. (*Id.*). Plaintiff did not have a chance to respond to these arguments.

Despite the insufficient briefing, the Court finds that, based on the well-pleaded factual allegations in the Complaint, reasonable inferences can be drawn to sustain Plaintiff's negligence claims against the defendants. The crux of the Salesians's argument is that the Complaint does not plausibly plead what the Salesians knew or should have known to support the element of breach. (*See* Def. Mov. Br. at 10–11; Def. Reply Br. at 8–9). However, the Complaint includes detailed allegations regarding the Holy See's documented policy and practice on handling accusations of child sexual abuse, and that policy was allegedly directed to the Holy See's agents, including the defendants. For example, in 1922 and 1962, the Holy See allegedly released a few confidential documents that mandated procedures for "Holy See's agents, including the [d]efendants" to use when handling cases of child sexual abuse by clergy. (Compl. ¶¶ 54–55). According to the Complaint, these documents, *inter alia*, showed that "the Holy See and its agents to whom the documents w[ere] directed had knowledge that there was a systemic problem of Catholic clergy sexually molesting children" but "created a shroud of secrecy insulating [p]riests from consequences." (*Id.* ¶¶ 56 & 59). Such policy and practice includes the "transfer and reassignment of clergy known or suspected to abuse minors to deflect attention from reports or allegations of child sexual abuse." (*Id.* ¶ 62(b)).

Against the Catholic Church's knowledge of a prevalent problem and its general policy and practice, the Complaint includes specific accusations against the alleged abuser, Father Rooney, and his subsequent transfer to Plaintiff's school.  From approximately 1968 to 1971, Father Rooney served as a financial administrator and teacher at Salesian Junior Seminary, where he allegedly was accused of "fondling and masturbating a fourteen[-]year-old seminary student." (*Id.* ¶ 45).  Subsequently but at an unspecified time, Father Rooney was transferred to Plaintiff's school, Don Bosco Technical High School.  (*See id.* ¶ 63).  When Plaintiff attended Don Bosco Technical High School from 1973 to 1975, Father Rooney was a priest and chemistry teacher at the school.  (*Id.* ¶¶ 37–38).  Plaintiff alleges that Father Rooney's transfer and reassignment "were pursuant to the policy and practice designed to conceal sexual abuse of clergy and protected the [d]efendants from scandal."  (*Id.* ¶ 63).

Accepting all allegations as true and viewing them in the light most favorable to Plaintiff, the Court thus finds that these allegations support a reasonable inference that the harm sustained by Plaintiff was foreseeable.  The Court also denies the Salesians's alternative motion to strike allegations regarding sexual abuse in the Catholic Church generally.  (Def. Reply Br. at 9 (citing Compl. ¶¶ 52–70); *see* Def. Mov. Br. at 13–15).  As explained above, the Catholic Church's alleged policy and practice on handling child sexual abuse accusations is central to Plaintiff's claim that the defendants failed to exercise reasonable care to protect Plaintiff from the foreseeable risk imposed by Father Rooney, who was allegedly transferred to Don Bosco Technical High School after being accused of sexually abuse a minor student.[3]

---

[3]     While the Motion was pending, on December 14, 2020, CHILD USA filed a motion for leave to appear as amicus curiae, along with an amicus curiae brief arguing that Section 2A:14-26 is constitutional.  (*See generally* D.E. No. 15).  The Court denies CHILD USA's motion.  CHILD USA's request constitutes "a matter to be decided in this Court's discretion."  *Hospira, Inc. v. Sandoz, Inc.*, No. 09-4591, 2014 WL 794589, at *4 (D.N.J. Feb. 27, 2014). Unlike the appellate level, where the filing of amicus briefs has become standard procedure, "[a]t the trial level, where issues of fact as well as law predominate, the aid of amicus curiae may be less appropriate than at the appellate level." *U.S. v. Alkaabi*, 223 F.Supp.2d 583, n.16 (2002) (quoting *Yip v. Pagano*, 606 F. Supp. 1566, 1568 (D.N.J. 1985)); *see*

## IV.    CONCLUSION

For the reasons set forth above, the Court DENIES the Salesians's Motion and CHILD USA's motion for leave to appear as *amicus curiae*.  (D.E. Nos. 6 & 15).  An appropriate Order accompanies this Opinion.


Date:   September 30, 2021                                      *s/Esther Salas*

                                                             **Esther Salas, U.S.D.J.**

---

*Neonatology Assocs., P.A. v. Comm'r of Internal Revenue*, 293 F.3d 128, 133 (3d Cir. 2002) (stating that the appellate court "would be well advised to grant motions for leave to file amicus briefs unless it is obvious that the proposed briefs do not meet Rule 29's criteria as broadly interpreted")).  Nevertheless, "[l]eave to so file may be granted if a court desires assistance in the understanding of an issue, and if the information offered is timely and useful." *Hospira*, 2014 WL 794589, at * 4.  Because the Court requires no further assistance in resolving the parties' disputes in this Motion, it denies CHILD USA's motion and will not allow CHILD USA's amicus brief.