Exhibit F (i): Dawn Angelique Richard v. Sean Combs

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAWN ANGELIQUE RICHARD,<br><br>Plaintiff,<br><br>v.<br><br>SEAN COMBS, HARVE PIERRE, REMOTE PRODUCTIONS INC, NEW REMOTE PRODUCTIONS INC, THE NORDLINGER GROUP LLC, NOVEMBER 15 LLC, DADDY'S HOUSE RECORDING STUDIO, BAD BOY ENTERTAINMENT LLC, BAD BOY RECORDS LLC, BAD BOY ENTERTAINMENT HOLDINGS INC, BAD BOY PRODUCTIONS HOLDINGS INC, BAD BOY BOOKS HOLDINGS INC, THE SEAN COMB MUSIC INC, SEAN COMBS CAPITAL LLC, COMBS ENTERPRISES, LLC, UNIVERSAL MUSIC GROUP NV, INTERSCOPE GEFFEN A&M RECORDS, DIAGEO AMERICAS SUPPLY INC D/B/A CIROC DISTILLING COMPANY D/B/A CIROC CANNING CO, COMBS WINES AND SPIRITS LLC, JANICE COMBS PUBLISHING INC, JANICE COMBS PUBLISHING HOLDINGS INC, SONY SONGS, a division of SONY MUSIC PUBLISHING LLC, LOVE RECORDS INC, EPIC RECORDS**,** DOE CORPORATIONS 1-10, AND DOE DEFENDANTS 11-20,<br><br>Defendants. | CIVIL CASE NO. cv-24-6848<br><br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Dawn Angelique Richard ("Ms. Richard"), by and through her attorneys, The Bloom Firm and IP Legal Studio LLC, brings this action against Defendants. Ms. Richard alleges upon knowledge concerning her own experience and upon information and belief as to all other matters.

## PRELIMINARY STATEMENT

1.      Dawn Angelique Richard, known professionally as Dawn Richard, is an American musician, singer, songwriter, and performer. She gained widespread recognition as a member of

the girl group *Danity Kane*, formed by Defendant Sean Combs ("Mr. Combs"), and later transitioned into a key member of Mr. Combs' band *Diddy – Dirty Money.*

2.      Defendant Sean Combs, a once-celebrated hip-hop mogul popularly known by his stage names Puff Daddy, Puffy, P. Diddy, Diddy, or Love, skyrocketed to fame in the late 1990s and became a powerful and enduring figure in the music and entertainment industry. In 1998, Mr. Combs explained the origins of his stage name in a *USA Today* interview: his nickname was "**Puff**" because he had a "**temper**" and was known to "**huff and puff**" when he was angry.

3.      Over the decades following his rise to fame, Mr. Combs' star-studded, larger-than-life persona overshadowed his vicious temper and pervasive acts of violence directed towards those in his inner circle – specifically, women.

4.      Mr. Combs' namesake temper frequently manifested in physical violence. Mr. Combs regularly hurled objects in fits of rage, often throwing items such as mobile phones, laptops, food, and studio equipment across the room or at people. On numerous occasions, Ms. Richard witnessed Mr. Combs brutally beat his girlfriend, Ms. Casandra ("Cassie") Ventura ("Ms. Ventura"). His persistent abuse included choking and strangling Ms. Ventura, striking her with his hands and with objects, slapping her, punching her, and throwing items at her, including a scalding hot pan.

5.      On many occasions, Ms. Richard tried to intervene, offering Ms. Ventura support and encouragement to leave Mr. Combs. Each time, Mr. Combs learned of her efforts to help Ms. Ventura and became enraged, threatening Ms. Richard's life with statements such as "**you want to die today,**" "**I make n***** go missing**" and "**I end people.**"

6.      Compounding Mr. Combs' violent acts and death threats, he flagrantly exploited Ms. Richard's musical talent as a singer and writer while withholding her rightful earnings, stealing her copyrighted works, and subjecting her to years of inhumane working conditions which included groping, assault, and false imprisonment, among other violations.

7.     For nearly a decade, Mr. Combs manipulated Ms. Richard with mantras that submission to his depraved demands was necessary for career advancement, instilling in her the belief that such abuse and exploitation were required for female artists to succeed in the music industry. It was not until Ms. Ventura's bravery in coming forward that Ms. Richard realized her own personal suffering was tied to the many years of abuse by Mr. Combs that had become normalized for her.

8.     As more women courageously come forward, Plaintiff has been empowered by this collective strength and now adds her voice to the growing chorus of victims bravely sharing their harrowing stories. Together, they seek justice and stand in solidarity, as the latest victims of the #Me Too movement in the music industry.

## PARTIES

9.     Ms. Dawn Angelique Richard is a resident of the State of California and was employed by Defendants Remote Productions Inc., New Remote Productions Inc., Bad Boy Entertainment LLC, Bad Boy Records LLC, Bad Boy Entertainment Holdings LLC, Bad Boy Productions Holdings Inc., Bad Boy Books Holdings Inc., The Sean Comb Music Inc., Sean Combs Capital LLC, and Combs Enterprises LLC (hereinafter collectively "Bad Boy Records") from 2005 until 2012. At all relevant times herein, Ms. Richard met the definition of an "employee" of Defendant Bad Boy Records and related entities. At all relevant times herein, Ms. Richard was a resident of the State of New York.

10.     Defendant Sean Combs, upon information and belief, resides within the State of California. At all relevant times herein, Mr. Combs met the definition of an "employer" of Ms. Richard under all relevant statutes.

11.     Defendant Harve Pierre ("Mr. Pierre"), upon information and belief, resides within the state of New Jersey. At all times relevant herein, Defendant Harve Pierre was the president of

Bad Boy Entertainment and Bad Boy Records in New York and met the definition of an "employer" of Ms. Richard under all relevant statutes.

12.     Defendants Remote Productions Inc. ("RPI") and New Remote Productions Inc. ("NRPI") are Delaware corporations and television production companies, which upon information and belief, were created by Mr. Combs to produce *Making The Band* in New York and in California. At all relevant times herein, RPI and NRPI employed Ms. Richard under all relevant statutes.

13.     Defendant The Nordlinger Group LLC is a finance firm with its principal place of business in New York, and on information and belief, is/was employed by other named defendants herein to pay and account to Ms. Richard pursuant to her employment with other named defendants.  On information and belief, The Nordlinger Group LLC formed November 15 LLC for purposes of disbursing funds relative to *Making The Band.*

14.     Upon information and belief, Defendant Daddy's House Recording Studio Inc. is a New York corporation and a music recording studio owned by Defendant Bad Boy Records, in New York.  At all relevant times herein, Ms. Richard was an employee required to work at said studio.

15.     Defendant Bad Boy Entertainment LLC is a music, media, and entertainment company founded by Defendant Sean Combs, which includes the record label Defendant Bad Boy Records LLC. Defendant Bad Boy Entertainment LLC is a Delaware limited liability company and successor-in-interest to RPI. At all relevant times herein, Bad Boy Entertainment LLC met the definition of an "employer" of Ms. Richard under all relevant statutes.

16.     Defendant Bad Boy Entertainment Inc. is a Florida corporation.  At all relevant times herein, Bad Boy Entertainment Inc. met the definition of an "employer" of Ms. Richard under all relevant statutes.

17.     Defendant Bad Boy Entertainment Holdings Inc. is a New York corporation. Upon information and belief, Defendant Bad Boy Entertainment Holdings Inc. is a successor-in-interest to Defendants Bad Boy Entertainment LLC, Bad Boy Records LLC, and Bad Boy Entertainment Inc. as alleged herein.

18.     Defendant Bad Boy Productions Holdings Inc. is a New York corporation.  Upon information and belief, Defendant Bad Boy Production Holdings Inc. is a successor-in-interest to other "Bad Boy" Defendants as alleged herein.

19.     Defendant Bad Boy Books Holdings Inc. is a New York corporation.  Upon information and belief, Defendant Bad Boy Books Holdings Inc. is a successor-in-interest to other "Bad Boy" Defendants as alleged herein.

20.     Defendant The Sean Comb Music Inc. is a company under which Ms. Richard was employed by Defendant Sean Combs.  Upon information and belief, The Sean Comb Music Inc. is a part or successor to other "Bad Boy" company Defendants as alleged herein.

21.     Defendants Sean Combs Capital LLC and Combs Enterprises LLC are New York limited liability companies, which upon information and belief are successor-in-interest companies to Defendant The Sean Comb Music, Inc.

22.     Defendant Universal Music Group N.V. ("UMG") is a Dutch–American multinational music corporation. UMG's corporate headquarters are located in Hilversum, Netherlands and its operational headquarters are located in Santa Monica, California.  Defendant Interscope Geffen A&M Records are subsidiaries of UMG, with operational headquarters in California.  At all relevant times herein, UMG and subsidiaries Interscope Geffen A&M Records financially benefited from, condoned and enabled Defendant Combs' misconduct as defined under all relevant statutes.

23.      Defendant Diageo Americas Supply Inc. was a New York corporation, and upon information and belief, currently is a Kentucky and/or an Illinois corporation, doing business as

5

Ciroc Distilling Company in New York. Ms. Richard conferred a benefit on these Defendants pursuant to the direction of Defendant Combs.

24. Defendant Combs Wines and Spirits LLC is a New York limited liability company, which upon information and belief, is Defendant Combs' holding company for sponsorships by Defendant Diageo Americas Supply Inc. d/b/a Ciroc Distilling Company. At all relevant times, Ms. Richard was employed by Defendant Combs Wines and Spirits LLC under all relevant statutes.

25. Defendant Janice Combs Publishing Inc. is a music publishing administrator and a New York corporation, who at all relevant times, held or holds the publishing copyrights of Ms. Richard pursuant to her employment with other defendants herein under all relevant statutes.

26. Defendant Janice Combs Publishing Holdings Inc. is a music publishing administrator, a New York corporation, and a successor in interest to Janice Combs Publishing Inc., who at all relevant times, held or holds the publishing copyrights of Ms. Richard pursuant to her employment with other defendants herein under all relevant statutes.

27. Defendant Sony Songs, a division of Sony Music Publishing LLC, is a New York limited liability company who is the assignee of Ms. Richard's publishing copyrights from Defendants Janice Combs Publishing Inc. and Janice Combs Publishing Holdings Inc.

28. Defendant Love Records Inc. is a music record label owned and/or, upon information and belief, controlled by Defendant Sean Combs, with its principal place of business in California. Ms. Richard conferred a benefit on this Defendant pursuant to the direction of Defendant Combs.

29. Defendant Epic Records, a record label currently managing other defendants' companies, interests and music, is a subsidiary of Sony Music Entertainment, with its principal place of business in New York. Ms. Richard conferred a benefit on these Defendants pursuant to the direction of Defendant Combs.

## JURISDICTION AND VENUE

30.     This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343, as this action asserts violations of 18 U.S.C. § 1591 *et seq*., 18 U.S.C. § 1589 *et seq*., and 17 U.S.C. § 106 *et seq*., and therefore raises federal questions regarding the deprivation of Ms. Richard's rights. The Court has supplemental jurisdiction over Ms. Richard's related claims arising under state and city law pursuant to 28 U.S.C. § 1367(a).

31.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this District, and Defendants Sean Combs and Bad Boy Records conduct substantial business and/or are domiciled in this District.

## FACTUAL ALLEGATIONS

**I.      Ms. Richard is selected to be in Mr. Combs' all-female musical group *Danity Kane* after competing on MTV's *Making The Band***

32.     In or around 2004, Ms. Richard was selected to participate in Season 3 of MTV Networks' reality television show, *Making The Band*. The show centered around the formation and development of a new musical group under the mentorship of Mr. Combs. The contestants would compete and be chosen by Mr. Combs to form a band, which would go on to create albums and perform.

33.     For aspiring artists like Ms. Richard, *Making The Band* represented a concrete path to a career in the entertainment industry. Ms. Richard appeared in Seasons 3 and 4 of *Making The Band*, which first aired in 2005,[1] and in Season 5 of *Making His Band*, which aired in 2009.[2]

---

[1] *Making The Band* is a reality television series that premiered on MTV in 2000. The show has had several iterations, each featuring a different musical group. The stars of Season 3 and 4 were Aubrey O'Day, Wanita "D. Woods" Woodgett, Shannon Bex, Aundrea Fimbres, and Ms. Richard, known as the all-female group *Danity Kane.*

[2] Season 5 of *Making The Band* featured *Diddy – Dirty Money*, a trio consisting of Mr. Combs, Kalenna Harper, and Ms. Richard.

34.     Out of thousands of contestants, Ms. Richard along with approximately twelve other women were selected to participate in Season 3 of *Making The Band*. Five women, including Ms. Richard, were ultimately chosen to be in the group, *Danity Kane*, which was named by Ms. Richard.

35.     Prior to and including the first *Danity Kane* album, *Making The Band* was filmed entirely at Daddy's House Recording Studio at 3120 W. 44th Street, New York, New York. The *Making The Band* content that focused on *Danity Kane*'s work on its second album, *Welcome to the Dollhouse*, was filmed at Daddy's House and at Mr. Combs' Miami residence.  Other *Making The Band* episodes included Los Angeles as a third filming location.

36.     Upon information and belief, to create *Making The Band*, camera crews filmed 24 hours a day, gathering months' worth of footage to condense into mere hours of entertainment for viewers.

37.     *Danity Kane* released its self-titled debut album in August 2006 and its second album *Welcome to the Dollhouse* in March 2008.

38.     *Danity Kane's* first album sold over 4,000,000 copies; damages to Ms. Richard for unpaid salaries are estimated at $1,000,000.00; *Danity Kane's* second album *Welcome to the Dollhouse* sold over 2,000,000 copies; damages to Ms. Richard for unpaid salaries and royalties are estimated at $500,000.00.  Damages on unpaid wages for touring on over 100 dates for Ms. Richard with *Danity Kane* are estimated at $1,800,000.00.

39.     Mr. Combs fired bandmate Aubrey O'Day and Wanita "D. Woods" Woodgett from *Danity Kane* on live television at the height of its fame in 2008; which resulted in *Danity Kane* being disbanded in 2009.

        //

        //

## II.   Ms. Richard first encounters Mr. Combs' aggressive, intimidating behavior and animus toward women

40.   During the auditions and on the set of *Making The Band*, Mr. Combs projected an aura of superiority, wealth, and power. Mr. Combs regularly wore sunglasses and avoided looking the female contestants in the eyes, contributing to an atmosphere of uncertainty and intimidation.

41.   During auditions, Mr. Combs spoke to the female contestants in a hostile, condescending manner, making disparaging gender-based remarks such as calling them "fat," "ugly," "bitches," and "hoes." Ms. Richard felt threatened and intimidated by Mr. Combs' blatant disdain for the young women, like herself, who were excited for the opportunity to be on his show.

42.   Once the band was made, Mr. Combs' contempt for women was readily apparent as he continued to display aggressive and hostile behavior towards Ms. Richard and her all-female *Danity Kane* bandmates. Mr. Combs regularly referred to the five women as "bitches" and "hoes" and denigrated their physical appearances. By way of example, Mr. Combs stated that Ms. Richard was too skinny and needed to "do something about this [her face]."

43.   On one occasion in or around 2005, during the first season of *Making The Band 3*, Ms. Richard observed Mr. Combs' ex-partner and the mother of three of his children, Kim Porter, leaving Mr. Combs' recording studio in tears with visible facial injuries including a lacerated lip. Realizing that Mr. Combs was capable of committing acts of violence against women caused Ms. Richard to feel deep apprehension and fear that Mr. Combs could one day physically harm her.

44.   Ms. Richard was present when Mr. Combs was introduced to Casandra ("Cassie") Ventura for the first time, in or around 2006. The moment Mr. Combs first saw Ms. Ventura, his demeanor noticeably shifted. Mr. Combs positioned himself directly in front of Ms. Ventura's seat, invading her personal space, and fixated on her with an intense, unyielding stare, isolating her from the other people in the room including Ms. Ventura's then-boyfriend, music producer Ryan Leslie.

9

45.     Coincidentally, this first meeting between Mr. Combs and Ms. Ventura was the first time that Ms. Richard was in Mr. Combs' presence without a camera crew filming. Observing Mr. Combs behave in such an intimidating, predatory manner the first time that they were off camera made Ms. Richard feel deeply apprehensive and afraid of him.

46.     Subsequently, Ms. Ventura ended her relationship with Mr. Leslie and began dating Mr. Combs, who would become violent and abusive towards her.

### III.     *Danity Kane*: Sexual harassment, inhumane treatment, and denial of basic needs by Mr. Combs

47.     For the majority of Ms. Richard's tenure as a member of *Danity Kane* and *Diddy – Dirty Money*, Mr. Combs required her to remain at his various residences and studios in New York, Los Angeles, Florida, and New Jersey for activities such as recording, rehearsing, dressing, preparing costumes, and exercising.

48.     Throughout the productions of *Making the Band* 3 and 4, Mr. Combs deprived Ms. Richard and her *Danity Kane* bandmates of basic needs such as adequate food and sleep. When Ms. Richard or her *Danity Kane* bandmates requested meals or rest, Mr. Combs refused and chastised them with derogatory comments like "you bitches don't want this" or "y'all are not hungry enough" and "I'm paying you bitches to work." This demeaning behavior gradually undermined Ms. Richard's confidence and contributed significantly to her growing feelings of insecurity and fear of reprisal from Mr. Combs.

49.      Upon information and belief, Mr. Combs would regularly be awake for prolonged periods of time because he was high on drugs. During these periods, Mr. Combs demanded continuous access to Ms. Richard and her *Danity Kane* bandmates, often forcing them to record and rehearse for stretches of 36 to 48 hours without breaks. Forced to choose between eating and sleeping, Ms. Richard lost a significant amount of weight, weighing approximately 100 pounds

at a height of 5'4". Ms. Richard began to normalize these extreme conditions and perceive them as standard requirements of her participation in *Danity Kane*.

50.     Mr. Combs regularly sent his associates to wake Ms. Richard and her *Danity Kane* bandmates in the overnight hours so he could watch them rehearse. The regularity of these disturbances led Ms. Richard to adapt by sleeping in a sitting position, fully dressed and with makeup on, heightening her anxiety. Over time, this abnormal sleeping arrangement came to feel routine, further normalizing Mr. Combs' invasive demands.

51.     In addition to exhausting rehearsals, Mr. Combs required Ms. Richard and her bandmates to participate in intense workouts with a personal trainer. On one occasion, while running on the beach, Ms. Richard became so dehydrated that she vomited. Instead of offering medical assistance, MTV Networks' camera crew filmed the incident – contributing to her acceptance of such treatment as part of her professional life.

52.     The unrelenting and rigorous schedule of rehearsals, performance, and near-constant filming that Mr. Combs imposed caused Ms. Richard to experience extreme weight loss, dehydration, fatigue, and painful rashes from the microphone pack she was required to wear on her back. These conditions intensified Ms. Richard's feelings of powerlessness, as she increasingly viewed them as part of her professional reality and feared the consequences of any resistance.

53.     In a further assertion of power and dominance, Mr. Combs insisted on holding meetings while dressed only his underwear. On one occasion in 2008 at his Miami residence, Mr. Combs emailed Ms. Richard directing her to meet him in the living room. When she arrived, he was wearing only his underwear. Ms. Richard asked Mr. Combs to put clothes on, but he refused, stating "This is my fucking house." Mr. Combs then conducted a meeting lasting approximately an hour while dressed in his underwear, causing Ms. Richard to feel violated and embarrassed, and amplifying her feelings of powerlessness.

54.     Following the official *Danity Kane* breakup in early 2009 effectuated by Mr. Combs, Ms. Richard experienced significant financial hardship. With no prospective opportunities for employment within the entertainment field, Ms. Richard spent several months traveling from Baltimore to Daddy's House Recording Studio in New York, without pay or allocated budget. Mr. Combs promised that Ms. Richard's compositions would result in payment of license fees and royalties pursuant to her contract with Bad Boy Records; however, no such compensation was ever reported or paid to Ms. Richard. Damages relative to these continuing copyright infringements will be proved at trial.

## IV.     *Diddy – Dirty Money*: Ms. Richard experiences Mr. Combs' gender-based physical violence, criminal acts, sexual assault, threats, and intimidation

55.     By approximately the fall of 2009, many of Ms. Richard's compositions had been recorded by other Bad Boy Records artists. Due to the success of her compositions, Ms. Richard was invited to meet with musical artist Kalenna Harper ("Ms. Harper") and shortly thereafter Mr. Combs, Ms. Richard and Ms. Harper formed a new group: *Diddy – Dirty Money*.

56.     Initial recording for *Diddy – Dirty Money*'s album *Last Train to Paris* took place in Mr. Combs' home on Doheny Drive in Los Angeles, California. On the first day of recording, Ms. Richard and Ms. Harper arrived at Mr. Combs' home and waited in the kitchen, where Mr. Combs' girlfriend, Ms. Ventura, was frying eggs for him.

57.     Ms. Richard observed Mr. Combs come down the stairs looking high on drugs, enter the kitchen, approach Ms. Ventura, and scream, "I've been asking you for my shit; I can't stand you bitch, you never do it right!" Mr. Combs pushed Ms. Ventura against the wall and choked her, then picked up the scalding hot pan of eggs and threw it at her, causing her to fall to the ground in a fetal position. Cursing and screaming, Mr. Combs dragged Ms. Ventura up the stairs.

58.     Frozen in shock and terror, Ms. Richard heard glass shattering, crashing, and banging noises as Mr. Combs dragged Ms. Ventura up the stairs. Ms. Richard wanted to intervene and help Ms. Ventura, but Ms. Harper adamantly refused to interfere in Mr. Combs' relationship, and physically led Ms. Richard out of the residence. Terrified and shaken, Ms. Richard returned to her hotel where she was unable to sleep due to worrying about Ms. Ventura and her own safety.

59.     The following day, Ms. Richard received a call demanding that she return to Mr. Combs' residence to continue recording. Mr. Combs brought Ms. Richard and Ms. Harper into the recording room at his studio, locked the door, dimmed the lights, and gave each of them flowers.  Mr. Combs went on at length, stating: "this is normal, this was just a lover's argument where no one was hurt . . . this is what love is… I'm giving you an opportunity, if you want to make it you'll shut your mouth…*if you say anything, there will be consequences."*  Mr. Combs further warned that "*people end up missing."* Being threatened while locked for over 20 minutes in a small, enclosed space with Mr. Combs after observing Mr. Combs violently assault Ms. Ventura the day before, Ms. Richard was terrified and genuinely believed that Mr. Combs would follow through on his threats.

60.     In or around November 2009, after the Soul Train Awards in Atlanta, Georgia, Mr. Combs flew Ms. Richard and Ms. Harper to his house in New York on his private jet for an afterparty. There were many well-known celebrities at the afterparty, and copious amounts of illegal drugs were being openly consumed. Upon information and belief, Mr. Combs had arranged for dozens of young women and girls – some of whom appeared to be underage – to be transported to the party. The women arrived wearing little to no clothing and were given drugs and alcohol. Many of them appeared lethargic or passed out while Mr. Combs and his guests performed sexual acts on them. Ms. Richard believed that her presence at the party was a test to see whether Mr. Combs could trust her.

61.     Mr. Combs repeatedly said things like "this is a buffet, enjoy yourselves; this is what we do, this is how we party." Ms. Richard felt shocked and horrified at the sight of Mr. Combs and his guests violating incapacitated young women, and implored Mr. Combs' personal assistant Capricorn Clark to allow her to leave. Ms. Clark insisted that Ms. Richard wait 15 minutes for Ms. Clark to "make it make sense" – that is, to make Ms. Richard's exit less conspicuous so that Mr. Combs would not notice that she had left. Knowing that she was not free to leave and had to wait for Ms. Clark to help her orchestrate her departure, Ms. Richard experienced feelings of panic and being trapped against her will.

62.     Mr. Combs regularly placed Ms. Richard in similar situations with no means to escape. At Mr. Combs' drug-fueled parties, his guests, including Ms. Richard, were required to surrender their phones upon entry. Mr. Combs kept the doors locked and guarded by security personnel, making it impossible for Ms. Richard to leave without alerting Mr. Combs that she had done so. Mr. Combs hired police officers to attend his parties, sending a clear message to guests that his influence extended to law enforcement officers, and creating a climate of fear and a tacit warning that reporting him to authorities would be both unacceptable and futile.

63.     On many occasions, Mr. Combs had parties at his Miami, Florida residence that lasted for several days. At one of the parties, Ms. Richard witnessed Mr. Combs openly stating that he had arranged for busloads of young "exotic" girls, such as mixed Black and Asian, Indonesian, and albino. Once again, Ms. Richard observed inebriated young girls being sexually violated by Mr. Combs and his guests. In a state of panic and terror, Ms. Richard fled to the bedroom Mr. Combs had insisted she stay in and barricaded the door shut with furniture.

64.     Mr. Combs openly assaulted Ms. Ventura in front of Ms. Richard and other witnesses on multiple occasions. On one occasion in or around the fall of 2009, *Diddy – Dirty Money* was in New York preparing to perform at a festival. Inside their vehicle, Mr. Combs grabbed Ms. Ventura's neck, pulled her out of the van onto the grass and pinned her head down,

choking her while yelling "you gonna get fucked up today." This incident took place in the backstage area just outside the festival and was entirely visible to passersby.

65.     In another instance, in or around early 2010, Mr. Combs punched Ms. Ventura in the face in the bathroom of a party in Los Angeles. Frequently, when Ms. Ventura attempted to voice an opinion or stand up to Mr. Combs, he would strike her or wrap his hands around her throat and choke her.

66.     On the first several occasions that they observed Mr. Combs assault Ms. Ventura, Ms. Richard and Ms. Harper spoke with Ms. Ventura to support and encourage Ms. Ventura in escaping her abusive relationship with Mr. Combs. Every time that Ms. Richard and Ms. Harper tried to intervene, Mr. Combs learned of the conversation and became irate. Mr. Combs screamed at the women: "Y'all bitches don't get in my relationship," "Don't tell my bitch [Ms. Ventura] what she need to be doing," "Just make money and shut the fuck up," "I end artists," "I shelve careers," "*You could be missing*," and "*You bitches want to die today*," among other threats.

### V.     Interscope Records Enabled Mr. Combs' Gender-Motivated Violence

67.     In or around late 2009 or early 2010, Bad Boy Entertainment ("Bad Boy") entered an agreement with Interscope Geffen A&M Records ("Interscope"). Upon information and belief, Bad Boy was paid $50 million in exchange for Bad Boy's future releases being distributed through Interscope. In so doing, Mr. Combs intended to capitalize on Interscope's significant resources and enhance the promotion and sales of Bad Boy's releases, including *Diddy – Dirty Money*'s upcoming album.

68.     In the weeks and months leading up to the Bad Boy-Interscope deal, Mr. Combs had frequent meetings with producer and then-CEO of Interscope Records Jimmy Iovine. On one such occasion, Combs hosted a dinner at a West Hollywood, California restaurant, which Ms. Richard and Ms. Harper were required to attend. Among the guests at the dinner were celebrities like NeYo and Usher, as well as Mr. Iovine. At the dinner, Mr. Combs and Ms. Ventura had an

argument. In front of the dinner guests, Mr. Combs hissed at Ms. Ventura in a screaming whisper and forcefully punched her in the stomach causing her to double over in visible pain, crying. Ms. Clark escorted Ms. Ventura out of the restaurant, and Mr. Combs remained and continued socializing with the dinner guests. At this point, Interscope Records clearly had actual knowledge that Combs was dangerous around females and that Combs was willing to brazenly batter a female in public.

69.     Even after Mr. Iovine watched Mr. Combs commit a violent assault in front of numerous high-profile witnesses, the Bad Boy-Interscope deal took place and remained in effect, providing Mr. Combs with immense financial rewards and enabling him to commit further acts of violence without fear of repercussions. Watching Mr. Combs openly assault Ms. Ventura in front of Mr. Iovine and various celebrities – and observing that other powerful music industry representatives were complicit in Mr. Combs' behavior – amplified Ms. Richard's fears that Mr. Combs could one day harm her and that his actions would be accepted and normalized by everyone surrounding him.

70.     As part of the agreement between Bad Boy and Interscope, Interscope heavily promoted Diddy – Dirty Money's *Last Train to Paris* album. Mr. Iovine had presented Mr. Combs with a demo of "*Coming Home*" for him to produce – a song that would become a multi-platinum hit.[3] Mr. Iovine was encouraging Mr. Combs to develop a new sound for the album, into which Interscope was investing significant resources. Ms. Richard, Ms. Harper and Ms. Ventura all provided vocal performances for this project. Released in November 2010, the album "*Last Train to Paris*" became *Diddy – Dirty Money*'s most commercially successful project, providing vast financial rewards to both Interscope and Mr. Combs.

---

[3]  The album "*Last Train to Paris*" credits both Interscope Records and Bad Boy Records. https://www.discogs.com/master/347136-Diddy-Dirty-Money-Last-Train-To-Paris; https://www.revolt.tv/article/2020-12-14/64067/studio-sessions-never-before-heard-stories-of-diddy-dirty-moneys-last-train-to-paris-creation

## VI.    *Diddy- Dirty Money*: Mr. Combs subjects Ms. Richard to Labor Trafficking and Oppressive Working Conditions

71.    In or around the fall of 2009, *Diddy – Dirty Money* began recording the song *Love Comes Down*. Upon information and belief, Mr. Combs continued to use drugs that caused him to remain awake for prolonged periods of time. When he was awake, he would demand that Ms. Richard and Ms. Harper record in the studio, where they would spend three to four consecutive days recording without a break to eat or sleep. Mr. Combs required Ms. Richard and Ms. Harper to remain at his home(s) continuously, denying the opportunity to return to their hotel rooms for breaks. The degree of control Mr. Combs exercised over Ms. Richard's daily life and basic needs exacerbated the significant power imbalance and threatening atmosphere that ensured Ms. Richard's compliance with his demands.

72.    Mr. Combs regularly left the studio and required Ms. Richard and Ms. Harper to stay and write verses to songs. Occasionally, Ms. Richard tried to leave to get something to eat or to go to her hotel. Whenever Ms. Richard tried to leave, Mr. Combs would call and demand, "where the fuck are you" and "we have an album to make." Mr. Combs frequently made threats, especially if they asked for food or rest, stating "you're a bitch," "I don't want to see your fucking face," "I make n****s go missing," and "I make things go away." Each time, Ms. Richard returned to the studio immediately, believing that Mr. Combs was capable of following through with his threats.

73.    Mr. Combs criticized Ms. Richard for being "too skinny," yet denied her requests for food and demanded that she drink only peanut butter shakes. Mr. Combs had full meals prepared by a chef and ate them in front of Ms. Richard and Ms. Harper, never offering them food.

74.    Ms. Richard and Ms. Harper begged for food and rest breaks, but Mr. Combs refused, making statements such as "absolutely fucking not" and "this is what it takes to be great."

Mr. Combs' responses underscored the threat he posed and heightened Ms. Richard's concerns for her safety and well-being.

75.     As Ms. Richard continued to work non-stop – transitioning between the studio, rehearsals, workouts, and back to the studio – she became severely dehydrated and experienced chronic stomach cramping from being undernourished and excessively thin. On the numerous occasions that she told Mr. Combs that she was not feeling well, he called her lazy and dismissed her health concerns, instilling in her further apprehension of communicating her needs.

76.     In or around the summer of 2010, Ms. Richard experienced abdominal pain, swollen glands and a fever. She was hospitalized and diagnosed with arthralgia (joint pain due to overuse, sprains, tendonitis and infection), anemia, and a low white blood cell count. Ms. Richard presented Mr. Combs with her medical records specifying that she needed to emphasize eating well, being adequately hydrated, and getting adequate rest, but Mr. Combs ordered her to report to the studio the next day for another multi-day recording session. Mr. Combs' blatant disregard for her health and well-being cemented Ms. Richard's fear of his authority and control over her career and health.

77.     Ms. Richard continued to witness Mr. Combs' abuse towards Ms. Ventura. Ms. Ventura often wore sunglasses and makeup in an attempt to hide visible injuries. These incidents further solidified Ms. Richard's fear of Mr. Combs, as they were constant reminders of the physical dangers she potentially could – and eventually would – face.

78.     Mr. Combs often exhibited uncontrollable anger during recording sessions, throwing objects like albums, laptops, and food against the wall or at individuals. Mr. Combs frequently flew into frenzied, unpredictable rages. Ms. Richard feared making any misstep that could direct his anger toward her. However, her fears went beyond her immediate physical safety. Because she had witnessed Mr. Combs' violent nature, a side of Mr. Combs that the world had not yet seen, she feared that falling out of Mr. Combs' good graces or worse, standing up to him

or speaking out against him, could result in serious harm to her. Ms. Richard frequently thought about Mr. Combs' threat about making people "go missing" and feared taking any action that could label her as a target.

79.     Despite Mr. Combs' violence, threats, and misogyny, *Diddy-Dirty Money* experienced significant sales of records, selling 2,000,000 copies of one single, 500,000 of another in the US, and in Australia 5,000,000 single copies. Ms. Richard's unpaid wages and royalties are estimated at $1,200,000.00. Ms. Richard's unpaid touring wages are estimated at over $350,000.00 for touring dates within the United States alone.

## VII.     CIROC / DiddyBeats / Nonpayment

80.     In or around the summer of 2009, Ms. Richard and Ms. Harper were required by Mr. Combs to perform as part of *Diddy – Dirty Money* and attend numerous promotional events, including late or overnight parties, all of which were under contract between Mr. Combs and CIROC Vodka, or between Mr. Combs and DiddyBeats pursuant to the Bad Boy – Interscope record deal.

81.     Ms. Richard was never compensated for the extra time she spent fulfilling Mr. Combs' promotional contracts, including the CIROC and the DiddyBeats campaign. Mr. Combs was paid approximately $250,000 per CIROC appearance. Mr. Combs did not compensate Ms. Richard or Ms. Harper for these appearances, other than just $5,000 each on a handful of occasions.  Mr. Combs' ongoing explanation for withholding compensation was that their appearances were a requirement for their tour. Additionally, Ms. Richard was required to appear, and to promote DiddyBeats, through parties, album songs and videos.

82.     Over time, Mr. Combs was paid $6.25 million for 25 CIROC shows that Ms. Richard was required to attend.[4]  Following each show, Ms. Richard and Ms. Harper approached

---

[4] Numerous videos depict Ms. Richard performing at CIROC events, such as the video available at https://youtu.be/HtIiNNsIgkw?si=4FFCB1tD6gCeX4R3. This video depicts Ms. Richard singing as part of *Diddy – Dirty Money* and is representative of her performances as part of Mr. Combs' CIROC campaign.

Mr. Combs to inquire about their insufficient and sporadic payments. Mr. Combs routinely responded with statements such as "You bitches aren't grateful" and "you don't want this." Ms. Richard estimates losses from CIROC campaign promotions totaling at least $1,562,500.00. Upon information and belief, Mr. Combs received an advance on DiddyBeats for which Ms. Richard received no compensation.

## VIII.   Mr. Combs Sexually Harasses and Assaults Ms. Richard

83.     Between approximately 2009 and 2011, throughout *Diddy – Dirty Money*'s recording process, rehearsals, and performances, Mr. Combs repeatedly ordered Ms. Richard to strip down to her underwear. He frequently referred to her as a "bitch" or "whore" and made demeaning remarks about her body, alternatingly calling her lazy, fat, ugly, and skinny, particularly in front of his friends, producers, and bodyguards.

84.     Mr. Combs frequently held meetings with Ms. Richard wearing only his underwear, despite Ms. Richard's protests and repeated requests for him to put on clothing. In response, Mr. Combs called her a "bitch" and "whore" and reminded her that she should be grateful for the opportunity to be there.

85.     Often while they were recording in the studio, Mr. Combs would hold "parties" where he would invite young men and women, who were often scantily dressed and appeared underage, to use drugs and engage in sex acts. Ms. Richard observed Mr. Combs and his colleagues kissing, groping, and inappropriately touching the young women. Upon information and belief, the participants often left the immediate area to have sex and returned shortly thereafter.

86.     On numerous occasions between approximately 2009 and 2011, under the guise of preparing for performances, Mr. Combs would intrude into Ms. Richard's changing room at *Daddy's House* unannounced while Ms. Richard was undressed.

87.     Even though a female stylist was present and assisting Ms. Richard with her wardrobe, Mr. Combs would grope Ms. Richard's body, including her bare buttocks and her chest area near her breasts. With no legitimate purpose, and without Ms. Richard's consent, Mr. Combs caressed her buttocks to show the stylist where he wanted her high-waisted panties positioned, and attempted to touch her breasts, claiming to show the stylist where he wanted her bra straps to go.

88.     When Mr. Combs would enter the changing room, Ms. Richard would cover her chest with her hands to prevent Mr. Combs from seeing or touching her breasts. When Mr. Combs would touch her body, Ms. Richard would attempt to swat his hands away and state "don't touch me."

89.     Mr. Combs frequently smacked Ms. Richard's bare buttocks and often commented on her body, noting that although she was "too skinny," she had an "ass."

90.     Ignoring her visible and communicated discomfort, Mr. Combs persisted and continued to intrude when Ms. Richard was in the dressing room, continued to touch her buttocks and breast area under the guise of showing the stylist what to do, and continued to smack her buttocks without her consent.

91.     In or around October 2010, *Diddy – Dirty Money* performed in Glasgow, Scotland, where Mr. Combs engaged in overt sexual advances towards Ms. Richard. On numerous occasions when Ms. Richard exited the dressing room fully styled, Mr. Combs looked at her approvingly and smacked her buttocks while making comments such as "you're looking good," "OK Dawn, OK," and "I see what that is" in a flirtatious tone. Each time, Ms. Richard moved away and asked him not to touch her, but Mr. Combs disregarded her protests.

21

92.     On their last night in Glasgow, Ms. Richard witnessed Mr. Combs and several other males gang-banging Mr. Combs' female assistant at the hotel pool. Ms. Richard immediately left and went to her hotel room.

93.     On their flight back to the United States the next day, Ms. Richard asked Mr. Combs where his assistant was; Mr. Combs replied, "I don't give a fuck where that bitch is." Ms. Richard later learned that Mr. Combs had taken his assistant's passport with him to the United States, leaving the assistant stranded in the United Kingdom.

94.     In Glasgow, Ms. Harper confided in Ms. Richard that her husband and manager, Tony Vick ("Mr. Vick"), was abusive. After an especially severe assault, she confided in Ms. Richard that she wanted to leave Mr. Vick, and Ms. Richard helped her to plan her exit from the relationship. However, Ms. Harper and Mr. Vick reconciled, and both Mr. Combs and Mr. Vick – who had a close relationship – learned of Ms. Richard's role in helping Ms. Harper. Both Mr. Combs and Mr. Vick became noticeably distrustful of Ms. Richard, which exacerbated her fears of harm and reprisal.

95.     When Mr. Combs would require his *Diddy – Dirty Money* bandmates to stay at his residence in Miami, Ms. Richard would barricade herself inside her room at night, placing heavy furniture against the door because she feared being harmed in her sleep.

96.     In or around late December 2010, Ms. Richard, Ms. Harper, and Ms. Ventura were in Mr. Combs' Los Angeles home when Mr. Combs stated "I want to gift you [fake] titties for Christmas." Mr. Combs reached out and cupped Ms. Richard's breasts without her permission and stated "You're an A; I'm thinking a D." Ms. Richard recoiled in shock and left the room.

97.     Throughout the abovementioned time period, when Ms. Richard resisted Mr. Combs' advances, Mr. Combs retaliated by denying her singing parts in songs, removing her from songs, refusing to allow her to sing in performances, and turning her microphone off during

performances. The more Ms. Richard rebuffed his advances, the more Mr. Combs' retaliatory behavior increased.

### IX.    Mr. Combs Assaults and Falsely Imprisons Ms. Richard

98.    In or around December 2010, *Diddy – Dirty Money* was preparing for an upcoming performance on *Saturday Night Live* ("SNL"). As usual, rehearsals lasted for days without the opportunity to eat or rest, and the rehearsal schedule was unpredictable.  After waiting all day for Mr. Combs to call or send a car, Ms. Richard received a phone call from Mr. Combs demanding "Where the fuck are you bitches?  You bitches don't want this; y'all don't deserve to have someone pick you up; get a cab." Ms. Richard and Ms. Harper immediately took a taxi to SIR Studios at 520 West 25th St, New York NY, anxious because Mr. Combs sounded enraged.

99.    Upon their arrival at SIR Studios, Mr. Combs and Harve Pierre were waiting for them in the lobby. Mr. Combs screamed obscenities at them: "**Where the fuck were you bitches? You bitches don't want to win . . . you don't want this . . . I'm so tired of y'all**." Ms. Richard noticed that people in the lobby were reacting to Mr. Combs' tirade. Embarrassed, Ms. Richard asked Mr. Combs to stop swearing and calling them "bitches" in front of everyone.

100.    Mr. Combs' facial expression shifted as he stepped towards Ms. Richard, raised his arm, and swung his fist toward her face. Believing that Mr. Combs was going to hit her, Ms. Richard braced for the impact. Before Mr. Combs could strike her, Mr. Combs' bodyguard grabbed her, escorted her out of the studio and forced her into the Bad Boy Records Bentley that was parked outside. Ms. Harper ran after Ms. Richard, and Mr. Combs' bodyguard closed and locked the Bentley's doors with both women inside.

101.    Inside the vehicle, Ms. Richard realized there were no interior door handles, and that they were locked inside with no way to escape. Ms. Richard's belongings were in the studio, but she was able to call her father from Ms. Harper's cell phone. Ms. Richard relayed to her father what had happened, and that she needed help and feared that she would go missing. Moments

23

later, Mr. Combs' bodyguard removed only Ms. Harper from the Bentley, leaving Ms. Richard locked in the car alone for over two hours.

102.    Ms. Richard screamed as loudly as she could, but no one responded.  It was late evening in the wintertime, the windows were heavily tinted, and the interior of the car was dark except for faint interior lights. Ms. Richard's belongings and winter coat were in the studio, while the ignition was off and there was no heat. With Mr. Combs' prior threats and violence running through her mind, Ms. Richard felt sheer panic, terror, and feelings of claustrophobia at being locked in a small, dark, enclosed space with no way to communicate or call for help. She began to feel cold and feared for her life, not knowing when or if she would be released.

103.    Ms. Richard's father drove to New York from Baltimore and arrived at the studio approximately two hours later. Only after her father arrived and demanded to see her did Mr. Pierre order Mr. Combs' bodyguard to release Ms. Richard from the vehicle.  Mr. Pierre ushered Ms. Richard's father between several rooms at SIR Studios, where he waited for approximately two hours before being able to confront Mr. Combs.  Once Ms. Richard's father expressed that he intended to contact police, Mr. Combs warned him to "think about your family" and "think about your daughter's career." Her father appeared visibly frightened by Mr. Combs' threats and actions, which in turn made Ms. Richard feel terrified for herself and her family's safety.

104.    The next night, *Diddy – Dirty Money* performed on SNL. Mr. Combs subsequently called Ms. Richard, complimented her performance, and concluded with a threat: "you don't call your dad unless you're in the hospital."

//

//

//

//

//

24

X.    **Unjust Enrichment of Defendants by Breach of Contract and/or Copyright Infringement**

105.    As a member of *Danity Kane*, Ms. Richard has performed on over 15 songs[5] and holds composition credits for more than 3 songs.[6]  Defendants have failed to account to or pay Ms. Richard as agreed for her compositions and her performances and have breached contracts and infringed her copyrights, all of which has unjustly enriched Defendants.

106.    As a member of *Diddy-Dirty Money*, Ms. Richard has performances recorded on over 9 songs;[7] additionally Ms. Richard has composition rights and credits on more than 5 songs.[8] Defendants have failed to account to or pay Ms. Richard as agreed for her compositions and her

---

[5]  1. "Show Stopper" 2. "Ride for You" 3. "Damaged" 4. "Bad Girl" 5. "Pretty Boy" 6. "Striptease" 7. "Poetry" 8. "Lights Out" 9. "Sucka for Love" 10. "Ain't Going" 11. "2 of You" 12. "Do Me Good" 13. "Ecstasy" (featuring Rick Ross) 14. "Lemonade" (featuring Tyga) 15. "All in a Day's Work"

[6]

1.“Bad Girl" (featuring Missy Elliott) Written by Dawn Richard, Mary Brown, Mary Brockert, Missy Elliott, Sean Combs, Quincy Jones, David Wolinski, Shanell Woodgett
2. "Secret Place" (Interlude) • Performed by Dawn Richard
3. "Infrared" Written by Dawn Richard, Kwame Holland

[7]  1. "Angels"
2. "Love Come Down"
3. "Yeah Yeah You Would"
4. "Hate That You Love Me"
5. "Your Love" (featuring Trey Songz)
6. "Ass on the Floor" (featuring Swizz Beatz)
7. "Yesterday" (featuring Chris Brown)
8. "I Hate That You Love Me"
9. "Shades" (featuring Lil Wayne and Justin Timberlake)

[8]  1."I Hate That You Love Me"
Written by Dawn Richard, Richard Butler, Warren Trotter, Arden Altino, Durrell Artaze Babbs
 2.  "Looking for Love" (featuring Usher)
Written by Dawn Richard, Usher Raymond IV, Sean Combs, Kalenna Harper, Kevin "KC" Cossom, Marcella
 Ms. Lago Araica, Eric "E-Class" Akon, Mario "Yellowman" Winans
3. "Strobe Lights" (featuring Lil Wayne)
Written by Dawn Richard, Lil Wayne, Sean Combs, Richard Butler, Warren Trotter, Arden Altino, Marcella Ms. Lago Araica, Kevin "KC" Cossom
4. "Loving You No More" (featuring Drake)
Written by Drake, Dawn Richard, Sean Combs, Richard Butler, Warren Trotter, Arden Altino, Mario Winans, Jerry "Wonda" Duplessis
5. Change" Written by Dawn Richard, Richard Butler, Warren Trotter, Arden Altino

performances and breached contracts and/or infringed her copyrights, unjustly enriching Defendants.

107.    In 2020, Mr. Combs selected Ms. Richard for a reboot of *Making The Band*, and Ms. Richard spent hours preparing to be a judge on the new show. However, the COVID-19 pandemic halted those plans, and Ms. Richard was never compensated in any way.

108.    On or about July 1, 2021, Mr. Combs and Bad Boy Records (or Holdings or both), directed Janice Combs Publishing Inc. to assign its administration rights of Ms. Richard's songs,[9]

---

[9]

| SONG TITLE | WRITER NAME | ARTIST |
|---|---|---|
| 86 | CARLA HAYNES-CARTER (20), **DAWN RICHARD (20)**, ANDREW SCOTT (60) | |
| 2 SIDES (TWO SIDES) | Ray Romulus (15), **Dawn Angelique Richard (13.34)**, Jeremy Reeves (15), Jonathan Yip (15), Malcolm McDaniel (13.33), Ray McCullough (15), Rosina Russell (13.33) | DANITY KANE |
| AIN'T GOING | Iyanna Dean (45), Bernard Malik (5), **DAWN RICHARD (2.5)**, WANITA WOODGETT (2.5) | DANITY KANE |
| ASS ON THE FLOOR | SEAN COMBS (5), KASSEEM DEAN (55), KALENNA HARPER (20), **DAWN RICHARD (10)**, LEROY WATSON (10) | DIDDY-DIRTY MONEY |
| Burn So Deep | James Michael Edgar (50), **DAWN RICHARD (50)** | Jimmy Edgar Feat. Dawn Richard |
| Dance | Noise Castle (25), Ester Dean (25), DAVID RYAN HARRIS (25), **Dawn Richard (25)** | DAWN RICHARD |
| Faith | Ricky Lewis (50), **DAWN RICHARD (50)** | |
| FIREFLIES | **DAWN RICHARD (25)**, HARMONY SAMUELS (50), ANDREW SCOTT (25) | ZENDAYA |
| FLASHBACK (INTERLUDE) | Romeo IX (50), **DAWN RICHARD (25)**, WANITA WOODGETT (25) | DANITY KANE |
| HATE YOU NOW | Marcela aracia (5), SEAN COMBS (10), JAMES FAUNTLEROY (35), KALENNA HARPER (2.5), Nathaniel Hills (45), **DAWN RICHARD (2.5)** | DIDDY-DIRTY MONEY |
| HOME FOR CHRISTMAS | **DAWN RICHARD (100)** | DANITY KANE |
| HURT (LOVING YOU NO MORE) | SEAN GARRETT (50), AUBREY GRAHAM (15), **DAWN RICHARD (5)**, MIKAL SNODDY (25), MARIO WINANS (5) | DIDDY |
| LIGHTS OUT | Craig Betz (20), Neil Betz (20), SEAN COMBS (5), **DAWN RICHARD (50)**, MARIO WINANS (5) | DANITY KANE |
| LOVE COME DOWN | Shawn Carter (7.5), SEAN COMBS (17), BERRY GORDY JR (1.5), KALENNA HARPER (10.63), ROB HOLLADAY (34), ALPHONSO MIZELL (1.5), FREDDIE PERREN (1.5), **DAWN RICHARD (10.62)**, DEKE RICHARDS (1.5), LEROY WATSON (12.75), KANYE WEST (1.5) | DIDDY |
| PERFECTLY BLIND | BRIAN ANDREWS (6.25), Robert Curry (6.25), MICHAEL MCCLUNEY (6.25), QWANELL MOSLEY (25), DIRK PATE (25), **DAWN RICHARD (25)**, Willie Taylor (6.25) | DAY26 |
| SECRET PLACE (INTERLUDE) | SHANNON BEX (10), AUNDREA FIMBRES (10), AUBREY O'DAY (10), **DAWN RICHARD (10)**, MARIO MENDELL WINANS (50), WANITA WOODGETT (10) | DANITY KANE |
| Stopwatch | Derek Scott Bergheimer (10), Jesse Dee Boykins III (33), **DAWN RICHARD (20)**, Karl Rubin (5), Travis Wayne Stewart (32) | |
| Stopwatch (Salva Remix) | Jesse Dee Boykins III (20), **DAWN RICHARD (10)**, PAUL SALVA (50), Travis Wayne Stewart (20) | |
| STRIP TEASE | Marcella Araica (5), SHANNON BEX (6), AUNDREA FIMBRES (6), NATE HILL (45), AUBREY O'DAY (6), **DAWN RICHARD (6)**, JAMES WASHINGTON (20), WANITA WOODGETT (6) | DANITY KANE |
| Strobe Lights | SEVEN AURELIUS (30), Dwayne Carter (10), Kenneth Coby (7.5), KALENNA HARPER (27.5), Tim McEwan (20), **DAWN RICHARD (5)** | DIDDY-DIRTY MONEY |
| TAILOR MADE SUIT | DANIEL BRYANT (0), PHILLIP BRYANT (0), CYNTHIA LOVING (0), **DAWN RICHARD (0)** | LIL MO |
| TELL ME | Ray Romulus (12.50), Briana Jackson (16.67), **Dawn Angelique Richard (16.67)**, Jeremy Reeves (12.50), Jonathan Yip (12.50), Ray McCullough (12.50), Rosina Russell (16.66) | DANITY KANE |
| YEAH YEAH YOU WOULD | MARCELLA ARACIA (5), RICHARD BUTLER (12), KALENNA HARPER (23), Floyd Hills (45), **DAWN RICHARD (5)**, LEROY WATSON (10) | DIDDY-DIRTY MONEY |

held from her tenure with Defendants in the years 2005-2012, to Sony Songs, a division of Sony Music Publishing LLC ("Sony"). The assignment, signed by Ms. Richard on October 22, 2024, purported to credit, through a semi-annual accounting, Ms. Richard's royalty account for Ms. Richard's compositions from between 80 to 90% of publisher's share. However, no statements were ever provided, no payments were ever made, and no reversions nor assignment were ever recorded with Performing Rights Organizations or other royalty collecting entities by Defendants or by Sony. Defendants have wholly failed to account to or pay Ms. Richard as agreed for her compositions and her performances in breach of the assignment and have thereby infringed her copyrights, resulting in Defendants being unjustly enriched.

109.    During the summer of 2023, Mr. Combs' new record company, Love Records Inc., tendered a contract for negotiation to Ms. Richard for the song entitled "*Deliver Me*," embodied as Track 3 on *The Love Album: Off The Grid*, officially released on September 15, 2023. Upon information and belief, *Deliver Me* sold well prior to Mr. Combs' legal troubles in November 2023. Continuing to the present, Ms. Richard sought to establish her rightful percentage as a 21% composer on *Deliver Me*, Mr. Combs personally called Ms. Richard and left a voicemail complaining about her fair requests. Upon information and belief, Mr. Combs directed his attorneys to avoid confirming the composition percentages on the song; and in fact, list composers who played no part in composing the song. As a result, the contract was never signed by either Ms. Richard or Love Records Inc. Nevertheless, Ms. Richard obtained a copyright registration certificate on a timely basis; said registration lists authors/claimants as agreed when the song was created in 2009. That registration is filed separately in the Court and supports Ms. Richard's claim of copyright infringement by Defendants herein. Defendants Love Records Inc. and Mr.

27

Case 24-cv-07070-AMG-KRA    Document 53-6   Filed 09/10/24   Page 29 of 478
Case 24-cv-07070-AMG-KRA    Document 53-6   Filed 09/10/24   Page 29 of 478
PageID: 1532

Combs infringed Ms. Richard's copyrights in the composition of *Deliver Me* by releasing *Deliver Me* without Ms. Richard's permission and without compensation.

## DAMAGES

110.    As a result of the acts and conduct complained of herein, Ms. Richard has suffered and will continue to suffer the loss of income, wages, benefits, royalties, promotional fees, touring fees and other compensation. Ms. Richard has also suffered, among other things, future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, post-traumatic stress disorder, anxiety disorder, insomnia, panic attacks and other non-pecuniary losses entitling her to an award of compensatory and punitive damages, injunctive and declaratory relief, attorney's fees and costs, and other remedies as this Court may deem appropriate.

## FIRST CAUSE OF ACTION
### Violation of The Victims of Gender-Motivated Violence Act, N.Y.C. Admin. Code §§ 10-1101, *et seq*. ("VGMVPL")
### *Against Defendants Sean Combs, Harve Pierre, Interscope Records & Bad Boy Records*

111.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

112.    The above-described conduct of Mr. Combs, including but not limited to Mr. Combs' physical and sexual assaults, harassment, and unlawful imprisonment of Plaintiff in New York City constitutes a "crime of violence" against Plaintiff and is a "crime of violence motivated by gender" as defined in § 10-1103 of the New York City VGMVPL. The term "crime of violence" means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution or conviction; and the term "crime of violence motivated by gender" means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.

113.    The above-described conduct of Mr. Combs, including, but not limited to, sexual assault, physical assault, threats, and false imprisonment, all conduct proscribed by PL 110/120.00(1), PL 120.15, PL 240.30(3), PL 135.05; PL 135.10 Pl 130.52, PL 240.30(1)(a), PL 120.14(2), PL S 135.5(3), constitutes a "crime of violence" against Plaintiff and is a "crime of violence motivated by gender" as defined in § 10-1103.

114.    Defendants Harve Pierre, Interscope Records, and Bad Boy Records have financially and otherwise benefited from these acts and omissions by keeping Mr. Combs, the volatile and explosive owner of Bad Boy Records, satisfied, and benefited from facilitating his behavior.

115.    Defendants Harve Pierre, Interscope Records, and Bad Boy Records enabled, condoned, had knowledge of, and failed to act to prevent or mitigate Mr. Combs' commission of the abovementioned crimes of violence motivated by gender and are therefore also liable under the VGMVPL.

116.    As a direct and proximate result of the above mentioned crimes of violence and gender-motivated violence, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress, entitling her to an award of compensatory and punitive damages, injunctive and declaratory relief, attorneys fees and costs, and other remedies as this Court may deem appropriate, as set forth in § 10-1104.

117.    Pursuant to § 10-1105(a), this cause of action is timely because it is commenced within "two years and six months after September 1, 2022."

## SECOND CAUSE OF ACTION
### Sexual Assault pursuant to The California Sexual Abuse and
### Cover Up Accountability Act, Cal. Civ. Proc. § 340.16
### *Against Defendants Sean Combs & Bad Boy Records*

118.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

119.    Mr. Combs subjected Plaintiff to sexual battery, as defined in Cal. Penal Code §§ 234.4(e)(1). In doing so, he intended to and did cause harmful and sexually offensive contact with their person and place them in imminent apprehension of such contact.

120.    Pursuant to California Code of Civil Procedure § 340.16, as amended by Assembly Bill 2777, this cause of action is timely because it is commenced within three years of the date Plaintiff discovered the injuries resulting from Defendants' acts, which Plaintiff did not discover, and could not have reasonably discovered, until November 2023 when Ms. Ventura filed a lawsuit against Defendant.

121.    Defendant Bad Boy Records has financially and otherwise benefited from these acts and omissions by keeping Mr. Combs, the volatile and explosive owner of Bad Boy Records, satisfied, and benefited from facilitating his behavior.

122.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

123.    Plaintiff also seeks reasonable attorneys' fees as provided under Cal. Civil Code § 52.5.

## THIRD CAUSE OF ACTION
### Forced Labor in Violation of 18 U.S.C. §§ 1589 and 1595
### *Against Defendants Sean Combs, Bad Boy Records & UMG Interscope Geffen A&M*

124.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

125.     Defendants knowingly obtained labor from Plaintiff through threats of serious harm, physical restraint, and other means of coercion, in violation of 18 U.S.C. § 1589.

126.     Defendants Bad Boy Records, UMG Interscope Geffen A&M Records knowingly benefited from the forced labor and the trafficking activities conducted by Mr. Combs.

127.     Under 18 U.S.C. § 1595, Plaintiff is entitled to bring a civil action against all Defendants for their violation of 18 U.S.C. § 1589.

128.     As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

129.     Plaintiff seeks compensatory damages for the harm suffered as a result of Defendants' forced labor practices.

130.     Plaintiff also seeks punitive damages to deter such conduct by Defendants in the future, along with reasonable attorney's fees and costs.

131.     Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

### FOURTH CAUSE OF ACTION
### Violation of New York Services for Victims of Human Trafficking, N.Y. Servs. Law § 483-bb(c)
### *Against Defendants Sean Combs & Bad Boy Records*

132.     Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

133.     Plaintiff is a victim of labor trafficking within the meaning of N.Y. Penal Law 135.35 and is therefore entitled to bring a civil action under N.Y. Soc. Serv. § 483-bb.

134.     The Defendants' acts and omissions, taken separately and/or together, as outlined above, constitute a violation of N.Y. Soc. Serv. § 483-bb. Specifically, Defendant Sean Combs

perpetrated labor trafficking of Ms. Richard by inducing her to engage or continue to engage in labor activity by means of instilling a fear in her that, if she refused to comply, he would cause physical injury, serious physical injury, or engage in other conduct constituting a felony or unlawful imprisonment in the second degree in violation of New York Penal Law 135.05, and Defendant Bad Boy Records benefitted from Mr. Combs' venture by holding Ms. Richard, an artist signed with Defendant Bad Boy Records and otherwise employed by other Defendant Doe Corporations, captive to Mr. Combs' demands and desires. At all relevant times, Defendant Bad Boy Records participated in and facilitated the obtainment of Plaintiff's labor induced by force, fraud, or coercion.

135.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

136.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

### FIFTH CAUSE OF ACTION
### Sex Trafficking under 18 U.S.C. § 1591, *et seq.*
#### *Against Defendant Sean Combs & Bad Boy Records*

137.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

138.    Mr. Combs, one of the most prominent musical artists and producers in the industry, recruited and enticed Plaintiff by initiating a professional relationship with her and inviting her to join his band *Diddy- Dirty Money* as a singer, songwriter, and performer. This opportunity instilled in Plaintiff the hope and expectation of advancing her career and achieving greater success in the music industry.

139.    Mr. Combs, through a pattern of coercive threats and displays of brutal violence, caused Plaintiff to engage in commercial sex acts, as defined by 18 U.S.C. § 1591(e)(3). These acts were carried out to further Mr. Combs' financial gain from Ms. Richard's participation in *Diddy-Dirty Money*, to exert control over her, and to satisfy his own sexual gratification.

140.    Mr. Combs used fraud and force to coerce and entice Ms. Richard into commercial sex acts. Mr. Combs did so by making threats of career derailment and promises of career advancement in exchange for Ms. Richard acquiescence to Mr. Combs' sexual batteries and assaults.

141.    Mr. Combs acted with knowledge or in reckless disregard of the fact that Plaintiff was forced to engage in these acts through coercion and that these acts were in exchange for her continued place in the band and her financial stability.

142.    Defendant Bad Boy Records has financially and otherwise benefited from these acts and omissions by keeping Mr. Combs, the volatile and explosive owner of Bad Boy Records, satisfied, and benefited from facilitating his behavior.

143.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

144.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

## SIXTH CAUSE OF ACTION
### Violation of the California Trafficking Victims Protection Act,
### Cal. Civil Code § 52.5
### *Against Defendants Sean Combs & Bad Boy Records*

145.    Plaintiff repeats and realleges each and every allegation contained in all of the preceding paragraphs as if fully set forth herein.

146.    Plaintiff is a victim of trafficking within the meaning of Cal. Penal Code § 236.1 and is therefore entitled to bring a civil action under Cal. Civil Code § 52.5.

147.    The Defendants' acts and omissions, taken separately and/or together, as outlined above, constitute a violation of Cal. Civ. Code § 52.5. Specifically, Defendant Sean Combs perpetrated human trafficking of Ms. Richard by depriving or violating her personal liberty with the intent to obtain forced labor, and Defendant Bad Boy Records benefitted from Mr. Combs' venture by holding Ms. Richard, an artist signed with Defendant Bad Boy Records and otherwise employed by other Defendant Doe Corporations, captive to Mr. Combs' demands and desires. At all relevant times, Defendants participated in and facilitated the obtainment of Plaintiff's labor induced by force, fraud, or coercion.

148.    Defendant Bad Boy Records has financially and otherwise benefited from these acts and omissions by keeping Mr. Combs, the volatile and explosive owner of Bad Boy Records, satisfied, and benefited from facilitating his behavior.

149.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

150.    Pursuant to Cal. Civ. Code § 52.5(d)(3), Defendants' continuous death threats and coercion induced Plaintiff to delay the filing of this action and asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

151.    Pursuant to Cal. Civ. Code § 52.5(d)(4), the suspension of the statute of limitations due to estoppel applies to all other related claims arising out of the trafficking situation, including but not limited to, Violation of The Victims of Gender-Motivated Violence Act, N.Y.C. Admin. Code §§ 10-1101, *et seq*., Forced Labor in Violation of 18 U.S.C. §§ 1589 and 1595,  New York Services for Victims of Human Trafficking, N.Y. Servs. Law § 483-bb(c), Sex Trafficking under

18 U.S.C. § 1591, Assault Under New York Law, Battery/Sexual Battery Under New York Law, False Imprisonment under New York Law, False Imprisonment under California Law, Intentional Infliction of Emotional Distress, Sexual Harassment, Gender Discrimination, and Hostile Work Environment under New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.*, Sexual Harassment, Gender Discrimination, and Hostile Work Environment under New York City Human Rights Law, N.Y. Exec. Law §§ 8-101, *et seq.*, Retaliation in Violation of New York State Human Rights Law, ("NYSHRL") Section 296 and California Government Code Section 12940(h), Hostile Work Environment in violation of California Government Code §12940, Gender Discrimination in violation of California Government Code §12940,Violation of Right of Publicity Under New York Civil Rights Law § 50 and § 51, Unjust Enrichment, Copyright Infringement 17 U.S.C. § 106, Breach of Contract, Breach of Implied Covenant of Good Faith & Fair Dealing, Fraud, Intentional Misrepresentation, False Promise.

152.    Pursuant to Cal. Civ. Code § 52.5(e), the running of the statute of limitations may be suspended as Plaintiff could not have reasonably discovered the cause of action due to circumstances resulting from the trafficking, including psychological trauma.

### SEVENTH CAUSE OF ACTION
### Assault Under New York Law
*Against Defendants Sean Combs, & Bad Boy Records*

153.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

154.    In engaging in the conduct described above, Mr. Combs committed an assault against Plaintiff because he intentionally placed Plaintiff in reasonable apprehension of imminent harmful or offensive contact, and Plaintiff reasonably feared immediate bodily harm as a result of Defendant's conduct. Defendant's actions amount to violations under N.Y. Penal Law §§ 110/120.00(1), 120.15, as well as analogous California law and the common law of New York and California.

155.    Defendant Bad Boy Records has financially and otherwise benefited from these acts and omissions by keeping Mr. Combs, the volatile and explosive owner of Bad Boy Records, satisfied, and benefited from facilitating his behavior.

156.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

157.    The conduct of Mr. Combs described above was willful, wanton, and malicious. At all relevant times, Mr. Combs acted with conscious disregard of Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury, and/or pain and suffering to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive and exemplary damages from Defendant Combs according to proof at trial.

158.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

**EIGHTH CAUSE OF ACTION**
**Battery/Sexual Battery Under New York Law**
*Against Defendants Sean Combs & Bad Boy Records*

159.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

160.    In engaging in the conduct described above, Mr. Combs committed a battery against Plaintiff because he intentionally engaged in unlawful, intentional, and offensive touching or application of force to Plaintiff's person. Mr. Combs repeatedly and without consent touched Ms. Richard's body including her buttocks and chest area. Defendant's actions amount to violations under N.Y. Penal Law §§ 150.50, 130.52, 130.55, and 130.65, as well as analogous California law and the common law of New York and California.

36

161.     Defendant Bad Boy Records has financially and otherwise benefited from these acts and omissions by keeping Mr. Combs, the volatile and explosive owner of Bad Boy Records, satisfied, and benefited from facilitating his behavior.

162.     As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

163.     The above-described conduct by Mr. Combs was willful, wanton, and malicious. At all relevant times, Mr. Combs acted with conscious disregard of Ms. Richard's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Ms. Richard, and intended to cause fear, physical injury, and/or pain and suffering to Ms. Richard. By virtue of the foregoing, Ms. Richard is entitled to recover punitive and exemplary damages from Mr. Combs according to proof at trial.

164.     Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

### NINTH CAUSE OF ACTION
### False Imprisonment under New York Law
#### *Against Defendants Sean Combs, Harve Pierre & Bad Boy Records*

165.     Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

166.     Defendants Mr. Combs and Mr. Pierre falsely imprisoned Plaintiff in New York as alleged in this Complaint, by suddenly and without provocation, willfully and maliciously falsely imprisoning Ms. Richard against her will in the Defendants' corporate vehicle for over two hours.

167.    Following Plaintiff's false imprisonment in the Defendants' corporate vehicle, Defendant Mr. Combs issued a clear retaliatory threat of future injury and bodily harm to Plaintiff, underscoring the intent to both control and to silence Plaintiff as to Defendant's crimes.

168.    Defendant Bad Boy Records has financially and otherwise benefited from these acts and omissions by keeping Mr. Combs, the volatile and explosive owner of Bad Boy Records, satisfied, and benefited from facilitating his behavior.

169.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

170.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

## TENTH CAUSE OF ACTION
### False Imprisonment under California Law
#### *Against Defendants Sean Combs & Bad Boy Records*

171.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

172.    Defendant Mr. Combs falsely imprisoned Ms. Richard in California as alleged in this Complaint, by demanding, under false pretenses, that Ms. Richard appear for work, and subsequently, willfully and maliciously falsely imprisoning and threatening Ms. Richard in Mr. Combs' home studio against her will for over twenty minutes.

173.    Following Plaintiff's false imprisonment in Mr. Combs' home studio, Defendant Mr. Combs issued a clear retaliatory threat of future injury and bodily harm to Plaintiff, underscoring the intent to both control and to silence Plaintiff as to Defendant's crimes.

174.    Defendant Bad Boy Records has financially and otherwise benefited from these acts and omissions by keeping Mr. Combs, the volatile and explosive owner of Bad Boy Records, satisfied, and benefited from facilitating his behavior.

175.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

176.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

### ELEVENTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
*Against Defendants Sean Combs, Harve Pierre & Bad Boy Records*

177.    Plaintiff repeats and re-alleges each and every allegation set forth in all of the preceding paragraphs as if fully set forth herein.

178.    Defendants Sean Combs and Harve Pierre's conduct, which included abuse, death threats, sexual assault, false imprisonment, deprivation of basic necessities in the workplace, nonpayment or underpayments, and labor violations was extreme and outrageous, going beyond all possible bounds of decency and utterly intolerable in a civilized community.

179.    Defendants' conduct was intentional and reckless and Defendants knew or should have known that such conduct would cause Plaintiff severe emotional distress.

180.    Defendants Harve Pierre and Bad Boy Records have financially and otherwise benefited from these acts and omissions by keeping Mr. Combs, the volatile and explosive owner of Bad Boy Records, satisfied, and benefited from facilitating his behavior.

181.    Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

182.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

**TWELFTH CAUSE OF ACTION**
**Sexual Harassment, Gender Discrimination, and Hostile Work Environment under**
**New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYSHRL")**
***Against Defendants Sean Combs & Bad Boy Records***

183.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

184.    Defendants Sean Combs and Bad Boy Records discriminated against Plaintiff on the basis of her gender in violation of the NYSHRL by subjecting Plaintiff to disparate treatment, verbal abuse, systematic exclusion, failure to address complaints of discrimination and/or harassment, retaliation, derogatory gender-based slurs and comments, insults and offensive gender-based language, intimidation and bullying, threats, unfair treatment, and denial of opportunities, promotions, or benefits based on gender.

185.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has sustained and will continue to sustain, monetary and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

186.    Defendants' unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYSHRL for which Plaintiff is entitled to an award of punitive damages.

187.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendant should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

//

## THIRTEENTH CAUSE OF ACTION
### Sexual Harassment, Gender Discrimination, and Hostile Work Environment under New York City Human Rights Law, N.Y. Exec. Law §§ 8-101, *et seq.* ("NYCHRL")
### *Against Defendants Sean Combs & Bad Boy Records*

188.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

189.    Defendant Sean Combs and Bad Boy Records discriminated against Plaintiff on the basis of her gender in violation of the NYCHRL by subjecting Plaintiff to unwanted touching of her intimate parts, forcing Plaintiff to endure derogatory name-calling, and exposing Plaintiff to sex trafficking and sex acts, constituting a hostile work environment. Defendants engaged in a pattern of criminal conduct in the workplace that created an offensive, intimidating, and hostile atmosphere for Plaintiff based on her gender.

190.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

191.    Defendants' unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

192.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

//

//

//

//

41

**FOURTEENTH CAUSE OF ACTION**
**Retaliation in Violation of New York State Human Rights Law, ("NYSHRL")**
**Section 296 and California Government Code Section 12940(h).**
*Against Defendants Sean Combs & Bad Boy Records*

193.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

194.    Plaintiff engaged in protected activity by rejecting Defendant's sexual advances, which constitutes opposition to unlawful sexual harassment under New York State Human Rights Law (NYSHRL), Section 296. This rejection is protected activity under NYSHRL and California Government Code, as it opposes discriminatory conduct in the workplace.

195.    Defendants Sean Combs and Bad Boy Records' persistent denial of prominent or continuing singing/writing/performing roles as to Plaintiff constitutes adverse employment actions. Plaintiff's rejection of Combs' sexual advances subjected her to an increasingly hostile work environment based on her gender. These actions materially and detrimentally affected Plaintiff's terms and conditions of employment, and were in direct response to Plaintiff's protected activity of rejecting Defendant's sexual advances.

196.    Further, Defendants' failure to pay Ms. Richard earned wages, royalties, and concert and promotional appearance fees according to contracts and other promises constitute adverse employment actions based on gender and were done in retaliation by Defendants.

197.    There is a direct causal connection between Plaintiff's protected activity and Defendants' adverse employment action. The timing and circumstances indicate Defendant's retaliatory motives.

198.    As a direct and proximate result of Defendants' retaliation, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

42

199.    Defendants' unlawful and retaliatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the NYSHRL for which Plaintiff is entitled to an award of punitive damages.

200.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

### FIFTEENTH CAUSE OF ACTION
### Hostile Work Environment in violation of California Government Code §12940
### *Against Defendants Sean Combs & Bad Boy Records*

201.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

202.    Defendants Sean Combs and Bad Boy Records subjected Plaintiff to sexual harassment on the basis of her gender in violation of California Government Code § 12940, including unwanted touching of her intimate parts, forcing Plaintiff to endure derogatory name-calling, and exposing Plaintiff to sex trafficking and sex acts, all of which constituted a hostile work environment.

203.    The conduct of Defendants Sean Combs and Bad Boy Records created an intimidating, hostile, and offensive working environment in violation of California Government Code §12923.

204.    As a direct and proximate result of Defendants' unlawful conduct in violation of Cal. Gov. Code § 12940, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

205.    Defendants' unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under Cal. Gov. Code § 12940 for which Plaintiff is entitled to an award of punitive damages.

206.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

## SIXTEENTH CAUSE OF ACTION
## Gender Discrimination in violation of California Government Code §12940
### *Against Defendants Sean Combs & Bad Boy Records*

207.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

208.    Defendants Sean Combs and Bad Boy Records discriminated against Plaintiff on the basis of her gender in violation of California Government Code § 12940 by subjecting Plaintiff to disparate treatment, verbal abuse, systematic exclusion, failure to address complaints of discrimination and/or harassment, retaliation, derogatory gender-based slurs and comments, insults and offensive gender-based language, intimidation and bullying, threats, unfair treatment, and denial of opportunities, promotions, or benefits based on her gender.

209.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Cal. Gov. Code § 12940, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

210.    Defendants' unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under Cal. Gov. Code § 12940 for which Plaintiff is entitled to an award of punitive damages.

211.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

//

//

## SEVENTEENTH CAUSE OF ACTION
## Violation of Right of Publicity Under New York Civil Rights Law
## § 50 and § 51 and Unjust Enrichment
### *Against Defendants Sean Combs, Bad Boy Records, Universal Music Group NV, Interscope Geffen A&M Records, Diageo Americas Supply Inc. d/b/a Ciroc Distilling Company d/b/a Ciroc Canning Co., Combs Wines and Spirits LLC*

212.   Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

213.   Mr. Combs required Ms. Richard to perform at and attend numerous promotional events as part of *Diddy – Dirty Money*, including late or overnight parties  which were under contract between Mr. Combs and CIROC Vodka, or were between Mr. Combs and DiddyBeats pursuant to the aforementioned deal between Bad Boy Records and  Interscope Records.

214.   Defendants knowingly used Plaintiff's voice, likeness, image, and persona without Plaintiff's consent for advertising and promotion purposes and for the purpose of trade.

215.   Defendants have been unjustly enriched at Plaintiff's expense by using Plaintiff's voice, image, likeness, and persona without compensating Plaintiff.

216.   It would be inequitable for Defendant to retain the benefit conferred by the unauthorized use of Plaintiff's voice, image, likeness, and persona.

217.   As a result of Defendants' unauthorized use of Plaintiff's likeness, image, and persona, Plaintiff has suffered damages and is entitled to restitution in an amount to be determined at trial.

218.   Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

//

//

//

## EIGHTEENTH CAUSE OF ACTION
## Copyright Infringement
## 17 U.S.C. § 106
### *Against Defendants Sean Combs, Bad Boy Records & Love Records, Inc.*

219.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

220.    Plaintiff wrote, created and performed on the music composition and sound recording of the song *Deliver Me* in 2009, as included on Defendants' 2023 released album *The Love Album: Off the Grid*.

221.    The composition and recording of *Deliver Me* was published by Defendants absent agreement on terms; thus, Defendants have no signed or enforceable agreement with Plaintiff. Plaintiff registered the musical composition and sound recording pertinent thereto with the Register of Copyrights and received the certificate of registration therefor.  Plaintiff owns copyrights in the musical composition, rights of performance therein, and the exclusive rights to reproduce and distribute to the public by sale or other transfer of ownership, or by lease, lending or license, reproductions of the copyrighted works under Copyright Act, 17 U.S.C.§ 106.

222.    Plaintiff is informed and believes and thereon alleges that on September 14-15, 2023, and continuing to the present, Defendants, and each of them, knowingly and willfully and without securing Plaintiff's permission or license: embodied, adapted, used, reproduced, marketed, distributed and sold Plaintiff's copyrighted material on *Deliver Me* as affixed in the Defendants' album *The Love Album: Off the Grid*.

223.    Accordingly, Plaintiff alleges her claim for copyright infringement based on each Defendant's publication of *Deliver Me* as Plaintiff's copyrighted musical composition without license, permission or approval.

224.    Each Defendant unquestionably had access to Plaintiff's work through Defendants previous companies, Bad Boy Records, et al.  or other of Defendants' holders of recorded

compositions, and each Defendant knowingly and willfully ratified and confirmed said access thereafter.

225.    In undertaking the conduct complained of in this action, Defendants knowingly and intentionally violated Plaintiff's rights.

226.    At no time did Plaintiff authorize Defendants to use, license, own, reproduce, adapt or distribute Plaintiff's copyrighted material.  At the times of the acts of infringement complained of, Plaintiff was and is the owner of the copyright in the music composition identified and named above.

227.    After the respective dates of first publication and continuing to the present, the Defendants, and each of them, have infringed and continue to infringe Plaintiff's copyrights in the music composition by reproducing or causing, contributing to, and participating in the unauthorized reproduction of the copyrighted music composition and by causing, contributing to, and participating in the distribution of the unauthorized reproductions of the music composition as recorded to the public.

228.    Despite their actual or constructive knowledge through their individual and collective recording industry experience and knowledge of copyright laws, enforcement of intellectual property rights in other instances and their duties to view and examine licenses for uses of copyrighted works, Defendants have used and promoted and continue to use and promote, reproduce and to enable others to reproduce Plaintiff's copyrighted music composition in its complete or substantial entirety as and for the commercial profit of Defendants without any ongoing payment to or authorization by Plaintiff (i.e. no accountings have been received).

229.    As a direct and proximate result of the Defendants' knowing and willful infringing use of the copyrights, Plaintiff has sustained and will continue to sustain substantial injury, loss and damage to her ownership, publishing and performance rights in her music composition, which is copyrighted material.

230.    As a result of all of Defendants' joint, several, willful and deliberate acts of copyright infringement, Plaintiff is further entitled to recover from Defendants all of the damages sustained by Plaintiff permitted by federal copyright law, including but not limited to compensatory damages and the profits derived by Defendants as a result of their infringing acts, in an amount to be determined according to proof at trial.

231.    Plaintiff is further entitled to recover from Defendants the gains, profits and advantages Defendants, and each of them, have obtained as a result of their acts of copyright infringement.

232.    Plaintiff is entitled to the maximum statutory damages which copyright registration confers upon a copyright owner, pursuant to 17 U.S.C. §504(c), in the amount of $150,000.00 with respect to each Defendant for each work infringed, or for such other amounts as may be proper under 17 U.S.C. §504(c).

## NINETEENTH CAUSE OF ACTION
### Breach of Contract
***Against Defendants Sean Combs, Bad Boy Records, The Sean Comb Music Inc, The Nordlinger Group LLC, November 15, LLC, Janice Combs Publishing Inc & Sony Songs***

233.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

234.    Under the initial Participant Agreement signed by Plaintiff in 2005 with Defendant Remote Productions Inc., on information and belief, a company owned by Sean Combs, Plaintiff was promised transportation to and from venues, adequate meals, rest and sleep, medical care and impliedly, safety from a hostile workplace.  Despite that Plaintiff fulfilled all of her duties and beyond, Defendants breached its duty to provide these basic remunerations.  Defendants also failed to pay salary, royalties, profit participation, promotions, and touring to Plaintiff.

235.    In late 2007, Plaintiff signed The Performer Agreement with Defendant Remote Productions, Inc. which promised minimum compensation to Plaintiff of $4,000 per episode of

*Making The Band,* travel and transportation costs, promotions pay at $3,000 per episode after 6 free, $250 per day for voiceovers or remixes, and performance rights.  Despite Plaintiff's working overtime and double-time, wages or other promised compensation was withheld at least 80% of the time.

236.    Defendant Bad Boy Records, LLC, naming itself as successor-in-interest to Remote Productions, Inc, and Plaintiff signed an agreement entitled The Danity Kane Letter Amendment [the "DK Letter"] in late 2007.  The DK Letter promised Plaintiff approval rights, advances, concert remuneration, royalties at 12.5% payable by Defendant The Nordlinger Group and/or November 15, LLC.  Such payments were not made in accordance with contract, if at all, despite demands to Defendants' attorneys.

237.    Defendants not only breached terms of the agreements listed above, but additionally breached the implied covenants of an employer-employee relationship by acting in bad faith and unfairly frustrating Plaintiff's right to receive the benefits of the agreements actually made.

238.    Plaintiff entered a contract with Defendants "The Sean Comb Music, Inc." on January 1, 2009, promising payment to Plaintiff of 12.5% on sound recording masters in the US and 10% of Net Tour Revenues or 5% per performance; Plaintiff was required to exclusively license her music compositions to Defendants and assign the publishing administration to Defendants.

239.    On information and belief, at an unknown point in time, Defendant The Sean Comb Music Inc. assigned its publishing administration to Janice Combs Publishing, Inc. and such administration rights are alleged to be held by Janice Combs Publishing Holdings Inc.

240.    On July 1, 2021, Defendants Janice Combs Publishing Inc. granted exclusive administration rights in Plaintiff's compositions to Sony Songs, a division of Sony Music Publishing LLC.   Plaintiff signed her assent to the assignment on October 22, 2021. The

assignment provided that Plaintiff would receive 90% of publisher's share of performance income, 80% of synchronization income and 90% of all other income.

241.    Since a music publisher owes a duty to a writer to account to the writer for royalties earned, each of the Defendants named in this count have wholly failed to provide accountings, statements, payments nor validly register, administer, exploit or oversee the Plaintiff's copyrights they were entrusted with via the contracts and thereby breached the contracts with Plaintiff.

242.    Plaintiff provided her talent as a singer, writer, performer, dancer and recording artist.  Defendants received significant benefits and compensation from Plaintiff's services. Yet none of the wages, royalties, publishing, touring, promotional fees and other profits promised by Defendants were paid as agreed; conversely,  Defendants routinely refused to pay despite Plaintiff's requests, nor was Plaintiff made whole at any time.

243.    Defendants' failure to perform the required duties set forth in the terms and conditions of the contracts was foreseeable in causing Plaintiff to suffer general, consequential and incidental damages, including economic damages.  Defendants' conduct is a breach of contract.

244.    As an actual and proximate result of Defendants' unlawful and unconscionable conduct in breaching its fiduciary duties, Plaintiff has lost wages, profits, benefits, royalties, and has incurred other out of pocket expenses.

245.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

//

//

//

//

## TWENTIENTH CAUSE OF ACTION
## Breach of Implied Covenant of Good Faith & Fair Dealing
### *Against All Defendants*

246.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

247.    Plaintiff entered several contracts with Defendants.

248.    Plaintiff did all, or substantially all of the significant things the contracts required her to do.

249.    The allegations set forth in this complaint detail the malevolent and intentional behavior by Defendants repeated throughout a 20 year span, all of which constitute breaches of the implied covenant of good faith and fair dealing and demonstrate the bad faith of Defendants at all relevant times.

250.    Defendants did not pay Plaintiff her salary as agreed.

251.    Defendants did not pay Plaintiff her royalties, nor extraneous promotions in any instance.

252.    Defendants did not pay Plaintiff her share of income for her contributions to musical compositions, her publishing, as agreed, despite the assignments to various companies.

253.    Not only have Defendants failed to pay Plaintiff, they have failed to promote Plaintiff's works, and infringed her copyrights.

254.    Defendants' unfair interference with Plaintiff's right to receive the benefits of each contract was foreseeable in causing Plaintiff to suffer general, consequential and incidental damages, including economic damages according to proof at trial.

255.    Defendants knew or could reasonably have foreseen that the harm and/or special circumstances were likely to occur in the ordinary course of events as a result of the breaches of Defendants' obligations to act in good faith, make Plaintiff's property productive and account for

and pay Plaintiff as agreed. Accordingly, Defendants' conduct was a breach of implied covenant of good faith and fair dealing.

256.    As an actual and proximate result of the aforementioned violations, Plaintiff has been harmed in an amount according to proof, and has lost wages, benefits, and other out of pocket expenses.

257.    As an actual and proximate result of Defendants' aforementioned acts, Plaintiff has suffered physical injury and became mentally upset, stressed and aggravated. Plaintiff has experienced post-traumatic stress disorder, mental anguish, aggravation, anxiety, humiliation, embarrassment, sleeplessness, loss of appetite, low self-esteem, depression, upset stomach, and other forms of extreme emotional distress.  Plaintiff claims damages for physical injuries and mental distress in an amount according to proof at trial.

258.    The above-described actions were perpetrated and/or ratified by a managing agent, employee or officer of Defendants, and each of them.  These acts were done with malice, fraud, oppression and in reckless disregard of Plaintiff's rights.  Further, said actions were despicable in character and warrant the imposition of punitive damages in a sum sufficient to punish and deter Defendants' future conduct.

259.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

## TWENTY FIRST CAUSE OF ACTION
### Fraud / Intentional Misrepresentation / False Promise
#### *Against All Defendants*

260.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

261.    Plaintiff asserts this cause of action against all Defendants.

262.   Defendants represented to Plaintiff that certain facts relative to payments to Plaintiff were true in each of the contracts above-listed.  Further, Defendants made multiple promises in writing to Plaintiff.

263.   Defendants' representations were false; Defendants did not intend to perform these promises when they were made or at any time.

264.   Defendants knew that their representations were false when they were made and they made such representations recklessly and without regard for the truth in such representations.

265.   Defendants intended that Plaintiff rely on their representations and promises.

266.   Plaintiff reasonably relied on Defendants' representations and promises.

267.   Defendants did not perform the promised acts.

268.   Plaintiff was harmed.

269.   Plaintiff's reliance on Defendants' representations and promises was a substantial factor in causing Plaintiff to suffer general, consequential and incidental damages, including economic damages according to proof at trial.  Defendants knew or could reasonably have foreseen that the harm and special circumstances were likely to occur in the ordinary course of events as a result of the Defendants' breaches of contracts.  Accordingly, Defendants' conduct was intentional misrepresentation.

270.   As an actual and proximate result of Defendants' intentional and unlawful misrepresentation and false promises, Plaintiff has lost wages, profits, benefits, royalties, and has incurred other out of pocket expenses.

271.   As an actual and proximate result of Defendants' fraudulent acts, Plaintiff has suffered physical injury and became mentally upset, stressed and aggravated. Plaintiff has experienced post-traumatic stress disorder, mental anguish, aggravation, anxiety, humiliation, embarrassment, sleeplessness, loss of appetite, low self-esteem, depression, upset stomach, and

other forms of extreme emotional distress.  Plaintiff claims damages for physical injuries and mental distress in an amount according to proof at trial.

272.    The above-described actions were perpetrated and/or ratified by a managing agent, employee or officer of Defendants, and each of them.  These acts were done with malice, fraud, oppression and in reckless disregard of Plaintiff's rights.  Further, said actions were despicable in character and warrant the imposition of punitive damages in a sum sufficient to punish and deter Defendants' future conduct.

273.    Defendants' continuous death threats and coercion prevented Plaintiff from asserting her rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

## PRAYER FOR RELIEF ON CLAIMS

**WHEREFORE**, Ms. Richard prays that this Court enter judgment against Defendants herein and any other Defendants who may later be added to this action as follows:

1.    For a money judgment representing compensatory damages, including but not limited to:  consequential damages, lost wages, earning, royalties, publishing, touring and promotional income, and non-economic damages, and all other sums of money, together with interest on these amounts, according to proof;

2.    For a money judgment for mental pain and anguish and severe emotional distress, according to proof;

3.    For restitution;

4.    For disgorgement of all sums unjustly obtained from Plaintiff or inured to the benefit of Defendants;

5.    For civil penalties;

6.    For punitive and exemplary damages according to proof;

7.      For attorneys' fees and costs;

8.      For prejudgment and post-judgement interest; and

9.      For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

1.  Ms. Richard demands a trial by jury on all issues triable of right by jury.


DATED:          September 10, 2024
                New York, New York


                                    Respectfully submitted,

                                    **THE BLOOM FIRM**

                                    By: _____
                                        Lisa Bloom
                                        Arick Fudali
                                        Yasmine Meyer
                                        Devin Meepos
                                    Attorneys for Ms. Richard


                                    **IP LEGAL STUDIO LLC**

                                    By: ___/s/ Lisa A. Cervantes___
                                        Lisa A. Cervantes
                                    Attorneys for Ms. Richard

Exhibit F(ii): Crystal McKinney v. Sean Combs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X     Index No: 24-3931

CRYSTAL MCKINNEY,

                              Plaintiff,                          **AMENDED COMPLAINT**

          - against -

                                                                  **PLAINTIFF DEMANDS**
SEAN COMBS a/k/a "P. DIDDY," BAD BOY                              **A TRIAL BY JURY**
ENTERTAINMENT LLC d/b/a BAD BOY
RECORDS, BAD BOY ENTERTAINMENT
HOLDINGS, INC., SEAN JOHN CLOTHING LLC,
and DADDY'S HOUSE RECORDINGS, INC.,


                              Defendants.
----------------------------------------------------------------------X

     Plaintiff CRYSTAL MCKINNEY ("Plaintiff"), by and through her attorneys, PHILLIPS

& ASSOCIATES, PLLC, hereby alleges and avers of the Defendants SEAN COMBS a/k/a "P.

DIDDY," BAD BOY ENTERTAINMENT LLC d/b/a BAD BOY RECORDS, BAD BOY

ENTERTAINMENT HOLDINGS, INC, (collectively Bad Boy Entertainment LLC and Bad Boy

Entertainment Holdings, Inc. are referred to as "Defendants Bad Boy Records"), SEAN JOHN

CLOTHING LLC ("Sean John"), and DADDY'S HOUSE RECORDINGS INC ("Daddy's

House") (Bad Boy Records, Sean John, and Daddy's House, are collectively referred to as

"Corporate Defendants") alleges upon information and belief as to all other matters as follows.

## NATURE OF THE ACTION

1.    Plaintiff brings suit against Defendants pursuant to the NYC Gender Motivated Violence

    Act, N.Y.C. Admin. Code §§ 8-901 *et. seq*, to redress the substantial and lifetime injuries

    she has suffered as a result of being drugged and sexually assaulted by Sean Combs or "P.

    Diddy."

## JURISDICTION

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 insofar as there is

        complete diversity between the parties and the amount in controversy exceeds $75,000.00.

3.      Plaintiff is a citizen of the State of Georgia.

4.      Defendant Combs is a citizen of the State of California.

5.      Bad Boy Entertainment Holdings, Inc. is a domestic business corporation licensed to do

        business in New York and is headquartered at 1440 Broadway, 3rd Floor, New York, New

        York 10018.

6.      Bad Boy Entertainment LLC is a domestic limited liability company licensed to do

        business in New York and is headquartered at 1440 Broadway, 3rd Floor, New York, New

        York 10018.

7.      Sean John is a domestic liability company licensed to business in New York and is

        headquartered at 1440 Broadway, New York, NY 10018.

8.      Daddy's House is a domestic business corporation licensed to business in New York and

        its primary place of business is located at 321 W 44th St # 201, New York, NY 10036.

9.      Venue is proper in the Southern District of New York because a substantial part of the

        events giving rise to the claim, including but not limited to, Defendant Combs' assault of

        Plaintiff, occurred in this District.

## PROCEDURAL REQUIREMENTS

## THE N.Y.C. VICTIMS OF GENDER MOTIVATED VIOLENCE PROTECTION ACT

10.     The N.Y.C. Victims of Gender Motivated Violence Protection Act ("NYC Gender

        Motivated Violence Act") created a lookback window on March 01, 2023, which runs for

        two years, for survivors of gender motivated violence, allowing them to sue their abusers

2

regardless of when the abuse occurred. N.Y.C. Admin. Code § 10-1105(a).

11.     The NYC Gender Motivated Violence Act revives any claims against "a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender has a cause of action against such party in any court of competent jurisdiction." N.Y.C. Admin. Code § 10-1104.

12.     The Appellate Division has held that sexual assault is an act of gender-motivated violence under the law as "Coerced sexual activity is dehumanizing and fear-inducing. Malice or ill will based on gender is apparent from the alleged commission of the act itself. Animus inheres where consent is absent." *Breest v. Haggis,* 180 A.D.3d 83, 94 (App. Div. 2019).

13.     The above-described conduct of Defendant Combs, including, but not limited to, Defendant Combs' sexual assault of Plaintiff in New York City, constitutes a "crime of violence" and a "crime of violence motivated by gender" against Plaintiff as defined by the NYC Gender Motivated Violence Act.

**PARTIES**

**DEFENDANT COMBS**

14.     P. Diddy a.k.a. Puff Daddy or Diddy is a Grammy-awarded musician, rapper and producer.

15.     In 1992, P. Diddy founded Defendants Bad Boy Records.

16.     In 2008, P. Diddy was the first male rapper to get a star on the Hollywood Walk of Fame.

17.     In 2022, Forbes estimated that P. Diddy is one of the wealthiest hip-hop artists in America and that his net worth is over $1 billion.

18.     Upon information and belief, P. Diddy has a long history of committing physical and sexual violence against women and men as documented in publicly available lawsuits and extensive media coverage.

3

19.     On November 16, 2023, Cassie Venture, an artist signed onto Bad Boy Records, filed a
suit in the United States District Court of the Southern District of New York alleging that
Combs provided her with copious amounts of drugs, before sexually assaulting her.

20.     On November 23, 2023, Joi Dickerson-Neal, filed suit in the Supreme Court of New York,
New York County, alleging that Combs drugged her, sexually assaulted her, and filmed a
"revenge porn" tape of his assault.

21.     On November 23, 2023, Liza Gardener, filed suit in the Supreme Court of New York, New
York County, alleging that Combs and Aaron Hall sexually assaulted her when she was a
minor.

22.     On December 06, 2023, a Jane Doe, filed suit in the United States District Court of the
Southern District of New York alleging that when she was a minor, she was gang raped by
Combs, Harve Pierre, and a third unnamed assailant at Daddy's House Recording Studios.

23.     On February 26, 2024, Rodney Jones, filed suit in the United States District Court of the
Southern District of New York alleging that Combs sexually assaulted him and provided
laced alcoholic beverages to minors.

24.     On May 23, 2024, April Lampros, filed suit in the Supreme Court of the State of New
York, County of New York, alleging that Combs sexually assaulted her on multiple
occasions.

25.     On July 03, 2024, Adria English, filed suit in the United States District Court of the
Southern District of New York, alleging that Defendant Combs forced her to take narcotics
and engage in sexual intercourse with guests at Combs' White Parties.

**<u>DEFENDANTS BAD BOY RECORDS</u>**

26.     In 1992, Combs founded Bad Boy Records, a record label which has sold over 500 million

        records, and where he produced records by Mary Blige, The Notorious B.I.G., and Usher.

27.     On February 08, 2003, Combs and other Bad Boy Entertainment employees were working

        on *One Love*, an album by New Edition, at Daddy's House Recording Studio, located at

        321 W 44th St # 201, New York, NY 10036.

## DADDY'S HOUSE

28.     Daddy's House is a recording studio located at 321 West 44th Street, New York, NY,

        10036.

29.     At all relevant times, Daddy's House was owned by Sean Combs and/or Bad Boy Records.

30.     At Daddy's House, albums and singles for Bad Boy Records artists were mixed, recorded,

        and engineered.

## SEAN JOHN

31.     In 1998, Combs founded Sean John, which has retail sales of over $450 million.

32.     As CEO and president of the company, Defendant Combs was representing Sean John

        when he attended the Men's Fashion Week dinner where he met Plaintiff.

33.     As CEO of Sean John, and a prominent figure in the world of fashion, Combs promised

        Plaintiff to help Plaintiff advance her modeling career.

## FACTUAL ALLEGATIONS

### Plaintiff Begins Her Modeling Career

34.     At the age of seventeen, Plaintiff won MTV's inaugural Model Mission on December 05,

        1998, a televised modeling competition akin to Miss America, and was awarded a modeling

        contract with IMG.

35.     Shortly thereafter, Plaintiff's career took off.

5

36.    Plaintiff modeled for a Tommy Hilfinger jeans campaign.

37.    Plaintiff was also featured in Macy's catalogs, Elle, Cosmopolitan and Mademoiselle magazines.

38.    Plaintiff also made appearances in television and film program such as MTV's Total Request Live ("TRL"), Fashionably Loud, True Life, and a movie with Joan Rivers.

39.    Furthermore, Plaintiff had international modeling gigs in Germany and Australia.

**A Fashion Designer Invites Plaintiff To Men's Fashion Week to Meet Combs**

40.    On or about February 2003, when Plaintiff was twenty-two years old, a fashion designer ("the Designer") invited Plaintiff to attend a Sean John Fall 2003 Fashion Show event held at Cipriani Downtown, located at 376 W. Broadway, New York, NY 10012.

41.    At the time, Plaintiff was engaged in modeling gigs in Miami, Florida and flew to New York for the event that would take place on February 08, 2003.

42.    The Designer told Plaintiff that he would be introducing her to Combs which could advance her modeling career.

43.    The Designer began to direct Plaintiff's appearance, as he sought to ensure Combs found her attractive.

44.    For instance, the Designer instructed Plaintiff to go to Elizabeth Arden to get a root touch up to ensure it was platinum blonde.

45.    The Designer also scheduled a stylist to put in hair extensions for Plaintiff.

46.    The Designer then handpicked a black leather coat with a fur hood, a translucent chiffon beige v-cut shirt, fur-lined handbag, and jewel encrusted jeans for Plaintiff to wear to the event.

47.    Due to the traumatic events to occur later, Plaintiff saved the unwashed clothing from that

6

night in her closet where they remain in a plastic wrap.

**Combs Makes Promises of Career Advancement**

48.    Soon thereafter, Plaintiff took a car to Cipriani Downtown, where the Designer was dining

with Combs and other guests.

49.    Plaintiff felt little control over the events as she was directed what to do and put on display,

for the others in attendance.

50.    For instance, Plaintiff sat down at an empty seat next to the Designer, but he insisted that

she sit down directly across from Combs instead.

51.    Once seated, Combs made a very public display of coming on to Plaintiff in a sexually

suggestive manner, which continued throughout the dinner.

52.    For others to hear, Combs bestowed compliments on Plaintiff by stating for example that

she was beautiful and that her eyes were gorgeous.

53.    Later, and at a more intimate volume, Combs told Plaintiff that she "was going to make it

big one day" as a model.

54.    Combs went on to tell Plaintiff that he had power in the industry and was going to help her

advance her career.

55.    Combs provided Plaintiff with his phone number as a gesture of good faith in his promises

to help her.

56.    Throughout their interactions, Combs was flirtatious, bordering on leering, as he leaned

across the table towards her.

57.    Combs also plied Plaintiff with alcohol throughout the dinner as he repeatedly refilled her

glass with wine.

58.    After the meal ended, Combs told Plaintiff that he wanted to get to know her better.

7

59.    Combs asked Plaintiff to call him a bit later.

60.    Plaintiff felt confused but hopeful that Combs would fulfill his promises to help her career.

**Plaintiff Meets Combs At His Studio Where He Drugs and Sexually Assaults Her**

61.    Later that night, Combs requested Plaintiff come see his studio Daddy's House located at 321 W. 44th Street, New York, NY 10036.

62.    Upon information and belief, Combs regularly recorded albums at Daddy's House that were produced and released by Bad Boy Records. Upon information and belief, Combs invited other women to Daddy's House to drug and/or sexually assault them.

63.    Plaintiff felt reassured that she would be with others at the studio rather alone in a personal residence.

64.    When Plaintiff arrived in the Demo Room, she found that Combs and several other men seated together.

65.    The men were Bad Boy Records employees and/or other industry professionals who were working on *One Love,* a New Edition album.

66.    She found that the men were passing around a bottle of Hennesy and joints.

67.    After Plaintiff sat down, one of Combs' associates asked her: "Do you smoke weed?", to which she responded affirmatively.

68.    Combs' associate replied: "You've never had weed like this before."

69.    Plaintiff later came to understand that Combs had laced the joint with a narcotic or other intoxicating substance.

70.    Combs passed her the joint and Plaintiff took a hit, which felt very powerful.

71.    Although Plaintiff insisted that she had enough after that, Combs pressured her to imbibe more alcohol and marijuana by telling her that she was acting too uptight.

8

72. Plaintiff felt as if she was floating.

73. Although Plaintiff had smoked marijuana in the past, she had never experienced such a disorienting feeling after smoking and has not since that night.

74. Plaintiff would not have ingested the joint if she had known that Combs had laced it.

75. In providing Plaintiff with a laced joint and/or intoxicating substance, Combs involuntarily drugged her. Seeing Plaintiff was very intoxicated, Combs demanded Plaintiff follow him and he physically led Plaintiff to the bathroom that adjoined the Demo Room.

76. The bathroom had a frosted, semi-transparent glass pane which allowed occupants of the Demo Room to see activity within the room.

77. In the bathroom, Combs forced himself on Plaintiff and began kissing her without her consent.

78. Combs, then, shoved her head down to his crotch before commanding her to "suck it."

79. Plaintiff refused, but Combs pushed her head down onto his phallus and forced her to perform oral sex on him.

80. As she was being assaulted, Plaintiff felt panicked and physically sick.

81. Afterwards, Combs led Plaintiff back into the studio.

82. Upon standing and walking, Plaintiff felt more and more woozy and then lost consciousness.

83. Plaintiff awakened in shock to find herself in a taxicab heading back to the Designer's apartment.

84. As her consciousness returned, Plaintiff realized that she had been sexually assaulted by Combs.

85. Plaintiff felt humiliated and traumatized and without recourse.

86. Upon information and belief, Combs purposely assaulted Plaintiff so others could see it in a voyeuristic display for his associates and others present.

87. A prominent music industry professional who worked for Bad Boy Records was present that night and witnessed the events as described herein

**Combs' Assault Has Caused Plaintiff Lifelong Harm**

88. Following the assault, Plaintiff's modeling opportunities quickly began to dwindle and then evaporated entirely.

89. Upon information and belief, Combs had Plaintiff "blackballed" in the industry and utilized his significant influence to impede Plaintiff's career growth.

90. Plaintiff became severely depressed as she began to blame herself for the assault and for sabotaging her own career.

91. The assault led Plaintiff into a tailspin of anxiety and depression.

92. In or about 2004, Plaintiff attempted suicide and was hospitalized.

93. Everywhere Plaintiff looked she was reminded of Combs' assault, as Combs was an inescapable presence in music, television, and film.

94. In the ensuing years, Plaintiff has also experienced alcohol and drug addiction, as she attempted to cope with the emotional trauma of being assaulted.

95. Plaintiff has also experienced intimacy issues, as she struggles to maintain emotional and sexual relationships with men.

96. Plaintiff was married from approximately 2006 to 2010, however, her marriage fell apart as she had a mental breakdown precipitated by memories of the assault.

97. Combs' assault has altered the trajectory of Plaintiff's career, denying her a successful and lucrative career in the modeling and film industries.

98. To this day, Plaintiff experiences bouts of depression, anxiety, body image issues, feelings of worthlessness, and intimacy issues because of Combs' assault.

99. Plaintiff is a woman of faith and when she saw news coverage of the lawsuits from Ms. Cassie Ventura, Ms. Dickerson-Neal, and others, she knew she had a moral obligation to speak up.

100. Plaintiff prayed to G-d before bringing this lawsuit, as she feared further violence and/or retaliation from Defendant Combs, but ultimately decided that she needed to speak her truth.

101. Plaintiff seeks justice for herself and for any of other Combs' victims.

**Corporate Defendants' Knowledge Of Combs' Behavior**

102. Corporate Defendants knew, should have known and/or had actual and constructive notice of Defendant Combs' propensity for sexually harassing, assaulting, and/or drugging women.

103. Upon information and belief, Combs' propensity for violence was an open industry secret.

104. Upon information and belief, industry professionals regularly discussed that Combs engaged in forceful sex with women and made promises of career advancement.

105. In a May 28, 2024, article, Rolling Stone reported on several violent acts allegedly committed by Combs prior to his assault of Plaintiff.

106. Rolling Stone reported that Defendant Combs publicly beat his then-girlfriend while he was a student at Howard University in approximately 1989 or 1990.

107. Combs' propensity for violence was not a secret, as he allegedly told Jet Magazine: "I had a temper. That's why my friend started calling me Puffy."

108. Indeed, Combs released his first single in 1996 utilizing the stage name "Puff Daddy" –

seven years prior to his assault of Plaintiff.

109. That same year, Combs allegedly threatened Kirk Burrowes, former president of Bad Boy Records, with a baseball, as detailed in the Rolling Stone article and a 2003 lawsuit.

110. Rolling Stone also reported that Burrowes witnessed Combs attack a woman at the Bad Boys office in 1994.

111. In 2000, according to Rolling Stone, Combs allegedly approached a Bad Boy Records employee named "Anna" and began to massage her shoulders without her consent and allegedly approached her boss to solicit Anna for sex.

112. Lawsuits by Liza Gardner and Joi Dickerson-Neal also detail sexual assaults committed by Combs in 1990 and 1991.

113. Given the above-referenced acts, Corporate Defendants were on notice of Combs' violent behavior and negligently placed him and/or allowed him to remain in positions of power where he could engage in sexual and/or violent misconduct.

114. Defendants Bad Boy Records, Sean John, and Daddy's House allowed Defendant Combs to remain in leadership positions such as CEO, which allowed him access to victims such as Plaintiff, which he sexually assaulted.

115. Corporate Defendants and/or their agents, servants and/or employees did not use reasonable care in making decisions in regard to hiring and retaining Defendant Combs.

116. Corporate Defendants and/or their agents, servants and/or employees would have discovered Defendant Combs' ongoing harassing conduct but for their negligence in carrying out their supervisory duties.

117. Corporate Defendants and/or their agents, servants and/or employees breached the above-stated duty in a negligent, reckless, willful, and wanton manner, and caused Plaintiff to be

12

sexually harassed, abused, and assaulted.

## CAUSE OF ACTION

### AS A FIRST CAUSE OF ACTION
### THE NYC VICTIMS OF GENDER-MOTIVATED VIOLENCE PROTECTION ACT
### (Against Defendants)

118. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint as if more fully set forth herein at length.

119. The NYC Gender Motivated Violence Act revives any claims against "a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender has a cause of action against such party in any court of competent jurisdiction." N.Y.C. Admin. Code § 10-1104.

120. The above-described conduct of Defendant Combs, including sexually assaulting or abusing Plaintiff at a music studio located in Manhattan. constitutes a "crime of violence" against Plaintiff and is a "crime of violence motivated by gender" as defined in N.Y. C. Admin Code § 10-1103.

121. Defendant Combs' crimes of violence were motivated by Plaintiff's gender as defined in in the New York City Administrative Code § 8-903, as Defendant committed forcible sex acts upon Plaintiff that would constitute felonies under state law and as the conduct presents a serious risk of physical injury, whether or not those acts have resulted in criminal charges, prosecution, or conviction.

122. The Appellate Division has held that sexual assault is an act of gender-motivated violence under the law as "Coerced sexual activity is dehumanizing and fear-inducing. Malice or ill will based on gender is apparent from the alleged commission of the act itself. Animus inheres where consent is absent." *Breest v. Haggis,* 180 A.D.3d 83, 94 (App. Div. 2019).

123. The above-described conduct of Defendant Combs constitutes sexual offenses as defined

13

Case 2:24-cv-07975-JXN-JRA    Document 53-6    Filed 08/02/24    Page 71 of 116
Case 2:24-cv-07975-JXN-JRA    Document 163-6    Filed 06/02/25    Page 71 of 478
PageID: 1574

in Article 130 of the New York Penal Law.

124.  Plaintiff is a woman, who is older than 18, who alleges misdemeanor and/or felony penal law violations, including but not limited to sexual misconduct (N.Y. Penal L. § 130.20), criminal sexual act in the first degree (N.Y. Penal L. § 130.50), criminal sexual act in the third degree ( N.Y. Penal L. § 130.40), forcible touching (N.Y. Penal L. § 130.52),  sexual abuse in the first degree (N.Y. Penal L. § 130.65), and sexual abuse in the second degree (N.Y. Penal L. § 130.60).

125.  Defendant Combs coerced Plaintiff to engage in sexual contact and/or sexual intercourse, despite the fact that he was rendered incapable of consenting due to intoxication.

126.  Defendant Combs gave Plaintiff several drinks throughout the night and a laced blunt, thus, he knew or should have known that Plaintiff was incapable of consenting to sexual contact and/or sexual conduct.

127.  Defendant Combs' actions presented a serious risk of physical injury to Plaintiff's person, regardless of whether or not those acts resulted in criminal charges, prosecution or conviction.

128.  Prior to Combs sexually assaulting Plaintiff, Corporate Defendants knew or should have known that Combs was not fit to be in a position of authority. Corporate Defendants, by and through their agents, servants and/or employees, became aware, or should have become aware of Combs' propensity to commit sexual assault and of the risk to Plaintiff's safety.

129.  Corporate Defendants knew or should have known that Combs posed a risk of sexual assault.

130.  Corporate Defendants failed to protect Plaintiff from a known danger, and thereby enabled Combs' sexual assaults of Plaintiff.

14

131. Corporate Defendants negligently deemed that Combs was fit to be in a position of authority; and/or that any previous suitability problems Combs had were fixed and cured; and/or that Combs would not commit acts of sexual assault; and/or that Combs would not injure others.

132. Moreover, Corporate Defendants enabled the sexual abuse of Plaintiff by actively maintaining and employing Combs in a position of power and authority through which Combs had control over people, including Plaintiff.

133. As a direct and proximate result of the aforementioned crime of violence and gender-motivated violence, Plaintiff has sustained and will continue to sustain, monetary damages, physical injury, pain and suffering, and serious psychological and emotional distress, entitling her to an award of compensatory and punitive damages, injunctive and declaratory relief, attorneys fees and costs, and other remedies as this Court may deem appropriate damages, as set forth in § 10-1104.

## JURY DEMAND

134. Plaintiff demands a trial by jury of all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendant Combs engaged in unlawful practices prohibited by the New York City Victims of Gender-Motivated Violence Protection Act, in that Combs drugged and sexually assaulted Plaintiff;

B. Declaring that Corporate Defendants engaged in unlawful practices prohibited by the New York City Victims of Gender-Motivated Violence Protection Act, in that they enabled Defendant Combs' commission of the crimes of violence motivated by gender;

15

C.     Awarding Plaintiff compensatory damages for mental, and emotional injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D.     Awarding Plaintiff damages for Defendants' breach of contract;

E.     Awarding Plaintiff punitive damages;

F.     Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

G.     Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful practices.

Dated: New York, New York
       August 1, 2024

**PHILLIPS & ASSOCIATES,**
**Attorneys at Law, PLLC**

By: _____
Michelle A. Caiola, Esq.
Jonathan Goldhirsch, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 430
New York, New York 10006
T: (212) 248-7431
F: (212) 901 - 2107
mcaiola@tpglaws.com
jgoldhirsch@tpglaws.com

Exhibit F (iii): John Doe v. Sean Combs; 1-25-cv-00996

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE, | COMPLAINT |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | CASE NO: 1:25-CV-00996-JLR |
| SEAN COMBS, BAD BOY ENTERTAINMENT LLC, BAD BOY RECORDS LLC, BAD BOY ENTERTAINMENT HOLDINGS INC., BAD BOY PRODUCTIONS HOLDINGS INC., BAD BOY BOOKS HOLDINGS INC., DOE CORPORATIONS 1-10, AND DOE DEFENDANTS 11-20, | |
| Defendants. | |

Plaintiff JOHN DOE ("Plaintiff"), by and through his attorneys, The Bloom Firm, brings this action against Defendants. Plaintiff alleges upon knowledge concerning his own experience and upon information and belief as to all other matters.

### PRELIMINARY STATEMENT

1.      Defendant Sean Combs ("Combs"), a prominent entertainment mogul, exploited his power to sexually, physically, and psychologically abuse Plaintiff over more than five harrowing years. Combs caused Plaintiff's life to spiral into a living nightmare.

2.      Plaintiff was, at all relevant times, a Las Vegas-based entertainer who aspired to become a musician. Knowing that Plaintiff desperately sought a breakthrough in the music industry, Combs enticed Plaintiff with fraudulent promises of a career in the music industry. Combs used his false promises of career advancement as weapons, trapping Plaintiff in a vortex of exploitation and fear. Combs did not follow through with these promises; instead, Combs subjected Plaintiff to a relentless pattern of drugging, sexual assaults, death threats, clandestine

1

Case 2:25-cv-00990-JRR  Document 63-6  Filed 02/04/25  Page 2 of 30
Case 1:25-cv-02290-JPR  Document 63-6  Filed 02/04/25  Page 2 of 478
PageID: 1579

recording, blackmail and psychological manipulation that far exceeded any bounds of consent or professionalism.

3.      Combs dehumanized Plaintiff and reduced him to a mere object for Combs' own amusement and to satisfy his own sexual fetishes. Combs gravely exploited Plaintiff, effectively imprisoning him and controlling him through surreptitious surveillance and filming. Combs' recordings were not just blatant invasions of Plaintiff's privacy, but he wielded them as tools of blackmail, forcing Plaintiff to continuously comply with his perverse sexual demands. Combs covertly drugged Plaintiff to strip Plaintiff of his ability to resist his sexual demands.

4.      Bad Boy Entertainment, Combs' production company, facilitated Combs' calculated abuse and played a significant part in Combs' ruthless scheme to exploit Plaintiff.

**PARTIES**

5.      Plaintiff JOHN DOE currently resides in Las Vegas, Nevada. At all relevant times described in this Complaint, Plaintiff resided in California and/or Nevada.

6.      Upon information and belief, Defendant SEAN COMBS (also known professionally as P. Diddy, Puff Daddy, Diddy and other pseudonyms) previously resided in California and has extensive ties to California, Florida, and New York. As of December 2024, Combs is incarcerated within the Metropolitan Detention Center in Brooklyn, New York. Combs is a well-known recording artist, record producer, and entrepreneur.

7.      Upon information and belief, Defendant BAD BOY ENTERTAINMENT LLC is a New York corporation with its principal place of business in New York. It was founded and owned by Combs.

8.      Upon information and belief, Defendant BAD BOY RECORDS LLC is a Delaware limited liability company that is headquartered in New York and/or California and is a subsidiary of and/or a successor-in-interest to Bad Boy Entertainment LLC. It was founded and owned by Combs.

9.      Upon information and belief, Defendant BAD BOY ENTERTAINMENT HOLDINGS INC. is a New York corporation with its principal place of business in California.  It is a subsidiary of and/or a successor-in-interest to Bad Boy Entertainment LLC. It was founded and owned by Combs.

10.      Upon information and belief, Defendant BAD BOY PRODUCTIONS HOLDINGS INC. is a New York corporation.  It is a subsidiary of and/or a successor-in-interest to Bad Boy Entertainment LLC. It was founded and owned by Combs.

11.      Upon information and belief, Defendant BAD BOY BOOKS HOLDINGS INC. is a New York corporation.  It is a subsidiary of and/or a successor-in-interest to Bad Boy Entertainment LLC. It was founded and owned by Combs. Bad Boy Entertainment LLC, Bad Boy Records LLC, Bad Boy Entertainment Holdings Inc., Bad Boy Productions Holdings Inc., and Bad Boy Books Holdings Inc. shall be referred collectively herein as "Bad Boy Defendants."

## JURISDICTION AND VENUE

12.      This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343, as this action asserts violations of 18 U.S.C. § 1591 *et seq*. and 18 U.S.C. § 1589 *et seq*., and therefore raises federal questions regarding the deprivation of Plaintiff's rights. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state and city law pursuant to 28 U.S.C. § 1367(a).

13.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this District, and Defendants Sean Combs and Bad Boy Records conduct substantial business and/or are domiciled in this District.

Case 2:23-cv-20408-JRR   Document 63-6   Filed 02/04/25   Page 4 of 30
Case 1:25-cv-02990-JPR   Document 6-5   Filed 04/21/25   Page 78 of 478
PageID: 1581

## FACTUAL ALLEGATIONS

### Combs Hired Plaintiff to Strip and Dance

14.     In or around 2007, Plaintiff was recognized as one of the premier entertainers in the Las Vegas adult entertainment scene. Plaintiff worked with multiple adult entertainment agencies and received his professional engagements through these agencies.

15.     As a popular and frequently sought-out entertainer, Plaintiff maintained high professionalism. Both Plaintiff and the clients operated under pseudonyms, such that Plaintiff did not know the identity of the person he was meeting until he arrived at the engagement and met the client.

16.     Both Plaintiff and his agencies clearly communicated his boundaries and limitations to the clients at the outset of his engagements.

17.     In or around 2007, Plaintiff was booked through one of his agencies to perform a strip show in a hotel room in Las Vegas. In accordance with standard procedures, Plaintiff did not know who he was meeting until he arrived. On this occasion, the client was Combs.

18.     When Plaintiff arrived, Combs conducted a full-body pat down.

19.     Plaintiff commenced his performance, which consisted of dancing and stripping. When the performance concluded, Combs paid Plaintiff $1,500.

20.     In the following months, Combs booked Plaintiff for at least two additional engagements in Las Vegas through Plaintiff's agencies. As was the standard procedure, the client's name was not revealed ahead of time, and Plaintiff did not know he would be meeting Combs until he arrived at the hotel room. Each time, Combs was present in the room with a different woman.

21.     On these additional engagements through Plaintiff's agencies, Combs offered Plaintiff beverages, which Plaintiff consumed. Combs also asked Plaintiff to apply baby oil to Plaintiff's skin during the performances, which Plaintiff did. After applying the baby oil, Plaintiff

became unusually sleepy, disoriented, confused, exhausted, drowsy, weak, confused, sluggish, numb and alarmed by the sensation of being trapped in his own body. Plaintiff felt a heavy sensation behind his eyes and felt that moving his body became more difficult and exhausting.

22.     While Plaintiff was in this disoriented state, Combs instructed him to perform acts that were outside the scope of the agreed-upon performance and limitations set by Plaintiff and his agency. Combs instructed Plaintiff to engage in acts such as masturbating while Combs and the woman engaged in sexual intercourse. Plaintiff, left in an incapacitated state after applying the baby oil to his skin, found himself mentally and physically unable to resist or express his discomfort, leading to his unwilling compliance with Combs' demands. Once the intoxicating effects of the substances had subsided, Plaintiff felt a deep sense of humiliation and shame for being coerced into such acts.

## Combs Recruited Plaintiff to Work for Him Directly by Promising to Launch Plaintiff's Music Career

23.     On or around the third time that Combs booked Plaintiff through an agency, Combs asked Plaintiff to stop working with his agencies and to work directly for Combs instead.

24.     Plaintiff responded that he was experiencing financial difficulties and could not afford to stop working for the agencies. Plaintiff explained that he earned his livelihood by working for his agencies as an adult entertainer, but that he hoped to become a musical artist.

25.     Upon learning that Plaintiff was an aspiring musician, Combs offered to listen to Plaintiff's music and expressed a willingness to help him advance his music career. Combs made statements such as "I can make you a millionaire overnight" and "I can change your life in a second." Combs specified that he would give Plaintiff a million dollars for each song Plaintiff wrote for him.

26.     Plaintiff was excited for what felt like a tremendous opportunity. Having a direct connection to one of the most prominent and powerful figures in the music industry, who was

known to have made ordinary people into stars, felt like an incredible stroke of luck and a once-in-a-lifetime opportunity for Plaintiff to achieve his dreams.

27.      Plaintiff hoped to impress Combs and earn the chance to become successful in the music industry. Combs asked Plaintiff for his phone number so that Combs could contact him directly. Plaintiff gave Combs his phone number.

### Combs Fraudulently Used Plaintiff's Musical Aspirations Along With Intimidation and Covert Drugging to Obtain Plaintiff's Compliance With Combs' Sexual Demands

28.      After Plaintiff provided Combs with his contact information, Combs invited him to meet on numerous occasions, offering to listen to his music. Believing that Combs would review his work, Plaintiff accepted these invitations and traveled to meet Combs in locations including Las Vegas, New York City, Los Angeles, and Miami.

29.      Maintaining the appearance of professional interest, Combs purchased airline tickets and hotel accommodations for Plaintiff through his record company, Bad Boy Records.

30.      After Combs began to arrange their meetings directly rather than through Plaintiff's agencies, Combs' behavior shifted in the absence of an agency overseeing the transaction.

31.      When Plaintiff arrived to Combs' locations, which ranged from hotel rooms in various cities to Combs' properties in various states, Combs regularly conducted a full-body pat-down and confiscated Plaintiff's phone when he arrived. Combs regularly had a firearm present either on his person or visible in the room. Plaintiff, aware that Combs had been involved in shootings and violent altercations in the past, felt deeply fearful of doing anything that could upset or anger Combs.

32.      Combs reinforced his fraudulent display of professional interest by setting up mobile studios and frequently playing his upcoming music releases for hours on end, showcasing his prominence in the music industry to Plaintiff.

6

33.     At nearly every gathering, Combs issued grandiose promises of career assistance to Plaintiff, boasting of his ability to make people millionaires and change lives overnight. Combs even suggested that Plaintiff could become his manager and help him run Bad Boy Entertainment.

34.     At Combs' request, Plaintiff brought recordings of his music for Combs to listen to. However, each time, Combs quickly shifted the conversation away from Plaintiff's music and directed Plaintiff to perform a strip show.

35.     During the strip shows, there was usually a woman present with Combs. On some occasions, other men and/or women were also present. Combs typically required Plaintiff to get undressed and leave his clothes in another room. Combs then barricaded the participants inside the room where the strip show would take place by placing furniture and other objects in front of the door.

36.     Being physically confined in the room without his phone, clothes, or other belongings, along with Combs' firearm serving as a visual reminder that he was armed, made Plaintiff feel trapped, fearful, and as though he were not free to leave.

37.     Combs offered Plaintiff beverages, which Plaintiff sometimes consumed. Combs routinely asked Plaintiff to apply baby oil to Plaintiff's skin during the strip show. Following the application of the baby oil, Plaintiff became drowsy, lethargic, weak, and numb, although Plaintiff did not connect these effects with the baby oil until years later.

38.     Combs frequently pushed Plaintiff to apply more baby oil, saying things like "you're getting a little dull – rub some more baby oil on yourself." If Plaintiff refused to apply the baby oil, Combs became irate. On multiple occasions, Combs squirted large amounts of baby oil onto Plaintiff's skin, coating his skin so heavily that it dripped off of his body.

39.     Each time that Plaintiff applied the baby oil, he was overcome with the same drowsy, extremely tired sensation. Plaintiff felt his eyes become heavy, and when he looked in the mirror his eyes appeared droopy. The overwhelming drowsiness caused him to fall asleep for

unknown periods of time. Often, he lay down on the couch, alternating between sleeping and waking.

40.    After applying the baby oil, Plaintiff became uncoordinated and confused. Plaintiff stumbled over furniture and objects and got lost when trying to find his way to and from the bathroom, and even once fell asleep in the bathroom. On one occasion, Combs asked Plaintiff to record sexual activity with a camera, but Plaintiff was unable to hold the camera straight without swaying his arm.

41.    When Plaintiff was in this drowsy and confused state, Combs directed Plaintiff to masturbate and to engage in sexual contact with the woman present, which included touching the woman's breasts and engaging in sexual intercourse with her. On some of these occasions, Combs placed his hand on Plaintiff's penis and stroked Plaintiff's penis.

42.    Plaintiff tried to communicate at the outset of the meetings that his performances were limited to stripping and dancing and that he was not willing to engage in sexual activity. Yet if Plaintiff refused the beverages that Combs offered, or hesitated to apply baby oil to his skin, Combs became enraged, screaming at Plaintiff, throwing objects, and clenching his fists as if about to strike Plaintiff.

43.    On several occasions, Plaintiff found his penis involuntarily erect even though he was not sexually aroused. On these occasions, Plaintiff noticed that his heart was beating quickly and he felt faint. Plaintiff commented on what he was feeling, and Combs stated that he had put Viagra in Plaintiff's drink to make Plaintiff able to sexually perform. Combs produced a bag of light blue pills and showed them to Plaintiff.

44.    Combs also forced Plaintiff to consume unknown substances. When Plaintiff was sitting or lying down and experiencing the aforementioned effects after applying the baby oil, Combs frequently placed a pill in Plaintiff's mouth and watched him to ensure he had swallowed

it. Combs asked Plaintiff to open his mouth and lift his tongue to ensure he had not hidden the pill.

45.     After ingesting the pills, the physical and physiological effects that Plaintiff was experiencing intensified such that Plaintiff could not fully control his body. Particularly, Plaintiff's sense of tiredness, confusion, and lack of coordination was compounded with a heightened sense of mellowness, calm, numbness, and indifference.

46.     During most encounters, Combs demanded that Plaintiff engage in sexual activity with the woman who was present. This included touching her breasts, vagina, and buttocks, and engaging in vaginal intercourse. Combs often positioned his face directly between Plaintiff's and the woman's genitals to closely monitor and ensure they were engaging in penetration.

47.     Often, Combs demanded that Plaintiff ejaculate on the woman's body or in her mouth, causing Plaintiff to feel deeply humiliated and degraded. On one of those occasions, Plaintiff observed that Combs rubbed Plaintiff's semen on the woman's body and then licked Plaintiff's semen with his tongue.

48.     Occasionally, Plaintiff and/or the woman expressed hesitation or appeared visibly uncomfortable with Combs' demands. At any sign of hesitation or defiance, Combs became enraged. Combs screamed and cursed, threw objects at Plaintiff, toppled furniture, and swung his fists at Plaintiff as though to hit Plaintiff.

49.     On several occasions when Plaintiff did not comply with Combs' demands immediately, Combs forcibly grabbed Plaintiff by the shaft of his penis, causing him physical pain, and forced Plaintiff's penis into the woman's vagina. On some occasions, Combs touched and stroked Plaintiff's penis.

50.     Plaintiff's encounters with Combs lasted for extended periods of time, sometimes more than eighteen hours at a time. Despite Plaintiff informing Combs that he charged a set hourly rate for his stripping engagements, Combs consistently underpaid Plaintiff. Each time Combs

invited Plaintiff to meet under the guise of listening to his music, he instead required Plaintiff to strip and engage in sexual acts, subsequently paying Plaintiff a sum of money that was substantially less than Plaintiff's rate. Plaintiff often attempted to set time limits on the meetings and discuss payment, but Combs disregarded these conversations and made comments such as "aren't we friends now?"

51.     On more than one occasion after awakening, Plaintiff discovered that semen was seeping out of his anus. Plaintiff believed that Combs had raped him, as Combs was the only other male present on those occasions. On these occasions, Combs paid Plaintiff a substantially larger sum of money.

52.     Prior to each occasion that Plaintiff met Combs, Plaintiff believed that he would be able to resist any sexual advances or requests that would arise.  But each time, after applying baby oil to his body, Plaintiff found himself unable to summon the mental acuity or physical strength to resist Combs' demands.

53.     It was not until years later that Plaintiff made the connection that Combs used baby oil to mentally and physically impair him with the intention that Plaintiff submit to Combs' sexual demands.

**Combs Recorded Plaintiff Engaging in Sexual Acts and Threatened Plaintiff as a Means to Exercise Control of Plaintiff**

54.     On one occasion soon after Combs began arranging their meetings directly, Plaintiff discovered a hidden camera in the room and became visibly agitated and distressed at the prospect of being recorded.

55.     Combs confirmed that he had previously recorded Plaintiff engaging in sexual activity, that he maintained the videotapes, and that he would release the videos and ruin Plaintiff's reputation if Plaintiff did not comply with his demands. Combs made statements such

as "I can change your life in a second and make you a millionaire overnight…but I have means and ways of taking care of things."

56.     Plaintiff understood Combs' threats to mean that if Plaintiff angered or defied Combs, Combs would not only withdraw his promised support of Plaintiff's music career, but he would blackmail Plaintiff with the sexually graphic videotapes.

57.     Over the next several years, Combs and members of his team regularly reached out to Plaintiff to set meetings. Sometimes days or weeks elapsed between meetings, while sometimes weeks or months would pass. Often, Combs' requests to meet Plaintiff coincided with Combs' appearance at major events such as performances, presentations, and awards shows.

58.     If Plaintiff ever declined to meet Combs, Combs then reached out to Plaintiff directly threatening him, making statements such as "I can make you disappear" and "things aren't going to get better for you" and threatening to release the videotapes of Plaintiff. Deeply afraid and believing that Combs would follow through on his threats, Plaintiff submitted to Combs' demands.

59.     In addition to hiring Plaintiff to perform for him, Combs also insisted that Plaintiff send Combs sexually explicit photos of Plaintiff's penis. Afraid of the potential consequences of refusing, Plaintiff complied.

60.     In or around 2010, after years of Combs instilling fear in Plaintiff, misleading Plaintiff and manipulating him with promises that never materialized, it finally became clear to Plaintiff that Combs had no intention of supporting Plaintiff's career. At this point, Plaintiff realized he needed to find a way to escape Combs' manipulation and abuse.

61.     During the next two years, Plaintiff made repeated attempts to distance himself from Combs. Each time they spoke on the phone, Plaintiff experienced intense anxiety, with his heart racing, yet Combs refused to accept "no" for an answer. Combs used threats to exert control, warning Plaintiff, "You're not loyal." "Who are you going to tell about all of this?" "Don't forget,

I have tapes of you." Plaintiff found himself trapped in an abusive cycle from which he felt he could not escape.

62.    Plaintiff's last encounter with Combs was in or around November 2012, close to the time that Plaintiff got married. Plaintiff hoped that his marriage could serve as a boundary that Combs would respect. Yet, Combs continued to call persistently for months, pressuring Plaintiff to return.

63.    Since his last encounter with Combs, Plaintiff has experienced a strong and unrelenting desire to come forward about Combs' abuse, but was deterred by his fears that Combs would follow through with his threats to release the compromising videos of Plaintiff and irreparably harm Plaintiff's reputation. Worse, Plaintiff feared that Combs or his agents or companies' representatives would take steps to seriously harm Plaintiff and his family, as Combs had repeatedly emphasized he was capable and willing to do.

64.    On November 16, 2023, Casandra Ventura filed a civil lawsuit against Combs. As more and more individuals filed civil lawsuits against Combs, Plaintiff gathered the courage to begin searching for legal representation, but he continued to fear the consequences of bringing his own lawsuit against Combs.

65.    On October 3, 2024, an individual representing Combs reached out to Plaintiff to insist on an in-person meeting, further intensifying Plaintiff's fear for his safety.

66.    But Combs' recent arrest and the subsequent denials of his bail applications provided Plaintiff with a small measure of comfort and protection, conferring on him newfound confidence that Combs would remain incarcerated and thus be less likely to release the videotapes or otherwise harm him.

## DAMAGES

67.    During the times Plaintiff interacted with Combs, he experienced recurring and severe health issues, particularly bouts of pneumonia that often arose shortly after these

encounters. Plaintiff frequently coughed up blood following these incidents, and on one occasion, a near-fatal bout of pneumonia required emergency hospitalization due to excessive bleeding into Plaintiff's lungs which led to respiratory failure.

68.     Plaintiff believes that these health issues were a result of being continuously drugged by Combs. Since ending contact with Combs, Plaintiff has had no further episodes of pneumonia or coughing up blood.

69.     Since his traumatic experiences with Combs, Plaintiff has been in a constant state of survival mode, tormented by the fear that Combs will follow through on his threats to harm him or release compromising videos. This dread, coupled with severe emotional and psychological trauma, has left Plaintiff plagued by paranoia and haunted by painful memories he had tried to suppress, which bring overwhelming feelings of shame and embarrassment.

70.     This ordeal has derailed Plaintiff's musical career prospects, extinguishing his passion for music—something he once loved but has not returned to since.

71.     Plaintiff has sought counseling to address chronic depression and substance abuse issues. His home is now equipped with security cameras, and he remains armed, with his security system active at all times. These lasting precautions underscore the profound and enduring impact of Combs' abusive, threatening actions, forcing Plaintiff to live each day in a state of vigilance and fear.

72.     As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer, emotional pain, suffering, inconvenience, loss of enjoyment of life, depression, anxiety disorder, paranoia, and other non-pecuniary losses entitling him to an award of compensatory and punitive damages, injunctive and declaratory relief, attorney's fees and costs, and other remedies as this Court may deem appropriate.

**FIRST CAUSE OF ACTION**
**Violation of the Victims of Gender-Motivated Violence Act, N.Y.C. Admin.**
**Code §§ 10-1101, *et seq*. ("VGMVPL")**
***Against All Defendants***

73.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

74.    The above-described conduct of Combs occurring in New York City, including but not limited to Combs' physical and sexual assaults of Plaintiff constitutes a "crime of violence" against Plaintiff under Section 10-1103 of the New York City Victims of Gender-Motivated Violence Act ("VGMVPL"). Combs' conduct, including the touching of Plaintiff's penis during the physical and sexual assaults, is a "crime of violence motivated by gender" under Section 10-1103 of the VGMVPL. The term "crime of violence" means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution or conviction. The term "crime of violence motivated by gender" means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.

75.    The above-described conduct of Combs, including, but not limited to, sexual assault, physical assault, threats, and false imprisonment, all conduct proscribed by New York Penal Law ("PL") 110/120.00(1), PL 120.15, PL 120.14(2), PL 130.35(3), PL 130.52, PL 130.65, PL 130.90, PL 135.05, PL 135.10, constitutes a "crime of violence" against Plaintiff as defined in Section 10-1103 of the VGMVPL and is a "crime of violence motivated by gender" as defined in Section 10-1103 of the VGMVPL.

76.    By facilitating its owner's behavior, the Bad Boy Defendants have financially and otherwise benefited from these acts and omissions by keeping Combs satisfied.

77.    The Bad Boy Defendants enabled, condoned, had knowledge of, and failed to act to prevent or mitigate Combs' commission of the abovementioned crimes of violence motivated by gender and are therefore also liable under the VGMVPL.

78.    As a direct and proximate result of the above mentioned crimes of violence and gender-motivated violence, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress, entitling him to an award of compensatory and punitive damages, injunctive and declaratory relief, attorneys' fees and costs, and other remedies as this Court may deem appropriate, as set forth in Section 10-1104 of the VGMVPL.

79.    Pursuant to Section 10-1105(a) of the VGMVPL, this cause of action is timely because it is commenced within "two years and six months after September 1, 2022."

## SECOND CAUSE OF ACTION
### Forced Labor in Violation of 18 U.S.C. §§ 1589 and 1595
### *Against All Defendants*

80.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

81.    Defendants knowingly obtained labor from Plaintiff through threats of serious harm, physical restraint, and other means of coercion, in violation of 18 U.S.C. § 1589.

82.    Defendants knowingly benefited from the forced labor and the trafficking activities conducted by Combs.

83.    Under 18 U.S.C. § 1595, Plaintiff is entitled to bring a civil action against Defendants Combs and Bad Boy Records for their violation of 18 U.S.C. § 1589.

84.    As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

85.    Plaintiff seeks compensatory damages for the harm suffered as a result of Defendants' forced labor practices.

86.    Plaintiff also seeks punitive damages to deter such conduct by Defendants in the future, along with reasonable attorney's fees and costs.

87.    The Bad Boy Defendants knew of Combs' continuous death threats and coercion against Plaintiff. Combs' continuous death threats and coercion, and the Bad Boy Defendants' ratification of said death threats and coercion, prevented Plaintiff from asserting his rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

**THIRD CAUSE OF ACTION**
**Violation of New York Services for Victims of Human Trafficking, N.Y. Servs. Law**
**§ 483-bb(c)**
***Against All Defendants***

88.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

89.    Plaintiff is a victim of labor trafficking within the meaning of N.Y. Penal Law 135.35 and is therefore entitled to bring a civil action under N.Y. Soc. Serv. § 483-bb.

90.    Defendants' acts and omissions, taken separately and/or together, as outlined above, constitute a violation of N.Y. Soc. Serv. § 483-bb(c). Specifically, Defendants perpetrated labor trafficking of Plaintiff by inducing him to engage or continue to engage in labor activity by means of instilling a fear in him that, if he refused to comply, Combs would cause physical injury, serious physical injury, or death; engage in other conduct constituting a felony or unlawful imprisonment in the second degree; and/or expose a secret or publicize an asserted fact tending to subject Plaintiff to hatred, contempt, or ridicule, in violation of New York Penal Law 135.35. At all relevant times, the Bad Boy Defendants participated in and facilitated the obtainment of Plaintiff's labor induced by force, fraud, or coercion.

91.     As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

92.     The Bad Boy Defendants knew of Combs' continuous death threats and coercion against Plaintiff. Combs' continuous death threats and coercion, and the Bad Boy Defendants' ratification of said death threats and coercion, prevented Plaintiff from asserting his rights within the statutorily proscribed period. Under N.Y. Soc. Serv. § 483-bb (c) (iii), the running of the statute of limitations for this cause of action is tolled; Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

### FOURTH CAUSE OF ACTION
### Sex Trafficking under 18 U.S.C. § 1591, *et seq.*
### *Against All Defendants*

93.      Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

94.     Combs, one of the most prominent musical artists and producers in the industry, recruited and enticed Plaintiff by initiating a professional relationship and fraudulently promising to help advance Plaintiff's music career, even inviting him to work for the Bad Boy Defendants. These false promises and opportunities gave Plaintiff hope and a genuine expectation of career advancement and success in the music industry.

95.     Combs, through a pattern of coercive threats and displays of aggression and intimidation, caused Plaintiff to engage in commercial sex acts, as defined by 18 U.S.C. § 1591(e)(3). These acts were carried out to satisfy Combs' own sexual gratification and to exert control over Plaintiff.

96.     Combs used fraud and force to coerce and entice Plaintiff into commercial sex acts. Combs did so by making threats and false promises of career advancement in exchange for Plaintiff's acquiescence to Combs' sexual batteries and assaults.

97.     Combs acted with knowledge or in reckless disregard of the fact that Plaintiff was forced to engage in these acts through coercion, relying on Combs' representations and assurances that doing so would advance his music career.

98.     The Bad Boy Defendants have financially and otherwise benefited from these acts and omissions by keeping Combs, the volatile and explosive owner of the Bad Boy Defendants, satisfied, and the Bad Boy Defendants benefited from facilitating his behavior.

99.     As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

100.    The Bad Boy Defendants knew of Combs' continuous death threats and coercion against Plaintiff. Combs' continuous death threats and coercion, and the Bad Boy Defendants' ratification of said death threats and coercion, prevented Plaintiff from asserting his rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

### FIFTH CAUSE OF ACTION
### Violation of the California Trafficking Victims Protection Act,
### Cal. Civil Code § 52.5
### *Against Defendants Sean Combs & Bad Boy Records*

101.    Plaintiff repeats and realleges each and every allegation contained in all of the preceding paragraphs as if fully set forth herein.

102.    Plaintiff is a victim of trafficking within the meaning of Cal. Penal Code § 236.1 and is therefore entitled to bring a civil action under Cal. Civil Code § 52.5.

103.    The Defendants' acts and omissions, taken separately and/or together, as outlined above, constitute a violation of Cal. Civ. Code § 52.5. Specifically, Defendant Sean Combs perpetrated human trafficking of Plaintiff by depriving or violating his personal liberty with the intent to obtain forced labor, and Defendant Bad Boy Records benefitted from Combs' venture

by holding Plaintiff captive to Combs' demands and desires. At all relevant times, Defendants participated in and facilitated the obtainment of Plaintiff's labor induced by force, fraud, or coercion.

104. Defendant Bad Boy Records has benefited from these acts and omissions by keeping Combs, the volatile and explosive owner of Bad Boy Records, satisfied, and benefited from facilitating his behavior.

105. As a direct and proximate result of Defendants' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

106. Pursuant to Cal. Civ. Code § 52.5(d)(3), Defendants' continuous death threats and coercion induced Plaintiff to delay the filing of this action and asserting his rights within the statutorily proscribed period. Defendant should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

107. Pursuant to Cal. Civ. Code § 52.5(d)(4), the suspension of the statute of limitations due to estoppel applies to all other related claims arising out of the trafficking situation, including but not limited to, Violation of The Victims of Gender-Motivated Violence Act, N.Y.C. Admin. Code §§ 10-1101, *et seq*., Forced Labor in Violation of 18 U.S.C. §§ 1589 and 1595, New York Services for Victims of Human Trafficking, N.Y. Servs. Law § 483-bb(c), Sex Trafficking under 18 U.S.C. § 1591, Sexual Battery under California Civil Code § 1708.5, Assault Under New York Law, Battery/Sexual Battery Under New York Law, False Imprisonment under New York Law, False Imprisonment under California Law, Intentional Infliction of Emotional Distress, Invasion of Privacy under California Law, Intrusion upon Seclusion under New York Law, Breach of Contract under California and New York Law, Unjust Enrichment/Quantum Meruit under California and New York Law.

108.     Pursuant to Cal. Civ. Code § 52.5(e), the running of the statute of limitations may be suspended as Plaintiff could not have reasonably discovered the cause of action due to circumstances resulting from the trafficking, including psychological trauma.

109.     The Bad Boy Defendants knew of Combs' continuous death threats and coercion against Plaintiff. Combs' continuous death threats and coercion, and the Bad Boy Defendants' ratification of said death threats and coercion, prevented Plaintiff from asserting his rights within the statutorily proscribed period. Defendants should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

### SIXTH CAUSE OF ACTION
### Sexual Battery under California Law
### *Against Defendant Sean Combs*

110.     Plaintiff repeats and realleges each and every allegation contained in all of the preceding paragraphs as if fully set forth herein.

111.     Combs engaged in non-consensual sexual acts with Plaintiff, including forcibly grabbing Plaintiff's penis and raping Plaintiff by engaging in non-consensual anal penetration. Combs' actions amount to a violation of California Civil Code § 1708.5, which establishes liability for sexual battery when a defendant intentionally causes a harmful or offensive contact with an intimate part of another without consent.

112.      As a direct and proximate result of Combs' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

113.     The above-described conduct by Combs was willful, wanton, and malicious. At all relevant times, Combs acted with conscious disregard of Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury, and/or pain and

suffering to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive and exemplary damages from Combs according to proof at trial.

114.    Moreover, Combs' continuous death threats and coercion prevented Plaintiff from asserting his rights within the statutorily proscribed period. Combs should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

<u>**SEVENTH CAUSE OF ACTION**</u>
<u>**Assault Under New York Law**</u>
<u>***Against Defendant Sean Combs***</u>

115.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

116.    In engaging in the conduct described above, Combs committed an assault against Plaintiff because he intentionally placed Plaintiff in reasonable apprehension of imminent harmful or offensive contact, and Plaintiff reasonably feared immediate bodily harm as a result of Combs' conduct. Combs' actions amount to violations under N.Y. Penal Law §§ 110/120.00(1) and 120.15.

117.    As a direct and proximate result of Combs actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

118.    The conduct of Combs described above was willful, wanton, and malicious. At all relevant times, Combs acted with conscious disregard of Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury, and/or pain and suffering to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive and exemplary damages from Combs according to proof at trial.

119.     Combs' continuous death threats and coercion prevented Plaintiff from asserting his rights within the statutorily proscribed period. Combs should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

### EIGHTH CAUSE OF ACTION
### Battery/Sexual Battery Under New York Law
### *Against Defendant Sean Combs*

120.     Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

121.     In engaging in the conduct described above, Combs committed a battery against Plaintiff because he intentionally engaged in unlawful, intentional, and offensive touching or application of force to Plaintiff's person. Combs repeatedly and without consent touched Plaintiff's body including his penis and buttocks. Combs' actions amount to violations under New York Penal Law §§ 130.52, 130.55, 130.65, 130.35, and 130.90.

122.     As a direct and proximate result of Combs' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

123.     The above-described conduct by Combs was willful, wanton, and malicious. At all relevant times, Combs acted with conscious disregard of Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury, and/or pain and suffering to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive and exemplary damages from Combs according to proof at trial.

124.     Combs' continuous death threats and coercion prevented Plaintiff from asserting his rights within the statutorily proscribed period. Combs should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

## NINTH CAUSE OF ACTION
### Sexual Battery Under Nevada Law
### *Against Defendant Sean Combs*

125.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

126.    The above-described conduct of Combs, including but not limited to Combs' repeatedly touching Plaintiff's penis without Plaintiff's consent, occurred in Las Vegas, Nevada, among other locations.

127.    Combs' actions constitute sexual battery under the laws of Nevada, as they involved intentional and unlawful physical contact of a sexual nature without Plaintiff's consent.

128.    The claim for sexual battery based on Combs' actions in Nevada is timely under Nevada Senate Bill 129 (SB129), which, effective May 31, 2023, removed the statute of limitations for civil actions arising from sexual assault or sexual battery. SB129 applies retroactively to any claims that were previously time-barred by the statute of limitations.

129.    As a direct and proximate result of the above-mentioned sexual batteries, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress, entitling him to an award of compensatory and punitive damages, injunctive and declaratory relief, attorneys' fees and costs, and other remedies as this Court may deem appropriate.

## TENTH CAUSE OF ACTION
### False Imprisonment under New York Law
### *Against Defendant Sean Combs*

130.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

131.    Combs falsely imprisoned Plaintiff in New York as alleged in this Complaint, by suddenly and without provocation, willfully and maliciously falsely imprisoning Plaintiff against his will in Combs' hotel rooms for hours at a time.

23

132.    Following the false imprisonment by Combs, he issued a clear retaliatory threat of future injury and bodily harm to Plaintiff, underscoring the intent to both control and to silence Plaintiff as to Combs' crimes.

133.    As a direct and proximate result of Combs' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

134.    Combs' continuous death threats and coercion prevented Plaintiff from asserting his rights. Combs should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

## ELEVENTH CAUSE OF ACTION
### False Imprisonment under California Law
#### Against Defendant Sean Combs

135.    Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

136.    Combs falsely imprisoned Plaintiff in California as alleged in this Complaint, by demanding, under false pretenses, that Plaintiff appear for hire, and subsequently, willfully and maliciously falsely imprisoning and threatening Plaintiff in Combs' home and hotel rooms against Plaintiff's will for several days at a time.

137.    Following Plaintiff's false imprisonment in Combs' home and hotel rooms, Combs issued a clear retaliatory threat of future injury and bodily harm to Plaintiff, underscoring the intent to both control and to silence Plaintiff as to Combs' crimes.

138.    As a direct and proximate result of Combs' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

139.    Combs' continuous death threats and coercion prevented Plaintiff from asserting his rights. Combs should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

## TWELFTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress under California and New York Law
### *Against Defendant Sean Combs*

140.    Plaintiff repeats and re-alleges each and every allegation set forth in all of the preceding paragraphs as if fully set forth herein.

141.    Combs' conduct, which included rape, sexual assault, death threats, false imprisonment, covert drugging, covert surveillance, threats to disseminate the sex tapes resulting from the covert surveillance, and nonpayment or underpayments, was extreme and outrageous, going beyond all possible bounds of decency and utterly intolerable in a civilized community.

142.    Combs' conduct was intentional and reckless and Combs knew or should have known that such conduct would cause Plaintiff severe emotional distress.

143.    As a direct and proximate result of Combs' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

144.    Combs' continuous death threats and coercion prevented Plaintiff from asserting his rights within the statutorily proscribed period. Combs should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

## THIRTEENTH CAUSE OF ACTION
### Invasion of Privacy under California Law
### *Against Defendant Sean Combs*

145.    Plaintiff repeats and re-alleges each and every allegation set forth in all of the preceding paragraphs as if fully set forth herein.

146.    Combs knowingly and intentionally invaded Plaintiff's privacy by using video recording devices to covertly capture Plaintiff engaged in intimate and private sexual activities

within the privacy of Combs' home and hotel rooms. Such conduct by Combs amounts to a violation of California Civil Code section 1708.8(a).

147.    Plaintiff had a reasonable expectation of privacy in the location where the recordings took place, as it was a private setting and no consent was given to Combs to record intimate activities.

148.    Combs' conduct constitutes an invasion of privacy under California Civil Code section 1708.8(a) because it was committed without Plaintiff's knowledge or authorization and involved the use of visual devices designed to capture visual images in a private setting.

149.    Combs' conduct was intentional and reckless and he knew or should have known that such conduct would cause Plaintiff severe emotional distress.

150.    As a direct and proximate result of Combs' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

151.    Combs' continuous death threats and coercion prevented Plaintiff from asserting his rights within the statutorily proscribed period. Combs should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

**FOURTEENTH CAUSE OF ACTION**
**Intrusion upon Seclusion under New York Law**
***Against Defendant Sean Combs***

152.    Plaintiff repeats and re-alleges each and every allegation set forth in all of the preceding paragraphs as if fully set forth herein.

153.    Combs intentionally intruded upon Plaintiff's privacy by secretly video recording Plaintiff engaging in explicit sexual acts in Combs' private residence and in hotel rooms without Plaintiff's knowledge or consent.

154.    Plaintiff had a reasonable expectation of privacy in these settings, as they were locations intended for personal and intimate activities shielded from public view.

155.     Combs' actions were intentional, highly offensive, and constituted a gross violation of Plaintiff's privacy rights. Combs knowingly and surreptitiously recorded these private moments for his own purposes, demonstrating a complete disregard for Plaintiff's right to privacy.

156.     Combs' conduct was intentional and reckless and Combs knew or should have known that such conduct would cause Plaintiff severe emotional distress.

157.     As a direct and proximate result of Combs' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

158.     Combs' continuous death threats and coercion prevented Plaintiff from asserting his rights within the statutorily proscribed period. Combs should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

## FIFTEENTH CAUSE OF ACTION
### Breach of Contract under California and New York Law
#### *Against Defendant Sean Combs*

159.     Plaintiff repeats and re-alleges each and every allegation set forth in all of the preceding paragraphs as if fully set forth herein.

160.     Plaintiff entered into agreements with Combs in which Plaintiff agreed to provide entertainment services for Combs at a specified hourly rate. In return, Combs agreed to compensate Plaintiff for all hours worked at the agreed-upon rate.

161.     Plaintiff fulfilled his obligations under the agreement by arriving at the designated location and performing the agreed-upon services.

162.     Combs often breached the agreement by refusing to compensate Plaintiff for the full number of hours he worked.

163.    As a direct and proximate result of Combs' actions, Plaintiff has sustained and will continue to sustain monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

164.    Combs' continuous death threats and coercion prevented Plaintiff from asserting his rights within the statutorily proscribed period. Combs should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

### SIXTEENTH CAUSE OF ACTION
### Quantum Meruit/Unjust Enrichment under California and New York Law
### *Against Defendant Sean Combs*

165.    Plaintiff repeats and re-alleges each and every allegation set forth in all of the preceding paragraphs as if fully set forth herein.

166.    From approximately 2007 to 2012, on numerous occasions, Plaintiff provided entertainment services to Combs well beyond the originally agreed-upon hours, with the expectation of being compensated for all hours worked.

167.    Combs knowingly accepted the benefit of Plaintiff's extended performance and received value from Combs' services, including but not limited to Plaintiff's time, effort, and skill.

168.    It would be unjust to allow Combs to retain the benefit of Plaintiff's additional services without full payment, as Combs has been unjustly enriched at Plaintiff's expense.

169.    As a direct and proximate result of Combs' actions, Plaintiff has sustained and will continue to sustain, monetary damages and/or economic harm, physical injury, pain and suffering, and serious psychological and emotional distress.

170.    Plaintiff is entitled to recover the reasonable value of the services provided during the entire time worked, in an amount to be determined at trial.

171.    Combs' continuous death threats and coercion prevented Plaintiff from asserting his rights within the statutorily proscribed period. Combs should be estopped from asserting the statute of limitations as a defense due to the duress exerted upon Plaintiff.

## **PRAYER FOR RELIEF ON CLAIMS**

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendants herein and any other Defendants who may later be added to this action as follows:

1.    For a money judgment representing compensatory damages, including but not limited to:  consequential damages, lost wages, non-economic damages, and all other sums of money, together with interest on these amounts, according to proof;

2.    For a money judgment for mental pain and anguish and severe emotional distress, according to proof;

3.    For restitution;

4.    For disgorgement of all sums unjustly obtained from Plaintiff or inured to the benefit of Defendants;

5.    For civil penalties;

6.    For punitive and exemplary damages according to proof;

7.    For attorneys' fees and costs;

8.    For prejudgment and post-judgement interest; and

9.    For such other and further relief as the Court may deem just and proper.

## VII.   JURY DEMAND

Plaintiff demands a trial by jury on all issues triable of right by jury.

DATED: February 4, 2025

Respectfully submitted,

**THE BLOOM FIRM**

By: _Lisa Bloom_

Lisa Bloom
Arick Fudali
Yasmine Meyer
Alan Goldstein
Devin Meepos
Attorneys for Plaintiff, JOHN DOE

30

Exhibit F (iv): Jane Doe v. Sean Combs; 1-24-cv-09852

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

Jane Doe,

                *Plaintiff*,                    No. _____

           v.

SEAN COMBS, DADDY'S HOUSE RECORDINGS        **COMPLAINT AND**
INC., CE OPCO, LLC d/b/a COMBS GLOBAL        **DEMAND FOR**
f/k/a COMBS ENTERPRISES LLC,                    **JURY TRIAL**
BAD BOY ENTERTAINMENT HOLDINGS, INC.,
BAD BOY PRODUCTIONS HOLDINGS, INC.,
BAD BOY BOOKS HOLDINGS, INC., BAD BOY
RECORDS LLC, BAD BOY ENTERTAINMENT LLC,
BAD BOY PRODUCTIONS LLC,
ORGANIZATIONAL DOES 1-10, AND INDIVIDUAL
DOES 1-10

              *Defendants*.

-------------------------------------------------------X

        Plaintiff Jane Doe ("Plaintiff"), by and through her attorneys, The Buzbee Law

Firm, for her Complaint alleges as follows:

## <u>INTRODUCTION</u>

        1.     This case seeks compensatory and punitive damages for a violent sexual assault.

The conduct described herein is shockingly typical of how Defendant Sean Combs conducted

himself for many years. Many individuals and entities facilitated and conspired with this abhorrent

conduct. Sean Combs believed he was above the law. He is not.

        2.     For decades, Sean Combs (a/k/a "P. Diddy," a/k/a "Puff Daddy," a/k/a "Diddy,"

a/k/a "PD," and a/k/a "Love") (described herein as "Combs") abused, molested, raped, assaulted,

threatened and coerced men, women, minors and others for sexual gratification, to assert

dominance, and to conceal his abhorrent conduct. He accomplished these acts by and through a criminal enterprise built on his success as a rapper, record producer and record executive. Combs is one of the wealthiest musical artists in the world. Behind the façade of being a three-time Grammy Award winner, discovering and developing multiple famous musical artists, and ranking on Forbes' list of the highest-paid entertainers in the world, there existed something sinister – a dark underbelly of crime, sex trafficking, forced labor, kidnapping, bribery and prostitution. Combs is a menace to society, women and children. While his wealth has kept him above consequence for years, Combs now faces the awesome power of the American judicial system and ultimately a jury of his peers, who will be asked to punish him for the deplorable conduct described herein.

### *Combs' Businesses*

3.      Combs' business enterprise is central to the pervasive acts of sexual assault and abuse committed by him during the last decades. Combs operated his business, headquartered at various times in Manhattan and Los Angeles, under a variety of United States-based corporate entities, including Bad Boy Entertainment, Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment, LLC, Bad Boy Productions, LLC, Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC, Combs Enterprises and Combs Global (collectively, the "Combs Business"). Corporate entities in the Combs Business portfolio included record labels, a recording studio, an apparel line, an alcoholic spirits promoting business, a marketing agency, talent discovery, a television network and a media company.

4.      On the surface, each of these businesses served a legitimate purpose related to entertainment, music and other subjects. But in reality, Combs, by and through himself and his agents, employees and contractors, used these businesses to sexually assault, abuse, threaten and

coerce hundreds of individuals through sexual *quid pro quo* schemes, as well as to take advantage of individuals with impunity thinking the victims would never seek recourse. Combs and his agents, employees and contractors, through these Combs Businesses, would tell victims, "this is what it takes to be famous," "what are you willing to do to become a star?," and "perform this sexual act or else" to coerce the victim into performing a non-consensual sexual act for the gratification of Combs and his cohorts.

5. Members and associates of the Combs Business engaged in (and/or attempted to engage in), among other activities, sex trafficking, forced labor, interstate transportation for the purposes of prostitution, coercion and enticement to engage in prostitution, narcotics offenses, kidnapping, arson, bribery, and obstruction of justice.

6. The Combs Business constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of Combs.

*Combs' Pervasive History of Sexual Assault and Violence*

7. For years Combs and his businesses engaged in a persistent and pervasive pattern of abuse toward women, men, and minors. This abuse was, at times, verbal, emotional, physical and sexual. As part of his pattern of abuse, Combs manipulated both men and women to participate in highly-orchestrated performances of sexual activity with both commercial sex workers and unsuspecting partygoers. In some cases these were individuals who were contractors or vendors. In other cases, they were random individuals pulled from a hotel lobby, a show, or off the street. Combs ensured participation from these individuals by, among other things, obtaining and distributing narcotics to them with or without their knowledge, controlling their careers, leveraging his financial support and threatening to cut off the same, and using intimidation, violence, and illicit drugs.

8.      Combs, while celebrated for his business acumen and influence in the entertainment world, has often been described in a more troubling light as powerful, manipulative, and problematic. His aggressive tactics, both in business and personal dealings, have drawn criticism, with many viewing him as someone who leverages his power to intimidate and control. This darker side of Combs' persona has been underscored by the numerous lawsuits and allegations that have surfaced over the years. Despite his undeniable success, his rise to the top is marred by a reputation for being ruthless and manipulative, using his influence in ways that have left a trail of legal and personal controversies including but not limited to the following:

a.  Nightclub Shooting Incident (1999): Combs was embroiled in a high-profile case related to a nightclub shooting in New York, involving his then-girlfriend, Jennifer Lopez, and rapper Shyne. Combs was acquitted of all charges, though the case remains a significant legal event in his career.

b.  Multiple Assault Allegations: Combs has faced several lawsuits related to alleged physical assaults, many of which have been settled out of court.

c.  Business Disputes: Combs has been involved in various business-related legal conflicts, particularly surrounding his Sean John clothing line and other ventures. These disputes often involved contractual disagreements and trademark claims.

d.  Claims by Cassie Ventura: Combs' former girlfriend, Casandra "Cassie" Ventura, filed a lawsuit accusing him of years of physical, emotional, and sexual abuse during their relationship. Cassie alleged repeated instances of assault, coerced sexual acts, and drug use, all contributing to an environment of fear and manipulation.

9.     Combs particularly fancied the use of the popular date-rape drug Rohypnol, or GHB, to commit heinous non-consensual acts of sexual violence and rape onto countless victims. Combs often would secretly use the drug in an alcoholic beverage served at his parties, typically champagne or "lemon drops." Partygoers were forced to consume the alcoholic beverage, containing GHB, either prior to entering or while at Combs' party. There are also allegations of Combs dousing victims in lotions or similar body oils, also laced with GHB, so that the drug would be absorbed through the victim's skin and make it easier to assault him or her.

10.     Combs' recurrent and pervasive physical abuse took place for multiple decades. His tendencies of violence and sexual assault were no doubt well known amongst his colleagues, employees, agents and businesses. On numerous occasions from at least on or about 1996 and continuing for years, Combs assaulted women and men by striking, punching, dragging, throwing objects at, and kicking them. Combs also assaulted children both physically and sexually.

11.     In 1996, Combs was found guilty of criminal mischief for threatening a photographer from the New York *Post* with a gun. In 1999, he was arrested and charged with second-degree assault and criminal mischief in connection with assaulting a record executive. Combs was arrested again the same year for his involvement in a shooting at a club in New York. Another instance of violence occurred at a Los Angeles hotel in or about March 2016, which was captured on video and later publicly reported, where Combs kicked, dragged and threw a vase at a woman as she was attempting to leave his hotel room. When hotel security staff intervened, Combs attempted to bribe the staff member to ensure silence.

12.     In the past year, numerous civil complaints have been filed by plaintiffs who allege that they had been sexually abused by Combs between 1991 and 2009. In November 2023, three lawsuits were filed against Combs under the New York Adult Survivors Act. Cassie Ventura, an

artist signed to Bad Boy, sued Combs in New York for rape and physical abuse. She alleged Combs facilitated these acts by and through supplying Ms. Ventura with copious amounts of drugs and urging her to take them, beginning in 2006.

13.     Joi Dickerson-Neal also sued Combs in New York, alleging Combs drugged her, sexually assaulted her and secretly recorded the assault in 1991.

14.     Liza Gardner, whom Combs met at an event hosted by a record label affiliated with Bad Boy, sued him for allegedly raping her and a friend in 1990 or 1991 when she was only 16.

15.     In December 2023, an anonymous Plaintiff sued Combs in New York for allegedly drugging and gang-raping her in 2003 when she was only seventeen years old. This victim alleged that employees and business associates of Combs, through their affiliation with the Bad Boy enterprise, lured her to Combs' home where Combs then raped her.

16.     In February 2024, Rodney "Lil Rod" Jones, one of Combs' former producers, sued Combs for allegedly forcing him to engage in unwanted sex acts and sex trafficking, among other allegations. Mr. Jones alleged that Combs regularly drugged others, including minors, by giving them drugs laced with ecstasy (MDMA) and other date rape drugs. Mr. Jones alleged that Combs in fact drugged him as well in order to commit acts of sexual assault.

17.     In May 2024, former model Crystal McKinney and April Lampros sued Combs. Ms. McKinney alleged that Combs drugged and sexually assaulted her at his recording studio in 2003. Mimicking what has now become a known pattern, Combs promised Ms. McKinney to help her with her modeling career in exchange for engaging in sexual conduct with him. Ms. Lampros, an intern at Arista Records, which was an owner of Bad Boy, also sued Combs in May 2024 in New York County Supreme Court for raping her on multiple occasions, secretly filming these acts,

and showing the recordings to multiple people. Ms. Lampros also alleges that Combs ordered her to take drugs on one occasion before he raped her.

18.    In July 2024, former adult film star Adria English – who was employed by Combs as an entertainer at his infamous White Parties that brought together the biggest names in the music and entertainment industries – sued Combs in the Southern District of New York for sex trafficking, alleging that he required her to consume drinks laced with ecstasy and secretly recorded the sexual acts.

19.    In September 2024, singer and songwriter Dawn Angelique Richard also sued Combs. Richard was employed by Combs as part of the girl group Danity Kane, formed by Combs, and later as a key member of Combs' band Diddy – Dirty Money. She sued Combs in New York for sexual assault, false imprisonment, and for subjecting her to hostile working conditions due to her gender, including degrading comments and threats. Ms. Richard has alleged that Combs regularly supplied others including minors with copious amounts of drugs and alcohol, and subjected them to sexual acts while they were sedated and/or unconscious due to the drugs and alcohol.

20.    In September 2024, a federal grand jury in Manhattan indicted Combs and charged him with sex trafficking, racketeering and the "creation of a criminal enterprise in which he abused, threatened and coerced women and others around him to fulfill his sexual desires, protect his reputation and conceal his conduct." *See United States of America v. Sean Combs, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love,"* Index No. 24 Crim. 542, Indictment (SDNY), at ¶ 1.  The indictment explains that Combs' abuse of women and minors was enabled and conspired with by "the employees, resources and influence of the multi-faceted business empire that he led and controlled – creating a criminal enterprise whose members and

Case 2:24-cv-09862-JLR    Document 63-6    Filed 12/20/24    Page 3 of 13
PageID: 1616
Case 1:24-cv-09862-JLR    Document 63-6    Filed 12/20/24    Page 3 of 113 of 478

associates engaged in, and attempted to engage in, among other crimes, sex-trafficking, forced labor, kidnapping, arson, bribery and obstruction of justice."

21.    Combs' long history of violence unequivocally establishes that his actions are motivated by gender – both men and women. Combs has a profound contempt for women and a desire to dominate both minors and other men. His conduct shows a longstanding practice of denigrating, defeating and attempting to humiliate men, women and children. His practices and desires are different for men, women and children. But his actions are unequivocally motivated by the victims' particular gender and age.

22.    Plaintiff's allegations herein substantially mirror Combs' prior conduct as established through criminal indictments and other lawsuits. Through this case, Plaintiff seeks a full measure of justice from a man who thought his power, money and influence rendered him untouchable. Plaintiff joins many other victims by filing this Complaint in hopes their common voice makes it impossible for Combs to assault another person ever again.

## PARTIES

23.    Plaintiff Jane Doe is a female who resides in Louisiana.

24.    Defendant Sean Combs is a male who, on information and belief, resides in New York City, and who is otherwise currently incarcerated in the Metropolitan Detention Center in Brooklyn. On information and belief, at all relevant times Combs owned and/or controlled Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, Bad Boy Productions LLC, (collectively "Bad Boy"), Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC (all together, the "Combs Corporations"). The facts of Combs' ownership and titles at the Combs Corporations enabled and conspired with him to

commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the sexual assault.

25.     Defendant Daddy's House Recordings, Inc. ("Daddy's House") is a domestic business corporation that is incorporated in New York and on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019. At the time of the events alleged herein, Daddy's House was a world-class recording studio owned by Combs located at 321 W 44th Street, Suite 201, New York, New York 10036. On information and belief, at all relevant times, Bad Boy and Combs together owned and operated Daddy's House. On information and belief, the Bad Boy recording studio was located on the premises of Daddy's House. Combs used the Daddy's House brand, stature and their ownership and titles at Daddy's House to commit the unlawful sexual violence against Plaintiff described herein.

26.     Defendant CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC ("Combs Global") is a limited liability company incorporated in Delaware that has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. On information and belief, all members of Combs Global are citizens of Delaware, New York, and/or California. On information and belief, Combs Global is an alter ego for Combs and/or a successor in interest to Combs' other corporations and/or was established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. Combs Global currently owns, controls, and/or oversees Bad Boy and Combs' other business ventures in the music, fashion, fragrance, beverage, marketing, film, television, and media industries.

27. As part of his renowned Bad Boy record label and brand, Combs has established several corporate entities under the "Bad Boy" name over the past few decades, including but not limited to Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, and Bad Boy Productions LLC (together, "Bad Boy"). On information and belief, all Bad Boy corporate entities are alter egos for Combs, are controlled and/or directed by Combs, and/or were established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. On information and belief, all active Bad Boy entities are now owned and/or controlled by Combs and/or by Combs Global. Combs used the Bad Boy premises/recording studio and their ownership and titles at Bad Boy to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the sexual assault.

     a. Defendant Bad Boy Entertainment Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Entertainment Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

     b. Defendant Bad Boy Productions Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West

Hollywood, California 90069. Bad Boy Productions Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

c. Defendant Bad Boy Books Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 1440 Broadway, 3rd Floor, New York, New York 10018. Bad Boy Books Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. The CEO listed on public filings is Eddie Norward Jr., with a listed address of 1710 Broadway, New York, New York 10019, the same address listed for Sean Combs in public filings for Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., and Daddy's House Recordings, Inc.

d. Defendant Bad Boy Records LLC is a Delaware limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Records LLC are citizens of Delaware, New York, and/or California. On information and belief, Bad Boy Records LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Records LLC is now owned and/or controlled by Combs and/or by Combs Global.

Case 2:23-cv-20408-JRA    Document 63-6    Filed 12/20/24    Page 12 of 179
Case 1:24-cv-22990-RAR    Document 65-6    Filed 12/20/24    Page 117 of 478
PageID: 1620

e.  Defendant Bad Boy Entertainment LLC is a New York limited liability
company that on information and belief is headquartered in New York and/or
California. On information and belief, all members of Bad Boy Entertainment
LLC are citizens of New York and/or California. Bad Boy Entertainment LLC
is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy
Defendants that comprise the Bad Boy enterprise founded and owned by
Combs. On information and belief, Bad Boy Entertainment LLC is now owned
and/or controlled by Bad Boy Entertainment Holdings, Inc. and/or by Combs,
and/or by Combs Global.

f.  Defendant Bad Boy Productions LLC is a New York limited liability company
that on information and belief is headquartered in New York and/or California.
On information and belief, all members of Bad Boy Productions LLC are
citizens of New York and/or California. Bad Boy Productions LLC is part of
the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy
Defendants that comprise the Bad Boy enterprise founded and owned by
Combs. On information and belief, Bad Boy Productions LLC is now owned
and/or controlled by Combs and/or by Combs Global.

28.  Defendants Organizational Does 1-10 are currently unknown entities who were
owned by and/or employed Defendant Combs and enabled and conspired with the commission of
the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to
amend the Complaint to add these entities by name.

29.  Defendants Individual Does 1-10 are currently unknown celebrities and/or persons
of interest who enabled and/or conspired with the commission of the conduct

complained of herein. As the parties engage in discovery, Plaintiff retains the right

to amend the Complaint to add these individuals by name.

30.     Each of the Combs Corporations (a) aided and abetted Combs in committing the

unlawful sexual violence against Plaintiff described herein, (b) are alter egos for Combs,

completely dominated by him and used for his personal interests and to engage in wrongdoing

which harmed Plaintiff and others, and/or (c) serve or have served as vehicles for Combs to move,

dispose of, and/or insulate his assets, including in connection with his criminal activities and to

avoid compensating the victims of his many crimes, including Plaintiff.

31.     Plaintiff reserves the right to add as defendants any individuals, including but not

limited to celebrities and business entities.

## JURISDICTION AND VENUE

32.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because

this case is between citizens of different states, and the amount in controversy exceeds $75,000.

33.     This Court has specific personal jurisdiction over Defendants because the acts

giving rise to Plaintiff's claims took place in New York State, and because several of the

Defendants are domiciled in New York State and/or regularly transact business in New York State.

34.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a

substantial part of the events or omissions giving rise to the claims occurred in this District,

including the violent assault of Plaintiff.

## JURY DEMAND

35.     Plaintiff hereby demands a trial by jury on her claims in this action.

## FACTUAL ALLEGATIONS

36. Plaintiff and her female friend visited New York City in December of 1991 to spend Christmas with two of her friends who lived in the city. After the holiday, Plaintiff stayed in the city to attend an event she was invited to by another acquaintance of hers, a rapper who was prominent in the industry at the time.

37. The event was a charity basketball game occurring at City College in New York City on December 28, 1991. Plaintiff and her female friend were dropped off at the event early so that they could get in to see the rapper who invited her. Plaintiff recalls the crowd outside being very large, and growing unruly. But once she spoke to security she and her friend were let in ahead of the crowd.

38. Once inside, Plaintiff watched security attempt to contact her rapper friend via radio, but was unable to. Plaintiff recalled him telling her to ask for his co-sponsor of the event if no one could find him when she got there. That co-sponsor was an up and coming producer by the name of "Puffy" (Combs).

39. Plaintiff asked to be directed to Puffy, despite not knowing who that was. She and her friend were taken to an office at the back of a locker room, where Combs had a makeshift dressing room set up. He introduced himself and his bodyguard, who then stood outside the door while they talked.

40. Plaintiff's friend told Combs how excited she was to be there and how much she wanted to meet some of the other celebrities there. After mentioning her favorite rapper, Combs said that he could take her to see him, and that Plaintiff should stay and keep waiting for Myers.

41. Plaintiff did so, but Myers did not arrive. Eventually, Combs returned with a plastic cup full of what he purported to be Coca-Cola. Plaintiff drank some of it but did not finish it as she did not like the taste.

42.    Plaintiff began to feel woozy and attempted to leave to find her rapper friend on her own, but Combs blocked her exit. He told her she needed to stay and that is when she noticed he was touching himself in a suggestive manner. He began to fondle Plaintiff and overpowered her when she struggled. Combs removed her underwear and began molesting her before climbing on top of her and penetrating her.

43.    Shortly after the assault began. Combs was called to the door by the bodyguard who was standing watch on the other side of it. Combs came back and told Plaintiff he had to go deal with something. Plaintiff told Combs what he did was not right and she needed to tell her rapper friend because she was there to see him and did not want him to think that she had sex with Combs willingly.  Combs told her that she should not do that because "people can come up missing," and that he would never know.

44.    Plaintiff waited in the room for a short period to gather herself and make sure Combs was not returning, then took the opportunity to leave. The scene outside was chaotic. There were people packed into the building and running in every direction. Plaintiff spent about half an hour looking for her friend before finding an exit.

45.    Plaintiff eventually found her friend and the two of them made it to a phone to call for a ride home.

### FIRST CAUSE OF ACTION
#### (Violation of New York City Victims of Gender-Motivated Violence Protection Act)
#### (All Defendants)

46.    Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

47.   By forcing sexual contact onto Plaintiff, Defendant Combs committed a "crime of violence motivated by gender" under the Victims of Gender-Motivated Violence Protection Act ("VGMVPA") as defined in New York City Administrative Code § 10-1103.

48.   The requirement that the crime of violence be committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender is satisfied because Defendant Combs forced Plaintiff to engage in a sexual interaction without consent.

49.   The Combs Business enabled and conspired with Combs to commit the crime of violence motivated by gender because Combs sexually assaulted Plaintiff at a party related to or referencing Combs Business. On information and belief, Combs Businesses routinely committed sexual assault and gender-motivated violence, as detailed in other civil lawsuits, to further the business purpose of Combs' enterprise. Given Combs' long-standing pattern and practice of committing sexual violence against young men, the Combs Business had and/or should have had knowledge of Combs using such parties and venues for this unlawful conduct, and did nothing to stop it.

50.   The Combs Business enabled and conspired with Combs to commit the crime of violence motivated by gender by failing to, among other things, protect Plaintiff from a known danger and/or have sufficient policies and procedures in place to prevent sexual assault and/or train their employees on identifying and preventing sexual assault. Given Combs' long-standing pattern and practice of committing sexual violence against young men, including on premises owned and/or operated by Defendants, the Combs Corporations had and/or should have had knowledge that Combs was a danger to Plaintiff, and did nothing to stop Combs.

51.   The Combs Business enabled and conspired with Combs to commit the crime of violence motivated by gender by failing to properly supervise. The Combs Business had

knowledge and/or should have had knowledge of Combs' widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants, and did nothing to stop it.

52.     The Combs Corporations further enabled and conspired with Combs to commit the crime of violence motivated by gender by actively placing, maintaining, and/or employing Combs in positions of power and authority, despite the fact that they knew and/or should have known that Combs had a widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants. Combs used his titles and authority conferred by the Combs Business, including as CEO, Founder, and Chairman to facilitate and perpetuate the violent assault on Plaintiff, and to intimidate and force Plaintiff to keep quiet in subsequent years.

53.     On information and belief, Plaintiff alleges that Defendant Organizational Does 1 through 10, inclusive, are other parties not yet identified who have enabled and conspired with Combs to commit the crime of violence motivated by gender, in the ways articulated above and/or in other ways.

54.     As a result of Defendants' actions, Plaintiff suffered damages in an amount to be determined at trial and pursuant to the fee-shifting provision of the statute.

55.     This legal action has been commenced within the statutory timeframe provided by the two-year look-back window for VGMVPA claims. *See* New York City Administrative Code § 10-1105.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

a. Awarding compensatory damages for all physical injuries, emotional distress, psychological harm, anxiety, humiliation, physical and emotional pain and suffering, family and social disruption, and other harm, in an amount to be determined at trial;

b. Awarding punitive damages in an amount to be determined at trial;

c. Awarding attorneys' fees and costs pursuant to any applicable statute or law;

d. Awarding pre- and post-judgment interest on all such damages, fees, and/or costs;

e. Attaching any and all of Defendants' real property and other assets located in the State of New York pursuant to Federal Rule of Civil Procedure 64; and

f. Awarding such other and further relief as this Court may deem just and proper.

Dated:  DECEMBER 20, 2024

Respectfully submitted,

**THE BUZBEE LAW FIRM**

By: */s/ Anthony G. Buzbee*
Anthony G. Buzbee
Texas Bar No. 24001820
tbuzbee@txattorneys.com
Christopher J. Leavitt
Texas Bar No. 24053318
cleavitt@txattorneys.com
Ryan S. Pigg
Texas Bar No. 24088227
rpigg@txattorneys.com
David C. Fortney
Texas Bar No. 24068740
dfortney@txattorneys.com
Thomas Colby Holler
Texas Bar No. 24126898
choller@txattorneys.com

Lionel Sims III
Texas Bar No. 24107465
lsims@txattorneys.com
Crystal Del Toro
Texas Bar No. 24090070
cdeltoro@txattorneys.com
J.P. Morgan Chase Tower
600 Travis, Suite 7500
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

*Attorneys for Plaintiff Jane Doe*

-   AND  -

**AVA LAW GROUP**
Andrew Van Arsdale
CA Bar No. 323370
andrew.vanarsdale@avalaw.com
3667 Voltaire Street, Ste. 101
San Diego, CA 92106
Telephone: (800) 777-4141
Facsimile: (619) 222-3667

-   AND  -

**CURIS LAW, PLLC**
Antigone Curis
By: */s/ Antigone Curis*
antigone@curislaw.com
52 Duane Street, 7th Floor
New York, New York 10007
Phone: (646) 335-7220
Facsimile: (315) 660-2610

Exhibit F (v): John Doe v. Sean Combs; 1-24-cv-08852

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

John Doe,

           *Plaintiff*,                              No. 1:24-cv-8852

        v.

SEAN COMBS, DADDY'S HOUSE RECORDINGS        **COMPLAINT AND**
INC., CE OPCO, LLC d/b/a COMBS GLOBAL          **DEMAND FOR**
f/k/a COMBS ENTERPRISES LLC,                 **JURY TRIAL**
BAD BOY ENTERTAINMENT HOLDINGS, INC.,
BAD BOY PRODUCTIONS HOLDINGS, INC.,
BAD BOY BOOKS HOLDINGS, INC., BAD BOY
RECORDS LLC, BAD BOY ENTERTAINMENT LLC,
BAD BOY PRODUCTIONS LLC,
ORGANIZATIONAL DOES 1-10, AND INDIVIDUAL
DOES 1-10

          *Defendants*.

-------------------------------------------------------X

        Plaintiff John Doe ("Plaintiff"), by and through his attorneys, The Buzbee Law

Firm, for his Complaint alleges as follows:

## **INTRODUCTION**

        1.     This case seeks compensatory and punitive damages for a violent sexual assault

that occurred at a residence in New York City. The conduct described herein is shockingly typical

of how Defendant Sean Combs conducted himself for many years. Many individuals and entities

facilitated and conspired with this abhorrent conduct. Sean Combs believed he was above the law.

He is not.

        2.     For decades, Sean Combs (a/k/a "P. Diddy," a/k/a "Puff Daddy," a/k/a "Diddy,"

a/k/a "PD," and a/k/a "Love") (described herein as "Combs") abused, molested, raped, assaulted,

threatened and coerced men, women, minors and others for sexual gratification, to assert dominance, and to conceal his abhorrent conduct. He accomplished these acts by and through a criminal enterprise built on his success as a rapper, record producer and record executive. Combs is one of the wealthiest musical artists in the world. Behind the façade of being a three-time Grammy Award winner, discovering and developing multiple famous musical artists, and ranking on Forbes' list of the highest-paid entertainers in the world, there existed something sinister – a dark underbelly of crime, sex trafficking, forced labor, kidnapping, bribery and prostitution. Combs is a menace to society, women and children. While his wealth has kept him above consequence for years, Combs now faces the awesome power of the American judicial system and ultimately a jury of his peers, who will be asked to punish him for the deplorable conduct described herein.

*Combs' Businesses*

3.     Combs' business enterprise is central to the pervasive acts of sexual assault and abuse committed by him during the last decades. Combs operated his business, headquartered at various times in Manhattan and Los Angeles, under a variety of United States-based corporate entities, including Bad Boy Entertainment, Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment, LLC, Bad Boy Productions, LLC, Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC, Combs Enterprises and Combs Global (collectively, the "Combs Business"). Corporate entities in the Combs Business portfolio included record labels, a recording studio, an apparel line, an alcoholic spirits promoting business, a marketing agency, talent discovery, a television network and a media company.

4.     On the surface, each of these businesses served a legitimate purpose related to entertainment, music and other subjects. But in reality, Combs, by and through himself and his

agents, employees and contractors, used these businesses to sexually assault, abuse, threaten and coerce hundreds of individuals through sexual *quid pro quo* schemes, as well as to take advantage of individuals with impunity thinking the victims would never seek recourse. Combs and his agents, employees and contractors, through these Combs Businesses, would tell victims, "this is what it takes to be famous," "what are you willing to do to become a star?," and "perform this sexual act or else" to coerce the victim into performing a non-consensual sexual act for the gratification of Combs and his cohorts.

5.     Members and associates of the Combs Business engaged in (and/or attempted to engage in), among other activities, sex trafficking, forced labor, interstate transportation for the purposes of prostitution, coercion and enticement to engage in prostitution, narcotics offenses, kidnapping, arson, bribery, and obstruction of justice.

6.     The Combs Business constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of Combs.

*Combs' Pervasive History of Sexual Assault and Violence*

7.     For years Combs and his businesses engaged in a persistent and pervasive pattern of abuse toward women, men, and minors. This abuse was, at times, verbal, emotional, physical and sexual. As part of his pattern of abuse, Combs manipulated both men and women to participate in highly-orchestrated performances of sexual activity with both commercial sex workers and unsuspecting partygoers. In some cases these were individuals who were contractors or vendors. In other cases, they were random individuals pulled from a hotel lobby, a show, or off the street. Combs ensured participation from these individuals by, among other things, obtaining and distributing narcotics to them with or without their knowledge, controlling their careers, leveraging

his financial support and threatening to cut off the same, and using intimidation, violence, and illicit drugs.

8.      Combs, while celebrated for his business acumen and influence in the entertainment world, has often been described in a more troubling light as powerful, manipulative, and problematic. His aggressive tactics, both in business and personal dealings, have drawn criticism, with many viewing him as someone who leverages his power to intimidate and control. This darker side of Combs' persona has been underscored by the numerous lawsuits and allegations that have surfaced over the years. Despite his undeniable success, his rise to the top is marred by a reputation for being ruthless and manipulative, using his influence in ways that have left a trail of legal and personal controversies including but not limited to the following:

a.  Nightclub Shooting Incident (1999): Combs was embroiled in a high-profile case related to a nightclub shooting in New York, involving his then-girlfriend, Jennifer Lopez, and rapper Shyne. Combs was acquitted of all charges, though the case remains a significant legal event in his career.

b.  Multiple Assault Allegations: Combs has faced several lawsuits related to alleged physical assaults, many of which have been settled out of court.

c.  Business Disputes: Combs has been involved in various business-related legal conflicts, particularly surrounding his Sean John clothing line and other ventures. These disputes often involved contractual disagreements and trademark claims.

d.  Claims by Cassie Ventura: Combs' former girlfriend, Casandra "Cassie" Ventura, filed a lawsuit accusing him of years of physical, emotional, and sexual abuse during their relationship. Cassie alleged repeated instances of

assault, coerced sexual acts, and drug use, all contributing to an environment of fear and manipulation.

9.      Combs particularly fancied the use of the popular date-rape drug Rohypnol, or GHB, to commit heinous non-consensual acts of sexual violence and rape onto countless victims. Combs often would secretly use the drug in an alcoholic beverage served at his parties, typically champagne or "lemon drops." Partygoers were forced to consume the alcoholic beverage, containing GHB, either prior to entering or while at Combs' party. There are also allegations of Combs dousing victims in lotions or similar body oils, also laced with GHB, so that the drug would be absorbed through the victim's skin and make it easier to assault him or her.

10.      Combs' recurrent and pervasive physical abuse took place for multiple decades. His tendencies of violence and sexual assault were no doubt well known amongst his colleagues, employees, agents and businesses. On numerous occasions from at least on or about 1996 and continuing for years, Combs assaulted women and men by striking, punching, dragging, throwing objects at, and kicking them. Combs also assaulted children both physically and sexually.

11.      In 1996, Combs was found guilty of criminal mischief for threatening a photographer from the New York *Post* with a gun. In 1999, he was arrested and charged with second-degree assault and criminal mischief in connection with assaulting a record executive. Combs was arrested again the same year for his involvement in a shooting at a club in New York. Another instance of violence occurred at a Los Angeles hotel in or about March 2016, which was captured on video and later publicly reported, where Combs kicked, dragged and threw a vase at a woman as she was attempting to leave his hotel room. When hotel security staff intervened, Combs attempted to bribe the staff member to ensure silence.

12.     In the past year, numerous civil complaints have been filed by plaintiffs who allege that they had been sexually abused by Combs between 1991 and 2009. In November 2023, three lawsuits were filed against Combs under the New York Adult Survivors Act. Cassie Ventura, an artist signed to Bad Boy, sued Combs in New York for rape and physical abuse. She alleged Combs facilitated these acts by and through supplying Ms. Ventura with copious amounts of drugs and urging her to take them, beginning in 2006.

13.     Joi Dickerson-Neal also sued Combs in New York, alleging Combs drugged her, sexually assaulted her and secretly recorded the assault in 1991.

14.     Liza Gardner, whom Combs met at an event hosted by a record label affiliated with Bad Boy, sued him for allegedly raping her and a friend in 1990 or 1991 when she was only 16.

15.     In December 2023, an anonymous Plaintiff sued Combs in New York for allegedly drugging and gang-raping her in 2003 when she was only seventeen years old. This victim alleged that employees and business associates of Combs, through their affiliation with the Bad Boy enterprise, lured her to Combs' home where Combs then raped her.

16.     In February 2024, Rodney "Lil Rod" Jones, one of Combs' former producers, sued Combs for allegedly forcing him to engage in unwanted sex acts and sex trafficking, among other allegations. Mr. Jones alleged that Combs regularly drugged others, including minors, by giving them drugs laced with ecstasy (MDMA) and other date rape drugs. Mr. Jones alleged that Combs in fact drugged him as well in order to commit acts of sexual assault.

17.     In May 2024, former model Crystal McKinney and April Lampros sued Combs. Ms. McKinney alleged that Combs drugged and sexually assaulted her at his recording studio in 2003. Mimicking what has now become a known pattern, Combs promised Ms. McKinney to help her with her modeling career in exchange for engaging in sexual conduct with him. Ms. Lampros,

an intern at Arista Records, which was an owner of Bad Boy, also sued Combs in May 2024 in New York County Supreme Court for raping her on multiple occasions, secretly filming these acts, and showing the recordings to multiple people. Ms. Lampros also alleges that Combs ordered her to take drugs on one occasion before he raped her.

18.     In July 2024, former adult film star Adria English – who was employed by Combs as an entertainer at his infamous White Parties that brought together the biggest names in the music and entertainment industries – sued Combs in the Southern District of New York for sex trafficking, alleging that he required her to consume drinks laced with ecstasy and secretly recorded the sexual acts.

19.     In September 2024, singer and songwriter Dawn Angelique Richard also sued Combs. Richard was employed by Combs as part of the girl group Danity Kane, formed by Combs, and later as a key member of Combs' band Diddy – Dirty Money. She sued Combs in New York for sexual assault, false imprisonment, and for subjecting her to hostile working conditions due to her gender, including degrading comments and threats. Ms. Richard has alleged that Combs regularly supplied others including minors with copious amounts of drugs and alcohol, and subjected them to sexual acts while they were sedated and/or unconscious due to the drugs and alcohol.

20.     In September 2024, a federal grand jury in Manhattan indicted Combs and charged him with sex trafficking, racketeering and the "creation of a criminal enterprise in which he abused, threatened and coerced women and others around him to fulfill his sexual desires, protect his reputation and conceal his conduct." *See United States of America v. Sean Combs, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love,"* Index No. 24 Crim. 542, Indictment (SDNY), at ¶ 1.  The indictment explains that Combs' abuse of women and minors was

enabled and conspired with by "the employees, resources and influence of the multi-faceted business empire that he led and controlled – creating a criminal enterprise whose members and associates engaged in, and attempted to engage in, among other crimes, sex-trafficking, forced labor, kidnapping, arson, bribery and obstruction of justice."

21.     Combs' long history of violence unequivocally establishes that his actions are motivated by gender – both men and women. Combs has a profound contempt for women and a desire to dominate both minors and other men. His conduct shows a longstanding practice of denigrating, defeating and attempting to humiliate men, women and children. His practices and desires are different for men, women and children. But his actions are unequivocally motivated by the victims' particular gender and age.

22.     Plaintiff's allegations herein substantially mirror Combs' prior conduct as established through criminal indictments and other lawsuits. Through this case, Plaintiff seeks a full measure of justice from a man who thought his power, money and influence rendered him untouchable. Plaintiff joins many other victims by filing this Complaint in hopes their common voice makes it impossible for Combs to assault another person ever again.

## PARTIES

23.     Plaintiff John Doe is a male who resides in Georgia.

24.     Defendant Sean Combs is a male who, on information and belief, resides in New York City, and who is otherwise currently incarcerated in the Metropolitan Detention Center in Brooklyn. On information and belief, at all relevant times Combs owned and/or controlled Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, Bad Boy Productions LLC, (collectively "Bad Boy"), Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a

Combs Global, f/k/a Combs Enterprises LLC (all together, the "Combs Corporations"). The facts of Combs' ownership and titles at the Combs Corporations enabled and conspired with him to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the sexual assault.

25.     Defendant Daddy's House Recordings, Inc. ("Daddy's House") is a domestic business corporation that is incorporated in New York and on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019. At the time of the events alleged herein, Daddy's House was a world-class recording studio owned by Combs located at 321 W 44th Street, Suite 201, New York, New York 10036. On information and belief, at all relevant times, Bad Boy and Combs together owned and operated Daddy's House. On information and belief, the Bad Boy recording studio was located on the premises of Daddy's House. Combs used the Daddy's House brand, stature and their ownership and titles at Daddy's House to commit the unlawful sexual violence against Plaintiff described herein.

26.     Defendant CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC ("Combs Global") is a limited liability company incorporated in Delaware that has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. On information and belief, all members of Combs Global are citizens of Delaware, New York, and/or California. On information and belief, Combs Global is an alter ego for Combs and/or a successor in interest to Combs' other corporations and/or was established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. Combs Global currently owns, controls, and/or oversees Bad Boy

and Combs' other business ventures in the music, fashion, fragrance, beverage, marketing, film, television, and media industries.

27.     As part of his renowned Bad Boy record label and brand, Combs has established several corporate entities under the "Bad Boy" name over the past few decades, including but not limited to Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, and Bad Boy Productions LLC (together, "Bad Boy"). On information and belief, all Bad Boy corporate entities are alter egos for Combs, are controlled and/or directed by Combs, and/or were established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. On information and belief, all active Bad Boy entities are now owned and/or controlled by Combs and/or by Combs Global. Combs used the Bad Boy premises/recording studio and their ownership and titles at Bad Boy to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the sexual assault.

a.  Defendant Bad Boy Entertainment Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Entertainment Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

b. Defendant Bad Boy Productions Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Productions Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

c. Defendant Bad Boy Books Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 1440 Broadway, 3rd Floor, New York, New York 10018. Bad Boy Books Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. The CEO listed on public filings is Eddie Norward Jr., with a listed address of 1710 Broadway, New York, New York 10019, the same address listed for Sean Combs in public filings for Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., and Daddy's House Recordings, Inc.

d. Defendant Bad Boy Records LLC is a Delaware limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Records LLC are citizens of Delaware, New York, and/or California. On information and belief, Bad Boy Records LLC is part of the Bad Boy enterprise and/or a successor-in-interest to

other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Records LLC is now owned and/or controlled by Combs and/or by Combs Global.

e.  Defendant Bad Boy Entertainment LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Entertainment LLC are citizens of New York and/or California. Bad Boy Entertainment LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Entertainment LLC is now owned and/or controlled by Bad Boy Entertainment Holdings, Inc. and/or by Combs, and/or by Combs Global.

f.  Defendant Bad Boy Productions LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Productions LLC are citizens of New York and/or California. Bad Boy Productions LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Productions LLC is now owned and/or controlled by Combs and/or by Combs Global.

28.  Defendants Organizational Does 1-10 are currently unknown entities who were owned by and/or employed Defendant Combs and enabled and conspired with the commission of

the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities by name.

29.     Defendants Individual Does 1-10 are currently unknown celebrities and/or persons of interest who enabled and/or conspired with the commission of the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individuals by name.

30.     Each of the Combs Corporations (a) aided and abetted Combs in committing the unlawful sexual violence against Plaintiff described herein, (b) are alter egos for Combs, completely dominated by him and used for his personal interests and to engage in wrongdoing which harmed Plaintiff and others, and/or (c) serve or have served as vehicles for Combs to move, dispose of, and/or insulate his assets, including in connection with his criminal activities and to avoid compensating the victims of his many crimes, including Plaintiff.

31.     Plaintiff reserves the right to add as defendants any individuals, including but not limited to celebrities and business entities.

## JURISDICTION AND VENUE

32.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this case is between citizens of different states, and the amount in controversy exceeds $75,000.

33.     This Court has specific personal jurisdiction over Defendants because the acts giving rise to Plaintiff's claims took place in New York State, and because several of the Defendants are domiciled in New York State and/or regularly transact business in New York State.

34.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including the violent assault of Plaintiff.

## JURY DEMAND

35.     Plaintiff hereby demands a trial by jury on his claims in this action.

## FACTUAL ALLEGATIONS

36.     In or around 2022, Plaintiff (then 39 years old) attended a party hosted by Defendant Sean Combs in a large, glamorous home in New York City.

37.     Plaintiff attended the party with friends and started off the evening socializing with other guests.  During the course of the night, Plaintiff consumed alcohol that had been provided to him by other individuals at the party.

38.     After consuming the drink, Plaintiff began to feel disoriented and began to lose control of his body and to lose consciousness. Based on information and belief, Combs, by himself or through his agents/employees, previously laced the drink with drugs, including but not limited to GHB and/or ecstasy. This behavior towards Plaintiff mimics a pattern of Combs and his agents/employees drugging unsuspecting victims in order to make it easier for Combs to sexually assault that person. Unfortunately, Plaintiff was one such victim. A photograph of an exemplary container used by Combs and/or his agents/employees to insert GHB into alcoholic drinks is seen below:



39.     Shortly after having the drink, Plaintiff blacked out.

40.     When Plaintiff regained consciousness, he was in a dark bedroom with black walls, on a bed with black sheets.  Everything around him was dark.  Plaintiff was horrified to find Combs on top of him, sodomizing him.

41.     Plaintiff, in a state of shock and confusion, forcefully fought Combs off and fled the room, making his way to a nearby bathroom.  There, Plaintiff discovered that his anus was bleeding and that he was still feeling severely disoriented.

42.     Despite still being in a dazed, disoriented state, Plaintiff fled the house in an effort to escape the situation as quickly as possible.  He did not return to the party after the assault.

43.     Plaintiff was traumatized by the assault and continues to experience severe emotional distress as a result of what he endured at Combs' hands.

---

[1] A picture of a vial recovered from a Combs cohort presumably containing illicit drugs.

## FIRST CAUSE OF ACTION
### (Violation of New York City Victims of Gender-Motivated Violence Protection Act)
### (All Defendants)

44.    Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

45.    By forcing sexual contact onto Plaintiff, Defendant Combs committed a "crime of violence motivated by gender" under the Victims of Gender-Motivated Violence Protection Act ("VGMVPA") as defined in New York City Administrative Code § 10-1103.

46.    The requirement that the crime of violence be committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender is satisfied because Defendant Combs forced Plaintiff to engage in a sexual interaction without consent. Moreover, Combs' long history of violence and sexual abuse against men evinces a deep contempt and desire for domination over men.

47.    The Combs Business enabled and conspired with Combs to commit the crime of violence motivated by gender because Combs sexually assaulted Plaintiff at a party related to or referencing Combs Business. On information and belief, Combs Businesses routinely committed sexual assault and gender-motivated violence, as detailed in other civil lawsuits, to further the business purpose of Combs' enterprise. Given Combs' long-standing pattern and practice of committing sexual violence against young men, the Combs Business had and/or should have had knowledge of Combs using such parties and venues for this unlawful conduct, and did nothing to stop it.

48.    The Combs Business enabled and conspired with Combs to commit the crime of violence motivated by gender by failing to, among other things, protect Plaintiff from a known danger and/or have sufficient policies and procedures in place to prevent sexual assault and/or train

their employees on identifying and preventing sexual assault. Given Combs' long-standing pattern and practice of committing sexual violence against young men, including on premises owned and/or operated by Defendants, the Combs Corporations had and/or should have had knowledge that Combs was a danger to Plaintiff, and did nothing to stop Combs.

49.     The Combs Business enabled and conspired with Combs to commit the crime of violence motivated by gender by failing to properly supervise. The Combs Business had knowledge and/or should have had knowledge of Combs' widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants, and did nothing to stop it.

50.     The Combs Corporations further enabled and conspired with Combs to commit the crime of violence motivated by gender by actively placing, maintaining, and/or employing Combs in positions of power and authority, despite the fact that they knew and/or should have known that Combs had a widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants. Combs used his titles and authority conferred by the Combs Business, including as CEO, Founder, and Chairman to facilitate and perpetuate the violent assault on Plaintiff, and to intimidate and force Plaintiff to keep quiet in subsequent years.

51.     On information and belief, Plaintiff alleges that Defendant Organizational Does 1 through 10, inclusive, are other parties not yet identified who have enabled and conspired with Combs to commit the crime of violence motivated by gender, in the ways articulated above and/or in other ways.

52.     On information and belief, Plaintiff alleges that Defendants Individual Does 1 through 10, inclusive, are other parties not yet identified who have enabled and conspired with

Combs to commit the crime of violence motivated by gender, in the ways articulated above and/or in other ways.

53. As a result of Defendants' actions, Plaintiff suffered damages in an amount to be determined at trial and pursuant to the fee-shifting provision of the statute.

54. This legal action has been commenced within the statutory timeframe provided by the two-year look-back window for VGMVPA claims. *See* New York City Administrative Code § 10-1105.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

    a. Awarding compensatory damages for all physical injuries, emotional distress, psychological harm, anxiety, humiliation, physical and emotional pain and suffering, family and social disruption, and other harm, in an amount to be determined at trial;

    b. Awarding punitive damages in an amount to be determined at trial;

    c. Awarding attorneys' fees and costs pursuant to any applicable statute or law;

    d. Awarding pre- and post-judgment interest on all such damages, fees, and/or costs;

    e. Attaching any and all of Defendants' real property and other assets located in the State of New York pursuant to Federal Rule of Civil Procedure 64; and

    f. Awarding such other and further relief as this Court may deem just and proper.

Dated: November 19, 2024

Respectfully submitted,

**THE BUZBEE LAW FIRM**

By: */s/ Anthony G. Buzbee*
Anthony G. Buzbee
Texas Bar No. 24001820
tbuzbee@txattorneys.com
Christopher J. Leavitt
Texas Bar No. 24053318
cleavitt@txattorneys.com
Ryan S. Pigg
Texas Bar No. 24088227
rpigg@txattorneys.com
David C. Fortney
Texas Bar No. 24068740
dfortney@txattorneys.com
Thomas Colby Holler
Texas Bar No. 24126898
choller@txattorneys.com
Lionel Sims III
Texas Bar No. 24107465
lsims@txattorneys.com
Crystal Del Toro
Texas Bar No. 24090070
cdeltoro@txattorneys.com
J.P. Morgan Chase Tower
600 Travis, Suite 7500
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

*Attorneys for Plaintiff John Doe*

-    AND  -

**AVA LAW GROUP**
Andrew Van Arsdale
CA Bar No. 323370
andrew.vanarsdale@avalaw.com
3667 Voltaire Street, Ste. 101
San Diego, CA 92106
Telephone: (800) 777-4141
Facsimile: (619) 222-3667

-    AND  -

**CURIS LAW, PLLC**
By: /s/ Antigone Curis
Antigone Curis
antigone@curislaw.com
52 Duane Street, 7th Floor
New York, New York 10007
Phone: (646) 335-7220
Facsimile: (315) 660-2610

Exhibit F (vi): Anthony Tate v. Sean Combs; 1-24-cv-08810

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

Anthony Tate,

                *Plaintiff*,                        No. 1:24-cv-8810-LAK

            v.

SEAN COMBS, DADDY'S HOUSE RECORDINGS        **AMENDED**
INC., CE OPCO, LLC d/b/a COMBS GLOBAL          **COMPLAINT AND**
f/k/a COMBS ENTERPRISES LLC,                   **DEMAND FOR**
BAD BOY ENTERTAINMENT HOLDINGS, INC.,    **JURY TRIAL**
BAD BOY PRODUCTIONS HOLDINGS, INC.,
BAD BOY BOOKS HOLDINGS, INC., BAD BOY
RECORDS LLC, BAD BOY ENTERTAINMENT LLC,
BAD BOY PRODUCTIONS LLC,
ORGANIZATIONAL DOES 1-10, AND INDIVIDUAL
DOES 1-10

               *Defendants*.

--------------------------------------------------------X

        Plaintiff Anthony Tate ("Plaintiff"), by and through his attorneys, The Buzbee Law

Firm, for his Amended Complaint alleges as follows:

### <u>INTRODUCTION</u>

        1.    This case seeks compensatory and punitive damages for a violent sexual assault

and rape. The incident occurred at an after-party hosted by Defendant Sean Combs in Miami,

Florida. As in many other instances, Combs used his systematic method of drugging his victim

unconscious before he sexually assaulted and penetrated him. After the assault, per Combs'

systematic behavior, Plaintiff was left unconscious, naked, and afraid. The conduct described

herein is shockingly typical of how Defendant Combs conducted himself for many years. Many

individuals and entities facilitated and conspired with this abhorrent conduct. Sean Combs believed he was above the law. He is not.

2.      For decades, Sean Combs (a/k/a "P. Diddy," a/k/a "Puff Daddy," a/k/a "Diddy," a/k/a "PD," and a/k/a "Love") (described herein as "Combs") abused, molested, raped, assaulted, threatened and coerced men, women, minors and others for sexual gratification, to assert dominance, and to conceal his abhorrent conduct. He accomplished these acts by and through a criminal enterprise built on his success as a rapper, record producer and record executive. Combs is one of the wealthiest musical artists in the world. Behind the façade of being a three-time Grammy Award winner, discovering and developing multiple famous musical artists, and ranking on Forbes' list of the highest-paid entertainers in the world, there existed something sinister – a dark underbelly of crime, sex trafficking, forced labor, kidnapping, bribery and prostitution. Combs is a menace to society, women and children. While his wealth has kept him above consequence for years, Combs now faces the awesome power of the American judicial system and ultimately a jury of his peers, who will be asked to punish him for the deplorable conduct described herein.

*Combs' Businesses*

3.      Combs' business enterprise is central to the pervasive acts of sexual assault and abuse committed by him during the last decades. Combs operated his business, headquartered at various times in Manhattan and Los Angeles, under a variety of United States-based corporate entities, including Bad Boy Entertainment, Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment, LLC, Bad Boy Productions, LLC, Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC, Combs Enterprises and Combs Global (collectively, the "Combs Business"). Corporate entities in the Combs Business

portfolio included record labels, a recording studio, an apparel line, an alcoholic spirits promoting business, a marketing agency, talent discovery, a television network and a media company.

4.      On the surface, each of these businesses served a legitimate purpose related to entertainment, music and other subjects. But in reality, Combs, by and through himself and his agents, employees and contractors, used these businesses to sexually assault, abuse, threaten and coerce hundreds of individuals through sexual *quid pro quo* schemes, as well as to take advantage of individuals with impunity thinking the victims would never seek recourse. Combs and his agents, employees and contractors, through these Combs Businesses, would tell victims, "this is what it takes to be famous," "what are you willing to do to become a star?," and "perform this sexual act or else" to coerce the victim into performing a non-consensual sexual act for the gratification of Combs and his cohorts.

5.      Members and associates of the Combs Business engaged in (and/or attempted to engage in), among other activities, sex trafficking, forced labor, interstate transportation for the purposes of prostitution, coercion and enticement to engage in prostitution, narcotics offenses, kidnapping, arson, bribery, and obstruction of justice.

6.      The Combs Business constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of Combs.

### *Combs' Pervasive History of Sexual Assault and Violence*

7.      For years Combs and his businesses engaged in a persistent and pervasive pattern of abuse toward women, men, and minors. This abuse was, at times, verbal, emotional, physical and sexual. As part of his pattern of abuse, Combs manipulated both men and women to participate in highly-orchestrated performances of sexual activity with both commercial sex workers and unsuspecting partygoers. In some cases these were individuals who were contractors or vendors.

In other cases, they were random individuals pulled from a hotel lobby, a show, or off the street. Combs ensured participation from these individuals by, among other things, obtaining and distributing narcotics to them with or without their knowledge, controlling their careers, leveraging his financial support and threatening to cut off the same, and using intimidation, violence, and illicit drugs.

8.      Combs, while celebrated for his business acumen and influence in the entertainment world, has often been described in a more troubling light as powerful, manipulative, and problematic. His aggressive tactics, both in business and personal dealings, have drawn criticism, with many viewing him as someone who leverages his power to intimidate and control. This darker side of Combs' persona has been underscored by the numerous lawsuits and allegations that have surfaced over the years. Despite his undeniable success, his rise to the top is marred by a reputation for being ruthless and manipulative, using his influence in ways that have left a trail of legal and personal controversies including but not limited to the following:

a.   Nightclub Shooting Incident (1999): Combs was embroiled in a high-profile case related to a nightclub shooting in New York, involving his then-girlfriend, Jennifer Lopez, and rapper Shyne. Combs was acquitted of all charges, though the case remains a significant legal event in his career.

b.   Multiple Assault Allegations: Combs has faced several lawsuits related to alleged physical assaults, many of which have been settled out of court.

c.   Business Disputes: Combs has been involved in various business-related legal conflicts, particularly surrounding his Sean John clothing line and other ventures. These disputes often involved contractual disagreements and trademark claims.

d. Claims by Cassie Ventura: Combs' former girlfriend, Casandra "Cassie" Ventura, filed a lawsuit accusing him of years of physical, emotional, and sexual abuse during their relationship. Cassie alleged repeated instances of assault, coerced sexual acts, and drug use, all contributing to an environment of fear and manipulation.

9. Combs particularly fancied the use of the popular date-rape drug Rohypnol, or GHB, to commit heinous non-consensual acts of sexual violence and rape onto countless victims. Combs often would secretly use the drug in an alcoholic beverage served at his parties, typically champagne or "lemon drops." Partygoers were forced to consume the alcoholic beverage, containing GHB, either prior to entering or while at Combs' party. There are also allegations of Combs dousing victims in lotions or similar body oils, also laced with GHB, so that the drug would be absorbed through the victim's skin and make it easier to assault him or her.

10. Combs' recurrent and pervasive physical abuse took place for multiple decades. His tendencies of violence and sexual assault were no doubt well known amongst his colleagues, employees, agents and businesses. On numerous occasions from at least on or about 1996 and continuing for years, Combs assaulted women and men by striking, punching, dragging, throwing objects at, and kicking them. Combs also assaulted children both physically and sexually.

11. In 1996, Combs was found guilty of criminal mischief for threatening a photographer from the New York *Post* with a gun. In 1999, he was arrested and charged with second-degree assault and criminal mischief in connection with assaulting a record executive. Combs was arrested again the same year for his involvement in a shooting at a club in New York. Another instance of violence occurred at a Los Angeles hotel in or about March 2016, which was captured on video and later publicly reported, where Combs kicked, dragged and threw a vase at

a woman as she was attempting to leave his hotel room. When hotel security staff intervened, Combs attempted to bribe the staff member to ensure silence.

12. In the past year, numerous civil complaints have been filed by plaintiffs who allege that they had been sexually abused by Combs between 1991 and 2009. In November 2023, three lawsuits were filed against Combs under the New York Adult Survivors Act. Cassie Ventura, an artist signed to Bad Boy, sued Combs in New York for rape and physical abuse. She alleged Combs facilitated these acts by and through supplying Ms. Ventura with copious amounts of drugs and urging her to take them, beginning in 2006.

13. Joi Dickerson-Neal also sued Combs in New York, alleging Combs drugged her, sexually assaulted her and secretly recorded the assault in 1991.

14. Liza Gardner, whom Combs met at an event hosted by a record label affiliated with Bad Boy, sued him for allegedly raping her and a friend in 1990 or 1991 when she was only 16.

15. In December 2023, an anonymous Plaintiff sued Combs in New York for allegedly drugging and gang-raping her in 2003 when she was only seventeen years old. This victim alleged that employees and business associates of Combs, through their affiliation with the Bad Boy enterprise, lured her to Combs' home where Combs then raped her.

16. In February 2024, Rodney "Lil Rod" Jones, one of Combs' former producers, sued Combs for allegedly forcing him to engage in unwanted sex acts and sex trafficking, among other allegations. Mr. Jones alleged that Combs regularly drugged others, including minors, by giving them drugs laced with ecstasy (MDMA) and other date rape drugs. Mr. Jones alleged that Combs in fact drugged him as well in order to commit acts of sexual assault.

17. In May 2024, former model Crystal McKinney and April Lampros sued Combs. Ms. McKinney alleged that Combs drugged and sexually assaulted her at his recording studio in

2003. Mimicking what has now become a known pattern, Combs promised Ms. McKinney to help her with her modeling career in exchange for engaging in sexual conduct with him. Ms. Lampros, an intern at Arista Records, which was an owner of Bad Boy, also sued Combs in May 2024 in New York County Supreme Court for raping her on multiple occasions, secretly filming these acts, and showing the recordings to multiple people. Ms. Lampros also alleges that Combs ordered her to take drugs on one occasion before he raped her.

18.     In July 2024, former adult film star Adria English – who was employed by Combs as an entertainer at his infamous White Parties that brought together the biggest names in the music and entertainment industries – sued Combs in the Southern District of New York for sex trafficking, alleging that he required her to consume drinks laced with ecstasy and secretly recorded the sexual acts.

19.     In September 2024, singer and songwriter Dawn Angelique Richard also sued Combs. Richard was employed by Combs as part of the girl group Danity Kane, formed by Combs, and later as a key member of Combs' band Diddy – Dirty Money. She sued Combs in New York for sexual assault, false imprisonment, and for subjecting her to hostile working conditions due to her gender, including degrading comments and threats. Ms. Richard has alleged that Combs regularly supplied others including minors with copious amounts of drugs and alcohol, and subjected them to sexual acts while they were sedated and/or unconscious due to the drugs and alcohol.

20.     In September 2024, a federal grand jury in Manhattan indicted Combs and charged him with sex trafficking, racketeering and the "creation of a criminal enterprise in which he abused, threatened and coerced women and others around him to fulfill his sexual desires, protect his reputation and conceal his conduct." *See United States of America v. Sean Combs, a/k/a "Puff*

*Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love*," Index No. 24 Crim. 542,

Indictment (SDNY), at ¶ 1. The indictment explains that Combs' abuse of women and minors was

enabled and conspired with by "the employees, resources and influence of the multi-faceted

business empire that he led and controlled – creating a criminal enterprise whose members and

associates engaged in, and attempted to engage in, among other crimes, sex-trafficking, forced

labor, kidnapping, arson, bribery and obstruction of justice."

21.     Combs' long history of violence unequivocally establishes that his actions are

motivated by gender – both men and women. Combs has a profound contempt for women and a

desire to dominate both minors and other men. His conduct shows a longstanding practice of

denigrating, defeating and attempting to humiliate men, women and children. His practices and

desires are different for men, women and children. But his actions are unequivocally motivated by

the victims' particular gender and age.

22.     Plaintiff's allegations herein substantially mirror Combs' prior conduct as

established through criminal indictments and other lawsuits. Through this case, Plaintiff seeks a

full measure of justice from a man who thought his power, money and influence rendered him

untouchable. Plaintiff joins many other victims by filing this Complaint in hopes their common

voice makes it impossible for Combs to assault another person ever again.

## **PARTIES**

23.     Plaintiff Anthony Tate is a male who resides in Florida.

24.     Defendant Sean Combs is a male who, on information and belief, resides in New

York City, and who is otherwise currently incarcerated in the Metropolitan Detention Center in

Brooklyn. On information and belief, at all relevant times Combs owned and/or controlled Bad

Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings,

Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, Bad Boy Productions LLC, (collectively "Bad Boy"), Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC (all together, the "Combs Corporations"). The facts of Combs' ownership and titles at the Combs Corporations enabled and conspired with him to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the sexual assault.

25.     Defendant Daddy's House Recordings, Inc. ("Daddy's House") is a domestic business corporation that is incorporated in New York and on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019. At the time of the events alleged herein, Daddy's House was a world-class recording studio owned by Combs located at 321 W 44th Street, Suite 201, New York, New York 10036. On information and belief, at all relevant times, Bad Boy and Combs together owned and operated Daddy's House. On information and belief, the Bad Boy recording studio was located on the premises of Daddy's House. Combs used the Daddy's House brand, stature and their ownership and titles at Daddy's House to commit the unlawful sexual violence against Plaintiff described herein.

26.     Defendant CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC ("Combs Global") is a limited liability company incorporated in Delaware that has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. On information and belief, all members of Combs Global are citizens of Delaware, New York, and/or California. On information and belief, Combs Global is an alter ego for Combs and/or a successor in interest to Combs' other corporations and/or was established or used by Combs for the purpose

of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. Combs Global currently owns, controls, and/or oversees Bad Boy and Combs' other business ventures in the music, fashion, fragrance, beverage, marketing, film, television, and media industries.

27.     As part of his renowned Bad Boy record label and brand, Combs has established several corporate entities under the "Bad Boy" name over the past few decades, including but not limited to Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, and Bad Boy Productions LLC (together, "Bad Boy"). On information and belief, all Bad Boy corporate entities are alter egos for Combs, are controlled and/or directed by Combs, and/or were established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. On information and belief, all active Bad Boy entities are now owned and/or controlled by Combs and/or by Combs Global. Combs used the Bad Boy premises/recording studio and their ownership and titles at Bad Boy to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the sexual assault.

        a.  Defendant Bad Boy Entertainment Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Entertainment Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global.

Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

b. Defendant Bad Boy Productions Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Productions Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

c. Defendant Bad Boy Books Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 1440 Broadway, 3rd Floor, New York, New York 10018. Bad Boy Books Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. The CEO listed on public filings is Eddie Norward Jr., with a listed address of 1710 Broadway, New York, New York 10019, the same address listed for Sean Combs in public filings for Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., and Daddy's House Recordings, Inc.

d. Defendant Bad Boy Records LLC is a Delaware limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Records LLC are citizens of

Delaware, New York, and/or California. On information and belief, Bad Boy
Records LLC is part of the Bad Boy enterprise and/or a successor-in-interest to
other Bad Boy Defendants that comprise the Bad Boy enterprise founded and
owned by Combs. On information and belief, Bad Boy Records LLC is now
owned and/or controlled by Combs and/or by Combs Global.

e.  Defendant Bad Boy Entertainment LLC is a New York limited liability
company that on information and belief is headquartered in New York and/or
California. On information and belief, all members of Bad Boy Entertainment
LLC are citizens of New York and/or California. Bad Boy Entertainment LLC
is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy
Defendants that comprise the Bad Boy enterprise founded and owned by
Combs. On information and belief, Bad Boy Entertainment LLC is now owned
and/or controlled by Bad Boy Entertainment Holdings, Inc. and/or by Combs,
and/or by Combs Global.

f.  Defendant Bad Boy Productions LLC is a New York limited liability company
that on information and belief is headquartered in New York and/or California.
On information and belief, all members of Bad Boy Productions LLC are
citizens of New York and/or California. Bad Boy Productions LLC is part of
the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy
Defendants that comprise the Bad Boy enterprise founded and owned by
Combs. On information and belief, Bad Boy Productions LLC is now owned
and/or controlled by Combs and/or by Combs Global.

28.     Defendants Organizational Does 1-10 are currently unknown entities who were owned by and/or employed Defendant Combs and enabled and conspired with the commission of the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities by name.

29.     Defendants Individual Does 1-10 are currently unknown celebrities and/or persons of interest who enabled and/or conspired with the commission of the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individuals by name.

30.     Each of the Combs Corporations (a) aided and abetted Combs in committing the unlawful sexual violence against Plaintiff described herein, (b) are alter egos for Combs, completely dominated by him and used for his personal interests and to engage in wrongdoing which harmed Plaintiff and others, and/or (c) serve or have served as vehicles for Combs to move, dispose of, and/or insulate his assets, including in connection with his criminal activities and to avoid compensating the victims of his many crimes, including Plaintiff.

31.     Plaintiff reserves the right to add as defendants any individuals, including but not limited to celebrities and business entities.

## JURISDICTION AND VENUE

32.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this case is between citizens of different states, and the amount in controversy exceeds $75,000.

33.     This Court has specific personal jurisdiction over Defendants because several of the Defendants are domiciled in New York State and/or regularly transact business in New York State.

34.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because this District

is a judicial district in which a defendant resides, and all defendants are residents of this State in

which this District is located.

## JURY DEMAND

35.     Plaintiff hereby demands a trial by jury on his claims in this action.

## FACTUAL ALLEGATIONS

36.     In 2022, Plaintiff mingled and spent time with associates of Combs' businesses at

a popular Miami nightclub. He did not consume alcohol at the nightclub. After spending some

time with these individuals, an associate of Combs invited Plaintiff to an after-hours event being

hosted by Combs at a residential home.

37.     Combs' business associates escorted Plaintiff to a black SUV, which drove Plaintiff

and another female to the party.

38.     After arriving, Plaintiff entered the residence and joined the other partygoers.

Plaintiff saw about forty-five to fifty people, many of whom were recognizable public figures.

39.     While mingling and making small talk with others, an associate of Combs

approached Plaintiff, indicating that Combs wanted to meet with him. The associate took Plaintiff

upstairs, where Combs greeted him with a drink and offered a tour of the house. Plaintiff obliged

and began following Combs around the home.

40.     The tour came to an end in a bedroom. The bedroom smelled strongly of marijuana.

Five other individuals—three men and two women, apart from Combs and Plaintiff, were inside

of the room as well. As Plaintiff and Combs entered the room, Combs demanded the women

perform sexual dances and acts on the other three men.

41.     Around this time, Plaintiff suddenly felt weak and disoriented, unlike anything he had ever experienced with alcohol before. As Plaintiff's condition worsened and he began to fall in and out of consciousness, Plaintiff knew he had been drugged.

42.     Based on information and belief, Combs, by himself or through his agents/employees, previously laced the drink with drugs, including but not limited to GHB and/or ecstasy. This behavior towards Plaintiff mimics a pattern of Combs and his agents/employees drugging unsuspecting victims in order to make it easier for Combs to sexually assault that person. Unfortunately, Plaintiff was one such victim. A photograph of an exemplary container used by Combs and/or his agents/employees to insert GHB into alcoholic drinks is seen below:



43.     Plaintiff soon lost consciousness entirely. At some point later, he woke to a sharp pain in his rectum and anus. As he regained some awareness, he noticed his clothes were missing, yet he had no memory of removing them or where they were. As he turned around to check the pain coming from his anus, he saw Combs naked, fully erect, trying to insert his penis into Plaintiff's anus. Plaintiff heard Combs "talk dirty" to him and the others in the bedroom and Plaintiff recalls Combs telling him "[t]his is what you want," all while wearing a disturbing smile.

---

[1] A picture of a vial recovered from a Combs cohort presumably containing illicit drugs.

The drugs prevented Plaintiff from fighting back or otherwise resisting Combs' assault. Plaintiff eventually slipped back into unconsciousness.

44.     Plaintiff woke the next morning in the same bedroom, alone. Almost immediately, as if someone could see inside of the room through a camera or other device, a member of Combs' security team entered, handed Plaintiff his clothes, and instructed him to get dress and prepare to leave the residence.

45.     Combs' associates and security team escorted Plaintiff out of the residence. They drove him back to the Miami nightclub, and dropped him off.

46.     Since that night, Plaintiff has suffered significant physical and mental harm, including anxiety disorders and a fear of group gatherings. He did not previously speak out about his encounter due to fear of retaliation from Combs or his associates.

### FIRST CAUSE OF ACTION
### (Battery and Sexual Battery – All Defendants)
### (Florida Law)

47.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

48.     Defendant Combs, with the assistance and conspiracy of his businesses, intentionally or knowingly caused physical contact with, and including penetration of, Plaintiff when Defendant Combs knew, and should have known, that Plaintiff would regard such contact as offensive.

49.     The sexual acts committed by Combs were done without Plaintiff's consent.

50.     As a proximate result of the assault, Plaintiff has suffered damages described herein.

51.     The Combs Business enabled and conspired with Combs to commit these acts because Combs sexually assaulted Plaintiff at a party related to or referencing Combs Business. On information and belief, Combs Businesses routinely committed sexual assault and gender-motivated violence, as detailed in other civil lawsuits, to further the business purpose of Combs' enterprise. Given Combs' long-standing pattern and practice of committing sexual violence against young men, the Combs Business had and/or should have had knowledge of Combs using such parties and venues for this unlawful conduct, and did nothing to stop it.

52.     The Combs Business enabled and conspired with Combs to commit these acts by failing to, among other things, protect Plaintiff from a known danger and/or have sufficient policies and procedures in place to prevent sexual assault and/or train their employees on identifying and preventing sexual assault. Given Combs' long-standing pattern and practice of committing sexual violence against young men, including on premises owned and/or operated by Defendants, the Combs Corporations had and/or should have had knowledge that Combs was a danger to Plaintiff, and did nothing to stop Combs.

53.     The Combs Business enabled and conspired with Combs to commit these acts by failing to properly supervise. The Combs Business had knowledge and/or should have had knowledge of Combs' widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants, and did nothing to stop it.

54.     The Combs Corporations further enabled and conspired with Combs to commit these acts by actively placing, maintaining, and/or employing Combs in positions of power and authority, despite the fact that they knew and/or should have known that Combs had a widespread and well-known practice of committing sexual assault and gender-motivated violence, including

on premises owned and/or operated by Defendants. Combs used his titles and authority conferred by the Combs Business, including as CEO, Founder, and Chairman to facilitate and perpetuate the violent assault on Plaintiff, and to intimidate and force Plaintiff to keep quiet in subsequent years.

55.     On information and belief, Plaintiff alleges that Defendant Organizational Does 1 through 10, inclusive, are other parties not yet identified who have enabled and conspired with Combs to commit these acts, in the ways articulated above and/or in other ways.

56.     On information and belief, Plaintiff alleges that Defendants Individual Does 1 through 10, inclusive, are other parties not yet identified who have enabled and conspired with Combs to commit the crime of violence motivated by gender, in the ways articulated above and/or in other ways.

57.     As a result of Defendants' actions, Plaintiff suffered damages in an amount to be determined at trial and pursuant to the fee-shifting provision of the statute.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

a.  Awarding compensatory damages for all physical injuries, emotional distress, psychological harm, anxiety, humiliation, physical and emotional pain and suffering, family and social disruption, and other harm, in an amount to be determined at trial;

b.  Awarding punitive damages in an amount to be determined at trial;

c.  Awarding attorneys' fees and costs pursuant to any applicable statute or law;

d.  Awarding pre- and post-judgment interest on all such damages, fees, and/or costs;

    e.   Attaching any and all of Defendants' real property and other assets located in

        the State of New York pursuant to Federal Rule of Civil Procedure 64; and

    f.   Awarding such other and further relief as this Court may deem just and

        proper.

Dated:  February 4, 2025

                Respectfully submitted,

### THE BUZBEE LAW FIRM

By: */s/ Anthony G. Buzbee*
Anthony G. Buzbee
Texas Bar No. 24001820
tbuzbee@txattorneys.com
David C. Fortney
Texas Bar No. 24068740
dfortney@txattorneys.com
Thomas Colby Holler
Texas Bar No. 24126898
choller@txattorneys.com
Lionel Sims III
Texas Bar No. 24107465
lsims@txattorneys.com
Crystal Del Toro
Texas Bar No. 24090070
cdeltoro@txattorneys.com
J.P. Morgan Chase Tower
600 Travis, Suite 7500
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

*Attorneys for Plaintiff Anthony Tate*

-   AND  -

**AVA LAW GROUP**
Andrew Van Arsdale
CA Bar No. 323370
andrew.vanarsdale@avalaw.com
3667 Voltaire Street, Ste. 101
San Diego, CA 92106

Telephone: (800) 777-4141
Facsimile: (619) 222-3667

- AND -

**CURIS LAW, PLLC**
By: */s/ Antigone Curis*
antigone@curislaw.com
52 Duane Street, 7th Floor
New York, New York 10007
Phone: (646) 335-7220
Facsimile: (315) 660-2610

Exhibit F (vii): Jane Doe v. Sean Combs;1-24-cv-08808

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

Jane Doe,

                 *Plaintiff*,                      No. 1:24-cv-08808

              v.

SEAN COMBS, DADDY'S HOUSE RECORDINGS        **COMPLAINT AND**
INC., CE OPCO, LLC d/b/a COMBS GLOBAL         **DEMAND FOR**
f/k/a COMBS ENTERPRISES LLC,                    **JURY TRIAL**
BAD BOY ENTERTAINMENT HOLDINGS, INC.,
BAD BOY PRODUCTIONS HOLDINGS, INC.,
BAD BOY BOOKS HOLDINGS, INC., BAD BOY
RECORDS LLC, BAD BOY ENTERTAINMENT LLC,
BAD BOY PRODUCTIONS LLC,
ORGANIZATIONAL DOES 1-10, AND INDIVIDUAL
DOES 1-10

               *Defendants*.

-------------------------------------------------------X

       Plaintiff Jane Doe ("Plaintiff"), by and through her attorneys, The Buzbee Law

Firm, for her Complaint alleges as follows:

## **INTRODUCTION**

       1.     This case seeks compensatory and punitive damages for a violent sexual assault of

an 18-year-old woman outside of a Halloween party at a nightclub in New York City. The conduct

described herein is shockingly typical of how Defendant Sean Combs conducted himself for many

years. Many individuals and entities facilitated and conspired with this abhorrent conduct. Sean

Combs believed he was above the law. He is not.

       2.     For decades, Sean Combs (a/k/a "P. Diddy," a/k/a "Puff Daddy," a/k/a "Diddy,"

a/k/a "PD," and a/k/a "Love") (described herein as "Combs") abused, molested, raped, assaulted,

Case 2:24-cv-04709-JFM Document 63-6 Filed 10/29/24 Page 2 of 69
Case 1:24-cv-08303-JAV Document 1 Filed 10/29/24 Page 3 of 478
PageID: 1672

threatened and coerced men, women, minors and others for sexual gratification, to assert dominance, and to conceal his abhorrent conduct. He accomplished these acts by and through a criminal enterprise built on his success as a rapper, record producer and record executive. Combs is one of the wealthiest musical artists in the world. Behind the façade of being a three-time Grammy Award winner, discovering and developing multiple famous musical artists, and ranking on Forbes' list of the highest-paid entertainers in the world, there existed something sinister – a dark underbelly of crime, sex trafficking, forced labor, kidnapping, bribery and prostitution. Combs is a menace to society, women and children. While his wealth has kept him above consequence for years, Combs now faces the awesome power of the American judicial system and ultimately a jury of his peers, who will be asked to punish him for the deplorable conduct described herein.

*Combs' Businesses*

3.      Combs' business enterprise is central to the pervasive acts of sexual assault and abuse committed by him during the last decades. Combs operated his business, headquartered at various times in Manhattan and Los Angeles, under a variety of United States-based corporate entities, including Bad Boy Entertainment, Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment, LLC, Bad Boy Productions, LLC, Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC, Combs Enterprises and Combs Global (collectively, the "Combs Business"). Corporate entities in the Combs Business portfolio included record labels, a recording studio, an apparel line, an alcoholic spirits promoting business, a marketing agency, talent discovery, a television network and a media company.

4.      On the surface, each of these businesses served a legitimate purpose related to entertainment, music and other subjects. But in reality, Combs, by and through himself and his

agents, employees and contractors, used these businesses to sexually assault, abuse, threaten and coerce hundreds of individuals through sexual *quid pro quo* schemes, as well as to take advantage of individuals with impunity thinking the victims would never seek recourse. Combs and his agents, employees and contractors, through these Combs Businesses, would tell victims, "this is what it takes to be famous," "what are you willing to do to become a star?," and "perform this sexual act or else" to coerce the victim into performing a non-consensual sexual act for the gratification of Combs and his cohorts.

5.     Members and associates of the Combs Business engaged in (and/or attempted to engage in), among other activities, sex trafficking, forced labor, interstate transportation for the purposes of prostitution, coercion and enticement to engage in prostitution, narcotics offenses, kidnapping, arson, bribery, and obstruction of justice.

6.     The Combs Business constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of Combs.

*Combs' Pervasive History of Sexual Assault and Violence*

7.     For years Combs and his businesses engaged in a persistent and pervasive pattern of abuse toward women, men, and minors. This abuse was, at times, verbal, emotional, physical and sexual. As part of his pattern of abuse, Combs manipulated both men and women to participate in highly-orchestrated performances of sexual activity with both commercial sex workers and unsuspecting partygoers. In some cases, these were individuals who were contractors or vendors. In other cases, they were random individuals pulled from a hotel lobby, a show, or off the street. Combs ensured participation from these individuals by, among other things, obtaining and distributing narcotics to them with or without their knowledge, controlling their careers, leveraging

his financial support and threatening to cut off the same, and using intimidation, violence, and illicit drugs.

8.    Combs, while celebrated for his business acumen and influence in the entertainment world, has often been described in a more troubling light as powerful, manipulative, and problematic. His aggressive tactics, both in business and personal dealings, have drawn criticism, with many viewing him as someone who leverages his power to intimidate and control. This darker side of Combs' persona has been underscored by the numerous lawsuits and allegations that have surfaced over the years. Despite his undeniable success, his rise to the top is marred by a reputation for being ruthless and manipulative, using his influence in ways that have left a trail of legal and personal controversies including but not limited to the following:

a.    Nightclub Shooting Incident (1999): Combs was embroiled in a high-profile case related to a nightclub shooting in New York, involving his then-girlfriend, Jennifer Lopez, and rapper Shyne. Combs was acquitted of all charges, though the case remains a significant legal event in his career.

b.    Multiple Assault Allegations: Combs has faced several lawsuits related to alleged physical assaults, many of which have been settled out of court.

c.    Business Disputes: Combs has been involved in various business-related legal conflicts, particularly surrounding his Sean John clothing line and other ventures. These disputes often involved contractual disagreements and trademark claims.

d.    Claims by Cassie Ventura: Combs' former girlfriend, Casandra "Cassie" Ventura, filed a lawsuit accusing him of years of physical, emotional, and sexual abuse during their relationship. Cassie alleged repeated instances of

assault, coerced sexual acts, and drug use, all contributing to an environment of fear and manipulation.

9.     Combs particularly fancied the use of the popular date-rape drug Rohypnol, or GHB, to commit heinous non-consensual acts of sexual violence and rape onto countless victims. Combs often would secretly use the drug in an alcoholic beverage served at his parties, typically champagne or "lemon drops." Partygoers were forced to consume the alcoholic beverage, containing GHB, either prior to entering or while at Combs' party. There are also allegations of Combs dousing victims in lotions or similar body oils, also laced with GHB, so that the drug would be absorbed through the victim's skin and make it easier to assault him or her.

10.     Combs' recurrent and pervasive physical abuse took place for multiple decades. His tendencies of violence and sexual assault were no doubt well known amongst his colleagues, employees, agents and businesses. On numerous occasions from at least on or about 1996 and continuing for years, Combs assaulted women and men by striking, punching, dragging, throwing objects at, and kicking them. Combs also assaulted children both physically and sexually.

11.     In 1996, Combs was found guilty of criminal mischief for threatening a photographer from the New York *Post* with a gun. In 1999, he was arrested and charged with second-degree assault and criminal mischief in connection with assaulting a record executive. Combs was arrested again the same year for his involvement in a shooting at a club in New York. Another instance of violence occurred at a Los Angeles hotel in or about March 2016, which was captured on video and later publicly reported, where Combs kicked, dragged and threw a vase at a woman as she was attempting to leave his hotel room. When hotel security staff intervened, Combs attempted to bribe the staff member to ensure silence.

Case 2:24-cv-04740-JFW    Document 63-6    Filed 10/29/24    Page 6 of 19
Case 1:24-cv-08305-JAV    Document 63-6    Filed 10/29/24    Page 6 of 478
PageID: 1676

12.    In the past year, numerous civil complaints have been filed by plaintiffs who allege that they had been sexually abused by Combs between 1991 and 2009. In November 2023, three lawsuits were filed against Combs under the New York Adult Survivors Act. Cassie Ventura, an artist signed to Bad Boy, sued Combs in New York for rape and physical abuse. She alleged Combs facilitated these acts by and through supplying Ms. Ventura with copious amounts of drugs and urging her to take them, beginning in 2006.

13.    Joi Dickerson-Neal also sued Combs in New York, alleging Combs drugged her, sexually assaulted her and secretly recorded the assault in 1991.

14.    Liza Gardner, whom Combs met at an event hosted by a record label affiliated with Bad Boy, sued him for allegedly raping her and a friend in 1990 or 1991 when she was only 16.

15.    In December 2023, an anonymous Plaintiff sued Combs in New York for allegedly drugging and gang-raping her in 2003 when she was only seventeen years old. This victim alleged that employees and business associates of Combs, through their affiliation with the Bad Boy enterprise, lured her to Combs' home where Combs then raped her.

16.    In February 2024, Rodney "Lil Rod" Jones, one of Combs' former producers, sued Combs for allegedly forcing him to engage in unwanted sex acts and sex trafficking, among other allegations. Mr. Jones alleged that Combs regularly drugged others, including minors, by giving them drugs laced with ecstasy (MDMA) and other date rape drugs. Mr. Jones alleged that Combs in fact drugged him as well in order to commit acts of sexual assault.

17.    In May 2024, former model Crystal McKinney and April Lampros sued Combs. Ms. McKinney alleged that Combs drugged and sexually assaulted her at his recording studio in 2003. Mimicking what has now become a known pattern, Combs promised Ms. McKinney to help her with her modeling career in exchange for engaging in sexual conduct with him. Ms. Lampros,

an intern at Arista Records, which was an owner of Bad Boy, also sued Combs in May 2024 in New York County Supreme Court for raping her on multiple occasions, secretly filming these acts, and showing the recordings to multiple people. Ms. Lampros also alleges that Combs ordered her to take drugs on one occasion before he raped her.

18.     In July 2024, former adult film star Adria English – who was employed by Combs as an entertainer at his infamous White Parties that brought together the biggest names in the music and entertainment industries – sued Combs in the Southern District of New York for sex trafficking, alleging that he required her to consume drinks laced with ecstasy and secretly recorded the sexual acts.

19.     In September 2024, singer and songwriter Dawn Angelique Richard also sued Combs. Richard was employed by Combs as part of the girl group Danity Kane, formed by Combs, and later as a key member of Combs' band Diddy – Dirty Money. She sued Combs in New York for sexual assault, false imprisonment, and for subjecting her to hostile working conditions due to her gender, including degrading comments and threats. Ms. Richard has alleged that Combs regularly supplied others including minors with copious amounts of drugs and alcohol, and subjected them to sexual acts while they were sedated and/or unconscious due to the drugs and alcohol.

20.     In September 2024, a federal grand jury in Manhattan indicted Combs and charged him with sex trafficking, racketeering and the "creation of a criminal enterprise in which he abused, threatened and coerced women and others around him to fulfill his sexual desires, protect his reputation and conceal his conduct." *See United States of America v. Sean Combs, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love,"* Index No. 24 Crim. 542, Indictment (SDNY), at ¶ 1. The indictment explains that Combs' abuse of women and minors was

enabled and conspired with by "the employees, resources and influence of the multi-faceted business empire that he led and controlled – creating a criminal enterprise whose members and associates engaged in, and attempted to engage in, among other crimes, sex-trafficking, forced labor, kidnapping, arson, bribery and obstruction of justice."

21.     Combs' long history of violence unequivocally establishes that his actions are motivated by gender – both men and women. Combs has a profound contempt for women and a desire to dominate both minors and other men. His conduct shows a longstanding practice of denigrating, defeating and attempting to humiliate men, women and children. His practices and desires are different for men, women and children. But his actions are unequivocally motivated by the victims' particular gender and age.

22.     Plaintiff's allegations herein substantially mirror Combs' prior conduct as established through criminal indictments and other lawsuits. Through this case, Plaintiff seeks a full measure of justice from a man who thought his power, money and influence rendered him untouchable. Plaintiff joins many other victims by filing this Complaint in hopes their common voice makes it impossible for Combs to assault another person ever again.

## **PARTIES**

23.     Plaintiff Jane Doe is a woman who resides in Maryland.

24.     Defendant Sean Combs is a male who, on information and belief, resides in New York City, and who is otherwise currently incarcerated in the Metropolitan Detention Center in Brooklyn. On information and belief, at all relevant times Combs owned and/or controlled Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, Bad Boy Productions LLC, (collectively "Bad Boy"), Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a

Combs Global, f/k/a Combs Enterprises LLC (all together, the "Combs Corporations"). The facts of Combs' ownership and titles at the Combs Corporations enabled and conspired with him to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the sexual assault.

25.    Defendant Daddy's House Recordings, Inc. ("Daddy's House") is a domestic business corporation that is incorporated in New York and on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019. At the time of the events alleged herein, Daddy's House was a world-class recording studio owned by Combs located at 321 W 44th Street, Suite 201, New York, New York 10036. On information and belief, at all relevant times, Bad Boy and Combs together owned and operated Daddy's House. On information and belief, the Bad Boy recording studio was located on the premises of Daddy's House. Combs used the Daddy's House brand, stature and their ownership and titles at Daddy's House to commit the unlawful sexual violence against Plaintiff described herein.

26.    Defendant CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC ("Combs Global") is a limited liability company incorporated in Delaware that has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. On information and belief, all members of Combs Global are citizens of Delaware, New York, and/or California. On information and belief, Combs Global is an alter ego for Combs and/or a successor in interest to Combs' other corporations and/or was established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. Combs Global currently owns, controls, and/or oversees Bad Boy

and Combs' other business ventures in the music, fashion, fragrance, beverage, marketing, film, television, and media industries.

27.     As part of his renowned Bad Boy record label and brand, Combs has established several corporate entities under the "Bad Boy" name over the past few decades, including but not limited to Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, and Bad Boy Productions LLC (together, "Bad Boy"). On information and belief, all Bad Boy corporate entities are alter egos for Combs, are controlled and/or directed by Combs, and/or were established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. On information and belief, all active Bad Boy entities are now owned and/or controlled by Combs and/or by Combs Global. Combs used the Bad Boy premises/recording studio and their ownership and titles at Bad Boy to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the sexual assault.

    a. Defendant Bad Boy Entertainment Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Entertainment Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

b.  Defendant Bad Boy Productions Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Productions Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

c.  Defendant Bad Boy Books Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 1440 Broadway, 3rd Floor, New York, New York 10018. Bad Boy Books Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. The CEO listed on public filings is Eddie Norward Jr., with a listed address of 1710 Broadway, New York, New York 10019, the same address listed for Sean Combs in public filings for Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., and Daddy's House Recordings, Inc.

d.  Defendant Bad Boy Records LLC is a Delaware limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Records LLC are citizens of Delaware, New York, and/or California. On information and belief, Bad Boy Records LLC is part of the Bad Boy enterprise and/or a successor-in-interest to

other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Records LLC is now owned and/or controlled by Combs and/or by Combs Global.

e.  Defendant Bad Boy Entertainment LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Entertainment LLC are citizens of New York and/or California. Bad Boy Entertainment LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Entertainment LLC is now owned and/or controlled by Bad Boy Entertainment Holdings, Inc. and/or by Combs, and/or by Combs Global.

f.  Defendant Bad Boy Productions LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Productions LLC are citizens of New York and/or California. Bad Boy Productions LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Productions LLC is now owned and/or controlled by Combs and/or by Combs Global.

28.  Defendants Organizational Does 1-10 are currently unknown entities who were owned by and/or employed Defendant Combs and enabled and conspired with the commission of

the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities by name.

29.     Defendants Individual Does 1-10 are currently unknown celebrities and/or persons of interest who enabled and/or conspired with the commission of the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individuals by name.

30.     Each of the Combs Corporations (a) aided and abetted Combs in committing the unlawful sexual violence against Plaintiff described herein, (b) are alter egos for Combs, completely dominated by him and used for his personal interests and to engage in wrongdoing which harmed Plaintiff and others, and/or (c) serve or have served as vehicles for Combs to move, dispose of, and/or insulate his assets, including in connection with his criminal activities and to avoid compensating the victims of his many crimes, including Plaintiff.

31.     Plaintiff reserves the right to add as defendants any individuals, including but not limited to celebrities and business entities.

## JURISDICTION AND VENUE

32.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this case is between citizens of different states, and the amount in controversy exceeds $75,000.

33.     This Court has specific personal jurisdiction over Defendants because the acts giving rise to Plaintiff's claims took place in New York State, and because several of the Defendants are domiciled in New York State and/or regularly transact business in New York State.

34.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including the violent assault of Plaintiff.

## JURY DEMAND

35.    Plaintiff hereby demands a trial by jury on her claims in this action.

## FACTUAL ALLEGATIONS

36.    In 2001, Plaintiff (who was 18 years old at the time) and her cousin attended a Halloween party held at Club New Yorker in Manhattan.  Combs and his entourage also attended the party, and provided drinks to Plaintiff and her friends throughout the night.

37.    During the Halloween party, one of Combs' security guards escorted Plaintiff and two friends to a large black SUV limousine parked within walking distance of the club.  They entered the vehicle and saw Combs sitting in the back.  At least six members of Combs' security team were also in the limousine.

38.    One of the men handed Plaintiff a drink.  Minutes later, she began feeling dizzy, intoxicated and disoriented.  She felt as though she was unable to control her own actions.  Based on information and belief, Combs, by himself or through his agents/employees, previously laced the drink with drugs, including but not limited to GHB and/or ecstasy. This behavior towards Plaintiff mimics a pattern of Combs and his agents/employees drugging unsuspecting victims in order to make it easier for Combs to sexually assault that person. Unfortunately, Plaintiff was one such victim.

39.    Combs ordered Plaintiff to perform oral sex on one of the security guards.  In turn, the security guard ordered Plaintiff to remove her shirt.  The guard fondled Plaintiff's breasts and forced her head and mouth onto his penis.  Combs then ordered Plaintiff and the two other women to take turns performing oral sex on each of the other men.  Drugged, scared, and confined among numerous men, Plaintiff did as Combs and his security guards ordered.

40.     Combs called the women profanities as he degradingly sprayed champagne all over them as they performed these sexual acts against their wills.  Ultimately, Combs forced Plaintiff to perform oral sex on himself, which she did.

41.     Thereafter, Combs and his security staff allowed Plaintiff and the other women to leave.  Plaintiff struggled to exit the vehicle and suffered from a splitting headache as she made her way back to the "VIP" section of the nightclub, where she subsequently passed out.   When she awoke the following morning, she was at a friend's house, without any recollection of how she arrived there.

42.     In the aftermath of the assault, Plaintiff struggled with intense emotional pain and mental health issues, feeling disgusted and deeply depressed, with symptoms of post-traumatic stress.

## FIRST CAUSE OF ACTION
### (Violation of New York City Victims of Gender-Motivated Violence Protection Act)
### (All Defendants)

43.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

44.     By forcing sexual contact onto Plaintiff, Defendant Combs committed a "crime of violence motivated by gender" under the Victims of Gender-Motivated Violence Protection Act ("VGMVPA") as defined in New York City Administrative Code § 10-1103.

45.     The requirement that the crime of violence be committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender is satisfied because Defendant Combs forced Plaintiff to engage in a sexual interaction without consent. Moreover, Combs' long history of violence and sexual abuse against women evinces a deep contempt and desire for domination over women.

46.     The Combs Business enabled and conspired with Combs to commit the crime of violence motivated by gender because Combs sexually assaulted Plaintiff at a party related to or referencing Combs Business. On information and belief, Combs Businesses routinely committed sexual assault and gender-motivated violence, as detailed in other civil lawsuits, to further the business purpose of Combs' enterprise. Given Combs' long-standing pattern and practice of committing sexual violence against young women, the Combs Business had and/or should have had knowledge of Combs using such parties and venues for this unlawful conduct, and did nothing to stop it.

47.     The Combs Business enabled and conspired with Combs to commit the crime of violence motivated by gender by failing to, among other things, protect Plaintiff from a known danger and/or have sufficient policies and procedures in place to prevent sexual assault and/or train their employees on identifying and preventing sexual assault. Given Combs' long-standing pattern and practice of committing sexual violence against young women, including on premises owned and/or operated by Defendants, the Combs Corporations had and/or should have had knowledge that Combs was a danger to Plaintiff, and did nothing to stop Combs.

48.     The Combs Business enabled and conspired with Combs to commit the crime of violence motivated by gender by failing to properly supervise. The Combs Business had knowledge and/or should have had knowledge of Combs' widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants, and did nothing to stop it.

49.     The Combs Corporations further enabled and conspired with Combs to commit the crime of violence motivated by gender by actively placing, maintaining, and/or employing Combs in positions of power and authority, despite the fact that they knew and/or should have known that

Combs had a widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants. Combs used his titles and authority conferred by the Combs Business, including as CEO, Founder, and Chairman to facilitate and perpetuate the violent assault on Plaintiff, and to intimidate and force Plaintiff to keep quiet in subsequent years.

50.     On information and belief, Plaintiff alleges that Defendant Organizational Does 1 through 10, inclusive, are other parties not yet identified who have enabled and conspired with Combs to commit the crime of violence motivated by gender, in the ways articulated above and/or in other ways.

51.     On information and belief, Plaintiff alleges that Defendants Individual Does 1 through 10, inclusive, are other parties not yet identified who have enabled and conspired with Combs to commit the crime of violence motivated by gender, in the ways articulated above and/or in other ways.

52.     As a result of Defendants' actions, Plaintiff suffered damages in an amount to be determined at trial and pursuant to the fee-shifting provision of the statute.

53.     This legal action has been commenced within the statutory timeframe provided by the two-year look-back window for VGMVPA claims. *See* New York City Administrative Code § 10-1105.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

        a.  Awarding compensatory damages for all physical injuries, emotional distress, psychological harm, anxiety, humiliation, physical and emotional pain and

suffering, family and social disruption, and other harm, in an amount to be
determined at trial;

b.   Awarding punitive damages in an amount to be determined at trial;

c.   Awarding attorneys' fees and costs pursuant to any applicable statute or law;

d.   Awarding pre- and post-judgment interest on all such damages, fees, and/or
costs;

e.   Attaching any and all of Defendants' real property and other assets located in
the State of New York pursuant to Federal Rule of Civil Procedure 64; and

f.   Awarding such other and further relief as this Court may deem just and
proper.

Dated:  November 19, 2024

Respectfully submitted,

THE BUZBEE LAW FIRM

By: */s/ Anthony G. Buzbee*
Anthony G. Buzbee
Texas Bar No. 24001820
tbuzbee@txattorneys.com
Christopher J. Leavitt
Texas Bar No. 24053318
cleavitt@txattorneys.com
Ryan S. Pigg
Texas Bar No. 24088227
rpigg@txattorneys.com
David C. Fortney
Texas Bar No. 24068740
dfortney@txattorneys.com
Thomas Colby Holler
Texas Bar No. 24126898
choller@txattorneys.com
Lionel Sims III
Texas Bar No. 24107465
lsims@txattorneys.com
Crystal Del Toro

Texas Bar No. 24090070
cdeltoro@txattorneys.com
J.P. Morgan Chase Tower
600 Travis, Suite 7500
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

*Attorneys for Plaintiff Jane Doe*

-   AND  -

**AVA LAW GROUP**
Andrew Van Arsdale
CA Bar No. 323370
andrew.vanarsdale@avalaw.com
3667 Voltaire Street, Ste. 101
San Diego, CA 92106
Telephone: (800) 777-4141
Facsimile: (619) 222-3667

-   AND  -

**CURIS LAW, PLLC**
By: */s/ Antigone Curis*
Antigone Curis
antigone@curislaw.com
52 Duane Street, 7th Floor
New York, New York 10007
Phone: (646) 335-7220
Facsimile: (315) 660-2610

Exhibit F (viii): Jane Doe v. Sean Combs;1-24-cv-08054

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

Jane Doe,

              *Plaintiff*,                    No. 1:24-cv-8054

        v.

SEAN COMBS, DADDY'S HOUSE RECORDINGS INC.,     **COMPLAINT AND**
CE OPCO, LLC d/b/a COMBS GLOBAL f/k/a          **DEMAND FOR**
COMBS ENTERPRISES LLC, BAD BOY                **JURY TRIAL**
ENTERTAINMENT HOLDINGS, INC.,
BAD BOY PRODUCTIONS HOLDINGS, INC.,
BAD BOY BOOKS HOLDINGS, INC., BAD BOY
RECORDS LLC, BAD BOY ENTERTAINMENT LLC,
BAD BOY PRODUCTIONS LLC, MARRIOTT
INTERNATIONAL, INC and ORGANIZATIONAL DOES 1-10.

              *Defendants*.

-------------------------------------------------------X

        Plaintiff Jane Doe ("Plaintiff"), by and through her attorneys, The Buzbee Law

Firm, for her Complaint alleges as follows:

### INTRODUCTION

        1.      This case seeks both compensatory and punitive damages for aggravated sexual

assault of Plaintiff Jane Doe. The conduct described herein is violent and shockingly typical of

Defendant Sean Combs. Aided and enabled by numerous individuals and entities, Sean Combs for

many years believed he was above the law. He is not.

        2.      For decades, Sean Combs (a/k/a "P. Diddy," a/k/a "Puff Daddy," a/k/a "Diddy,"

a/k/a "PD," and a/k/a "Love") (herein as "Combs") abused, molested, raped, assaulted, threatened

and coerced women, men and minors for sexual gratification, to assert dominance, and to conceal

his abhorrent conduct. Combs accomplished these acts by and through a criminal enterprise built

on his success as a rapper, record producer and record executive. Combs is reportedly one of the wealthiest musical artists in the world. Behind the façade of being a three-time Grammy Award winner, discovering and developing multiple famous musical artists, and ranking on Forbes' list of the highest-paid entertainers in the world, there existed something sinister– a dark underbelly of crime, sex trafficking, forced labor, kidnapping, bribery and prostitution. Combs is a menace to society, women, men and children. While his wealth has kept him above consequence for years, Combs now faces the awesome power of the American judicial system and ultimately a jury of his peers who will be asked to punish him for the deplorable conduct described herein.

*Combs' Businesses*

3.       Combs' business enterprise is central to the pervasive acts of sexual assault and abuse committed by he, his posse, and his pals during the last decades. Combs operated his business, headquartered at various times in Manhattan and Los Angeles, under a variety of United States-based corporate entities, including Bad Boy Entertainment, Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment, LLC, Bad Boy Productions, LLC, Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC, Combs Enterprises and Combs Global (collectively, the "Combs Business"). Corporate entities in the Combs Business portfolio included record labels, a recording studio, an apparel line, an alcoholic spirits promoting business, a marketing agency, talent discovery, a television network and media company.

4.       On the surface, each of these businesses served a legitimate purpose related to entertainment, music and other subjects. But in reality, Combs, by and through himself and his agents, employees and contractors, used these businesses to sexually assault, abuse, threaten and coerce hundreds of individuals through sexual *quid pro quo* schemes, as well as to take advantage

of individuals with impunity thinking the victims would never have any recourse. Combs and his agents, employees and contractors, through these Combs Businesses, would tell victims, "this is what it takes to be famous," "what are you willing to do to become a star?," and "perform this sexual act or else" to coerce, cajole, or force the victim into performing a non-consensual sexual act for the gratification of Combs and his cohorts.

5.      Members and associates of the Combs Business engaged in (and/or attempted to engage in), among other activities, sex trafficking, forced labor, interstate transportation for the purposes of prostitution, coercion and enticement to engage in prostitution, narcotics offenses, kidnapping, arson, bribery, and obstruction of justice.

6.      The Combs Business constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of Combs.

*Combs' Pervasive History of Sexual Assault and Violence*

7.      For years Combs and his businesses engaged in a persistent and pervasive pattern of abuse toward women, men, and minors. This abuse was, at times, verbal, emotional, physical and sexual. As part of his pattern of abuse, Combs manipulated both men and women to participate in highly-orchestrated performances of sexual activity with both commercial sex workers and unsuspecting partygoers. Combs ensured participation from these individuals by, among other things, obtaining and distributing narcotics to them with or without their knowledge, controlling their careers, leveraging his financial support and threatening to cut off the same, and using intimidation, violence, and illicit drugs.

8.      Combs, while celebrated for his business acumen and influence in the entertainment world, has often been described in a more troubling light as powerful, manipulative, and problematic. His aggressive tactics, both in business and personal dealings, have drawn criticism,

with many viewing him as someone who leverages his power to intimidate and control. This darker side of Comb's persona has been underscored by the numerous lawsuits and allegations that have surfaced over the years. Despite his undeniable success, his rise to the top is marred by a reputation for being ruthless and manipulative, using his influence in ways that have left a trail of legal and personal controversies including but not limited to the following:

    a. Nightclub Shooting Incident (1999): Combs was embroiled in a high-profile case related to a nightclub shooting in New York, involving his then-girlfriend, Jennifer Lopez, and rapper Shyne. Combs was acquitted of all charges, though the case remains a significant legal event in his career.

    b. Multiple Assault Allegations: Combs has faced several lawsuits related to alleged physical assaults, many of which have been settled out of court.

    c. Business Disputes: Combs has been involved in various business-related legal conflicts, particularly surrounding his Sean John clothing line and other ventures. These disputes often involved contractual disagreements and trademark claims.

    d. Claims by Cassie Ventura: Combs' former girlfriend, Casandra "Cassie" Ventura, filed a lawsuit accusing him of years of physical, emotional, and sexual abuse during their relationship. Cassie alleged repeated instances of assault, coerced sexual acts, and drug use, all contributing to an environment of fear and manipulation.

9.     Combs particularly fancied the use of the popular date-rape drug Rohypnol, or GHB, to commit heinous non-consensual acts of sexual violence and rape against countless victims. Combs often would secretly use the drug in an alcoholic beverage served at his parties,

typically in a seemingly innocent glass of champagne or a "lemon drop." Partygoers were forced to consume the alcoholic beverage, containing GHB, either prior to entering or while at Combs' party. There are also allegations of Combs dousing victims in lotions or similar body oils, also laced with GBH, so that the drug would be absorbed through the victim's skin and make it easier to take advantage of, exploit, and assault him or her.

10.     In the past year, numerous civil complaints have been filed by plaintiffs who allege that they had been sexually abused by Combs between 1991 and 2009. In November 2023, three lawsuits were filed against Combs under the New York Adult Survivors Act. Cassie Ventura, an artist signed to Bad Boy, sued Combs in New York for rape and physical abuse. She alleged Combs facilitated these acts by and through supplying Ms. Ventura with copious amounts of drugs and urging her to take them, beginning in 2006.

11.     Joi Dickerson-Neal also sued Combs in New York, alleging Combs drugged her, sexually assaulted her and secretly recorded the assault in 1991.

12.     Liza Gardner, whom Combs met at an event hosted by a record label affiliated with Bad Boy, sued him for raping her and a friend in 1990 or 1991 when she was only 16.

13.     In December 2023, an anonymous Plaintiff sued Combs in New York for drugging and gang-raping her in 2003 when she was only seventeen years old. This victim alleged that employees and business associates of Combs, through their affiliation with Bad Boy enterprise, lured her to Combs' home where Combs then raped her.

14.     In February 2024, Rodney "Lil Rod" Jones, one of Combs' former producers, sued Combs for forcing him to engage in unwanted sex acts and sex trafficking, among other allegations. Mr. Jones alleged that Combs regularly drugged others, including minors, by giving

them drugs laced with ecstasy (MDMA) and other date rape drugs. Mr. Jones alleged that Combs in fact drugged him as well in order to commit acts of sexual assault.

15.     In May 2024, former model Crystal McKinney and April Lampros sued Combs. Ms. McKinney alleged that Combs drugged and sexually assaulted her at his recording studio in 2003. Mimicking what has now become a known pattern, Combs promised Ms. McKinney to help her with her modeling career in exchange for engaging in sexual conduct with him. Ms. Lampros, an intern at Arista Records, which was an owner of Bad Boy, also sued Combs in May 2024 in New York County Supreme Court for raping her on multiple occasions, secretly filming these acts, and showing the recordings to multiple people. Ms. Lampros also alleges that Combs ordered her to take drugs on one occasion before he raped her.

16.     In July 2024, former adult film star Adria English – who was employed by Combs as an entertainer at his infamous White Parties that brought together the biggest names in the music and entertainment industries – sued Combs in the Southern District of New York for sex trafficking, alleging that he required her to consume drinks laced with ecstasy and secretly recorded sexual acts.

17.     In September 2024, singer and songwriter Dawn Angelique Richard also sued Combs. Richard was employed by Combs as part of the girl group Danity Kane, formed by Combs, and later as a key member of Combs' band Diddy – Dirty Money. She sued Combs in New York for sexual assault, false imprisonment, and for subjecting her to hostile working conditions due to her gender, including degrading comments and threats. Ms. Richard has alleged that Combs regularly supplied others including minors with copious amounts of drugs and alcohol, and subjected them to sexual acts while they were sedated and/or unconscious due to the drugs and alcohol.

18.     In September 2024, a federal grand jury in Manhattan indicted Combs and charged

him with sex trafficking, racketeering and the "creation of a criminal enterprise in which he abused,

threatened and coerced women and others around him to fulfill his sexual desires, protect his

reputation and conceal his conduct." *See United States of America v. Sean Combs, a/k/a "Puff*

*Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love,"* Index No. 24 Crim. 542,

Indictment (SDNY), at ¶ 1.  The indictment explains that Combs' abuse of women and minors was

enabled by "the employees, resources and influence of the multi-faceted business empire that he

led and controlled – creating a criminal enterprise whose members and associates engaged in, and

attempted to engage in, among other crimes, sex-trafficking, forced labor, kidnapping, arson,

bribery and obstruction of justice."

19.     Combs' long history of violence against women unequivocally establishes that his

actions are motivated by gender – both men and women. Combs has a profound contempt for

women and a desire to dominate both minors and other men. His conduct shows a longstanding

practice of denigrating, defeating and attempting to humiliate men, women and children. His

practices and desires are different for men, women and children. But his actions are unequivocally

motivated by the victims' particular gender and age.

20.     Plaintiff's allegations herein substantially mirror Combs' prior conduct as

established through criminal indictments and other lawsuits. Through this case, Plaintiff seeks a

full measure of justice from a man who thought his power, money and influence rendered him

untouchable. Plaintiff joins many other victims by filing this Complaint in hopes their common

voice makes it impossible for Combs to assault another person ever again.

21.     The conduct complained of in many of the cases to be brought involve others who

facilitated, encouraged, or participated in the conduct alleged.

## **PARTIES**

22.     Plaintiff Jane Doe is a female who resides in Tennessee (the city has been left unpled for anonymity).

23.     Defendant Sean Combs is a male who, on information and belief, resides in New York City, through incarceration in the Metropolitan Detention Center in Brooklyn. On information and belief, at all relevant times Combs owned and/or controlled Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, Bad Boy Productions LLC, (collectively "Bad Boy"), Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC (all together, the "Combs Corporations"). The facts of Combs' ownership and titles at the Combs Corporations enabled him to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate her into silence after the rape.

24.     Defendant CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC ("Combs Global") is a limited liability company incorporated in Delaware that has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. On information and belief, all members of Combs Global are citizens of Delaware, New York, and/or California. On information and belief, Combs Global is an alter ego for Combs and/or a successor in interest to Combs' other corporations and/or was established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. Combs Global currently owns, controls, and/or oversees Bad Boy and Combs' other business ventures in the music, fashion, fragrance, beverage, marketing, film, television, and media industries.

25.     As part of his renowned Bad Boy record label and brand, Combs has established several corporate entities under the "Bad Boy" name over the past few decades, including but not limited to Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, and Bad Boy Productions LLC (together, "Bad Boy"). On information and belief, all Bad Boy corporate entities are alter egos for Combs, are controlled and/or directed by Combs, and/or were established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. On information and belief, all active Bad Boy entities are now owned and/or controlled by Combs and/or by Combs Global. Combs used the Bad Boy premises/recording studio and their ownership and titles at Bad Boy to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate her into silence after the rape.

　　　　a.  Defendant Bad Boy Entertainment Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Entertainment Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

　　　　b.  Defendant Bad Boy Productions Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West

Hollywood, California 90069. Bad Boy Productions Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

c. Defendant Bad Boy Books Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 1440 Broadway, 3rd Floor, New York, New York 10018. Bad Boy Books Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. The CEO listed on public filings is Eddie Norward Jr., with a listed address of 1710 Broadway, New York, New York 10019, the same address listed for Sean Combs in public filings for Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., and Daddy's House Recordings, Inc.

d. Defendant Bad Boy Records LLC is a Delaware limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Records LLC are citizens of Delaware, New York, and/or California. On information and belief, Bad Boy Records LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Records LLC is now owned and/or controlled by Combs and/or by Combs Global.

    e.  Defendant Bad Boy Entertainment LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Entertainment LLC are citizens of New York and/or California. Bad Boy Entertainment LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Entertainment LLC is now owned and/or controlled by Bad Boy Entertainment Holdings, Inc. and/or by Combs, and/or by Combs Global.

    f.  Defendant Bad Boy Productions LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Productions LLC are citizens of New York and/or California. Bad Boy Productions LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Productions LLC is now owned and/or controlled by Combs and/or by Combs Global.

    26.    Defendant Marriott International Inc. is a domestic business corporation doing business in New York, that on information and belief now has its principal place of business at 7750 Wisconsin Ave., Bethesda, Maryland 20814.  Marriot management was well aware of Combs and his activities. Marriot management and other personnel "looked the other way" rather than intervene. Marriot further benefitted and profited from the conduct described herein.

27.     Defendants Organizational Does 1-10 are currently unknown entities who were owned by and/or employed Defendant Combs and enabled the commission of the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities by name.

28.     Each of the Combs Corporations (a) aided and abetted Combs in committing the unlawful sexual violence against Plaintiff described herein, (b) are alter egos for Combs, completely dominated by him and used for his personal interests and to engage in wrongdoing which harmed Plaintiff and others, and/or (c) serve or have served as vehicles for Combs to move, dispose of, and/or insulate his assets, including in connection with his criminal activities and to avoid compensating the victims of his many crimes, including Plaintiff.

29.     Each of the Marriott entities conspired with and aided and abetted Combs in committing the unlawful sexual violence against Plaintiff described herein by serving or have served as vehicles for Combs to commit said sexual violence by and through use of Marriott's premise(s), hotel staff and employees and by profiting from such activities committed by Combs.

**JURISDICTION AND VENUE**

30.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this case is between citizens of different states, and the amount in controversy exceeds $75,000.

31.     This Court has specific personal jurisdiction over Defendants because the acts giving rise to Plaintiff's claims took place in New York State, and because several of the Defendants are domiciled in New York State and/or regularly transact business in New York State.

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**JURY DEMAND**

33.     Plaintiff hereby demands a trial by jury on her claims in this action.

## FACTUAL ALLEGATIONS

34.     Combs and his staff regularly invited members of the public to events such as music video shoots, photoshoots, autograph signings, in and around New York City. One such event took place in 2004 across the street from Jane Doe's college campus in Brooklyn, New York. Through Ms. Doe's friends and Combs' accomplices and agents, Ms. Doe received an invitation to Combs' photoshoot. She was nineteen years old at the time. She was flattered and excited to receive such an invitation from an individual of Combs' celebrity and stature.

35.     Ms. Doe accompanied her friends to the event and discovered that it was a photoshoot promoting "Da Band," a recording group Combs signed to his record label, Bad Boy Entertainment. At the photoshoot, she and one of her good friends, another freshman living in the dormitory with Ms. Doe, were eventually invited to an after party by Combs' business associates. Before leaving for the party, Ms. Doe had met Combs at the photoshoot. Combs told Ms. Doe and her friend that they should come to his hotel first for a more exclusive party. Ms. Doe and her friend agreed and were taken to a Manhattan area Marriott hotel by a member of Combs' entourage.

36.     Upon arriving at the hotel suite, Ms. Doe noticed that there were a dozen people there having drinks and listening to music in a relaxed party environment. While attempting to mingle around the party, Ms. Doe and her friend were suddenly grabbed and taken to a separate room off from the main party. Ms. Doe believed the man taking them to be a security guard, so she went with him. But when she asked him where they were going, he simply told her "You know what you are here for."

Case 2:24-cv-04755-NRM    Document 63-6    Filed 10/23/24    Page 4 of 19
Case 1:24-cv-07985-VRA    Document 63-6    Filed 10/23/24    Page 201 of 478
PageID: 1704

37.     After taking Ms. Doe and her friend to the bedroom, the security guard left the room
and locked the door. The only person in the room besides Ms. Doe and her friend was Combs.
Combs gave Ms. Doe and her friend more drinks, then instructed them to imbibe cocaine that he
had prepared for use on the coffee table. Ms. Doe did not want to do the cocaine. Combs continued
getting gradually more aggressive with the two women and eventually began forcibly touch them
without consent. When they resisted, Combs ordered Ms. Doe's friend to perform oral sex on him
or else he would have them both killed. Ms. Doe's friend complied as Ms. Doe begged Combs to
allow them to leave. He did not agree.

38.     Combs soon turned his sights to Ms. Doe and forced her to take her clothes off,
again under the threat of violence. Once she was undressed, Combs forced himself on her and
began to sexually assault her. Combs fondled, molested, and ultimately raped Ms. Doe, all while
she was begging him to stop. Soon, and likely due to Ms. Doe's cries, the door opened and the
security guard from earlier came in to ask if everything was alright. Ms. Doe's friend took the
opportunity to rush out of the recently locked door. Ms. Doe however, could not move as Mr.
Combs was still on top of her.

39.     Combs got off of Ms. Doe to talk to the security guard, he left the room but told
Ms. Doe to stay otherwise she would be killed. After about half an hour of sitting in the dark room
by herself, another security guard came and told her that she could leave. Ms. Doe gathered her
things and left immediately and called a taxi back to her dormitory in downtown Brooklyn.

**FIRST CAUSE OF ACTION**
**(Violation of New York City Victims of Gender-Motivated Violence Protection Act)**
**(All Defendants)**

40.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth
herein.

41.     By forcing sexual contact onto Plaintiff, specifically by physically assaulting and then forcibly raping Plaintiff, Defendant Combs committed a "crime of violence motivated by gender" under the Victims of Gender-Motivated Violence Protection Act ("VGMVPA") as defined in New York City Administrative Code § 10-1103.

42.     The requirement that the crime of violence be committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender is satisfied because Defendant Combs forced Plaintiff to engage in a sexual interaction without consent.

43.     The Combs Business enabled Combs to commit the crime of violence motivated by gender because Combs sexually assaulted Plaintiff at a hotel doing business with the Combs Business. On information and belief, Combs Businesses routinely committed sexual assault and gender-motivated violence, as detailed in other civil lawsuits, to further the business purpose of Combs' enterprise. Given Combs' long- standing pattern and practice of committing sexual violence against women, the Combs Business had and/or should have had knowledge of Combs using such venues for this unlawful conduct, and did nothing to stop it.

44.     The Combs Business enabled Combs to commit the crime of violence motivated by gender by failing to, among other things, protect Plaintiff from a known danger and/or have sufficient policies and procedures in place to prevent sexual assault and/or train their employees on identifying and preventing sexual assault. Given long-standing pattern and practice of committing sexual violence against women, including on premises owned and/or operated and/or used by Defendants for business purposes, the Combs Corporations had and/or should have had knowledge that Combs was a danger to Plaintiff, and did nothing to stop Combs.

45.     The Combs Business enabled Combs to commit the crime of violence motivated by gender by failing to properly supervise. The Combs Business had knowledge and/or should have

had knowledge of Combs' widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated and/or used for business purposes by Defendants, and did nothing to stop it.

46.     The Combs Corporations further enabled Combs to commit the crime of violence motivated by gender by actively placing, maintaining, and/or employing Combs in positions of power and authority, despite the fact that they knew and/or should have known that Combs had a widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants. Combs used his titles and authority conferred by the Combs Business, including as CEO, Founder, and Chairman to facilitate and perpetuate the violent assault on Plaintiff, and to intimidate and force Plaintiff to keep quiet in subsequent years.

47.     The Marriott defendants further enabled Combs to commit the crime of violence motivated by gender by turning a willful blind eye to his obvious conduct, including sexual violence against others; facilitating a venue and premise, including but not limited to a hotel room, to Combs and his associates in order to permit him to commit such acts of sexual violence; and profiting from Combs' sexual violence through room rates, room service and other monetary benefits paid by and through Combs and his corporations. There can be no doubt that Combs and his conduct was well known; he routinely had large parties at hotel venues. Numerous people, most of which were not guests at the hotel, would come and go. Many would leave intoxicated and disoriented. Large volumes of alcohol and drugs were consumed. Marriot profited from this conduct, rather than intervene and stop it.

48.     On information and belief, Plaintiff alleges that Defendant Organizational Does 1 through 10, inclusive, are other parties not yet identified who have enabled Combs to commit the crime of violence motivated by gender, in the ways articulated above and/or in other ways.

49.     Plaintiff alleges the existence of a conspiracy in order to connect the actions of the individual defendants with the actionable, underlying tort of VGMVPA, as the actions described herein were coupled with an agreement between all Defendants as co-conspirators regarding the tort and overt actions in furtherance of that agreement as further described herein.

50.     As a result of Defendants' actions, Plaintiff suffered damages in an amount to be determined at trial and pursuant to the fee-shifting provision of the statute.

51.     This legal action has been commenced within the statutory timeframe provided by the two-year look-back window for VGMVPA claims. *See* New York City Administrative Code § 10-1105.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

    a. Awarding compensatory damages for all physical injuries, emotional distress, psychological harm, anxiety, humiliation, physical and emotional pain and suffering, family and social disruption, and other harm, in an amount to be determined at trial;

    b. Awarding punitive damages in an amount to be determined at trial;

    c. Awarding attorneys' fees and costs pursuant to any applicable statute or law;

    d. Awarding pre- and post-judgment interest on all such damages, fees, and/or costs;

    e.   Attaching any and all of Defendants' real property and other assets located in

        the State of New York pursuant to Federal Rule of Civil Procedure 64; and

    f.   Awarding such other and further relief as this Court may deem just and proper.

Dated: OCTOBER 23, 2024

                          Respectfully submitted,

### THE BUZBEE LAW FIRM

By: */s/ Anthony G. Buzbee*
Anthony G. Buzbee
Texas Bar No. 24001820
tbuzbee@txattorneys.com
Christopher J. Leavitt
Texas Bar No. 24053318
cleavitt@txattorneys.com
Ryan S. Pigg
Texas Bar No. 24088227
rpigg@txattorneys.com
David C. Fortney
Texas Bar No. 24068740
dfortney@txattorneys.com
Colby Holler
Texas Bar No. 24126898
choller@txattorneys.com
Crystal Del Toro
Texas Bar No. 24090070
cdeltoro@txattorneys.com
J.P. Morgan Chase Tower
600 Travis, Suite 7500
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

*Attorneys for Plaintiff John Doe*

-   AND  -

**AVA LAW GROUP**
Andrew Van Arsdale
CA Bar No. 323370
andrew.vanarsdale@avalaw.com
3667 Voltaire Street, Ste. 101

San Diego, CA 92106
Telephone: (800) 777-4141
Facsimile: (619) 222-3667

-   AND  -

**CURIS LAW, PLLC**
By: /s/ *Antigone Curis*
Antigone Curis
antigone@curislaw.com
52 Duane Street, 7th Floor
New York, New York 10007
Phone: (646) 335-7220
Facsimile: (315) 660-2610

Exhibit F (ix): John Doe v. Sean Combs; 24-cv-08812

UNITED STATES DISTRICT COURT
SOUTHISN DISTRICT OF NEW YORK
-------------------------------------------------------X

John Doe,

                 *Plaintiff*,                      No. 1:24-cv-8812

            v.

SEAN COMBS, DADDY'S HOUSE RECORDINGS       **COMPLAINT AND**
INC., CE OPCO, LLC d/b/a COMBS GLOBAL        **DEMAND FOR**
f/k/a COMBS ENTERPRISES LLC,                    **JURY TRIAL**
BAD BOY ENTERTAINMENT HOLDINGS, INC.,
BAD BOY PRODUCTIONS HOLDINGS, INC.,
BAD BOY BOOKS HOLDINGS, INC., BAD BOY
RECORDS LLC, BAD BOY ENTERTAINMENT LLC,
BAD BOY PRODUCTIONS LLC,
ORGANIZATIONAL DOES 1-10, AND INDIVIDUAL
DOES 1-10

                *Defendants*.

-------------------------------------------------------X

        Plaintiff John Doe ("Plaintiff"), by and through his attorneys, The Buzbee Law

Firm, for his Complaint alleges as follows:

### **INTRODUCTION**

        1.     This case seeks compensatory and punitive damages for the violent sexual assault

of Plaintiff, by multiple individuals, after Plaintiff was lured to New York City to meet Defendant

Sean Combs for a possible acting role in a music video. The conduct described herein is shockingly

typical of how Combs conducted himself for many years. Many individuals and entities facilitated

and conspired with this abhorrent conduct. Sean Combs believed he was above the law. He is not.

        2.     For decades, Sean Combs (a/k/a "P. Diddy," a/k/a "Puff Daddy," a/k/a "Diddy,"

a/k/a "PD," and a/k/a "Love") (described herein as "Combs") abused, molested, raped, assaulted,

threatened and coerced men, women, minors and others for sexual gratification, to assert dominance, and to conceal his abhorrent conduct. He accomplished these acts by and through a criminal enterprise built on his success as a rapper, record producer and record executive. Combs is one of the wealthiest musical artists in the world. Behind the façade of being a three-time Grammy Award winner, discovering and developing multiple famous musical artists, and ranking on Forbes' list of the highest-paid entertainers in the world, there existed something sinister – a dark underbelly of crime, sex trafficking, forced labor, kidnapping, bribery and prostitution. Combs is a menace to society, women and children. While his wealth has kept him above consequence for years, Combs now faces the awesome power of the American judicial system and ultimately a jury of his peers, who will be asked to punish him for the deplorable conduct described herein.

*Combs' Businesses*

3. Combs' business enterprise is central to the pervasive acts of sexual assault and abuse committed by him during the last decades. Combs operated his business, headquartered at various times in Manhattan and Los Angeles, under a variety of United States-based corporate entities, including Bad Boy Entertainment, Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment, LLC, Bad Boy Productions, LLC, Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC, Combs Enterprises and Combs Global (collectively, the "Combs Business"). Corporate entities in the Combs Business portfolio included record labels, a recording studio, an apparel line, an alcoholic spirits promoting business, a marketing agency, talent discovery, a television network and a media company.

4. On the surface, each of these businesses served a legitimate purpose related to entertainment, music and other subjects. But in reality, Combs, by and through himself and his

agents, employees and contractors, used these businesses to sexually assault, abuse, threaten and coerce hundreds of individuals through sexual *quid pro quo* schemes, as well as to take advantage of individuals with impunity thinking the victims would never seek recourse. Combs and his agents, employees and contractors, through these Combs Businesses, would tell victims, "this is what it takes to be famous," "what are you willing to do to become a star?," and "perform this sexual act or else" to coerce the victim into performing a non-consensual sexual act for the gratification of Combs and his cohorts.

5.     Members and associates of the Combs Business engaged in (and/or attempted to engage in), among other activities, sex trafficking, forced labor, interstate transportation for the purposes of prostitution, coercion and enticement to engage in prostitution, narcotics offenses, kidnapping, arson, bribery, and obstruction of justice.

6.     The Combs Business constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of Combs.

*Combs' Pervasive History of Sexual Assault and Violence*

7.     For years Combs and his businesses engaged in a persistent and pervasive pattern of abuse toward women, men, and minors. This abuse was, at times, verbal, emotional, physical and sexual. As part of his pattern of abuse, Combs manipulated both men and women to participate in highly-orchestrated performances of sexual activity with both commercial sex workers and unsuspecting partygoers. In some cases these were individuals who were contractors or vendors. In other cases, they were random individuals pulled from a hotel lobby, a show, or off the street. Combs ensured participation from these individuals by, among other things, obtaining and distributing narcotics to them with or without their knowledge, controlling their careers, leveraging

his financial support and threatening to cut off the same, and using intimidation, violence, and illicit drugs.

8.     Combs, while celebrated for his business acumen and influence in the entertainment world, has often been described in a more troubling light as powerful, manipulative, and problematic. His aggressive tactics, both in business and personal dealings, have drawn criticism, with many viewing him as someone who leverages his power to intimidate and control. This darker side of Combs' persona has been underscored by the numerous lawsuits and allegations that have surfaced over the years. Despite his undeniable success, his rise to the top is marred by a reputation for being ruthless and manipulative, using his influence in ways that have left a trail of legal and personal controversies including but not limited to the following:

a.   Nightclub Shooting Incident (1999): Combs was embroiled in a high-profile case related to a nightclub shooting in New York, involving his then-girlfriend, Jennifer Lopez, and rapper Shyne. Combs was acquitted of all charges, though the case remains a significant legal event in his career.

b.   Multiple Assault Allegations: Combs has faced several lawsuits related to alleged physical assaults, many of which have been settled out of court.

c.   Business Disputes: Combs has been involved in various business-related legal conflicts, particularly surrounding his Sean John clothing line and other ventures. These disputes often involved contractual disagreements and trademark claims.

d.   Claims by Cassie Ventura: Combs' former girlfriend, Casandra "Cassie" Ventura, filed a lawsuit accusing him of years of physical, emotional, and sexual abuse during their relationship. Cassie alleged repeated instances of

assault, coerced sexual acts, and drug use, all contributing to an environment of fear and manipulation.

9.      Combs particularly fancied the use of the popular date-rape drug Rohypnol, or GHB, to commit heinous non-consensual acts of sexual violence and rape onto countless victims. Combs often would secretly use the drug in an alcoholic beverage served at his parties, typically champagne or "lemon drops." Partygoers were forced to consume the alcoholic beverage, containing GHB, either prior to entering or while at Combs' party. There are also allegations of Combs dousing victims in lotions or similar body oils, also laced with GHB, so that the drug would be absorbed through the victim's skin and make it easier to assault him or her.

10.     Combs' recurrent and pervasive physical abuse took place for multiple decades. His tendencies of violence and sexual assault were no doubt well known amongst his colleagues, employees, agents and businesses. On numerous occasions from at least on or about 1996 and continuing for years, Combs assaulted women and men by striking, punching, dragging, throwing objects at, and kicking them. Combs also assaulted children both physically and sexually.

11.     In 1996, Combs was found guilty of criminal mischief for threatening a photographer from the New York *Post* with a gun. In 1999, he was arrested and charged with second-degree assault and criminal mischief in connection with assaulting a record executive. Combs was arrested again the same year for his involvement in a shooting at a club in New York. Another instance of violence occurred at a Los Angeles hotel in or about March 2016, which was captured on video and later publicly reported, where Combs kicked, dragged and threw a vase at a woman as she was attempting to leave his hotel room. When hotel security staff intervened, Combs attempted to bribe the staff member to ensure silence.

Case 2:24-cv-07660-JFC Document 63-6 Filed 10/29/24 Page 2 of 22
Case 1:24-cv-09808-JFRB Document 6-3 Filed 11/29/24 Page 213 of 478
PageID: 1716

12.     In the past year, numerous civil complaints have been filed by plaintiffs who allege that they had been sexually abused by Combs between 1991 and 2009. In November 2023, three lawsuits were filed against Combs under the New York Adult Survivors Act. Cassie Ventura, an artist signed to Bad Boy, sued Combs in New York for rape and physical abuse. She alleged Combs facilitated these acts by and through supplying Ms. Ventura with copious amounts of drugs and urging her to take them, beginning in 2006.

13.     Joi Dickerson-Neal also sued Combs in New York, alleging Combs drugged her, sexually assaulted her and secretly recorded the assault in 1991.

14.     Liza Gardner, whom Combs met at an event hosted by a record label affiliated with Bad Boy, sued him for allegedly raping her and a friend in 1990 or 1991 when she was only 16.

15.     In December 2023, an anonymous Plaintiff sued Combs in New York for allegedly drugging and gang-raping her in 2003 when she was only seventeen years old. This victim alleged that employees and business associates of Combs, through their affiliation with the Bad Boy enterprise, lured her to Combs' home where Combs then raped her.

16.     In February 2024, Rodney "Lil Rod" Jones, one of Combs' former producers, sued Combs for allegedly forcing him to engage in unwanted sex acts and sex trafficking, among other allegations. Mr. Jones alleged that Combs regularly drugged others, including minors, by giving them drugs laced with ecstasy (MDMA) and other date rape drugs. Mr. Jones alleged that Combs in fact drugged him as well in order to commit acts of sexual assault.

17.     In May 2024, former model Crystal McKinney and April Lampros sued Combs. Ms. McKinney alleged that Combs drugged and sexually assaulted her at his recording studio in 2003. Mimicking what has now become a known pattern, Combs promised Ms. McKinney to help her with her modeling career in exchange for engaging in sexual conduct with him. Ms. Lampros,

an intern at Arista Records, which was an owner of Bad Boy, also sued Combs in May 2024 in New York County Supreme Court for raping her on multiple occasions, secretly filming these acts, and showing the recordings to multiple people. Ms. Lampros also alleges that Combs ordered her to take drugs on one occasion before he raped her.

18.     In July 2024, former adult film star Adria English – who was employed by Combs as an entertainer at his infamous White Parties that brought together the biggest names in the music and entertainment industries – sued Combs in the Southern District of New York for sex trafficking, alleging that he required her to consume drinks laced with ecstasy and secretly recorded the sexual acts.

19.     In September 2024, singer and songwriter Dawn Angelique Richard also sued Combs. Richard was employed by Combs as part of the girl group Danity Kane, formed by Combs, and later as a key member of Combs' band Diddy – Dirty Money. She sued Combs in New York for sexual assault, false imprisonment, and for subjecting her to hostile working conditions due to her gender, including degrading comments and threats. Ms. Richard has alleged that Combs regularly supplied others including minors with copious amounts of drugs and alcohol, and subjected them to sexual acts while they were sedated and/or unconscious due to the drugs and alcohol.

20.     In September 2024, a federal grand jury in Manhattan indicted Combs and charged him with sex trafficking, racketeering and the "creation of a criminal enterprise in which he abused, threatened and coerced women and others around him to fulfill his sexual desires, protect his reputation and conceal his conduct." *See United States of America v. Sean Combs, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love,"* Index No. 24 Crim. 542, Indictment (SDNY), at ¶ 1. The indictment explains that Combs' abuse of women and minors was

enabled and conspired with by "the employees, resources and influence of the multi-faceted business empire that he led and controlled – creating a criminal enterprise whose members and associates engaged in, and attempted to engage in, among other crimes, sex-trafficking, forced labor, kidnapping, arson, bribery and obstruction of justice."

21.     Combs' long history of violence unequivocally establishes that his actions are motivated by gender – both men and women. Combs has a profound contempt for women and a desire to dominate both minors and other men. His conduct shows a longstanding practice of denigrating, defeating and attempting to humiliate men, women and children. His practices and desires are different for men, women and children. But his actions are unequivocally motivated by the victims' particular gender and age.

22.     Plaintiff's allegations herein substantially mirror Combs' prior conduct as established through criminal indictments and other lawsuits. Through this case, Plaintiff seeks a full measure of justice from a man who thought his power, money and influence rendered him untouchable. Plaintiff joins many other victims by filing this Complaint in hopes their common voice makes it impossible for Combs to assault another person ever again.

## PARTIES

23.     Plaintiff John Doe is a male who resides in Texas.

24.     Defendant Sean Combs is a male who, on information and belief, resides in New York City, and who is otherwise currently incarcerated in the Metropolitan Detention Center in Brooklyn. On information and belief, at all relevant times Combs owned and/or controlled Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, Bad Boy Productions LLC, (collectively "Bad Boy"), Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a

Combs Global, f/k/a Combs Enterprises LLC (all together, the "Combs Corporations"). The facts of Combs' ownership and titles at the Combs Corporations enabled and conspired with him to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the sexual assault.

25.     Defendant Daddy's House Recordings, Inc. ("Daddy's House") is a domestic business corporation that is incorporated in New York and on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019. At the time of the events alleged herein, Daddy's House was a world-class recording studio owned by Combs located at 321 W 44th Street, Suite 201, New York, New York 10036. On information and belief, at all relevant times, Bad Boy and Combs together owned and operated Daddy's House. On information and belief, the Bad Boy recording studio was located on the premises of Daddy's House. Combs used the Daddy's House brand, stature and their ownership and titles at Daddy's House to commit the unlawful sexual violence against Plaintiff described herein.

26.     Defendant CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC ("Combs Global") is a limited liability company incorporated in Delaware that has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. On information and belief, all members of Combs Global are citizens of Delaware, New York, and/or California. On information and belief, Combs Global is an alter ego for Combs and/or a successor in interest to Combs' other corporations and/or was established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. Combs Global currently owns, controls, and/or oversees Bad Boy

and Combs' other business ventures in the music, fashion, fragrance, beverage, marketing, film, television, and media industries.

27.     As part of his renowned Bad Boy record label and brand, Combs has established several corporate entities under the "Bad Boy" name over the past few decades, including but not limited to Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, and Bad Boy Productions LLC (together, "Bad Boy"). On information and belief, all Bad Boy corporate entities are alter egos for Combs, are controlled and/or directed by Combs, and/or were established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. On information and belief, all active Bad Boy entities are now owned and/or controlled by Combs and/or by Combs Global. Combs used the Bad Boy premises/recording studio and their ownership and titles at Bad Boy to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the sexual assault.

> a.  Defendant Bad Boy Entertainment Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Entertainment Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

b.  Defendant Bad Boy Productions Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Productions Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

c.  Defendant Bad Boy Books Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 1440 Broadway, 3rd Floor, New York, New York 10018. Bad Boy Books Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. The CEO listed on public filings is Eddie Norward Jr., with a listed address of 1710 Broadway, New York, New York 10019, the same address listed for Sean Combs in public filings for Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., and Daddy's House Recordings, Inc.

d.  Defendant Bad Boy Records LLC is a Delaware limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Records LLC are citizens of Delaware, New York, and/or California. On information and belief, Bad Boy Records LLC is part of the Bad Boy enterprise and/or a successor-in-interest to

other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Records LLC is now owned and/or controlled by Combs and/or by Combs Global.

e.  Defendant Bad Boy Entertainment LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Entertainment LLC are citizens of New York and/or California. Bad Boy Entertainment LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Entertainment LLC is now owned and/or controlled by Bad Boy Entertainment Holdings, Inc. and/or by Combs, and/or by Combs Global.

f.  Defendant Bad Boy Productions LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Productions LLC are citizens of New York and/or California. Bad Boy Productions LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Productions LLC is now owned and/or controlled by Combs and/or by Combs Global.

28.  Defendants Organizational Does 1-10 are currently unknown entities who were owned by and/or employed Defendant Combs and enabled and conspired with the commission of

the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities by name.

29.     Defendants Individual Does 1-10 are currently unknown celebrities and/or persons of interest who enabled and/or conspired with the commission of the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individuals by name.

30.     Each of the Combs Corporations (a) aided and abetted Combs in committing the unlawful sexual violence against Plaintiff described herein, (b) are alter egos for Combs, completely dominated by him and used for his personal interests and to engage in wrongdoing which harmed Plaintiff and others, and/or (c) serve or have served as vehicles for Combs to move, dispose of, and/or insulate his assets, including in connection with his criminal activities and to avoid compensating the victims of his many crimes, including Plaintiff.

31.     Plaintiff reserves the right to add as defendants any individuals, including but not limited to celebrities and business entities.

## JURISDICTION AND VENUE

32.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this case is between citizens of different states, and the amount in controversy exceeds $75,000.

33.     This Court has specific personal jurisdiction over Defendants because the acts giving rise to Plaintiff's claims took place in New York State, and because several of the Defendants are domiciled in New York State and/or regularly transact business in New York State.

34.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including the violent assault of Plaintiff.

## JURY DEMAND

35.     Plaintiff hereby demands a trial by jury on his claims in this action.

## FACTUAL ALLEGATIONS

36.     In the late 90's and early 2000's Plaintiff was an actor, regularly traveling across the United States for auditions and roles on stage and screen. After finding out about a role playing a police officer in a music video, Plaintiff exchanged phone calls with a female casting director in New York.  In October 2001, he traveled to Manhattan to meet with her.

37.     Excited for his big break into music videos, Plaintiff booked a room at the Hotel Newton on Manhattan's Upper West Side, and arrived in New York City the night before his meeting. The next day around 2 p.m., Plaintiff reported to a hotel along the south side of Central Park, as instructed by the casting director. He checked in with reception, who directed him to a suite near the top of the hotel.  Plaintiff was met there by the casting director and a muscular, middle-aged African-American man, who indicated that he worked for Defendant Combs and appeared to be Combs' assistant or bodyguard. Plaintiff recalls approximately a dozen others in the room as well.

38.     Combs' bodyguard told Plaintiff to make himself comfortable on the couch, and began asking questions about Plaintiff's background and his fitness routines. Shortly after that, Combs arrived and introduced himself.  The bodyguard informed Combs that Plaintiff was "the white guy for the cop role."

39.     Combs began asking Plaintiff more questions about his experience and lifestyle. He asked Plaintiff if he was in New York with anyone or if he had any friends there. Plaintiff said "no" to both questions and indicated that he was just there for the audition. Combs told Plaintiff to stand up and take his shirt off. While Plaintiff was standing there, Combs asked him if he was

comfortable with potentially doing nude scenes, and then asked him to turn around. While he was

turning, Plaintiff heard Combs say "he'll do." Combs then told Plaintiff he could sit back down.

40.     Once Plaintiff sat back down, the casting director offered him an alcoholic drink,

which he declined. She then offered him a Diet Coke in a glass, which he drank, but noted that it

tasted strange. At that point, Plaintiff realized the casting director was the only female in the room.

The conversation continued regarding the music video and shooting schedule, but as time passed,

Plaintiff began to feel dizzy and nauseous. He asked to use the bathroom because he felt like he

might pass out. Shortly after that, Plaintiff did in fact pass out.

41.     Based on information and belief, Combs, by himself or through his

agents/employees, previously laced Plaintiff's drink with drugs, including but not limited to GHB

and/or ecstasy. This behavior towards Plaintiff mimics a pattern of Combs and his

agents/employees drugging unsuspecting victims in order to make it easier for Combs to sexually

assault that person. Unfortunately, Plaintiff was one such victim. A photograph of an exemplary

container used by Combs and/or his agents/employees to insert GHB into alcoholic drinks is seen

below:



---

[1] A picture of a vial recovered from a Combs cohort presumably containing illicit drugs.

42.     Plaintiff came to in a twilight state, still dizzy and nauseous, but semi-conscious and disoriented. As Plaintiff tried to get his bearings, he realized he was laying face-down across a large ottoman with his head and arms hanging off of one side, and the lower half of his body hanging off of the other. His pants were pulled down to his ankles and his shirt was pulled over his head. He felt a great deal of pain and realized, as he looked back, that he was being anally sodomized by Combs. His vision was blurry, but he recognized Combs' chest tattoo and the large gold chain with a jeweled cross on it that Combs wore during the interview. Plaintiff tried to fight him off, but felt dizzy and sick whenever he tried to move.  Additionally, Combs' bodyguard was holding Plaintiff down by the arms.

43.     Plaintiff recalls hearing a few other people in the room laughing and talking, and seeing what appeared to be camera flashes going off, but could not see anything directly at this point.

44.     When Combs was finished, he and the bodyguard stood up and the bodyguard started putting a condom on himself. Plaintiff tried to get up and move quickly but immediately felt another wave of dizziness and nausea. He could not support his own weight when he tried to stand, and passed out again.

45.     When he came to, he was being held in a kneeling position by a Caucasian man who was sitting on the couch in front of him and orally sodomizing him. Plaintiff tasted metal and believes some sort of device was holding his mouth open, because he tried to bite down but could not. Plaintiff later discovered he had a broken molar, requiring repair and a partial denture. The man verbally humiliated Plaintiff while assaulting him, referring to him as a "faggot" and a "pussy boy" who liked what was happening. Plaintiff recalls the brutality with which this man forced

himself into Plaintiff's mouth and throat, and Plaintiff passed out again from a lack of oxygen as the man ejaculated.

46.     The next time Plaintiff came to, he was on the floor and completely naked. He was more coherent at this point and could clearly see others in the room engaging in various sex acts, drinking, and/or smoking. Combs and the bodyguard remained, but Plaintiff no longer saw the female casting director.

47.     Embarrassed and violated, Plaintiff tried to cover himself up and started looking for his clothes. Once he found his pants, shirt and shoes, he ran for the door without his underwear and also without one of his prize possessions – a commemorative leather jacket he got from working as a stuntman on the film *Robocop*. Plaintiff never saw that jacket again. As he ran out, he heard someone near the door laugh and say "hope you had fun."

48.     Plaintiff made his way downstairs and managed to make it to the sidewalk before breaking down. It was near dusk at this point. A doorman asked Plaintiff if he was alright and Plaintiff responded that he just needed to get back to his hotel.

49.     The doorman helped Plaintiff get a cab, and he returned to his room at the Hotel Newton, where Plaintiff vomited and cried all night, replaying the trauma of what had just happened.  He feared others' disbelief and/or the perpetrators' retaliation if he told anyone. He changed his return flight to the next morning, to get home as soon as he could.

50.     Once back at home, Plaintiff tried to put the event out of his mind, but was reminded of it when he painfully defecated a used condom and realized he was bleeding rectally. When the bleeding did not stop for a couple of days, Plaintiff visited a local clinic and then a proctologist, who repaired Plaintiff's anus with a laser procedure. Plaintiff also ended up having to purchase false teeth to replace the two that were cracked as a result of the incident.

51.     In the aftermath of the assault, Plaintiff struggled with intense emotional pain and mental health issues, feeling disgusted and deeply depressed.

52.     Plaintiff has experienced a significant impact on his personal life; he has never married and often struggles to maintain relationships due to the assault.

53.     Plaintiff describes himself as an "all-American guy," yet acknowledges that not a day goes by without thoughts of the traumatic incident.

## FIRST CAUSE OF ACTION
### (Violation of New York City Victims of Gender-Motivated Violence Protection Act)
### (All Defendants)

54.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

55.     By forcing sexual contact onto Plaintiff, Defendant Combs committed a "crime of violence motivated by gender" under the Victims of Gender-Motivated Violence Protection Act ("VGMVPA") as defined in New York City Administrative Code § 10-1103.

56.     The requirement that the crime of violence be committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender is satisfied because Defendant Combs forced Plaintiff to engage in a sexual interaction without consent. Moreover, Combs' long history of violence and sexual abuse against men evinces a deep contempt and desire for domination over men.

57.     The Combs Business enabled and conspired with Combs to commit the crime of violence motivated by gender because Combs sexually assaulted Plaintiff at a party related to or referencing Combs Business. On information and belief, Combs Businesses routinely committed sexual assault and gender-motivated violence, as detailed in other civil lawsuits, to further the business purpose of Combs' enterprise. Given Combs' long-standing pattern and practice of

committing sexual violence against young men, the Combs Business had and/or should have had knowledge of Combs using such parties and venues for this unlawful conduct, and did nothing to stop it.

58.     The Combs Business enabled and conspired with Combs to commit the crime of violence motivated by gender by failing to, among other things, protect Plaintiff from a known danger and/or have sufficient policies and procedures in place to prevent sexual assault and/or train their employees on identifying and preventing sexual assault. Given Combs' long-standing pattern and practice of committing sexual violence against young men, including on premises owned and/or operated by Defendants, the Combs Corporations had and/or should have had knowledge that Combs was a danger to Plaintiff, and did nothing to stop Combs.

59.     The Combs Business enabled and conspired with Combs to commit the crime of violence motivated by gender by failing to properly supervise. The Combs Business had knowledge and/or should have had knowledge of Combs' widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants, and did nothing to stop it.

60.     The Combs Corporations further enabled and conspired with Combs to commit the crime of violence motivated by gender by actively placing, maintaining, and/or employing Combs in positions of power and authority, despite the fact that they knew and/or should have known that Combs had a widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants. Combs used his titles and authority conferred by the Combs Business, including as CEO, Founder, and Chairman to facilitate and perpetuate the violent assault on Plaintiff, and to intimidate and force Plaintiff to keep quiet in subsequent years.

61.     On information and belief, Plaintiff alleges that Defendants Organizational Does 1 through 10, inclusive, are other parties not yet identified who have enabled and conspired with Combs to commit the crime of violence motivated by gender, in the ways articulated above and/or in other ways.

62.     On information and belief, Plaintiff alleges that Defendants Individual Does 1 through 10, inclusive, are other parties not yet identified who have enabled and conspired with Combs to commit the crime of violence motivated by gender, in the ways articulated above and/or in other ways.

63.     As a result of Defendants' actions, Plaintiff suffered damages in an amount to be determined at trial and pursuant to the fee-shifting provision of the statute.

64.     This legal action has been commenced within the statutory timeframe provided by the two-year look-back window for VGMVPA claims. *See* New York City Administrative Code § 10-1105.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

       a.  Awarding compensatory damages for all physical injuries, emotional distress, psychological harm, anxiety, humiliation, physical and emotional pain and suffering, family and social disruption, and other harm, in an amount to be determined at trial;

       b.  Awarding punitive damages in an amount to be determined at trial;

       c.  Awarding attorneys' fees and costs pursuant to any applicable statute or law;

       d.  Awarding pre- and post-judgment interest on all such damages, fees, and/or costs;

e.   Attaching any and all of Defendants' real property and other assets located in

the State of New York pursuant to Federal Rule of Civil Procedure 64; and

f.   Awarding such other and further relief as this Court may deem just and

proper.

Dated:  November 19, 2024

Respectfully submitted,

**THE BUZBEE LAW FIRM**

By: */s/ Anthony G. Buzbee*
Anthony G. Buzbee
Texas Bar No. 24001820
tbuzbee@txattorneys.com
Christopher J. Leavitt
Texas Bar No. 24053318
cleavitt@txattorneys.com
Ryan S. Pigg
Texas Bar No. 24088227
rpigg@txattorneys.com
David C. Fortney
Texas Bar No. 24068740
dfortney@txattorneys.com
Thomas Colby Holler
Texas Bar No. 24126898
choller@txattorneys.com
Lionel Sims III
Texas Bar No. 24107465
lsims@txattorneys.com
Crystal Del Toro
Texas Bar No. 24090070
cdeltoro@txattorneys.com
J.P. Morgan Chase Tower
600 Travis, Suite 7500
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

*Attorneys for Plaintiff John Doe*

-   AND  -

**AVA LAW GROUP**
Andrew Van Arsdale
CA Bar No. 323370
andrew.vanarsdale@avalaw.com
3667 Voltaire Street, Ste. 101
San Diego, CA 92106
Telephone: (800) 777-4141
Facsimile: (619) 222-3667

- AND -

**CURIS LAW, PLLC**
By: */s/ Antigone Curis*
Antigone Curis
antigone@curislaw.com
52 Duane Street, 7th Floor
New York, New York 10007
Phone: (646) 335-7220
Facsimile: (315) 660-2610

Exhibit F (x): Jane Doe v. Sean Combs;1-24-cv-08813

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

Jane Doe,

                    *Plaintiff*,                                    No. 1:24-cv-8813

             v.

SEAN COMBS, DADDY'S HOUSE RECORDINGS                        **COMPLAINT AND**
INC., CE OPCO, LLC d/b/a COMBS GLOBAL                        **DEMAND FOR**
f/k/a COMBS ENTERPRISES LLC,                                **JURY TRIAL**
BAD BOY ENTERTAINMENT HOLDINGS, INC.,
BAD BOY PRODUCTIONS HOLDINGS, INC.,
BAD BOY BOOKS HOLDINGS, INC., BAD BOY
RECORDS LLC, BAD BOY ENTERTAINMENT LLC,
BAD BOY PRODUCTIONS LLC,
ORGANIZATIONAL DOES 1-10, AND INDIVIDUAL
DOES 1-10

                    *Defendants*.

-------------------------------------------------------X

          Plaintiff Jane Doe ("Plaintiff"), by and through her attorneys, The Buzbee Law

Firm, for her Complaint alleges as follows:

                              **INTRODUCTION**

          1.      This case seeks compensatory and punitive damages for a sexual assault of a 17-

year-old victim, which occurred at a Fourth of July party at Defendant Sean Combs' residence in

New York. The conduct described herein is shockingly typical of how Defendant Combs

conducted himself for many years. Many individuals and entities facilitated and conspired with

this abhorrent conduct. Sean Combs believed he was above the law. He is not.

          2.      For decades, Sean Combs (a/k/a "P. Diddy," a/k/a "Puff Daddy," a/k/a "Diddy,"

a/k/a "PD," and a/k/a "Love") (described herein as "Combs") abused, molested, raped, assaulted,

threatened and coerced men, women, minors and others for sexual gratification, to assert dominance, and to conceal his abhorrent conduct. He accomplished these acts by and through a criminal enterprise built on his success as a rapper, record producer and record executive. Combs is one of the wealthiest musical artists in the world. Behind the façade of being a three-time Grammy Award winner, discovering and developing multiple famous musical artists, and ranking on Forbes' list of the highest-paid entertainers in the world, there existed something sinister – a dark underbelly of crime, sex trafficking, forced labor, kidnapping, bribery and prostitution. Combs is a menace to society, women and children. While his wealth has kept him above consequence for years, Combs now faces the awesome power of the American judicial system and ultimately a jury of his peers, who will be asked to punish him for the deplorable conduct described herein.

*Combs' Businesses*

3.      Combs' business enterprise is central to the pervasive acts of sexual assault and abuse committed by him during the last decades. Combs operated his business, headquartered at various times in Manhattan and Los Angeles, under a variety of United States-based corporate entities, including Bad Boy Entertainment, Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment, LLC, Bad Boy Productions, LLC, Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC, Combs Enterprises and Combs Global (collectively, the "Combs Business"). Corporate entities in the Combs Business portfolio included record labels, a recording studio, an apparel line, an alcoholic spirits promoting business, a marketing agency, talent discovery, a television network and a media company.

4.      On the surface, each of these businesses served a legitimate purpose related to entertainment, music and other subjects. But in reality, Combs, by and through himself and his

agents, employees and contractors, used these businesses to sexually assault, abuse, threaten and coerce hundreds of individuals through sexual *quid pro quo* schemes, as well as to take advantage of individuals with impunity thinking the victims would never seek recourse. Combs and his agents, employees and contractors, through these Combs Businesses, would tell victims, "this is what it takes to be famous," "what are you willing to do to become a star?," and "perform this sexual act or else" to coerce the victim into performing a non-consensual sexual act for the gratification of Combs and his cohorts.

5.      Members and associates of the Combs Business engaged in (and/or attempted to engage in), among other activities, sex trafficking, forced labor, interstate transportation for the purposes of prostitution, coercion and enticement to engage in prostitution, narcotics offenses, kidnapping, arson, bribery, and obstruction of justice.

6.      The Combs Business constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of Combs.

*Combs' Pervasive History of Sexual Assault and Violence*

7.      For years Combs and his businesses engaged in a persistent and pervasive pattern of abuse toward women, men, and minors. This abuse was, at times, verbal, emotional, physical and sexual. As part of his pattern of abuse, Combs manipulated both men and women to participate in highly-orchestrated performances of sexual activity with both commercial sex workers and unsuspecting partygoers. In some cases these were individuals who were contractors or vendors. In other cases, they were random individuals pulled from a hotel lobby, a show, or off the street. Combs ensured participation from these individuals by, among other things, obtaining and distributing narcotics to them with or without their knowledge, controlling their careers, leveraging

his financial support and threatening to cut off the same, and using intimidation, violence, and illicit drugs.

8.      Combs, while celebrated for his business acumen and influence in the entertainment world, has often been described in a more troubling light as powerful, manipulative, and problematic. His aggressive tactics, both in business and personal dealings, have drawn criticism, with many viewing him as someone who leverages his power to intimidate and control. This darker side of Combs' persona has been underscored by the numerous lawsuits and allegations that have surfaced over the years. Despite his undeniable success, his rise to the top is marred by a reputation for being ruthless and manipulative, using his influence in ways that have left a trail of legal and personal controversies including but not limited to the following:

a.  Nightclub Shooting Incident (1999): Combs was embroiled in a high-profile case related to a nightclub shooting in New York, involving his then-girlfriend, Jennifer Lopez, and rapper Shyne. Combs was acquitted of all charges, though the case remains a significant legal event in his career.

b.  Multiple Assault Allegations: Combs has faced several lawsuits related to alleged physical assaults, many of which have been settled out of court.

c.  Business Disputes: Combs has been involved in various business-related legal conflicts, particularly surrounding his Sean John clothing line and other ventures. These disputes often involved contractual disagreements and trademark claims.

d.  Claims by Cassie Ventura: Combs' former girlfriend, Casandra "Cassie" Ventura, filed a lawsuit accusing him of years of physical, emotional, and sexual abuse during their relationship. Cassie alleged repeated instances of

Case 2:24-cv-04303-JFAK    Document 163-6    Filed 10/29/25    Page 5 of 35
Case 1:24-cv-07990-JGK    Document 63-6    Filed 10/24/25    Page 235 of 478
PageID: 1738

assault, coerced sexual acts, and drug use, all contributing to an environment of
fear and manipulation.

9.      Combs particularly fancied the use of the popular date-rape drug Rohypnol, or
GHB, to commit heinous non-consensual acts of sexual violence and rape onto countless victims.
Combs often would secretly use the drug in an alcoholic beverage served at his parties, typically
champagne or "lemon drops." Partygoers were forced to consume the alcoholic beverage,
containing GHB, either prior to entering or while at Combs' party. There are also allegations of
Combs dousing victims in lotions or similar body oils, also laced with GHB, so that the drug would
be absorbed through the victim's skin and make it easier to assault him or her.

10.     Combs' recurrent and pervasive physical abuse took place for multiple decades.
His tendencies of violence and sexual assault were no doubt well known amongst his colleagues,
employees, agents and businesses. On numerous occasions from at least on or about 1996 and
continuing for years, Combs assaulted women and men by striking, punching, dragging, throwing
objects at, and kicking them. Combs also assaulted children both physically and sexually.

11.     In 1996, Combs was found guilty of criminal mischief for threatening a
photographer from the New York *Post* with a gun. In 1999, he was arrested and charged with
second-degree assault and criminal mischief in connection with assaulting a record executive.
Combs was arrested again the same year for his involvement in a shooting at a club in New York.
Another instance of violence occurred at a Los Angeles hotel in or about March 2016, which was
captured on video and later publicly reported, where Combs kicked, dragged and threw a vase at
a woman as she was attempting to leave his hotel room. When hotel security staff intervened,
Combs attempted to bribe the staff member to ensure silence.

12.     In the past year, numerous civil complaints have been filed by plaintiffs who allege that they had been sexually abused by Combs between 1991 and 2009. In November 2023, three lawsuits were filed against Combs under the New York Adult Survivors Act. Cassie Ventura, an artist signed to Bad Boy, sued Combs in New York for rape and physical abuse. She alleged Combs facilitated these acts by and through supplying Ms. Ventura with copious amounts of drugs and urging her to take them, beginning in 2006.

13.     Joi Dickerson-Neal also sued Combs in New York, alleging Combs drugged her, sexually assaulted her and secretly recorded the assault in 1991.

14.     Liza Gardner, whom Combs met at an event hosted by a record label affiliated with Bad Boy, sued him for allegedly raping her and a friend in 1990 or 1991 when she was only 16.

15.     In December 2023, an anonymous Plaintiff sued Combs in New York for allegedly drugging and gang-raping her in 2003 when she was only seventeen years old. This victim alleged that employees and business associates of Combs, through their affiliation with the Bad Boy enterprise, lured her to Combs' home where Combs then raped her.

16.     In February 2024, Rodney "Lil Rod" Jones, one of Combs' former producers, sued Combs for allegedly forcing him to engage in unwanted sex acts and sex trafficking, among other allegations. Mr. Jones alleged that Combs regularly drugged others, including minors, by giving them drugs laced with ecstasy (MDMA) and other date rape drugs. Mr. Jones alleged that Combs in fact drugged him as well in order to commit acts of sexual assault.

17.     In May 2024, former model Crystal McKinney and April Lampros sued Combs. Ms. McKinney alleged that Combs drugged and sexually assaulted her at his recording studio in 2003. Mimicking what has now become a known pattern, Combs promised Ms. McKinney to help her with her modeling career in exchange for engaging in sexual conduct with him. Ms. Lampros,

an intern at Arista Records, which was an owner of Bad Boy, also sued Combs in May 2024 in

New York County Supreme Court for raping her on multiple occasions, secretly filming these acts,

and showing the recordings to multiple people. Ms. Lampros also alleges that Combs ordered her

to take drugs on one occasion before he raped her.

18.      In July 2024, former adult film star Adria English – who was employed by Combs

as an entertainer at his infamous White Parties that brought together the biggest names in the music

and entertainment industries – sued Combs in the Southern District of New York for sex

trafficking, alleging that he required her to consume drinks laced with ecstasy and secretly

recorded the sexual acts.

19.      In September 2024, singer and songwriter Dawn Angelique Richard also sued

Combs. Richard was employed by Combs as part of the girl group Danity Kane, formed by Combs,

and later as a key member of Combs' band Diddy – Dirty Money. She sued Combs in New York

for sexual assault, false imprisonment, and for subjecting her to hostile working conditions due to

her gender, including degrading comments and threats. Ms. Richard has alleged that Combs

regularly supplied others including minors with copious amounts of drugs and alcohol, and

subjected them to sexual acts while they were sedated and/or unconscious due to the drugs and

alcohol.

20.      In September 2024, a federal grand jury in Manhattan indicted Combs and charged

him with sex trafficking, racketeering and the "creation of a criminal enterprise in which he abused,

threatened and coerced women and others around him to fulfill his sexual desires, protect his

reputation and conceal his conduct." *See United States of America v. Sean Combs, a/k/a "Puff*

*Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love*," Index No. 24 Crim. 542,

Indictment (SDNY), at ¶ 1.  The indictment explains that Combs' abuse of women and minors was

enabled and conspired with by "the employees, resources and influence of the multi-faceted business empire that he led and controlled – creating a criminal enterprise whose members and associates engaged in, and attempted to engage in, among other crimes, sex-trafficking, forced labor, kidnapping, arson, bribery and obstruction of justice."

21.     Combs' long history of violence unequivocally establishes that his actions are motivated by gender – both men and women. Combs has a profound contempt for women and a desire to dominate both minors and other men. His conduct shows a longstanding practice of denigrating, defeating and attempting to humiliate men, women and children. His practices and desires are different for men, women and children. But his actions are unequivocally motivated by the victims' particular gender and age.

22.     Plaintiff's allegations herein substantially mirror Combs' prior conduct as established through criminal indictments and other lawsuits. Through this case, Plaintiff seeks a full measure of justice from a man who thought his power, money and influence rendered him untouchable. Plaintiff joins many other victims by filing this Complaint in hopes their common voice makes it impossible for Combs to assault another person ever again.

## **PARTIES**

23.     Plaintiff Jane Doe is a female who resides in Texas.

24.     Defendant Sean Combs is a male who, on information and belief, resides in New York City, and who is otherwise currently incarcerated in the Metropolitan Detention Center in Brooklyn. On information and belief, at all relevant times Combs owned and/or controlled Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, Bad Boy Productions LLC, (collectively "Bad Boy"), Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a

Combs Global, f/k/a Combs Enterprises LLC (all together, the "Combs Corporations"). The facts of Combs' ownership and titles at the Combs Corporations enabled and conspired with him to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate her into silence after the sexual assault.

25.     Defendant Daddy's House Recordings, Inc. ("Daddy's House") is a domestic business corporation that is incorporated in New York and on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019. At the time of the events alleged herein, Daddy's House was a world-class recording studio owned by Combs located at 321 W 44th Street, Suite 201, New York, New York 10036. On information and belief, at all relevant times, Bad Boy and Combs together owned and operated Daddy's House. On information and belief, the Bad Boy recording studio was located on the premises of Daddy's House. Combs used the Daddy's House brand, stature and their ownership and titles at Daddy's House to commit the unlawful sexual violence against Plaintiff described herein.

26.     Defendant CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC ("Combs Global") is a limited liability company incorporated in Delaware that has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. On information and belief, all members of Combs Global are citizens of Delaware, New York, and/or California. On information and belief, Combs Global is an alter ego for Combs and/or a successor in interest to Combs' other corporations and/or was established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. Combs Global currently owns, controls, and/or oversees Bad Boy

and Combs' other business ventures in the music, fashion, fragrance, beverage, marketing, film, television, and media industries.

27.     As part of his renowned Bad Boy record label and brand, Combs has established several corporate entities under the "Bad Boy" name over the past few decades, including but not limited to Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, and Bad Boy Productions LLC (together, "Bad Boy"). On information and belief, all Bad Boy corporate entities are alter egos for Combs, are controlled and/or directed by Combs, and/or were established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. On information and belief, all active Bad Boy entities are now owned and/or controlled by Combs and/or by Combs Global. Combs used the Bad Boy premises/recording studio and their ownership and titles at Bad Boy to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the sexual assault.

   a.   Defendant Bad Boy Entertainment Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Entertainment Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

b. Defendant Bad Boy Productions Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Productions Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

c. Defendant Bad Boy Books Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 1440 Broadway, 3rd Floor, New York, New York 10018. Bad Boy Books Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. The CEO listed on public filings is Eddie Norward Jr., with a listed address of 1710 Broadway, New York, New York 10019, the same address listed for Sean Combs in public filings for Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., and Daddy's House Recordings, Inc.

d. Defendant Bad Boy Records LLC is a Delaware limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Records LLC are citizens of Delaware, New York, and/or California. On information and belief, Bad Boy Records LLC is part of the Bad Boy enterprise and/or a successor-in-interest to

other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Records LLC is now owned and/or controlled by Combs and/or by Combs Global.

e. Defendant Bad Boy Entertainment LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Entertainment LLC are citizens of New York and/or California. Bad Boy Entertainment LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Entertainment LLC is now owned and/or controlled by Bad Boy Entertainment Holdings, Inc. and/or by Combs, and/or by Combs Global.

f. Defendant Bad Boy Productions LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Productions LLC are citizens of New York and/or California. Bad Boy Productions LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Productions LLC is now owned and/or controlled by Combs and/or by Combs Global.

28. Defendants Organizational Does 1-10 are currently unknown entities who were owned by and/or employed Defendant Combs and enabled and conspired with the commission of

the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities by name.

29.    Defendants Individual Does 1-10 are currently unknown celebrities and/or persons of interest who enabled and/or conspired with the commission of the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individuals by name.

30.    Each of the Combs Corporations (a) aided and abetted Combs in committing the unlawful sexual violence against Plaintiff described herein, (b) are alter egos for Combs, completely dominated by him and used for his personal interests and to engage in wrongdoing which harmed Plaintiff and others, and/or (c) serve or have served as vehicles for Combs to move, dispose of, and/or insulate his assets, including in connection with his criminal activities and to avoid compensating the victims of his many crimes, including Plaintiff.

31.    Plaintiff reserves the right to add as defendants any individuals, including but not limited to celebrities and business entities.

## JURISDICTION AND VENUE

32.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this case is between citizens of different states, and the amount in controversy exceeds $75,000.

33.    This Court has specific personal jurisdiction over Defendants because the acts giving rise to Plaintiff's claims took place in New York State, and because several of the Defendants are domiciled in New York State and/or regularly transact business in New York State.

34.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including the recruitment of Plaintiff described herein.

## JURY DEMAND

35.     Plaintiff hereby demands a trial by jury on her claims in this action.

## FACTUAL ALLEGATIONS

36.     On or around July 4, 2004, Plaintiff, a seventeen-year-old model at the time, attended a modeling gig in Manhattan.  Afterwards, she was approached by two men in a dark SUV.  The men gave her a flyer for a party happening later that evening.

37.     Plaintiff decided to go to the party, and dialed the number on the flyer.  Shortly after, a car picked her and a friend up and brought them to the party.

38.     The party turned out to be one of Defendant Combs' infamous Fourth of July parties at his estate in the Hamptons.  Combs' Hamptons parties regularly attracted A-list celebrities from across the entertainment, fashion, and business worlds, and this one was no different. The event was lavishly decorated, featured live music performances, and boasted top-tier food and beverages – an atmosphere of opulence and luxury, full of celebrities.  Many unsuspecting individuals, like Plaintiff, were recruited to attend these parties. Some of this recruitment, as with Plaintiff, took place in Manhattan.

39.     When Plaintiff arrived, Combs' staff at the front door required her to hand over her purse and her cellphone prior to entering.

40.     Plaintiff recognized numerous celebrities in attendance as she walked around the party.  Servers circulated through the rooms of the mansions with trays of drinks, and Plaintiff decided to have one.  Shortly after drinking it, Plaintiff began to feel lightheaded and disoriented. Based on information and belief, Combs, by himself or through his agents/employees, previously laced the drink with drugs, including but not limited to GHB and/or ecstasy. This behavior towards Plaintiff mimics a pattern of Combs and his agents/employees drugging unsuspecting victims in

order to make it easier for Combs to sexually assault that person. Unfortunately, Plaintiff was one

such victim. A photograph of an exemplary container used by Combs and/or his agents/employees

to insert GHB into alcoholic drinks is seen below:


[1]

41.    As she grew increasingly disoriented, Plaintiff searched for a place to sit.  She

stumbled to a couch and promptly lost consciousness.

42.    When she awoke, Plaintiff's underwear was missing, and she felt throbbing pains

in her vaginal and anal areas.

43.    At this point, Plaintiff was alone and she could not find the friend who had

accompanied her to the party.  In a state of panic, she began to hyperventilate and cry.

44.    Combs and two of his bodyguards approached Plaintiff and threatened her.  Combs

told Plaintiff that she would be in danger if she spoke about what had occurred, stating that he "ran

New York and would ruin her." At this point, Plaintiff recognized that at least Combs had sexually

assaulted her while she was unconscious. She feared for her life.

---

[1] A picture of a vial recovered from a Combs cohort presumably containing illicit drugs.

45.    Plaintiff was coerced into agreeing not to contact the police in exchange for the return of her purse and phone. She agreed out of fear of what would happen if she did not.

46.    Combs' security team then escorted Plaintiff out of Combs' estate and into a car, dropping her off at the Hedges Inn in East Hampton. Plaintiff was taken to the hotel alone, and did not see her friend again for two days.

47.    Out of fear of retaliation, Plaintiff did not file a police report or seek medical attention.

48.    In the aftermath of the assault, Plaintiff experienced and continues to experience intense emotional pain and mental health issues, including post-traumatic stress disorder, depression and anxiety.

## FIRST CAUSE OF ACTION
### (Violation of New York City Victims of Gender-Motivated Violence Protection Act)
### (All Defendants)

49.    Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

50.    By forcing sexual contact onto Plaintiff, Defendant Combs committed a "crime of violence motivated by gender" under the Victims of Gender-Motivated Violence Protection Act ("VGMVPA") as defined in New York City Administrative Code § 10-1103.

51.    The requirement that the crime of violence be committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender is satisfied because Defendant Combs forced Plaintiff to engage in a sexual interaction without consent. Moreover, Combs' long history of violence and sexual abuse against women evinces a deep contempt and desire for domination over women.

52.     The Combs Business enabled and conspired with Combs to commit the crime of violence motivated by gender because Combs sexually assaulted Plaintiff at a party related to or referencing Combs Business. On information and belief, Combs Businesses routinely committed sexual assault and gender-motivated violence, as detailed in other civil lawsuits, to further the business purpose of Combs' enterprise. Given Combs' long-standing pattern and practice of committing sexual violence against young men, the Combs Business had and/or should have had knowledge of Combs using such parties and venues for this unlawful conduct, and did nothing to stop it.

53.     The Combs Business enabled and conspired with Combs to commit the crime of violence motivated by gender by failing to, among other things, protect Plaintiff from a known danger and/or have sufficient policies and procedures in place to prevent sexual assault and/or train their employees on identifying and preventing sexual assault. Given Combs' long-standing pattern and practice of committing sexual violence against young men, including on premises owned and/or operated by Defendants, the Combs Corporations had and/or should have had knowledge that Combs was a danger to Plaintiff, and did nothing to stop Combs.

54.     The Combs Business enabled and conspired with Combs to commit the crime of violence motivated by gender by failing to properly supervise. The Combs Business had knowledge and/or should have had knowledge of Combs' widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants, and did nothing to stop it.

55.     The Combs Corporations further enabled and conspired with Combs to commit the crime of violence motivated by gender by actively placing, maintaining, and/or employing Combs in positions of power and authority, despite the fact that they knew and/or should have known that

Combs had a widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants. Combs used his titles and authority conferred by the Combs Business, including as CEO, Founder, and Chairman to facilitate and perpetuate the violent assault on Plaintiff, and to intimidate and force Plaintiff to keep quiet in subsequent years.

56.    On information and belief, Plaintiff alleges that Defendants Organizational Does 1 through 10, inclusive, are other parties not yet identified who have enabled and conspired with Combs to commit the crime of violence motivated by gender, in the ways articulated above and/or in other ways.

57.    On information and belief, Plaintiff alleges that Defendants Individual Does 1 through 10, inclusive, are other parties not yet identified who have enabled and conspired with Combs to commit the crime of violence motivated by gender, in the ways articulated above and/or in other ways.

58.    As a result of Defendants' actions, Plaintiff suffered damages in an amount to be determined at trial and pursuant to the fee-shifting provision of the statute.

59.    This legal action has been commenced within the statutory timeframe provided by the two-year look-back window for VGMVPA claims. *See* New York City Administrative Code § 10-1105.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

a.    Awarding compensatory damages for all physical injuries, emotional distress, psychological harm, anxiety, humiliation, physical and emotional pain and

suffering, family and social disruption, and other harm, in an amount to be

determined at trial;

b.  Awarding punitive damages in an amount to be determined at trial;

c.  Awarding attorneys' fees and costs pursuant to any applicable statute or law;

d.  Awarding pre- and post-judgment interest on all such damages, fees, and/or

costs;

e.  Attaching any and all of Defendants' real property and other assets located in

the State of New York pursuant to Federal Rule of Civil Procedure 64; and

f.  Awarding such other and further relief as this Court may deem just and

proper.

Dated:  November 19, 2024

Respectfully submitted,

**THE BUZBEE LAW FIRM**

By: */s/ Anthony G. Buzbee*
Anthony G. Buzbee
Texas Bar No. 24001820
tbuzbee@txattorneys.com
Christopher J. Leavitt
Texas Bar No. 24053318
cleavitt@txattorneys.com
Ryan S. Pigg
Texas Bar No. 24088227
rpigg@txattorneys.com
David C. Fortney
Texas Bar No. 24068740
dfortney@txattorneys.com
Thomas Colby Holler
Texas Bar No. 24126898
choller@txattorneys.com
Lionel Sims III
Texas Bar No. 24107465
lsims@txattorneys.com
Crystal Del Toro

Texas Bar No. 24090070
cdeltoro@txattorneys.com
J.P. Morgan Chase Tower
600 Travis, Suite 7500
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

*Attorneys for Plaintiff Jane Doe*

-   AND  -

**AVA LAW GROUP**
Andrew Van Arsdale
CA Bar No. 323370
andrew.vanarsdale@avalaw.com
3667 Voltaire Street, Ste. 101
San Diego, CA 92106
Telephone: (800) 777-4141
Facsimile: (619) 222-3667

-   AND  -

**CURIS LAW, PLLC**
By: */s/ Antigone Curis*
Antigone Curis
antigone@curislaw.com
52 Duane Street, 7th Floor
New York, New York 10007
Phone: (646) 335-7220
Facsimile: (315) 660-2610

Exhibit F (xi): Jane Doe v. Combs;1-24-cv-07778

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

John Doe,

                  *Plaintiff*,                        No. _____

          v.

SEAN COMBS, DADDY'S                     **COMPLAINT AND**
HOUSE RECORDINGS INC., CE OPCO, LLC d/b/a     **DEMAND FOR**
COMBS GLOBAL f/k/a COMBS ENTERPRISES LLC,   **JURY TRIAL**
BAD BOY ENTERTAINMENT HOLDINGS, INC.,
BAD BOY PRODUCTIONS HOLDINGS, INC.,
BAD BOY BOOKS HOLDINGS, INC., BAD BOY
RECORDS LLC, BAD BOY ENTERTAINMENT LLC,
BAD BOY PRODUCTIONS LLC, AND
ORGANIZATIONAL DOES 1-10,

                  *Defendants*.

--------------------------------------------------------X

        Plaintiff John Doe ("Plaintiff"), by and through his attorneys, The Buzbee Law

Firm, for his Complaint alleges as follows:

## **INTRODUCTION**

        1.     This case seeks compensatory and punitive damages for the sexual assault of a

minor. The assault, which was part of a practice that Defendant Sean Combs had of grooming or

attempting to groom minors, occurred at what was termed a "white party" at Combs' residence in

New York. The conduct described herein is shockingly typical of Defendant Sean Combs. Combs

was aided in his abhorrent conduct over the years by many individuals and entities. Sean Combs

for many years believed he was above the law. He is not.

        2.     For decades, Sean Combs (a/k/a "P. Diddy," a/k/a "Puff Daddy," a/k/a "Diddy,"

a/k/a "PD," and a/k/a "Love") (described herein as "Combs") abused, molested, raped, assaulted,

threatened and coerced men, women, minors and others for sexual gratification, to assert dominance, and to conceal his abhorrent conduct. He accomplished these acts by and through a criminal enterprise built on his success as a rapper, record producer and record executive. Combs is one of the wealthiest musical artists in the world. Behind the façade of being a three-time Grammy Award winner, discovering and developing multiple famous musical artists, and ranking on Forbes' list of the highest-paid entertainers in the world, there existed something sinister—a dark underbelly of crime, sex trafficking, forced labor, kidnapping, bribery and prostitution. Combs is a menace to society, women and children. While his wealth has kept him above consequence for years, Combs now faces the awesome power of the American judicial system and ultimately a jury of his peers who will be asked to punish him for the deplorable conduct described herein.

*Combs' Businesses*

3.     Combs' business enterprise is central to the pervasive acts of sexual assault and abuse committed by him during the last decades. Combs operated his business, headquartered at various times in Manhattan and Los Angeles, under a variety of United States-based corporate entities, including Bad Boy Entertainment, Bad Boy Books Holdings, Inc., Bad Boy Records, LLC, Bad Boy Entertainment, LLC, Bad Boy Productions, LLC, Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises, LLC, Combs Enterprises and Combs Global (collectively, the "Combs Business"). Corporate entities in the Combs Business portfolio included record labels, a recording studio, an apparel line, an alcoholic spirits promoting business, a marketing agency, talent discovery, a television network and media company.

4.      On the surface, each of these businesses served a legitimate purpose related to entertainment, music and other subjects. But in reality, Combs, by and through himself and his agents, employees and contractors, used these businesses to sexually assault, abuse, threaten and coerce hundreds of individuals through sexual *quid pro quo* schemes, as well as to take advantage of individuals with impunity thinking the victims would never seek recourse. Combs and his agents, employees and contractors, through these Combs Businesses, would tell victims, "this is what it takes to be famous," "what are you willing to do to become a star?," and "perform this sexual act or else" to coerce the victim into performing a non-consensual sexual act for the gratification of Combs and his cohorts.

5.      Members and associates of the Combs Business engaged in (and/or attempted to engage in), among other activities, sex trafficking, forced labor, interstate transportation for the purposes of prostitution, coercion and enticement to engage in prostitution, narcotics offenses, kidnapping, arson, bribery, and obstruction of justice.

6.      The Combs Business constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of Combs.

*Combs' Pervasive History of Sexual Assault and Violence*

7.      For years Combs and his businesses engaged in a persistent and pervasive pattern of abuse toward women, men, and minors. This abuse was, at times, verbal, emotional, physical and sexual. As part of his pattern of abuse, Combs manipulated both men and women to participate in highly-orchestrated performances of sexual activity with both commercial sex workers and unsuspecting partygoers. In some cases these were individuals who were contractors or vendors. In other cases, they were random individuals pulled from a hotel lobby, a show, or off the street. Combs ensured participation from these individuals by, among other things, obtaining and

3

distributing narcotics to them with or without their knowledge, controlling their careers, leveraging his financial support and threatening to cut off the same, and using intimidation, violence, and illicit drugs.

8.      Combs, while celebrated for his business acumen and influence in the entertainment world, has often been described in a more troubling light as powerful, manipulative, and problematic. His aggressive tactics, both in business and personal dealings, have drawn criticism, with many viewing him as someone who leverages his power to intimidate and control. This darker side of Combs' persona has been underscored by the numerous lawsuits and allegations that have surfaced over the years. Despite his undeniable success, his rise to the top is marred by a reputation for being ruthless and manipulative, using his influence in ways that have left a trail of legal and personal controversies including but not limited to the following:

a. Nightclub Shooting Incident (1999): Combs was embroiled in a high-profile case related to a nightclub shooting in New York, involving his then-girlfriend, Jennifer Lopez, and rapper Shyne. Combs was acquitted of all charges, though the case remains a significant legal event in his career.

b. Multiple Assault Allegations: Combs has faced several lawsuits related to alleged physical assaults, many of which have been settled out of court.

c. Business Disputes: Combs has been involved in various business-related legal conflicts, particularly surrounding his Sean John clothing line and other ventures. These disputes often involved contractual disagreements and trademark claims.

d. Claims by Cassie Ventura: Combs' former girlfriend, Casandra "Cassie" Ventura, filed a lawsuit accusing him of years of physical, emotional, and

4

sexual abuse during their relationship. Cassie alleged repeated instances of assault, coerced sexual acts, and drug use, all contributing to an environment of fear and manipulation.

9.     Combs particularly fancied the use of the popular date-rape drug Rohypnol, or GHB, to commit heinous non-consensual acts of sexual violence and rape onto countless victims. Combs often would secretly use the drug in an alcoholic beverage served at his parties, typically champagne or "lemon drops." Partygoers were forced to consume the alcoholic beverage, containing GHB, either prior to entering or while at Combs' party. There are also allegations of Combs dousing victims in lotions or similar body oils, also laced with GBH, so that the drug would be absorbed through the victim's skin and make it easier to assault him or her.

10.     Combs' recurrent and pervasive physical abuse took place for multiple decades. His tendencies of violence and sexual assault were no doubt well known amongst his colleagues, employees, agents and businesses. On numerous occasions from at least on or about 1996 and continuing for years, Combs assaulted women and men by striking, punching, dragging, throwing objects at, and kicking them. Combs also assaulted children both physically and sexually.

11.     In 1996, Combs was found guilty of criminal mischief for threatening a photographer from the New York Post with a gun. In 1999, he was arrested and charged with second-degree assault and criminal mischief in connection with assaulting a record executive. Combs was arrested again the same year for his involvement in a shooting at a club in New York. Another instance of violence occurred at a Los Angeles hotel in or about March 2016, which was captured on video and later publicly reported, where Combs kicked, dragged and threw a vase at a woman as she was attempting to leave his hotel room. When hotel security staff intervened, Combs attempted to bribe the staff member to ensure silence.

5

12.     In the past year, numerous civil complaints have been filed by plaintiffs who allege that they had been sexually abused by Combs between 1991 and 2009. In November 2023, three lawsuits were filed against Combs under the New York Adult Survivors Act. Cassie Ventura, an artist signed to Bad Boy, sued Combs in New York for rape and physical abuse. She alleged Combs facilitated these acts by and through supplying Ms. Ventura with copious amounts of drugs and urging her to take them, beginning in 2006.

13.     Joi Dickerson-Neal also sued Combs in New York, alleging Combs drugged her, sexually assaulted her and secretly recorded the assault in 1991.

14.     Liza Gardner, whom Combs met at an event hosted by a record label affiliated with Bad Boy, sued him for allegedly raping her and a friend in 1990 or 1991 when she was only 16.

15.     In December 2023, an anonymous Plaintiff sued Combs in New York for allegedly drugging and gang-raping her in 2003 when she was only seventeen years old. This victim alleged that employees and business associates of Combs, through their affiliation with Bad Boy enterprise, lured her to Combs' home where Combs then raped her.

16.     In February 2024, Rodney "Lil Rod" Jones, one of Combs' former producers, sued Combs for allegedly forcing him to engage in unwanted sex acts and sex trafficking, among other allegations. Mr. Jones alleged that Combs regularly drugged others, including minors, by giving them drugs laced with ecstasy (MDMA) and other date rape drugs. Mr. Jones alleged that Combs in fact drugged him as well in order to commit acts of sexual assault.

17.     In May 2024, former model Crystal McKinney and April Lampros sued Combs. Ms. McKinney alleged that Combs drugged and sexually assaulted her at his recording studio in 2003. Mimicking what has now become a known pattern, Combs promised Ms. McKinney to help her with her modeling career in exchange for engaging in sexual conduct with him. Ms. Lampros,

6

an intern at Arista Records, which was an owner of Bad Boy, also sued Combs in May 2024 in New York County Supreme Court for raping her on multiple occasions, secretly filming these acts, and showing the recordings to multiple people. Ms. Lampros also alleges that Combs ordered her to take drugs on one occasion before he raped her.

18.     In July 2024, former adult film star Adria English – who was employed by Combs as an entertainer at his infamous White Parties that brought together the biggest names in the music and entertainment industries – sued Combs in the Southern District of New York for sex trafficking, alleging that he required her to consume drinks laced with ecstasy and secretly recorded the sexual acts.

19.     In September 2024, singer and songwriter Dawn Angelique Richard also sued Combs. Richard was employed by Combs as part of the girl group Danity Kane, formed by Combs, and later as a key member of Combs' band Diddy – Dirty Money. She sued Combs in New York for sexual assault, false imprisonment, and for subjecting her to hostile working conditions due to her gender, including degrading comments and threats. Ms. Richard has alleged that Combs regularly supplied others including minors with copious amounts of drugs and alcohol, and subjected them to sexual acts while they were sedated and/or unconscious due to the drugs and alcohol.

20.     In September 2024, a federal grand jury in Manhattan indicted Combs and charged him with sex trafficking, racketeering and the "creation of a criminal enterprise in which he abused, threatened and coerced women and others around him to fulfill his sexual desires, protect his reputation and conceal his conduct." *See United States of America v. Sean Combs, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love,"* Index No. 24 Crim. 542, Indictment (SDNY), at ¶ 1.  The indictment explains that Combs' abuse of women and minors was

7

enabled by "the employees, resources and influence of the multi-faceted business empire that he led and controlled – creating a criminal enterprise whose members and associates engaged in, and attempted to engage in, among other crimes, sex-trafficking, forced labor, kidnapping, arson, bribery and obstruction of justice."

21.     Combs' long history of violence unequivocally establishes that his actions are motivated by gender – both men and women. Combs has a profound contempt for women and a desire to dominate both minors and other men. His conduct shows a longstanding practice of denigrating, defeating and attempting to humiliate men, women and children. His practices and desires are different for men, women and children. But his actions are unequivocally motivated by the victims' particular gender and age.

22.     Plaintiff's allegations herein substantially mirror Combs' prior conduct as established through criminal indictments and other lawsuits. Through this case, Plaintiff seeks a full measure of justice from a man who thought his power, money and influence rendered him untouchable. Plaintiff joins many other victims by filing this Complaint in hopes their common voice makes it impossible for Combs to assault another person ever again.

## **PARTIES**

23.     Plaintiff John Doe is a male who resides in North Carolina.

24.     Defendant Sean Combs is a male who, on information and belief, resides in New York City, and who is otherwise currently incarcerated in the Metropolitan Detention Center in Brooklyn. On information and belief, at all relevant times Combs owned and/or controlled Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, Bad Boy Productions LLC, (collectively "Bad Boy"), Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a

Combs Global, f/k/a Combs Enterprises LLC (all together, the "Combs Corporations"). The facts of Combs' ownership and titles at the Combs Corporations enabled him to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the rape.

25.     Defendant Daddy's House Recordings, Inc. ("Daddy's House") is a domestic business corporation that is incorporated in New York and on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019. At the time of the events alleged herein, Daddy's House was a world-class recording studio owned by Combs located at 321 W 44th Street, Suite 201, New York, New York 10036. On information and belief, at all relevant times, Bad Boy and Combs together owned and operated Daddy's House. On information and belief, the Bad Boy recording studio was located on the premises of Daddy's House. Combs used the Daddy's House brand, stature and their ownership and titles at Daddy's House to commit the unlawful sexual violence against Plaintiff described herein.

26.     Defendant CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC ("Combs Global") is a limited liability company incorporated in Delaware that has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. On information and belief, all members of Combs Global are citizens of Delaware, New York, and/or California. On information and belief, Combs Global is an alter ego for Combs and/or a successor in interest to Combs' other corporations and/or was established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. Combs Global currently owns, controls, and/or oversees Bad Boy

9

and Combs' other business ventures in the music, fashion, fragrance, beverage, marketing, film, television, and media industries.

27.     As part of his renowned Bad Boy record label and brand, Combs has established several corporate entities under the "Bad Boy" name over the past few decades, including but not limited to Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, and Bad Boy Productions LLC (together, "Bad Boy"). On information and belief, all Bad Boy corporate entities are alter egos for Combs, are controlled and/or directed by Combs, and/or were established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. On information and belief, all active Bad Boy entities are now owned and/or controlled by Combs and/or by Combs Global. Combs used the Bad Boy premises/recording studio and their ownership and titles at Bad Boy to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the assault.

        a.     Defendant Bad Boy Entertainment Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Entertainment Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

10

b.  Defendant Bad Boy Productions Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Productions Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

c.  Defendant Bad Boy Books Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 1440 Broadway, 3rd Floor, New York, New York 10018. Bad Boy Books Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. The CEO listed on public filings is Eddie Norward Jr., with a listed address of 1710 Broadway, New York, New York 10019, the same address listed for Sean Combs in public filings for Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., and Daddy's House Recordings, Inc.

d.  Defendant Bad Boy Records LLC is a Delaware limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Records LLC are citizens of Delaware, New York, and/or California. On information and belief, Bad Boy Records LLC is part of the Bad Boy enterprise and/or a successor-in-interest to

11

other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Records LLC is now owned and/or controlled by Combs and/or by Combs Global.

e. Defendant Bad Boy Entertainment LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Entertainment LLC are citizens of New York and/or California. Bad Boy Entertainment LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Entertainment LLC is now owned and/or controlled by Bad Boy Entertainment Holdings, Inc. and/or by Combs, and/or by Combs Global.

f. Defendant Bad Boy Productions LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Productions LLC are citizens of New York and/or California. Bad Boy Productions LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Productions LLC is now owned and/or controlled by Combs and/or by Combs Global.

28. Defendants Organizational Does 1-10 are currently unknown entities who were owned by and/or employed Defendant Combs and enabled the commission of the conduct

complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities by name.

29.     Each of the Combs Corporations (a) aided and abetted Combs in committing the unlawful sexual violence against Plaintiff described herein, (b) are alter egos for Combs, completely dominated by him and used for his personal interests and to engage in wrongdoing which harmed Plaintiff and others, and/or (c) serve or have served as vehicles for Combs to move, dispose of, and/or insulate his assets, including in connection with his criminal activities and to avoid compensating the victims of his many crimes, including Plaintiff.

## JURISDICTION AND VENUE

30.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this case is between citizens of different states, and the amount in controversy exceeds $75,000.

31.     This Court has specific personal jurisdiction over Defendants because the acts giving rise to Plaintiff's claims took place in New York State, and because several of the Defendants are domiciled in New York State and/or regularly transact business in New York State.

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## JURY DEMAND

33.     Plaintiff hereby demands a trial by jury on his claims in this action.

## FACTUAL ALLEGATIONS

34.     Mr. Combs' legendary white parties in the Hamptons were well known by many, including John Doe. The kind where countless celebrities would attend. In 1998—when John Doe was only 16 years old—he was recruited out of New York City, and indeed while residing in New York City received an invitation to one of Combs' parties through a mutual connection. When he

received the invitation, he felt like he finally had the opportunity to rub shoulders with the who's who of the industry. He thought it could be his chance to break into the music industry. Others from New York City received such invitation to go to the Hamptons for the party; indeed, many of those at the party were in fact New Yorkers.

35.     The party took place at Combs' mansion in the Hamptons. As John Doe entered, he spotted countless celebrities and A-listers who form the music and entertainment industry. He recognized faces he had seen on TV and on the big screen.

36.     As John Doe made his way through the crowd toward the restroom, he unexpectedly bumped into Combs. Shocked, John Doe found himself face to face with Combs, a titan in the music industry, standing right in front of him at his own party. Doe took a picture with Combs at the 1998 party:



37.     Combs took an interest in John Doe and wanted to talk to him. They walked to a more private area near the portable restrooms brought in for the party. There, John Doe told Combs he was a big fan of Combs and shared his dreams of becoming a star. Combs smiled, telling him he had potential and "the look." When John Doe admitted his voice was not great, Combs assured him that did not matter. Combs made clear that the only thing that mattered was having the right look for the industry, and with it, Combs could transform Doe—or anybody—into a star.

38.     Despite the pleasant conversation, which occurred, things took an unexpected turn for the worst. Combs abruptly told John Doe that he needed to drop his pants. John Doe, caught completely off guard, confusingly asked Combs to repeat himself. Combs made himself clear. He instructed John Doe to drop his pants and expose his penis so that Combs could inspect it, explaining it was a rite of passage and the route to becoming a star, and also as a way to prove himself. "Don't you want to break into the business?"

39.     Doe immediately felt uncomfortable, froze and did not know what to do. Combs remained calm and stood in front of him and stretched out his hand in a cupped position. Out of fear, anxiety and the imbalanced power dynamic between himself and Combs, John Doe then dropped his pants and exposed his penis as Combs previously instructed.

40.     Combs moved closer and grabbed John Doe's penis and genitals with his hand. He firmly cupped and held onto John Doe's genitals for an extended period of time. During this time, Combs moved his hand in such a fashion to manipulate John Doe's genitals, squeezing and feeling them. Doe was only sixteen.

41.     Combs abruptly then let go of John Doe's genitals and told him that his people would be in touch. Combs continued with his party as if nothing had happened, but for John Doe, everything had changed. John Doe eventually recognized Combs sexually assaulted him by and

15

through his power and influence over John Doe because he knew John Doe wanted to become a star.

42.     As a result of Combs' sexual assault onto John Doe while he was a minor, John Doe experienced damages including pain and suffering, mental anguish, physical impairment and emotional torment. The interaction continues to humiliate and cause shame on John Doe.

43.     Because of Combs' power and notoriety, Plaintiff was afraid to report what had happened. John Doe became yet another sexual assault victim of Combs' through the same pattern and abuse of influence Combs' exercised over others previously.

## FIRST CAUSE OF ACTION
### (Violation of New York City Victims of Gender-Motivated Violence Protection Act)
### (All Defendants)

44.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

45.     By forcing sexual contact onto Plaintiff as a young male minor, Defendant Combs committed a "crime of violence motivated by gender" under the Victims of Gender-Motivated Violence Protection Act ("VGMVPA") as defined in New York City Administrative Code § 10-1103.

46.     The requirement that the crime of violence be committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender is satisfied because Defendant Combs forced Plaintiff to engage in a sexual interaction without consent. John Doe could not effectively consent because of his age. The non-consensual sexual touching of a minor herein presented a serious risk of physical injury, and in fact caused such injury. Gender

animus inheres when consent is absent. Moreover, Combs' long history of violence and sexual abuse against men evinces a deep contempt and desire for domination over men.

47.     The Combs Business enabled Combs to commit the crime of violence motivated by gender because Combs sexually assaulted Plaintiff at a party related to or referencing Combs Business. On information and belief, Combs Businesses routinely committed sexual assault and gender-motivated violence, as detailed in other civil lawsuits, to further the business purpose of Combs' enterprise. Given Combs' long-standing pattern and practice of committing sexual violence against minors who were boys, the Combs Business had and/or should have had knowledge of Combs using such parties and venues for this unlawful conduct, and did nothing to stop it.

48.     The Combs Business enabled Combs to commit the crime of violence motivated by gender by failing to, among other things, protect Plaintiff from a known danger and/or have sufficient policies and procedures in place to prevent sexual assault and/or train their employees on identifying and preventing sexual assault. Given long-standing pattern and practice of committing sexual violence against minors who were boys, including on premises owned and/or operated by Defendants, the Combs Corporations had and/or should have had knowledge that Combs was a danger to Plaintiff, and did nothing to stop Combs.

49.     The Combs Business enabled Combs to commit the crime of violence motivated by gender by failing to properly supervise. The Combs Business had knowledge and/or should have had knowledge of Combs' widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants, and did nothing to stop it.

17

50.     The Combs Corporations further enabled Combs to commit the crime of violence motivated by gender by actively placing, maintaining, and/or employing Combs in positions of power and authority, despite the fact that they knew and/or should have known that Combs had a widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants. Combs used his titles and authority conferred by the Combs Business, including as CEO, Founder, and Chairman to facilitate and perpetuate the violent assault on Plaintiff, and to intimidate and force Plaintiff to keep quiet in subsequent years.

51.     On information and belief, Plaintiff alleges that Defendants Organizational Does 1 through 10, inclusive, are other parties not yet identified who have enabled Combs to commit the crime of violence motivated by gender, in the ways articulated above and/or in other ways.

52.     As a result of Defendants' actions, Plaintiff suffered damages in an amount to be determined at trial and pursuant to the fee-shifting provision of the statute.

53.     This legal action has been commenced within the statutory timeframe provided by the two-year look-back window for VGMVPA claims. *See* New York City Administrative Code § 10-1105.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

a.   Awarding compensatory damages for all physical injuries, emotional distress, psychological harm, anxiety, humiliation, physical and emotional pain and suffering, family and social disruption, and other harm, in an amount to be determined at trial;

b.   Awarding punitive damages in an amount to be determined at trial;

18

c. Awarding attorneys' fees and costs pursuant to any applicable statute or law;

d. Awarding pre- and post-judgment interest on all such damages, fees, and/or costs;

e. Attaching any and all of Defendants' real property and other assets located in the State of New York pursuant to Federal Rule of Civil Procedure 64; and

f. Awarding such other and further relief as this Court may deem just and proper.

Dated: OCTOBER 14, 2024

Respectfully submitted,

### THE BUZBEE LAW FIRM

By: */s/ Anthony G. Buzbee*
Anthony G. Buzbee
Texas Bar No. 24001820
tbuzbee@txattorneys.com
Christopher J. Leavitt
Texas Bar No. 24053318
cleavitt@txattorneys.com
Ryan S. Pigg
Texas Bar No. 24088227
rpigg@txattorneys.com
David C. Fortney
Texas Bar No. 24068740
dfortney@txattorneys.com
Thomas Colby Holler
Texas Bar No. 24126898
choller@txattorneys.com
Crystal Del Toro
Texas Bar No. 24090070
cdeltoro@txattorneys.com
J.P. Morgan Chase Tower
600 Travis, Suite 7500
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

*Attorneys for Plaintiff John Doe*

- AND -

19

**AVA LAW GROUP**
Andrew Van Arsdale
CA Bar No. 323370
andrew.vanarsdale@avalaw.com
3667 Voltaire Street, Ste. 101
San Diego, CA 92106
Telephone: (800) 777-4141
Facsimile: (619) 222-3667

-    AND  -

**CURIS LAW, PLLC**
Antigone Curis
antigone@curislaw.com
52 Duane Street, 7th Floor
New York, New York 10007
Phone: (646) 335-7220
Facsimile: (315) 660-2610

Exhibit F (xii): John Doe v. Combs; 1-24-cv-07973

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

John Doe,

                *Plaintiff*,                        No. _____

          v.

SEAN COMBS, DADDY'S HOUSE RECORDINGS        **COMPLAINT AND**
INC., CE OPCO, LLC d/b/a COMBS GLOBAL         **DEMAND FOR**
f/k/a COMBS ENTERPRISES LLC,                   **JURY TRIAL**
BAD BOY ENTERTAINMENT HOLDINGS, INC.,
BAD BOY PRODUCTIONS HOLDINGS, INC.,
BAD BOY BOOKS HOLDINGS, INC., BAD BOY
RECORDS LLC, BAD BOY ENTERTAINMENT LLC,
BAD BOY PRODUCTIONS LLC,
ORGANIZATIONAL DOES 1-10, AND INDIVIDUAL
DOES 1-10

                *Defendants*.

-------------------------------------------------------X

        Plaintiff John Doe ("Plaintiff"), by and through his attorneys, The Buzbee Law

Firm, for his Complaint alleges as follows:

## **INTRODUCTION**

        1.     This case seeks compensatory and punitive damages for a sexual assault. The

assault took place at a Cîroc Vodka party in Los Angeles, an event hosted by the liquor brand and

Combs, who claimed to hold an ownership stake in the brand and served as its celebrity

spokesperson. The conduct described herein is shockingly typical of how Defendant Sean Combs

conducted himself for many years. Many individuals and entities facilitated and conspired with

this abhorrent conduct. Sean Combs believed he was above the law and could do whatever he

wanted. He is not and he cannot.

2.       For decades, Sean Combs (a/k/a "P. Diddy," a/k/a "Puff Daddy," a/k/a "Diddy," a/k/a "PD," and a/k/a "Love") (described herein as "Combs") abused, molested, raped, assaulted, threatened and coerced men, women, minors and others for sexual gratification, to assert dominance, and to conceal his abhorrent conduct. He accomplished these acts by and through a criminal enterprise built on his success as a rapper, record producer and record executive. Combs is one of the wealthiest musical artists in the world. Behind the façade of being a three-time Grammy Award winner, discovering and developing multiple famous musical artists, and ranking on Forbes' list of the highest-paid entertainers in the world, there existed something sinister – a dark underbelly of crime, sex trafficking, forced labor, kidnapping, bribery and prostitution. Combs is a menace to society, women and children. While his wealth has kept him above consequence for years, Combs now faces the awesome power of the American judicial system and ultimately a jury of his peers, who will be asked to punish him for the deplorable conduct described herein.

*Combs' Businesses*

3.       Combs' business enterprise is central to the pervasive acts of sexual assault and abuse committed by him during the last decades. Combs operated his business, headquartered at various times in Manhattan and Los Angeles, under a variety of United States-based corporate entities, including Bad Boy Entertainment, Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment, LLC, Bad Boy Productions, LLC, Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC, Combs Enterprises and Combs Global (collectively, the "Combs Business"). Corporate entities in the Combs Business portfolio included record labels, a recording studio, an apparel line, an alcoholic spirits promoting business, a marketing agency, talent discovery, a television network and a media company.

4. On the surface, each of these businesses served a legitimate purpose related to entertainment, music and other subjects. But in reality, Combs, by and through himself and his agents, employees and contractors, used these businesses to sexually assault, abuse, threaten and coerce hundreds of individuals through sexual *quid pro quo* schemes, as well as to take advantage of individuals with impunity thinking the victims would never seek recourse. Combs and his agents, employees and contractors, through these Combs Businesses, would tell victims, "this is what it takes to be famous," "what are you willing to do to become a star?," and "perform this sexual act or else" to coerce the victim into performing a non-consensual sexual act for the gratification of Combs and his cohorts.

5. Members and associates of the Combs Business engaged in (and/or attempted to engage in), among other activities, sex trafficking, forced labor, interstate transportation for the purposes of prostitution, coercion and enticement to engage in prostitution, narcotics offenses, kidnapping, arson, bribery, and obstruction of justice.

6. The Combs Business constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of Combs.

*Combs' Pervasive History of Sexual Assault and Violence*

7. For years Combs and his businesses engaged in a persistent and pervasive pattern of abuse toward women, men, and minors. This abuse was, at times, verbal, emotional, physical and sexual. As part of his pattern of abuse, Combs manipulated both men and women to participate in highly-orchestrated performances of sexual activity with both commercial sex workers and unsuspecting partygoers. In some cases these were individuals who were contractors or vendors. In other cases, they were random individuals pulled from a hotel lobby, a show, or off the street. Combs ensured participation from these individuals by, among other things, obtaining and

distributing narcotics to them with or without their knowledge, controlling their careers, leveraging his financial support and threatening to cut off the same, and using intimidation, violence, and illicit drugs.

8.    Combs, while celebrated for his business acumen and influence in the entertainment world, has often been described in a more troubling light as powerful, manipulative, and problematic. His aggressive tactics, both in business and personal dealings, have drawn criticism, with many viewing him as someone who leverages his power to intimidate and control. This darker side of Combs' persona has been underscored by the numerous lawsuits and allegations that have surfaced over the years. Despite his undeniable success, his rise to the top is marred by a reputation for being ruthless and manipulative, using his influence in ways that have left a trail of legal and personal controversies including but not limited to the following:

a.  Nightclub Shooting Incident (1999): Combs was embroiled in a high-profile case related to a nightclub shooting in New York, involving his then-girlfriend, Jennifer Lopez, and rapper Shyne. Combs was acquitted of all charges, though the case remains a significant legal event in his career.

b.  Multiple Assault Allegations: Combs has faced several lawsuits related to alleged physical assaults, many of which have been settled out of court.

c.  Business Disputes: Combs has been involved in various business-related legal conflicts, particularly surrounding his Sean John clothing line and other ventures. These disputes often involved contractual disagreements and trademark claims.

d.  Claims by Cassie Ventura: Combs' former girlfriend, Casandra "Cassie" Ventura, filed a lawsuit accusing him of years of physical, emotional, and

sexual abuse during their relationship. Cassie alleged repeated instances of assault, coerced sexual acts, and drug use, all contributing to an environment of fear and manipulation.

9.     Combs particularly fancied the use of the popular date-rape drug Rohypnol, or GHB, to commit heinous non-consensual acts of sexual violence and rape onto countless victims. Combs often would secretly use the drug in an alcoholic beverage served at his parties, typically champagne or "lemon drops." Partygoers were forced to consume the alcoholic beverage, containing GHB, either prior to entering or while at Combs' party. There are also allegations of Combs dousing victims in lotions or similar body oils, also laced with GHB, so that the drug would be absorbed through the victim's skin and make it easier to assault him or her.

10.     Combs' recurrent and pervasive physical abuse took place for multiple decades. His tendencies of violence and sexual assault were no doubt well known amongst his colleagues, employees, agents and businesses. On numerous occasions from at least on or about 1996 and continuing for years, Combs assaulted women and men by striking, punching, dragging, throwing objects at, and kicking them. Combs also assaulted children both physically and sexually.

11.     In 1996, Combs was found guilty of criminal mischief for threatening a photographer from the New York *Post* with a gun. In 1999, he was arrested and charged with second-degree assault and criminal mischief in connection with assaulting a record executive. Combs was arrested again the same year for his involvement in a shooting at a club in New York. Another instance of violence occurred at a Los Angeles hotel in or about March 2016, which was captured on video and later publicly reported, where Combs kicked, dragged and threw a vase at a woman as she was attempting to leave his hotel room. When hotel security staff intervened, Combs attempted to bribe the staff member to ensure silence.

12.     In the past year, numerous civil complaints have been filed by plaintiffs who allege that they had been sexually abused by Combs between 1991 and 2009. In November 2023, three lawsuits were filed against Combs under the New York Adult Survivors Act. Cassie Ventura, an artist signed to Bad Boy, sued Combs in New York for rape and physical abuse. She alleged Combs facilitated these acts by and through supplying Ms. Ventura with copious amounts of drugs and urging her to take them, beginning in 2006.

13.     Joi Dickerson-Neal also sued Combs in New York, alleging Combs drugged her, sexually assaulted her and secretly recorded the assault in 1991.

14.     Liza Gardner, whom Combs met at an event hosted by a record label affiliated with Bad Boy, sued him for allegedly raping her and a friend in 1990 or 1991 when she was only 16.

15.     In December 2023, an anonymous Plaintiff sued Combs in New York for allegedly drugging and gang-raping her in 2003 when she was only seventeen years old. This victim alleged that employees and business associates of Combs, through their affiliation with the Bad Boy enterprise, lured her to Combs' home where Combs then raped her.

16.     In February 2024, Rodney "Lil Rod" Jones, one of Combs' former producers, sued Combs for allegedly forcing him to engage in unwanted sex acts and sex trafficking, among other allegations. Mr. Jones alleged that Combs regularly drugged others, including minors, by giving them drugs laced with ecstasy (MDMA) and other date rape drugs. Mr. Jones alleged that Combs in fact drugged him as well in order to commit acts of sexual assault.

17.     In May 2024, former model Crystal McKinney and April Lampros sued Combs. Ms. McKinney alleged that Combs drugged and sexually assaulted her at his recording studio in 2003. Mimicking what has now become a known pattern, Combs promised Ms. McKinney to help her with her modeling career in exchange for engaging in sexual conduct with him. Ms. Lampros,

an intern at Arista Records, which was an owner of Bad Boy, also sued Combs in May 2024 in

New York County Supreme Court for raping her on multiple occasions, secretly filming these acts,

and showing the recordings to multiple people. Ms. Lampros also alleges that Combs ordered her

to take drugs on one occasion before he raped her.

18.    In July 2024, former adult film star Adria English – who was employed by Combs

as an entertainer at his infamous White Parties that brought together the biggest names in the music

and entertainment industries – sued Combs in the Southern District of New York for sex

trafficking, alleging that he required her to consume drinks laced with ecstasy and secretly

recorded the sexual acts.

19.    In September 2024, singer and songwriter Dawn Angelique Richard also sued

Combs. Richard was employed by Combs as part of the girl group Danity Kane, formed by Combs,

and later as a key member of Combs' band Diddy – Dirty Money. She sued Combs in New York

for sexual assault, false imprisonment, and for subjecting her to hostile working conditions due to

her gender, including degrading comments and threats. Ms. Richard has alleged that Combs

regularly supplied others including minors with copious amounts of drugs and alcohol, and

subjected them to sexual acts while they were sedated and/or unconscious due to the drugs and

alcohol.

20.    In September 2024, a federal grand jury in Manhattan indicted Combs and charged

him with sex trafficking, racketeering and the "creation of a criminal enterprise in which he abused,

threatened and coerced women and others around him to fulfill his sexual desires, protect his

reputation and conceal his conduct." *See United States of America v. Sean Combs, a/k/a "Puff*

*Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love*," Index No. 24 Crim. 542,

Indictment (SDNY), at ¶ 1.  The indictment explains that Combs' abuse of women and minors was

enabled and conspired with by "the employees, resources and influence of the multi-faceted business empire that he led and controlled – creating a criminal enterprise whose members and associates engaged in, and attempted to engage in, among other crimes, sex-trafficking, forced labor, kidnapping, arson, bribery and obstruction of justice."

21.     Combs' long history of violence unequivocally establishes that his actions are motivated by gender – both men and women. Combs has a profound contempt for women and a desire to dominate both minors and other men. His conduct shows a longstanding practice of denigrating, defeating and attempting to humiliate men, women and children. His practices and desires are different for men, women and children. But his actions are unequivocally motivated by the victims' particular gender and age.

22.     Plaintiff's allegations herein substantially mirror Combs' prior conduct as established through criminal indictments and other lawsuits. Through this case, Plaintiff seeks a full measure of justice from a man who thought his power, money and influence rendered him untouchable. Plaintiff joins many other victims by filing this Complaint in hopes their common voice makes it impossible for Combs to assault another person ever again.

**PARTIES**

23.     Plaintiff John Doe is a male who resides in California.

24.     Defendant Sean Combs is a male who, on information and belief, resides in New York City, and who is otherwise currently incarcerated in the Metropolitan Detention Center in Brooklyn. On information and belief, at all relevant times Combs owned and/or controlled Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, Bad Boy Productions LLC, (collectively "Bad Boy"), Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a

Combs Global, f/k/a Combs Enterprises LLC (all together, the "Combs Corporations"). The facts of Combs' ownership and titles at the Combs Corporations enabled and conspired with him to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the sexual assault.

25.    Defendant Daddy's House Recordings, Inc. ("Daddy's House") is a domestic business corporation that is incorporated in New York and on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019. At the time of the events alleged herein, Daddy's House was a world-class recording studio owned by Combs located at 321 W 44th Street, Suite 201, New York, New York 10036. On information and belief, at all relevant times, Bad Boy and Combs together owned and operated Daddy's House. On information and belief, the Bad Boy recording studio was located on the premises of Daddy's House. Combs used the Daddy's House brand, stature and their ownership and titles at Daddy's House to commit the unlawful sexual violence against Plaintiff described herein.

26.    Defendant CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC ("Combs Global") is a limited liability company incorporated in Delaware that has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. On information and belief, all members of Combs Global are citizens of Delaware, New York, and/or California. On information and belief, Combs Global is an alter ego for Combs and/or a successor in interest to Combs' other corporations and/or was established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. Combs Global currently owns, controls, and/or oversees Bad Boy

and Combs' other business ventures in the music, fashion, fragrance, beverage, marketing, film, television, and media industries.

27.    As part of his renowned Bad Boy record label and brand, Combs has established several corporate entities under the "Bad Boy" name over the past few decades, including but not limited to Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, and Bad Boy Productions LLC (together, "Bad Boy"). On information and belief, all Bad Boy corporate entities are alter egos for Combs, are controlled and/or directed by Combs, and/or were established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. On information and belief, all active Bad Boy entities are now owned and/or controlled by Combs and/or by Combs Global. Combs used the Bad Boy premises/recording studio and their ownership and titles at Bad Boy to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the sexual assault.

a.    Defendant Bad Boy Entertainment Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Entertainment Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

b.  Defendant Bad Boy Productions Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Productions Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

c.  Defendant Bad Boy Books Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 1440 Broadway, 3rd Floor, New York, New York 10018. Bad Boy Books Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. The CEO listed on public filings is Eddie Norward Jr., with a listed address of 1710 Broadway, New York, New York 10019, the same address listed for Sean Combs in public filings for Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., and Daddy's House Recordings, Inc.

d.  Defendant Bad Boy Records LLC is a Delaware limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Records LLC are citizens of Delaware, New York, and/or California. On information and belief, Bad Boy Records LLC is part of the Bad Boy enterprise and/or a successor-in-interest to

other Bad Boy Defendants that comprise the Bad Boy enterprise founded and
owned by Combs. On information and belief, Bad Boy Records LLC is now
owned and/or controlled by Combs and/or by Combs Global.

e.  Defendant Bad Boy Entertainment LLC is a New York limited liability
company that on information and belief is headquartered in New York and/or
California. On information and belief, all members of Bad Boy Entertainment
LLC are citizens of New York and/or California. Bad Boy Entertainment LLC
is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy
Defendants that comprise the Bad Boy enterprise founded and owned by
Combs. On information and belief, Bad Boy Entertainment LLC is now owned
and/or controlled by Bad Boy Entertainment Holdings, Inc. and/or by Combs,
and/or by Combs Global.

f.  Defendant Bad Boy Productions LLC is a New York limited liability company
that on information and belief is headquartered in New York and/or California.
On information and belief, all members of Bad Boy Productions LLC are
citizens of New York and/or California. Bad Boy Productions LLC is part of
the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy
Defendants that comprise the Bad Boy enterprise founded and owned by
Combs. On information and belief, Bad Boy Productions LLC is now owned
and/or controlled by Combs and/or by Combs Global.

28.    Defendants Organizational Does 1-10 are currently unknown entities who were
owned by and/or employed Defendant Combs and enabled and conspired with the commission of

the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities by name.

29.     Defendants Individual Does 1-10 are currently unknown celebrities and/or persons of interest who enabled and/or conspired with the commission of the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individuals by name.

30.     Each of the Combs Corporations (a) aided and abetted Combs in committing the unlawful sexual violence against Plaintiff described herein, (b) are alter egos for Combs, completely dominated by him and used for his personal interests and to engage in wrongdoing which harmed Plaintiff and others, and/or (c) serve or have served as vehicles for Combs to move, dispose of, and/or insulate his assets, including in connection with his criminal activities and to avoid compensating the victims of his many crimes, including Plaintiff.

31.     Plaintiff reserves the right to add as defendants any individuals, including but not limited to celebrities and business entities.

## JURISDICTION AND VENUE

32.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this case is between citizens of different states, and the amount in controversy exceeds $75,000.

33.     This Court has specific personal jurisdiction over Defendants because several or all of the Defendants are domiciled in New York State and/or regularly transact business in New York State.

34.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because this District a judicial district in which a defendant resides, and all defendants are residents of this State in which this District is located.

## JURY DEMAND

35.     Plaintiff hereby demands a trial by jury on his claims in this action.

## FACTUAL ALLEGATIONS

36.     In or around 2022, during a promotional party for the launch of Combs' Ciroc vodka drink, Defendant Combs sexually assaulted Plaintiff, a businessman from the Los Angeles area and owner of a family business specializing in renting luxury cars and jewelry.

37.     Over the previous years, Plaintiff had established a business relationship with Combs, who was a customer of his rental business—often renting vehicles or jewelry for himself or those in his entourage.

38.     Combs personally invited Plaintiff to the Ciroc party. Plaintiff accepted based on he and Combs' past relationship. Combs told Plaintiff that many other high-profile guests in the music and entertainment business would attend the party. Plaintiff saw the party as an opportunity to further promote himself and his business.

39.     Once at the party, Plaintiff noticed many high-profile guests. Plaintiff took the photograph below which shows Combs on a couch discussing the Ciroc business with other high-profile individuals. Multiple bottles of Combs' Ciroc vodka can be seen on the table:

 

40.    During the event, Combs instructed Plaintiff to join him in Combs' private office. Plaintiff went into the office where the two were alone. Plaintiff assumed Combs wanted to have a discussion about business.

41.    However, Plaintiff immediately realized Combs was intoxicated and acting strangely. Combs began awkwardly moving closer to Plaintiff. As he did so, Combs removed his pants and exposed his genitals to Plaintiff.

42.    Combs continued to move closer and then grabbed Plaintiff's genitals through his pants, squeezing them in a rough and sexual manner.

43.    Plaintiff, shocked and disoriented, frozen momentarily and did not know how to respond to the weirdly inappropriate sexual advance made by Combs.

44.    The situation escalated until another individual, *Professional Athlete A,* entered the office and, intervened which ended the Combs' assault of Plaintiff.

45.     At this moment, Plaintiff escaped from Combs and left the office. After escaping the office, Plaintiff left the party to return home.

46.    To help Plaintiff document this encounter, Plaintiff took a photograph of the Ciroc

vodka Combs gave to him at the party that Combs ultimately sexually assaulted Plaintiff. It is

shown below:



47.     As a result of this incident, Plaintiff has suffered significant emotional distress and trauma. He continues to deal with the psychological and emotional consequences of the events that happened in Combs's private office.

## CAUSES OF ACTION
### (Sexual Assault and Sexual Harassment under California Law)

48.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

49.     By exposing himself to Plaintiff and grabbing Plaintiff's genitals as alleged herein, Defendant Combs intentionally touched Plaintiff in a harmful or offensive manner. Further, all of Defendant's conduct was unwelcomed, yet Defendant persisted in the harassing behavior.

50.     Defendants' conduct was done with the intent to harm, offend or cause Plaintiff emotional distress. Defendants' conduct created a hostile, offensive, and dangerous environment for Plaintiff.

51.     Further, all Defendants, aside from Combs individually, worked in concert and conspired with Combs to allow him to engage in such behavior.

52.     The Combs Business enabled and conspired with Combs to commit the crime of falsely imprisoning Plaintiff because Combs sexually assaulted Plaintiff at a party related to or referencing Combs Business. On information and belief, Combs Businesses routinely committed sexual assault and gender-motivated violence, as detailed in other civil lawsuits, to further the business purpose of Combs' enterprise. Given Combs' long-standing pattern and practice of committing sexual violence against women, the Combs Business had and/or should have had knowledge of Combs using such parties and venues for this unlawful conduct, and did nothing to stop it.

53.     On information and belief, Plaintiff alleges that Defendants Organizational Does 1 through 10, inclusive, are other parties not yet identified who have enabled and conspired with Combs to commit the crime of violence motivated by gender, in the ways articulated above and/or in other ways.

54.     As a result of Defendants' actions, Plaintiff suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

a.   Awarding compensatory damages for all physical injuries, emotional distress, psychological harm, anxiety, humiliation, physical and emotional pain and suffering, family and social disruption, and other harm, in an amount to be determined at trial;

b.   Awarding punitive damages in an amount to be determined at trial;

c.   Awarding attorneys' fees and costs pursuant to any applicable statute or law;

d.   Awarding pre- and post-judgment interest on all such damages, fees, and/or costs;

e.   Attaching any and all of Defendants' real property and other assets located in the State of New York pursuant to Federal Rule of Civil Procedure 64; and

f.   Awarding such other and further relief as this Court may deem just and proper.

Dated:  OCTOBER 20, 2024

Respectfully submitted,

**THE BUZBEE LAW FIRM**

By: */s/ Anthony G. Buzbee*
Anthony G. Buzbee
Texas Bar No. 24001820
tbuzbee@txattorneys.com
Christopher J. Leavitt
Texas Bar No. 24053318
cleavitt@txattorneys.com
Ryan S. Pigg
Texas Bar No. 24088227
rpigg@txattorneys.com
David C. Fortney
Texas Bar No. 24068740
dfortney@txattorneys.com
Thomas Colby Holler
Texas Bar No. 24126898
choller@txattorneys.com
Lionel Sims III
Texas Bar No. 24107465
lsims@txattorneys.com
Crystal Del Toro
Texas Bar No. 24090070
cdeltoro@txattorneys.com
J.P. Morgan Chase Tower
600 Travis, Suite 7500
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

*Attorneys for Plaintiff John Doe*

-   AND  -

**AVA LAW GROUP**
Andrew Van Arsdale
CA Bar No. 323370
andrew.vanarsdale@avalaw.com
3667 Voltaire Street, Ste. 101
San Diego, CA 92106
Telephone: (800) 777-4141
Facsimile: (619) 222-3667

-   AND  -

Case 2:24-cv-07973-JRA    Document 63-6    Filed 10/22/25    Page 20 of 92
Case 1:24-cv-09017-JRA    Document 63-6    Filed 10/22/25    Page 292 of 478
PageID: 1795

**CURIS LAW, PLLC**
Antigone Curis
antigone@curislaw.com
52 Duane Street, 7th Floor
New York, New York 10007
Phone: (646) 335-7220
Facsimile: (315) 660-2610

Exhibit F (xiii): John Doe v. Combs; 1-24-cv-07974

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

John Doe,

               *Plaintiff*,                             No. _____

            v.

SEAN COMBS, DADDY'S HOUSE RECORDINGS      **COMPLAINT AND**
INC., CE OPCO, LLC d/b/a COMBS GLOBAL        **DEMAND FOR**
f/k/a COMBS ENTERPRISES LLC,                  **JURY TRIAL**
BAD BOY ENTERTAINMENT HOLDINGS, INC.,
BAD BOY PRODUCTIONS HOLDINGS, INC.,
BAD BOY BOOKS HOLDINGS, INC., BAD BOY
RECORDS LLC, BAD BOY ENTERTAINMENT LLC,
BAD BOY PRODUCTIONS LLC,
ORGANIZATIONAL DOES 1-10, AND INDIVIDUAL
DOES 1-10

               *Defendants*.

-------------------------------------------------------X

        Plaintiff John Doe ("Plaintiff"), by and through his attorneys, The Buzbee Law

Firm, for his Complaint alleges as follows:

**<u>INTRODUCTION</u>**

        1.    Plaintiff was drugged and repeatedly sexually assaulted by Defendant Combs and

several others, including as of yet unnamed Celebrity A. The assaults occurred at a 2022 award

show after party, hosted by Defendant Combs in Los Angeles, California. The conduct described

herein is shockingly typical of how Defendant Sean Combs conducted himself for many years.

Many individuals and entities facilitated and participated in this abhorrent conduct. Sean Combs

believed he was above the law and that he could do whatever he wanted, with impunity. He is not;

he cannot.

2.     For decades, Sean Combs (a/k/a "P. Diddy," a/k/a "Puff Daddy," a/k/a "Diddy," a/k/a "PD," and a/k/a "Love") (described herein as "Combs") abused, molested, raped, assaulted, threatened and coerced men, women, minors and others for sexual gratification, to assert dominance, and to conceal his abhorrent conduct. He accomplished these acts by and through a criminal enterprise built on his success as a rapper, record producer and record executive. Combs is one of the wealthiest musical artists in the world. Behind the façade of being a three-time Grammy Award winner, discovering and developing multiple famous musical artists, and ranking on Forbes' list of the highest-paid entertainers in the world, there existed something sinister – a dark underbelly of crime, sex trafficking, forced labor, kidnapping, bribery and prostitution. Combs is a menace to society, women and children. While his wealth has kept him above consequence for years, Combs now faces the awesome power of the American judicial system and ultimately a jury of his peers, who will be asked to punish him for the deplorable conduct described herein.

*Combs' Businesses*

3.     Combs' business enterprise is central to the pervasive acts of sexual assault and abuse committed by him during the last decades. Combs operated his business, headquartered at various times in Manhattan and Los Angeles, under a variety of United States-based corporate entities, including Bad Boy Entertainment, Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment, LLC, Bad Boy Productions, LLC, Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC, Combs Enterprises and Combs Global (collectively, the "Combs Business"). Corporate entities in the Combs Business portfolio included record labels, a recording studio, an apparel line, an alcoholic spirits promoting business, a marketing agency, talent discovery, a television network and a media company.

4.      On the surface, each of these businesses served a legitimate purpose related to entertainment, music and other subjects. But in reality, Combs, by and through himself and his agents, employees and contractors, used these businesses to sexually assault, abuse, threaten and coerce hundreds of individuals through sexual *quid pro quo* schemes, as well as to take advantage of individuals with impunity thinking the victims would never seek recourse. Combs and his agents, employees and contractors, through these Combs Businesses, would tell victims, "this is what it takes to be famous," "what are you willing to do to become a star?," and "perform this sexual act or else" to coerce the victim into performing a non-consensual sexual act for the gratification of Combs and his cohorts.

5.      Members and associates of the Combs Business engaged in (and/or attempted to engage in), among other activities, sex trafficking, forced labor, interstate transportation for the purposes of prostitution, coercion and enticement to engage in prostitution, narcotics offenses, kidnapping, arson, bribery, and obstruction of justice.

6.      The Combs Business constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of Combs.

### *Combs' Pervasive History of Sexual Assault and Violence*

7.      For years Combs and his businesses engaged in a persistent and pervasive pattern of abuse toward women, men, and minors. This abuse was, at times, verbal, emotional, physical and sexual. As part of his pattern of abuse, Combs manipulated both men and women to participate in highly-orchestrated performances of sexual activity with both commercial sex workers and unsuspecting partygoers. In some cases these were individuals who were contractors or vendors. In other cases, they were random individuals pulled from a hotel lobby, a show, or off the street. Combs ensured participation from these individuals by, among other things, obtaining and

distributing narcotics to them with or without their knowledge, controlling their careers, leveraging his financial support and threatening to cut off the same, and using intimidation, violence, and illicit drugs.

8.     Combs, while celebrated for his business acumen and influence in the entertainment world, has often been described in a more troubling light as powerful, manipulative, and problematic. His aggressive tactics, both in business and personal dealings, have drawn criticism, with many viewing him as someone who leverages his power to intimidate and control. This darker side of Combs' persona has been underscored by the numerous lawsuits and allegations that have surfaced over the years. Despite his undeniable success, his rise to the top is marred by a reputation for being ruthless and manipulative, using his influence in ways that have left a trail of legal and personal controversies including but not limited to the following:

a.  Nightclub Shooting Incident (1999): Combs was embroiled in a high-profile case related to a nightclub shooting in New York, involving his then-girlfriend, Jennifer Lopez, and rapper Shyne. Combs was acquitted of all charges, though the case remains a significant legal event in his career.

b.  Multiple Assault Allegations: Combs has faced several lawsuits related to alleged physical assaults, many of which have been settled out of court.

c.  Business Disputes: Combs has been involved in various business-related legal conflicts, particularly surrounding his Sean John clothing line and other ventures. These disputes often involved contractual disagreements and trademark claims.

d.  Claims by Cassie Ventura: Combs' former girlfriend, Casandra "Cassie" Ventura, filed a lawsuit accusing him of years of physical, emotional, and

sexual abuse during their relationship. Cassie alleged repeated instances of assault, coerced sexual acts, and drug use, all contributing to an environment of fear and manipulation.

9. Combs particularly fancied the use of the popular date-rape drug Rohypnol, or GHB, to commit heinous non-consensual acts of sexual violence and rape onto countless victims. Combs often would secretly use the drug in an alcoholic beverage served at his parties, typically champagne or "lemon drops." Partygoers were forced to consume the alcoholic beverage, containing GHB, either prior to entering or while at Combs' party. There are also allegations of Combs dousing victims in lotions or similar body oils, also laced with GHB, so that the drug would be absorbed through the victim's skin and make it easier to assault him or her.

10. Combs' recurrent and pervasive physical abuse took place for multiple decades. His tendencies of violence and sexual assault were no doubt well known amongst his colleagues, employees, agents and businesses. On numerous occasions from at least on or about 1996 and continuing for years, Combs assaulted women and men by striking, punching, dragging, throwing objects at, and kicking them. Combs also assaulted children both physically and sexually.

11. In 1996, Combs was found guilty of criminal mischief for threatening a photographer from the New York *Post* with a gun. In 1999, he was arrested and charged with second-degree assault and criminal mischief in connection with assaulting a record executive. Combs was arrested again the same year for his involvement in a shooting at a club in New York. Another instance of violence occurred at a Los Angeles hotel in or about March 2016, which was captured on video and later publicly reported, where Combs kicked, dragged and threw a vase at a woman as she was attempting to leave his hotel room. When hotel security staff intervened, Combs attempted to bribe the staff member to ensure silence.

12.     In the past year, numerous civil complaints have been filed by plaintiffs who allege that they had been sexually abused by Combs between 1991 and 2009. In November 2023, three lawsuits were filed against Combs under the New York Adult Survivors Act. Cassie Ventura, an artist signed to Bad Boy, sued Combs in New York for rape and physical abuse. She alleged Combs facilitated these acts by and through supplying Ms. Ventura with copious amounts of drugs and urging her to take them, beginning in 2006.

13.     Joi Dickerson-Neal also sued Combs in New York, alleging Combs drugged her, sexually assaulted her and secretly recorded the assault in 1991.

14.     Liza Gardner, whom Combs met at an event hosted by a record label affiliated with Bad Boy, sued him for allegedly raping her and a friend in 1990 or 1991 when she was only 16.

15.     In December 2023, an anonymous Plaintiff sued Combs in New York for allegedly drugging and gang-raping her in 2003 when she was only seventeen years old. This victim alleged that employees and business associates of Combs, through their affiliation with the Bad Boy enterprise, lured her to Combs' home where Combs then raped her.

16.     In February 2024, Rodney "Lil Rod" Jones, one of Combs' former producers, sued Combs for allegedly forcing him to engage in unwanted sex acts and sex trafficking, among other allegations. Mr. Jones alleged that Combs regularly drugged others, including minors, by giving them drugs laced with ecstasy (MDMA) and other date rape drugs. Mr. Jones alleged that Combs in fact drugged him as well in order to commit acts of sexual assault.

17.     In May 2024, former model Crystal McKinney and April Lampros sued Combs. Ms. McKinney alleged that Combs drugged and sexually assaulted her at his recording studio in 2003. Mimicking what has now become a known pattern, Combs promised Ms. McKinney to help her with her modeling career in exchange for engaging in sexual conduct with him. Ms. Lampros,

an intern at Arista Records, which was an owner of Bad Boy, also sued Combs in May 2024 in New York County Supreme Court for raping her on multiple occasions, secretly filming these acts, and showing the recordings to multiple people. Ms. Lampros also alleges that Combs ordered her to take drugs on one occasion before he raped her.

18.     In July 2024, former adult film star Adria English – who was employed by Combs as an entertainer at his infamous White Parties that brought together the biggest names in the music and entertainment industries – sued Combs in the Southern District of New York for sex trafficking, alleging that he required her to consume drinks laced with ecstasy and secretly recorded the sexual acts.

19.     In September 2024, singer and songwriter Dawn Angelique Richard also sued Combs. Richard was employed by Combs as part of the girl group Danity Kane, formed by Combs, and later as a key member of Combs' band Diddy – Dirty Money. She sued Combs in New York for sexual assault, false imprisonment, and for subjecting her to hostile working conditions due to her gender, including degrading comments and threats. Ms. Richard has alleged that Combs regularly supplied others including minors with copious amounts of drugs and alcohol, and subjected them to sexual acts while they were sedated and/or unconscious due to the drugs and alcohol.

20.     In September 2024, a federal grand jury in Manhattan indicted Combs and charged him with sex trafficking, racketeering and the "creation of a criminal enterprise in which he abused, threatened and coerced women and others around him to fulfill his sexual desires, protect his reputation and conceal his conduct." *See United States of America v. Sean Combs, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love*," Index No. 24 Crim. 542, Indictment (SDNY), at ¶ 1.  The indictment explains that Combs' abuse of women and minors was

enabled and conspired with by "the employees, resources and influence of the multi-faceted business empire that he led and controlled – creating a criminal enterprise whose members and associates engaged in, and attempted to engage in, among other crimes, sex-trafficking, forced labor, kidnapping, arson, bribery and obstruction of justice."

21.    Combs' long history of violence unequivocally establishes that his actions are motivated by gender – both men and women. Combs has a profound contempt for women and a desire to dominate both minors and other men. His conduct shows a longstanding practice of denigrating, defeating and attempting to humiliate men, women and children. His practices and desires are different for men, women and children. But his actions are unequivocally motivated by the victims' particular gender and age.

22.    Plaintiff's allegations herein substantially mirror Combs' prior conduct as established through criminal indictments and other lawsuits. Through this case, Plaintiff seeks a full measure of justice from a man who thought his power, money and influence rendered him untouchable. Plaintiff joins many other victims by filing this Complaint in hopes their common voice makes it impossible for Combs to assault another person ever again.

## PARTIES

23.    Plaintiff John Doe is a male who resides in California.

24.    Defendant Sean Combs is a male who, on information and belief, resides in New York City, and who is otherwise currently incarcerated in the Metropolitan Detention Center in Brooklyn. On information and belief, at all relevant times Combs owned and/or controlled Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, Bad Boy Productions LLC, (collectively "Bad Boy"), Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a

Combs Global, f/k/a Combs Enterprises LLC (all together, the "Combs Corporations"). The facts of Combs' ownership and titles at the Combs Corporations enabled and conspired with him to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the sexual assault.

25.     Defendant Daddy's House Recordings, Inc. ("Daddy's House") is a domestic business corporation that is incorporated in New York and on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019. At the time of the events alleged herein, Daddy's House was a world-class recording studio owned by Combs located at 321 W 44th Street, Suite 201, New York, New York 10036. On information and belief, at all relevant times, Bad Boy and Combs together owned and operated Daddy's House. On information and belief, the Bad Boy recording studio was located on the premises of Daddy's House. Combs used the Daddy's House brand, stature and their ownership and titles at Daddy's House to commit the unlawful sexual violence against Plaintiff described herein.

26.     Defendant CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC ("Combs Global") is a limited liability company incorporated in Delaware that has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. On information and belief, all members of Combs Global are citizens of Delaware, New York, and/or California. On information and belief, Combs Global is an alter ego for Combs and/or a successor in interest to Combs' other corporations and/or was established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. Combs Global currently owns, controls, and/or oversees Bad Boy

and Combs' other business ventures in the music, fashion, fragrance, beverage, marketing, film, television, and media industries.

27. As part of his renowned Bad Boy record label and brand, Combs has established several corporate entities under the "Bad Boy" name over the past few decades, including but not limited to Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, and Bad Boy Productions LLC (together, "Bad Boy"). On information and belief, all Bad Boy corporate entities are alter egos for Combs, are controlled and/or directed by Combs, and/or were established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. On information and belief, all active Bad Boy entities are now owned and/or controlled by Combs and/or by Combs Global. Combs used the Bad Boy premises/recording studio and their ownership and titles at Bad Boy to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the sexual assault.

   a. Defendant Bad Boy Entertainment Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Entertainment Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

b. Defendant Bad Boy Productions Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Productions Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

c. Defendant Bad Boy Books Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 1440 Broadway, 3rd Floor, New York, New York 10018. Bad Boy Books Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. The CEO listed on public filings is Eddie Norward Jr., with a listed address of 1710 Broadway, New York, New York 10019, the same address listed for Sean Combs in public filings for Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., and Daddy's House Recordings, Inc.

d. Defendant Bad Boy Records LLC is a Delaware limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Records LLC are citizens of Delaware, New York, and/or California. On information and belief, Bad Boy Records LLC is part of the Bad Boy enterprise and/or a successor-in-interest to

other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Records LLC is now owned and/or controlled by Combs and/or by Combs Global.

e.  Defendant Bad Boy Entertainment LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Entertainment LLC are citizens of New York and/or California. Bad Boy Entertainment LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Entertainment LLC is now owned and/or controlled by Bad Boy Entertainment Holdings, Inc. and/or by Combs, and/or by Combs Global.

f.  Defendant Bad Boy Productions LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Productions LLC are citizens of New York and/or California. Bad Boy Productions LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Productions LLC is now owned and/or controlled by Combs and/or by Combs Global.

28.  Defendants Organizational Does 1-10 are currently unknown entities who were owned by and/or employed Defendant Combs and enabled and conspired with the commission of

the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities by name.

29.    Defendants Individual Does 1-10 are currently unknown celebrities and/or persons of interest who enabled and/or conspired with the commission of the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individuals by name.

30.    Each of the Combs Corporations (a) aided and abetted Combs in committing the unlawful sexual violence against Plaintiff described herein, (b) are alter egos for Combs, completely dominated by him and used for his personal interests and to engage in wrongdoing which harmed Plaintiff and others, and/or (c) serve or have served as vehicles for Combs to move, dispose of, and/or insulate his assets, including in connection with his criminal activities and to avoid compensating the victims of his many crimes, including Plaintiff.

31.    Plaintiff reserves the right to add as defendants any individuals, including but not limited to celebrities and business entities.

## JURISDICTION AND VENUE

32.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this case is between citizens of different states, and the amount in controversy exceeds $75,000.

33.    This Court has specific personal jurisdiction over Defendants because several or all of the Defendants are domiciled in New York State and/or regularly transact business in New York State.

34.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because this District a judicial district in which a defendant resides, and all defendants are residents of this State in which this District is located.

## JURY DEMAND

35.    Plaintiff hereby demands a trial by jury on his claims in this action.

## FACTUAL ALLEGATIONS

36.    Plaintiff, a dedicated personal trainer, worked with celebrities and other notable individuals concerning their health and fitness.

37.    In or around 2022, a fashion designer whom Plaintiff trained told him she shared videos showcasing Plaintiff's distinctive workouts and exercises with Defendant Combs. This fashion designer told Plaintiff that Combs was impressed with Plaintiff's training regime and wanted to meet Plaintiff and feature him in a video.

38.    The fashion designer eventually extended an invitation to Plaintiff for him to attend an exclusive awards show after-party in Los Angeles, hosted by Combs. The invitation stated a private car would pick Plaintiff up from his residence and escort him to the party.

39.    As promised, on June 27, 2022, a black Lincoln Navigator arrived to escort Plaintiff to Combs' residence in the Hollywood Hills.

40.    When Plaintiff arrived at the party, one of Combs' business associates greeted him at the entrance. This person explained Plaintiff needed to execute a nondisclosure agreement as a condition of entry into the party. Plaintiff ultimately consented to the agreement because he wanted to meet Combs and have an opportunity to promote himself and his business.

41.    Combs' associate did not provide Plaintiff with a copy of the executed nondisclosure agreement.

42.    After signing the agreement, Combs' associate then handed Plaintiff a drink which looked like a typical tequila soda with a cranberry juice mixer. Combs' associate instructed

Plaintiff to drink the beverage as another condition to gain entry into the party. Plaintiff obliged and took several sips of the drink.

43.    Once inside the residence, a model and current client of Plaintiff greeted him. Plaintiff felt more comfortable and at ease after seeing a familiar face.

44.    Plaintiff observed numerous celebrities in attendance at the party, adding to the glamorous yet overwhelming atmosphere.

45.    Eventually, a business associate of Combs guided Plaintiff from a large room illuminated with red lights into a smaller room. There, Plaintiff observed approximately a dozen individuals, including several well-known figures, who were engaging in group-sex activities.

46.    Once inside this smaller room, Plaintiff began to feel disoriented, dizzy and weak – far beyond what he would expect from consuming a single alcoholic beverage. It became clear to him that something was wrong. He later realized someone had drugged him.

47.    A photograph of an actual exemplary container used by Combs and/or his agents/employees to insert GHB into alcoholic drinks is seen below:

 

48.     At this moment of realizing his significant impairment, Combs approached Plaintiff, removed his pants, and began performing non-consensual oral sex onto him.

49.     Combs then directed Plaintiff to perform oral sex on another individual in the room, known as *Celebrity A*. Due to the haze of the drug he had been clandestinely served, Plaintiff could not resist Combs' coercion and ordering. He felt trapped inside of his own body – unable to control it or understand what was happening around him. As a result, Plaintiff was forced to perform nonconsensual oral sex onto *Celebrity A*. After *Celebrity A* finished, this individual spit into Plaintiff's mouth.

50.     At this point, the drugs in Plaintiff's system were progressively hampering his motor skills and memory. The drugs caused him to lose consciousness for brief periods of time.

51.     While in and out of consciousness, individuals at the party forced Plaintiff into sexual acts with both men and woman. Plaintiff's physical disposition made it impossible for him to reject their advances or otherwise control his body. These individuals, including Combs, essentially passed Plaintiff's drugged body around like a party favor for their sexual enjoyment.

52.     The drugs in Plaintiff's system ultimately caused him to completely lose consciousness for an extended period of time. Plaintiff does not recall anything after this point.

53.     When Plaintiff finally regained consciousness, he found himself outside of his apartment, disoriented, without a shirt, and without his phone. Plaintiff is unaware who took him back to his apartment or how he got there.

54.     As a direct result of the traumatic events at Combs' party, Plaintiff has suffered severe emotional and psychological trauma, financial harm, and a significant loss of livelihood.

## CAUSES OF ACTION
### (Sexual Harassment and Sexual Assault – All Defendants)

55.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

56.     By drugging Plaintiff, performing oral sex on him, and forcing him to perform oral sex and other sexual acts on others, Defendant Combs intentionally harmed Plaintiff and did so in a malicious manner. Further, all of Defendant's conduct was unwelcomed, yet Defendant persisted in the sexually exploitive behavior.

57.     Defendants' conduct was done with the intent to harm, offend or cause Plaintiff emotional distress. Defendants' conduct created a hostile, offensive, and dangerous environment for Plaintiff.

58.     Further, all Defendants, aside from Combs individually, worked in concert and conspired with Combs to allow him to engage in such behavior.

59.     The Combs Business enabled and conspired with Combs to commit the crime of falsely imprisoning Plaintiff because Combs sexually assaulted Plaintiff at a party related to or referencing Combs Business. On information and belief, Combs Businesses routinely committed sexual assault and gender-motivated violence, as detailed in other civil lawsuits, to further the business purpose of Combs' enterprise. Given Combs' long-standing pattern and practice of committing sexual violence against women, the Combs Business had and/or should have had knowledge of Combs using such parties and venues for this unlawful conduct, and did nothing to stop it.

60.     On information and belief, Plaintiff alleges that Defendants Organizational Does 1 through 10, inclusive, are other parties not yet identified who have enabled and conspired with Combs to commit the crime of violence motivated by gender, in the ways articulated above and/or in other ways.

61.     As a result of Defendants' actions, Plaintiff suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

    a.  Awarding compensatory damages for all physical injuries, emotional distress, psychological harm, anxiety, humiliation, physical and emotional pain and suffering, family and social disruption, and other harm, in an amount to be determined at trial;

    b.  Awarding punitive damages in an amount to be determined at trial;

    c.  Awarding attorneys' fees and costs pursuant to any applicable statute or law;

    d.  Awarding pre- and post-judgment interest on all such damages, fees, and/or costs;

    e.  Attaching any and all of Defendants' real property and other assets located in the State of New York pursuant to Federal Rule of Civil Procedure 64; and

    f.  Awarding such other and further relief as this Court may deem just and proper.

Dated:  OCTOBER 20, 2024

Respectfully submitted,

### THE BUZBEE LAW FIRM

By: */s/ Anthony G. Buzbee*
Anthony G. Buzbee
Texas Bar No. 24001820
tbuzbee@txattorneys.com
Christopher J. Leavitt
Texas Bar No. 24053318
cleavitt@txattorneys.com
Ryan S. Pigg

Texas Bar No. 24088227
rpigg@txattorneys.com
David C. Fortney
Texas Bar No. 24068740
dfortney@txattorneys.com
Thomas Colby Holler
Texas Bar No. 24126898
choller@txattorneys.com
Lionel Sims III
Texas Bar No. 24107465
lsims@txattorneys.com
Crystal Del Toro
Texas Bar No. 24090070
cdeltoro@txattorneys.com
J.P. Morgan Chase Tower
600 Travis, Suite 7500
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

*Attorneys for Plaintiff John Doe*

-   AND  -

**AVA LAW GROUP**
Andrew Van Arsdale
CA Bar No. 323370
andrew.vanarsdale@avalaw.com
3667 Voltaire Street, Ste. 101
San Diego, CA 92106
Telephone: (800) 777-4141
Facsimile: (619) 222-3667

-   AND  -

**CURIS LAW, PLLC**
Antigone Curis
antigone@curislaw.com
52 Duane Street, 7th Floor
New York, New York 10007
Phone: (646) 335-7220
Facsimile: (315) 660-2610

Exhibit F (xiv): Jane Doe v. Combs; 1-24-cv-07977

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

Jane Doe,

    *Plaintiff*,         No. _____

   v.

SEAN COMBS, DADDY'S HOUSE RECORDINGS  **COMPLAINT AND**
INC., CE OPCO, LLC d/b/a COMBS GLOBAL   **DEMAND FOR**
f/k/a COMBS ENTERPRISES LLC,      **JURY TRIAL**
BAD BOY ENTERTAINMENT HOLDINGS, INC.,
BAD BOY PRODUCTIONS HOLDINGS, INC.,
BAD BOY BOOKS HOLDINGS, INC., BAD BOY
RECORDS LLC, BAD BOY ENTERTAINMENT LLC,
BAD BOY PRODUCTIONS LLC,
ORGANIZATIONAL DOES 1-10, AND INDIVIDUAL
DOES 1-10

    *Defendants*.

-------------------------------------------------------X

    Plaintiff Jane Doe ("Plaintiff"), by and through her attorneys, The Buzbee Law

Firm, for her Complaint alleges as follows:

## **INTRODUCTION**

    1.  Defendant Sean Combs drugged and then raped the Plaintiff. The aggravated sexual

assault occurred at one of Defendant Sean Combs' frequently held infamous after-parties, this time

in Las Vegas. The conduct described herein is shockingly typical of how Combs conducted himself

for many years. Many individuals and entities facilitated and conspired with this abhorrent

conduct. Sean Combs believed he was above the law. He is not.

    2.  For decades, Sean Combs (a/k/a "P. Diddy," a/k/a "Puff Daddy," a/k/a "Diddy,"

a/k/a "PD," and a/k/a "Love") (described herein as "Combs") abused, molested, raped, assaulted,

threatened and coerced men, women, minors and others for sexual gratification, to assert dominance, and to conceal his abhorrent conduct. He accomplished these acts by and through a criminal enterprise built on his success as a rapper, record producer and record executive. Combs is one of the wealthiest musical artists in the world. Behind the façade of being a three-time Grammy Award winner, discovering and developing multiple famous musical artists, and ranking on Forbes' list of the highest-paid entertainers in the world, there existed something sinister – a dark underbelly of crime, sex trafficking, forced labor, kidnapping, bribery and prostitution. Combs is a menace to society, women and children. While his wealth has kept him above consequence for years, Combs now faces the awesome power of the American judicial system and ultimately a jury of his peers, who will be asked to punish him for the deplorable conduct described herein.

*Combs' Businesses*

3.      Combs' business enterprise is central to the pervasive acts of sexual assault and abuse committed by him during the last decades. Combs operated his business, headquartered at various times in Manhattan and Los Angeles, under a variety of United States-based corporate entities, including Bad Boy Entertainment, Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment, LLC, Bad Boy Productions, LLC, Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC, Combs Enterprises and Combs Global (collectively, the "Combs Business"). Corporate entities in the Combs Business portfolio included record labels, a recording studio, an apparel line, an alcoholic spirits promoting business, a marketing agency, talent discovery, a television network and a media company.

4.      On the surface, each of these businesses served a legitimate purpose related to entertainment, music and other subjects. But in reality, Combs, by and through himself and his

agents, employees and contractors, used these businesses to sexually assault, abuse, threaten and coerce hundreds of individuals through sexual *quid pro quo* schemes, as well as to take advantage of individuals with impunity thinking the victims would never seek recourse. Combs and his agents, employees and contractors, through these Combs Businesses, would tell victims, "this is what it takes to be famous," "what are you willing to do to become a star?," and "perform this sexual act or else" to coerce the victim into performing a non-consensual sexual act for the gratification of Combs and his cohorts.

5.      Members and associates of the Combs Business engaged in (and/or attempted to engage in), among other activities, sex trafficking, forced labor, interstate transportation for the purposes of prostitution, coercion and enticement to engage in prostitution, narcotics offenses, kidnapping, arson, bribery, and obstruction of justice.

6.      The Combs Business constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of Combs.

*Combs' Pervasive History of Sexual Assault and Violence*

7.      For years Combs and his businesses engaged in a persistent and pervasive pattern of abuse toward women, men, and minors. This abuse was, at times, verbal, emotional, physical and sexual. As part of his pattern of abuse, Combs manipulated both men and women to participate in highly-orchestrated performances of sexual activity with both commercial sex workers and unsuspecting partygoers. In some cases these were individuals who were contractors or vendors. In other cases, they were random individuals pulled from a hotel lobby, a show, or off the street. Combs ensured participation from these individuals by, among other things, obtaining and distributing narcotics to them with or without their knowledge, controlling their careers, leveraging

his financial support and threatening to cut off the same, and using intimidation, violence, and illicit drugs.

8.    Combs, while celebrated for his business acumen and influence in the entertainment world, has often been described in a more troubling light as powerful, manipulative, and problematic. His aggressive tactics, both in business and personal dealings, have drawn criticism, with many viewing him as someone who leverages his power to intimidate and control. This darker side of Combs' persona has been underscored by the numerous lawsuits and allegations that have surfaced over the years. Despite his undeniable success, his rise to the top is marred by a reputation for being ruthless and manipulative, using his influence in ways that have left a trail of legal and personal controversies including but not limited to the following:

     a.    Nightclub Shooting Incident (1999): Combs was embroiled in a high-profile case related to a nightclub shooting in New York, involving his then-girlfriend, Jennifer Lopez, and rapper Shyne. Combs was acquitted of all charges, though the case remains a significant legal event in his career.

     b.    Multiple Assault Allegations: Combs has faced several lawsuits related to alleged physical assaults, many of which have been settled out of court.

     c.    Business Disputes: Combs has been involved in various business-related legal conflicts, particularly surrounding his Sean John clothing line and other ventures. These disputes often involved contractual disagreements and trademark claims.

     d.    Claims by Cassie Ventura: Combs' former girlfriend, Casandra "Cassie" Ventura, filed a lawsuit accusing him of years of physical, emotional, and sexual abuse during their relationship. Cassie alleged repeated instances of

assault, coerced sexual acts, and drug use, all contributing to an environment of fear and manipulation.

9.      Combs particularly fancied the use of the popular date-rape drug Rohypnol, or GHB, to commit heinous non-consensual acts of sexual violence and rape onto countless victims. Combs often would secretly use the drug in an alcoholic beverage served at his parties, typically champagne or "lemon drops." Partygoers were forced to consume the alcoholic beverage, containing GHB, either prior to entering or while at Combs' party. There are also allegations of Combs dousing victims in lotions or similar body oils, also laced with GHB, so that the drug would be absorbed through the victim's skin and make it easier to assault him or her. Further, it is well known that Combs had a practice of lacing water bottles with other substances, such as Xanax, and distributing them at his parties.

10.     Combs' recurrent and pervasive physical abuse took place for multiple decades. His tendencies of violence and sexual assault were no doubt well known amongst his colleagues, employees, agents and businesses. On numerous occasions from at least on or about 1996 and continuing for years, Combs assaulted women and men by striking, punching, dragging, throwing objects at, and kicking them. Combs also assaulted children both physically and sexually.

11.     In 1996, Combs was found guilty of criminal mischief for threatening a photographer from the New York *Post* with a gun. In 1999, he was arrested and charged with second-degree assault and criminal mischief in connection with assaulting a record executive. Combs was arrested again the same year for his involvement in a shooting at a club in New York. Another instance of violence occurred at a Los Angeles hotel in or about March 2016, which was captured on video and later publicly reported, where Combs kicked, dragged and threw a vase at

a woman as she was attempting to leave his hotel room. When hotel security staff intervened, Combs attempted to bribe the staff member to ensure silence.

12.     In the past year, numerous civil complaints have been filed by plaintiffs who allege that they had been sexually abused by Combs between 1991 and 2009. In November 2023, three lawsuits were filed against Combs under the New York Adult Survivors Act. Cassie Ventura, an artist signed to Bad Boy, sued Combs in New York for rape and physical abuse. She alleged Combs facilitated these acts by and through supplying Ms. Ventura with copious amounts of drugs and urging her to take them, beginning in 2006.

13.     Joi Dickerson-Neal also sued Combs in New York, alleging Combs drugged her, sexually assaulted her and secretly recorded the assault in 1991.

14.     Liza Gardner, whom Combs met at an event hosted by a record label affiliated with Bad Boy, sued him for allegedly raping her and a friend in 1990 or 1991 when she was only 16.

15.     In December 2023, an anonymous Plaintiff sued Combs in New York for allegedly drugging and gang-raping her in 2003 when she was only seventeen years old. This victim alleged that employees and business associates of Combs, through their affiliation with the Bad Boy enterprise, lured her to Combs' home where Combs then raped her.

16.     In February 2024, Rodney "Lil Rod" Jones, one of Combs' former producers, sued Combs for allegedly forcing him to engage in unwanted sex acts and sex trafficking, among other allegations. Mr. Jones alleged that Combs regularly drugged others, including minors, by giving them drugs laced with ecstasy (MDMA) and other date rape drugs. Mr. Jones alleged that Combs in fact drugged him as well in order to commit acts of sexual assault.

17.     In May 2024, former model Crystal McKinney and April Lampros sued Combs. Ms. McKinney alleged that Combs drugged and sexually assaulted her at his recording studio in

2003. Mimicking what has now become a known pattern, Combs promised Ms. McKinney to help her with her modeling career in exchange for engaging in sexual conduct with him. Ms. Lampros, an intern at Arista Records, which was an owner of Bad Boy, also sued Combs in May 2024 in New York County Supreme Court for raping her on multiple occasions, secretly filming these acts, and showing the recordings to multiple people. Ms. Lampros also alleges that Combs ordered her to take drugs on one occasion before he raped her.

18.      In July 2024, former adult film star Adria English – who was employed by Combs as an entertainer at his infamous White Parties that brought together the biggest names in the music and entertainment industries – sued Combs in the Southern District of New York for sex trafficking, alleging that he required her to consume drinks laced with ecstasy and secretly recorded the sexual acts.

19.      In September 2024, singer and songwriter Dawn Angelique Richard also sued Combs. Richard was employed by Combs as part of the girl group Danity Kane, formed by Combs, and later as a key member of Combs' band Diddy – Dirty Money. She sued Combs in New York for sexual assault, false imprisonment, and for subjecting her to hostile working conditions due to her gender, including degrading comments and threats. Ms. Richard has alleged that Combs regularly supplied others including minors with copious amounts of drugs and alcohol, and subjected them to sexual acts while they were sedated and/or unconscious due to the drugs and alcohol.

20.      In September 2024, a federal grand jury in Manhattan indicted Combs and charged him with sex trafficking, racketeering and the "creation of a criminal enterprise in which he abused, threatened and coerced women and others around him to fulfill his sexual desires, protect his reputation and conceal his conduct." *See United States of America v. Sean Combs, a/k/a "Puff*

*Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love*," Index No. 24 Crim. 542, Indictment (SDNY), at ¶ 1. The indictment explains that Combs' abuse of women and minors was enabled and conspired with by "the employees, resources and influence of the multi-faceted business empire that he led and controlled – creating a criminal enterprise whose members and associates engaged in, and attempted to engage in, among other crimes, sex-trafficking, forced labor, kidnapping, arson, bribery and obstruction of justice."

21.     Combs' long history of violence unequivocally establishes that his actions are motivated by gender – both men and women. Combs has a profound contempt for women and a desire to dominate both minors and other men. His conduct shows a longstanding practice of denigrating, defeating and attempting to humiliate men, women and children. His practices and desires are different for men, women and children. But his actions are unequivocally motivated by the victims' particular gender and age.

22.     Plaintiff's allegations herein substantially mirror Combs' prior conduct as established through criminal indictments and other lawsuits. Through this case, Plaintiff seeks a full measure of justice from a man who thought his power, money and influence rendered him untouchable. Plaintiff joins many other victims by filing this Complaint in hopes their common voice makes it impossible for Combs to assault another person ever again.

**PARTIES**

23.     Plaintiff Jane Doe is a female who resides in Arizona.

24.     Defendant Sean Combs is a male who, on information and belief, resides in New York City, and who is otherwise currently incarcerated in the Metropolitan Detention Center in Brooklyn. On information and belief, at all relevant times Combs owned and/or controlled Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings,

Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, Bad Boy Productions LLC, (collectively "Bad Boy"), Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC (all together, the "Combs Corporations"). The facts of Combs' ownership and titles at the Combs Corporations enabled and conspired with him to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the sexual assault.

25.    Defendant Daddy's House Recordings, Inc. ("Daddy's House") is a domestic business corporation that is incorporated in New York and on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019. At the time of the events alleged herein, Daddy's House was a world-class recording studio owned by Combs located at 321 W 44th Street, Suite 201, New York, New York 10036. On information and belief, at all relevant times, Bad Boy and Combs together owned and operated Daddy's House. On information and belief, the Bad Boy recording studio was located on the premises of Daddy's House. Combs used the Daddy's House brand, stature and their ownership and titles at Daddy's House to commit the unlawful sexual violence against Plaintiff described herein.

26.    Defendant CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC ("Combs Global") is a limited liability company incorporated in Delaware that has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. On information and belief, all members of Combs Global are citizens of Delaware, New York, and/or California. On information and belief, Combs Global is an alter ego for Combs and/or a successor in interest to Combs' other corporations and/or was established or used by Combs for the purpose

of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. Combs Global currently owns, controls, and/or oversees Bad Boy and Combs' other business ventures in the music, fashion, fragrance, beverage, marketing, film, television, and media industries.

27.     As part of his renowned Bad Boy record label and brand, Combs has established several corporate entities under the "Bad Boy" name over the past few decades, including but not limited to Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, and Bad Boy Productions LLC (together, "Bad Boy"). On information and belief, all Bad Boy corporate entities are alter egos for Combs, are controlled and/or directed by Combs, and/or were established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. On information and belief, all active Bad Boy entities are now owned and/or controlled by Combs and/or by Combs Global. Combs used the Bad Boy premises/recording studio and their ownership and titles at Bad Boy to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the sexual assault.

a.   Defendant Bad Boy Entertainment Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Entertainment Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global.

Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

b. Defendant Bad Boy Productions Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Productions Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

c. Defendant Bad Boy Books Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 1440 Broadway, 3rd Floor, New York, New York 10018. Bad Boy Books Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. The CEO listed on public filings is Eddie Norward Jr., with a listed address of 1710 Broadway, New York, New York 10019, the same address listed for Sean Combs in public filings for Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., and Daddy's House Recordings, Inc.

d. Defendant Bad Boy Records LLC is a Delaware limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Records LLC are citizens of

Delaware, New York, and/or California. On information and belief, Bad Boy Records LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Records LLC is now owned and/or controlled by Combs and/or by Combs Global.

e.   Defendant Bad Boy Entertainment LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Entertainment LLC are citizens of New York and/or California. Bad Boy Entertainment LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Entertainment LLC is now owned and/or controlled by Bad Boy Entertainment Holdings, Inc. and/or by Combs, and/or by Combs Global.

f.   Defendant Bad Boy Productions LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Productions LLC are citizens of New York and/or California. Bad Boy Productions LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Productions LLC is now owned and/or controlled by Combs and/or by Combs Global.

28. Defendants Organizational Does 1-10 are currently unknown entities who were owned by and/or employed Defendant Combs and enabled and conspired with the commission of the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities by name.

29. Defendants Individual Does 1-10 are currently unknown celebrities and/or persons of interest who enabled and/or conspired with the commission of the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individuals by name.

30. Each of the Combs Corporations (a) aided and abetted Combs in committing the unlawful sexual violence against Plaintiff described herein, (b) are alter egos for Combs, completely dominated by him and used for his personal interests and to engage in wrongdoing which harmed Plaintiff and others, and/or (c) serve or have served as vehicles for Combs to move, dispose of, and/or insulate his assets, including in connection with his criminal activities and to avoid compensating the victims of his many crimes, including Plaintiff.

## JURISDICTION AND VENUE

31. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this case is between citizens of different states, and the amount in controversy exceeds $75,000.

32. This Court has specific personal jurisdiction over Defendants because several of the Defendants are domiciled in New York State and/or regularly transact business in New York State.

33. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because this District a judicial district in which a defendant resides, and all defendants are residents of this State in which this District is located.

## JURY DEMAND

34.     Plaintiff hereby demands a trial by jury on her claims in this action.

## FACTUAL ALLEGATIONS

35.     Defendant Sean Combs' infamous Las Vegas parties were legendary events known for their exclusivity, extravagance, and celebrity guest list. These high-profile parties attracted A-list celebrities from across the entertainment, fashion, and business worlds. The events were lavishly decorated, featured live music performances, and boasted top-tier food and beverages. The atmosphere at these parties was one of opulence and luxury, often making headlines for their celebrity guest lists, over-the-top entertainment, and the stunning aesthetics of the event. Many unsuspecting individuals were recruited to attend these parties. Some individuals were recruited in various cities and were paid to fly in and to attend these functions.

36.     On Memorial Day weekend of 2014, Plaintiff and two of her friends visited Las Vegas to stay at the Hotel Rio.

37.     While there, Plaintiff contacted various people she'd met in the entertainment industry in order to find out if any "cool" events would be taking place. One such contact was an entertainer who identified himself as "International Smoove," who Plaintiff had met a few years prior at a party in Miami. Plaintiff was never able to ascertain his legal name, but connected with him through Instagram using that moniker.

38.     Plaintiff discovered that Smoove was in Las Vegas through his Instagram stories, and after contacting him, discovered that he worked for Combs as a party promoter. Smoove invited Plaintiff to an exclusive party at Las Vegas's popular poolside lounge called "Club Rehab."

39.     Smoove made it clear that this was an exclusive celebrity party and Plaintiff's two friends were not invited, only Plaintiff. Despite having some akwardness with this prohibition,

Plaintiff, with the encouragement of her friends, decided to attend the party to potentially network with the influential people there.

40. While at the party, Plaintiff met many celebrities, including Mary J. Blige, Lil' Kim, and Nicki Minaj; she saw more that she did not meet. Plaintiff took pictures or videos with many of these celebrities and posted them to her private Instagram page.

41. Plaintiff was also introduced to Combs, who greeted her and said he hoped she had a lot of fun at the party.

42. Eventually, the party at Club Rehab died down and Plaintiff was invited by "Smoove" to an after party at Combs' suite at the Planet Hollywood hotel. While there, Plaintiff spoke to Combs again and he directed her to a bar area with tens of dozens of open bottles of his Ciroc branded vodka. Combs directed Plaintiff to grab a bottle and help herself. Plaintiff also took videos of Combs at the party and posted them to her Instagram. Stills from the videos are shown below:



43. Plaintiff did as was suggested by Combs and took a few sips of what she thought to be vodka from one of the open bottles, but about 40 minutes after having 1-2 drinks from the

Ciroc bottle, Plaintiff began to feel nauseated and dizzy, slowly losing control of her motor functions. This occurred at around 8pm in the evening. A photograph of an actual exemplary container used by Combs and/or his agents/employees to insert GHB into alcoholic drinks is seen below:



44.     Plaintiff informed "Smoove" that she did not feel well, and likely would need to leave the party soon. "Smoove" directed her to an empty bedroom in the suite and told her to lie down there until she felt better. He told her not to worry about being distrubed because the door would be locked.

45.     The next thing Plaintiff recalls is waking up the following morning feeling very groggy and sore. Her entire body hurt, and it felt difficult to move. As soon as she awoke, she saw Combs in the corner of the room, shirtless and yelling loudly and with animation at someone over the phone. He was the only person in the room with her and it was clear that someone else had been in the bed with her.

46.     Out of fear and confusion, Plaintiff remained silent and still until Combs left the room and she heard the front door to the suite close.

47.     Plaintiff eventually got up and realized she was naked and her general soreness was more aggravated in her genital area. Plaintiff was horrified to realize that she was raped by Combs. She found her belongings, including her dead cell phone, and made her way back to the Hotel Rio where her friends were staying.

48.     Upon arriving to the Hotel Rio, Plaintiff's friends were shocked to see the state she was in; they tried to help her. Plaintiff indicated that all she wanted to do was shower and rest.

49.     Plaintiff ended up sleeping for two entire days after that. She only remembered vague glimpses of her friends trying to wake her up and offer her water. Afterwards, her friends told her that they did their best to take care of her during this time, but she was largely incoherent.

50.     In the aftermath of the assault, Plaintiff struggled with intense emotional pain and mental health issues, feeling disgusted and deeply depressed.

51.     Plaintiff has experienced a significant impact on her personal life; she struggles to maintain relationships or be in party atmospheres due to the assault.

52.     Not a day goes by for Plaintiff without thinking of the traumatic incident.

**FIRST CAUSE OF ACTION**
**(Battery under Nevada law)**
**(Defendant Combs)**

53.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

54.     As alleged herein, Defendant Combs willfully and unlawfully used physical force on Plaintiff.

55.     In using willful and unlawful force on Plaintiff, Defendant Combs intended to cause a harmful or offensive contact.

56.     The harmful and offensive contact intended by Defendant Combs in fact occurred.

57.    The harmful and offensive contact caused Plaintiff to suffer harm.

58.    As a result of Defendants' actions, Plaintiff suffered damages in an amount to be determined at trial.

59.    As a result of Nevada Senate Bill 129, signed into law in June 2023, there is no applicable statute of limitations for victims of sexual abuse to sue in tort for claims arising from the sexual abuse.

## SECOND CAUSE OF ACTION
### (False Imprisonment under Nevada law)
### (All Defendants)

60.    Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

61.    By drugging Plaintiff as alleged herein, Defendant Combs acted with the intention of confining Plaintiff within boundaries fixed by Defendant Combs.

62.    Plaintiff did not and could not consent to the confinement, which violated Plaintiff's right to be free from restraint of movement.

63.    Plaintiff was raped while confined and therefore suffered substantial harm from the confinement.

64.    The confinement allowed Defendant Combs' rape of Plaintiff to occur and accordingly the confinement was a proximate cause of Plaintiff's harm.

65.    The Combs Business enabled and conspired with Combs to commit the crime of falsely imprisoning Plaintiff because Combs sexually assaulted Plaintiff at a party related to or referencing Combs Business. On information and belief, Combs Businesses routinely committed sexual assault and gender-motivated violence, as detailed in other civil lawsuits, to further the business purpose of Combs' enterprise. Given Combs' long-standing pattern and practice of

committing sexual violence against women, the Combs Business had and/or should have had knowledge of Combs using such parties and venues for this unlawful conduct, and did nothing to stop it.

66.     On information and belief, Plaintiff alleges that Defendants Organizational Does 1 through 10, inclusive, are other parties not yet identified who have enabled and conspired with Combs to commit the crime of violence motivated by gender, in the ways articulated above and/or in other ways.

67.     As a result of Defendants' actions, Plaintiff suffered damages in an amount to be determined at trial.

68.     As a result of Nevada Senate Bill 129, signed into law in June 2023, there is no applicable statute of limitations for victims of sexual abuse to sue in tort for claims arising from the sexual abuse

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

  a.  Awarding compensatory damages for all physical injuries, emotional distress, psychological harm, anxiety, humiliation, physical and emotional pain and suffering, family and social disruption, and other harm, in an amount to be determined at trial;

  b.  Awarding punitive damages in an amount to be determined at trial;

  c.  Awarding attorneys' fees and costs pursuant to any applicable statute or law;

  d.  Awarding pre- and post-judgment interest on all such damages, fees, and/or costs;

e.  Attaching any and all of Defendants' real property and other assets located in
    the State of New York pursuant to Federal Rule of Civil Procedure 64; and

f.  Awarding such other and further relief as this Court may deem just and
    proper.

Dated:  OCTOBER 20, 2024

                                    Respectfully submitted,

                            THE BUZBEE LAW FIRM

                            By: */s/ Anthony G. Buzbee*
                            Anthony G. Buzbee
                            Texas Bar No. 24001820
                            tbuzbee@txattorneys.com
                            Christopher J. Leavitt
                            Texas Bar No. 24053318
                            cleavitt@txattorneys.com
                            Ryan S. Pigg
                            Texas Bar No. 24088227
                            rpigg@txattorneys.com
                            David C. Fortney
                            Texas Bar No. 24068740
                            dfortney@txattorneys.com
                            Thomas Colby Holler
                            Texas Bar No. 24126898
                            choller@txattorneys.com
                            Lionel Sims III
                            Texas Bar No. 24107465
                            lsims@txattorneys.com
                            Crystal Del Toro
                            Texas Bar No. 24090070
                            cdeltoro@txattorneys.com
                            J.P. Morgan Chase Tower
                            600 Travis, Suite 7500
                            Houston, Texas 77002
                            Telephone: (713) 223-5393
                            Facsimile: (713) 223-5909

                            *Attorneys for Plaintiff Jane Doe*

-   AND  -

**AVA LAW GROUP**
Andrew Van Arsdale
CA Bar No. 323370
andrew.vanarsdale@avalaw.com
3667 Voltaire Street, Ste. 101
San Diego, CA 92106
Telephone: (800) 777-4141
Facsimile: (619) 222-3667

-   AND  -

**CURIS LAW, PLLC**
Antigone Curis
antigone@curislaw.com
52 Duane Street, 7th Floor
New York, New York 10007
Phone: (646) 335-7220
Facsimile: (315) 660-2610

Exhibit F (xix): John Doe v. Combs; 1-24-cv-7776

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

John Doe,

                  *Plaintiff*,                      No. _____

           v.

SEAN COMBS, DADDY'S HOUSE RECORDINGS        **COMPLAINT AND**
INC., CE OPCO, LLC d/b/a COMBS GLOBAL          **DEMAND FOR**
f/k/a COMBS ENTERPRISES LLC,                  **JURY TRIAL**
BAD BOY ENTERTAINMENT HOLDINGS, INC.,
BAD BOY PRODUCTIONS HOLDINGS, INC.,
BAD BOY BOOKS HOLDINGS, INC., BAD BOY
RECORDS LLC, BAD BOY ENTERTAINMENT LLC,
BAD BOY PRODUCTIONS LLC, AND
ORGANIZATIONAL DOES 1-10,

                  *Defendants*.

-------------------------------------------------------X

          Plaintiff John Doe ("Plaintiff"), by and through his attorneys, The Buzbee Law

Firm, for his Complaint alleges as follows:

## **INTRODUCTION**

          1.      This case seeks compensatory and punitive damages for a violent sexual assault.

The assault occurred at what was termed a "white party" at Combs' residence in New York. The

conduct described herein is shockingly typical of how Defendant Sean Combs conducted himself

for many years. Many individuals and entities facilitated and enabled this abhorrent conduct. Sean

Combs believed he was above the law. He is not.

          2.      For decades, Sean Combs (a/k/a "P. Diddy," a/k/a "Puff Daddy," a/k/a "Diddy,"

a/k/a "PD," and a/k/a "Love") (described herein as "Combs") abused, molested, raped, assaulted,

threatened and coerced men, women, minors and others for sexual gratification, to assert

dominance, and to conceal his abhorrent conduct. He accomplished these acts by and through a criminal enterprise built on his success as a rapper, record producer and record executive. Combs is one of the wealthiest musical artists in the world. Behind the façade of being a three-time Grammy Award winner, discovering and developing multiple famous musical artists, and ranking on Forbes' list of the highest-paid entertainers in the world, there existed something sinister – a dark underbelly of crime, sex trafficking, forced labor, kidnapping, bribery and prostitution. Combs is a menace to society, women and children. While his wealth has kept him above consequence for years, Combs now faces the awesome power of the American judicial system and ultimately a jury of his peers, who will be asked to punish him for the deplorable conduct described herein.

### *Combs' Businesses*

3.       Combs' business enterprise is central to the pervasive acts of sexual assault and abuse committed by him during the last decades. Combs operated his business, headquartered at various times in Manhattan and Los Angeles, under a variety of United States-based corporate entities, including Bad Boy Entertainment, Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment, LLC, Bad Boy Productions, LLC, Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC, Combs Enterprises and Combs Global (collectively, the "Combs Business"). Corporate entities in the Combs Business portfolio included record labels, a recording studio, an apparel line, an alcoholic spirits promoting business, a marketing agency, talent discovery, a television network and a media company.

4.       On the surface, each of these businesses served a legitimate purpose related to entertainment, music and other subjects. But in reality, Combs, by and through himself and his agents, employees and contractors, used these businesses to sexually assault, abuse, threaten and

coerce hundreds of individuals through sexual *quid pro quo* schemes, as well as to take advantage of individuals with impunity thinking the victims would never seek recourse. Combs and his agents, employees and contractors, through these Combs Businesses, would tell victims, "this is what it takes to be famous," "what are you willing to do to become a star?," and "perform this sexual act or else" to coerce the victim into performing a non-consensual sexual act for the gratification of Combs and his cohorts.

5.      Members and associates of the Combs Business engaged in (and/or attempted to engage in), among other activities, sex trafficking, forced labor, interstate transportation for the purposes of prostitution, coercion and enticement to engage in prostitution, narcotics offenses, kidnapping, arson, bribery, and obstruction of justice.

6.      The Combs Business constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of Combs.

### *Combs' Pervasive History of Sexual Assault and Violence*

7.      For years Combs and his businesses engaged in a persistent and pervasive pattern of abuse toward women, men, and minors. This abuse was, at times, verbal, emotional, physical and sexual. As part of his pattern of abuse, Combs manipulated both men and women to participate in highly-orchestrated performances of sexual activity with both commercial sex workers and unsuspecting partygoers. In some cases these were individuals who were contractors or vendors. In other cases, they were random individuals pulled from a hotel lobby, a show, or off the street. Combs ensured participation from these individuals by, among other things, obtaining and distributing narcotics to them with or without their knowledge, controlling their careers, leveraging his financial support and threatening to cut off the same, and using intimidation, violence, and illicit drugs.

8.     Combs, while celebrated for his business acumen and influence in the entertainment world, has often been described in a more troubling light as powerful, manipulative, and problematic. His aggressive tactics, both in business and personal dealings, have drawn criticism, with many viewing him as someone who leverages his power to intimidate and control. This darker side of Combs' persona has been underscored by the numerous lawsuits and allegations that have surfaced over the years. Despite his undeniable success, his rise to the top is marred by a reputation for being ruthless and manipulative, using his influence in ways that have left a trail of legal and personal controversies including but not limited to the following:

a.  Nightclub Shooting Incident (1999): Combs was embroiled in a high-profile case related to a nightclub shooting in New York, involving his then-girlfriend, Jennifer Lopez, and rapper Shyne. Combs was acquitted of all charges, though the case remains a significant legal event in his career.

b.  Multiple Assault Allegations: Combs has faced several lawsuits related to alleged physical assaults, many of which have been settled out of court.

c.  Business Disputes: Combs has been involved in various business-related legal conflicts, particularly surrounding his Sean John clothing line and other ventures. These disputes often involved contractual disagreements and trademark claims.

d.  Claims by Cassie Ventura: Combs' former girlfriend, Casandra "Cassie" Ventura, filed a lawsuit accusing him of years of physical, emotional, and sexual abuse during their relationship. Cassie alleged repeated instances of assault, coerced sexual acts, and drug use, all contributing to an environment of fear and manipulation.

9.    Combs particularly fancied the use of the popular date-rape drug Rohypnol, or GHB, to commit heinous non-consensual acts of sexual violence and rape onto countless victims. Combs often would secretly use the drug in an alcoholic beverage served at his parties, typically champagne or "lemon drops." Partygoers were forced to consume the alcoholic beverage, containing GHB, either prior to entering or while at Combs' party. There are also allegations of Combs dousing victims in lotions or similar body oils, also laced with GBH, so that the drug would be absorbed through the victim's skin and make it easier to assault him or her.

10.    Combs' recurrent and pervasive physical abuse took place for multiple decades. His tendencies of violence and sexual assault were no doubt well known amongst his colleagues, employees, agents and businesses. On numerous occasions from at least on or about 1996 and continuing for years, Combs assaulted women and men by striking, punching, dragging, throwing objects at, and kicking them. Combs also assaulted children both physically and sexually.

11.    In 1996, Combs was found guilty of criminal mischief for threatening a photographer from the New York *Post* with a gun. In 1999, he was arrested and charged with second-degree assault and criminal mischief in connection with assaulting a record executive. Combs was arrested again the same year for his involvement in a shooting at a club in New York. Another instance of violence occurred at a Los Angeles hotel in or about March 2016, which was captured on video and later publicly reported, where Combs kicked, dragged and threw a vase at a woman as she was attempting to leave his hotel room. When hotel security staff intervened, Combs attempted to bribe the staff member to ensure silence.

12.    In the past year, numerous civil complaints have been filed by plaintiffs who allege that they had been sexually abused by Combs between 1991 and 2009. In November 2023, three lawsuits were filed against Combs under the New York Adult Survivors Act. Cassie Ventura, an

artist signed to Bad Boy, sued Combs in New York for rape and physical abuse. She alleged Combs facilitated these acts by and through supplying Ms. Ventura with copious amounts of drugs and urging her to take them, beginning in 2006.

13.     Joi Dickerson-Neal also sued Combs in New York, alleging Combs drugged her, sexually assaulted her and secretly recorded the assault in 1991.

14.     Liza Gardner, whom Combs met at an event hosted by a record label affiliated with Bad Boy, sued him for allegedly raping her and a friend in 1990 or 1991 when she was only 16.

15.     In December 2023, an anonymous Plaintiff sued Combs in New York for allegedly drugging and gang-raping her in 2003 when she was only seventeen years old. This victim alleged that employees and business associates of Combs, through their affiliation with the Bad Boy enterprise, lured her to Combs' home where Combs then raped her.

16.     In February 2024, Rodney "Lil Rod" Jones, one of Combs' former producers, sued Combs for allegedly forcing him to engage in unwanted sex acts and sex trafficking, among other allegations. Mr. Jones alleged that Combs regularly drugged others, including minors, by giving them drugs laced with ecstasy (MDMA) and other date rape drugs. Mr. Jones alleged that Combs in fact drugged him as well in order to commit acts of sexual assault.

17.     In May 2024, former model Crystal McKinney and April Lampros sued Combs. Ms. McKinney alleged that Combs drugged and sexually assaulted her at his recording studio in 2003. Mimicking what has now become a known pattern, Combs promised Ms. McKinney to help her with her modeling career in exchange for engaging in sexual conduct with him. Ms. Lampros, an intern at Arista Records, which was an owner of Bad Boy, also sued Combs in May 2024 in New York County Supreme Court for raping her on multiple occasions, secretly filming these acts,

and showing the recordings to multiple people. Ms. Lampros also alleges that Combs ordered her to take drugs on one occasion before he raped her.

18.     In July 2024, former adult film star Adria English – who was employed by Combs as an entertainer at his infamous White Parties that brought together the biggest names in the music and entertainment industries – sued Combs in the Southern District of New York for sex trafficking, alleging that he required her to consume drinks laced with ecstasy and secretly recorded the sexual acts.

19.     In September 2024, singer and songwriter Dawn Angelique Richard also sued Combs. Richard was employed by Combs as part of the girl group Danity Kane, formed by Combs, and later as a key member of Combs' band Diddy – Dirty Money. She sued Combs in New York for sexual assault, false imprisonment, and for subjecting her to hostile working conditions due to her gender, including degrading comments and threats. Ms. Richard has alleged that Combs regularly supplied others including minors with copious amounts of drugs and alcohol, and subjected them to sexual acts while they were sedated and/or unconscious due to the drugs and alcohol.

20.     In September 2024, a federal grand jury in Manhattan indicted Combs and charged him with sex trafficking, racketeering and the "creation of a criminal enterprise in which he abused, threatened and coerced women and others around him to fulfill his sexual desires, protect his reputation and conceal his conduct." *See United States of America v. Sean Combs, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love,"* Index No. 24 Crim. 542, Indictment (SDNY), at ¶ 1.  The indictment explains that Combs' abuse of women and minors was enabled by "the employees, resources and influence of the multi-faceted business empire that he led and controlled – creating a criminal enterprise whose members and associates engaged in, and

attempted to engage in, among other crimes, sex-trafficking, forced labor, kidnapping, arson, bribery and obstruction of justice."

21.     Combs' long history of violence unequivocally establishes that his actions are motivated by gender – both men and women. Combs has a profound contempt for women and a desire to dominate both minors and other men. His conduct shows a longstanding practice of denigrating, defeating and attempting to humiliate men, women and children. His practices and desires are different for men, women and children. But his actions are unequivocally motivated by the victims' particular gender and age.

22.     Plaintiff's allegations herein substantially mirror Combs' prior conduct as established through criminal indictments and other lawsuits. Through this case, Plaintiff seeks a full measure of justice from a man who thought his power, money and influence rendered him untouchable. Plaintiff joins many other victims by filing this Complaint in hopes their common voice makes it impossible for Combs to assault another person ever again.

## PARTIES

23.     Plaintiff John Doe is a male who resides in New Jersey.

24.     Defendant Sean Combs is a male who, on information and belief, resides in New York City, and who is otherwise currently incarcerated in the Metropolitan Detention Center in Brooklyn. On information and belief, at all relevant times Combs owned and/or controlled Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, Bad Boy Productions LLC, (collectively "Bad Boy"), Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC (all together, the "Combs Corporations"). The facts of Combs' ownership and titles at the Combs Corporations enabled him to commit the unlawful

sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the sexual assault.

25.     Defendant Daddy's House Recordings, Inc. ("Daddy's House") is a domestic business corporation that is incorporated in New York and on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019. At the time of the events alleged herein, Daddy's House was a world-class recording studio owned by Combs located at 321 W 44th Street, Suite 201, New York, New York 10036. On information and belief, at all relevant times, Bad Boy and Combs together owned and operated Daddy's House. On information and belief, the Bad Boy recording studio was located on the premises of Daddy's House. Combs used the Daddy's House brand, stature and their ownership and titles at Daddy's House to commit the unlawful sexual violence against Plaintiff described herein.

26.     Defendant CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC ("Combs Global") is a limited liability company incorporated in Delaware that has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. On information and belief, all members of Combs Global are citizens of Delaware, New York, and/or California. On information and belief, Combs Global is an alter ego for Combs and/or a successor in interest to Combs' other corporations and/or was established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. Combs Global currently owns, controls, and/or oversees Bad Boy and Combs' other business ventures in the music, fashion, fragrance, beverage, marketing, film, television, and media industries.

27.     As part of his renowned Bad Boy record label and brand, Combs has established several corporate entities under the "Bad Boy" name over the past few decades, including but not limited to Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, and Bad Boy Productions LLC (together, "Bad Boy"). On information and belief, all Bad Boy corporate entities are alter egos for Combs, are controlled and/or directed by Combs, and/or were established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. On information and belief, all active Bad Boy entities are now owned and/or controlled by Combs and/or by Combs Global. Combs used the Bad Boy premises/recording studio and their ownership and titles at Bad Boy to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the sexual assault.

a.     Defendant Bad Boy Entertainment Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Entertainment Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

b.     Defendant Bad Boy Productions Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West

Hollywood, California 90069. Bad Boy Productions Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

c.  Defendant Bad Boy Books Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 1440 Broadway, 3rd Floor, New York, New York 10018. Bad Boy Books Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. The CEO listed on public filings is Eddie Norward Jr., with a listed address of 1710 Broadway, New York, New York 10019, the same address listed for Sean Combs in public filings for Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., and Daddy's House Recordings, Inc.

d.  Defendant Bad Boy Records LLC is a Delaware limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Records LLC are citizens of Delaware, New York, and/or California. On information and belief, Bad Boy Records LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Records LLC is now owned and/or controlled by Combs and/or by Combs Global.

     e.  Defendant Bad Boy Entertainment LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Entertainment LLC are citizens of New York and/or California. Bad Boy Entertainment LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Entertainment LLC is now owned and/or controlled by Bad Boy Entertainment Holdings, Inc. and/or by Combs, and/or by Combs Global.

     f.  Defendant Bad Boy Productions LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Productions LLC are citizens of New York and/or California. Bad Boy Productions LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Productions LLC is now owned and/or controlled by Combs and/or by Combs Global.

28.    Defendants Organizational Does 1-10 are currently unknown entities who were owned by and/or employed Defendant Combs and enabled the commission of the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities by name.

29.    Each of the Combs Corporations (a) aided and abetted Combs in committing the unlawful sexual violence against Plaintiff described herein, (b) are alter egos for Combs,

completely dominated by him and used for his personal interests and to engage in wrongdoing which harmed Plaintiff and others, and/or (c) serve or have served as vehicles for Combs to move, dispose of, and/or insulate his assets, including in connection with his criminal activities and to avoid compensating the victims of his many crimes, including Plaintiff.

## JURISDICTION AND VENUE

30.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this case is between citizens of different states, and the amount in controversy exceeds $75,000.

31.     This Court has specific personal jurisdiction over Defendants because the acts giving rise to Plaintiff's claims took place in New York State, and because several of the Defendants are domiciled in New York State and/or regularly transact business in New York State.

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## JURY DEMAND

33.     Plaintiff hereby demands a trial by jury on his claims in this action.

## FACTUAL ALLEGATIONS

34.     Sean Combs' infamous "White Parties" were legendary events known for their exclusivity, extravagance, and strict dress code, where attendees were required to wear all white. These high-profile parties, particularly those held at Combs' estates in the Hamptons, attracted A-list celebrities from across the entertainment, fashion, and business worlds. The events were lavishly decorated, featured live music performances, and boasted top-tier food and beverages. The atmosphere at these parties was one of opulence and luxury, often making headlines for their celebrity guest lists, over-the-top entertainment, and the stunning aesthetics of the event. Many unsuspecting individuals were recruited to attend these parties. Some of this recruitment took place

in Manhattan. Many individuals were also recruited in Los Angeles and were paid to fly in and to attend these functions.

35.     In 2006, Plaintiff was employed by a security firm, MASS Security, where he provided security services for nightclubs and private events.

36.     In August of that year, Plaintiff accepted a last-minute job at Combs' East Hampton property, which he believed was hosting an exclusive white party for a large, affluent crowd. Plaintiff noted that the guests arrived in luxury vehicles, and many appeared to be executives.

37.     Upon Plaintiff's arrival, he was greeted by Combs, the event's host, who expressed interest in meeting all staff members.

38.     During their interaction, Combs offered Plaintiff another job opportunity working security, which Plaintiff ultimately declined due to his father's severe illness and the challenges of relocating. Combs appeared sympathetic to Plaintiff 's situation and understanding of his decision.

39.     As the event progressed, Combs targeted Plaintiff and provided him with two alcoholic drinks throughout the night.

40.     After consuming the second drink, Plaintiff began to feel extremely ill and leaned against his truck for support. Based on information and belief, Combs, by himself or through his agents/employees, previously laced the drink with drugs, including but not limited to GHB and/or ecstasy. This behavior towards Plaintiff mimics a pattern of Combs and his agents/employees drugging unsuspecting victims in order to make it easier for Combs to sexually assault that person. Unfortunately, Plaintiff was one such victim. A photograph of an exemplary container used by Combs and/or his agents/employees to insert GHB into alcoholic drinks is seen below:



41.     Combs approached him again, inquiring about his well-being and displaying what Plaintiff initially interpreted as concern.

42.     However, he soon found himself being forcibly pushed into an open van by Combs, an act that left him in considerable pain.

43.     Once inside the van, Plaintiff was held down by Combs, who overpowered him while he struggled to escape due to the effects of the drugs in his system.

44.     In a horrific turn of events, Combs sexually assaulted Plaintiff by inserting his penis into Plaintiff's anus and sodomizing him, all the while dismissing Plaintiff's pleas for help by repeatedly saying, "you'll be alright."

45.     After the assault, Combs left Plaintiff in the van and proceeded back to the party.

---

[1] A picture of a vial recovered from a Combs cohort presumably containing illicit drugs.

46.     Plaintiff struggled to leave the party due to the drugs he believed to be in his system from the "alcoholic" drinks Combs provided.

47.     As Plaintiff was leaving the party, he experienced a disturbing sensation as a lubricant-like fluid leaked from him, which he believed to be semen, causing him profound disgust.

48.     When Plaintiff finally managed to leave the scene and return home, he informed his supervisor of the incident.

49.     Upon arriving home and showering, Plaintiff noticed more semen discharge, which intensified his feelings of violation and revulsion.

50.     In the aftermath of the assault, Plaintiff struggled with intense emotional pain and mental health issues, feeling disgusted and deeply depressed.

51.     Plaintiff has experienced a significant impact on his personal life; he has never married and often struggles to maintain relationships due to the assault.

52.     Plaintiff describes himself as an "all-American guy," yet acknowledges that not a day goes by without thoughts of the traumatic incident.

## FIRST CAUSE OF ACTION
### (Violation of New York City Victims of Gender-Motivated Violence Protection Act)
### (All Defendants)

53.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

54.     By forcing sexual contact onto Plaintiff, Defendant Combs committed a "crime of violence motivated by gender" under the Victims of Gender-Motivated Violence Protection Act ("VGMVPA") as defined in New York City Administrative Code § 10-1103.

55.     The requirement that the crime of violence be committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender is satisfied

because Defendant Combs forced Plaintiff to engage in a sexual interaction without consent. Moreover, Combs' long history of violence and sexual abuse against men evinces a deep contempt and desire for domination over men.

56.    The Combs Business enabled Combs to commit the crime of violence motivated by gender because Combs sexually assaulted Plaintiff at a party related to or referencing Combs Business. On information and belief, Combs Businesses routinely committed sexual assault and gender-motivated violence, as detailed in other civil lawsuits, to further the business purpose of Combs' enterprise. Given Combs' long-standing pattern and practice of committing sexual violence against young men, the Combs Business had and/or should have had knowledge of Combs using such parties and venues for this unlawful conduct, and did nothing to stop it.

57.    The Combs Business enabled Combs to commit the crime of violence motivated by gender by failing to, among other things, protect Plaintiff from a known danger and/or have sufficient policies and procedures in place to prevent sexual assault and/or train their employees on identifying and preventing sexual assault. Given Combs' long-standing pattern and practice of committing sexual violence against young men, including on premises owned and/or operated by Defendants, the Combs Corporations had and/or should have had knowledge that Combs was a danger to Plaintiff, and did nothing to stop Combs.

58.    The Combs Business enabled Combs to commit the crime of violence motivated by gender by failing to properly supervise. The Combs Business had knowledge and/or should have had knowledge of Combs' widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants, and did nothing to stop it.

59.     The Combs Corporations further enabled Combs to commit the crime of violence motivated by gender by actively placing, maintaining, and/or employing Combs in positions of power and authority, despite the fact that they knew and/or should have known that Combs had a widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants. Combs used his titles and authority conferred by the Combs Business, including as CEO, Founder, and Chairman to facilitate and perpetuate the violent assault on Plaintiff, and to intimidate and force Plaintiff to keep quiet in subsequent years.

60.     On information and belief, Plaintiff alleges that Defendant Organizational Does 1 through 10, inclusive, are other parties not yet identified who have enabled Combs to commit the crime of violence motivated by gender, in the ways articulated above and/or in other ways.

61.     As a result of Defendants' actions, Plaintiff suffered damages in an amount to be determined at trial and pursuant to the fee-shifting provision of the statute.

62.     This legal action has been commenced within the statutory timeframe provided by the two-year look-back window for VGMVPA claims. *See* New York City Administrative Code § 10-1105.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

a.   Awarding compensatory damages for all physical injuries, emotional distress, psychological harm, anxiety, humiliation, physical and emotional pain and suffering, family and social disruption, and other harm, in an amount to be determined at trial;

b.   Awarding punitive damages in an amount to be determined at trial;

    c.   Awarding attorneys' fees and costs pursuant to any applicable statute or law;

    d.   Awarding pre- and post-judgment interest on all such damages, fees, and/or

        costs;

    e.   Attaching any and all of Defendants' real property and other assets located in

        the State of New York pursuant to Federal Rule of Civil Procedure 64; and

    f.   Awarding such other and further relief as this Court may deem just and

        proper.

Dated:  OCTOBER 14, 2024

                       Respectfully submitted,

                  **THE BUZBEE LAW FIRM**

                  By: */s/ Anthony G. Buzbee*
                  Anthony G. Buzbee
                  Texas Bar No. 24001820
                  tbuzbee@txattorneys.com
                  Christopher J. Leavitt
                  Texas Bar No. 24053318
                  cleavitt@txattorneys.com
                  Ryan S. Pigg
                  Texas Bar No. 24088227
                  rpigg@txattorneys.com
                  David C. Fortney
                  Texas Bar No. 24068740
                  dfortney@txattorneys.com
                  Thomas Colby Holler
                  Texas Bar No. 24126898
                  choller@txattorneys.com
                  Crystal Del Toro
                  Texas Bar No. 24090070
                  cdeltoro@txattorneys.com
                  J.P. Morgan Chase Tower
                  600 Travis, Suite 7500
                  Houston, Texas 77002
                  Telephone: (713) 223-5393
                  Facsimile: (713) 223-5909

                  *Attorneys for Plaintiff John Doe*

-   AND  -

**AVA LAW GROUP**
Andrew Van Arsdale
CA Bar No. 323370
andrew.vanarsdale@avalaw.com
3667 Voltaire Street, Ste. 101
San Diego, CA 92106
Telephone: (800) 777-4141
Facsimile: (619) 222-3667

-   AND  -

**CURIS LAW, PLLC**
Antigone Curis
antigone@curislaw.com
52 Duane Street, 7th Floor
New York, New York 10007
Phone: (646) 335-7220
Facsimile: (315) 660-2610

Exhibit F (xv): Jane Doe v. Combs; 1-24-cv-08024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

Jane Doe,

                    *Plaintiff*,                            No. _____

              v.

SEAN COMBS, DADDY'S HOUSE RECORDINGS        **COMPLAINT AND**
INC., CE OPCO, LLC d/b/a COMBS GLOBAL          **DEMAND FOR**
f/k/a COMBS ENTERPRISES LLC,                   **JURY TRIAL**
BAD BOY ENTERTAINMENT HOLDINGS, INC.,
BAD BOY PRODUCTIONS HOLDINGS, INC.,
BAD BOY BOOKS HOLDINGS, INC., BAD BOY
RECORDS LLC, BAD BOY ENTERTAINMENT LLC,
BAD BOY PRODUCTIONS LLC,
ORGANIZATIONAL DOES 1-10, AND INDIVIDUAL
DOES 1-10

                    *Defendants*.

-------------------------------------------------------X

        Plaintiff Jane Doe ("Plaintiff"), by and through her attorneys, The Buzbee Law

Firm, for her Complaint alleges as follows:

## **INTRODUCTION**

        1.     Plaintiff was drugged and raped by Combs at house party in Manhattan hosted by

Combs. Those in attendance included Combs himself and other celebrities. The conduct described

herein is shockingly typical of how Defendant Sean Combs conducted himself for many years.

Many individuals and entities facilitated and conspired with this abhorrent conduct. Sean Combs

believed he was above the law. He is not.

        2.     For decades, Sean Combs (a/k/a "P. Diddy," a/k/a "Puff Daddy," a/k/a "Diddy,"

a/k/a "PD," and a/k/a "Love") (described herein as "Combs") abused, molested, raped, assaulted,

threatened and coerced men, women, minors and others for sexual gratification, to assert dominance, and to conceal his abhorrent conduct. He accomplished these acts by and through a criminal enterprise built on his success as a rapper, record producer and record executive. Combs is one of the wealthiest musical artists in the world. Behind the façade of being a three-time Grammy Award winner, discovering and developing multiple famous musical artists, and ranking on Forbes' list of the highest-paid entertainers in the world, there existed something sinister – a dark underbelly of crime, sex trafficking, forced labor, kidnapping, bribery and prostitution. Combs is a menace to society, women and children. While his wealth has kept him above consequence for years, Combs now faces the awesome power of the American judicial system and ultimately a jury of his peers, who will be asked to punish him for the deplorable conduct described herein.

### *Combs' Businesses*

3.      Combs' business enterprise is central to the pervasive acts of sexual assault and abuse committed by him during the last decades. Combs operated his business, headquartered at various times in Manhattan and Los Angeles, under a variety of United States-based corporate entities, including Bad Boy Entertainment, Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment, LLC, Bad Boy Productions, LLC, Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC, Combs Enterprises and Combs Global (collectively, the "Combs Business"). Corporate entities in the Combs Business portfolio included record labels, a recording studio, an apparel line, an alcoholic spirits promoting business, a marketing agency, talent discovery, a television network and a media company.

4.      On the surface, each of these businesses served a legitimate purpose related to entertainment, music and other subjects. But in reality, Combs, by and through himself and his

agents, employees and contractors, used these businesses to sexually assault, abuse, threaten and coerce hundreds of individuals through sexual *quid pro quo* schemes, as well as to take advantage of individuals with impunity thinking the victims would never seek recourse. Combs and his agents, employees and contractors, through these Combs Businesses, would tell victims, "this is what it takes to be famous," "what are you willing to do to become a star?," and "perform this sexual act or else" to coerce the victim into performing a non-consensual sexual act for the gratification of Combs and his cohorts.

5.      Members and associates of the Combs Business engaged in (and/or attempted to engage in), among other activities, sex trafficking, forced labor, interstate transportation for the purposes of prostitution, coercion and enticement to engage in prostitution, narcotics offenses, kidnapping, arson, bribery, and obstruction of justice.

6.      The Combs Business constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of Combs.

*Combs' Pervasive History of Sexual Assault and Violence*

7.      For years Combs and his businesses engaged in a persistent and pervasive pattern of abuse toward women, men, and minors. This abuse was, at times, verbal, emotional, physical and sexual. As part of his pattern of abuse, Combs manipulated both men and women to participate in highly-orchestrated performances of sexual activity with both commercial sex workers and unsuspecting partygoers. In some cases these were individuals who were contractors or vendors. In other cases, they were random individuals pulled from a hotel lobby, a show, or off the street. Combs ensured participation from these individuals by, among other things, obtaining and distributing narcotics to them with or without their knowledge, controlling their careers, leveraging

his financial support and threatening to cut off the same, and using intimidation, violence, and illicit drugs.

8.      Combs, while celebrated for his business acumen and influence in the entertainment world, has often been described in a more troubling light as powerful, manipulative, and problematic. His aggressive tactics, both in business and personal dealings, have drawn criticism, with many viewing him as someone who leverages his power to intimidate and control. This darker side of Combs' persona has been underscored by the numerous lawsuits and allegations that have surfaced over the years. Despite his undeniable success, his rise to the top is marred by a reputation for being ruthless and manipulative, using his influence in ways that have left a trail of legal and personal controversies including but not limited to the following:

  a. Nightclub Shooting Incident (1999): Combs was embroiled in a high-profile case related to a nightclub shooting in New York, involving his then-girlfriend, Jennifer Lopez, and rapper Shyne. Combs was acquitted of all charges, though the case remains a significant legal event in his career.

  b. Multiple Assault Allegations: Combs has faced several lawsuits related to alleged physical assaults, many of which have been settled out of court.

  c. Business Disputes: Combs has been involved in various business-related legal conflicts, particularly surrounding his Sean John clothing line and other ventures. These disputes often involved contractual disagreements and trademark claims.

  d. Claims by Cassie Ventura: Combs' former girlfriend, Casandra "Cassie" Ventura, filed a lawsuit accusing him of years of physical, emotional, and sexual abuse during their relationship. Cassie alleged repeated instances of

assault, coerced sexual acts, and drug use, all contributing to an environment of fear and manipulation.

9.     Combs particularly fancied the use of the popular date-rape drug Rohypnol, or GHB, to commit heinous non-consensual acts of sexual violence and rape onto countless victims. Combs often would secretly use the drug in an alcoholic beverage served at his parties, typically champagne or "lemon drops." Partygoers were forced to consume the alcoholic beverage, containing GHB, either prior to entering or while at Combs' party. There are also allegations of Combs dousing victims in lotions or similar body oils, also laced with GHB, so that the drug would be absorbed through the victim's skin and make it easier to assault him or her.

10.    Combs' recurrent and pervasive physical abuse took place for multiple decades. His tendencies of violence and sexual assault were no doubt well known amongst his colleagues, employees, agents and businesses. On numerous occasions from at least on or about 1996 and continuing for years, Combs assaulted women and men by striking, punching, dragging, throwing objects at, and kicking them. Combs also assaulted children both physically and sexually.

11.    In 1996, Combs was found guilty of criminal mischief for threatening a photographer from the New York *Post* with a gun. In 1999, he was arrested and charged with second-degree assault and criminal mischief in connection with assaulting a record executive. Combs was arrested again the same year for his involvement in a shooting at a club in New York. Another instance of violence occurred at a Los Angeles hotel in or about March 2016, which was captured on video and later publicly reported, where Combs kicked, dragged and threw a vase at a woman as she was attempting to leave his hotel room. When hotel security staff intervened, Combs attempted to bribe the staff member to ensure silence.

12.     In the past year, numerous civil complaints have been filed by plaintiffs who allege that they had been sexually abused by Combs between 1991 and 2009. In November 2023, three lawsuits were filed against Combs under the New York Adult Survivors Act. Cassie Ventura, an artist signed to Bad Boy, sued Combs in New York for rape and physical abuse. She alleged Combs facilitated these acts by and through supplying Ms. Ventura with copious amounts of drugs and urging her to take them, beginning in 2006.

13.     Joi Dickerson-Neal also sued Combs in New York, alleging Combs drugged her, sexually assaulted her and secretly recorded the assault in 1991.

14.     Liza Gardner, whom Combs met at an event hosted by a record label affiliated with Bad Boy, sued him for allegedly raping her and a friend in 1990 or 1991 when she was only 16.

15.     In December 2023, an anonymous Plaintiff sued Combs in New York for allegedly drugging and gang-raping her in 2003 when she was only seventeen years old. This victim alleged that employees and business associates of Combs, through their affiliation with the Bad Boy enterprise, lured her to Combs' home where Combs then raped her.

16.     In February 2024, Rodney "Lil Rod" Jones, one of Combs' former producers, sued Combs for allegedly forcing him to engage in unwanted sex acts and sex trafficking, among other allegations. Mr. Jones alleged that Combs regularly drugged others, including minors, by giving them drugs laced with ecstasy (MDMA) and other date rape drugs. Mr. Jones alleged that Combs in fact drugged him as well in order to commit acts of sexual assault.

17.     In May 2024, former model Crystal McKinney and April Lampros sued Combs. Ms. McKinney alleged that Combs drugged and sexually assaulted her at his recording studio in 2003. Mimicking what has now become a known pattern, Combs promised Ms. McKinney to help her with her modeling career in exchange for engaging in sexual conduct with him. Ms. Lampros,

an intern at Arista Records, which was an owner of Bad Boy, also sued Combs in May 2024 in

New York County Supreme Court for raping her on multiple occasions, secretly filming these acts,

and showing the recordings to multiple people. Ms. Lampros also alleges that Combs ordered her

to take drugs on one occasion before he raped her.

18.     In July 2024, former adult film star Adria English – who was employed by Combs

as an entertainer at his infamous White Parties that brought together the biggest names in the music

and entertainment industries – sued Combs in the Southern District of New York for sex

trafficking, alleging that he required her to consume drinks laced with ecstasy and secretly

recorded the sexual acts.

19.     In September 2024, singer and songwriter Dawn Angelique Richard also sued

Combs. Richard was employed by Combs as part of the girl group Danity Kane, formed by Combs,

and later as a key member of Combs' band Diddy – Dirty Money. She sued Combs in New York

for sexual assault, false imprisonment, and for subjecting her to hostile working conditions due to

her gender, including degrading comments and threats. Ms. Richard has alleged that Combs

regularly supplied others including minors with copious amounts of drugs and alcohol, and

subjected them to sexual acts while they were sedated and/or unconscious due to the drugs and

alcohol.

20.     In September 2024, a federal grand jury in Manhattan indicted Combs and charged

him with sex trafficking, racketeering and the "creation of a criminal enterprise in which he abused,

threatened and coerced women and others around him to fulfill his sexual desires, protect his

reputation and conceal his conduct." *See United States of America v. Sean Combs, a/k/a "Puff

Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love*," Index No. 24 Crim. 542,

Indictment (SDNY), at ¶ 1.  The indictment explains that Combs' abuse of women and minors was

enabled and conspired with by "the employees, resources and influence of the multi-faceted business empire that he led and controlled – creating a criminal enterprise whose members and associates engaged in, and attempted to engage in, among other crimes, sex-trafficking, forced labor, kidnapping, arson, bribery and obstruction of justice."

21.     Combs' long history of violence unequivocally establishes that his actions are motivated by gender – both men and women. Combs has a profound contempt for women and a desire to dominate both minors and other men. His conduct shows a longstanding practice of denigrating, defeating and attempting to humiliate men, women and children. His practices and desires are different for men, women and children. But his actions are unequivocally motivated by the victims' particular gender and age.

22.     Plaintiff's allegations herein substantially mirror Combs' prior conduct as established through criminal indictments and other lawsuits. Through this case, Plaintiff seeks a full measure of justice from a man who thought his power, money and influence rendered him untouchable. Plaintiff joins many other victims by filing this Complaint in hopes their common voice makes it impossible for Combs to assault another person ever again.

## PARTIES

23.     Plaintiff Jane Doe is a female who resides in North Carolina.

24.     Defendant Sean Combs is a male who, on information and belief, resides in New York City, and who is otherwise currently incarcerated in the Metropolitan Detention Center in Brooklyn. On information and belief, at all relevant times Combs owned and/or controlled Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, Bad Boy Productions LLC, (collectively "Bad Boy"), Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a

Combs Global, f/k/a Combs Enterprises LLC (all together, the "Combs Corporations"). The facts of Combs' ownership and titles at the Combs Corporations enabled and conspired with him to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the sexual assault.

25.     Defendant Daddy's House Recordings, Inc. ("Daddy's House") is a domestic business corporation that is incorporated in New York and on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019. At the time of the events alleged herein, Daddy's House was a world-class recording studio owned by Combs located at 321 W 44th Street, Suite 201, New York, New York 10036. On information and belief, at all relevant times, Bad Boy and Combs together owned and operated Daddy's House. On information and belief, the Bad Boy recording studio was located on the premises of Daddy's House. Combs used the Daddy's House brand, stature and their ownership and titles at Daddy's House to commit the unlawful sexual violence against Plaintiff described herein.

26.     Defendant CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC ("Combs Global") is a limited liability company incorporated in Delaware that has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. On information and belief, all members of Combs Global are citizens of Delaware, New York, and/or California. On information and belief, Combs Global is an alter ego for Combs and/or a successor in interest to Combs' other corporations and/or was established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. Combs Global currently owns, controls, and/or oversees Bad Boy

and Combs' other business ventures in the music, fashion, fragrance, beverage, marketing, film, television, and media industries.

27.     As part of his renowned Bad Boy record label and brand, Combs has established several corporate entities under the "Bad Boy" name over the past few decades, including but not limited to Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, and Bad Boy Productions LLC (together, "Bad Boy"). On information and belief, all Bad Boy corporate entities are alter egos for Combs, are controlled and/or directed by Combs, and/or were established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. On information and belief, all active Bad Boy entities are now owned and/or controlled by Combs and/or by Combs Global. Combs used the Bad Boy premises/recording studio and their ownership and titles at Bad Boy to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the sexual assault.

    a.  Defendant Bad Boy Entertainment Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Entertainment Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

b.  Defendant Bad Boy Productions Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Productions Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

c.  Defendant Bad Boy Books Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 1440 Broadway, 3rd Floor, New York, New York 10018. Bad Boy Books Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. The CEO listed on public filings is Eddie Norward Jr., with a listed address of 1710 Broadway, New York, New York 10019, the same address listed for Sean Combs in public filings for Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., and Daddy's House Recordings, Inc.

d.  Defendant Bad Boy Records LLC is a Delaware limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Records LLC are citizens of Delaware, New York, and/or California. On information and belief, Bad Boy Records LLC is part of the Bad Boy enterprise and/or a successor-in-interest to

other Bad Boy Defendants that comprise the Bad Boy enterprise founded and
owned by Combs. On information and belief, Bad Boy Records LLC is now
owned and/or controlled by Combs and/or by Combs Global.

e.  Defendant Bad Boy Entertainment LLC is a New York limited liability
company that on information and belief is headquartered in New York and/or
California. On information and belief, all members of Bad Boy Entertainment
LLC are citizens of New York and/or California. Bad Boy Entertainment LLC
is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy
Defendants that comprise the Bad Boy enterprise founded and owned by
Combs. On information and belief, Bad Boy Entertainment LLC is now owned
and/or controlled by Bad Boy Entertainment Holdings, Inc. and/or by Combs,
and/or by Combs Global.

f.  Defendant Bad Boy Productions LLC is a New York limited liability company
that on information and belief is headquartered in New York and/or California.
On information and belief, all members of Bad Boy Productions LLC are
citizens of New York and/or California. Bad Boy Productions LLC is part of
the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy
Defendants that comprise the Bad Boy enterprise founded and owned by
Combs. On information and belief, Bad Boy Productions LLC is now owned
and/or controlled by Combs and/or by Combs Global.

28.    Defendants Organizational Does 1-10 are currently unknown entities who were
owned by and/or employed Defendant Combs and enabled and conspired with the commission of

the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities by name.

29.    Defendants Individual Does 1-10 are celebrities and/or persons of interest who enabled and/or conspired with the commission of the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individuals by name.

30.    Each of the Combs Corporations (a) aided and abetted Combs in committing the unlawful sexual violence against Plaintiff described herein, (b) are alter egos for Combs, completely dominated by him and used for his personal interests and to engage in wrongdoing which harmed Plaintiff and others, and/or (c) serve or have served as vehicles for Combs to move, dispose of, and/or insulate his assets, including in connection with his criminal activities and to avoid compensating the victims of his many crimes, including Plaintiff.

## JURISDICTION AND VENUE

31.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this case is between citizens of different states, and the amount in controversy exceeds $75,000.

32.    This Court has specific personal jurisdiction over Defendants because the acts giving rise to Plaintiff's claims took place in New York State, and because several of the Defendants are domiciled in New York State and/or regularly transact business in New York State.

33.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including the assault of Plaintiff.

## JURY DEMAND

34.    Plaintiff hereby demands a trial by jury on her claims in this action.

## FACTUAL ALLEGATIONS

35.     On or around December 2022, Plaintiff, a 29-year-old independent music artist who wrote, sang, rapped, and produced music, was invited to a party in New York City hosted by Combs.

36.     Plaintiff was invited along with several of her friends, also independent musicians.

37.     Upon arrival, Plaintiff observed a large, white, elegant residence, which stood apart from other homes in the area, and was accessed by a long, curved driveway. The house was adorned with lavish decor, featuring a grand entryway, a spacious room, and a large glass table.

38.     Once inside, servers offered platters of food and drinks, creating a luxurious and upscale atmosphere. Plaintiff quickly recognized various celebrities from the music industry and television, including Combs himself.

39.     As Plaintiff mingled with other guests, she noticed the widespread use of drugs, including cocaine, pills, and marijuana. Those employed and working in conspiracy with Combs pressured all guests to consume the drugs that were being provided and served by the house staff. Plaintiff declined the repeated offers.

40.     That evening, Plaintiff drank a single glass of wine, consuming no other substances.

41.     At some point during the event, Plaintiff was approached by and engaged in a conversation with Combs about her music career. Combs expressed interest in her work, stating his desire to help elevate her career by featuring her on a track.

42.     Combs advanced the interaction by inviting Plaintiff to his office, suggesting they discuss the advancement of her music career in private.

43.     After arriving in the office, Plaintiff began feeling disoriented, as if she were slipping in and out of consciousness. It became clear to her at this time that she had been drugged

by Combs. A photograph of an actual exemplary container used by Combs and/or his agents/employees to insert GHB into alcoholic drinks is seen below:



44.    Due to the effects of her drugged drink, Combs raped and sexually assaulted Plaintiff. Plaintiff could not stop him from doing so, as if she was trapped inside her body not participating but not able to resist.

45.    The next thing Plaintiff clearly remembers is waking up around 6:00 AM, confused and disoriented, in the same office where the assault took place.

46.    After checking herself, Plaintiff discovered blood on her legs from her vaginal area, and bruising on her lips. She also found deep imprints on her arms and wrists, suggesting she had been tied with ropes. Additionally, she felt significant pain and soreness in her vaginal region.

47.    Overwhelmed with fear and panic, Plaintiff frantically searched for her belongings, including her phone and clothes, but could not find them. Instead, she discovered a pair of pants,

---

[1] A picture of a vial recovered from a Combs cohort presumably containing illicit drugs.

a shirt, and slides which she quickly put on before trying to escape. Plaintiff eventually left the

residence.

48.     As a result of this incident, Plaintiff has suffered significant emotional distress and

trauma. She continues to deal with the psychological and emotional consequences of the assault.

## FIRST CAUSE OF ACTION
**(Violation of New York City Victims of Gender-Motivated Violence Protection Act)**
**(All Defendants)**

49.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth

herein.

50.     By forcing sexual contact onto Plaintiff, Defendant Combs committed a "crime of

violence motivated by gender" under the Victims of Gender-Motivated Violence Protection Act

("VGMVPA") as defined in New York City Administrative Code § 10-1103.

51.     The requirement that the crime of violence be committed because of gender or on

the basis of gender, and due, at least in part, to an animus based on the victim's gender is satisfied

because Defendant Combs forced Plaintiff to engage in a sexual interaction without consent.

Moreover, Combs' long history of violence and sexual abuse against women evinces a deep

contempt and desire for domination over women.

52.     The Combs Business enabled and conspired with Combs to commit the crime of

violence motivated by gender because Combs sexually assaulted Plaintiff at a party related to or

referencing Combs Business. On information and belief, Combs Businesses routinely committed

sexual assault and gender-motivated violence, as detailed in other civil lawsuits, to further the

business purpose of Combs' enterprise. Given Combs' long-standing pattern and practice of

committing sexual violence against young men, the Combs Business had and/or should have had

knowledge of Combs using such parties and venues for this unlawful conduct and did nothing to stop it.

53.    The Combs Business enabled and conspired with Combs to commit the crime of violence motivated by gender by failing to, among other things, protect Plaintiff from a known danger and/or have sufficient policies and procedures in place to prevent sexual assault and/or train their employees on identifying and preventing sexual assault. Given Combs' long-standing pattern and practice of committing sexual violence against young men, including on premises owned and/or operated by Defendants, the Combs Corporations had and/or should have had knowledge that Combs was a danger to Plaintiff, and did nothing to stop Combs.

54.    The Combs Business enabled and conspired with Combs to commit the crime of violence motivated by gender by failing to properly supervise. The Combs Business had knowledge and/or should have had knowledge of Combs' widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants, and did nothing to stop it.

55.    The Combs Corporations further enabled and conspired with Combs to commit the crime of violence motivated by gender by actively placing, maintaining, and/or employing Combs in positions of power and authority, despite the fact that they knew and/or should have known that Combs had a widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants. Combs used his titles and authority conferred by the Combs Business, including as CEO, Founder, and Chairman to facilitate and perpetuate the violent assault on Plaintiff, and to intimidate and force Plaintiff to keep quiet in subsequent years.

56.    On information and belief, Plaintiff alleges that Defendant Organizational Does 1 through 10, inclusive, are other parties not yet identified who have enabled and conspired with Combs to commit the crime of violence motivated by gender, in the ways articulated above and/or in other ways.

57.    As a result of Defendants' actions, Plaintiff suffered damages in an amount to be determined at trial and pursuant to the fee-shifting provision of the statute.

58.    This legal action has been commenced within the statutory timeframe provided by the two-year look-back window for VGMVPA claims. *See* New York City Administrative Code § 10-1105.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

a.    Awarding compensatory damages for all physical injuries, emotional distress, psychological harm, anxiety, humiliation, physical and emotional pain and suffering, family and social disruption, and other harm, in an amount to be determined at trial;

b.    Awarding punitive damages in an amount to be determined at trial;

c.    Awarding attorneys' fees and costs pursuant to any applicable statute or law;

d.    Awarding pre- and post-judgment interest on all such damages, fees, and/or costs;

e.    Attaching any and all of Defendants' real property and other assets located in the State of New York pursuant to Federal Rule of Civil Procedure 64; and

f.    Awarding such other and further relief as this Court may deem just and proper.

Dated:  OCTOBER 18, 2024

Respectfully submitted,

**THE BUZBEE LAW FIRM**

By: */s/ Anthony G. Buzbee*
Anthony G. Buzbee
Texas Bar No. 24001820
tbuzbee@txattorneys.com
Christopher J. Leavitt
Texas Bar No. 24053318
cleavitt@txattorneys.com
Ryan S. Pigg
Texas Bar No. 24088227
rpigg@txattorneys.com
David C. Fortney
Texas Bar No. 24068740
dfortney@txattorneys.com
Thomas Colby Holler
Texas Bar No. 24126898
choller@txattorneys.com
Lionel Sims III
Texas Bar No. 24107465
lsims@txattorneys.com
Crystal Del Toro
Texas Bar No. 24090070
cdeltoro@txattorneys.com
J.P. Morgan Chase Tower
600 Travis, Suite 7500
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

*Attorneys for Plaintiff Jane Doe*

-    AND  -

**AVA LAW GROUP**
Andrew Van Arsdale
CA Bar No. 323370
andrew.vanarsdale@avalaw.com
3667 Voltaire Street, Ste. 101
San Diego, CA 92106
Telephone: (800) 777-4141
Facsimile: (619) 222-3667

-   AND  -

**CURIS LAW, PLLC**
Antigone Curis
antigone@curislaw.com
52 Duane Street, 7th Floor
New York, New York 10007
Phone: (646) 335-7220
Facsimile: (315) 660-2610

Exhibit F (xvi): Jane Doe v. Combs; 1-24-cv-7769

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

Jane Doe,

            *Plaintiff*,                            No. _____

           v.

SEAN COMBS, DADDY'S HOUSE RECORDINGS INC.,      **COMPLAINT AND**
CE OPCO, LLC d/b/a COMBS GLOBAL f/k/a            **DEMAND FOR**
COMBS ENTERPRISES LLC, BAD BOY                  **JURY TRIAL**
ENTERTAINMENT HOLDINGS, INC.,
BAD BOY PRODUCTIONS HOLDINGS, INC.,
BAD BOY BOOKS HOLDINGS, INC., BAD BOY
RECORDS LLC, BAD BOY ENTERTAINMENT LLC,
BAD BOY PRODUCTIONS LLC, MARRIOTT
INTERNATIONAL, INC and ORGANIZATIONAL DOES 1-10.

           *Defendants*.

--------------------------------------------------------X

        Plaintiff Jane Doe ("Plaintiff"), by and through her attorneys, The Buzbee Law

Firm, for her Complaint alleges as follows:

## **INTRODUCTION**

    1.    This case seeks both compensatory and punitive damages for aggravated sexual

assault of Plaintiff Jane Doe. The conduct described herein is violent and shockingly typical of

Defendant Sean Combs. Aided and enabled by numerous individuals and entities, Sean Combs for

many years believed he was above the law. He is not.

    2.    For decades, Sean Combs (a/k/a "P. Diddy," a/k/a "Puff Daddy," a/k/a "Diddy,"

a/k/a "PD," and a/k/a "Love") (herein as "Combs") abused, molested, raped, assaulted, threatened

and coerced women, men and minors for sexual gratification, to assert dominance, and to conceal

his abhorrent conduct. Combs accomplished these acts by and through a criminal enterprise built

on his success as a rapper, record producer and record executive. Combs is reportedly one of the wealthiest musical artists in the world. Behind the façade of being a three-time Grammy Award winner, discovering and developing multiple famous musical artists, and ranking on Forbes' list of the highest-paid entertainers in the world, there existed something sinister– a dark underbelly of crime, sex trafficking, forced labor, kidnapping, bribery and prostitution. Combs is a menace to society, women, men and children. While his wealth has kept him above consequence for years, Combs now faces the awesome power of the American judicial system and ultimately a jury of his peers who will be asked to punish him for the deplorable conduct described herein.

*Combs' Businesses*

3.     Combs' business enterprise is central to the pervasive acts of sexual assault and abuse committed by he, his posse, and his pals during the last decades. Combs operated his business, headquartered at various times in Manhattan and Los Angeles, under a variety of United States-based corporate entities, including Bad Boy Entertainment, Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment, LLC, Bad Boy Productions, LLC, Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC, Combs Enterprises and Combs Global (collectively, the "Combs Business"). Corporate entities in the Combs Business portfolio included record labels, a recording studio, an apparel line, an alcoholic spirits promoting business, a marketing agency, talent discovery, a television network and media company.

4.     On the surface, each of these businesses served a legitimate purpose related to entertainment, music and other subjects. But in reality, Combs, by and through himself and his agents, employees and contractors, used these businesses to sexually assault, abuse, threaten and coerce hundreds of individuals through sexual *quid pro quo* schemes, as well as to take advantage

of individuals with impunity thinking the victims would never have any recourse. Combs and his agents, employees and contractors, through these Combs Businesses, would tell victims, "this is what it takes to be famous," "what are you willing to do to become a star?," and "perform this sexual act or else" to coerce, cajole, or force the victim into performing a non-consensual sexual act for the gratification of Combs and his cohorts.

5.    Members and associates of the Combs Business engaged in (and/or attempted to engage in), among other activities, sex trafficking, forced labor, interstate transportation for the purposes of prostitution, coercion and enticement to engage in prostitution, narcotics offenses, kidnapping, arson, bribery, and obstruction of justice.

6.    The Combs Business constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of Combs.

*Combs' Pervasive History of Sexual Assault and Violence*

7.    For years Combs and his businesses engaged in a persistent and pervasive pattern of abuse toward women, men, and minors. This abuse was, at times, verbal, emotional, physical and sexual. As part of his pattern of abuse, Combs manipulated both men and women to participate in highly-orchestrated performances of sexual activity with both commercial sex workers and unsuspecting partygoers. Combs ensured participation from these individuals by, among other things, obtaining and distributing narcotics to them with or without their knowledge, controlling their careers, leveraging his financial support and threatening to cut off the same, and using intimidation, violence, and illicit drugs.

8.    Combs, while celebrated for his business acumen and influence in the entertainment world, has often been described in a more troubling light as powerful, manipulative, and problematic. His aggressive tactics, both in business and personal dealings, have drawn criticism,

with many viewing him as someone who leverages his power to intimidate and control. This darker side of Comb's persona has been underscored by the numerous lawsuits and allegations that have surfaced over the years. Despite his undeniable success, his rise to the top is marred by a reputation for being ruthless and manipulative, using his influence in ways that have left a trail of legal and personal controversies including but not limited to the following:

    a. Nightclub Shooting Incident (1999): Combs was embroiled in a high-profile case related to a nightclub shooting in New York, involving his then-girlfriend, Jennifer Lopez, and rapper Shyne. Combs was acquitted of all charges, though the case remains a significant legal event in his career.

    b. Multiple Assault Allegations: Combs has faced several lawsuits related to alleged physical assaults, many of which have been settled out of court.

    c. Business Disputes: Combs has been involved in various business-related legal conflicts, particularly surrounding his Sean John clothing line and other ventures. These disputes often involved contractual disagreements and trademark claims.

    d. Claims by Cassie Ventura: Combs' former girlfriend, Casandra "Cassie" Ventura, filed a lawsuit accusing him of years of physical, emotional, and sexual abuse during their relationship. Cassie alleged repeated instances of assault, coerced sexual acts, and drug use, all contributing to an environment of fear and manipulation.

    9.    Combs particularly fancied the use of the popular date-rape drug Rohypnol, or GHB, to commit heinous non-consensual acts of sexual violence and rape against countless victims. Combs often would secretly use the drug in an alcoholic beverage served at his parties,

typically in a seemingly innocent glass of champagne or a "lemon drop." Partygoers were forced to consume the alcoholic beverage, containing GHB, either prior to entering or while at Combs' party. There are also allegations of Combs dousing victims in lotions or similar body oils, also laced with GBH, so that the drug would be absorbed through the victim's skin and make it easier to take advantage of, exploit, and assault him or her.

10.     In the past year, numerous civil complaints have been filed by plaintiffs who allege that they had been sexually abused by Combs between 1991 and 2009. In November 2023, three lawsuits were filed against Combs under the New York Adult Survivors Act. Cassie Ventura, an artist signed to Bad Boy, sued Combs in New York for rape and physical abuse. She alleged Combs facilitated these acts by and through supplying Ms. Ventura with copious amounts of drugs and urging her to take them, beginning in 2006.

11.     Joi Dickerson-Neal also sued Combs in New York, alleging Combs drugged her, sexually assaulted her and secretly recorded the assault in 1991.

12.     Liza Gardner, whom Combs met at an event hosted by a record label affiliated with Bad Boy, sued him for raping her and a friend in 1990 or 1991 when she was only 16.

13.     In December 2023, an anonymous Plaintiff sued Combs in New York for drugging and gang-raping her in 2003 when she was only seventeen years old. This victim alleged that employees and business associates of Combs, through their affiliation with Bad Boy enterprise, lured her to Combs' home where Combs then raped her.

14.     In February 2024, Rodney "Lil Rod" Jones, one of Combs' former producers, sued Combs for forcing him to engage in unwanted sex acts and sex trafficking, among other allegations. Mr. Jones alleged that Combs regularly drugged others, including minors, by giving

them drugs laced with ecstasy (MDMA) and other date rape drugs. Mr. Jones alleged that Combs in fact drugged him as well in order to commit acts of sexual assault.

15.     In May 2024, former model Crystal McKinney and April Lampros sued Combs. Ms. McKinney alleged that Combs drugged and sexually assaulted her at his recording studio in 2003. Mimicking what has now become a known pattern, Combs promised Ms. McKinney to help her with her modeling career in exchange for engaging in sexual conduct with him. Ms. Lampros, an intern at Arista Records, which was an owner of Bad Boy, also sued Combs in May 2024 in New York County Supreme Court for raping her on multiple occasions, secretly filming these acts, and showing the recordings to multiple people. Ms. Lampros also alleges that Combs ordered her to take drugs on one occasion before he raped her.

16.     In July 2024, former adult film star Adria English – who was employed by Combs as an entertainer at his infamous White Parties that brought together the biggest names in the music and entertainment industries – sued Combs in the Southern District of New York for sex trafficking, alleging that he required her to consume drinks laced with ecstasy and secretly recorded sexual acts.

17.     In September 2024, singer and songwriter Dawn Angelique Richard also sued Combs. Richard was employed by Combs as part of the girl group Danity Kane, formed by Combs, and later as a key member of Combs' band Diddy – Dirty Money. She sued Combs in New York for sexual assault, false imprisonment, and for subjecting her to hostile working conditions due to her gender, including degrading comments and threats. Ms. Richard has alleged that Combs regularly supplied others including minors with copious amounts of drugs and alcohol, and subjected them to sexual acts while they were sedated and/or unconscious due to the drugs and alcohol.

18.     In September 2024, a federal grand jury in Manhattan indicted Combs and charged him with sex trafficking, racketeering and the "creation of a criminal enterprise in which he abused, threatened and coerced women and others around him to fulfill his sexual desires, protect his reputation and conceal his conduct." *See United States of America v. Sean Combs, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love,"* Index No. 24 Crim. 542, Indictment (SDNY), at ¶ 1.  The indictment explains that Combs' abuse of women and minors was enabled by "the employees, resources and influence of the multi-faceted business empire that he led and controlled – creating a criminal enterprise whose members and associates engaged in, and attempted to engage in, among other crimes, sex-trafficking, forced labor, kidnapping, arson, bribery and obstruction of justice."

19.     Combs' long history of violence against women unequivocally establishes that his actions are motivated by gender – both men and women. Combs has a profound contempt for women and a desire to dominate both minors and other men. His conduct shows a longstanding practice of denigrating, defeating and attempting to humiliate men, women and children. His practices and desires are different for men, women and children. But his actions are unequivocally motivated by the victims' particular gender and age.

20.     Plaintiff's allegations herein substantially mirror Combs' prior conduct as established through criminal indictments and other lawsuits. Through this case, Plaintiff seeks a full measure of justice from a man who thought his power, money and influence rendered him untouchable. Plaintiff joins many other victims by filing this Complaint in hopes their common voice makes it impossible for Combs to assault another person ever again.

21.     The conduct complained of in many of the cases to be brought involve others who facilitated, encouraged, or participated in the conduct alleged.

## PARTIES

22.    Plaintiff Jane Doe is a female who resides in Tennessee (the city has been left unpled for anonymity).

23.    Defendant Sean Combs is a male who, on information and belief, resides in New York City, through incarceration in the Metropolitan Detention Center in Brooklyn. On information and belief, at all relevant times Combs owned and/or controlled Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, Bad Boy Productions LLC, (collectively "Bad Boy"), Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC (all together, the "Combs Corporations"). The facts of Combs' ownership and titles at the Combs Corporations enabled him to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate her into silence after the rape.

24.    Defendant CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC ("Combs Global") is a limited liability company incorporated in Delaware that has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. On information and belief, all members of Combs Global are citizens of Delaware, New York, and/or California. On information and belief, Combs Global is an alter ego for Combs and/or a successor in interest to Combs' other corporations and/or was established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. Combs Global currently owns, controls, and/or oversees Bad Boy and Combs' other business ventures in the music, fashion, fragrance, beverage, marketing, film, television, and media industries.

25. As part of his renowned Bad Boy record label and brand, Combs has established several corporate entities under the "Bad Boy" name over the past few decades, including but not limited to Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, and Bad Boy Productions LLC (together, "Bad Boy"). On information and belief, all Bad Boy corporate entities are alter egos for Combs, are controlled and/or directed by Combs, and/or were established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. On information and belief, all active Bad Boy entities are now owned and/or controlled by Combs and/or by Combs Global. Combs used the Bad Boy premises/recording studio and their ownership and titles at Bad Boy to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate her into silence after the rape.

    a. Defendant Bad Boy Entertainment Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Entertainment Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

    b. Defendant Bad Boy Productions Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West

Hollywood, California 90069. Bad Boy Productions Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

c.   Defendant Bad Boy Books Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 1440 Broadway, 3rd Floor, New York, New York 10018. Bad Boy Books Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. The CEO listed on public filings is Eddie Norward Jr., with a listed address of 1710 Broadway, New York, New York 10019, the same address listed for Sean Combs in public filings for Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., and Daddy's House Recordings, Inc.

d.   Defendant Bad Boy Records LLC is a Delaware limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Records LLC are citizens of Delaware, New York, and/or California. On information and belief, Bad Boy Records LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Records LLC is now owned and/or controlled by Combs and/or by Combs Global.

e.  Defendant Bad Boy Entertainment LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Entertainment LLC are citizens of New York and/or California. Bad Boy Entertainment LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Entertainment LLC is now owned and/or controlled by Bad Boy Entertainment Holdings, Inc. and/or by Combs, and/or by Combs Global.

f.  Defendant Bad Boy Productions LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Productions LLC are citizens of New York and/or California. Bad Boy Productions LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Productions LLC is now owned and/or controlled by Combs and/or by Combs Global.

26.  Defendant Marriott International Inc. is a domestic business corporation doing business in New York, that on information and belief now has its principal place of business at 7750 Wisconsin Ave., Bethesda, Maryland 20814. Marriot management was well aware of Combs and his activities. Marriot management and other personnel "looked the other way" rather than intervene. Marriot further benefitted and profited from the conduct described herein.

27.     Defendants Organizational Does 1-10 are currently unknown entities who were owned by and/or employed Defendant Combs and enabled the commission of the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities by name.

28.     Each of the Combs Corporations (a) aided and abetted Combs in committing the unlawful sexual violence against Plaintiff described herein, (b) are alter egos for Combs, completely dominated by him and used for his personal interests and to engage in wrongdoing which harmed Plaintiff and others, and/or (c) serve or have served as vehicles for Combs to move, dispose of, and/or insulate his assets, including in connection with his criminal activities and to avoid compensating the victims of his many crimes, including Plaintiff.

29.     Each of the Marriott entities conspired with and aided and abetted Combs in committing the unlawful sexual violence against Plaintiff described herein by serving or have served as vehicles for Combs to commit said sexual violence by and through use of Marriott's premise(s), hotel staff and employees and by profiting from such activities committed by Combs.

## JURISDICTION AND VENUE

30.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this case is between citizens of different states, and the amount in controversy exceeds $75,000.

31.     This Court has specific personal jurisdiction over Defendants because the acts giving rise to Plaintiff's claims took place in New York State, and because several of the Defendants are domiciled in New York State and/or regularly transact business in New York State.

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## JURY DEMAND

33.     Plaintiff hereby demands a trial by jury on her claims in this action.

## FACTUAL ALLEGATIONS

34.     Combs and his staff regularly invited members of the public to events such as music video shoots, photoshoots, autograph signings, in and around New York City. One such event took place in 2004 across the street from Jane Doe's college campus in Brooklyn, New York. Through Ms. Doe's friends and Combs' accomplices and agents, Ms. Doe received an invitation to Combs' photoshoot. She was nineteen years old at the time. She was flattered and excited to receive such an invitation from an individual of Combs' celebrity and stature.

35.     Ms. Doe accompanied her friends to the event and discovered that it was a photoshoot promoting "Da Band," a recording group Combs signed to his record label, Bad Boy Entertainment. At the photoshoot, she and one of her good friends, another freshman living in the dormitory with Ms. Doe, were eventually invited to an after party by Combs' business associates. Before leaving for the party, Ms. Doe had met Combs at the photoshoot. Combs told Ms. Doe and her friend that they should come to his hotel first for a more exclusive party. Ms. Doe and her friend agreed and were taken to a Manhattan area Marriott hotel by a member of Combs' entourage.

36.     Upon arriving at the hotel suite, Ms. Doe noticed that there were a dozen people there having drinks and listening to music in a relaxed party environment. While attempting to mingle around the party, Ms. Doe and her friend were suddenly grabbed and taken to a separate room off from the main party. Ms. Doe believed the man taking them to be a security guard, so she went with him. But when she asked him where they were going, he simply told her "You know what you are here for."

37.     After taking Ms. Doe and her friend to the bedroom, the security guard left the room and locked the door. The only person in the room besides Ms. Doe and her friend was Combs. Combs gave Ms. Doe and her friend more drinks, then instructed them to imbibe cocaine that he had prepared for use on the coffee table. Ms. Doe did not want to do the cocaine. Combs continued getting gradually more aggressive with the two women and eventually began forcibly touch them without consent. When they resisted, Combs ordered Ms. Doe's friend to perform oral sex on him or else he would have them both killed. Ms. Doe's friend complied as Ms. Doe begged Combs to allow them to leave. He did not agree.

38.     Combs soon turned his sights to Ms. Doe and forced her to take her clothes off, again under the threat of violence. Once she was undressed, Combs forced himself on her and began to sexually assault her. Combs fondled, molested, and ultimately raped Ms. Doe, all while she was begging him to stop. Soon, and likely due to Ms. Doe's cries, the door opened and the security guard from earlier came in to ask if everything was alright. Ms. Doe's friend took the opportunity to rush out of the recently locked door. Ms. Doe however, could not move as Mr. Combs was still on top of her.

39.     Combs got off of Ms. Doe to talk to the security guard, he left the room but told Ms. Doe to stay otherwise she would be killed. After about half an hour of sitting in the dark room by herself, another security guard came and told her that she could leave. Ms. Doe gathered her things and left immediately and called a taxi back to her dormitory in downtown Brooklyn.

## FIRST CAUSE OF ACTION
### (Violation of New York City Victims of Gender-Motivated Violence Protection Act)
### (All Defendants)

40.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

41.     By forcing sexual contact onto Plaintiff, specifically by physically assaulting and then forcibly raping Plaintiff, Defendant Combs committed a "crime of violence motivated by gender" under the Victims of Gender-Motivated Violence Protection Act ("VGMVPA") as defined in New York City Administrative Code § 10-1103.

42.     The requirement that the crime of violence be committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender is satisfied because Defendant Combs forced Plaintiff to engage in a sexual interaction without consent.

43.     The Combs Business enabled Combs to commit the crime of violence motivated by gender because Combs sexually assaulted Plaintiff at a hotel doing business with the Combs Business. On information and belief, Combs Businesses routinely committed sexual assault and gender-motivated violence, as detailed in other civil lawsuits, to further the business purpose of Combs' enterprise. Given Combs' long- standing pattern and practice of committing sexual violence against women, the Combs Business had and/or should have had knowledge of Combs using such venues for this unlawful conduct, and did nothing to stop it.

44.     The Combs Business enabled Combs to commit the crime of violence motivated by gender by failing to, among other things, protect Plaintiff from a known danger and/or have sufficient policies and procedures in place to prevent sexual assault and/or train their employees on identifying and preventing sexual assault. Given long-standing pattern and practice of committing sexual violence against women, including on premises owned and/or operated and/or used by Defendants for business purposes, the Combs Corporations had and/or should have had knowledge that Combs was a danger to Plaintiff, and did nothing to stop Combs.

45.     The Combs Business enabled Combs to commit the crime of violence motivated by gender by failing to properly supervise. The Combs Business had knowledge and/or should have

had knowledge of Combs' widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated and/or used for business purposes by Defendants, and did nothing to stop it.

46.     The Combs Corporations further enabled Combs to commit the crime of violence motivated by gender by actively placing, maintaining, and/or employing Combs in positions of power and authority, despite the fact that they knew and/or should have known that Combs had a widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants. Combs used his titles and authority conferred by the Combs Business, including as CEO, Founder, and Chairman to facilitate and perpetuate the violent assault on Plaintiff, and to intimidate and force Plaintiff to keep quiet in subsequent years.

47.     The Marriott defendants further enabled Combs to commit the crime of violence motivated by gender by turning a willful blind eye to his obvious conduct, including sexual violence against others; facilitating a venue and premise, including but not limited to a hotel room, to Combs and his associates in order to permit him to commit such acts of sexual violence; and profiting from Combs' sexual violence through room rates, room service and other monetary benefits paid by and through Combs and his corporations. There can be no doubt that Combs and his conduct was well known; he routinely had large parties at hotel venues. Numerous people, most of which were not guests at the hotel, would come and go. Many would leave intoxicated and disoriented. Large volumes of alcohol and drugs were consumed. Marriot profited from this conduct, rather than intervene and stop it.

48. On information and belief, Plaintiff alleges that Defendant Organizational Does 1 through 10, inclusive, are other parties not yet identified who have enabled Combs to commit the crime of violence motivated by gender, in the ways articulated above and/or in other ways.

49. Plaintiff alleges the existence of a conspiracy in order to connect the actions of the individual defendants with the actionable, underlying tort of VGMVPA, as the actions described herein were coupled with an agreement between all Defendants as co-conspirators regarding the tort and overt actions in furtherance of that agreement as further described herein.

50. As a result of Defendants' actions, Plaintiff suffered damages in an amount to be determined at trial and pursuant to the fee-shifting provision of the statute.

51. This legal action has been commenced within the statutory timeframe provided by the two-year look-back window for VGMVPA claims. *See* New York City Administrative Code § 10-1105.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

     a. Awarding compensatory damages for all physical injuries, emotional distress, psychological harm, anxiety, humiliation, physical and emotional pain and suffering, family and social disruption, and other harm, in an amount to be determined at trial;

     b. Awarding punitive damages in an amount to be determined at trial;

     c. Awarding attorneys' fees and costs pursuant to any applicable statute or law;

     d. Awarding pre- and post-judgment interest on all such damages, fees, and/or costs;

e.   Attaching any and all of Defendants' real property and other assets located in the State of New York pursuant to Federal Rule of Civil Procedure 64; and

f.   Awarding such other and further relief as this Court may deem just and proper.

Dated: OCTOBER 15, 2024

Respectfully submitted,

**THE BUZBEE LAW FIRM**

By: */s/ Anthony G. Buzbee*
Anthony G. Buzbee
Texas Bar No. 24001820
tbuzbee@txattorneys.com
Christopher J. Leavitt
Texas Bar No. 24053318
cleavitt@txattorneys.com
Ryan S. Pigg
Texas Bar No. 24088227
rpigg@txattorneys.com
David C. Fortney
Texas Bar No. 24068740
dfortney@txattorneys.com
Colby Holler
Texas Bar No. 24126898
choller@txattorneys.com
Crystal Del Toro
Texas Bar No. 24090070
cdeltoro@txattorneys.com
J.P. Morgan Chase Tower
600 Travis, Suite 7500
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

*Attorneys for Plaintiff John Doe*

-   AND  -

**AVA LAW GROUP**
Andrew Van Arsdale
CA Bar No. 323370
andrew.vanarsdale@avalaw.com
3667 Voltaire Street, Ste. 101

San Diego, CA 92106
Telephone: (800) 777-4141
Facsimile: (619) 222-3667

-    AND  -

**CURIS LAW, PLLC**
Antigone Curis
antigone@curislaw.com
52 Duane Street, 7th Floor
New York, New York 10007
Phone: (646) 335-7220
Facsimile: (315) 660-2610

Exhibit F (xvii): John Doe v. Sean Combs; 1-24-cv-7778

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

John Doe,

              *Plaintiff*,                  No. _____

        v.

SEAN COMBS, DADDY'S                  **COMPLAINT AND**
HOUSE RECORDINGS INC., CE OPCO, LLC d/b/a      **DEMAND FOR**
COMBS GLOBAL f/k/a COMBS ENTERPRISES LLC,   **JURY TRIAL**
BAD BOY ENTERTAINMENT HOLDINGS, INC.,
BAD BOY PRODUCTIONS HOLDINGS, INC.,
BAD BOY BOOKS HOLDINGS, INC., BAD BOY
RECORDS LLC, BAD BOY ENTERTAINMENT LLC,
BAD BOY PRODUCTIONS LLC, AND
ORGANIZATIONAL DOES 1-10,

              *Defendants*.

-------------------------------------------------------X

        Plaintiff John Doe ("Plaintiff"), by and through his attorneys, The Buzbee Law

Firm, for his Complaint alleges as follows:

## **INTRODUCTION**

        1.      This case seeks compensatory and punitive damages for the sexual assault of a

minor. The assault, which was part of a practice that Defendant Sean Combs had of grooming or

attempting to groom minors, occurred at what was termed a "white party" at Combs' residence in

New York. The conduct described herein is shockingly typical of Defendant Sean Combs. Combs

was aided in his abhorrent conduct over the years by many individuals and entities. Sean Combs

for many years believed he was above the law. He is not.

        2.      For decades, Sean Combs (a/k/a "P. Diddy," a/k/a "Puff Daddy," a/k/a "Diddy,"

a/k/a "PD," and a/k/a "Love") (described herein as "Combs") abused, molested, raped, assaulted,

1

threatened and coerced men, women, minors and others for sexual gratification, to assert dominance, and to conceal his abhorrent conduct. He accomplished these acts by and through a criminal enterprise built on his success as a rapper, record producer and record executive. Combs is one of the wealthiest musical artists in the world. Behind the façade of being a three-time Grammy Award winner, discovering and developing multiple famous musical artists, and ranking on Forbes' list of the highest-paid entertainers in the world, there existed something sinister—a dark underbelly of crime, sex trafficking, forced labor, kidnapping, bribery and prostitution. Combs is a menace to society, women and children. While his wealth has kept him above consequence for years, Combs now faces the awesome power of the American judicial system and ultimately a jury of his peers who will be asked to punish him for the deplorable conduct described herein.

### *Combs' Businesses*

3.      Combs' business enterprise is central to the pervasive acts of sexual assault and abuse committed by him during the last decades. Combs operated his business, headquartered at various times in Manhattan and Los Angeles, under a variety of United States-based corporate entities, including Bad Boy Entertainment, Bad Boy Books Holdings, Inc., Bad Boy Records, LLC, Bad Boy Entertainment, LLC, Bad Boy Productions, LLC, Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises, LLC, Combs Enterprises and Combs Global (collectively, the "Combs Business"). Corporate entities in the Combs Business portfolio included record labels, a recording studio, an apparel line, an alcoholic spirits promoting business, a marketing agency, talent discovery, a television network and media company.

4.      On the surface, each of these businesses served a legitimate purpose related to entertainment, music and other subjects. But in reality, Combs, by and through himself and his agents, employees and contractors, used these businesses to sexually assault, abuse, threaten and coerce hundreds of individuals through sexual *quid pro quo* schemes, as well as to take advantage of individuals with impunity thinking the victims would never seek recourse. Combs and his agents, employees and contractors, through these Combs Businesses, would tell victims, "this is what it takes to be famous," "what are you willing to do to become a star?," and "perform this sexual act or else" to coerce the victim into performing a non-consensual sexual act for the gratification of Combs and his cohorts.

5.      Members and associates of the Combs Business engaged in (and/or attempted to engage in), among other activities, sex trafficking, forced labor, interstate transportation for the purposes of prostitution, coercion and enticement to engage in prostitution, narcotics offenses, kidnapping, arson, bribery, and obstruction of justice.

6.      The Combs Business constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of Combs.

*Combs' Pervasive History of Sexual Assault and Violence*

7.      For years Combs and his businesses engaged in a persistent and pervasive pattern of abuse toward women, men, and minors. This abuse was, at times, verbal, emotional, physical and sexual. As part of his pattern of abuse, Combs manipulated both men and women to participate in highly-orchestrated performances of sexual activity with both commercial sex workers and unsuspecting partygoers. In some cases these were individuals who were contractors or vendors. In other cases, they were random individuals pulled from a hotel lobby, a show, or off the street. Combs ensured participation from these individuals by, among other things, obtaining and

3

distributing narcotics to them with or without their knowledge, controlling their careers, leveraging his financial support and threatening to cut off the same, and using intimidation, violence, and illicit drugs.

8. Combs, while celebrated for his business acumen and influence in the entertainment world, has often been described in a more troubling light as powerful, manipulative, and problematic. His aggressive tactics, both in business and personal dealings, have drawn criticism, with many viewing him as someone who leverages his power to intimidate and control. This darker side of Combs' persona has been underscored by the numerous lawsuits and allegations that have surfaced over the years. Despite his undeniable success, his rise to the top is marred by a reputation for being ruthless and manipulative, using his influence in ways that have left a trail of legal and personal controversies including but not limited to the following:

    a. Nightclub Shooting Incident (1999): Combs was embroiled in a high-profile case related to a nightclub shooting in New York, involving his then-girlfriend, Jennifer Lopez, and rapper Shyne. Combs was acquitted of all charges, though the case remains a significant legal event in his career.

    b. Multiple Assault Allegations: Combs has faced several lawsuits related to alleged physical assaults, many of which have been settled out of court.

    c. Business Disputes: Combs has been involved in various business-related legal conflicts, particularly surrounding his Sean John clothing line and other ventures. These disputes often involved contractual disagreements and trademark claims.

    d. Claims by Cassie Ventura: Combs' former girlfriend, Casandra "Cassie" Ventura, filed a lawsuit accusing him of years of physical, emotional, and

sexual abuse during their relationship. Cassie alleged repeated instances of
assault, coerced sexual acts, and drug use, all contributing to an environment of
fear and manipulation.

9.    Combs particularly fancied the use of the popular date-rape drug Rohypnol, or
GHB, to commit heinous non-consensual acts of sexual violence and rape onto countless victims.
Combs often would secretly use the drug in an alcoholic beverage served at his parties, typically
champagne or "lemon drops." Partygoers were forced to consume the alcoholic beverage,
containing GHB, either prior to entering or while at Combs' party. There are also allegations of
Combs dousing victims in lotions or similar body oils, also laced with GBH, so that the drug would
be absorbed through the victim's skin and make it easier to assault him or her.

10.   Combs' recurrent and pervasive physical abuse took place for multiple decades.
His tendencies of violence and sexual assault were no doubt well known amongst his colleagues,
employees, agents and businesses. On numerous occasions from at least on or about 1996 and
continuing for years, Combs assaulted women and men by striking, punching, dragging, throwing
objects at, and kicking them. Combs also assaulted children both physically and sexually.

11.   In 1996, Combs was found guilty of criminal mischief for threatening a
photographer from the New York Post with a gun. In 1999, he was arrested and charged with
second-degree assault and criminal mischief in connection with assaulting a record executive.
Combs was arrested again the same year for his involvement in a shooting at a club in New York.
Another instance of violence occurred at a Los Angeles hotel in or about March 2016, which was
captured on video and later publicly reported, where Combs kicked, dragged and threw a vase at
a woman as she was attempting to leave his hotel room. When hotel security staff intervened,
Combs attempted to bribe the staff member to ensure silence.

5

12.     In the past year, numerous civil complaints have been filed by plaintiffs who allege that they had been sexually abused by Combs between 1991 and 2009. In November 2023, three lawsuits were filed against Combs under the New York Adult Survivors Act. Cassie Ventura, an artist signed to Bad Boy, sued Combs in New York for rape and physical abuse. She alleged Combs facilitated these acts by and through supplying Ms. Ventura with copious amounts of drugs and urging her to take them, beginning in 2006.

13.     Joi Dickerson-Neal also sued Combs in New York, alleging Combs drugged her, sexually assaulted her and secretly recorded the assault in 1991.

14.     Liza Gardner, whom Combs met at an event hosted by a record label affiliated with Bad Boy, sued him for allegedly raping her and a friend in 1990 or 1991 when she was only 16.

15.     In December 2023, an anonymous Plaintiff sued Combs in New York for allegedly drugging and gang-raping her in 2003 when she was only seventeen years old. This victim alleged that employees and business associates of Combs, through their affiliation with Bad Boy enterprise, lured her to Combs' home where Combs then raped her.

16.     In February 2024, Rodney "Lil Rod" Jones, one of Combs' former producers, sued Combs for allegedly forcing him to engage in unwanted sex acts and sex trafficking, among other allegations. Mr. Jones alleged that Combs regularly drugged others, including minors, by giving them drugs laced with ecstasy (MDMA) and other date rape drugs. Mr. Jones alleged that Combs in fact drugged him as well in order to commit acts of sexual assault.

17.     In May 2024, former model Crystal McKinney and April Lampros sued Combs. Ms. McKinney alleged that Combs drugged and sexually assaulted her at his recording studio in 2003. Mimicking what has now become a known pattern, Combs promised Ms. McKinney to help her with her modeling career in exchange for engaging in sexual conduct with him. Ms. Lampros,

6

an intern at Arista Records, which was an owner of Bad Boy, also sued Combs in May 2024 in

New York County Supreme Court for raping her on multiple occasions, secretly filming these acts,

and showing the recordings to multiple people. Ms. Lampros also alleges that Combs ordered her

to take drugs on one occasion before he raped her.

18.     In July 2024, former adult film star Adria English – who was employed by Combs

as an entertainer at his infamous White Parties that brought together the biggest names in the music

and entertainment industries – sued Combs in the Southern District of New York for sex

trafficking, alleging that he required her to consume drinks laced with ecstasy and secretly

recorded the sexual acts.

19.     In September 2024, singer and songwriter Dawn Angelique Richard also sued

Combs. Richard was employed by Combs as part of the girl group Danity Kane, formed by Combs,

and later as a key member of Combs' band Diddy – Dirty Money. She sued Combs in New York

for sexual assault, false imprisonment, and for subjecting her to hostile working conditions due to

her gender, including degrading comments and threats. Ms. Richard has alleged that Combs

regularly supplied others including minors with copious amounts of drugs and alcohol, and

subjected them to sexual acts while they were sedated and/or unconscious due to the drugs and

alcohol.

20.     In September 2024, a federal grand jury in Manhattan indicted Combs and charged

him with sex trafficking, racketeering and the "creation of a criminal enterprise in which he abused,

threatened and coerced women and others around him to fulfill his sexual desires, protect his

reputation and conceal his conduct." *See United States of America v. Sean Combs, a/k/a "Puff*

*Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love,"* Index No. 24 Crim. 542,

Indictment (SDNY), at ¶ 1.  The indictment explains that Combs' abuse of women and minors was

enabled by "the employees, resources and influence of the multi-faceted business empire that he led and controlled – creating a criminal enterprise whose members and associates engaged in, and attempted to engage in, among other crimes, sex-trafficking, forced labor, kidnapping, arson, bribery and obstruction of justice."

21.    Combs' long history of violence unequivocally establishes that his actions are motivated by gender – both men and women. Combs has a profound contempt for women and a desire to dominate both minors and other men. His conduct shows a longstanding practice of denigrating, defeating and attempting to humiliate men, women and children. His practices and desires are different for men, women and children. But his actions are unequivocally motivated by the victims' particular gender and age.

22.    Plaintiff's allegations herein substantially mirror Combs' prior conduct as established through criminal indictments and other lawsuits. Through this case, Plaintiff seeks a full measure of justice from a man who thought his power, money and influence rendered him untouchable. Plaintiff joins many other victims by filing this Complaint in hopes their common voice makes it impossible for Combs to assault another person ever again.

## PARTIES

23.    Plaintiff John Doe is a male who resides in North Carolina.

24.    Defendant Sean Combs is a male who, on information and belief, resides in New York City, and who is otherwise currently incarcerated in the Metropolitan Detention Center in Brooklyn. On information and belief, at all relevant times Combs owned and/or controlled Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, Bad Boy Productions LLC, (collectively "Bad Boy"), Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a

8

Combs Global, f/k/a Combs Enterprises LLC (all together, the "Combs Corporations"). The facts of Combs' ownership and titles at the Combs Corporations enabled him to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the rape.

25.     Defendant Daddy's House Recordings, Inc. ("Daddy's House") is a domestic business corporation that is incorporated in New York and on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019. At the time of the events alleged herein, Daddy's House was a world-class recording studio owned by Combs located at 321 W 44th Street, Suite 201, New York, New York 10036. On information and belief, at all relevant times, Bad Boy and Combs together owned and operated Daddy's House. On information and belief, the Bad Boy recording studio was located on the premises of Daddy's House. Combs used the Daddy's House brand, stature and their ownership and titles at Daddy's House to commit the unlawful sexual violence against Plaintiff described herein.

26.     Defendant CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC ("Combs Global") is a limited liability company incorporated in Delaware that has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. On information and belief, all members of Combs Global are citizens of Delaware, New York, and/or California. On information and belief, Combs Global is an alter ego for Combs and/or a successor in interest to Combs' other corporations and/or was established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. Combs Global currently owns, controls, and/or oversees Bad Boy

9

and Combs' other business ventures in the music, fashion, fragrance, beverage, marketing, film, television, and media industries.

27.     As part of his renowned Bad Boy record label and brand, Combs has established several corporate entities under the "Bad Boy" name over the past few decades, including but not limited to Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, and Bad Boy Productions LLC (together, "Bad Boy"). On information and belief, all Bad Boy corporate entities are alter egos for Combs, are controlled and/or directed by Combs, and/or were established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. On information and belief, all active Bad Boy entities are now owned and/or controlled by Combs and/or by Combs Global. Combs used the Bad Boy premises/recording studio and their ownership and titles at Bad Boy to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the assault.

a.     Defendant Bad Boy Entertainment Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Entertainment Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

10

b.  Defendant Bad Boy Productions Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Productions Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

c.  Defendant Bad Boy Books Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 1440 Broadway, 3rd Floor, New York, New York 10018. Bad Boy Books Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. The CEO listed on public filings is Eddie Norward Jr., with a listed address of 1710 Broadway, New York, New York 10019, the same address listed for Sean Combs in public filings for Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., and Daddy's House Recordings, Inc.

d.  Defendant Bad Boy Records LLC is a Delaware limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Records LLC are citizens of Delaware, New York, and/or California. On information and belief, Bad Boy Records LLC is part of the Bad Boy enterprise and/or a successor-in-interest to

11

other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Records LLC is now owned and/or controlled by Combs and/or by Combs Global.

e.  Defendant Bad Boy Entertainment LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Entertainment LLC are citizens of New York and/or California. Bad Boy Entertainment LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Entertainment LLC is now owned and/or controlled by Bad Boy Entertainment Holdings, Inc. and/or by Combs, and/or by Combs Global.

f.  Defendant Bad Boy Productions LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Productions LLC are citizens of New York and/or California. Bad Boy Productions LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Productions LLC is now owned and/or controlled by Combs and/or by Combs Global.

28.  Defendants Organizational Does 1-10 are currently unknown entities who were owned by and/or employed Defendant Combs and enabled the commission of the conduct

12

complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities by name.

29.     Each of the Combs Corporations (a) aided and abetted Combs in committing the unlawful sexual violence against Plaintiff described herein, (b) are alter egos for Combs, completely dominated by him and used for his personal interests and to engage in wrongdoing which harmed Plaintiff and others, and/or (c) serve or have served as vehicles for Combs to move, dispose of, and/or insulate his assets, including in connection with his criminal activities and to avoid compensating the victims of his many crimes, including Plaintiff.

## JURISDICTION AND VENUE

30.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this case is between citizens of different states, and the amount in controversy exceeds $75,000.

31.     This Court has specific personal jurisdiction over Defendants because the acts giving rise to Plaintiff's claims took place in New York State, and because several of the Defendants are domiciled in New York State and/or regularly transact business in New York State.

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## JURY DEMAND

33.     Plaintiff hereby demands a trial by jury on his claims in this action.

## FACTUAL ALLEGATIONS

34.     Mr. Combs' legendary white parties in the Hamptons were well known by many, including John Doe. The kind where countless celebrities would attend. In 1998—when John Doe was only 16 years old—he was recruited out of New York City, and indeed while residing in New York City received an invitation to one of Combs' parties through a mutual connection. When he

received the invitation, he felt like he finally had the opportunity to rub shoulders with the who's who of the industry. He thought it could be his chance to break into the music industry. Others from New York City received such invitation to go to the Hamptons for the party; indeed, many of those at the party were in fact New Yorkers.

35.     The party took place at Combs' mansion in the Hamptons. As John Doe entered, he spotted countless celebrities and A-listers who form the music and entertainment industry. He recognized faces he had seen on TV and on the big screen.

36.     As John Doe made his way through the crowd toward the restroom, he unexpectedly bumped into Combs. Shocked, John Doe found himself face to face with Combs, a titan in the music industry, standing right in front of him at his own party. Doe took a picture with Combs at the 1998 party:



37.     Combs took an interest in John Doe and wanted to talk to him. They walked to a more private area near the portable restrooms brought in for the party. There, John Doe told Combs he was a big fan of Combs and shared his dreams of becoming a star. Combs smiled, telling him he had potential and "the look." When John Doe admitted his voice was not great, Combs assured him that did not matter. Combs made clear that the only thing that mattered was having the right look for the industry, and with it, Combs could transform Doe—or anybody—into a star.

38.     Despite the pleasant conversation, which occurred, things took an unexpected turn for the worst. Combs abruptly told John Doe that he needed to drop his pants. John Doe, caught completely off guard, confusingly asked Combs to repeat himself. Combs made himself clear. He instructed John Doe to drop his pants and expose his penis so that Combs could inspect it, explaining it was a rite of passage and the route to becoming a star, and also as a way to prove himself. "Don't you want to break into the business?"

39.     Doe immediately felt uncomfortable, froze and did not know what to do. Combs remained calm and stood in front of him and stretched out his hand in a cupped position. Out of fear, anxiety and the imbalanced power dynamic between himself and Combs, John Doe then dropped his pants and exposed his penis as Combs previously instructed.

40.     Combs moved closer and grabbed John Doe's penis and genitals with his hand. He firmly cupped and held onto John Doe's genitals for an extended period of time. During this time, Combs moved his hand in such a fashion to manipulate John Doe's genitals, squeezing and feeling them. Doe was only sixteen.

41.     Combs abruptly then let go of John Doe's genitals and told him that his people would be in touch. Combs continued with his party as if nothing had happened, but for John Doe, everything had changed. John Doe eventually recognized Combs sexually assaulted him by and

15

through his power and influence over John Doe because he knew John Doe wanted to become a star.

42.     As a result of Combs' sexual assault onto John Doe while he was a minor, John Doe experienced damages including pain and suffering, mental anguish, physical impairment and emotional torment. The interaction continues to humiliate and cause shame on John Doe.

43.     Because of Combs' power and notoriety, Plaintiff was afraid to report what had happened. John Doe became yet another sexual assault victim of Combs' through the same pattern and abuse of influence Combs' exercised over others previously.

## FIRST CAUSE OF ACTION
### (Violation of New York City Victims of Gender-Motivated Violence Protection Act)
### (All Defendants)

44.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

45.     By forcing sexual contact onto Plaintiff as a young male minor, Defendant Combs committed a "crime of violence motivated by gender" under the Victims of Gender-Motivated Violence Protection Act ("VGMVPA") as defined in New York City Administrative Code § 10-1103.

46.     The requirement that the crime of violence be committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender is satisfied because Defendant Combs forced Plaintiff to engage in a sexual interaction without consent. John Doe could not effectively consent because of his age. The non-consensual sexual touching of a minor herein presented a serious risk of physical injury, and in fact caused such injury. Gender

16

animus inheres when consent is absent. Moreover, Combs' long history of violence and sexual abuse against men evinces a deep contempt and desire for domination over men.

47.     The Combs Business enabled Combs to commit the crime of violence motivated by gender because Combs sexually assaulted Plaintiff at a party related to or referencing Combs Business. On information and belief, Combs Businesses routinely committed sexual assault and gender-motivated violence, as detailed in other civil lawsuits, to further the business purpose of Combs' enterprise. Given Combs' long-standing pattern and practice of committing sexual violence against minors who were boys, the Combs Business had and/or should have had knowledge of Combs using such parties and venues for this unlawful conduct, and did nothing to stop it.

48.     The Combs Business enabled Combs to commit the crime of violence motivated by gender by failing to, among other things, protect Plaintiff from a known danger and/or have sufficient policies and procedures in place to prevent sexual assault and/or train their employees on identifying and preventing sexual assault. Given long-standing pattern and practice of committing sexual violence against minors who were boys, including on premises owned and/or operated by Defendants, the Combs Corporations had and/or should have had knowledge that Combs was a danger to Plaintiff, and did nothing to stop Combs.

49.     The Combs Business enabled Combs to commit the crime of violence motivated by gender by failing to properly supervise. The Combs Business had knowledge and/or should have had knowledge of Combs' widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants, and did nothing to stop it.

17

50.     The Combs Corporations further enabled Combs to commit the crime of violence motivated by gender by actively placing, maintaining, and/or employing Combs in positions of power and authority, despite the fact that they knew and/or should have known that Combs had a widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants. Combs used his titles and authority conferred by the Combs Business, including as CEO, Founder, and Chairman to facilitate and perpetuate the violent assault on Plaintiff, and to intimidate and force Plaintiff to keep quiet in subsequent years.

51.     On information and belief, Plaintiff alleges that Defendants Organizational Does 1 through 10, inclusive, are other parties not yet identified who have enabled Combs to commit the crime of violence motivated by gender, in the ways articulated above and/or in other ways.

52.     As a result of Defendants' actions, Plaintiff suffered damages in an amount to be determined at trial and pursuant to the fee-shifting provision of the statute.

53.     This legal action has been commenced within the statutory timeframe provided by the two-year look-back window for VGMVPA claims. *See* New York City Administrative Code § 10-1105.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

      a.   Awarding compensatory damages for all physical injuries, emotional distress, psychological harm, anxiety, humiliation, physical and emotional pain and suffering, family and social disruption, and other harm, in an amount to be determined at trial;

      b.   Awarding punitive damages in an amount to be determined at trial;

c.   Awarding attorneys' fees and costs pursuant to any applicable statute or law;

d.   Awarding pre- and post-judgment interest on all such damages, fees, and/or costs;

e.   Attaching any and all of Defendants' real property and other assets located in the State of New York pursuant to Federal Rule of Civil Procedure 64; and

f.   Awarding such other and further relief as this Court may deem just and proper.

Dated:  OCTOBER 14, 2024

Respectfully submitted,

## THE BUZBEE LAW FIRM

By: */s/ Anthony G. Buzbee*
Anthony G. Buzbee
Texas Bar No. 24001820
tbuzbee@txattorneys.com
Christopher J. Leavitt
Texas Bar No. 24053318
cleavitt@txattorneys.com
Ryan S. Pigg
Texas Bar No. 24088227
rpigg@txattorneys.com
David C. Fortney
Texas Bar No. 24068740
dfortney@txattorneys.com
Thomas Colby Holler
Texas Bar No. 24126898
choller@txattorneys.com
Crystal Del Toro
Texas Bar No. 24090070
cdeltoro@txattorneys.com
J.P. Morgan Chase Tower
600 Travis, Suite 7500
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

*Attorneys for Plaintiff John Doe*

-    AND  -

**AVA LAW GROUP**
Andrew Van Arsdale
CA Bar No. 323370
andrew.vanarsdale@avalaw.com
3667 Voltaire Street, Ste. 101
San Diego, CA 92106
Telephone: (800) 777-4141
Facsimile: (619) 222-3667

-   AND  -

**CURIS LAW, PLLC**
Antigone Curis
antigone@curislaw.com
52 Duane Street, 7th Floor
New York, New York 10007
Phone: (646) 335-7220
Facsimile: (315) 660-2610

Exhibit F (xviii): Jane Doe v. Combs;1-24-cv-7777

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

Jane Doe,

               *Plaintiff*,                     No. _____

               v.

SEAN COMBS, DADDY'S HOUSE RECORDINGS INC.,     **COMPLAINT AND**
CE OPCO, LLC d/b/a COMBS GLOBAL f/k/a           **DEMAND FOR**
COMBS ENTERPRISES LLC, BAD BOY                 **JURY TRIAL**
ENTERTAINMENT HOLDINGS, INC.,
BAD BOY PRODUCTIONS HOLDINGS, INC.,
BAD BOY BOOKS HOLDINGS, INC., BAD BOY
RECORDS LLC, BAD BOY ENTERTAINMENT LLC,
BAD BOY PRODUCTIONS LLC, and
ORGANIZATIONAL DOES 1-10.

               *Defendants*.

--------------------------------------------------------X

       Plaintiff Jane Doe ("Plaintiff"), by and through her attorneys, The Buzbee Law

Firm, for her Complaint alleges as follows:

## INTRODUCTION

       1.     This case seeks both compensatory and punitive damages for aggravated sexual

assault of Plaintiff Jane Doe. The conduct described herein is violent and shockingly typical of

Defendant Sean Combs. Aided and enabled by numerous individuals and entities, Sean Combs for

many years believed he was above the law. He is not.

       2.     For decades, Sean Combs (a/k/a "P. Diddy," a/k/a "Puff Daddy," a/k/a "Diddy,"

a/k/a "PD," and a/k/a "Love") (herein as "Combs") abused, molested, raped, assaulted, threatened

and coerced women, men and minors for sexual gratification, to assert dominance, and to conceal

his abhorrent conduct. Combs accomplished these acts by and through a criminal enterprise built

on his success as a rapper, record producer and record executive. Combs is reportedly one of the wealthiest musical artists in the world. Behind the façade of being a three-time Grammy Award winner, discovering and developing multiple famous musical artists, and ranking on Forbes' list of the highest-paid entertainers in the world, there existed something sinister – a dark underbelly of crime, sex trafficking, forced labor, kidnapping, bribery and prostitution. Combs is a menace to society, women, men and children. While his wealth has kept him above consequence for years, Combs now faces the awesome power of the American judicial system and ultimately a jury of his peers, who will be asked to punish him for the deplorable conduct described herein.

*Combs' Businesses*

3.     Combs' business enterprise is central to the pervasive acts of sexual assault and abuse committed by him, his posse, and his pals during the last decades. Combs operated his business, headquartered at various times in Manhattan and Los Angeles, under a variety of United States-based corporate entities, including Bad Boy Entertainment, Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment, LLC, Bad Boy Productions, LLC, Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC, Combs Enterprises and Combs Global (collectively, the "Combs Business"). Corporate entities in the Combs Business portfolio included record labels, a recording studio, an apparel line, an alcoholic spirits promoting business, a marketing agency, talent discovery, a television network and a media company.

4.     On the surface, each of these businesses served a legitimate purpose related to entertainment, music and other subjects. But in reality, Combs, by and through himself and his agents, employees and contractors, used these businesses to sexually assault, abuse, threaten and coerce hundreds of individuals through sexual *quid pro quo* schemes, as well as to take advantage

of individuals with impunity thinking the victims would never have any recourse. Combs and his agents, employees and contractors, through these Combs Businesses, would tell victims, "this is what it takes to be famous," "what are you willing to do to become a star?," and "perform this sexual act or else" to coerce, cajole, or force the victim into performing a non-consensual sexual act for the gratification of Combs and his cohorts.

5.     Members and associates of the Combs Business engaged in (and/or attempted to engage in), among other activities, sex trafficking, forced labor, interstate transportation for the purposes of prostitution, coercion and enticement to engage in prostitution, narcotics offenses, kidnapping, arson, bribery, and obstruction of justice.

6.     The Combs Business constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of Combs.

*Combs' Pervasive History of Sexual Assault and Violence*

7.     For years Combs and his businesses engaged in a persistent and pervasive pattern of abuse toward women, men, and minors. This abuse was, at times, verbal, emotional, physical and sexual. As part of his pattern of abuse, Combs manipulated both men and women to participate in highly-orchestrated performances of sexual activity with both commercial sex workers and unsuspecting partygoers. Combs ensured participation from these individuals by, among other things, obtaining and distributing narcotics to them with or without their knowledge, controlling their careers, leveraging his financial support and threatening to cut off the same, and using intimidation, violence, and illicit drugs.

8.     Combs, while celebrated for his business acumen and influence in the entertainment world, has often been described in a more troubling light as powerful, manipulative, and problematic. His aggressive tactics, both in business and personal dealings, have drawn criticism,

with many viewing him as someone who leverages his power to intimidate and control. This darker side of Combs's persona has been underscored by the numerous lawsuits and allegations that have surfaced over the years. Despite his undeniable success, his rise to the top is marred by a reputation for being ruthless and manipulative, using his influence in ways that have left a trail of legal and personal controversies including but not limited to the following:

    a.  Nightclub Shooting Incident (1999): Combs was embroiled in a high-profile case related to a nightclub shooting in New York, involving his then-girlfriend, Jennifer Lopez, and rapper Shyne. Combs was acquitted of all charges, though the case remains a significant legal event in his career.

    b.  Multiple Assault Allegations: Combs has faced several lawsuits related to alleged physical assaults, many of which have been settled out of court.

    c.  Business Disputes: Combs has been involved in various business-related legal conflicts, particularly surrounding his Sean John clothing line and other ventures. These disputes often involved contractual disagreements and trademark claims.

    d.  Claims by Cassie Ventura: Combs' former girlfriend, Casandra "Cassie" Ventura, filed a lawsuit accusing him of years of physical, emotional, and sexual abuse during their relationship. Cassie alleged repeated instances of assault, coerced sexual acts, and drug use, all contributing to an environment of fear and manipulation.

9.    Combs particularly fancied the use of the popular date-rape drug Rohypnol, or GHB, to commit heinous non-consensual acts of sexual violence and rape against countless victims. Combs often would secretly use the drug in an alcoholic beverage served at his parties,

typically in a seemingly innocent glass of champagne or a "lemon drop." Partygoers were forced to consume the alcoholic beverage, containing GHB, either prior to entering or while at Combs' party. There are also allegations of Combs dousing victims in lotions or similar body oils, also laced with GBH, so that the drug would be absorbed through the victim's skin and make it easier to take advantage of, exploit, and assault him or her.

10.     Combs' recurrent and pervasive physical abuse took place for multiple decades. His tendencies of violence and sexual assault were well known amongst his colleagues, employees, agents and businesses. On numerous occasions from at least in or about 1996 and continuing for years, Combs assaulted women and men by striking, punching, dragging, throwing objects at, and kicking them. Combs also assaulted children both physically and sexually.

11.     In 1996, Combs was found guilty of criminal mischief for threatening a photographer from the New York *Post* with a gun. In 1999, he was arrested and charged with second-degree assault and criminal mischief in connection with assaulting a record executive. Combs was arrested again the same year for his involvement in a shooting at a club in New York. Another instance of violence occurred at a Los Angeles hotel in or about March 2016, which was captured on video and later publicly reported, where Combs kicked, dragged and threw a vase at a woman as she was attempting to leave his hotel room. When hotel security staff intervened, Combs attempted to bribe the staff member to ensure silence.

12.     In the past year, numerous civil complaints have been filed by plaintiffs who allege that they had been sexually abused by Combs between 1991 and 2009. In November 2023, three lawsuits were filed against Combs under the New York Adult Survivors Act. Cassie Ventura, an artist signed to Bad Boy, sued Combs in New York for rape and physical abuse. She alleged Combs

facilitated these acts by and through supplying Ms. Ventura with copious amounts of drugs and urging her to take them, beginning in 2006.

13.     Joi Dickerson-Neal also sued Combs in New York, alleging Combs drugged her, sexually assaulted her and secretly recorded the assault in 1991.

14.     Liza Gardner, whom Combs met at an event hosted by a record label affiliated with Bad Boy, sued him for raping her and a friend in 1990 or 1991 when she was only 16.

15.     In December 2023, an anonymous Plaintiff sued Combs in New York for drugging and gang-raping her in 2003 when she was only seventeen years old. This victim alleged that employees and business associates of Combs, through their affiliation with Bad Boy enterprise, lured her to Combs' home where Combs then raped her.

16.     In February 2024, Rodney "Lil Rod" Jones, one of Combs' former producers, sued Combs for forcing him to engage in unwanted sex acts and sex trafficking, among other allegations. Mr. Jones alleged that Combs regularly drugged others, including minors, by giving them drugs laced with ecstasy (MDMA) and other date rape drugs. Mr. Jones alleged that Combs in fact drugged him as well in order to commit acts of sexual assault.

17.     In May 2024, former model Crystal McKinney and April Lampros sued Combs. Ms. McKinney alleged that Combs drugged and sexually assaulted her at his recording studio in 2003. Mimicking what has now become a known pattern, Combs promised Ms. McKinney to help her with her modeling career in exchange for engaging in sexual conduct with him. Ms. Lampros, an intern at Arista Records, which was an owner of Bad Boy, also sued Combs in May 2024 in New York County Supreme Court for raping her on multiple occasions, secretly filming these acts, and showing the recordings to multiple people. Ms. Lampros also alleges that Combs ordered her to take drugs on one occasion before he raped her.

18.     In July 2024, former adult film star Adria English – who was employed by Combs

as an entertainer at his infamous White Parties that brought together the biggest names in the music

and entertainment industries – sued Combs in the Southern District of New York for sex

trafficking, alleging that he required her to consume drinks laced with ecstasy and secretly

recorded sexual acts.

19.     In September 2024, singer and songwriter Dawn Angelique Richard also sued

Combs. Richard was employed by Combs as part of the girl group Danity Kane, formed by Combs,

and later as a key member of Combs' band Diddy – Dirty Money. She sued Combs in New York

for sexual assault, false imprisonment, and for subjecting her to hostile working conditions due to

her gender, including degrading comments and threats. Ms. Richard has alleged that Combs

regularly supplied others including minors with copious amounts of drugs and alcohol, and

subjected them to sexual acts while they were sedated and/or unconscious due to the drugs and

alcohol.

20.     In September 2024, a federal grand jury in Manhattan indicted Combs and charged

him with sex trafficking, racketeering and the "creation of a criminal enterprise in which he abused,

threatened and coerced women and others around him to fulfill his sexual desires, protect his

reputation and conceal his conduct." See United States of America v. Sean Combs, a/k/a "Puff

Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," Index No. 24 Crim. 542,

Indictment (SDNY), at ¶ 1.  The indictment explains that Combs' abuse of women and minors was

enabled by "the employees, resources and influence of the multi-faceted business empire that he

led and controlled – creating a criminal enterprise whose members and associates engaged in, and

attempted to engage in, among other crimes, sex-trafficking, forced labor, kidnapping, arson,

bribery and obstruction of justice."

21. Combs' long history of violence unequivocally establishes that his actions are motivated by gender – both men and women. Combs has a profound contempt for women and a desire to dominate both minors and other men. His conduct shows a longstanding practice of denigrating, defeating and attempting to humiliate men, women and children. His practices and desires are different for men, women and children. But his actions are unequivocally motivated by the victims' particular gender and age.

22. Plaintiff's allegations herein substantially mirror Combs' prior conduct as established through criminal indictments and other lawsuits. Through this case, Plaintiff seeks a full measure of justice from a man who thought his power, money and influence rendered him untouchable. Plaintiff joins many other victims by filing this Complaint in hopes their common voice makes it impossible for Combs to assault another person ever again.

23. The conduct complained of in many of the cases to be brought involve others who facilitated, encouraged, or participated in the conduct alleged.

## PARTIES

24. Plaintiff Jane Doe is a female who resides in New York (the city has been left unpled for anonymity).

25. Defendant Sean Combs is a male who, on information and belief, resides in New York City, through incarceration in the Metropolitan Detention Center in Brooklyn. On information and belief, at all relevant times Combs owned and/or controlled Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, Bad Boy Productions LLC, (collectively "Bad Boy"), Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC (all together, the "Combs Corporations"). The facts of Combs'

ownership and titles at the Combs Corporations enabled him to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate her into silence afterwards.

26.     Defendant CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC ("Combs Global") is a limited liability company incorporated in Delaware that has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. On information and belief, all members of Combs Global are citizens of Delaware, New York, and/or California. On information and belief, Combs Global is an alter ego for Combs and/or a successor in interest to Combs' other corporations and/or was established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. Combs Global currently owns, controls, and/or oversees Bad Boy and Combs' other business ventures in the music, fashion, fragrance, beverage, marketing, film, television, and media industries.

27.     As part of his renowned Bad Boy record label and brand, Combs has established several corporate entities under the "Bad Boy" name over the past few decades, including but not limited to Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, and Bad Boy Productions LLC (together, "Bad Boy"). On information and belief, all Bad Boy corporate entities are alter egos for Combs, are controlled and/or directed by Combs, and/or were established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. On information and belief, all active Bad Boy entities are now owned and/or controlled by Combs and/or by Combs Global. Combs used the Bad Boy premises/recording studio and their ownership and titles at Bad Boy to commit

the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate her into silence afterwards.

a. Defendant Bad Boy Entertainment Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Entertainment Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

b. Defendant Bad Boy Productions Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Productions Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

c. Defendant Bad Boy Books Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 1440 Broadway, 3rd Floor, New York, New York 10018. Bad Boy Books Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or

controlled by Combs and/or by Combs Global. The CEO listed on public filings is Eddie Norward Jr., with a listed address of 1710 Broadway, New York, New York 10019, the same address listed for Sean Combs in public filings for Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., and Daddy's House Recordings, Inc.

d. Defendant Bad Boy Records LLC is a Delaware limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Records LLC are citizens of Delaware, New York, and/or California. On information and belief, Bad Boy Records LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Records LLC is now owned and/or controlled by Combs and/or by Combs Global.

e. Defendant Bad Boy Entertainment LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Entertainment LLC are citizens of New York and/or California. Bad Boy Entertainment LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Entertainment LLC is now owned and/or controlled by Bad Boy Entertainment Holdings, Inc. and/or by Combs, and/or by Combs Global.

f. Defendant Bad Boy Productions LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Productions LLC are citizens of New York and/or California. Bad Boy Productions LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Productions LLC is now owned and/or controlled by Combs and/or by Combs Global.

28. Defendants Organizational Does 1-10 are currently unknown entities who were owned by and/or employed Defendant Combs and enabled the commission of the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities by name.

29. Each of the Combs Corporations (a) aided and abetted Combs in committing the unlawful sexual violence against Plaintiff described herein, (b) are alter egos for Combs, completely dominated by him and used for his personal interests and to engage in wrongdoing which harmed Plaintiff and others, and/or (c) serve or have served as vehicles for Combs to move, dispose of, and/or insulate his assets, including in connection with his criminal activities and to avoid compensating the victims of his many crimes, including Plaintiff.

## **JURISDICTION AND VENUE**

30. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this case is between citizens of different states, and the amount in controversy exceeds $75,000.

31.     This Court has specific personal jurisdiction over Defendants because the acts giving rise to Plaintiff's claims took place in New York State, and because several of the Defendants are domiciled in New York State and/or regularly transact business in New York State.

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## JURY DEMAND

33.     Plaintiff hereby demands a trial by jury on her claims in this action.

## FACTUAL ALLEGATIONS

34.     In or around June 1995, Plaintiff attended a promotional party at Elks Plaza in New York City for the music video "One More Chance" by Biggie Smalls.

35.     The event was packed with high-profile guests.

36.     While Plaintiff was dancing with friends, Combs approached her and asked to speak with her privately. Expecting an innocent conversation, Plaintiff agreed and followed him.

37.     Once alone in a bathroom, Combs unexpectedly began kissing Plaintiff.

38.     Feeling uncomfortable and confused, Plaintiff asked him to slow down, believing they were there to talk.

39.     Instead, Combs advanced aggressively. When Plaintiff attempted to pull away, he violently struck her, slamming her head against the wall and causing her to fall to the floor.

40.     Disoriented and in pain, Plaintiff tried to escape, but Combs hit her again, making it nearly impossible for her to move.

41.     Combs then lifted her dress and raped her vaginally while she lay helpless on the floor.

42.     Plaintiff tried to resist, but her injuries and shock left her powerless.

43.     After the assault, Combs adjusted his clothing in a nonchalant manner and threatened Plaintiff, saying, "You better not tell anyone about this, or you will disappear," leaving Plaintiff terrified for her life.

44.     Combs left the bathroom, abandoning Plaintiff in a state of shock, fear, and shame.

45.     Plaintiff remained on the bathroom floor for a while, trying to regain her composure.

46.     Plaintiff felt intense pain in her head from the blows and was emotionally shattered. After some time, she managed to stand, fix her underwear and dress, and wipe away her tears.

47.     Terrified that someone from Combs Business might be waiting outside to harm her, Plaintiff cautiously gathered the courage to leave the bathroom.

48.     Plaintiff left the party and never returned.

49.     Since the assault, Plaintiff has avoided the news, as it triggers traumatic memories.

50.     For years, Plaintiff kept the assault secret, fearing retaliation from Combs and Combs Business.

### FIRST CAUSE OF ACTION
**(Violation of New York City Victims of Gender-Motivated Violence Protection Act)**
**(All Defendants)**

51.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

52.     By forcing sexual contact onto Plaintiff, specifically by physically assaulting and then forcibly raping Plaintiff, Defendant Combs committed a "crime of violence motivated by gender" under the Victims of Gender-Motivated Violence Protection Act ("VGMVPA") as defined in New York City Administrative Code § 10-1103.

53. The requirement that the crime of violence be committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender is satisfied because Defendant Combs forced Plaintiff to engage in a sexual interaction without consent.

54. The Combs Business enabled Combs to commit the crime of violence motivated by gender because Combs sexually assaulted Plaintiff at a department store doing business with the Combs Business and carrying Combs Business products. On information and belief, Combs Businesses routinely committed sexual assault and gender-motivated violence, as detailed in other civil lawsuits, to further the business purpose of Combs' enterprise. Given Combs' long-standing pattern and practice of committing sexual violence against men, the Combs Business had and/or should have had knowledge of Combs using such venues for this unlawful conduct, and did nothing to stop it.

55. The Combs Business enabled Combs to commit the crime of violence motivated by gender by failing to, among other things, protect Plaintiff from a known danger and/or have sufficient policies and procedures in place to prevent sexual assault and/or train their employees on identifying and preventing sexual assault. Given Combs' long-standing pattern and practice of committing sexual violence against men, including on premises owned and/or operated and/or used by Defendants for business purposes, the Combs Corporations had and/or should have had knowledge that Combs was a danger to Plaintiff, and did nothing to stop Combs.

56. The Combs Business enabled Combs to commit the crime of violence motivated by gender by failing to properly supervise. The Combs Business had knowledge and/or should have had knowledge of Combs' widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated and/or used for business purposes by Defendants, and did nothing to stop it.

57.     The Combs Corporations further enabled Combs to commit the crime of violence motivated by gender by actively placing, maintaining, and/or employing Combs in positions of power and authority, despite the fact that they knew and/or should have known that Combs had a widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants. Combs used his titles and authority conferred by the Combs Business, including as CEO, Founder, and Chairman to facilitate and perpetuate the violent assault on Plaintiff, and to intimidate and force Plaintiff to keep quiet in subsequent years.

58.     On information and belief, Plaintiff alleges that Defendant Organizational Does 1 through 10, inclusive, are other parties not yet identified who have enabled Combs to commit the crime of violence motivated by gender, in the ways articulated above and/or in other ways.

59.     As a result of Defendants' actions, Plaintiff suffered damages in an amount to be determined at trial and pursuant to the fee-shifting provision of the statute.

60.     This legal action has been commenced within the statutory timeframe provided by the two-year look-back window for VGMVPA claims. *See* New York City Administrative Code § 10-1105.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

      a.  Awarding compensatory damages for all physical injuries, emotional distress, psychological harm, anxiety, humiliation, physical and emotional pain and suffering, family and social disruption, and other harm, in an amount to be determined at trial;

      b.  Awarding punitive damages in an amount to be determined at trial;

    c.   Awarding attorneys' fees and costs pursuant to any applicable statute or law;

    d.   Awarding pre- and post-judgment interest on all such damages, fees, and/or costs;

    e.   Attaching any and all of Defendants' real property and other assets located in the State of New York pursuant to Federal Rule of Civil Procedure 64; and

    f.   Awarding such other and further relief as this Court may deem just and proper.

Dated: OCTOBER 14, 2024

    Respectfully submitted,

### THE BUZBEE LAW FIRM

By: */s/ Anthony G. Buzbee*
Anthony G. Buzbee
Texas Bar No. 24001820
tbuzbee@txattorneys.com
Christopher J. Leavitt
Texas Bar No. 24053318
cleavitt@txattorneys.com
Ryan S. Pigg
Texas Bar No. 24088227
rpigg@txattorneys.com
David C. Fortney
Texas Bar No. 24068740
dfortney@txattorneys.com
Colby Holler
Texas Bar No. 24126898
choller@txattorneys.com
Crystal Del Toro
Texas Bar No. 24090070
cdeltoro@txattorneys.com
J.P. Morgan Chase Tower
600 Travis, Suite 7500
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

*Attorneys for Plaintiff John Doe*

-   AND -

**AVA LAW GROUP**
Andrew Van Arsdale
CA Bar No. 323370
andrew.vanarsdale@avalaw.com
3667 Voltaire Street, Ste. 101
San Diego, CA 92106
Telephone: (800) 777-4141
Facsimile: (619) 222-3667

- AND -

**CURIS LAW, PLLC**
Antigone Curis
antigone@curislaw.com
52 Duane Street, 7th Floor
New York, New York 10007
Phone: (646) 335-7220
Facsimile: (315) 660-2610

Exhibit F (xx): John Doe v. Combs; 1-24-cv-7774

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

John Doe,

        *Plaintiff*,                    No. _____

        v.

SEAN COMBS, DADDY'S HOUSE RECORDINGS INC.,     **COMPLAINT AND**
CE OPCO, LLC d/b/a COMBS GLOBAL f/k/a             **DEMAND FOR**
COMBS ENTERPRISES LLC, BAD BOY                 **JURY TRIAL**
ENTERTAINMENT HOLDINGS, INC.,
BAD BOY PRODUCTIONS HOLDINGS, INC.,
BAD BOY BOOKS HOLDINGS, INC., BAD BOY
RECORDS LLC, BAD BOY ENTERTAINMENT LLC,
BAD BOY PRODUCTIONS LLC,
ORGANIZATIONAL DOES 1-10, and MACY'S INC.

        *Defendants*.

--------------------------------------------------------X

        Plaintiff John Doe ("Plaintiff"), by and through his attorneys, The Buzbee Law

Firm, for his Complaint alleges as follows:

## INTRODUCTION

        1.      This case seeks both compensatory and punitive damages for aggravated sexual

assault of Plaintiff John Doe which occurred at a Macy's department store. The conduct described

herein is violent and shockingly typical of how Defendant Sean Combs conducted himself for

many years. Many individuals and entities facilitated and enabled his abhorrent conduct. Sean

Combs believed he was above the law. He is not.

        2.      For decades, Sean Combs (a/k/a "P. Diddy," a/k/a "Puff Daddy," a/k/a "Diddy,"

a/k/a "PD," and a/k/a "Love") (herein as "Combs") abused, molested, raped, assaulted, threatened

and coerced women, men and minors for sexual gratification, to assert dominance, and to conceal

his abhorrent conduct. Combs accomplished these acts by and through a criminal enterprise built on his success as a rapper, record producer and record executive. Combs is reportedly one of the wealthiest musical artists in the world. Behind the façade of being a three-time Grammy Award winner, discovering and developing multiple famous musical artists, and ranking on Forbes' list of the highest-paid entertainers in the world, there existed something sinister– a dark underbelly of crime, sex trafficking, forced labor, kidnapping, bribery and prostitution. Combs is a menace to society, women, men and children. While his wealth has kept him above consequence for years, Combs now faces the awesome power of the American judicial system and ultimately a jury of his peers, who will be asked to punish him for the deplorable conduct described herein.

*Combs' Businesses*

3.     Combs' business enterprise is central to the pervasive acts of sexual assault and abuse committed by him, his posse, and his pals during the last decades. Combs operated his business, headquartered at various times in Manhattan and Los Angeles, under a variety of United States-based corporate entities, including Bad Boy Entertainment, Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment, LLC, Bad Boy Productions, LLC, Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC, Combs Enterprises and Combs Global (collectively, the "Combs Business"). Corporate entities in the Combs Business portfolio included record labels, a recording studio, an apparel line, an alcoholic spirits promoting business, a marketing agency, talent discovery, a television network and a media company.

4.     On the surface, each of these businesses served a legitimate purpose related to entertainment, music and other subjects. But in reality, Combs, by and through himself and his agents, employees and contractors, used these businesses to sexually assault, abuse, threaten and

2

coerce hundreds of individuals through sexual *quid pro quo* schemes, as well as to take advantage of individuals with impunity thinking the victims would never have any recourse. Combs and his agents, employees and contractors, through these Combs Businesses, would tell victims, "this is what it takes to be famous," "what are you willing to do to become a star?," and "perform this sexual act or else" to coerce, cajole, or force the victim into performing a non-consensual sexual act for the gratification of Combs and his cohorts.

5.      Members and associates of the Combs Business engaged in (and/or attempted to engage in), among other activities, sex trafficking, forced labor, interstate transportation for the purposes of prostitution, coercion and enticement to engage in prostitution, narcotics offenses, kidnapping, arson, bribery, and obstruction of justice.

6.      The Combs Business constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of Combs.

*Combs' Pervasive History of Sexual Assault and Violence*

7.      For years Combs and his businesses engaged in a persistent and pervasive pattern of abuse toward women, men, and minors. This abuse was, at times, verbal, emotional, physical and sexual. As part of his pattern of abuse, Combs manipulated both men and women to participate in highly-orchestrated performances of sexual activity with both commercial sex workers and unsuspecting partygoers. Combs ensured participation from these individuals by, among other things, obtaining and distributing narcotics to them with or without their knowledge, controlling their careers, leveraging his financial support and threatening to cut off the same, and using intimidation, violence, and illicit drugs.

8.      Combs, while celebrated for his business acumen and influence in the entertainment world, has often been described in a more troubling light as powerful, manipulative, and

3

problematic. His aggressive tactics, both in business and personal dealings, have drawn criticism, with many viewing him as someone who leverages his power to intimidate and control. This darker side of Combs' persona has been underscored by the numerous lawsuits and allegations that have surfaced over the years. Despite his undeniable success, his rise to the top is marred by a reputation for being ruthless and manipulative, using his influence in ways that have left a trail of legal and personal controversies including but not limited to the following:

a. Nightclub Shooting Incident (1999): Combs was embroiled in a high-profile case related to a nightclub shooting in New York, involving his then-girlfriend, Jennifer Lopez, and rapper Shyne. Combs was acquitted of all charges, though the case remains a significant legal event in his career.

b. Multiple Assault Allegations: Combs has faced several lawsuits related to alleged physical assaults, many of which have been settled out of court.

c. Business Disputes: Combs has been involved in various business-related legal conflicts, particularly surrounding his Sean John clothing line and other ventures. These disputes often involved contractual disagreements and trademark claims.

d. Claims by Cassie Ventura: Combs' former girlfriend, Casandra "Cassie" Ventura, filed a lawsuit accusing him of years of physical, emotional, and sexual abuse during their relationship. Cassie alleged repeated instances of assault, coerced sexual acts, and drug use, all contributing to an environment of fear and manipulation.

9.     Combs particularly fancied the use of the popular date-rape drug Rohypnol, or GHB, to commit heinous non-consensual acts of sexual violence and rape against countless

4

victims. Combs often would secretly use the drug in an alcoholic beverage served at his parties, typically in a seemingly innocent glass of champagne or a "lemon drop." Partygoers were forced to consume the alcoholic beverage, containing GHB, either prior to entering or while at Combs' party. There are also allegations of Combs dousing victims in lotions or similar body oils, also laced with GBH, so that the drug would be absorbed through the victim's skin and make it easier to take advantage of, exploit, and assault him or her.

10.     Combs' recurrent and pervasive physical abuse took place for multiple decades. His tendencies for violence and sexual assault were well known amongst his colleagues, employees, agents and businesses. On numerous occasions from at least in or about 1996 and continuing for years, Combs assaulted women and men by striking, punching, dragging, throwing objects at, and kicking them. Combs also assaulted children both physically and sexually.

11.     In 1996, Combs was found guilty of criminal mischief for threatening a photographer from the New York *Post* with a gun. In 1999, he was arrested and charged with second-degree assault and criminal mischief in connection with assaulting a record executive. Combs was arrested again the same year for his involvement in a shooting at a club in New York. Another instance of violence occurred at a Los Angeles hotel in or about March 2016, which was captured on video and later publicly reported, where Combs kicked, dragged and threw a vase at a woman as she was attempting to leave his hotel room. When hotel security staff intervened, Combs attempted to bribe the staff member to ensure silence.

12.     In the past year, numerous civil complaints have been filed by plaintiffs who allege that they had been sexually abused by Combs between 1991 and 2009. In November 2023, three lawsuits were filed against Combs under the New York Adult Survivors Act. Cassie Ventura, an artist signed to Bad Boy, sued Combs in New York for rape and physical abuse. She alleged Combs

5

facilitated these acts by and through supplying Ms. Ventura with copious amounts of drugs and urging her to take them, beginning in 2006.

13.     Joi Dickerson-Neal also sued Combs in New York, alleging Combs drugged her, sexually assaulted her and secretly recorded the assault in 1991.

14.     Liza Gardner, whom Combs met at an event hosted by a record label affiliated with Bad Boy, sued him for raping her and a friend in 1990 or 1991 when she was only 16.

15.     In December 2023, an anonymous Plaintiff sued Combs in New York for drugging and gang-raping her in 2003 when she was only seventeen years old. This victim alleged that employees and business associates of Combs, through their affiliation with Bad Boy enterprise, lured her to Combs' home where Combs then raped her.

16.     In February 2024, Rodney "Lil Rod" Jones, one of Combs' former producers, sued Combs for forcing him to engage in unwanted sex acts and sex trafficking, among other allegations. Mr. Jones alleged that Combs regularly drugged others, including minors, by giving them drugs laced with ecstasy (MDMA) and other date rape drugs. Mr. Jones alleged that Combs in fact drugged him as well in order to commit acts of sexual assault.

17.     In May 2024, former model Crystal McKinney and April Lampros sued Combs. Ms. McKinney alleged that Combs drugged and sexually assaulted her at his recording studio in 2003. Mimicking what has now become a known pattern, Combs promised Ms. McKinney to help her with her modeling career in exchange for engaging in sexual conduct with him. Ms. Lampros, an intern at Arista Records, which was an owner of Bad Boy, also sued Combs in May 2024 in New York County Supreme Court for raping her on multiple occasions, secretly filming these acts, and showing the recordings to multiple people. Ms. Lampros also alleges that Combs ordered her to take drugs on one occasion before he raped her.

6

18.     In July 2024, former adult film star Adria English – who was employed by Combs as an entertainer at his infamous White Parties that brought together the biggest names in the music and entertainment industries – sued Combs in the Southern District of New York for sex trafficking, alleging that he required her to consume drinks laced with ecstasy and secretly recorded sexual acts.

19.     In September 2024, singer and songwriter Dawn Angelique Richard also sued Combs. Richard was employed by Combs as part of the girl group Danity Kane, formed by Combs, and later as a key member of Combs' band Diddy – Dirty Money. She sued Combs in New York for sexual assault, false imprisonment, and for subjecting her to hostile working conditions due to her gender, including degrading comments and threats. Ms. Richard has alleged that Combs regularly supplied others (including minors) with copious amounts of drugs and alcohol, and subjected them to sexual acts while they were sedated and/or unconscious due to the drugs and alcohol.

20.     In September 2024, a federal grand jury in Manhattan indicted Combs and charged him with sex trafficking, racketeering and the "creation of a criminal enterprise in which he abused, threatened and coerced women and others around him to fulfill his sexual desires, protect his reputation and conceal his conduct." *See United States of America v. Sean Combs, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love*," Index No. 24 Crim. 542, Indictment (SDNY), at ¶ 1.  The indictment explains that Combs' abuse of women and minors was enabled by "the employees, resources and influence of the multi-faceted business empire that he led and controlled – creating a criminal enterprise whose members and associates engaged in, and attempted to engage in, among other crimes, sex-trafficking, forced labor, kidnapping, arson, bribery and obstruction of justice."

7

21.     Combs' long history of violence against both women and men unequivocally establishes that his actions are motivated by gender. Combs has a profound contempt for women and a desire to dominate both minors and other men. His conduct shows a longstanding practice of denigrating, defeating and attempting to humiliate men, women and children. His practices and desires are different for men, women and children. But his actions are unequivocally motivated by the victims' particular gender and age.

22.     Plaintiff's allegations herein substantially mirror Combs' prior conduct as established through criminal indictments and other lawsuits. Through this case, Plaintiff seeks a full measure of justice from a man who thought his power, money and influence rendered him untouchable. Plaintiff joins many other victims by filing this Complaint in the hopes their common voice makes it impossible for Combs to assault another person ever again.

23.     The conduct complained of in many of the cases to be brought involve others who facilitated, encouraged, or participated in the conduct alleged.

## PARTIES

24.     Plaintiff John Doe is a male who resides in Ohio (the city has been left unpled for anonymity).

25.     Defendant Sean Combs is a male who, on information and belief, resides in New York City, through incarceration in the Metropolitan Detention Center in Brooklyn. On information and belief, at all relevant times Combs owned and/or controlled Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, Bad Boy Productions LLC, (collectively "Bad Boy"), Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC (all together, the "Combs Corporations"). The facts of Combs'

8

ownership and titles at the Combs Corporations enabled him to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the rape.

26.     Defendant CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC ("Combs Global") is a limited liability company incorporated in Delaware that has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. On information and belief, all members of Combs Global are citizens of Delaware, New York, and/or California. On information and belief, Combs Global is an alter ego for Combs and/or a successor in interest to Combs' other corporations and/or was established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. Combs Global currently owns, controls, and/or oversees Bad Boy and Combs' other business ventures in the music, fashion, fragrance, beverage, marketing, film, television, and media industries.

27.     As part of his renowned Bad Boy record label and brand, Combs has established several corporate entities under the "Bad Boy" name over the past few decades, including but not limited to Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, and Bad Boy Productions LLC (together, "Bad Boy"). On information and belief, all Bad Boy corporate entities are alter egos for Combs, are controlled and/or directed by Combs, and/or were established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. On information and belief, all active Bad Boy entities are now owned and/or controlled by Combs and/or by Combs Global. Combs used the Bad Boy premises/recording studio and their ownership and titles at Bad Boy to commit

9

the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently
intimidate him into silence after the rape.

    a.   Defendant Bad Boy Entertainment Holdings, Inc. is a domestic business
corporation incorporated in New York, that on information and belief now has
its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West
Hollywood, California 90069. Bad Boy Entertainment Holdings, Inc. is part of
the Bad Boy enterprise founded and owned by Combs, and on information and
belief is now owned and/or controlled by Combs and/or by Combs Global.
Combs is listed as the CEO in public filings, with a listed address of 1710
Broadway, New York, New York 10019.

    b.   Defendant Bad Boy Productions Holdings, Inc. is a domestic business
corporation incorporated in New York, that on information and belief now has
its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West
Hollywood, California 90069. Bad Boy Productions Holdings, Inc. is part of
the Bad Boy enterprise founded and owned by Combs, and on information and
belief is now owned and/or controlled by Combs and/or by Combs Global.
Combs is listed as the CEO in public filings, with a listed address of 1710
Broadway, New York, New York 10019.

    c.   Defendant Bad Boy Books Holdings, Inc. is a domestic business corporation
incorporated in New York, that on information and belief now has its principal
place of business at 1440 Broadway, 3rd Floor, New York, New York 10018.
Bad Boy Books Holdings, Inc. is part of the Bad Boy enterprise founded and
owned by Combs, and on information and belief is now owned and/or

controlled by Combs and/or by Combs Global. The CEO listed on public filings is Eddie Norward Jr., with a listed address of 1710 Broadway, New York, New York 10019, the same address listed for Sean Combs in public filings for Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., and Daddy's House Recordings, Inc.

d.   Defendant Bad Boy Records LLC is a Delaware limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Records LLC are citizens of Delaware, New York, and/or California. On information and belief, Bad Boy Records LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Records LLC is now owned and/or controlled by Combs and/or by Combs Global.

e.   Defendant Bad Boy Entertainment LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Entertainment LLC are citizens of New York and/or California. Bad Boy Entertainment LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Entertainment LLC is now owned and/or controlled by Bad Boy Entertainment Holdings, Inc. and/or by Combs, and/or by Combs Global.

f. Defendant Bad Boy Productions LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Productions LLC are citizens of New York and/or California. Bad Boy Productions LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Productions LLC is now owned and/or controlled by Combs and/or by Combs Global.

28. Defendant Macy's Inc. is a domestic business corporation doing business in New York, that on information and belief now has its principal place of business at 151 West 34th Street, New York, NY 10001.

29. Defendants Organizational Does 1-10 are currently unknown entities who were owned by and/or employed Defendant Combs and enabled the commission of the conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities by name.

30. Each of the Combs Corporations (a) aided and abetted and conspired with Combs in committing the unlawful sexual violence against Plaintiff described herein, (b) are alter egos for Combs, completely dominated by him and used for his personal interests and to engage in wrongdoing which harmed Plaintiff and others, and/or (c) serve or have served as vehicles for Combs to move, dispose of, and/or insulate his assets, including in connection with his criminal activities and to avoid compensating the victims of his many crimes, including Plaintiff.

12

## JURISDICTION AND VENUE

31.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this case is between citizens of different states, and the amount in controversy exceeds $75,000.

32.     This Court has specific personal jurisdiction over Defendants because the acts giving rise to Plaintiff's claims took place in New York State, and because several of the Defendants are domiciled in New York State and/or regularly transact business in New York State.

33.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## JURY DEMAND

34.     Plaintiff hereby demands a trial by jury on his claims in this action.

## FACTUAL ALLEGATIONS

35.     In 2008, Plaintiff worked as an advisor for Ecko Clothing, and had been employed by the company for approximately seven years.  Ecko Clothing at the time was among the most popular clothing lines in the country.

36.     In 2008, Combs' Sean John clothing line was also hitting peak popularity.  Plaintiff had in fact met Combs several times in connection with Combs' development and marketing of the Sean John clothing line.

37.     Ecko and Sean John were competing lines within the clothing industry, both having had a large amount of success within the hip-hop community.  Moreover, both lines had relationships with and were carried at the time by Macy's, a well-known department store.

38.     In or around May 2008, Plaintiff was in the stockroom at Macy's flagship store at Herald Square in Manhattan, when Combs and three of his bodyguards entered the stockroom.

13

39.    Plaintiff came upon Combs and his bodyguards at a "T" junction in the stockroom, where Plaintiff had very little room to maneuver.  Combs was flanked by two large bodyguards to the left and one large bodyguard to the right.

40.    Immediately after turning a corner in the stockroom, Plaintiff was hit hard around the base of the neck, possibly with a pistol.  The blow forced Plaintiff to his hands and knees.  As Plaintiff looked up, he saw that each of the bodyguards had guns in their waistbands.  Plaintiff heard multiple voices call out things like "I'll kill you."

41.    Combs approached Plaintiff while Plaintiff was still on his hands and knees and said "Suck my dick, Ecko," referring to the clothing line that Plaintiff worked for. Combs thereafter forced his penis into Plaintiff's mouth and proceeded to forcefully, and brutally, orally rape Plaintiff.  Combs continued for at least two minutes, until ejaculating.  While orally raping Plaintiff, Combs grabbed Plaintiff's hair and made derogatory comments like "You like that, white boy?"

42.    After he was finished, Combs threw Plaintiff's head aside and said words to the effect of "shut up or I'll kill you."  Combs and his bodyguards began to leave, taunting Plaintiff as they did.  Combs proceeded to gather Sean Jean merchandise from the stockroom.  He left the stockroom and headed out to the Macy's retail floor, where he began passing out merchandise to an adoring crowd, as if nothing had happened.

43.    In shock and traumatized, Plaintiff gathered himself and went to Macy's security to report the assault.  By this point, Combs and his bodyguards had left the store.  Plaintiff was told that someone would speak with him but no one ever did.  Shortly thereafter Macy's stopped letting Plaintiff into its flagship Herald Square store.

44.     Approximately three weeks later, Terry Lundgren, CEO of Macy's, pressured Ecko executives to fire Plaintiff because Macy's had just signed a multi-million-dollar deal with Sean John Clothing.  Ecko thereafter terminated Plaintiff from employment and Plaintiff was told he could no longer live in his company-paid apartment.

45.     Plaintiff is informed and believes that the report of the assault was destroyed or otherwise purged from Macy's records, and no action was ever taken as a result of the report.

46.     Plaintiff ultimately had to move out of New York.  Plaintiff still fears for his life as a result of the incident and the threats made against him on that day, including the fact that Plaintiff was known to Combs by way of his work with rival clothing company Ecko.

**FIRST CAUSE OF ACTION**
**(Violation of New York City Victims of Gender-Motivated Violence Protection Act)**
**(All Defendants)**

47.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

48.     By forcing sexual contact onto Plaintiff, specifically by physically assaulting and then forcibly orally raping Plaintiff, Defendant Combs committed a "crime of violence motivated by gender" under the Victims of Gender-Motivated Violence Protection Act ("VGMVPA") as defined in New York City Administrative Code § 10-1103.

49.     The requirement that the crime of violence be committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender is satisfied because Defendant Combs forced Plaintiff to engage in a sexual interaction without consent. John Doe was incapacitated by a physical blow and then forced to remain on his hands and knees due to threats of violence backed up by the presence of firearms on three bodyguards. The non-consensual sexual contact herein presented a serious risk of physical injury, and in fact caused

15

such injury. Gender animus inheres when consent is absent. Moreover, Combs' long history of violence and sexual abuse against men evinces a deep contempt and desire for domination over men.

50.     The Combs Business and Defendant Macy's conspired with and enabled Combs to commit the crime of violence motivated by gender because Combs sexually assaulted Plaintiff at a department store doing business with the Combs Business and carrying Combs Business products. On information and belief, Combs Businesses routinely committed sexual assault and gender-motivated violence, as detailed in other civil lawsuits, to further the business purpose of Combs' enterprise. Given Combs' long- standing pattern and practice of committing sexual violence against men, the Combs Business had and/or should have had knowledge of Combs using such venues for this unlawful conduct, and did nothing to stop it.

51.     The Combs Business and Defendant Macy's conspired with and enabled Combs to commit the crime of violence motivated by gender by failing to, among other things, protect Plaintiff from a known danger and/or have sufficient policies and procedures in place to prevent sexual assault and/or train their employees on identifying and preventing sexual assault. Given long-standing pattern and practice of committing sexual violence against men, including on premises owned and/or operated and/or used by Defendants for business purposes, the Combs Corporations had and/or should have had knowledge that Combs was a danger to Plaintiff, and did nothing to stop Combs.

52.     The Combs Business and Defendant Macy's conspired with and enabled Combs to commit the crime of violence motivated by gender by failing to properly supervise. The Combs Business had knowledge and/or should have had knowledge of Combs' widespread and well-known practice of committing sexual assault and gender-motivated violence, including on

16

premises owned and/or operated and/or used for business purposes by Defendants, and did nothing to stop it.

53.     The Combs Corporations and Defendant Macy's conspired with and further enabled Combs to commit the crime of violence motivated by gender by actively placing, maintaining, and/or employing Combs in positions of power and authority, despite the fact that they knew and/or should have known that Combs had a widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants. Combs used his titles and authority conferred by the Combs Business, including as CEO, Founder, and Chairman to facilitate and perpetuate the violent assault on Plaintiff, and to intimidate and force Plaintiff to keep quiet in subsequent years.

54.     On information and belief, Plaintiff alleges that Defendant Organizational Does 1 through 10, inclusive, are other parties not yet identified who have enabled Combs to commit the crime of violence motivated by gender, in the ways articulated above and/or in other ways.

55.     As a result of Defendants' actions, Plaintiff suffered damages in an amount to be determined at trial and pursuant to the fee-shifting provision of the statute.

56.     This legal action has been commenced within the statutory timeframe provided by the two-year look-back window for VGMVPA claims. *See* New York City Administrative Code § 10-1105.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

a.   Awarding compensatory damages for all physical injuries, emotional distress, psychological harm, anxiety, humiliation, physical and emotional pain and

suffering, family and social disruption, and other harm, in an amount to be determined at trial;

b.  Awarding punitive damages in an amount to be determined at trial;

c.  Awarding attorneys' fees and costs pursuant to any applicable statute or law;

d.  Awarding pre- and post-judgment interest on all such damages, fees, and/or costs;

e.  Attaching any and all of Defendants' real property and other assets located in the State of New York pursuant to Federal Rule of Civil Procedure 64; and

f.  Awarding such other and further relief as this Court may deem just and proper.

Dated: OCTOBER 14, 2024

Respectfully submitted,

### THE BUZBEE LAW FIRM

By: */s/ Anthony G. Buzbee*
Anthony G. Buzbee
Texas Bar No. 24001820
tbuzbee@txattorneys.com
Christopher J. Leavitt
Texas Bar No. 24053318
cleavitt@txattorneys.com
Ryan S. Pigg
Texas Bar No. 24088227
rpigg@txattorneys.com
David C. Fortney
Texas Bar No. 24068740
dfortney@txattorneys.com
Thomas Colby Holler
Texas Bar No. 24126898
choller@txattorneys.com
Crystal Del Toro
Texas Bar No. 24090070
cdeltoro@txattorneys.com
J.P. Morgan Chase Tower
600 Travis, Suite 7500
Houston, Texas 77002

18

Telephone: (713) 223-5393
Facsimile: (713) 223-5909

*Attorneys for Plaintiff John Doe*

-  AND  -

**AVA LAW GROUP**
Andrew Van Arsdale
CA Bar No. 323370
andrew.vanarsdale@avalaw.com
3667 Voltaire Street, Ste. 101
San Diego, CA 92106
Telephone: (800) 777-4141
Facsimile: (619) 222-3667

-  AND  -

**CURIS LAW, PLLC**
Antigone Curis
antigone@curislaw.com
52 Duane Street, 7th Floor
New York, New York 10007
Phone: (646) 335-7220
Facsimile: (315) 660-2610

Exhibit F (xxi): John Doe v. Combs; 1-24-cv-07772

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

John Doe,

                *Plaintiff*,                     No. _____

          v.

SEAN COMBS, DADDY'S                       **COMPLAINT AND**
HOUSE RECORDINGS INC., CE OPCO, LLC d/b/a     **DEMAND FOR**
COMBS GLOBAL f/k/a COMBS ENTERPRISES LLC,    **JURY TRIAL**
BAD BOY ENTERTAINMENT HOLDINGS, INC.,
BAD BOY PRODUCTIONS HOLDINGS, INC.,
BAD BOY BOOKS HOLDINGS, INC., BAD BOY
RECORDS LLC, BAD BOY ENTERTAINMENT LLC,
BAD BOY PRODUCTIONS LLC, AND
ORGANIZATIONAL DOES 1-10,

               *Defendants*.

-------------------------------------------------------X

       Plaintiff John Doe ("Plaintiff"), by and through his attorneys, The Buzbee Law

Firm, for his Complaint alleges as follows:

## **INTRODUCTION**

       1.     Defendant Sean Combs routinely recruited individuals to parties, drugged them,

and then sexually exploited them. The conduct described herein is shockingly typical of Defendant

Sean Combs. He was aided in this abhorrent conduct by numerous individuals and entities. Sean

Combs conducted himself for many years as if he was above the law. He is not. This case seeks

both compensatory and punitive damages for sexual assault and rape.

       2.     For decades, Sean Combs (a/k/a "P. Diddy," a/k/a "Puff Daddy," a/k/a "Diddy,"

a/k/a "PD," and a/k/a "Love") (described herein as "Combs") abused, molested, raped, assaulted,

threatened and coerced men, women, minors and others for sexual gratification, to assert

dominance, and to conceal his abhorrent conduct. He accomplished these acts by and through a criminal enterprise built on his success as a rapper, record producer and record executive. Combs is one of the wealthiest musical artists in the world. Behind the façade of being a three-time Grammy Award winner, discovering and developing multiple famous musical artists, and ranking on Forbes' list of the highest-paid entertainers in the world, there existed something sinister—a dark underbelly of crime, sex trafficking, forced labor, kidnapping, bribery and prostitution. Combs is a menace to society, women and children. While his wealth has kept him above consequence for years, Combs now faces the awesome power of the American judicial system and ultimately a jury of his peers who will be asked to punish him for the deplorable conduct described herein.

### *Combs' Businesses*

3.      Combs' business enterprise is central to the pervasive acts of sexual assault and abuse committed by him during the last decades. Combs operated his business, headquartered at various times in Manhattan and Los Angeles, under a variety of United States-based corporate entities, including Bad Boy Entertainment, Bad Boy Books Holdings, Inc., Bad Boy Records, LLC, Bad Boy Entertainment, LLC, Bad Boy Productions, LLC, Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises, LLC, Combs Enterprises and Combs Global (collectively, the "Combs Business"). Corporate entities in the Combs Business portfolio included record labels, a recording studio, an apparel line, an alcoholic spirits promoting business, a marketing agency, talent discovery, a television network and media company.

4.      On the surface, each of these businesses served a legitimate purpose related to entertainment, music and other subjects. But in reality, Combs, by and through himself and his

agents, employees and contractors, used these businesses to sexually assault, abuse, threaten and coerce hundreds of individuals through sexual *quid pro quo* schemes, as well as to take advantage of individuals with impunity thinking the victims would never seek recourse. Combs and his agents, employees and contractors, through these Combs Businesses, would tell victims, "this is what it takes to be famous," "what are you willing to do to become a star?," and "perform this sexual act or else" to coerce the victim into performing a non-consensual sexual act for the gratification of Combs and his cohorts.

5.    Members and associates of the Combs Business engaged in (and/or attempted to engage in), among other activities, sex trafficking, forced labor, interstate transportation for the purposes of prostitution, coercion and enticement to engage in prostitution, narcotics offenses, kidnapping, arson, bribery, and obstruction of justice.

6.    The Combs Business constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of Combs.

*Combs' Pervasive History of Sexual Assault and Violence*

7.    For years Combs and his businesses engaged in a persistent and pervasive pattern of abuse toward women, men, and minors. This abuse was, at times, verbal, emotional, physical and sexual. As part of his pattern of abuse, Combs manipulated both men and women to participate in highly-orchestrated performances of sexual activity with both commercial sex workers and unsuspecting partygoers. In some cases these were individuals who were contractors or vendors. In other cases, they were random individuals pulled from a hotel lobby, a show, or off the street. Combs ensured participation from these individuals by, among other things, obtaining and distributing narcotics to them with or without their knowledge, controlling their careers, leveraging

his financial support and threatening to cut off the same, and using intimidation, violence, and illicit drugs.

8.     Combs, while celebrated for his business acumen and influence in the entertainment world, has often been described in a more troubling light as powerful, manipulative, and problematic. His aggressive tactics, both in business and personal dealings, have drawn criticism, with many viewing him as someone who leverages his power to intimidate and control. This darker side of Combs' persona has been underscored by the numerous lawsuits and allegations that have surfaced over the years. Despite his undeniable success, his rise to the top is marred by a reputation for being ruthless and manipulative, using his influence in ways that have left a trail of legal and personal controversies including but not limited to the following:

a.     Nightclub Shooting Incident (1999): Combs was embroiled in a high-profile case related to a nightclub shooting in New York, involving his then-girlfriend, Jennifer Lopez, and rapper Shyne. Combs was acquitted of all charges, though the case remains a significant legal event in his career.

b.     Multiple Assault Allegations: Combs has faced several lawsuits related to alleged physical assaults, many of which have been settled out of court.

c.     Business Disputes: Combs has been involved in various business-related legal conflicts, particularly surrounding his Sean John clothing line and other ventures. These disputes often involved contractual disagreements and trademark claims.

d.     Claims by Cassie Ventura: Combs' former girlfriend, Casandra "Cassie" Ventura, filed a lawsuit accusing him of years of physical, emotional, and sexual abuse during their relationship. Cassie alleged repeated instances of

assault, coerced sexual acts, and drug use, all contributing to an environment of fear and manipulation.

9.     Combs particularly fancied the use of the popular date-rape drug Rohypnol, or GHB, to commit heinous non-consensual acts of sexual violence and rape onto countless victims. Combs often would secretly use the drug in an alcoholic beverage served at his parties, typically champagne or "lemon drops." Partygoers were forced to consume the alcoholic beverage, containing GHB, either prior to entering or while at Combs' party. There are also allegations of Combs dousing victims in lotions or similar body oils, also laced with GBH, so that the drug would be absorbed through the victim's skin and make it easier to assault him or her.

10.     Combs' recurrent and pervasive physical abuse took place for multiple decades. His tendencies of violence and sexual assault were no doubt well known amongst his colleagues, employees, agents and businesses. On numerous occasions from at least on or about 1996 and continuing for years, Combs assaulted women and men by striking, punching, dragging, throwing objects at, and kicking them. Combs also assaulted children both physically and sexually.

11.     In 1996, Combs was found guilty of criminal mischief for threatening a photographer from the New York Post with a gun. In 1999, he was arrested and charged with second-degree assault and criminal mischief in connection with assaulting a record executive. Combs was arrested again the same year for his involvement in a shooting at a club in New York. Another instance of violence occurred at a Los Angeles hotel in or about March 2016, which was captured on video and later publicly reported, where Combs kicked, dragged and threw a vase at a woman as she was attempting to leave his hotel room. When hotel security staff intervened, Combs attempted to bribe the staff member to ensure silence.

12.     In the past year, numerous civil complaints have been filed by plaintiffs who allege that they had been sexually abused by Combs between 1991 and 2009. In November 2023, three lawsuits were filed against Combs under the New York Adult Survivors Act. Cassie Ventura, an artist signed to Bad Boy, sued Combs in New York for rape and physical abuse. She alleged Combs facilitated these acts by and through supplying Ms. Ventura with copious amounts of drugs and urging her to take them, beginning in 2006.

13.     Joi Dickerson-Neal also sued Combs in New York, alleging Combs drugged her, sexually assaulted her and secretly recorded the assault in 1991.

14.     Liza Gardner, whom Combs met at an event hosted by a record label affiliated with Bad Boy, sued him for allegedly raping her and a friend in 1990 or 1991 when she was only 16.

15.     In December 2023, an anonymous Plaintiff sued Combs in New York for allegedly drugging and gang-raping her in 2003 when she was only seventeen years old. This victim alleged that employees and business associates of Combs, through their affiliation with Bad Boy enterprise, lured her to Combs' home where Combs then raped her.

16.     In February 2024, Rodney "Lil Rod" Jones, one of Combs' former producers, sued Combs for allegedly forcing him to engage in unwanted sex acts and sex trafficking, among other allegations. Mr. Jones alleged that Combs regularly drugged others, including minors, by giving them drugs laced with ecstasy (MDMA) and other date rape drugs. Mr. Jones alleged that Combs in fact drugged him as well in order to commit acts of sexual assault.

17.     In May 2024, former model Crystal McKinney and April Lampros sued Combs. Ms. McKinney alleged that Combs drugged and sexually assaulted her at his recording studio in 2003. Mimicking what has now become a known pattern, Combs promised Ms. McKinney to help her with her modeling career in exchange for engaging in sexual conduct with him. Ms. Lampros,

an intern at Arista Records, which was an owner of Bad Boy, also sued Combs in May 2024 in

New York County Supreme Court for raping her on multiple occasions, secretly filming these acts,

and showing the recordings to multiple people. Ms. Lampros also alleges that Combs ordered her

to take drugs on one occasion before he raped her.

18.     In July 2024, former adult film star Adria English – who was employed by Combs

as an entertainer at his infamous White Parties that brought together the biggest names in the music

and entertainment industries – sued Combs in the Southern District of New York for sex

trafficking, alleging that he required her to consume drinks laced with ecstasy and secretly

recorded the sexual acts.

19.     In September 2024, singer and songwriter Dawn Angelique Richard also sued

Combs. Richard was employed by Combs as part of the girl group Danity Kane, formed by Combs,

and later as a key member of Combs' band Diddy – Dirty Money. She sued Combs in New York

for sexual assault, false imprisonment, and for subjecting her to hostile working conditions due to

her gender, including degrading comments and threats. Ms. Richard has alleged that Combs

regularly supplied others including minors with copious amounts of drugs and alcohol, and

subjected them to sexual acts while they were sedated and/or unconscious due to the drugs and

alcohol.

20.     In September 2024, a federal grand jury in Manhattan indicted Combs and charged

him with sex trafficking, racketeering and the "creation of a criminal enterprise in which he abused,

threatened and coerced women and others around him to fulfill his sexual desires, protect his

reputation and conceal his conduct." *See United States of America v. Sean Combs, a/k/a "Puff

Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love,"* Index No. 24 Crim. 542,

Indictment (SDNY), at ¶ 1.  The indictment explains that Combs' abuse of women and minors was

enabled by "the employees, resources and influence of the multi-faceted business empire that he led and controlled – creating a criminal enterprise whose members and associates engaged in, and attempted to engage in, among other crimes, sex-trafficking, forced labor, kidnapping, arson, bribery and obstruction of justice."

21.     Combs' long history of violence unequivocally establishes that his actions are motivated by gender – both men and women. Combs has a profound contempt for women and a desire to dominate both minors and other men. His conduct shows a longstanding practice of denigrating, defeating and attempting to humiliate men, women and children. His practices and desires are different for men, women and children. But his actions are unequivocally motivated by the victims' particular gender and age.

22.     Plaintiff's allegations herein substantially mirror Combs' prior conduct as established through criminal indictments and other lawsuits. Through this case, Plaintiff seeks a full measure of justice from a man who thought his power, money and influence rendered him untouchable. Plaintiff joins many other victims by filing this Complaint in hopes their common voice makes it impossible for Combs to assault another person ever again.

## PARTIES

23.     Plaintiff John Doe is a male who resides in Georgia.

24.     Defendant Sean Combs is a male who, on information and belief, resides in New York City, and who is otherwise currently incarcerated in the Metropolitan Detention Center in Brooklyn. On information and belief, at all relevant times Combs owned and/or controlled Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, Bad Boy Productions LLC, (collectively "Bad Boy"), Daddy's House Recording Studio, Inc., and CE OPCO, LLC d/b/a

Combs Global, f/k/a Combs Enterprises LLC (all together, the "Combs Corporations"). The facts of Combs' ownership and titles at the Combs Corporations enabled him to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the rape.

25.     Defendant Daddy's House Recordings, Inc. ("Daddy's House") is a domestic business corporation that is incorporated in New York and on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019. At the time of the events alleged herein, Daddy's House was a world-class recording studio owned by Combs located at 321 W 44th Street, Suite 201, New York, New York 10036. On information and belief, at all relevant times, Bad Boy and Combs together owned and operated Daddy's House. On information and belief, the Bad Boy recording studio was located on the premises of Daddy's House. Combs used the Daddy's House brand, stature and their ownership and titles at Daddy's House to commit the unlawful sexual violence against Plaintiff described herein.

26.     Defendant CE OPCO, LLC d/b/a Combs Global, f/k/a Combs Enterprises LLC ("Combs Global") is a limited liability company incorporated in Delaware that has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. On information and belief, all members of Combs Global are citizens of Delaware, New York, and/or California. On information and belief, Combs Global is an alter ego for Combs and/or a successor in interest to Combs' other corporations and/or was established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. Combs Global currently owns, controls, and/or oversees Bad Boy

and Combs' other business ventures in the music, fashion, fragrance, beverage, marketing, film, television, and media industries.

27.     As part of his renowned Bad Boy record label and brand, Combs has established several corporate entities under the "Bad Boy" name over the past few decades, including but not limited to Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Records LLC, Bad Boy Entertainment LLC, and Bad Boy Productions LLC (together, "Bad Boy"). On information and belief, all Bad Boy corporate entities are alter egos for Combs, are controlled and/or directed by Combs, and/or were established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal activities and to avoid liability. On information and belief, all active Bad Boy entities are now owned and/or controlled by Combs and/or by Combs Global. Combs used the Bad Boy premises/recording studio and their ownership and titles at Bad Boy to commit the unlawful sexual violence against Plaintiff described herein and/or to harass and subsequently intimidate him into silence after the rape.

a.  Defendant Bad Boy Entertainment Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Entertainment Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

b. Defendant Bad Boy Productions Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California 90069. Bad Boy Productions Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. Combs is listed as the CEO in public filings, with a listed address of 1710 Broadway, New York, New York 10019.

c. Defendant Bad Boy Books Holdings, Inc. is a domestic business corporation incorporated in New York, that on information and belief now has its principal place of business at 1440 Broadway, 3rd Floor, New York, New York 10018. Bad Boy Books Holdings, Inc. is part of the Bad Boy enterprise founded and owned by Combs, and on information and belief is now owned and/or controlled by Combs and/or by Combs Global. The CEO listed on public filings is Eddie Norward Jr., with a listed address of 1710 Broadway, New York, New York 10019, the same address listed for Sean Combs in public filings for Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., and Daddy's House Recordings, Inc.

d. Defendant Bad Boy Records LLC is a Delaware limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Records LLC are citizens of Delaware, New York, and/or California. On information and belief, Bad Boy Records LLC is part of the Bad Boy enterprise and/or a successor-in-interest to

other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Records LLC is now owned and/or controlled by Combs and/or by Combs Global.

e.  Defendant Bad Boy Entertainment LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Entertainment LLC are citizens of New York and/or California. Bad Boy Entertainment LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Entertainment LLC is now owned and/or controlled by Bad Boy Entertainment Holdings, Inc. and/or by Combs, and/or by Combs Global.

f.  Defendant Bad Boy Productions LLC is a New York limited liability company that on information and belief is headquartered in New York and/or California. On information and belief, all members of Bad Boy Productions LLC are citizens of New York and/or California. Bad Boy Productions LLC is part of the Bad Boy enterprise and/or a successor-in-interest to other Bad Boy Defendants that comprise the Bad Boy enterprise founded and owned by Combs. On information and belief, Bad Boy Productions LLC is now owned and/or controlled by Combs and/or by Combs Global.

28.  Defendants Organizational Does 1-10 are currently unknown entities who were owned by and/or employed Defendant Combs and enabled the commission of the conduct

complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities by name.

29.     Each of the Combs Corporations (a) aided and abetted Combs in committing the unlawful sexual violence against Plaintiff described herein, (b) are alter egos for Combs, completely dominated by him and used for his personal interests and to engage in wrongdoing which harmed Plaintiff and others, and/or (c) serve or have served as vehicles for Combs to move, dispose of, and/or insulate his assets, including in connection with his criminal activities and to avoid compensating the victims of his many crimes, including Plaintiff.

## JURISDICTION AND VENUE

30.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this case is between citizens of different states, and the amount in controversy exceeds $75,000.

31.     This Court has specific personal jurisdiction over Defendants because the acts giving rise to Plaintiff's claims took place in New York State, and because several of the Defendants are domiciled in New York State and/or regularly transact business in New York State.

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## JURY DEMAND

33.     Plaintiff hereby demands a trial by jury on his claims in this action.

## FACTUAL ALLEGATIONS

34.     Plaintiff worked for Royal Reigns Management, a prestigious company based out of New York City, with additional offices in Los Angeles and Atlanta.

35.     Through Plaintiff's industry connections, he gained access to parties associated with Combs and Bad Boy Entertainment.

36. One party took place in or around October 2021.

37. These connections and invitation ultimately led to life-altering and traumatic experiences for Plaintiff.

38. Combs Businesses picked Plaintiff up from the airport and transported him to New York City, where the party was to take place.

39. Upon arrival, Plaintiff noticed several well-known artists in attendance. Plaintiff was immediately offered what he was told was ecstasy by associates of Combs Businesses, which Plaintiff refused.

40. Plaintiff limited himself to just one drink.

41. Even though Plaintiff only consumed one alcoholic drink, the effects of the drink were immediate and overwhelming. This behavior towards Plaintiff mimics a pattern of Combs and his agents/employees drugging unsuspecting victims in order to make it easier for Combs to sexually assault that person. Unfortunately, Plaintiff was one such victim. A photograph of an exemplary container used by Combs and/or his agents/employees to insert GHB into alcoholic drinks is seen below:



42.     Plaintiff soon became disoriented, and the room started spinning. In a state of confusion, he attempted to remove himself from the situation, seeking a safe space.

43.     As Plaintiff tried to leave, a male voice told him to "hold on," and he promised to help him.

44.     The next thing Plaintiff remembers is being in a bedroom. Despite being vaguely aware of his surroundings, he could not move, speak, or fight back. Plaintiff was paralyzed—feeling as if he was trapped in his own body. Multiple men began to sexually assault him through sodomy and other forced acts.

45.     He distinctly recalls seeing Combs above him, naked, at one point during the assault. During this time, Plaintiff was sodomized by at least three men.

---

[1] A picture of a vial recovered from a Combs cohort.

46.     Plaintiff could feel a difference in the size of the men when he was being sodomized, further confirming the presence of multiple attackers.

47.     Plaintiff continues to attend therapy sessions to address the trauma from these experiences.

## FIRST CAUSE OF ACTION
**(Violation of New York City Victims of Gender-Motivated Violence Protection Act)**
**(All Defendants)**

48.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

49.     By forcing sexual contact onto Plaintiff as a male, Defendant Combs committed a "crime of violence motivated by gender" under the Victims of Gender-Motivated Violence Protection Act ("VGMVPA") as defined in New York City Administrative Code § 10-1103.

50.     The requirement that the crime of violence be committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender is satisfied because Defendant Combs forced Plaintiff to engage in a sexual interaction without consent. Combs' long history of violence and sexual abuse against men evinces a deep contempt and desire for domination over women.

51.     The Combs Business enabled Combs to commit the crime of violence motivated by gender because Combs sexually assaulted Plaintiff at a party related to or referencing Combs Business. On information and belief, Combs Businesses routinely committed sexual assault and gender-motivated violence, as detailed in other civil lawsuits, to further the business purpose of Combs' enterprise. Given Combs' long-standing pattern and practice of committing sexual violence against men, the Combs Business had and/or should have had knowledge of Combs using such parties and venues for this unlawful conduct, and did nothing to stop it.

52.     The Combs Business enabled Combs to commit the crime of violence motivated by gender by failing to, among other things, protect Plaintiff from a known danger and/or have sufficient policies and procedures in place to prevent sexual assault and/or train their employees on identifying and preventing sexual assault. Given long-standing pattern and practice of committing sexual violence against men, including on premises owned and/or operated by Defendants, the Combs Corporations had and/or should have had knowledge that Combs was a danger to Plaintiff, and did nothing to stop Combs.

53.     The Combs Business enabled Combs to commit the crime of violence motivated by gender by failing to properly supervise. The Combs Business had knowledge and/or should have had knowledge of Combs' widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants, and did nothing to stop it.

54.     The Combs Corporations further enabled Combs to commit the crime of violence motivated by gender by actively placing, maintaining, and/or employing Combs in positions of power and authority, despite the fact that they knew and/or should have known that Combs had a widespread and well-known practice of committing sexual assault and gender-motivated violence, including on premises owned and/or operated by Defendants. Combs used his titles and authority conferred by the Combs Business, including as CEO, Founder, and Chairman to facilitate and perpetuate the violent assault on Plaintiff, and to intimidate and force Plaintiff to keep quiet in subsequent years.

55.     On information and belief, Plaintiff alleges that Defendants Organizational Does 1 through 10, inclusive, are other parties not yet identified who have enabled Combs to commit the crime of violence motivated by gender, in the ways articulated above and/or in other ways.

56.     As a result of Defendants' actions, Plaintiff suffered damages in an amount to be determined at trial and pursuant to the fee-shifting provision of the statute.

57.     This legal action has been commenced within the statutory timeframe provided by the two-year look-back window for VGMVPA claims. *See* New York City Administrative Code § 10-1105.

**SECOND CAUSE OF ACTION:**
**Assault and Battery, Rape, Criminal Sexual Act,**
**Aggravated Sexual Abuse CPLR 213-c**

58.     Plaintiff realleges the above paragraphs as if fully set forth herein.

59.     Combs and Combs Businesses engaged in intentional acts that resulted in Combs raping Plaintiff. Combs' rape of Plaintiff constitutes rape in the first degree as defined in N.Y. Penal Law § 130.35, a criminal sexual act in the first degree as defined in N.Y. Penal Law § 130.50, or aggravated sexual abuse in the first degree as defined in N.Y. Penal Law § 130.70.

60.     As a result of the rape, Plaintiff has suffered severe emotional and psychological injuries, for which he seeks an award of compensatory damages.

61.     The actions of Combs and Combs Businesses were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights, for which he seeks an award of punitive damages.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

a.     Awarding compensatory damages for all physical injuries, emotional distress, psychological harm, anxiety, humiliation, physical and emotional pain and suffering, family and social disruption, and other harm, in an amount to be determined at trial;

b.  Awarding punitive damages in an amount to be determined at trial;

c.  Awarding attorneys' fees and costs pursuant to any applicable statute or law;

d.  Awarding pre- and post-judgment interest on all such damages, fees, and/or costs;

e.  Attaching any and all of Defendants' real property and other assets located in the State of New York pursuant to Federal Rule of Civil Procedure 64; and

f.  Awarding such other and further relief as this Court may deem just and proper.

Dated:  OCTOBER 14, 2024

Respectfully submitted,

### THE BUZBEE LAW FIRM

By: */s/ Anthony G. Buzbee*
Anthony G. Buzbee
Texas Bar No. 24001820
tbuzbee@txattorneys.com
Christopher J. Leavitt
Texas Bar No. 24053318
cleavitt@txattorneys.com
Ryan S. Pigg
Texas Bar No. 24088227
rpigg@txattorneys.com
David C. Fortney
Texas Bar No. 24068740
dfortney@txattorneys.com
Thomas Colby Holler
Texas Bar No. 24126898
choller@txattorneys.com
Crystal Del Toro
Texas Bar No. 24090070
cdeltoro@txattorneys.com
J.P. Morgan Chase Tower
600 Travis, Suite 7500
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909

*Attorneys for Plaintiff John Doe*

- AND -


**AVA LAW GROUP**
Andrew Van Arsdale
CA Bar No. 323370
andrew.vanarsdale@avalaw.com
3667 Voltaire Street, Ste. 101
San Diego, CA 92106
Telephone: (800) 777-4141
Facsimile: (619) 222-3667

- AND -

**CURIS LAW, PLLC**
Antigone Curis
antigone@curislaw.com
52 Duane Street, 7th Floor
New York, New York 10007
Phone: (646) 335-7220
Facsimile: (315) 660-2610