UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

———————————————————

LIZA GARDNER,

    Plaintiff,

     v.

SEAN COMBS, AARON HALL,
DONALD EARLE DEGRATE JR.,
aka DEVANTE SWING, UMG
RECORDINGS, INC., UNIVERSAL
MUSIC GROUP, N.V., JOHN DOES
1-10 (names being fictitious
and used to connote an
unidentified person
responsible for this
occurrence), ABC
CORPORATIONS 1-10 (names
being fictitious and used to
connote unidentified
entities responsible for
this occurrence),

    Defendants.
———————————————————

CIVIL ACTION NUMBER:

2:24-cv-07729-LMG-JRA

ORDER TO SHOW CAUSE HEARING

Pages 1 - 63

Frank Lautenberg Post Office & U.S. Courthouse
Two Federal Square
Newark, New Jersey 07102
Wednesday, December 3, 2025
Commencing at 10:02 a.m.

B E F O R E:      THE HONORABLE LEO M. GORDON,
               UNITED STATES COURT OF INTERNATIONAL TRADE

Joanne L. Sekella, CCR, CRCR, RDR
Official Court Reporter
sekella@gmail.com
(908) 310-1177

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

*United States District Court*
*District of New Jersey*

**A P P E A R A N C E S**:

  T.A. BLACKBURN LAW, PLLC
  BY: TYRONE A. BLACKBURN, ESQUIRE
  1242 East 80th Street, 3rd Floor
  Brooklyn, New York 11236
  For the Plaintiff

  SHER TREMONTE
  BY: YONATAN Y. JACOBS, ESQUIRE
    ERICA A. WOLFF, ESQUIRE
  90 Broad Street, 23rd Floor
  New York, New York 10004
  For the Defendant Sean Combs


  MCDERMOTT WILL & SCHULTE LLP
  BY: LISA A. LINSKY, ESQUIRE
    JESSICA GREER GRIFFITH, ESQUIRE
  One Vanderbilt Avenue
  New York, New York 10017
  For the Defendant UMG Recordings, Inc., and Universal
  Music Group, N.V.

*United States District Court*
*District of New Jersey*

(PROCEEDINGS held in open court before The Honorable LEO M. GORDON, United States Court of International Trade, at 10:02 a.m.)

THE COURTROOM DEPUTY:  All rise.

THE COURT:  Be seated, please.

Good morning, everyone.

MS. LINSKY:  Good morning, Judge.

MS. WOLFF:  Good morning.

THE COURT:  We are going off the record.

(Discussion held off the record.)

THE COURTROOM DEPUTY:  This is the matter of *Liza Gardner vs. Sean Combs, et al*, civil action number 24-cv-007729.

THE COURT:  Good morning, all.

MS. LINSKY:  Good morning.

THE COURT:  As you know, we are here on an order to show cause under Rule 11 as to why counsel for plaintiff should not be sanctioned for behavior that got us to this date.

The origin of this deals with the opposition brief filed by plaintiff's counsel relative to the claim under the Mann Act for the plaintiff.  There was a citation to a case called "Masha," which, it turns out, may have been a hallucinated case as a result of the use of artificial intelligence in the research and/or preparation of plaintiff's

response.

The Court, during the course of the hearing on the motions to dismiss, when it learned that there was a problem on the part of defense counsel attempting to find that citation, stopped the proceedings and had a sidebar conference with all counsel to try to determine whether AI was involved in this at all.

The plaintiff's counsel acknowledged at that time that he had used an artificial intelligence tool connected with Lexis to do his research, but he represented that he himself had written the brief based upon that assistive research.

I had asked the plaintiff's counsel at that point, all right, so as not to embarrass him on the record, to return to his office and within 24 hours advise the Court via e-mail through the courtroom deputy clerk as to, one, the correct title of the case; or, two, the correct citation; or an acknowledgement that there was an error as a result of the use of artificial intelligence in his research.

The Court was not looking for any more than that. And to make sure that the defense counsels were notified of what the correct and proper disposition of that problem was.

The Court thought that it had made it clear that it wanted that brief response no later than the close of business on the day following the hearing.

Following the hearing and the passage of that deadline, there was no response from plaintiff's counsel, no response on Tuesday, no response on Wednesday, no response on Thursday, no response on Friday, no response on Saturday, no response on Sunday.

Defendants' counsel then notified the Court that it had itself not received a response, and it attempted to reach out to plaintiff's counsel to no avail.

We find ourselves the following Monday and the Court decides enough is enough, and it issues an order to show cause for an explanation as to why there was no response prior to that, and ordering this show cause hearing on this date at this time.

Plaintiff's counsel subsequently filed a letter response on the order to show cause explaining just exactly what had happened.  We will get into the merits and substance of that in a few minutes.

That was followed by a response from defendants' counsel jointly, and then there was a request for an adjournment of this hearing, which the Court denied.

That is what brings us here this morning.

Plaintiff's counsel, Mr. Blackburn, is the Court's recitation and summary accurate, in your opinion?

MR. BLACKBURN:  Good morning, Your Honor.

Yes as to everything except for the part where Your

Honor said that there was a -- I was supposed to return an answer by the 18th, which was the day after the hearing.  That is not what I recalled standing at sidebar.  And I have my notes from that day.  There was no order put on the docket, which, you know, I get the Court chose not to do that.

But from my understanding, I was to go back and do the research to figure out what happened and to --

THE COURT:  Mr. Blackburn, I appreciate that.  We will get into a little bit more.

You say the Court's recitation is accurate but for the issue of the deadline on which you were supposed to respond as a result of the sidebar.

MR. BLACKBURN:  Yes.

THE COURT:  Counsel for Mr. Combs, was the Court's recitation accurate, to the best of your recollection?

MS. WOLFF:  Good morning, Your Honor.

Yes, to the best of my recollection, the Court's recitation was accurate, and I do have a clear recollection of Your Honor directing Mr. Blackburn at sidebar to respond by close of business the next day.

THE COURT:  Counsel for the record company defendants.

MS. LINSKY:  Yes, Lisa Linsky for UMG.

Good morning, Your Honor.

Yes, I concur with your recitation and its accuracy.

I, too, have a very specific recollection of the Court instructing Mr. Blackburn to get back to Your Honor and defense counsel about the accuracy of the Masha citation and to provide an actual citation if he could find one, and if not, to explain why not.  I made a note of it myself, and I discussed it with my cocounsel here, Ms. Wolff.

THE COURT:  All right, we are going to stop at that point.

Mr. Blackburn, I am more than happy to hear from you.  I don't need a chapter-and-verse recitation of your memorandum, but if you wish to address the Court on the issue of whether sanctions should issue, I am more than happy and willing to hear you for a bit.

MR. BLACKBURN:  Yes, so --

THE COURT:  Mr. Blackburn, if you would be so kind to come to the podium.

Well, actually, Mr. Blackburn, you're probably pretty exhausted based upon what you told me.  I'm not going to make you stand at your feet.  You can stay at counsel table, just please make sure the microphone is close enough and you enunciate sufficiently so that the court reporter can take down what you are saying.

MR. BLACKBURN:  So aside from what I -- what I shared in my letter in response to the order to show cause, you know, I would just say that -- I would, you know, reiterate the fact

that I was not trying to defraud the courts.

And I have never had a citation error on any case up until the point when the LexisNexis upgrade took effect and I started using it.

THE COURT:  Mr. Blackburn, let's be very careful here.  All right?

MR. BLACKBURN:  I am talking about prior cases from -- I started practicing in 2019.  Up to -- and I have never had any issues.

THE COURT:  Again, Mr. Blackburn, let's be very careful here.

MR. BLACKBURN:  Okay.

THE COURT:  The Court is aware by virtue of your own words in your --

MR. BLACKBURN:  No, no, I am not talking about -- I am not talking about what happened here.  I am not talking about what happened in -- I am just giving you the history of my use of LexisNexis.

So let me just clarify.  I apologize for that.

So I am not saying that I have never had any issues. I am saying, yes, I have never had any issues up until the point that I started using this upgraded program.  And since then, around the time that I -- that the upgrade was triggered, which has changed itself multiple times since then, since last December, I have done multiple briefs and filed

multiple cases, including in this Court, all around the same exact time, and I am going to be honest and say that I've had errors.  There were errors that manifested from that.

And I corrected myself.  I went back and I corrected the errors that were identified.  And I ceased using that platform after it was brought to my attention in the *Youngblood* -- the *Jakes v. Youngblood* case out of Western Pennsylvania.

That's when I went back and checked, and I realized that there were -- that this thing was causing problems.  And it has caused me problems.  And I did not do -- I relied too much and believed too much in the system that I have been using, as I said before, for 15 years.

So I take full responsibility for the error that I made.  I should have been more careful and I should have gotten training, better training on, A, understanding what AI was, because I didn't know what it was at the time; and, B, understanding how it worked and how it was going to impact my work and the product that I produce to the courts.  And that's on the research side and that's on the, you know, every aspect of what it's doing right now.

So I take full responsibility.  I am not asking for -- I am not coming to make any excuses.  I should have been more careful with the platform.

THE COURT:  Okay.  So, Mr. Blackburn, the briefs in

this case were filed --

MR. BLACKBURN:  In February, I believe.

THE COURT:  Well, your brief was.  The reply I think came in shortly thereafter.  And then, for a variety of reasons, scheduling and otherwise, we did not have oral argument on this case when originally scheduled.  And then that oral argument got rescheduled for the middle of this past month.

MR. BLACKBURN:  Yes.

THE COURT:  Is that correct?

MR. BLACKBURN:  Yes.

THE COURT:  The difficulties that you experienced and were brought to your attention in the matter in the Western District of Pennsylvania, I will accept your recitation that those problems occurred somewhat around the same time.

MR. BLACKBURN:  It was.  I filed the initial -- so in that case I filed two motions.  The initial motion was filed I believe early January, late December.  And the Court came back with an opinion.  And then I re-filed again, I think, sometime in March.

THE COURT:  Okay.  So the answer to my question is yes.

MR. BLACKBURN:  Yes, yes, uh-huh.

THE COURT:  That -- the Court there then issued an opinion.

Proceedings                                           11

MR. BLACKBURN:  Yes.

THE COURT:  And an order in June.

MR. BLACKBURN:  Yes.

THE COURT:  Basically saying to you --

MR. BLACKBURN:  The order came in in October, but the order to show cause came in June.

THE COURT:  Okay.  But you knew at that point in time that there was a problem, correct?

MR. BLACKBURN:  Yes.

THE COURT:  Okay.

MR. BLACKBURN:  And at that point in time, that's when I ceased using --

THE COURT:  Okay.  By the time I scheduled the oral argument -- or between the time the original oral argument was postponed and when we had the oral argument, a number of months passed, correct?

MR. BLACKBURN:  Yes, uh-huh.

THE COURT:  It was during that interim period that you knew that there was a potential problem in the methodology that you were using, correct?

MR. BLACKBURN:  Yes, 100 percent.

THE COURT:  So I will ask this question, Mr. Blackburn.  Did you go back and re-read and review all the briefs in this case before your oral argument on the 17th of November?

MR. BLACKBURN:  So I re-read my brief in this case.

And as I explained earlier, after I learned of what happened in the *Jakes v. Youngblood* case, I did -- I went through all the cases.  I tried to go back with a log, a history of research, from LexisNexis.  And I went through and I tried to identify every case that I had used that to brief on.

And I went through all the cases, and I made corrections.  I made corrections with Judge Semper, and I made connections with other judges, cases which documents are filed and the courts accepted my candor and the corrections.

THE COURT:  Okay.

MR. BLACKBURN:  And I looked at this brief as well, and I read all 80 pages, and I did not identify this problem. I don't know how I missed it, but I did, unfortunately.

And I did go back and I did review it again.  And so I just don't -- I don't understand how the Masha case thing -- I don't know how I missed it when I came and I reviewed it again.

THE COURT:  All right.  So, Mr. Blackburn, the Court fully appreciates that this is a human endeavor and humans are not perfect, and that's why there are those little pink rubber things on the top of a wooden stick that you keep on top of your desk or in your desk draw that helps you when you make a mistake to, shall we say, erase and/or correct the mistake,

right?

MR. BLACKBURN:  Yeah.  I mean, that's why I took all those -- I took --

THE COURT:  Right, but you didn't --

MR. BLACKBURN:  -- the CLEs.  And then I took --

THE COURT:  We will get you there, Mr. Blackburn.

I appreciate the fact that, as a result of what happened in the Western District of Pennsylvania, your sensitivities were heightened, and you went ahead and entered into what I will call some "self-corrected behavior," right, by taking CLEs.

You corrected in other cases.  One had to believe that if you had the problem across a series of cases, that anything that you filed in that time period was going to potentially be suspect.

MR. BLACKBURN:  Of course, 100 percent.  And I agree with you.  And I looked.

And, like I said before, I went through the 80 pages. I even ran it through -- there is like a case check or a case -- a brief check program that my friend told me about. And it didn't -- the only flag that it showed was the flag -- they flagged some of the citations from the court's opinion that I put into the body of it from another district judge here.  I forgot her name now.

THE COURT:  So I will accept at face value that you

did all those things.  Right?

One of the things that one should learn from any CLE program or, candidly, from any self-reading that you do about the use of AI is that you absolutely need to take your obligation to verify seriously.

I am not suggesting that you were cavalier, right?  But, obviously, it is one thing to re-read your brief.  It is another thing to fulfill your obligation to verify that the statutes, regulations, case citations are accurate.

MR. BLACKBURN:  Yes.

THE COURT:  Particularly since your Mann Act claim is central to plaintiff's position in this litigation.  And you didn't do that, Mr. Blackburn.  And, you know, the Court's got a problem with that.

Now, with respect to what took place at sidebar, my pattern, Mr. Blackburn, I hope you know this from our previous interactions, is that when I say something or when I am expressing a request to counsel, I always ask about when, or I make an emphatically clear "when."  And the last thing I do is go around and double-check by making sure that counsel understands.  Right?

I cannot explain why you walked away with a different impression as to the deadline than everybody else.  But you did.  And I accept the fact that some people are auditory learners; some people are visual learners; some people think

Proceedings                                                                      15

they got it, but they didn't.

I am left scratching my head.  And, candidly, what I don't fathom is -- I will accept for the sake of argument that maybe you misunderstood.  I will even accept for the sake of argument that maybe I misspoke.  Right?

But you did get an inquiry from defendants' counsel the day after the supposed deadline.  And you didn't respond.

And, Mr. Blackburn, if this was a one-off, I could understand it.  We are all busy.  Life gets in the way, right?  Particularly in your circumstances recently.  I got it.

But here's my problem:  This is a repetitive pattern on your part.  You do not respond when inquiries are made.  You miss deadlines.  And we end up in a situation that I know I have referred to previously as "crickets."  And I know that I have said this to counsel on both sides several times:  Silence is not your friend.

If you don't understand something, if you think there is a problem with what I said about a date, you should -- all right, I can't make you do it.  All right.  One would think you would have contacted the Court or even, for that matter, the other side just to get clarity.  And you didn't.

I will accept that maybe you didn't do it or couldn't have done it or shouldn't, you know, on Tuesday or Wednesday.  But Tuesday or Wednesday became Thursday, Friday, Saturday, Sunday, Monday, Tuesday, right?  I just don't get it,

Mr. Blackburn.

I don't know how you run your office.  I don't know how many people you have working with you.  I don't know whether you have too many things to do.  And at the end of the day, it's not my responsibility.  It's your responsibility.

And if you had to go out of the country, which I take as a truthful representation, you had to take five or ten minutes to make a plane reservation.  You couldn't have taken five minutes to send an e-mail to the Court and say, I have an emergency problem; I need more time; I can't comply?  Right?

I just cannot understand your behavior, particularly in light of the fact that this is not the first instance with this Court.  I have no idea what your track record is with other courts.  I only know about it by virtue of an order or a written opinion that I have seen from another judge.  Right?

Western District of Pennsylvania is not the first one, right?  There is Southern District of New York admonitions.  There's the court in Delaware --

MR. BLACKBURN:  What Delaware?

THE COURT:  You have a pattern of behavior, Mr. Blackburn, that I just do not understand.

I will let you comment, but as I said to you before, choose your words carefully.  Do not dig yourself a deeper hole.

MR. BLACKBURN:  So I think -- I think that the -- you

know, I appreciate Your Honor's warning, and I am not going to push back on why I did not respond.  I should have probably -- I should have said something, but --

THE COURT:  So, Mr. Blackburn, I will say this to you:  I accept in hindsight that you realize an error was made, all right?  I will say something to you that I hope you really think about:  The most common thing about common sense is most people don't have it.

MR. BLACKBURN:  Can I take a break, please?

THE COURT:  Sure.

(A break is taken from 10:30 a.m. to 10:37 a.m.)

THE COURT:  Welcome back, Mr. Blackburn.

MR. BLACKBURN:  Thank you.

THE COURT:  I hope whatever was ailing you, you were able to manage.

We are back on the record.

All right, so, Mr. Blackburn, the challenge for the Court, very simply, is what am I going to do with you, right?  How are we going to go forward in a way that the Court can have confidence in what you understand, what you don't understand, that you are going to meet deadlines or, if you can't meet the deadline, contact the Court in a reasonable period of time?

What are you going to do to enhance your credibility, all right?  And I am not commenting that your credibility is

*United States District Court*
*District of New Jersey*

poor at this juncture, but your behavior, your conduct here has been subject to potholes.

And at the end of the day, you know what happens when you bounce through too many potholes, you break an axle, you blow a tire.  And that's just not a good thing.  Right?

And the most important thing for the Court is your client deserves good representation.  And if you are having trouble fulfilling that obligation, the Court has got a concern.  All right.  I don't know what your client knows or what your client doesn't know.  I don't know what information you have transmitted to her or not transmitted to her, right?

My concern is, very candidly, you are doing things that are not necessarily -- could be construed as not in her best interest, and I don't know that she knows it.

MR. BLACKBURN:  Okay, so --

THE COURT:  And I am going to accept that you are doing what you are supposed to do, but I have no guarantee that in fact you are.

So again, my question is, what am I supposed to do with you, Mr. Blackburn?

MR. BLACKBURN:  So I spoke with my client.  I spoke with several of my clients, actually, in multiple cases.  So I am going to -- I am assisting her in finding someone else to come and assist here.  And I am doing the same for all my other cases, because I don't -- this past quarter has been

rough.

THE COURT:  Take ten, Mr. Blackburn.  Breathe in through your nose, out through your mouth, close your eyes, try to reduce the stress.

MR. BLACKBURN:  I have already written letters to the judges in this Court, which I am going to be delivering today when I leave for the other cases that I have.

THE COURT:  Okay.

MR. BLACKBURN:  And I contacted -- I contacted the resource center for lawyers of New Jersey, so they are supposed to --

THE COURT:  Take a second, Mr. Blackburn.  Gather yourself.  Deep breaths.  In through your nose, out through your mouth.

MR. BLACKBURN:  They are supposed to call me today, so I should have it.  So I am going to -- I am going to have -- I am already speaking to -- I reached out to a couple of counsels that I think would be helpful to her, so -- for this case and the other case that I have.  I still have other cases to go through as well, and I already have cocounsel in the field on my other cases that has the lead of those other cases, so --

So for the time being, I need to just take a step back.

THE COURT:  Okay.  My following comment is directed

at both counsel, okay.

And please do not take, Mr. Blackburn, what I am saying as a matter of piling on.  All right.

MR. BLACKBURN:  It's fine.

THE COURT:  I have made it very, very clear, all right, that Judge Gordon does not litigate by e-mail or by letter, right?

I issued an order in February of this year, ten months ago, that basically said all further requests for relief from the Court that require an order shall be made by motion in conformity with the FRCP and the local rules of this district.  Right?

You may not request relief or argument via letter or e-mail except for a request for a telephone conference or a videoconference for scheduling purposes.  Right?

And that in filing your request for relief, the moving party shall state whether it consulted with all other parties and obtained the consent of these parties for the relief sought.

I am more than willing to forgive an occasional "oops," right?  But I cannot allow you to ignore this very explicit order of the Court.

I do not practice litigation by letter or e-mail.

Do you understand that, Mr. Blackburn?

MR. BLACKBURN:  Yes.

THE COURT:  Do you understand that, defense counsel?

MS. LINSKY:  Yes, Your Honor.

MS. WOLFF:  Yes, Your Honor.

THE COURT:  Okay.

Now, in that vein, Mr. Blackburn, you submitted your multipage response to the order to show cause.  You then filed on CM/ECF a one-page motion/order, right, requesting things.  And you asked that -- the information contained in the letter sent to the Court via e-mail contained some sensitive information.

I read through the document.  Outside of the reference to the fact that there were a number of deaths surrounding you for which you did not disclose anybody's name, you did not disclose any other personal identifiers nor their relationship to you, I am trying to understand, and as a courtesy, as you well know, I issued an order that ordered that document and the defendants' joint document docketed and put under seal until I had an opportunity to talk to you-all.

Please, Mr. Blackburn, help me understand why I should continue to maintain the document that you filed under seal.  What is in there that has such personal information that the identity or personal identifiers or other personal indicia should not appear on the public docket?

MR. BLACKBURN:  I mean, you are right, there is nothing in there that's personal.

THE COURT: Okay.

MR. BLACKBURN: By way of identifiers or anything like that. I just -- I -- I followed -- I just responded -- I --

THE COURT: Mr. Blackburn, do yourself a favor. You just acknowledged that there is nothing in there. So do you object to the fact that I unseal the document?

MR. BLACKBURN: I would just for the purpose of -- I just know I am going to be inundated with a lot of messages and stuff about -- from -- just from people. They've -- you know, if you were to see -- if I were to show you, I should say, my inbox with a lot of the hate-filled stuff that I get, so I would just ask that this would be -- but if you have to, it's fine.

THE COURT: Mr. Blackburn, help me. How do I -- assuming for the sake of argument that I am willing to redact some of what was in your document --

MR. BLACKBURN: Yeah.

THE COURT: -- the question is, how do we do that?

MR. BLACKBURN: I would ask to redact the fifth section that deals with -- I think it's the fifth section. I don't have it in front of me.

THE COURT: Tell me what you believe that section pertains to.

MR. BLACKBURN: It's what the --

THE COURT:  Personal circumstances?

MR. BLACKBURN:  Yes.  Everything else is fine.  I don't care about anything else.

THE COURT:  All right, Mr. Blackburn, I am going to hear from the defendants on this when I give them an opportunity to address the Court.  I potentially see a way to do a redaction, but I want to make sure I hear from both sides before I choose to do so.

So again, back to a question that I asked a few moments ago, Mr. Blackburn, I appreciate some of the additional information that you've given me.  You've obviously recognized that you need some additional assistance in order to benefit your clients.  It's just a basic question.

What do I do here, Mr. Blackburn?  What do I do with you?  How do I help you understand what you need to address and fix?

And what consequence should I assign to the fact that you, one, utilized AI without the appropriate review; and, two, that you ignored, right, the Court's instruction and didn't do anything to follow up or find out whether your understanding was accurate or not?

What do I do with you, Mr. Blackburn?

MR. BLACKBURN:  I accept whatever Your Honor wants to do.  You know, I am not going to make any excuses.  I made an error when it came to the filing, which I have taken

precautions. And I have, you know, been very careful, even more careful, of implementing new policies that I have to follow.

I have a new system where I triple -- double -- triple-check everything is -- it's more expensive now because I have to print everything.

But --

THE COURT: Mr. Blackburn, I have looked at the case law and the range of sanctions for an AI-hallucinated citation tends to run between $1,000 and $6,000.

Now defendants, in their response, have not asked for costs and attorney's fees. I don't know whether they are going to do that this morning, but I also do know from reading the Pennsylvania -- the Western District of Pennsylvania opinion that there are certain things that I am supposed to take into consideration including the size of your firm, its ability to pay, et cetera. And there is an indicia in that opinion that you are a solo practitioner and that your practice is not one of means.

Now, I am not going to ask you to produce an asset and liability statement, but I am going to ask you to give me some commentary on your individual firm's circumstances.

MR. BLACKBURN: So, the majority of my cases are pro bono. I do a lot of pro bono work for individuals who just do not have the ability to pay.

I don't take financial retainers.  I pay for the filing fees and everything.  If my clients do not get anything back, I don't accept anything.

And the majority of the cases I don't accept anything at all, because my clients are really indigent when they come to me, or they just don't have it.

So, you know, they need whatever -- essentially, they need whatever they get back more than I do.

I do take a couple of -- I do have a couple of employment cases, which is fee shifting, so I'm paid that way.  So that's not an issue for me.

So that's how I am still able to maintain, but the majority of the work I do is pro bono work.  So, you know...

THE COURT:  The Court commends you for taking on that responsibility on behalf of those types of people.

Okay.  All right, the Court is going to stop at this moment with plaintiff and turn to defendants' counsel.

Ms. Wolff, Ms. Linsky, who am I going to hear from first?

MS. WOLFF:  If it's all right with Your Honor, I will start.

THE COURT:  All right.

MS. WOLFF:  May I approach the podium?

THE COURT:  Yes, ma'am.

MS. WOLFF:  Good morning, Your Honor.

Erica Wolff on behalf of Defendant Sean Combs.

I will start, if it's okay with the Court, with the sealing issue, because I think that's the least complicated.

THE COURT:  Right.

MS. WOLFF:  And on behalf of Defendant Combs, we do not object to the redaction of -- I believe it's Section 5 of the letter, which details certain personal circumstances of Mr. Blackburn.  So if the Court were inclined to redact that section, we won't object.  We would object to the full sealing for the reasons that Your Honor acknowledged.

With respect to sanctions, I find Mr. Blackburn's conduct in this case, as well as other cases in which we have been adverse to him, deeply troubling.

I will note in this particular circumstance that we find ourselves in today, the concern is not just the blind reliance on the technology that the bar well knows now is flawed.  It's not just the reliance on that.  We have unfortunately seen many instances of attorneys blindly relying on this technology, and it's unfortunate.

But what's worse here is not just the reliance; it's the repeated misrepresentations about the reliance and the circumstances around which the technology was used.

So there was this sidebar that was off the record at oral argument which Your Honor described earlier in which you asked Mr. Blackburn about the case.  And there isn't a

Proceedings                                    27

transcript of that sidebar.

My clear recollection from that is he represented at that time that it was a real case and it was a citation error. There was a real case but the wrong citation. He was going to find the real case, and he was going to explain what had happened.

Obviously, that didn't happen. We contacted him by e-mail after the deadline to respond had passed. We did not get a response.

And then in the letter that was eventually submitted in response to the order to show cause, again, we have continued misrepresentations. There is, in my view, an implausible explanation as to how this all occurred. And more troubling, there is a sense in this letter that it is a ministerial problem.

There are a number of times where he refers to it as, I think, you know, erroneous citation, or there is implication that this is a matter of transposing the wrong numbers in the reporter, as opposed to an acknowledgement that the law as he described it did not exist. And the letter continues to misstate that.

So he falsely claims in the letter that he has 40 controlling federal cases to support plaintiff's Mann Act claim including civil remedies. And that is just not true. And I am not going to relitigate the motion to dismiss. It's

in our papers and we discussed during oral argument, but I found that representation particularly troubling.  It's not accurate.

And even here today, Mr. Blackburn said after learning of the risk inherent to the LexisNexis AI platform that he was using, he says he went back; he read, I think he said, his brief; he didn't find this.

We filed a reply brief that identified in that brief a number of things, including the fact that this Masha case, that we were unable to locate the case.  So he was on notice from that brief that there was a specific problem in his opposition with respect to that case at a minimum, and apparently still did nothing to verify it.

And then came into court at oral argument and, to the best of my recollection, said that he believed that case existed and supported the argument for which he cited it.

So my concern is that plaintiff's counsel doesn't really appreciate the severity of his conduct and continues to make misrepresentations even when confronted with the issues that have been raised.

THE COURT:  So, Ms. Wolff, let me ask you, I will ask you the same exact question I asked Mr. Blackburn:  What am I supposed to do with him?  Put yourself in my shoes, okay, what am I supposed to do with him?

MS. WOLFF:  So I think all of this really underscores

deep insufficiencies in the submissions he has made to date. I think it underscores our arguments for why the motion to dismiss should be granted.

THE COURT:  That's nice, Ms. Wolff.  I am trying to figure out should I levy a sanction?  If I levy a sanction, what should that sanction be?

So I am asking you, put yourself in my shoes, what should the sanction be with respect to Mr. Blackburn?

MS. WOLFF:  Sure, sure, Your Honor.  I think sanctions are appropriate here, as we said in our joint submission with our co-defendants.  I trust Your Honor's discretion in imposing appropriate sanctions --

THE COURT:  Flattery will get you everywhere, Ms. Wolff.  Tell me what I am supposed to do with specifics.

MS. WOLFF:  I think it would be appropriate in this instance to require Mr. Blackburn to pay my client's attorney's fees in -- at least at the minimum in replying to the opposition which was based on fabricated law.

I think a referral to the appropriate grievance committee would be appropriate, particularly in light of what Your Honor has recognized as the fact that this is not an isolated instance, that there have been many instances of misrepresentations.

THE COURT:  Do you have any authority to support that the issuance of a Rule 11 sanction is a disciplinary matter

that either requires self-reporting or referral to the New York State Bar or the Court of Appeals for the State of New York?

MS. WOLFF:  Well, we do have -- there is a case --

THE COURT:  Because there is a difference between professional misconduct, which is sanctionable by the New York State Court of Appeals and the state bar, and the things typically covered under Rule 11 in the course of litigation.

MS. WOLFF:  I think both -- both are implicated here.

THE COURT:  Okay.

MS. WOLFF:  And so I think sanctions under Rule 11 for the reasons that we've discussed and that are discussed in our letter are appropriate as well as referral to a grievance committee.

THE COURT:  Okay.

MS. WOLFF:  As is done in the *Zunzurovski* case that we cite in our letter.

THE COURT:  Anything else, Ms. Wolff?

MS. WOLFF:  The only other thing I would note is Your Honor inquired as to Mr. Blackburn's ability to pay.  And in response, he discussed that the majority of his work was pro bono work.

And at one point in explaining that, he said, If a client doesn't get anything, then I don't take anything, or something to that effect.  I don't know the precise words.

But if he is taking on clients on a contingency basis, as I suspect he is, that is different from pro bono work. And I would just ask the Court to consider that in its evaluation.

THE COURT: Thank you, Ms. Wolff.

MS. WOLFF: Thank you.

THE COURT: Ms. Linsky.

MS. LINSKY: May I approach the podium, Your Honor?

THE COURT: Yes.

MS. LINSKY: Thank you.

Lisa Linsky for Defendant UMG.

Your Honor, let me start with your pressing question, which is "What do I do with Mr. Blackburn?" And I would like to answer that question directly.

With respect to the monetary sanctions, I believe that, based on Your Honor's research and the range of monetary sanctions that have been imposed for these types of AI violations and citation errors, I say impose the maximum sentence. You gave a range of $1,000 to $6,000. If that's where Your Honor is landing, then impose the $6,000.

Second sanction, a referral to an appropriate grievance committee is very much warranted in this case, which I would like to explain in just a moment.

I understand that Mr. Blackburn is barred in both New York and New Jersey, referrals to both of those attorney

grievance committees, in our view, would be appropriate.

There is a case to your question that you asked Ms. Wolff, the case that we cited in our response letter is *OTG New York*.  It's a District Court of New Jersey case from September 18, 2025, where the Court required the sanctioned attorney to self-report to the relevant state bar disciplinary authorities in addition to issuing a monetary sanction.

And then, finally, Your Honor, with respect to attorney's fees, yes, UMG would very much appreciate the Court imposing a requirement that Mr. Blackburn reimburse UMG for its attorney's fees and costs in connection with the reply brief and in connection with the instant fire drill that we all had to deal with right before the Thanksgiving holiday and immediately upon returning to our offices after the holiday.

THE COURT:  Ms. Linsky?

MS. LINSKY:  Yes, sir.

THE COURT:  Not a question that I asked Ms. Wolff, but I will give her an opportunity after I ask you.

MS. LINSKY:  Sure.

THE COURT:  It's not as if a request for attorney's fees is unknown.  It's not as if it's a great secret, right?  You knew that I was concerned about Rule 11 sanctions, and yet you filed your response, and I got crickets about attorney's fees.

So the question is, did you just wake up this morning

as a result of something I may have said and decided that attorney's fees are appropriate?

MS. LINSKY:  No, Your Honor, it wasn't that at all. I don't think we actually laid out all of our requests for sanctions.  We were simply responding to Mr. Blackburn --

THE COURT:  Then what am I supposed to do, Ms. Linsky?  I can't go ad infinitum.  I issued the order to show cause.  I set the show cause hearing for this morning.  I want to try to wrap this up in a nice, neat, little bun.  I haven't done the research based upon what your request could have been, right?

And so now you are making more work for me.  I am going to have to extend the time.  You want me to award attorney's fees.  On what basis?  I don't know what your costs were associated with filing your reply.  That means I have to give you time to file that.  That means I then have to give Mr. Blackburn an appropriate amount of time in which to respond to that.

And then, more likely than not, I have to have a hearing on the appropriateness of the fee request.

So the question is, why are you making more work for me?  If you had any remote thought about this, why wasn't it in your papers to begin with?

MS. LINSKY:  Your Honor, first of all, I apologize to the Court.  That was certainly not our intention to make more

work for the Court.

As I said, we did not include all of the sanctions that we would be requesting, knowing that we would have an opportunity to address Your Honor, but we would be more than happy to provide you with a motion --

THE COURT:  You can't play "hide the ball," Ms. Linsky.

MS. LINSKY:  That is not the case, Your Honor.  And I'm sorry, but I respectfully disagree with your characterization.  There has been nothing about my conduct in this case from day one that has been anything but professional and ethical.  So, Your Honor, respectfully, that was not a nice thing to say.

Now, whether or not you will give us time to submit to the Court information about attorney's fees and supporting case law, that is Your Honor's call.  I would ask you to do so because, Your Honor, for the very reasons that you stated repeatedly with Mr. Blackburn.

This is not an isolated incident.  There is a pattern of professional misconduct here.  We talked about it in our letter.  There are other courts who have identified this pattern of professional misconduct.

The papers, the opposition papers, are replete with cases that are real cases except they don't stand for the propositions that Mr. Blackburn claims they do.  That is a

Proceedings                                                              35

problem.  He is an officer of this court.  He has an

obligation to represent accurately the law and the factual

circumstances behind this case.

He has a professional obligation, Your Honor, to

investigate and verify.  And he has a duty of candor to this

Court.  He has violated those professional obligations.

THE COURT:  So, Ms. Linsky, the Court apologizes, the

Court was not casting dispersions on your ethical or

professional conduct, all right.

Number two, please take a deep breath.  Your blood

pressure is clearly going a lot higher than it probably

should.  I appreciate your passion.

Let's continue.

MS. LINSKY:  Okay.  So just a few additional points I

want to make to Your Honor.  To give you a little bit more

color here on what is -- in our view, what has actually

occurred.

Mr. Blackburn talks in his letter about the Masha

case and that he read the actual case, and he admits that the

actual Masha case has nothing to do with the Mann Act.  It's a

case involving passport fraud and identity theft.

How he can say with a straight face to this Court

that he really reviewed these cases in his opposition brief

for substantive legal arguments rather than methodically

verifying citations?  It just can't be true, Judge.  He relies

on the *Hardwicke* case out of New Jersey in connection with various points in his brief. There is not one proposition that he cites that is referenced in the *Hardwicke* case.

*Doe v. Princeton.* I mean, I could give you countless examples.

So when you say this is a pattern of conduct by Mr. Blackburn, that is true both within this very case, the Gardner case, and in multiple other cases. He has been reprimanded by other judges who say on the record, Mr. Blackburn, you have misrepresented legal authority to this Court. Your interpretations are not correct.

This was not an isolated incident, Your Honor, and as a result, I would urge you to take that into consideration when figuring out what to do with Mr. Blackburn in this case.

THE COURT: Okay. Anything more, Ms. Linsky?

MS. LINSKY: If I may just have a moment to check my notes.

THE COURT: Surely.

MS. LINSKY: Thank you very much.

I want to just read you, Your Honor, part of the judge's decision from this *Zunzurovski* case, which we did cite in our letter. And this was a case involving a misrepresentation, failure to investigate subject matter jurisdiction in the case. It was a diversity jurisdiction issue.

And if you recall, Your Honor, we had a very similar issue in this case.  And the defendants ran around preparing to respond to Mr. Blackburn's remand motion, remand to state court, that never actually came, because he never served Mr. Hall and he dismissed Mr. Devante Swing, who he brought in to try to bust up diversity jurisdiction.

Let me just read this to Your Honor, because I think it really does sum up.

THE COURT:  When you say "Devante Swing," you mean Mr. Degrate?

MS. LINSKY:  I'm sorry, Your Honor?  Devante Swing I believe his name is.

THE COURT:  I thought it was Degrate, D-E-G-R-A-T-E.

MS. LINSKY:  I don't recall exactly.

THE COURT:  Regardless.

MS. LINSKY:  You know who I am talking about.

THE COURT:  I know what you mean.

MS. LINSKY:  He was the defendant who was not in the original case, Mr. Blackburn brought him in to try to defeat diversity jurisdiction, and then he dismissed him and never made the remand motion.

THE COURT:  Okay.

MS. LINSKY:  The *Zunzurovski* court noted, and I quote, There is a reasonable inference from Blackburn's pattern of behavior that he improperly files cases in federal

courts to garner media attention, embarrass defendants, and pressure defendants to settle quickly.  Significantly, resources have been spent by judges to address glaring deficiencies in Blackburn's filings warranting a referral to the grievance committee.

I submit to Your Honor it's exactly what happened in this case.  This was no ministerial error.  This was not a mix-up in technology.  He has -- Mr. Blackburn has an obligation to the Court to certify to the best of his knowledge the information and belief formed after an inquiry reasonable under the circumstances that anything he presents to this Court and any other court is not being presented for an improper purpose and that any such claims that he asserts in his complaint and in his opposition and other legal contentions are warranted under existing law and that they have factual contentions with evidentiary support.  That is the point of Rule 11(b), and that is where Mr. Blackburn fails significantly.

Thank you, Your Honor.

THE COURT:  You are very welcome.

Mr. Blackburn, should we take a break to give you an opportunity to gather yourself or go on?

MR. BLACKBURN:  I'm ready to go.

MS. WOLFF:  Your Honor.

THE COURT:  Yes, Ms. Wolff?

MS. WOLFF:  You had referenced earlier there was a question that you posed to Ms. Linsky that you didn't pose to me, and I would like an opportunity to address that at the appropriate point.

THE COURT:  You may.

MS. WOLFF:  Thank you, Your Honor.

The question that was posed to Ms. Linsky that had not been addressed to me was with respect to the particular request for attorney's fees.

THE COURT:  Right.

MS. WOLFF:  And the remedies that were sought in our opposition letter.  I just want to give a little context for the submission.

So on November 25th, Your Honor issued an order to show cause directed to plaintiff to show cause why the Court should not strike portions of the brief that refer to U.S. v. Masha, and, two, why the Court should not issue sanctions pursuant to Rule 11.

This order did not afford the defendants an opportunity to respond.  It didn't seek our position as to sanctions at all, let alone what those sanctions should be.

Then Mr. Blackburn put in a submission, and we received -- I think the ECF notification I have in front of me, it came on Monday at 2:50 p.m.

THE COURT:  Correct.

MS. WOLFF:  Which at that point gave us an opportunity to respond, to file a response letter by the following day at 2:00 p.m.

THE COURT:  Right.

MS. WOLFF:  Less than 24 hours later.  And also that response -- the order did not ask that we provide a list of remedies.

Nevertheless, in less than 24 hours, and in an effort to minimize the burden on the Court, we worked with our co-defendants to prepare a joint statement, rather than burden the Court with multiple responses.  We put together a letter. And in that letter, we argued that we believe sanctions were appropriate and we gave authority for the range of sanctions that are given in cases.

And including among those was a case, *BioPlanet International,* from the Southern District of Florida that ordered counsel to pay attorney fees.

So I wanted to provide that context.

THE COURT:  Thank you very much.

MS. LINSKY:  And, Your Honor, regarding the sealing issue, if I may.

THE COURT:  You may.

MS. LINSKY:  UMG likewise has no objection, should the Court choose to redact Section 5, the personal circumstances section of Mr. Blackburn's letter.  But

otherwise, we do feel that the letter should be filed on the public docket.

Thank you.

THE COURT.  Okay, hold on one second.

(Discussion held off the record.)

THE COURT:  Okay, with the permission of defendants' counsel, the Court would like to have an off-the-record conversation with plaintiff's counsel in the conference room behind the courtroom for a few minutes.

MS. WOLFF:  On behalf of the Defendant Combs, we consent.

MS. LINSKY:  UMG consents, Your Honor.

THE COURT:  Mr. Blackburn, we are recessed for a few minutes.

(A break is taken from 11:19 a.m. to 11:43 a.m.)

THE COURT:  All right, folks, we are back on the record.  Please be seated.

All right, I am going to deal with the redaction issue first.  I am going to make a suggestion.  I am going to give you a suggested way of addressing the redaction.  I would hope, unless either side has -- that they need to bolt out of the courtroom five minutes after we are done, that you would take an opportunity to speak with each other.  I can adjourn or I can recess.

And then after, assuming that you come to an

agreement, I am going to let it sit until Monday at 2 o'clock. You will advise the Court by Monday at 2 o'clock through Ms. DiAndrea via e-mail as to whether you are still in accord with the redaction.

So let me suggest to you what the redaction will look like.

I am not going to redact the entirety of Section 5. My suggestion is that you leave the first line of text up to the colon in the document.

I will wait until everybody gets to the page.

MS. LINSKY:  I'm sorry, Your Honor, can you repeat that, please?

THE COURT:  Section 5, the first line of text up through the colon at the end of the line will stay in the document.

Everything from the word "between" all the way down to the end of the third paragraph that ends with a particular date in 2025 will be redacted -- or can be redacted.

And that the last paragraph stay public.

Again, I will repeat myself.  The partial redaction of Section 5 will -- my suggested approach is that you leave the first line through the colon public, that the redaction begin with the second line through the second paragraph and through the third paragraph that ends with a date certain in 2025, and that the last paragraph that begins with the word

"these" remains public.

I will give you an opportunity after I'm done to chat about it.  If you come to an agreement, we will leave that as a holding pattern until you confirm by Monday at 12 noon via an e-mail to Ms. DiAndrea.

If we are in agreement, the Court will then figure out how to black it out, right, and then we will put the redacted version on the docket, and the unredacted version will remain under seal.  And I will unseal the defendants' joint response.

Are there any questions?  Do we understand what the Court is suggesting?

Mr. Blackburn?

MR. BLACKBURN:  Yes, I have no issues with what the Court just suggested.

THE COURT:  Ms. Linsky?

MS. LINSKY:  No further questions.  I understand, Your Honor.

THE COURT:  Ms. Wolff?

MS. WOLFF:  I understand, Your Honor.

THE COURT:  Very well.

MS. WOLFF:  We are fine with the suggestions that Your Honor made.  Do you want to resolve that now or --

THE COURT:  No, I want you to actually communicate with each other here, and then I will be happy to come back on

the record.

MS. WOLFF:  Of course.

THE COURT:  The Court has given the circumstances here very careful consideration.  And the Court does have a sense as to what direction it intends to go.  All right.  Make no mistake.  The Court is going to issue sanctions.

The extent and nature of them, the Court is going to continue to contemplate.  And in all likelihood, it is going to be multifaceted.

And, Mr. Blackburn, whether or not there is a monetary sanction, there will be other requirements including notifying the plaintiff in this case and serving on her certain documents that the Court believes your client should specifically be aware of regarding the underlying conduct that is an issue at this hearing.

MR. BLACKBURN:  Okay.

THE COURT:  The degree to which I am going to issue a monetary sanction and impose other requirements, I am going to think about that a little bit more.

But suffice it to say, there will be multiple sanctions that will issue.

MR. BLACKBURN:  Okay.

THE COURT:  All right.  In terms of attorney's fees, the Court is not inclined on that issue at this juncture.  If the Court, in reflection, thinks that it may head down that

path, the Court will notify counsel with a deadline as to when a motion and a brief should be filed and a response time.

Regardless, okay, within a reasonable period of time, that meaning before the end of this month, I will notify the parties as to whether the Court is or is not going to entertain a motion for attorney's fees.

The Court is going to close with this: Mr. Blackburn, based upon our conversation here on the record, the Court is quite aware of some of the difficulties that you are facing. The Court has a concern for you as a human being. The Court has a concern for you as a member of the profession. The Court has a concern for you in terms of your relationship with your clients. And the Court has a concern about your clients. And the Court has a concern about your relationship with defendants' counsels.

Be that as it may, you have obligations that you took an oath that you swore to uphold, right, and some of your conduct leads one to have questions.

Only you, at the end of the day, can look inward and do a 180 and figure out what you need to do to not find yourself in a similar circumstance, whether in this case or before another court, as the days tick off the calendar, right.

You have to decide what kind of professional you want to be. You have to decide what kind of human being you want

to be.  You have to decide what kind of lawyer you want to be for your clients.

I can't cocounsel you on this.  It is not my role, it is not my place.  But I urge you to look inward and figure these things out or you are going to find yourself in these circumstances or, candidly, more difficult circumstances going forward.  All right.

You went to law school for a reason.  You wanted to become a certain type of professional.  I urge you to seriously think about those motivations and what you wanted to become and find a path forward to enable you to fulfill those expectations of yourself.

And no matter where you come out on that, you have to fulfill the expectations of others -- opposing counsel, right, and the Court and your clients -- based upon your professional oath, your diligence, your responsibility, and your role as an officer of the Court.

Without that, Mr. Blackburn, you are going to have some serious questions to answer.  The Court can only wish you good luck in finding your way in answering those questions. They may not be easy, they may be painful when you look inward, but at the end of the day, the only person who can do that is you.

If you need assistance in trying to figure all that out, whether it's hiring or associating yourself with other

legal staff, you need to figure that out for yourself. I can't cocounsel you there.

If you need other type of professional help, it exists within the bar; it exists in outside private resources. Again, I can't answer whether you should avail yourself of those things. Only you can decide.

If you want to be a better human being, I encourage you. If you want to be a better lawyer, I encourage you to think seriously about these questions.

Anything further, Mr. Blackburn at this juncture?

MR. BLACKBURN: No. I appreciate the Court and its time.

THE COURT: Ms. Wolff?

MS. WOLFF: Nothing further, Your Honor.

THE COURT: Ms. Linsky?

MS. LINSKY: No, thank you, Judge.

THE COURT: The Court is going to stand in recess for a bit while counsel talk about the redaction issue. When you are ready, let Ms. DiAndrea know and I will come back out on the bench. Thank you.

(A break is taken from 11:55 a.m. to 12:00 p.m.)

THE COURT: Okay, please be seated. We are back on the record.

So, counsel, have you discussed the possible redaction and come to an agreement?

MS. WOLFF:  We have, Judge.

THE COURT:  Okay.

MS. LINSKY:  Yes, Your Honor.

MR. BLACKBURN:  Yes.

THE COURT:  And is it as the Court initially described, or are there some changes?

MS. WOLFF:  I am happy to speak.

MR. BLACKBURN:  I can.

THE COURT:  Go ahead, Mr. Blackburn.

MR. BLACKBURN:  It is as the Court described.  And then where it says, Requesting for adjournment of December 3rd.

THE COURT:  Right.

MR. BLACKBURN:  Show cause, the second paragraph, everything is redacted except for, I will be departing the United States the week of December 10th.

MS. WOLFF:  December 10, 2025.

MR. BLACKBURN:  2025, yes.  That's the only sentence that is going to go public.  Everything else will be redacted in that paragraph, including the second page up to the word "do," "prepared to do."

THE COURT:  Let me see if I get this straight.

What are we doing with the sentence that begins "In the"?  Is that staying public?

MR. BLACKBURN:  Yes.  "In the alternative," yes.

THE COURT:  Does the next sentence -- I'm sorry.

So that whole, one, two, three -- ostensibly three and an eighth lines stay?

MR. BLACKBURN:  Yes, Your Honor.

THE COURT:  The next paragraph, As detailed.

MR. BLACKBURN:  That's on.  The only thing that stays from that paragraph is "I will be departing the United States the week of December 10th."

THE COURT:  Okay.

MS. LINSKY:  2025.

MR. BLACKBURN:  2025.

THE COURT:  So all the other words but for those one, two, three, four, five, six, seven, eight, nine, ten and the date will be redacted.

MR. BLACKBURN:  Yes.

MS. WOLFF:  In that paragraph.

THE COURT:  Yes, in that paragraph.

MR. BLACKBURN:  And that's it.

THE COURT:  When we turn to the next page, we have language that begins "I will," which is the last paragraph. Is that in or out?

MR. BLACKBURN:  That's in.  Everything else is in from there on.

THE COURT:  Okay.

MS. WOLFF:  Agreed.

MS. LINSKY:  Agreed.

THE COURT:  I am going to give you until Monday at 12 noon to quietly reflect on whether you continue to agree.  All you need to do is send Ms. DiAndrea a note before 12 noon, an e-mail before 12 noon with a copy to other counsel saying you either do have changes or you don't have changes.

Do you understand, Mr. Blackburn?

MR. BLACKBURN:  Yes.

THE COURT:  Ms. Wolff, do you understand?

MS. WOLFF:  Yes.  But we are prepared to agree.

MR. BLACKBURN:  Agree right now.

THE COURT:  You are?

MS. WOLFF:  Yes.

THE COURT:  Fine, let the record reflect that the parties have agreed.  The Court will redact that material appropriately, and the Court will then post a redacted public version of the letter leaving the full-text letter under seal, and we will unseal defendants' joint response.

Is that correct?

MR. BLACKBURN:  Correct.

MS. LINSKY:  Yes, Your Honor.

MS. WOLFF:  Yes, Your Honor.

THE COURT:  Okay.

Mr. Blackburn?

MR. BLACKBURN:  Yes, Your Honor.

Since we are here, I want to touch on the issue of service of the remaining defendant, Mr. Hall.

THE COURT:  Yes.

MR. BLACKBURN:  I remember, I know I was supposed to provide you with an update, I believe, on the 5th, but I think it's really the 8th.

THE COURT:  Yes.

MR. BLACKBURN:  I will share it with you now.

So, is it okay if we go off the record just because I don't --

THE COURT:  Why don't you approach?  It will be easier.

(Sidebar conference held on the record in the presence of the Court and counsel.)

THE COURT:  Ms. DiAndrea, we are going to have a status conference again on the unserved defendant on January the 6th at 10:30 in the morning, at which point Mr. Blackburn will advise the Court as to whether service has been or will/is about to be effectuated or, if it is not, what he intends to do with moving forward and in all likelihood dismissing Mr. Hall from the case.

Okay, we are all good?

MS. LINSKY:  Thank you, Judge.

THE COURT:  Mr. Blackburn, anything further this afternoon?

MR. BLACKBURN: Just the last sentence of what you just shared, I just respectfully request that you don't put that on the docket, because again --

THE COURT: It's not on the docket.

MR. BLACKBURN: Okay, perfect.

THE COURT: It's just here for my record, et cetera.

MR. BLACKBURN: Thank you.

THE COURT: I am not issuing you an order giving you a deadline. We have taken care of it verbally off the record. You know what the deal is.

MR. BLACKBURN: Okay.

THE COURT: Ms. Wolff?

MS. WOLFF: I want to clarify for the record that the status hearing is over Teams as discussed.

THE COURT: That is correct. It's a videoconference.

Ms. Linsky.

MS. LINSKY: Nothing further, Your Honor. Thank you.

THE COURT: Mr. Jacobs.

MR. JACOBS: Nothing, Your Honor.

THE COURT: Ms. Greer?

MS. GREER GRIFFITH: Nothing further. Thank you, Your Honor.

THE COURT: All right, we are done. Thank you very much. I hope you-all have a good holiday season.

Mr. Blackburn, I hope you have a decent time dealing

Proceedings                                                          53

with your personal circumstances.

Thank you for your time and professionalism this morning.

We are adjourned.

MS. LINSKY:  Thank you, Judge.

(The proceeding is adjourned at 12:11 p.m.)


FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE


- - - - - - - - - - - - - - - - - -


I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


/S/ Joanne Sekella, CCR, CRCR, RDR          December 5, 2025

Official Court Reporter                                    Date


*United States District Court*
*District of New Jersey*

**$**

**$1,000** [2] - 24:11, 31:20
**$6,000** [3] - 24:11, 31:20, 31:21

**/**

**/S** [1] - 53:16

**0**

**07102** [1] - 1:16

**1**

**1** [1] - 1:6
**1-10** [2] - 1:9, 1:11
**10** [1] - 48:18
**100** [2] - 11:22, 13:17
**10004** [1] - 2:8
**10017** [1] - 2:13
**10:02** [2] - 1:17, 3:4
**10:30** [2] - 17:12, 51:18
**10:37** [1] - 17:12
**10th** [2] - 48:17, 49:9
**11** [6] - 3:18, 30:1, 30:9, 30:12, 32:23, 39:19
**11(b** [1] - 38:18
**11236** [1] - 2:3
**11:19** [1] - 41:16
**11:43** [1] - 41:16
**11:55** [1] - 47:22
**12** [4] - 43:5, 50:3, 50:5, 50:6
**1242** [1] - 2:3
**12:00** [1] - 47:22
**12:11** [1] - 53:7
**15** [1] - 9:14
**17th** [1] - 11:25
**18** [1] - 32:6
**180** [1] - 45:21
**18th** [1] - 6:3

**2**

**2** [2] - 42:2, 42:3
**2019** [1] - 8:9
**202-2600** [1] - 2:9
**2025** [9] - 1:17, 32:6, 42:19, 43:1, 48:18, 48:19, 49:11, 49:12, 53:16
**212** [2] - 2:9, 2:13
**23rd** [1] - 2:8
**24** [3] - 4:16, 40:6,

40:9
**24-cv-007729** [1] - 3:14
**25th** [1] - 39:15
**2:00** [1] - 40:4
**2:24-cv-07729-LMG-JRA** [1] - 1:4
**2:50** [1] - 39:25

**3**

**3** [1] - 1:17
**310-1177** [1] - 1:23
**342-7432** [1] - 2:4
**347** [1] - 2:4
**3rd** [2] - 2:3, 48:13

**4**

**40** [1] - 27:23

**5**

**5** [6] - 26:7, 40:25, 42:8, 42:14, 42:22, 53:16
**53** [1] - 1:6
**547-5578** [1] - 2:13
**5th** [1] - 51:6

**6**

**6th** [1] - 51:18

**8**

**80** [2] - 12:15, 13:19
**80th** [1] - 2:3
**8th** [1] - 51:7

**9**

**90** [1] - 2:8
**908** [1] - 1:23

**A**

**a.m** [6] - 1:17, 17:12, 41:16, 47:22
**a.m.)** [1] - 3:4
**AARON** [1] - 1:6
**ABC** [1] - 1:11
**ability** [3] - 24:18, 25:1, 30:21
**able** [2] - 17:16, 25:13
**above-entitled** [1] - 53:14
**absolutely** [1] - 14:5
**accept** [11] - 10:15, 14:1, 14:25, 15:4, 15:5, 15:23, 17:6, 18:17, 23:24, 25:4,

25:5
**accepted** [1] - 12:12
**accord** [1] - 42:4
**accuracy** [2] - 7:1, 7:4
**accurate** [7] - 5:24, 6:11, 6:16, 6:19, 14:10, 23:22, 28:4
**accurately** [1] - 35:3
**acknowledged** [3] - 4:9, 22:7, 26:11
**acknowledgement** [2] - 4:19, 27:20
**Act** [4] - 3:23, 14:12, 27:24, 35:21
**action** [1] - 3:13
**ACTION** [1] - 1:3
**actual** [3] - 7:5, 35:20, 35:21
**ad** [1] - 33:8
**addition** [1] - 32:8
**additional** [3] - 23:12, 23:13, 35:15
**address** [6] - 7:12, 23:7, 23:16, 34:5, 38:4, 39:4
**addressed** [1] - 39:9
**addressing** [1] - 41:21
**adjourn** [1] - 41:24
**adjourned** [2] - 53:5, 53:7
**adjournment** [2] - 5:21, 48:12
**admits** [1] - 35:20
**admonitions** [1] - 16:19
**adverse** [1] - 26:14
**advise** [3] - 4:16, 42:3, 51:19
**afford** [1] - 39:20
**afternoon** [1] - 52:1
**ago** [2] - 20:10, 23:11
**agree** [4] - 13:17, 50:4, 50:11, 50:12
**agreed** [3] - 50:1, 50:2, 50:16
**agreement** [4] - 42:2, 43:4, 43:7, 48:1
**ahead** [2] - 13:10, 48:10
**AI** [7] - 4:7, 9:17, 14:5, 23:19, 24:10, 28:6, 31:18
**AI-hallucinated** [1] - 24:10
**aided** [1] - 1:24

**ailing** [1] - 17:15
**aka** [1] - 1:7
**al** [1] - 3:13
**allow** [1] - 20:22
**alone** [1] - 39:22
**alternative** [1] - 49:1
**amount** [1] - 33:18
**answer** [5] - 6:3, 10:22, 31:15, 46:20, 47:6
**answering** [1] - 46:21
**apologize** [2] - 8:20, 33:25
**apologizes** [1] - 35:8
**Appeals** [2] - 30:3, 30:8
**appear** [1] - 21:24
**appreciate** [8] - 6:9, 13:8, 17:2, 23:11, 28:19, 32:10, 35:13, 47:12
**appreciates** [1] - 12:22
**approach** [4] - 25:24, 31:9, 42:22, 51:12
**appropriate** [13] - 23:19, 29:11, 29:13, 29:16, 29:20, 29:21, 30:14, 31:22, 32:2, 33:3, 33:18, 39:5, 40:14
**appropriately** [1] - 50:17
**appropriateness** [1] - 33:21
**argued** [1] - 40:13
**argument** [14] - 10:7, 10:8, 11:15, 11:16, 11:25, 15:4, 15:6, 20:14, 22:17, 26:25, 28:2, 28:15, 28:17
**arguments** [2] - 29:3, 35:25
**artificial** [3] - 3:25, 4:10, 4:20
**aside** [1] - 7:24
**aspect** [1] - 9:21
**asserts** [1] - 38:14
**asset** [1] - 24:21
**assign** [1] - 23:18
**assist** [1] - 18:25
**assistance** [2] - 23:13, 46:25
**assisting** [1] - 18:24
**assistive** [1] - 4:12

**associated** [1] - 33:16
**associating** [1] - 47:1
**assuming** [2] - 22:17, 42:1
**attempted** [1] - 5:8
**attempting** [1] - 4:5
**attention** [3] - 9:7, 10:14, 38:2
**attorney** [3] - 32:1, 32:7, 40:18
**attorney's** [12] - 24:13, 29:18, 32:10, 32:12, 32:21, 32:24, 33:3, 33:15, 34:16, 39:10, 44:24, 45:7
**attorneys** [1] - 26:19
**auditory** [1] - 14:25
**authorities** [1] - 32:8
**authority** [3] - 29:25, 36:11, 40:14
**avail** [2] - 5:9, 47:6
**Avenue** [1] - 2:12
**award** [1] - 33:14
**aware** [3] - 8:14, 44:15, 45:10
**axle** [1] - 18:5

**B**

**ball** [1] - 34:7
**bar** [4] - 26:17, 30:8, 32:7, 47:5
**Bar** [1] - 30:3
**barred** [1] - 31:25
**based** [7] - 4:12, 7:19, 29:19, 31:17, 33:11, 45:9, 46:16
**basic** [1] - 23:14
**basis** [2] - 31:3, 33:15
**became** [1] - 15:25
**become** [2] - 46:10, 46:12
**begin** [2] - 33:24, 42:24
**begins** [3] - 43:1, 48:24, 49:21
**behalf** [4] - 25:16, 26:2, 26:6, 41:11
**behavior** [6] - 3:19, 13:11, 16:12, 16:21, 18:2, 38:1
**behind** [2] - 35:4, 41:10
**belief** [1] - 38:11

*United States District Court*
*District of New Jersey*

**believes** [1] - 44:14
**bench** [1] - 47:21
**benefit** [1] - 23:14
**best** [5] - 6:16, 6:18, 18:15, 28:16, 38:10
**better** [3] - 9:17, 47:8, 47:9
**between** [4] - 11:15, 24:11, 30:6, 42:17
**BioPlanet** [1] - 40:16
**bit** [5] - 6:10, 7:14, 35:16, 44:20, 47:19
**black** [1] - 43:8
**BLACKBURN** [74] - 2:2, 2:2, 5:25, 6:14, 7:15, 7:24, 8:8, 8:13, 8:16, 10:3, 10:10, 10:12, 10:17, 10:24, 11:2, 11:4, 11:6, 11:10, 11:12, 11:18, 11:22, 12:2, 12:14, 13:3, 13:6, 13:17, 14:11, 16:20, 17:1, 17:10, 17:14, 18:16, 18:22, 19:6, 19:10, 19:16, 20:5, 21:1, 21:25, 22:3, 22:9, 22:19, 22:21, 23:1, 23:3, 23:24, 24:24, 38:24, 43:15, 44:17, 44:23, 47:12, 48:5, 48:9, 48:11, 48:15, 48:19, 49:1, 49:5, 49:7, 49:12, 49:16, 49:19, 49:23, 50:9, 50:12, 50:21, 51:1, 51:5, 51:9, 52:2, 52:6, 52:8, 52:12
**Blackburn** [69] - 5:23, 6:9, 6:20, 7:3, 7:10, 7:16, 7:18, 8:6, 8:11, 10:1, 11:24, 12:21, 13:7, 14:14, 14:17, 15:9, 16:2, 16:22, 17:5, 17:13, 17:18, 18:21, 19:3, 19:13, 20:3, 20:25, 21:6, 21:20, 22:6, 22:16, 23:5, 23:11, 23:15, 23:23, 24:9, 26:9, 27:1, 28:5, 28:23, 29:9, 29:17, 31:14, 31:25, 32:11, 33:6, 33:18, 34:19, 35:1,

35:19, 36:8, 36:11, 36:15, 37:20, 38:9, 38:18, 38:22, 39:23, 41:14, 43:14, 44:11, 45:9, 46:19, 47:11, 48:10, 50:8, 50:25, 51:18, 51:25, 53:1
**Blackburn's** [6] - 26:12, 30:21, 37:4, 37:25, 38:5, 41:1
**blind** [1] - 26:16
**blindly** [1] - 26:19
**blood** [1] - 35:11
**blow** [1] - 18:6
**body** [1] - 13:24
**bolt** [1] - 41:22
**bono** [5] - 24:25, 25:14, 30:23, 31:3
**bounce** [1] - 18:5
**break** [6] - 17:10, 17:12, 18:5, 38:22, 41:16, 47:22
**breath** [1] - 35:11
**breathe** [1] - 19:3
**breaths** [1] - 19:14
**brief** [18] - 3:21, 4:12, 4:25, 10:4, 12:2, 12:7, 12:14, 13:21, 14:8, 28:8, 28:9, 28:12, 32:13, 35:24, 36:3, 39:17, 45:3
**briefs** [3] - 9:1, 10:1, 11:25
**brings** [1] - 5:22
**Broad** [1] - 2:8
**Brooklyn** [1] - 2:3
**brought** [4] - 9:7, 10:14, 37:6, 37:20
**bun** [1] - 33:10
**burden** [2] - 40:10, 40:11
**business** [2] - 4:25, 6:21
**bust** [1] - 37:7
**busy** [1] - 15:10
**BY** [3] - 2:2, 2:6, 2:12

### C

**calendar** [1] - 45:23
**candidly** [4] - 14:4, 15:3, 18:13, 46:7
**candor** [2] - 12:12, 35:6
**cannot** [3] - 14:23, 16:12, 20:22
**care** [2] - 23:4,

52:10
**careful** [7] - 8:6, 8:12, 9:16, 9:25, 24:2, 24:3, 44:5
**carefully** [1] - 16:24
**case** [57] - 3:23, 3:25, 4:18, 8:3, 9:8, 10:2, 10:7, 10:18, 11:25, 12:2, 12:4, 12:7, 12:18, 13:20, 13:21, 14:10, 19:20, 24:9, 26:13, 27:1, 27:4, 27:5, 27:6, 28:10, 28:11, 28:13, 28:16, 30:5, 30:17, 31:23, 32:3, 32:4, 32:5, 34:9, 34:12, 34:17, 35:4, 35:20, 35:21, 35:22, 36:2, 36:4, 36:8, 36:9, 36:15, 36:22, 36:23, 36:25, 37:3, 37:20, 38:8, 40:16, 44:13, 45:22, 51:22
**cases** [24] - 8:8, 9:2, 12:5, 12:9, 12:11, 13:13, 13:14, 18:23, 19:1, 19:8, 19:21, 19:22, 19:23, 24:24, 25:5, 25:11, 26:13, 27:24, 34:25, 35:24, 36:9, 38:1, 40:15
**casting** [1] - 35:9
**CAUSE** [1] - 1:5
**caused** [1] - 9:12
**causing** [1] - 9:11
**cavalier** [1] - 14:7
**CCR** [2] - 1:21, 53:16
**ceased** [2] - 9:6, 11:13
**center** [1] - 19:11
**central** [1] - 14:13
**certain** [5] - 24:16, 26:8, 42:25, 44:14, 46:10
**certainly** [1] - 34:1
**CERTIFICATE** [1] - 53:9
**certify** [2] - 38:10, 53:13
**cetera** [2] - 24:18, 52:7
**challenge** [1] - 17:18
**changed** [1] - 8:25

**changes** [3] - 48:7, 50:7
**chapter** [1] - 7:11
**chapter-and-verse** [1] - 7:11
**characterization** [1] - 34:11
**chat** [1] - 43:3
**check** [5] - 13:20, 13:21, 14:21, 24:6, 36:17
**checked** [1] - 9:10
**choose** [3] - 16:24, 23:9, 40:25
**chose** [1] - 6:6
**circumstance** [2] - 26:15, 45:22
**circumstances** [12] - 15:11, 23:2, 24:23, 26:8, 26:23, 35:4, 38:12, 41:1, 44:4, 46:7, 53:2
**citation** [11] - 3:23, 4:6, 4:18, 7:4, 7:5, 8:3, 24:10, 27:4, 27:5, 27:18, 31:19
**citations** [3] - 13:23, 14:10, 36:1
**cite** [2] - 30:18, 36:22
**cited** [2] - 28:17, 32:4
**cites** [1] - 36:4
**CIVIL** [1] - 1:3
**civil** [2] - 3:13, 27:25
**claim** [3] - 3:22, 14:12, 27:25
**claims** [3] - 27:23, 35:1, 38:14
**clarify** [2] - 8:20, 52:14
**clarity** [1] - 15:22
**CLE** [1] - 14:3
**clear** [5] - 4:24, 6:19, 14:20, 20:6, 27:3
**clearly** [1] - 35:12
**clerk** [1] - 4:17
**CLEs** [2] - 13:6, 13:12
**client** [6] - 18:8, 18:10, 18:11, 18:22, 30:25, 44:14
**client's** [1] - 29:17
**clients** [9] - 18:23, 23:14, 25:3, 25:6, 31:2, 45:14, 45:15, 46:3, 46:16
**close** [5] - 4:25,

6:21, 7:21, 19:4, 45:8
**CM/ECF** [1] - 21:8
**co** [2] - 29:12, 40:11
**co-defendants** [2] - 29:12, 40:11
**cocounsel** [4] - 7:7, 19:21, 46:4, 47:3
**colon** [3] - 42:10, 42:15, 42:23
**color** [1] - 35:17
**COMBS** [1] - 1:6
**Combs** [6] - 2:10, 3:13, 6:15, 26:2, 26:6, 41:11
**coming** [1] - 9:24
**Commencing** [1] - 1:17
**commends** [1] - 25:15
**comment** [2] - 16:23, 20:1
**commentary** [1] - 24:23
**commenting** [1] - 18:1
**committee** [4] - 29:21, 30:15, 31:23, 38:6
**committees** [1] - 32:2
**common** [2] - 17:8
**communicate** [1] - 43:25
**company** [1] - 6:22
**complaint** [1] - 38:15
**complicated** [1] - 26:4
**comply** [1] - 16:11
**computer** [1] - 1:24
**computer-aided** [1] - 1:24
**concern** [9] - 18:10, 18:13, 26:16, 28:18, 45:11, 45:12, 45:13, 45:14, 45:15
**concerned** [1] - 32:23
**concur** [1] - 7:1
**conduct** [8] - 18:2, 26:13, 28:19, 34:11, 35:10, 36:7, 44:15, 45:19
**conference** [5] - 4:6, 20:15, 41:9, 51:14, 51:17
**confidence** [1] - 17:21

**confirm** [1] - 43:5
**conformity** [1] - 20:12
**confronted** [1] - 28:20
**connected** [1] - 4:10
**connection** [3] - 32:12, 32:13, 36:2
**connections** [1] - 12:11
**connote** [2] - 1:9, 1:12
**consent** [2] - 20:19, 41:12
**consents** [1] - 41:13
**consequence** [1] - 23:18
**consider** [1] - 31:4
**consideration** [3] - 24:17, 36:14, 44:5
**construed** [1] - 18:14
**consulted** [1] - 20:18
**contact** [1] - 17:23
**contacted** [4] - 15:21, 19:10, 27:8
**contained** [2] - 21:9, 21:10
**contemplate** [1] - 44:9
**contentions** [2] - 38:16, 38:17
**context** [2] - 39:13, 40:19
**contingency** [1] - 31:2
**continue** [4] - 21:21, 35:14, 44:9, 50:4
**continued** [1] - 27:13
**continues** [2] - 27:21, 28:19
**controlling** [1] - 27:24
**conversation** [2] - 41:9, 45:9
**copy** [1] - 50:6
**CORPORATIONS** [1] - 1:11
**correct** [14] - 4:17, 4:18, 4:23, 10:11, 11:9, 11:17, 11:21, 13:1, 36:12, 40:1, 50:20, 50:21, 52:16, 53:13
**corrected** [4] - 9:5, 13:11, 13:13
**corrections** [3] - 12:10, 12:12

**costs** [3] - 24:13, 32:12, 33:15
**counsel** [33] - 3:18, 3:22, 4:5, 4:7, 4:9, 4:14, 5:3, 5:7, 5:9, 5:15, 5:20, 5:23, 6:15, 6:22, 7:4, 7:20, 14:19, 14:21, 15:7, 15:16, 20:2, 21:2, 25:18, 28:18, 40:18, 41:8, 41:9, 45:2, 46:15, 47:19, 47:25, 50:6, 51:15
**counsels** [3] - 4:22, 19:19, 45:16
**countless** [1] - 36:5
**country** [1] - 16:7
**couple** [3] - 19:18, 25:10
**course** [4] - 4:3, 13:17, 30:9, 44:3
**court** [9] - 3:2, 7:22, 16:19, 28:15, 35:2, 37:5, 37:24, 38:13, 45:23
**Court** [88] - 1:22, 3:3, 4:3, 4:16, 4:21, 4:24, 5:7, 5:10, 5:21, 6:6, 7:2, 7:12, 8:14, 9:2, 10:19, 10:25, 12:21, 15:21, 16:10, 16:14, 17:19, 17:20, 17:23, 18:7, 18:9, 19:7, 20:11, 20:23, 21:10, 23:7, 25:15, 25:17, 26:3, 26:9, 30:3, 30:8, 31:4, 32:5, 32:6, 32:10, 34:1, 34:2, 34:16, 35:7, 35:8, 35:9, 35:23, 36:12, 38:10, 38:13, 39:16, 39:18, 40:10, 40:12, 40:25, 41:8, 42:3, 43:7, 43:13, 43:16, 44:4, 44:5, 44:7, 44:8, 44:14, 44:25, 45:1, 45:2, 45:6, 45:8, 45:10, 45:11, 45:12, 45:13, 45:14, 45:15, 46:16, 46:18, 46:20, 47:12, 47:18, 48:6, 48:11, 50:16, 50:17, 51:15, 51:19, 53:17

**COURT** [137] - 1:1, 1:19, 3:6, 3:10, 3:15, 3:17, 6:9, 6:15, 6:22, 7:8, 7:16, 8:6, 8:11, 8:14, 10:1, 10:4, 10:11, 10:13, 10:22, 10:25, 11:3, 11:5, 11:8, 11:11, 11:14, 11:19, 11:23, 12:13, 12:21, 13:5, 13:7, 14:1, 14:12, 16:21, 17:5, 17:11, 17:13, 17:15, 18:17, 19:3, 19:9, 19:13, 20:1, 20:6, 21:2, 21:5, 22:2, 22:6, 22:16, 22:20, 22:24, 23:2, 23:5, 24:9, 25:15, 25:23, 25:25, 26:5, 28:22, 29:5, 29:14, 29:25, 30:6, 30:11, 30:16, 30:19, 31:6, 31:8, 31:10, 32:16, 32:18, 32:21, 33:7, 34:7, 35:8, 36:16, 36:19, 37:10, 37:14, 37:16, 37:18, 37:23, 38:21, 39:1, 39:6, 39:11, 40:1, 40:5, 40:20, 40:23, 41:5, 41:7, 41:14, 41:17, 42:14, 43:17, 43:20, 43:22, 43:25, 44:4, 44:18, 44:24, 47:14, 47:16, 47:18, 47:23, 48:3, 48:6, 48:10, 48:14, 48:23, 49:2, 49:6, 49:10, 49:13, 49:18, 49:20, 49:25, 50:3, 50:10, 50:13, 50:15, 50:24, 51:4, 51:8, 51:12, 51:16, 51:25, 52:5, 52:7, 52:9, 52:13, 52:16, 52:19, 52:21, 52:24, 53:9
**Court's** [6] - 5:23, 6:11, 6:15, 6:18, 14:14, 23:20
**court's** [1] - 13:23
**courtesy** [1] - 21:17
**Courthouse** [1] - 1:15
**courtroom** [3] -

4:17, 41:10, 41:23
**COURTROOM** [2] - 3:5, 3:12
**courts** [6] - 8:2, 9:20, 12:12, 16:15, 34:22, 38:2
**covered** [1] - 30:9
**CRCR** [2] - 1:21, 53:16
**credibility** [2] - 17:25, 18:1
**crickets** [2] - 15:15, 32:24

**D**

**D-E-G-R-A-T-E** [1] - 37:14
**Date** [1] - 53:17
**date** [7] - 3:20, 5:13, 15:19, 29:2, 42:19, 42:25, 49:15
**days** [1] - 45:23
**deadline** [8] - 5:3, 6:12, 14:24, 15:8, 17:23, 27:9, 45:2, 52:10
**deadlines** [2] - 15:14, 17:22
**deal** [3] - 32:14, 41:19, 52:11
**dealing** [1] - 53:1
**deals** [2] - 3:21, 22:22
**deaths** [1] - 21:13
**December** [8] - 1:17, 9:1, 10:19, 48:12, 48:17, 48:18, 49:9, 53:16
**decent** [1] - 53:1
**decide** [4] - 45:25, 46:1, 46:2, 47:7
**decided** [1] - 33:2
**decides** [1] - 5:11
**decision** [1] - 36:22
**deep** [3] - 19:14, 29:2, 35:11
**deeper** [1] - 16:24
**deeply** [1] - 26:14
**defeat** [1] - 37:20
**Defendant** [6] - 2:10, 2:14, 26:2, 26:6, 31:12, 41:11
**defendant** [3] - 37:19, 51:3, 51:17
**defendants** [9] - 6:23, 23:6, 24:12, 29:12, 37:3, 38:2, 38:3, 39:20, 40:11
**Defendants** [1] -

1:14
**defendants'** [9] - 5:7, 5:19, 15:7, 21:18, 25:18, 41:7, 43:10, 45:16, 50:19
**defense** [4] - 4:5, 4:22, 7:4, 21:2
**deficiencies** [1] - 38:5
**defraud** [1] - 8:2
**DEGRATE** [1] - 1:7
**degrate** [1] - 37:11
**Degrate** [1] - 37:14
**degree** [1] - 44:18
**Delaware** [2] - 16:19, 16:20
**delivering** [1] - 19:7
**denied** [1] - 5:21
**departing** [2] - 48:16, 49:8
**DEPUTY** [2] - 3:5, 3:12
**deputy** [1] - 4:17
**described** [4] - 26:25, 27:21, 48:7, 48:11
**deserves** [1] - 18:8
**desk** [2] - 12:25
**detailed** [1] - 49:6
**details** [1] - 26:8
**determine** [1] - 4:7
**Devante** [3] - 37:6, 37:10, 37:12
**DEVANTE** [1] - 1:7
**DiAndrea** [5] - 42:4, 43:6, 47:20, 50:5, 51:16
**difference** [1] - 30:6
**different** [2] - 14:23, 31:3
**difficult** [1] - 46:7
**difficulties** [2] - 10:13, 45:10
**dig** [1] - 16:24
**diligence** [1] - 46:17
**directed** [2] - 20:1, 39:16
**directing** [1] - 6:20
**direction** [1] - 44:6
**directly** [1] - 31:15
**disagree** [1] - 34:10
**disciplinary** [2] - 30:1, 32:7
**disclose** [2] - 21:14, 21:15
**discretion** [1] - 29:13
**discussed** [7] - 7:7, 28:2, 30:13, 30:22,

47:25, 52:15
**Discussion** [2] - 3:11, 41:6
**dismiss** [3] - 4:4, 28:1, 29:4
**dismissed** [2] - 37:6, 37:21
**dismissing** [1] - 51:22
**dispersions** [1] - 35:9
**disposition** [1] - 4:23
**DISTRICT** [2] - 1:1, 1:1
**district** [2] - 13:24, 20:13
**District** [7] - 10:15, 13:9, 16:17, 16:18, 24:15, 32:5, 40:17
**diversity** [3] - 36:25, 37:7, 37:21
**docket** [6] - 6:5, 21:24, 41:3, 43:9, 52:4, 52:5
**docketed** [1] - 21:18
**document** [8] - 21:12, 21:18, 21:21, 22:8, 22:18, 42:10, 42:16
**documents** [2] - 12:11, 44:14
**Doe** [1] - 36:5
**DOES** [1] - 1:8
**DONALD** [1] - 1:7
**done** [7] - 9:1, 15:24, 30:17, 33:11, 41:23, 43:3, 52:24
**double** [2] - 14:21, 24:5
**double-check** [1] - 14:21
**down** [3] - 7:23, 42:17, 45:1
**draw** [1] - 12:25
**drill** [1] - 32:13
**during** [3] - 4:3, 11:19, 28:2
**duty** [1] - 35:6

### E

**e-mail** [10] - 4:16, 16:10, 20:7, 20:15, 20:24, 21:10, 27:9, 42:4, 43:6, 50:6
**EARLE** [1] - 1:7
**early** [1] - 10:19
**easier** [1] - 51:13

**East** [1] - 2:3
**easy** [1] - 46:22
**ECF** [1] - 39:24
**effect** [2] - 8:4, 31:1
**effectuated** [1] - 51:20
**effort** [1] - 40:9
**eight** [1] - 49:14
**eighth** [1] - 49:4
**either** [3] - 30:2, 41:22, 50:7
**embarrass** [2] - 4:15, 38:2
**emergency** [1] - 16:11
**emphatically** [1] - 14:20
**employment** [1] - 25:11
**enable** [1] - 46:12
**encourage** [2] - 47:8, 47:9
**end** [8] - 15:14, 16:5, 18:4, 42:15, 42:18, 45:5, 45:20, 46:23
**endeavor** [1] - 12:22
**ends** [2] - 42:18, 42:25
**enhance** [1] - 17:25
**entered** [1] - 13:10
**entertain** [1] - 45:7
**entirety** [1] - 42:8
**entities** [1] - 1:13
**entitled** [1] - 53:14
**enunciate** [1] - 7:22
**erase** [1] - 13:1
**ERICA** [1] - 2:7
**Erica** [1] - 26:2
**erroneous** [1] - 27:18
**error** [7] - 4:19, 8:3, 9:15, 17:6, 24:1, 27:4, 38:8
**errors** [4] - 9:4, 9:6, 31:19
**ESQUIRE** [5] - 2:2, 2:6, 2:7, 2:7, 2:12
**essentially** [1] - 25:8
**et** [3] - 3:13, 24:18, 52:7
**ethical** [2] - 34:13, 35:9
**evaluation** [1] - 31:5
**eventually** [1] - 27:11
**everywhere** [1] - 29:14
**evidentiary** [1] -

38:17
**exact** [2] - 9:3, 28:23
**exactly** [3] - 5:16, 37:15, 38:7
**examples** [1] - 36:6
**except** [4] - 6:1, 20:15, 34:25, 48:16
**excuses** [2] - 9:24, 23:25
**exhausted** [1] - 7:19
**exist** [1] - 27:21
**existed** [1] - 28:17
**existing** [1] - 38:16
**exists** [2] - 47:5
**expectations** [2] - 46:13, 46:15
**expensive** [1] - 24:6
**experienced** [1] - 10:13
**explain** [4] - 7:6, 14:23, 27:6, 31:24
**explained** [1] - 12:3
**explaining** [2] - 5:16, 30:24
**explanation** [2] - 5:12, 27:14
**explicit** [1] - 20:23
**expressing** [1] - 14:19
**extend** [1] - 33:14
**extent** [1] - 44:8
**eyes** [1] - 19:4

### F

**fabricated** [1] - 29:19
**face** [2] - 14:1, 35:23
**facing** [1] - 45:11
**fact** [10] - 8:1, 13:8, 14:25, 16:13, 18:19, 21:13, 22:8, 23:18, 28:10, 29:22
**factual** [2] - 35:3, 38:17
**fails** [1] - 38:18
**failure** [1] - 36:24
**falsely** [1] - 27:23
**fathom** [1] - 15:4
**favor** [1] - 22:6
**February** [2] - 10:3, 20:9
**FEDERAL** [1] - 53:9
**Federal** [1] - 1:16
**federal** [2] - 27:24, 38:1
**fee** [2] - 25:11, 33:21
**fees** [14] - 24:13,

25:3, 29:18, 32:10, 32:12, 32:22, 32:25, 33:3, 33:15, 34:16, 39:10, 40:18, 44:24, 45:7
**feet** [1] - 7:20
**few** [5] - 5:18, 23:10, 35:15, 41:10, 41:14
**fictitious** [2] - 1:9, 1:12
**field** [1] - 19:22
**fifth** [2] - 22:21, 22:22
**figure** [7] - 6:8, 29:6, 43:7, 45:21, 46:5, 46:25, 47:2
**figuring** [1] - 36:15
**file** [2] - 33:17, 40:3
**filed** [16] - 3:22, 5:15, 9:1, 10:2, 10:17, 10:18, 10:20, 12:11, 13:15, 21:7, 21:21, 28:9, 32:24, 41:2, 45:3
**files** [1] - 38:1
**filing** [4] - 20:17, 24:1, 25:3, 33:16
**filings** [1] - 38:5
**filled** [1] - 22:13
**finally** [1] - 32:9
**financial** [1] - 25:2
**fine** [5] - 20:5, 22:15, 23:3, 43:23, 50:15
**fire** [1] - 32:13
**firm** [1] - 24:17
**firm's** [1] - 24:23
**first** [8] - 16:13, 16:17, 25:20, 33:25, 41:20, 42:9, 42:14, 42:23
**five** [4] - 16:8, 16:10, 41:23, 49:14
**fix** [1] - 23:17
**flag** [2] - 13:22
**flagged** [1] - 13:23
**flattery** [1] - 29:14
**flawed** [1] - 26:18
**Floor** [2] - 2:3, 2:8
**Florida** [1] - 40:17
**folks** [1] - 41:17
**follow** [2] - 23:21, 24:4
**followed** [2] - 5:19, 22:4
**following** [5] - 5:1, 5:2, 5:10, 20:1, 40:4

**FOR** [1] - 1:1
**foregoing** [1] - 53:13
**forgive** [1] - 20:21
**forgot** [1] - 13:25
**formed** [1] - 38:11
**forward** [4] - 17:20, 46:8, 46:12, 51:21
**four** [1] - 49:14
**Frank** [1] - 1:15
**fraud** [1] - 35:22
**FRCP** [1] - 20:12
**Friday** [2] - 5:5, 15:25
**friend** [2] - 13:21, 15:17
**front** [2] - 22:23, 39:24
**fulfill** [3] - 14:9, 46:12, 46:15
**fulfilling** [1] - 18:9
**full** [4] - 9:15, 9:23, 26:10, 50:18
**full-text** [1] - 50:18
**fully** [1] - 12:22

### G

**Gardner** [2] - 3:13, 36:9
**GARDNER** [1] - 1:3
**garner** [1] - 38:2
**gather** [2] - 19:13, 38:23
**ggriffith@mwe.com** [1] - 2:14
**given** [3] - 23:12, 40:15, 44:4
**glaring** [1] - 38:4
**Gordon** [1] - 20:7
**GORDON** [2] - 1:18, 3:3
**granted** [1] - 29:4
**great** [1] - 32:22
**Greer** [1] - 52:21
**GREER** [1] - 52:22
**grievance** [5] - 29:20, 30:14, 31:23, 32:2, 38:6
**GRIFFITH** [1] - 52:22
**GROUP** [1] - 1:8
**Group** [1] - 2:15
**guarantee** [1] - 18:18

### H

**Hall** [3] - 37:6, 51:3, 51:22

**HALL** [1] - 1:6
**hallucinated** [2] - 3:25, 24:10
**happy** [5] - 7:10, 7:13, 34:6, 44:1, 48:8
**Hardwicke** [2] - 36:2, 36:4
**hate** [1] - 22:13
**hate-filled** [1] - 22:13
**head** [2] - 15:3, 45:1
**hear** [5] - 7:10, 7:14, 23:6, 23:8, 25:19
**HEARING** [1] - 1:5
**hearing** [10] - 4:3, 5:1, 5:2, 5:13, 5:21, 6:3, 33:9, 33:21, 44:16, 52:15
**heightened** [1] - 13:10
**held** [4] - 3:2, 3:11, 41:6, 51:14
**help** [4] - 21:20, 22:16, 23:16, 47:4
**helpful** [1] - 19:19
**helps** [1] - 12:25
**hide** [1] - 34:7
**higher** [1] - 35:12
**himself** [1] - 4:12
**hindsight** [1] - 17:6
**hiring** [1] - 47:1
**history** [2] - 8:18, 12:6
**hold** [1] - 41:5
**holding** [1] - 43:5
**hole** [1] - 16:25
**holiday** [3] - 32:14, 32:15, 52:25
**honest** [1] - 9:3
**Honor** [53] - 5:25, 6:2, 6:17, 6:20, 6:25, 7:3, 21:3, 21:4, 23:24, 25:21, 26:1, 26:11, 26:25, 29:10, 29:22, 30:21, 31:9, 31:13, 31:21, 32:9, 33:4, 33:25, 34:5, 34:9, 34:13, 34:18, 35:5, 35:16, 36:13, 36:21, 37:2, 37:8, 37:12, 38:7, 38:20, 38:25, 39:7, 39:15, 40:21, 41:13, 42:12, 43:19, 43:21, 43:24, 47:15, 48:4, 49:5, 50:22, 50:23, 51:1,

52:18, 52:20, 52:23
**Honor's** [4] - 17:2, 29:12, 31:17, 34:17
**HONORABLE** [1] - 1:18
**Honorable** [1] - 3:3
**hope** [6] - 14:17, 17:7, 17:15, 41:22, 52:25, 53:1
**hours** [3] - 4:16, 40:6, 40:9
**human** [4] - 12:22, 45:11, 46:1, 47:8
**humans** [1] - 12:22

## I

**idea** [1] - 16:14
**identified** [3] - 9:6, 28:9, 34:22
**identifiers** [3] - 21:15, 21:23, 22:3
**identify** [2] - 12:7, 12:15
**identity** [2] - 21:23, 35:22
**ignore** [1] - 20:22
**ignored** [1] - 23:20
**immediately** [1] - 32:15
**impact** [1] - 9:19
**implausible** [1] - 27:14
**implementing** [1] - 24:3
**implicated** [1] - 30:10
**implication** [1] - 27:18
**important** [1] - 18:7
**impose** [3] - 31:19, 31:21, 44:19
**imposed** [1] - 31:18
**imposing** [2] - 29:13, 32:11
**impression** [1] - 14:24
**improper** [1] - 38:14
**improperly** [1] - 38:1
**inbox** [1] - 22:13
**Inc** [1] - 2:14
**INC** [1] - 1:8
**incident** [2] - 34:20, 36:13
**inclined** [2] - 26:9, 44:25
**include** [1] - 34:3

**including** [7] - 9:2, 24:17, 27:25, 28:10, 40:16, 44:12, 48:21
**indicia** [2] - 21:24, 24:18
**indigent** [1] - 25:6
**individual** [1] - 24:23
**individuals** [1] - 24:25
**inference** [1] - 37:25
**infinitum** [1] - 33:8
**information** [7] - 18:11, 21:9, 21:11, 21:22, 23:12, 34:16, 38:11
**inherent** [1] - 28:6
**initial** [2] - 10:17, 10:18
**inquired** [1] - 30:21
**inquiries** [1] - 15:13
**inquiry** [2] - 15:7, 38:11
**instance** [3] - 16:13, 29:17, 29:23
**instances** [2] - 26:19, 29:23
**instant** [1] - 32:13
**instructing** [1] - 7:3
**instruction** [1] - 23:20
**insufficiencies** [1] - 29:2
**intelligence** [3] - 4:1, 4:10, 4:20
**intends** [2] - 44:6, 51:21
**intention** [1] - 34:1
**interactions** [1] - 14:18
**interest** [1] - 18:15
**interim** [1] - 11:19
**International** [2] - 3:4, 40:17
**INTERNATIONAL** [1] - 1:19
**interpretations** [1] - 36:12
**inundated** [1] - 22:10
**investigate** [2] - 35:6, 36:24
**involved** [1] - 4:7
**involving** [2] - 35:22, 36:23
**inward** [3] - 45:20, 46:5, 46:23
**isolated** [3] - 29:23, 34:20, 36:13

**issuance** [1] - 30:1
**issue** [17] - 6:12, 7:12, 7:13, 25:12, 26:4, 37:1, 37:3, 39:18, 40:22, 41:20, 44:7, 44:16, 44:18, 44:22, 44:25, 47:19, 51:2
**issued** [5] - 10:25, 20:9, 21:17, 33:8, 39:15
**issues** [6] - 5:11, 8:10, 8:21, 8:22, 28:20, 43:15
**issuing** [2] - 32:8, 52:9
**itself** [2] - 5:8, 8:25

## J

**JACOBS** [2] - 2:6, 52:20
**Jacobs** [1] - 52:19
**Jakes** [2] - 9:8, 12:4
**January** [2] - 10:19, 51:17
**Jersey** [5] - 1:16, 19:11, 32:1, 32:5, 36:2
**JERSEY** [1] - 1:1
**Joanne** [2] - 1:21, 53:16
**JOHN** [1] - 1:8
**joint** [5] - 21:18, 29:11, 40:11, 43:11, 50:19
**jointly** [1] - 5:20
**JR** [1] - 1:7
**judge** [2] - 13:24, 16:16
**Judge** [8] - 3:8, 12:10, 20:7, 36:1, 47:17, 48:2, 51:24, 53:6
**judge's** [1] - 36:22
**judges** [4] - 12:11, 19:7, 36:10, 38:4
**juncture** [3] - 18:2, 44:25, 47:11
**June** [2] - 11:3, 11:7
**jurisdiction** [4] - 36:25, 37:7, 37:21

## K

**KATIE** [1] - 2:7
**keep** [1] - 12:24
**kind** [4] - 7:16, 45:25, 46:1, 46:2
**know..** [1] - 25:14
**knowing** [1] - 34:4

**knowledge** [1] - 38:11
**knows** [3] - 18:10, 18:15, 26:17

## L

**laid** [1] - 33:5
**landing** [1] - 31:21
**language** [1] - 49:21
**last** [6] - 9:1, 14:20, 42:20, 43:1, 49:21, 52:2
**late** [1] - 10:19
**Lautenberg** [1] - 1:15
**law** [7] - 24:10, 27:20, 29:19, 34:17, 35:3, 38:16, 46:9
**LAW** [1] - 2:2
**lawyer** [2] - 46:2, 47:9
**lawyers** [1] - 19:11
**lead** [1] - 19:22
**leads** [1] - 45:19
**learn** [1] - 14:3
**learned** [2] - 4:4, 12:3
**learners** [2] - 15:1
**learning** [1] - 28:6
**least** [2] - 26:4, 29:18
**leave** [4] - 19:8, 42:9, 42:22, 43:4
**leaving** [1] - 50:18
**left** [1] - 15:3
**legal** [4] - 35:25, 36:11, 38:15, 47:2
**LEO** [2] - 1:18, 3:3
**less** [2] - 40:6, 40:9
**letter** [25] - 5:15, 7:25, 20:8, 20:14, 20:24, 21:9, 26:8, 27:11, 27:15, 27:21, 27:23, 30:14, 30:18, 32:4, 34:22, 35:19, 36:23, 39:13, 40:3, 40:12, 40:13, 41:1, 41:2, 50:18
**letters** [1] - 19:6
**levy** [2] - 29:6
**Lexis** [1] - 4:11
**LexisNexis** [4] - 8:4, 8:19, 12:6, 28:6
**liability** [1] - 24:22
**life** [1] - 15:10
**light** [2] - 16:13, 29:21

**likelihood** [2] - 44:9, 51:21
**likely** [1] - 33:20
**likewise** [1] - 40:24
**line** [5] - 42:9, 42:14, 42:15, 42:23, 42:24
**lines** [1] - 49:4
**LINSKY** [33] - 2:12, 3:8, 3:16, 6:24, 21:3, 31:9, 31:11, 32:17, 32:20, 33:4, 33:25, 34:9, 35:15, 36:17, 36:20, 37:12, 37:15, 37:17, 37:19, 37:24, 40:21, 40:24, 41:13, 42:12, 43:18, 47:17, 48:4, 49:11, 50:2, 50:22, 51:24, 52:18, 53:6
**Linsky** [14] - 6:24, 25:19, 31:8, 31:12, 32:16, 33:8, 34:8, 35:8, 36:16, 39:3, 39:8, 43:17, 47:16, 52:17
**LISA** [1] - 2:12
**Lisa** [2] - 6:24, 31:12
**list** [1] - 40:7
**litigate** [1] - 20:7
**litigation** [3] - 14:13, 20:24, 30:9
**Liza** [1] - 3:12
**LIZA** [1] - 1:3
**LLP** [1] - 2:11
**local** [1] - 20:12
**locate** [1] - 28:11
**log** [1] - 12:5
**look** [4] - 42:6, 45:20, 46:5, 46:22
**looked** [3] - 12:14, 13:18, 24:9
**looking** [1] - 4:21
**luck** [1] - 46:21

## M

**ma'am** [1] - 25:25
**mail** [10] - 4:16, 16:10, 20:7, 20:15, 20:24, 21:10, 27:9, 42:4, 43:6, 50:6
**maintain** [2] - 21:21, 25:13
**majority** [4] - 24:24, 25:5, 25:14, 30:22
**manage** [1] - 17:16
**manifested** [1] - 9:4

**Mann** [4] - 3:23, 14:12, 27:24, 35:21
**March** [1] - 10:21
**Masha** [7] - 3:24, 7:4, 12:18, 28:10, 35:19, 35:21, 39:18
**material** [1] - 50:16
**matter** [9] - 3:12, 10:14, 15:21, 20:4, 27:19, 30:1, 36:24, 46:14, 53:14
**maximum** [1] - 31:19
**MCDERMOTT** [1] - 2:11
**mean** [5] - 13:3, 21:25, 36:5, 37:10, 37:18
**meaning** [1] - 45:5
**means** [3] - 24:20, 33:16, 33:17
**mechanical** [1] - 1:24
**media** [1] - 38:2
**meet** [2] - 17:22, 17:23
**member** [1] - 45:12
**memorandum** [1] - 7:12
**merits** [1] - 5:17
**messages** [1] - 22:10
**methodically** [1] - 35:25
**methodology** [1] - 11:20
**microphone** [1] - 7:21
**middle** [1] - 10:8
**minimize** [1] - 40:10
**minimum** [2] - 28:13, 29:18
**ministerial** [2] - 27:16, 38:8
**minutes** [6] - 5:18, 16:9, 16:10, 41:10, 41:15, 41:23
**misconduct** [3] - 30:7, 34:21, 34:23
**misrepresentation** [1] - 36:24
**misrepresentations** [4] - 26:22, 27:13, 28:20, 29:24
**misrepresented** [1] - 36:11
**miss** [1] - 15:14
**missed** [2] - 12:16, 12:19
**misspoke** [1] - 15:6
**misstate** [1] - 27:22
**mistake** [3] - 13:1, 44:7
**misunderstood** [1] - 15:5
**mix** [1] - 38:9
**mix-up** [1] - 38:9
**moment** [3] - 25:18, 31:24, 36:17
**moments** [1] - 23:11
**Monday** [7] - 5:10, 16:1, 39:25, 42:2, 42:3, 43:5, 50:3
**monetary** [5] - 31:16, 31:17, 32:8, 44:12, 44:19
**month** [2] - 10:9, 45:5
**months** [2] - 11:17, 20:10
**morning** [15] - 3:7, 3:8, 3:9, 3:15, 3:16, 5:22, 5:25, 6:17, 6:25, 24:14, 26:1, 33:1, 33:9, 51:18, 53:4
**most** [3] - 17:8, 17:9, 18:7
**motion** [9] - 10:18, 20:12, 28:1, 29:3, 34:6, 37:4, 37:22, 45:3, 45:7
**motion/order** [1] - 21:8
**motions** [2] - 4:4, 10:18
**motivations** [1] - 46:11
**mouth** [2] - 19:4, 19:15
**moving** [2] - 20:18, 51:21
**MR** [73] - 5:25, 6:14, 7:15, 7:24, 8:8, 8:13, 8:16, 10:3, 10:10, 10:12, 10:17, 10:24, 11:2, 11:4, 11:6, 11:10, 11:12, 11:18, 11:22, 12:2, 12:14, 13:3, 13:6, 13:17, 14:11, 16:20, 17:1, 17:10, 17:14, 18:16, 18:22, 19:6, 19:10, 19:16, 20:5, 21:1, 21:25, 22:3, 22:9, 22:19, 22:21, 23:1, 23:3, 23:24,

24:24, 38:24, 43:15, 44:17, 44:23, 47:12, 48:5, 48:9, 48:11, 48:15, 48:19, 49:1, 49:5, 49:7, 49:12, 49:16, 49:19, 49:23, 50:9, 50:12, 50:21, 51:1, 51:5, 51:9, 52:2, 52:6, 52:8, 52:12, 52:20
**MS** [69] - 3:8, 3:9, 3:16, 6:17, 6:24, 21:3, 21:4, 25:21, 25:24, 26:1, 26:6, 29:1, 29:10, 29:16, 30:5, 30:10, 30:12, 30:17, 30:20, 31:7, 31:9, 31:11, 32:17, 32:20, 33:4, 33:25, 34:9, 35:15, 36:17, 36:20, 37:12, 37:15, 37:17, 37:19, 37:24, 38:25, 39:2, 39:7, 39:12, 40:2, 40:6, 40:21, 40:24, 41:11, 41:13, 42:12, 43:18, 43:21, 43:23, 44:3, 47:15, 47:17, 48:2, 48:4, 48:8, 48:18, 49:11, 49:17, 50:1, 50:2, 50:11, 50:14, 50:22, 50:23, 51:24, 52:14, 52:18, 52:22, 53:6
**multifaceted** [1] - 44:10
**multipage** [1] - 21:7
**multiple** [7] - 8:25, 9:1, 9:2, 18:23, 36:9, 40:12, 44:21
**MUSIC** [1] - 1:8
**Music** [1] - 2:15

## N

**N.V** [2] - 1:8, 2:15
**name** [3] - 13:25, 21:14, 37:13
**names** [2] - 1:9, 1:11
**nature** [1] - 44:8
**neat** [1] - 33:10
**necessarily** [1] - 18:14
**need** [14] - 7:11, 14:5, 16:11, 19:24, 23:13, 23:16, 25:8, 25:9, 41:22, 45:21,

46:25, 47:2, 47:4, 50:5
**never** [7] - 8:3, 8:10, 8:21, 8:22, 37:5, 37:21
**nevertheless** [1] - 40:9
**New** [16] - 1:16, 2:3, 2:8, 2:13, 16:18, 19:11, 30:2, 30:3, 30:7, 31:25, 32:1, 32:5, 36:2
**new** [2] - 24:3, 24:5
**NEW** [1] - 1:1
**Newark** [1] - 1:16
**next** [4] - 6:21, 49:2, 49:6, 49:20
**nice** [3] - 29:5, 33:10, 34:14
**nine** [1] - 49:14
**noon** [4] - 43:5, 50:4, 50:5, 50:6
**nose** [2] - 19:4, 19:14
**note** [4] - 7:6, 26:15, 30:20, 50:5
**noted** [1] - 37:24
**notes** [2] - 6:5, 36:18
**nothing** [9] - 22:1, 22:7, 28:14, 34:11, 35:21, 47:15, 52:18, 52:20, 52:22
**notice** [1] - 28:11
**notification** [1] - 39:24
**notified** [2] - 4:22, 5:7
**notify** [2] - 45:2, 45:5
**notifying** [1] - 44:13
**November** [2] - 12:1, 39:15
**number** [6] - 3:13, 11:16, 21:13, 27:17, 28:10, 35:11
**NUMBER** [1] - 1:3
**numbers** [1] - 27:19

## O

**o'clock** [2] - 42:2, 42:3
**oath** [2] - 45:18, 46:17
**object** [4] - 22:8, 26:7, 26:10
**objection** [1] - 40:24

**obligation** [6] - 14:6, 14:9, 18:9, 35:3, 35:5, 38:10
**obligations** [2] - 35:7, 45:17
**obtained** [1] - 20:19
**obviously** [3] - 14:8, 23:12, 27:8
**occasional** [1] - 20:21
**occurred** [3] - 10:16, 27:14, 35:18
**occurrence** [2] - 1:11, 1:13
**October** [1] - 11:6
**OF** [2] - 1:1, 1:19
**off-the-record** [1] - 41:8
**office** [2] - 4:16, 16:3
**Office** [1] - 1:15
**officer** [2] - 35:2, 46:18
**offices** [1] - 32:15
**Official** [2] - 1:22, 53:17
**OFFICIAL** [1] - 53:9
**one** [19] - 4:17, 7:5, 13:13, 14:3, 14:8, 15:9, 15:20, 16:18, 21:8, 23:19, 24:20, 30:24, 34:12, 36:3, 41:5, 45:19, 49:3, 49:13
**One** [1] - 2:12
**one-off** [1] - 15:9
**one-page** [1] - 21:8
**oops** [1] - 20:22
**open** [1] - 3:2
**opinion** [7] - 5:24, 10:20, 11:1, 13:23, 16:16, 24:16, 24:19
**opportunity** [10] - 21:19, 23:7, 32:19, 34:5, 38:23, 39:4, 39:21, 40:3, 41:24, 43:3
**opposed** [1] - 27:20
**opposing** [1] - 46:15
**opposition** [7] - 3:21, 28:13, 29:19, 34:24, 35:24, 38:15, 39:13
**oral** [9] - 10:6, 10:8, 11:14, 11:15, 11:16, 11:25, 26:25, 28:2, 28:15
**ORDER** [1] - 1:5

**order** [21] - 3:17, 5:11, 5:16, 6:5, 7:25, 11:3, 11:6, 11:7, 16:15, 20:9, 20:11, 20:23, 21:7, 21:17, 23:13, 27:12, 33:8, 39:15, 39:20, 40:7, 52:9
**ordered** [2] - 21:17, 40:18
**ordering** [1] - 5:13
**origin** [1] - 3:21
**original** [2] - 11:15, 37:20
**originally** [1] - 10:7
**ostensibly** [1] - 49:3
**OTG** [1] - 32:5
**otherwise** [2] - 10:6, 41:2
**ourselves** [2] - 5:10, 26:16
**outside** [2] - 21:12, 47:5
**own** [1] - 8:14

**P**

**p.m** [4] - 39:25, 40:4, 47:22, 53:7
**page** [4] - 21:8, 42:11, 48:21, 49:20
**pages** [2] - 12:15, 13:19
**Pages** [1] - 1:6
**paid** [1] - 25:11
**painful** [1] - 46:22
**papers** [4] - 28:2, 33:24, 34:24
**paragraph** [12] - 42:18, 42:20, 42:24, 42:25, 43:1, 48:15, 48:21, 49:6, 49:8, 49:17, 49:18, 49:21
**part** [4] - 4:5, 6:1, 15:13, 36:21
**partial** [1] - 42:21
**particular** [3] - 26:15, 39:9, 42:18
**particularly** [5] - 14:12, 15:11, 16:12, 28:3, 29:21
**parties** [4] - 20:19, 45:6, 50:16
**party** [1] - 20:18
**passage** [1] - 5:2
**passed** [2] - 11:17, 27:9
**passion** [1] - 35:13

**passport** [1] - 35:22
**past** [2] - 10:8, 19:1
**path** [2] - 45:2, 46:12
**pattern** [8] - 14:17, 15:12, 16:21, 34:20, 34:23, 36:7, 38:1, 43:5
**pay** [6] - 24:18, 25:1, 25:2, 29:17, 30:21, 40:18
**Pennsylvania** [6] - 9:9, 10:15, 13:9, 16:17, 24:15
**people** [7] - 14:25, 15:1, 16:4, 17:9, 22:11, 25:16
**percent** [2] - 11:22, 13:17
**perfect** [2] - 12:23, 52:6
**period** [4] - 11:19, 13:15, 17:24, 45:4
**permission** [1] - 41:7
**person** [2] - 1:10, 46:23
**personal** [9] - 21:15, 21:22, 21:23, 22:1, 23:2, 26:8, 40:25, 53:2
**pertains** [1] - 22:25
**piling** [1] - 20:4
**pink** [1] - 12:23
**place** [2] - 14:16, 46:5
**plaintiff** [5] - 3:18, 3:23, 25:18, 39:16, 44:13
**Plaintiff** [2] - 1:4, 2:5
**plaintiff's** [12] - 3:22, 4:1, 4:9, 4:14, 5:3, 5:9, 5:15, 5:23, 14:13, 27:24, 28:18, 41:9
**plane** [1] - 16:9
**platform** [3] - 9:7, 9:25, 28:6
**play** [1] - 34:7
**PLLC** [1] - 2:2
**podium** [3] - 7:17, 25:24, 31:9
**point** [11] - 4:14, 7:9, 8:4, 8:23, 11:8, 11:12, 30:24, 38:18, 39:5, 40:2, 51:18
**points** [2] - 35:15, 36:3
**policies** [1] - 24:3

**poor** [1] - 18:2
**portions** [1] - 39:17
**pose** [1] - 39:3
**posed** [2] - 39:3, 39:8
**position** [2] - 14:13, 39:21
**possible** [1] - 47:25
**post** [1] - 50:17
**Post** [1] - 1:15
**postponed** [1] - 11:16
**potential** [1] - 11:20
**potentially** [2] - 13:16, 23:7
**potholes** [2] - 18:3, 18:5
**practice** [2] - 20:24, 24:20
**practicing** [1] - 8:9
**practitioner** [1] - 24:19
**precautions** [1] - 24:2
**precise** [1] - 31:1
**preparation** [1] - 4:1
**prepare** [1] - 40:11
**prepared** [2] - 48:22, 50:11
**preparing** [1] - 37:3
**presence** [1] - 51:15
**presented** [1] - 38:13
**presents** [1] - 38:12
**pressing** [1] - 31:13
**pressure** [2] - 35:12, 38:3
**pretty** [1] - 7:18
**previous** [1] - 14:17
**previously** [1] - 15:15
**Princeton** [1] - 36:5
**print** [1] - 24:7
**private** [1] - 47:5
**pro** [5] - 24:24, 24:25, 25:14, 30:22, 31:3
**problem** [13] - 4:4, 4:23, 11:9, 11:20, 12:15, 13:14, 14:15, 15:12, 15:19, 16:11, 27:16, 28:12, 35:2
**problems** [3] - 9:11, 9:12, 10:16
**proceeding** [1] - 53:7
**Proceedings** [1] - 1:24
**proceedings** [2] -

4:6, 53:14
**PROCEEDINGS** [1] - 3:2
**produce** [2] - 9:20, 24:21
**produced** [1] - 1:24
**product** [1] - 9:20
**profession** [1] - 45:12
**professional** [11] - 30:7, 34:12, 34:21, 34:23, 35:5, 35:7, 35:10, 45:25, 46:10, 46:16, 47:4
**professionalism** [1] - 53:3
**program** [3] - 8:23, 13:21, 14:4
**proper** [1] - 4:23
**proposition** [1] - 36:3
**propositions** [1] - 35:1
**provide** [5] - 7:5, 34:6, 40:7, 40:19, 51:6
**public** [8] - 21:24, 41:3, 42:20, 42:23, 43:2, 48:20, 48:25, 50:17
**purpose** [2] - 22:9, 38:14
**purposes** [1] - 20:16
**pursuant** [1] - 39:19
**push** [1] - 17:3
**put** [9] - 6:5, 13:24, 21:19, 28:24, 29:8, 39:23, 40:12, 43:8, 52:3

**Q**

**quarter** [1] - 19:1
**questions** [6] - 43:12, 43:18, 45:19, 46:20, 46:21, 47:10
**quickly** [1] - 38:3
**quietly** [1] - 50:4
**quite** [1] - 45:10
**quote** [1] - 37:25

**R**

**raised** [1] - 28:21
**ran** [2] - 13:20, 37:3
**range** [4] - 24:10, 31:17, 31:20, 40:14
**rather** [2] - 35:25, 40:11

**RDR** [2] - 1:21, 53:16
**re** [4] - 10:20, 11:24, 12:2, 14:8
**re-filed** [1] - 10:20
**re-read** [3] - 11:24, 12:2, 14:8
**reach** [1] - 5:8
**reached** [1] - 19:18
**read** [9] - 11:24, 12:2, 12:15, 14:8, 21:12, 28:7, 35:20, 36:21, 37:8
**reading** [2] - 14:4, 24:14
**ready** [2] - 38:24, 47:20
**real** [4] - 27:4, 27:5, 27:6, 34:25
**realize** [1] - 17:6
**realized** [1] - 9:10
**really** [7] - 17:8, 25:6, 28:19, 29:1, 35:24, 37:9, 51:7
**reason** [1] - 46:9
**reasonable** [4] - 17:23, 37:25, 38:12, 45:4
**reasons** [4] - 10:6, 26:11, 30:13, 34:18
**recalled** [1] - 6:4
**received** [2] - 5:8, 39:24
**recently** [1] - 15:11
**recess** [2] - 41:25, 47:18
**recessed** [1] - 41:14
**recitation** [7] - 5:24, 6:11, 6:16, 6:19, 7:1, 7:11, 10:15
**recognized** [2] - 23:13, 29:22
**recollection** [6] - 6:16, 6:18, 6:19, 7:2, 27:3, 28:16
**record** [21] - 3:10, 3:11, 4:15, 6:22, 16:14, 17:17, 26:24, 36:10, 41:6, 41:8, 41:18, 44:2, 45:9, 47:24, 50:15, 51:10, 51:14, 52:7, 52:10, 52:14, 53:14
**recorded** [1] - 1:24
**RECORDINGS** [1] - 1:8
**Recordings** [1] - 2:14

**redact** [6] - 22:17, 22:21, 26:9, 40:25, 42:8, 50:16
**redacted** [7] - 42:19, 43:9, 48:16, 48:20, 49:15, 50:17
**redaction** [10] - 23:8, 26:7, 41:19, 41:21, 42:5, 42:6, 42:21, 42:23, 47:19, 48:1
**reduce** [1] - 19:5
**refer** [1] - 39:17
**reference** [1] - 21:13
**referenced** [2] - 36:4, 39:2
**referral** [5] - 29:20, 30:2, 30:14, 31:22, 38:5
**referrals** [1] - 32:1
**referred** [1] - 15:15
**refers** [1] - 27:17
**reflect** [2] - 50:4, 50:15
**reflection** [1] - 45:1
**regarding** [2] - 40:21, 44:15
**regardless** [2] - 37:16, 45:4
**regulations** [1] - 14:10
**reimburse** [1] - 32:11
**reiterate** [1] - 8:1
**relationship** [3] - 21:16, 45:13, 45:15
**relative** [1] - 3:22
**relevant** [1] - 32:7
**reliance** [4] - 26:17, 26:18, 26:21, 26:22
**relied** [1] - 9:12
**relief** [4] - 20:11, 20:14, 20:17, 20:20
**relies** [1] - 36:1
**relitigate** [1] - 28:1
**relying** [1] - 26:19
**remain** [1] - 43:10
**remaining** [1] - 51:3
**remains** [1] - 43:2
**remand** [3] - 37:4, 37:22
**remedies** [3] - 27:25, 39:12, 40:8
**remember** [1] - 51:5
**remote** [1] - 33:23
**RENZLER** [1] - 2:7
**repeat** [2] - 42:12,

42:21
**repeated** [1] - 26:22
**repeatedly** [1] - 34:19
**repetitive** [1] - 15:12
**replete** [1] - 34:24
**reply** [4] - 10:4, 28:9, 32:12, 33:16
**replying** [1] - 29:18
**report** [1] - 32:7
**Reporter** [2] - 1:22, 53:17
**reporter** [2] - 7:22, 27:20
**REPORTER'S** [1] - 53:9
**reporting** [1] - 30:2
**represent** [1] - 35:3
**representation** [3] - 16:8, 18:8, 28:3
**represented** [2] - 4:11, 27:3
**reprimanded** [1] - 36:10
**request** [10] - 5:20, 14:19, 20:14, 20:15, 20:17, 32:21, 33:11, 33:21, 39:10, 52:3
**requesting** [2] - 21:8, 34:4
**Requesting** [1] - 48:12
**requests** [2] - 20:10, 33:5
**require** [2] - 20:11, 29:17
**required** [1] - 32:6
**requirement** [1] - 32:11
**requirements** [2] - 44:12, 44:19
**requires** [1] - 30:2
**rescheduled** [1] - 10:8
**research** [9] - 4:1, 4:11, 4:13, 4:20, 6:8, 9:21, 12:6, 31:17, 33:11
**reservation** [1] - 16:9
**resolve** [1] - 43:24
**resource** [1] - 19:11
**resources** [2] - 38:4, 47:5
**respect** [7] - 14:16, 26:12, 28:13, 29:9, 31:16, 32:9, 39:9
**respectfully** [3] - 34:10, 34:13, 52:3

**respond** [10] - 6:13, 6:20, 15:8, 15:13, 17:3, 27:9, 33:19, 37:4, 39:21, 40:3
**responded** [1] - 22:4
**responding** [1] - 33:6
**response** [26] - 4:2, 4:25, 5:3, 5:4, 5:5, 5:6, 5:8, 5:12, 5:16, 5:19, 7:25, 21:7, 24:12, 27:10, 27:12, 30:22, 32:4, 32:24, 40:3, 40:7, 43:11, 45:3, 50:19
**responses** [1] - 40:12
**responsibility** [6] - 9:15, 9:23, 16:6, 25:16, 46:17
**responsible** [2] - 1:10, 1:13
**result** [6] - 3:25, 4:19, 6:13, 13:8, 33:2, 36:14
**retainers** [1] - 25:2
**return** [2] - 4:15, 6:2
**returning** [1] - 32:15
**review** [3] - 11:24, 12:17, 23:19
**reviewed** [2] - 12:19, 35:24
**rise** [1] - 3:5
**risk** [1] - 28:6
**role** [2] - 46:4, 46:17
**room** [1] - 41:9
**rough** [1] - 19:2
**rubber** [1] - 12:23
**Rule** [7] - 3:18, 30:1, 30:9, 30:12, 32:23, 38:18, 39:19
**rules** [1] - 20:12
**run** [2] - 16:3, 24:11

## S

**sake** [3] - 15:4, 15:5, 22:17
**sanction** [9] - 29:6, 29:7, 29:9, 30:1, 31:22, 32:8, 44:12, 44:19
**sanctionable** [1] - 30:7
**sanctioned** [2] - 3:19, 32:6
**sanctions** [18] - 7:13, 24:10, 26:12, 29:11, 29:13,

30:12, 31:16, 31:18, 32:23, 33:6, 34:3, 39:19, 39:22, 40:13, 40:14, 44:7, 44:22
**Saturday** [2] - 5:5, 15:25
**scheduled** [2] - 10:7, 11:14
**scheduling** [2] - 10:6, 20:16
**school** [1] - 46:9
**SCHULTE** [1] - 2:11
**scratching** [1] - 15:3
**seal** [4] - 21:19, 21:22, 43:10, 50:18
**sealing** [3] - 26:4, 26:10, 40:21
**Sean** [3] - 2:10, 3:13, 26:2
**SEAN** [1] - 1:6
**season** [1] - 52:25
**seated** [3] - 3:6, 41:18, 47:23
**second** [7] - 19:13, 31:22, 41:5, 42:24, 48:15, 48:21
**secret** [1] - 32:22
**Section** [5] - 26:7, 40:25, 42:8, 42:14, 42:22
**section** [5] - 22:22, 22:24, 26:10, 41:1
**see** [3] - 22:12, 23:7, 48:23
**seek** [1] - 39:21
**Sekella** [2] - 1:21, 53:16
**sekella@gmail. com** [1] - 1:22
**self** [4] - 13:11, 14:4, 30:2, 32:7
**self-corrected** [1] - 13:11
**self-reading** [1] - 14:4
**self-report** [1] - 32:7
**self-reporting** [1] - 30:2
**Semper** [1] - 12:10
**send** [2] - 16:10, 50:5
**sense** [3] - 17:8, 27:15, 44:6
**sensitive** [1] - 21:10
**sensitivities** [1] - 13:10
**sent** [1] - 21:10
**sentence** [5] -

31:20, 48:19, 48:24, 49:2, 52:2
**September** [1] - 32:6
**series** [1] - 13:14
**serious** [1] - 46:20
**seriously** [3] - 14:6, 46:11, 47:10
**served** [1] - 37:5
**service** [2] - 51:3, 51:19
**serving** [1] - 44:13
**set** [1] - 33:9
**settle** [1] - 38:3
**seven** [1] - 49:14
**several** [2] - 15:16, 18:23
**severity** [1] - 28:19
**shall** [3] - 13:1, 20:11, 20:18
**share** [1] - 51:9
**shared** [2] - 7:24, 52:3
**SHER** [1] - 2:6
**shifting** [1] - 25:11
**shoes** [2] - 28:24, 29:8
**shortly** [1] - 10:5
**SHOW** [1] - 1:5
**show** [14] - 3:18, 5:11, 5:13, 5:16, 7:25, 11:7, 21:7, 22:12, 27:12, 33:9, 39:16, 48:15
**showed** [1] - 13:22
**side** [3] - 9:21, 15:22, 41:22
**Sidebar** [1] - 51:14
**sidebar** [7] - 4:6, 6:4, 6:13, 6:20, 14:16, 26:24, 27:2
**sides** [2] - 15:16, 23:8
**significantly** [2] - 38:3, 38:19
**silence** [1] - 15:17
**similar** [2] - 37:2, 45:22
**simply** [2] - 17:19, 33:6
**sit** [1] - 42:2
**situation** [1] - 15:14
**six** [1] - 49:14
**size** [1] - 24:17
**solo** [1] - 24:19
**someone** [1] - 18:24
**sometime** [1] - 10:20
**somewhat** [1] - 10:16

**sorry** [4] - 34:10, 37:12, 42:12, 49:2
**sought** [2] - 20:20, 39:12
**Southern** [2] - 16:18, 40:17
**speaking** [1] - 19:18
**specific** [2] - 7:2, 28:12
**specifically** [1] - 44:15
**specifics** [1] - 29:15
**spent** [1] - 38:4
**Square** [1] - 1:16
**staff** [1] - 47:2
**stand** [3] - 7:20, 34:25, 47:18
**standing** [1] - 6:4
**start** [3] - 25:22, 26:3, 31:13
**started** [3] - 8:5, 8:9, 8:23
**state** [4] - 20:18, 30:8, 32:7, 37:4
**State** [3] - 30:3, 30:8
**statement** [2] - 24:22, 40:11
**States** [3] - 3:3, 48:17, 49:8
**STATES** [2] - 1:1, 1:19
**status** [2] - 51:17, 52:15
**statutes** [1] - 14:10
**stay** [4] - 7:20, 42:15, 42:20, 49:4
**staying** [1] - 48:25
**stays** [1] - 49:7
**stenography** [1] - 1:24
**step** [1] - 19:24
**stick** [1] - 12:24
**still** [4] - 19:20, 25:13, 28:14, 42:4
**stop** [2] - 7:8, 25:17
**stopped** [1] - 4:6
**straight** [2] - 35:23, 48:23
**Street** [2] - 2:3, 2:8
**stress** [1] - 19:5
**strike** [1] - 39:17
**stuff** [2] - 22:11, 22:13
**subject** [2] - 18:3, 36:24
**submission** [3] - 29:12, 39:14, 39:23
**submissions** [1] - 29:2

**submit** [2] - 34:15, 38:7
**submitted** [2] - 21:6, 27:11
**subsequently** [1] - 5:15
**substance** [1] - 5:17
**substantive** [1] - 35:25
**suffice** [1] - 44:21
**sufficiently** [1] - 7:22
**suggest** [1] - 42:6
**suggested** [3] - 41:21, 42:22, 43:16
**suggesting** [2] - 14:7, 43:13
**suggestion** [2] - 41:20, 42:9
**suggestions** [1] - 43:23
**sum** [1] - 37:9
**summary** [1] - 5:24
**Sunday** [2] - 5:6, 16:1
**support** [3] - 27:24, 29:25, 38:17
**supported** [1] - 28:17
**supporting** [1] - 34:16
**supposed** [13] - 6:2, 6:12, 15:8, 18:18, 18:20, 19:12, 19:16, 24:16, 28:24, 28:25, 29:15, 33:7, 51:5
**surely** [1] - 36:19
**surrounding** [1] - 21:14
**suspect** [2] - 13:16, 31:3
**SWING** [1] - 1:7
**Swing** [3] - 37:6, 37:10, 37:12
**swore** [1] - 45:18
**system** [2] - 9:13, 24:5

## T

**T.A** [1] - 2:2
**table** [1] - 7:20
**talks** [1] - 35:19
**tblackburn@ tablackburnlaw. com** [1] - 2:4
**Teams** [1] - 52:15
**technology** [4] -

26:17, 26:20, 26:23, 38:9
**telephone** [1] - 20:15
**ten** [4] - 16:8, 19:3, 20:9, 49:14
**tends** [1] - 24:11
**terms** [2] - 44:24, 45:13
**text** [3] - 42:9, 42:14, 50:18
**Thanksgiving** [1] - 32:14
**THE** [138] - 1:1, 1:18, 3:5, 3:6, 3:10, 3:12, 3:15, 3:17, 6:9, 6:15, 6:22, 7:8, 7:16, 8:6, 8:11, 8:14, 10:1, 10:4, 10:11, 10:13, 10:22, 10:25, 11:3, 11:5, 11:8, 11:11, 11:14, 11:19, 11:23, 12:13, 12:21, 13:5, 13:7, 14:1, 14:12, 16:21, 17:5, 17:11, 17:13, 17:15, 18:17, 19:3, 19:9, 19:13, 20:1, 20:6, 21:2, 21:5, 22:2, 22:6, 22:16, 22:20, 22:24, 23:2, 23:5, 24:9, 25:15, 25:23, 25:25, 26:5, 28:22, 29:5, 29:14, 29:25, 30:6, 30:11, 30:16, 30:19, 31:6, 31:8, 31:10, 32:16, 32:18, 32:21, 33:7, 34:7, 35:8, 36:16, 36:19, 37:10, 37:14, 37:16, 37:18, 37:23, 38:21, 39:1, 39:6, 39:11, 40:1, 40:5, 40:20, 40:23, 41:5, 41:7, 41:14, 41:17, 42:14, 43:17, 43:20, 43:22, 43:25, 44:4, 44:18, 44:24, 47:14, 47:16, 47:18, 47:23, 48:3, 48:6, 48:10, 48:14, 48:23, 49:2, 49:6, 49:10, 49:13, 49:18, 49:20, 49:25, 50:3, 50:10, 50:13, 50:15, 50:24, 51:4, 51:8,

51:12, 51:16, 51:25, 52:5, 52:7, 52:9, 52:13, 52:16, 52:19, 52:21, 52:24
**theft** [1] - 35:22
**thereafter** [1] - 10:5
**they've** [1] - 22:11
**thinks** [1] - 45:1
**third** [2] - 42:18, 42:25
**three** [3] - 49:3, 49:14
**Thursday** [2] - 5:5, 15:25
**tick** [1] - 45:23
**tire** [1] - 18:6
**title** [1] - 4:18
**TO** [1] - 1:5
**today** [4] - 19:7, 19:16, 26:16, 28:5
**together** [1] - 40:12
**took** [6] - 8:4, 13:3, 13:4, 13:6, 14:16, 45:17
**tool** [1] - 4:10
**top** [2] - 12:24
**touch** [1] - 51:2
**track** [1] - 16:14
**TRADE** [1] - 1:19
**Trade** [1] - 3:4
**training** [2] - 9:17
**transcript** [3] - 1:24, 27:2, 53:13
**transcription** [1] - 1:24
**transmitted** [2] - 18:12
**transposing** [1] - 27:19
**TREMONTE** [1] - 2:6
**tried** [2] - 12:5, 12:7
**triggered** [1] - 8:25
**triple** [2] - 24:5, 24:6
**triple-check** [1] - 24:6
**trouble** [1] - 18:9
**troubling** [3] - 26:14, 27:15, 28:3
**true** [3] - 27:25, 36:1, 36:8
**trust** [1] - 29:12
**truthful** [1] - 16:8
**try** [5] - 4:7, 19:5, 33:10, 37:7, 37:20
**trying** [4] - 8:2, 21:16, 29:5, 46:25
**Tuesday** [4] - 5:4, 15:24, 15:25, 16:1
**turn** [2] - 25:18,

*United States District Court*
*District of New Jersey*

49:20
**turns** [1] - 3:24
**two** [8] - 1:16, 4:18, 10:18, 23:20, 35:11, 39:18, 49:3, 49:14
**type** [2] - 46:10, 47:4
**types** [2] - 25:16, 31:18
**typically** [1] - 30:9
**TYRONE** [1] - 2:2

## U

**U.S** [2] - 1:15, 39:18
**UMG** [8] - 1:7, 2:14, 6:24, 31:12, 32:10, 32:11, 40:24, 41:13
**unable** [1] - 28:11
**under** [10] - 3:18, 3:22, 21:19, 21:21, 30:9, 30:12, 38:12, 38:16, 43:10, 50:18
**underlying** [1] - 44:15
**underscores** [2] - 29:1, 29:3
**unfortunate** [1] - 26:20
**unfortunately** [2] - 12:16, 26:19
**unidentified** [2] - 1:10, 1:12
**United** [3] - 3:3, 48:17, 49:8
**UNITED** [2] - 1:1, 1:19
**Universal** [1] - 2:14
**UNIVERSAL** [1] - 1:8
**unknown** [1] - 32:22
**unless** [1] - 41:22
**unredacted** [1] - 43:9
**unseal** [3] - 22:8, 43:10, 50:19
**unserved** [1] - 51:17
**up** [13] - 8:3, 8:9, 8:22, 15:14, 23:21, 33:1, 33:10, 37:7, 37:9, 38:9, 42:9, 42:14, 48:21
**update** [1] - 51:6
**upgrade** [2] - 8:4, 8:24
**upgraded** [1] - 8:23
**uphold** [1] - 45:18

**urge** [3] - 36:14, 46:5, 46:10
**utilized** [1] - 23:19

## V

**value** [1] - 14:1
**Vanderbilt** [1] - 2:12
**variety** [1] - 10:5
**various** [1] - 36:3
**vein** [1] - 21:6
**verbally** [1] - 52:10
**verify** [4] - 14:6, 14:9, 28:14, 35:6
**verifying** [1] - 36:1
**verse** [1] - 7:11
**version** [3] - 43:9, 50:18
**via** [5] - 4:16, 20:14, 21:10, 42:4, 43:5
**videoconference** [2] - 20:16, 52:16
**view** [3] - 27:13, 32:2, 35:17
**violated** [1] - 35:7
**violations** [1] - 31:19
**virtue** [2] - 8:14, 16:15
**visual** [1] - 15:1
**vs** [1] - 3:13

## W

**wait** [1] - 42:11
**wake** [1] - 33:1
**walked** [1] - 14:23
**wants** [1] - 23:24
**warning** [1] - 17:2
**warranted** [2] - 31:23, 38:16
**warranting** [1] - 38:5
**Wednesday** [4] - 1:17, 5:4, 15:24, 15:25
**week** [2] - 48:17, 49:9
**welcome** [2] - 17:13, 38:21
**Western** [5] - 9:8, 10:14, 13:9, 16:17, 24:15
**whole** [1] - 49:3
**WILL** [1] - 2:11
**will/is** [1] - 51:20
**willing** [3] - 7:14, 20:21, 22:17
**wish** [2] - 7:12, 46:20

**WOLFF** [37] - 2:7, 3:9, 6:17, 21:4, 25:21, 25:24, 26:1, 26:6, 29:1, 29:10, 29:16, 30:5, 30:10, 30:12, 30:17, 30:20, 31:7, 38:25, 39:2, 39:7, 39:12, 40:2, 40:6, 41:11, 43:21, 43:23, 44:3, 47:15, 48:2, 48:8, 48:18, 49:17, 50:1, 50:11, 50:14, 50:23, 52:14
**Wolff** [15] - 7:7, 25:19, 26:2, 28:22, 29:5, 29:15, 30:19, 31:6, 32:4, 32:18, 39:1, 43:20, 47:14, 50:10, 52:13
**wooden** [1] - 12:24
**word** [3] - 42:17, 43:1, 48:21
**words** [4] - 8:15, 16:24, 31:1, 49:13
**worse** [1] - 26:21
**wrap** [1] - 33:10
**written** [3] - 4:12, 16:16, 19:6

## Y

**year** [1] - 20:9
**years** [1] - 9:14
**yjacobs@ shertremonte. com** [1] - 2:9
**YONATAN** [1] - 2:6
**York** [11] - 2:3, 2:8, 2:13, 16:18, 30:3, 30:4, 30:7, 32:1, 32:5
**you-all** [2] - 21:19, 52:25
**Youngblood** [3] - 9:8, 12:4
**yourself** [12] - 16:24, 19:14, 22:6, 28:24, 29:8, 38:23, 45:22, 46:6, 46:13, 47:1, 47:2, 47:6

## Z

**Zunzurovski** [3] - 30:17, 36:22, 37:24