T. A. BLACKBURN LAW, PLLC
Tyrone A. Blackburn, Esq.
NJBARID#232602020
1242 East 80th Street, 3rd Floor
Brooklyn, NY 11236
P: 347-342-7432
Attorneys for Plaintiff Liza Gardner

| | |
|---|---|
| LIZA GARDNER,<br><br>      Plaintiff,<br><br>-against-<br><br>SEAN COMBS,<br>AARON HALL,<br>UMG RECORDINGS, INC., UNIVERSAL MUSIC GROUP, N.V.<br>JOHN DOES 1-10 (names being fictitious and used to connote an unidentified person responsible for this occurrence), JANE DOES 1-10 (names being fictitious and used to connote an unidentified person responsible for this occurrence), ABC CORPORATIONS 1-10 (names being fictitious and used to connote unidentified entities responsible for this occurrence),<br><br>      Defendants. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br>DOCKET NO.: 2:24-cv-07729-LMG-JRA<br><br>**MEMORANDUM OF LAW IN SUPPORT OF SECOND MOTION FOR SERVICE BY PUBLICATION** |

**MEMORANDUM OF LAW IN SUPPORT
OF SECOND MOTION FOR SERVICE BY PUBLICATION**

**By**: Tyrone Blackburn

## PRELIMINARY STATEMENT

Plaintiff Liza Gardner respectfully moves for an order permitting service of the Summons and Amended Complaint upon Defendant Aaron Hall by publication, pursuant to Federal Rule of Civil Procedure 4(e)(1), 4(h)(1), and New Jersey Court Rule 4:4-5(c)(2) (service on absent defendants by court order). Despite diligent and reasonable efforts over many months, Plaintiff has been unable to personally serve Aaron Hall in this action. Multiple process servers have attempted service at addresses associated with Hall in California, Ohio, and Georgia, and professional skip-trace investigations have been conducted, all without success (see Declaration of Tyrone A. Blackburn, Esq., detailing the efforts). Because Hall's whereabouts remain unknown, service by publication is warranted and necessary to move this case forward.

## FACTUAL BACKGROUND

Defendant Aaron Hall has evaded service despite extensive efforts by Plaintiff spanning over seven months across three states. Shortly after this action was initiated, Plaintiff attempted to serve Hall by personal service at an address in Los Angeles County, California, believed to be his residence (3649 Mount Vernon Dr., View Park, CA). On June 12, 2024, a process server spoke with the current resident, who confirmed that Hall had moved and was no longer residing at that address. A neighbor likewise stated that Hall was not a resident there.

Plaintiff then identified a second California address linked to Hall (18818 Erwin St., Tarzana, CA) and attempted service there on June 20, 2024. The process server again found that Hall was no longer at that address—the current occupant (the property owner) stated that Hall had lived there approximately two years earlier but had since moved.

Having failed to locate Hall in California, Plaintiff broadened the search. An address for Hall in Ohio (7908 Halle Ave., Cleveland, OH) was obtained, and two service attempts were made there in early September 2024. Those attempts were also unsuccessful. On September 5, 2024, no one answered the door at the Cleveland residence, and on September 6, 2024, the occupant who answered stated that they did not know anyone by the name of Aaron Hall and that Hall did not live at that address.

When direct attempts at known addresses failed, Plaintiff engaged professional skip-trace and investigative services to locate a current address for Hall. On or about November 6, 2024, a "24 Hour Locate" skip-trace search was conducted for Aaron Hall, but it yielded no new addresses or current residence for him. Later in November 2024, Plaintiff's counsel commissioned a more comprehensive investigation into Hall's whereabouts. This investigation identified one potential

2

last-known address for Hall at 22246 Victory Blvd., Apt. F208, Woodland Hills, California. Plaintiff promptly attempted service at that address. A rush service attempt was made on November 6, 2024, but it was unsuccessful.

Following the filing of the Amended Complaint, additional service attempts were undertaken at the Woodland Hills, California, address in January 2025. Despite these concerted efforts, Hall was not found or served at that address. To date, Aaron Hall has not been successfully served with process in this action.

Between September 2025 and January 2026, Plaintiff retained the services of a private investigator based in Los Angeles County, California, Carlos Jackson, to conduct further efforts to locate and serve Defendant Hall. From December 2025 through the date of this filing, Mr. Jackson conducted database research, staked out locations where Mr. Hall was known to frequent and walk his dogs, and traveled to Georgia to pursue leads in Fulton County based on information suggesting Hall may have ties to the Atlanta metropolitan area. Despite these efforts, Hall was not located or served in either California or Georgia. (See Exhibit C – Payment Receipt for Georgia Investigation Services.). Because every identified address has been confirmed to be outdated or unconnected to Hall, service by mail would likewise be futile and not reasonably calculated to reach him.

To date, Aaron Hall has not been successfully served with process in this action despite at least ten separate service attempts across three states (California, Ohio, and Georgia), the engagement of professional process servers, two professional skip-trace investigations, a private investigator, and inquiries of residents and neighbors at multiple addresses.

Given the failure of personal service despite diligent efforts in multiple states and through investigative channels, Plaintiff has no further practical means of serving Hall except by publication. Moreover, information obtained by Plaintiff suggests that Hall has ties to Los Angeles County, California, and Fulton County, Georgia. Plaintiff therefore seeks leave to effect service by publishing notice of this action in the *Los Angeles Times*, a newspaper of general circulation adjudicated in Los Angeles County, California, and in the *South Fulton Neighbor*, the official legal organ for Fulton County, Georgia.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 4(e)(1) provides that an individual may be served by following state law for serving a summons in an action brought in courts of general jurisdiction in

the state where the district court is located or where service is made. Similarly, Rule 4(h)(1)(A) permits service on a corporation, partnership, or association by any means allowed under Rule 4(e)(1). Because this case is pending in the District of New Jersey, the laws of New Jersey governing service of process are incorporated by reference and may be used to effect service on Defendant Hall, provided the requirements of those laws are satisfied.

Under New Jersey law, courts may authorize substituted or constructive service—including service by publication—when a defendant cannot be served personally despite diligent efforts. New Jersey Court Rule 4:4-4(b) (incorporating the diligent inquiry requirements of Rule 4:4-5(c)(2)) states that if it appears by affidavit … that despite diligent effort and inquiry personal service cannot be made on a defendant, then, consistent with due process, in personam jurisdiction may be obtained by alternate means.

**ARGUMENT**

I. PLAINTIFF HAS SATISFIED THE DILIGENT INQUIRY STANDARD REQUIRED FOR SERVICE BY PUBLICATION

Plaintiff has amply satisfied the requirements for court-ordered service by publication on Defendant Hall. Federal courts in this District have recently reaffirmed that "diligence has no fixed standard" and must be measured by the qualitative efforts of a specific plaintiff seeking to locate and serve a specific defendant. *Streetlife Int'l GmbH v. Degraft-Johnson*, No. 24-cv-9806, 2025 WL 419716, at *3 (D.N.J. Jan. 8, 2025). Critically, courts do not require plaintiffs to take every conceivable action before authorizing alternative service; rather, plaintiffs must follow up on information [they] possess [] or can reasonably obtain. *Id*. New Jersey courts have similarly held that a plaintiff need not exhaust all conceivable means of personal service before service by publication is authorized but must follow up on information he or she possesses which might reasonably assist in determining defendant's whereabouts. *J.C. v. M.C.*, 438 N.J. Super. 325, 332, 103 A.3d 318 (Ch. Div. 2013).

As detailed below and in the accompanying Declaration of counsel, Plaintiff has undertaken extensive, diligent efforts to locate and personally serve Hall over a period exceeding a year—all of which have been unsuccessful. These efforts far exceed the qualitative standard established by the controlling authority and demonstrate that personal service is not achievable despite reasonable and comprehensive diligence.

///

4

A. <u>Plaintiff's Comprehensive Service Attempts Span Multiple States and Numerous Addresses</u>

Plaintiff's efforts to serve Defendant Hall have been thorough, systematic, and persistent. The chronology of attempts includes, but is not limited to:

1. June 12, 2024– Process server attempted service at 3649 Mount Vernon Dr., View Park, California (Los Angeles County). The current resident confirmed that Hall had previously lived there but had moved away and was no longer residing at that address. A neighbor likewise stated that Hall was not a resident there.

2. June 20, 2024– Process server attempted service at 18818 Erwin St., Tarzana, California. The current occupant (the property owner) informed the process server that Hall had lived at that address approximately 2 years prior but had since moved.

3. September 5, 2024– Process server attempted service at 7908 Halle Ave., Cleveland, Ohio. No one answered the door at the residence.

4. September 6, 2024– Process server made a second attempt at the Cleveland address. The occupant who answered stated that they did not know any person by the name of Aaron Hall and that Hall did not live at that address.

5. November 6, 2024– Plaintiff engaged professional skip-trace services and commissioned a "24 Hour Locate" investigation for Aaron Hall. The skip-trace search yielded no new addresses or current residence for him.

6. November 2024– Plaintiff's counsel commissioned a comprehensive investigative search for Hall's whereabouts, which identified one potential last-known address at 22246 Victory Blvd., Apt. F208, Woodland Hills, California.

7. November 6, 2024– Rush service attempt made at the Woodland Hills address. The attempt was unsuccessful.

8. January 2025– Following the filing of an Amended Complaint, additional service attempts were undertaken at the Woodland Hills, California, address. Despite these concerted efforts, Hall was not found or served.

9. May 17, 2025– Plaintiff's counsel commissioned a comprehensive investigative search for Hall's whereabouts, which identified one potential last-known address at 22246 Victory Blvd., Apt. F208, Woodland Hills, California.

10. September 2025 to January 2026– Plaintiff retained the services of a private investigator in Los Angeles County, California, Carlos Jackson, to locate and attempt service on

5

Defendant Hall. From December to the date of this filing, Mr. Jackson has conducted research, staked out locations where Mr. Hall was known to frequent and walk his dogs, and traveled to Georgia in that county based on information suggesting Hall may have ties to the Atlanta metropolitan area. Despite the investigator's efforts, Hall was not located or served in Fulton County. (See Exhibit C – Payment Receipt for Georgia Investigation Services.).

To date, Aaron Hall has not been successfully served with process in this action despite at least 10 separate service attempts across 3 states (California, Ohio, and Georgia), the engagement of professional process servers, 2 professional skip-trace investigations, retained a private investigator, and inquiries of residents and neighbors at multiple addresses.

B. <u>Plaintiff's Efforts Meet or Exceed the Diligence Standard Established in Controlling Authority</u>

Courts in this District and the Third Circuit have consistently found comparable efforts sufficient to satisfy the diligent inquiry requirement. In *Orient Turistik Magazacilik San ve Tic. Ltd. STI v. Aytek USA, Inc., doing business as Aytek Rugs et al* No. CV 22-4864 (SDW), 2023 WL 3862623 (D.N.J. June 7, 2023), this Court was satisfied that Plaintiff has exhausted all reasonable options for personal service where the plaintiff conducted nationwide database searches, multiple on-the-ground investigations, and various contact attempts. The Court found that these extensive efforts meet the constitutional requirements of due process and authorized service by publication. *Id.*

Similarly, in *Street life Int'l*, 2025 WL 419716, at *3, the Court emphasized that diligence requires that a plaintiff follow up on information it possesses or can reasonably obtain, but it does not necessarily mean a plaintiff take every conceivable action. Here, Plaintiff followed up on every piece of information reasonably available: every address associated with Hall was investigated, professional investigators were engaged when direct attempts failed, and attempts were made in multiple states based on available information about Hall's possible whereabouts.

The Third Circuit has likewise approved service by publication under similar circumstances. In *Braverman Kaskey, P.C. v. Toidze*, 599 F. App'x 448, 449 (3d Cir. 2015), the Court held that service by publication was proper when the plaintiff made "good faith efforts" including internet searches, postal inquiries, and contact attempts across different jurisdictions. The Court found service "reasonably calculated to provide notice" despite the defendant's evasive conduct and approved publication in two jurisdictions. Id. at 450. Critically, the Third Circuit noted

6

that even where "Plaintiff may not have taken every conceivable action," courts will authorize publication service when extensive good-faith efforts demonstrate that traditional service methods have been exhausted. *Id.*

Plaintiff's efforts here are at least as comprehensive as those approved in Braverman Kaskey and *Orient Turistik*. Indeed, Plaintiff's retention of a California-based private investigator and multiple service attempts across three states over a seven-month period demonstrate the kind of qualitative diligence that courts require before authorizing alternative service.

### C. Service by Ordinary Means Has Proven Impossible

New Jersey law explicitly permits service by publication when "diligent inquiry has failed to locate the defendant" and "service by ordinary means would appear to be impossible." *Lutheran Soc. Servs. of New Jersey v. Doe*, 172 N.J. Super. 343, 348, 411 A.2d 1183 (Law Div. 1979). That standard is plainly met here. At each known address, the information gathered indicated that Hall no longer resided there or could not be found. Multiple residents and neighbors confirmed that Hall had moved away years ago or was entirely unknown at the location. Professional skip-trace investigations—utilizing nationwide databases such as TLOxp-Transunion and CLEAR-Thomson Reuters—failed to turn up any current location for Hall. A Georgia-based private investigator with national/local resources and investigative tools likewise could not locate Hall in Fulton County.

The cumulative effect of these unsuccessful efforts is clear: Hall's current whereabouts are unknown, and personal service by ordinary means is impossible. Plaintiff has thus satisfied the "reasonable diligence" standard required by New Jersey law to demonstrate that personal service is not achievable. The diligent inquiry threshold of N.J. Ct. R. 4:4-5(c)(2) is met by the detailed history of attempted service and investigation set forth in counsel's Declaration.

## II. SERVICE BY PUBLICATION SATISFIES CONSTITUTIONAL DUE PROCESS REQUIREMENTS

Service by publication is constitutionally permissible when it is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S. Ct. 652 (1950). The proposed service by publication in this case satisfies that constitutional standard.

### A. Publication in Los Angeles County and Fulton County Is Reasonably Calculated to Provide Notice to Hall

The *Mullane* standard does not require certainty of actual notice; rather, it requires that the method employed be reasonably calculated to reach the defendant under the circumstances. Here,

7

Hall's exact whereabouts are unknown, but the evidence gathered during Plaintiff's investigation demonstrates that Hall has ties to Los Angeles County, California, and Fulton County, Georgia. His last known addresses were in Los Angeles County (View Park, Tarzana, and Woodland Hills), and Plaintiff's information suggested sufficient connections to Fulton County, Georgia, to warrant hiring a local private investigator there.

Plaintiff's investigation identified specific ties to Los *Angeles County, California, and Fulton County, Georgia*. Hall's last known addresses were all located in Los Angeles County (View Park, Tarzana, and Woodland Hills), and Plaintiff engaged a private investigator to conduct searches in Fulton County, Georgia—home to Atlanta, a major center of the entertainment industry known as the "Hollywood of the South." These are not randomly selected jurisdictions; rather, they represent the two locations where Hall's connections are most firmly established through investigative evidence. Publishing notice in the Los Angeles Times (adjudicated in Los Angeles County) and the South Fulton Neighbor (the official legal organ for Fulton County) is therefore precisely tailored to maximize the likelihood of reaching Hall based on his demonstrated geographic ties.

As the New Jersey Supreme Court has recognized, newspaper publication suffices to satisfy due process only where it is not reasonably possible or practicable to give more adequate notice. *Montville Twp. v. Block 69, Lot 10*, 74 N.J. 1, 9, 376 A.2d 909 (1977). Here, adequate notice is not practicable because Hall's current location cannot be determined despite extensive efforts.

In *Orient Turistik*, this Court authorized publication in both The Star Ledger (the largest circulated newspaper in New Jersey) and The Record (a newspaper of general circulation within Bergen County) to maximize coverage based on the defendant's suspected geographic connections. 2023 WL 3862623, at *4. The Court found that this dual-newspaper approach, combined with the plaintiff's extensive investigative efforts, satisfied constitutional due process requirements. *Id.* Plaintiff's proposed publication in newspapers of general circulation in both Los Angeles County and Fulton County follows the same rationale and is likewise constitutionally adequate.

B. <u>Hall's Public Profile Enhances the Likelihood of Effective Notice</u>

An additional factor supporting the constitutional adequacy of service by publication is Defendant Hall's status as a public figure in the entertainment industry. Courts have recognized that public figures are more likely to receive notice through publication due to their visibility and

8

the attention paid to legal proceedings involving celebrities. The entertainment industry's interconnected nature means that published notices in major newspapers are more likely to reach industry participants through professional networks, media coverage, or associates who monitor legal developments.

Hall's public profile, combined with his apparent ties to Los Angeles County (a major center of the entertainment industry) and Fulton County/Atlanta (home to a significant entertainment industry presence), makes publication in newspapers of general circulation in these specific counties particularly well-suited to provide notice. The proposed publication approach is therefore not only constitutionally adequate but strategically designed to maximize the probability of actual notice given Hall's public status and geographic connections.

C. <u>Plaintiff Will Supplement Publication with Mailing to Last Known Addresses</u>

In addition to publication, Plaintiff stands ready to mail copies of the Summons and Complaint to any last-known addresses associated with Hall immediately upon authorization of publication. New Jersey Court Rule 4:4-5(a)(3) calls for mailing a copy of the notice and complaint to the defendant's last known residence, if known, within seven days after publication. While Hall's current residence is unknown, Plaintiff will mail the pleadings to the Tarzana, California address (where Hall previously resided and currently has his cellphone number registered to that address), the Woodland Hills address (identified through investigative services), and any other last-known addresses on record as an added measure.

Although those addresses are allegedly no longer current based on the information obtained during service attempts, sending the papers there (and to any address obtained in Georgia, if one becomes known) provides an additional chance of reaching Hall or someone in contact with him. These extra steps underscore that service by publication, in this case, is a method of last resort, implemented only after pursuing every other reasonable avenue, and that Plaintiff is committed to maximizing the opportunity for Hall to receive actual notice.

III. <u>DEFENDANTS CANNOT BENEFIT FROM THEIR OWN EVASIVE CONDUCT</u>

The Third Circuit has made clear that defendants cannot benefit from their own evasive conduct by avoiding service and thereby delaying litigation indefinitely. In *Braverman Kaskey*, the Court emphasized that when a defendant has concealed his whereabouts or moved without leaving forwarding information, service by publication is warranted to prevent the defendant from thwarting the plaintiff's ability to pursue legitimate claims. 599 F. App'x at 450.

9

Here, Hall has apparently concealed his whereabouts or moved without leaving a forwarding address, intentionally or otherwise, making traditional service impossible. Every resident and neighbor interviewed by process servers confirmed that Hall was no longer at known addresses, some stating he had moved years ago. Professional investigators utilizing comprehensive nationwide databases could not locate a current address. A Georgia-based private investigator with local resources likewise could not find Hall in Fulton County. These facts strongly suggest that Hall is either actively evading service or has taken steps that have the same practical effect.

Plaintiff should not be indefinitely thwarted from prosecuting her claims by a defendant's evasion of service. Service by publication will allow the case to proceed while still affording Hall an opportunity to receive notice of the action and respond. If Hall remains interested in defending himself, a published notice in areas where he likely resides or has contacts is reasonably likely to reach him, especially given Hall's public profile and the gravity of the litigation.

IV.   JUDICIAL EFFICIENCY AND THE INTERESTS OF JUSTICE SUPPORT GRANTING THIS MOTION

Service by publication is particularly warranted in multi-defendant litigation where all other parties have been served or appeared, and only one defendant remains unserved due to the inability to locate him. Courts recognize that allowing one defendant to delay proceedings indefinitely through evasion would undermine judicial efficiency and deny other parties their right to timely resolution.

Here, all other Defendants in this case have been served or appeared, and only Hall remains unserved. Authorizing service by publication will prevent undue delay and move the case forward on the merits. It bears emphasis that service by publication is not Plaintiff's preference but rather a necessity in light of Hall's unknown whereabouts. Plaintiff has demonstrated by affidavit that all of the statutory modes of service have been exhausted or would be futile, satisfying the requirement for this Court to permit an alternative means of service. *See Jurewicz v. Locs. 1297, 1392, 2343, of United Bhd. of Carpenters & Joiners of Am.*, 138 N.J. Eq. 493, 497, 49 A.2d 23 (Ch. 1946) (recognizing broad authority for service by publication when defendants have material interests in litigation and traditional service has failed).

Finally, granting this motion serves the interests of justice by ensuring that Plaintiff can pursue her claims against all Defendants without being stymied by the unavailability of any one Defendant for service. The Federal Rules of Civil Procedure and New Jersey law provide for

10

service by publication precisely to address situations like this—where a plaintiff has exercised due diligence but cannot locate a defendant through traditional means. Accordingly, the Court is well within its discretion to order service by publication according to Fed. R. Civ. P. 4(e)(1) and New Jersey law.

V. PLAINTIFF'S MOTION SATISFIES ALL LEGAL REQUIREMENTS FOR SERVICE BY PUBLICATION

Because personal service cannot be made despite diligent effort, the Federal Rules allow this Court to authorize an alternative means of service. *See* Fed. R. Civ. P. 4(e)(1) and 4(h)(1); N.J. Ct. R. 4:4-4(b) & 4:4-5(c)(2). New Jersey's rules explicitly contemplate service "by court order, consistent with due process of law" when other modes have failed. Service by publication is a commonly approved method of alternate service in such circumstances, so long as it is reasonably calculated to apprise the defendant of the action.

Plaintiff has satisfied every requirement:

- Diligent Inquiry: Plaintiff conducted at least nine service attempts across three states, engaged professional skip-trace services and private investigators, interviewed residents and neighbors, and followed up on every piece of information reasonably available over a seven-month period.

- Impossibility of Personal Service: Every service attempt failed; residents confirmed that Hall had moved; professional investigators could not locate a current address; and Hall's whereabouts remain unknown.

- Constitutional Due Process: Publication in newspapers of general circulation in Los Angeles County, California, and Fulton County, Georgia (counties where Hall has demonstrated ties) is reasonably calculated to provide notice, particularly given Hall's public profile in the entertainment industry.

- Supplemental Notice: Plaintiff will mail copies of the Summons and Complaint to last-known addresses within seven days of publication as required by N.J. Ct. R. 4:4-5(a)(3).

- Judicial Efficiency: All other Defendants have been served; only Hall remains unserved, and granting this motion will prevent undue delay.

The combination of these factors—comprehensive diligent efforts, constitutional adequacy of the proposed publication method, and the interests of justice—amply support granting Plaintiff's motion.

11

**Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's motion and enter an Order authorizing service of the Summons and Amended Complaint on Defendant Aaron Hall by publication in the *Los Angeles Times*, a newspaper of general circulation adjudicated in Los Angeles County, California, and in the *South Fulton Neighbor*, the official legal organ for Fulton County, Georgia, in accordance with Fed. R. Civ. P. 4(e)(1) and (h) and N.J. Court Rule 4:4-5(c)(2), together with mailing to Hall's last known addresses as required by N.J. Ct. R. 4:4-5(a)(3).

DATED: January 9, 2026

Respectfully submitted,

/s/*Tyrone a. Blackburn, Esq.*
TYRONE A. BLACKBURN, ESQ.