**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

LIZA GARDNER,

      Plaintiff,

      v.

SEAN COMBS, AARON HALL,
UMG RECORDINGS, INC.,
UNIVERSAL MUSIC GROUP, N.V.,

      Defendants.

---

Before: Leo M. Gordon, Judge

Court No. 2:24-cv-07729

**OPINION**

[Granting Defendants UMG Recordings, Inc. and Universal Music Group, N.V.'s motion to dismiss; and granting in part and denying in part Defendant Combs' motion to dismiss.]

Dated: January 14, 2026

    Tyrone A. Blackburn, T.A. Blackburn Law, PLLC, of Brooklyn, N.Y., argued for Plaintiff Liza Gardner.

    Erica A. Wolff, Sher Tremonte, LLP, of New York, N.Y., argued for Defendant Sean Combs.  With her on the brief was Yonatan Y. Jacobs.

    Lisa A. Linsky, McDermott, Will & Emery LLP, of New York, N.Y., argued for Defendants UMG Recordings Inc. and Universal Music Group, N.V.  With her on the brief were Jessica G. Griffith and Elizabeth A. Rodd.

    Gordon[1], Judge: In this action, Plaintiff Liza Gardner ("Plaintiff") brings claims

against Defendants UMG Recordings, Inc. ("UMGR") and Universal Music Group, N.V.

("UMGNV"), alleging negligent infliction of emotional distress; negligence; vicarious

liability; violation of the New Jersey Child Sexual Abuse Act, N.J. Stat. § 2A:61B-1;

---

[1] The Honorable Leo M. Gordon, Judge of the United States Court of International Trade, sitting by designation.

negligent hiring, training, accreditation, and supervision; failure to detect, investigate, and report sexual abuse; and violation of 18 U.S.C. § 2421, et seq., ("the Mann Act"). See Am. Compl., ECF No. 42. Plaintiff also brings claims against Defendant Sean Combs, alleging battery, assault/sexual assault, negligent infliction of emotional distress, and violation of the Mann Act. Id. These various claims arise out of a series of events alleged by Plaintiff culminating in an alleged sexual assault by Defendants Combs and Hall[2] in New Jersey. See generally id.

Before the court are: (1) Defendants UMGR and UMGNV's joint motion to dismiss Plaintiff's amended complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 51; see also Defs. UMGR and UMGNV Mem. in Supp., ECF No. 52 ("Defs. UMGR and UMGNV's Br."); Defs. UMGR and UMGNV's Reply, ECF No. 68; and (2) Defendant Combs' motion to dismiss Plaintiff's amended complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 53; see also Def Combs' Mem. in Supp., ECF No. 55 ("Def. Combs' Br."); Def. Combs' Reply, ECF No. 69; Pl.'s Joint Mem. in Opp'n to Defendants' Mots. to Dismiss, ECF No. 63 ("Pl.'s Resp."). The court held oral argument. See Oral Arg., ECF No. 78 (Nov. 17, 2025).

---

[2] While Aaron Hall is a named defendant, Plaintiff has been unable to personally serve him. Plaintiff is now moving this Court for the second time for an order permitting service of the summons and amended complaint by publication. Pl.'s Second Mot. for Serv. by Pub'n, ECF No. 94.

For the following reasons, the court grants Defendants' UMGR and UMGNV's motion to dismiss.  The court also grants Defendant Combs' motion to dismiss in part and denies it in part.

## I. Background

Plaintiff's allegations are as follows: in 1990, when Plaintiff was 16 years old, she was invited to New Jersey from North Carolina by members of the music group known as "Jodeci."  Am. Compl. ¶¶ 3, 25–27, 38, 106.  At the time, Jodeci was signed to a record contract with Uptown Records ("Uptown").[3]  Id. ¶ 31.  Plaintiff alleges that Defendant Combs was an Uptown employee, who was responsible for "developing" the music group.  Id. ¶ 32.

Plaintiff asserts that at a time in either late Summer or early Fall 1990, she and a friend attended an event hosted by Music Corporation of America ("MCA"), Inc.[4], at its New York City office and met Defendants Hall and Combs.  Id. ¶¶ 34–35.  Plaintiff further alleges that, despite being underage, the two adolescents were "provided a lot of alcohol," and that they left the event with Defendants Hall and Combs to go to dinner.  Id. ¶¶ 36–37.  Plaintiff claims that throughout the event and after dinner, Defendants Hall and Combs continuously offered them alcoholic drinks and marijuana, and that the

---

[3] Plaintiff alleges that Uptown was a subsidiary of MCA, and that both merged into the current Defendant UMGR, a subsidiary of UMGNV.  Id. ¶ 5.

[4] While the parties do not define MCA, it appears that it is an acronym for "Music Corporation of America."  See Busch, Anita M., A whole new U for MCA, Variety (Dec. 9, 1996),        https://variety.com/1996/scene/vpage/a-whole-new-u-for-mca-1117466464/ (on file with the court).

Defendants were "flirtatious and handsy."  Id. ¶¶ 37–38.  Following dinner, Plaintiff asserts that Defendants Hall and Combs transported her and her friend to Defendant Hall's apartment—that was owned or subsidized by Uptown.  Id. ¶¶ 10, 41.

Once there, Plaintiff alleges that she was offered more alcoholic drinks by Defendants Hall and Combs, became intoxicated, and was forced into having sex with Defendant Combs.  Id. ¶ 47.  Following Defendant Combs' alleged sexual assault, Plaintiff asserts that Defendant Hall entered the room, pinned her down, and forced her to also have sex with him.  Id. ¶ 51.  Following the assaults, Plaintiff claims that she and her friend left Defendant Hall's apartment.  Id. ¶ 54.  According to Plaintiff, the next day, Defendant Combs appeared where Plaintiff and her friend were staying, yelled at Plaintiff, and assaulted and choked her until she lost consciousness.  Id. ¶ 56.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal in actions in which the court does not have personal jurisdiction over a defendant, so as not to "offend traditional notions of fair play and substantial justice."  Daimler AG v. Bauman, 571 U.S. 117, 126 (2014); Ontel Prods. Corp. v. Mindscope Prods., 220 F. Supp. 3d 555, 559 (D.N.J. 2016).  With a Rule 12(b)(2) motion, the central concern is "the relationship among the defendant, the forum [state], and the litigation."  Daimler, 571 U.S. at 126 (citing Shaffer v. Heitner, 433 U.S. 186, 204 (1977)).  The Supreme Court has developed two categories of personal jurisdiction: (1) specific jurisdiction, in which a plaintiff's suit "aris[es] out of or relate[s] to the defendant's contacts with the forum [state]," Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984); and

(2) general jurisdiction, in which a non-resident defendant's "affiliations with the [forum] State are so continuous and systematic as to render [it] essentially at home in [that] State." Daimler, 571 U.S. at 127 (internal citations and quotations omitted).  In addition, the Supreme Court has established that a party may consent to personal jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 n.14 (1985).

As to a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court assumes all factual allegations to be true and draws all reasonable inferences in the plaintiff's favor. Zuber v. Boscov's, 871 F.3d 255, 258 (3d Cir. 2017).  A plaintiff's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).  Therefore, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).  Instead, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Iqbal, 566 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

### III. Discussion

Before the court is Defendants UMGR and UMGNV's joint motion to dismiss and Defendant Combs' motion to dismiss. The court will first address Defendants UMGR and UMGNV's motion before turning to the motion by Defendant Combs.

### A. Jurisdiction over Defendants UMGR and UMGNV

### 1. General Personal Jurisdiction

To exercise general jurisdiction over a corporate defendant that is a resident of the non-forum state, a court must find that the defendant's "affiliations with the [forum] State are so continuous and systematic as to render [it] essentially at home in [that] State." Daimler, 571 U.S. at 127 (internal citations and quotations omitted). Absent an "exceptional case," a corporate defendant is "at home in the forum State" that is its place of incorporation or principal place of business. Id. at 138–39; see also Display Works, LLC v. Bartley, 182 F. Supp. 3d 166, 173 (D.N.J. 2016) (internal citations omitted).

Plaintiff does not allege that Defendants UMGR and UMGNV are incorporated or have their principal places of business in New Jersey. See Am. Compl. ¶¶12–13. ("[UMGR] is a global Music Company headquartered at 2220 Colorado Avenue in Santa Monica, California. . . . [UMGNV] is a Dutch-American multinational music corporation under Dutch law. [UMGNV]'s corporate headquarters are located in Hilversum, Netherlands and its operational headquarters are located in Santa Monica, California.").[5]

---

[5] Importantly, Plaintiff makes no allegation in her amended complaint, nor does she argue in her response to the motion to dismiss that UMGNV, the Netherlands-based parent company of UMGR, is subject to the general jurisdiction of New Jersey.

(footnote continued)

Rather, Plaintiff claims that general jurisdiction exists because UMGR "is registered as a foreign business in the State of New Jersey."  Am. Compl. ¶12.  Plaintiff contends that the court has general jurisdiction over Defendants UMGR because "UMG[R]'s presence and activities in New Jersey" make it "essentially at home."  Pl.'s Resp. at 11.  In support of its argument, Plaintiff maintains that: (1) "[UMGR] is registered to do business in New Jersey"; (2) "[UMGR] has engaged in sustained business operations within New Jersey for decades"; (3) "[UMGR] owns several subsidiaries that are headquartered or operate within New Jersey"; (4) "[UMGR]'s artists and affiliated frequently conduct business within the state"; (5) "[UMGR] [b]enefits [f]inancially from the New Jersey [m]arket"; and (6) "[UMGR]'s long-standing presence and integration into New Jersey's entertainment industry solidify its 'at home' status."  Id. at 11–13.

Despite these arguments, Plaintiff's action does not amount to the type of "exceptional case" in which a corporate defendant's operations, without incorporation or principal place of business in a forum state, "may be so substantial and of such a nature as to render the corporation at home in that State."  Daimler, 571 U.S. at 130 n.8; BNSF Ry. Co. v. Tyrell, 581 U.S. 402, 413 (2017).  The inquiry as to whether a corporate defendant's operations amount to an exceptional case, "calls for an appraisal of a corporation's activities in their entirety; a corporation that operates in many places can

---

See Am. Compl. ¶13; Pl.'s Resp. at 11–13.  Instead, Plaintiff's claim that UMGNV is subject to the jurisdiction of this Court is limited to the allegations that UMGR and UMGNV are liable as successors in interest and that UMGNV's jurisdiction attaches as the parent company to UMGR.  See infra Section 3.  As such, Plaintiff's jurisdiction claims relate solely to UMGR.

scarcely be deemed at home in all of them." BNSF, 581 U.S. at 414. While UMGR has conducted and profited from business operations in New Jersey over a long period of time, that in and of itself does not "render [it] essentially at home." Daimler, 571 U.S. at 127; BNSF, 581 U.S. at 414 (holding that railroad corporation that maintained 2,000 miles of railroad track and employed over 2,000 people in state "is sufficient to subject [it] to specific personal jurisdiction," but is not one such "exceptional case" and "at home" because "in-state business does not suffice to permit assertion of general jurisdiction over claims . . . that are unrelated to any activity occurring in" state). Additionally, the fact that UMGR "owns several subsidiaries that are headquartered or operate within New Jersey," Pl.'s Resp. at 11, is the very argument that the Daimler Court rejected. The Court specifically noted that "subject[ing] foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate [is] an outcome that would sweep beyond even the 'sprawling view of general jurisdiction' we [previously] rejected." 571 U.S. at 136 (citing Goodyear Dunlop Tires Operations S.A. v. Brown, 564 U.S. 915, 929 (2011)). Finally, Plaintiff's argument that general jurisdiction exists because "UMGR is registered to do business in New Jersey," Pl.'s Resp. at 11, is an issue of consent—a separate inquiry discussed below. Display Works, 182 F. Supp. 3d at 179. Accordingly, there is no general jurisdiction as to Defendants UMGR or UMGNV.

## 2. Consent to Personal Jurisdiction

The court next addresses whether Defendant UMGR consented to personal jurisdiction because it "is registered as a foreign business in the State of New Jersey." Am. Compl. ¶12. The court observes that Plaintiff does not allege that Defendant UMGR

consented to personal jurisdiction in the State of New Jersey because of UMGR's registration as a foreign business.  Rather, Plaintiff mistakenly argues that Defendant UMGR's registration as a foreign business is a factor for determining general jurisdiction. Pl.'s Resp. at 11.  Similarly, Defendants UMGR and UMGNV do not address the issue of consent to personal jurisdiction in their motion.  See Defs. UMGR and UMGNV's Br. at 10–16.  However, because the court has an independent obligation to determine whether jurisdiction exists, it will, on its own initiative, determine whether Defendant UMGR's status as a registered foreign business in New Jersey "carries with it consent to be sued" in New Jersey.  Bane v. Netlink, Inc., 925 F.2d 637, 640 (3d Cir. 1991).

Consent to personal jurisdiction, "express or implied . . . by word or deed," Mallory v. Norfolk S. Ry. Co., 600 U.S. 122, 138 (2023), can be evidenced by, "under certain circumstances, a corporation's registration to do business in a state."  Cryopak Inc. v. Freshly LLC, Civ. No. 23-18896, 2024 WL 4986818, at *4 (D.N.J. Dec. 5, 2024).  In the U.S. Court of Appeals for the Third Circuit ("Third Circuit"), little guidance exists on consent-by-registration.  Display Works, 182 F. Supp. 3d at 173.  In Bane, the Third Circuit held that the Pennsylvania business registration statute contained explicit language "that the qualification of a foreign corporation to do business" within the state additionally "carries with it consent to be sued in Pennsylvania courts."  Id.  Therefore, "by registering to do business in a state, a court may find that a corporation consented to personal jurisdiction," but "the answer depends on whether the text of the state's registration statute constitutes express consent to jurisdiction."

Display Works, 182 F. Supp. 3d at 174 (emphasis added) (citing Bane, 925 F.2d 637). The Third Circuit's guidance on consent by registration ends there.

While the Third Circuit has not examined whether the parallel New Jersey business registration statutes, N.J. Stat. Ann. §§ 14:A:1-1, et seq, carry with them consent to be sued in New Jersey, the majority of decisions from this District have followed the holding in Display Works, that "the New Jersey statutory scheme does not permit jurisdiction by consent by virtue of registration to do business here or actually doing business here." 182 F. Supp. 3d at 175; Kim v. Korean Air Lines Co., 513 F. Supp. 3d 462, 469 (D.N.J. 2021); see also Simplot India LLC v. Himalaya Food Int'l Ltd., No 23-1612, 2024 WL 1136791, at *10 (D.N.J. Mar. 15, 2024) (collecting cases holding that New Jersey business registration statutes do not provide consent to personal jurisdiction). These decisions are based on the common reasoning that, unlike the Pennsylvania business registration statute examined in Bane, the New Jersey business registration statutes do not "explicitly provide that registering to conduct business in New Jersey constitutes express consent to general or specific jurisdiction."  Basse v. Bank of Am., Civ. No. 22-3674, 2023 WL 2696627, at *7 (D.N.J. Mar. 29, 2023) (citing Display Works, 182 F. Supp. 3d at 166).  This Court agrees and will follow the rationale of Display Works. Accordingly, it holds that Defendant UMGR did not consent to personal jurisdiction simply because it is registered as a foreign business in the State of New Jersey.

### 3. Specific Personal Jurisdiction

The court turns to the question of specific jurisdiction over Defendants UMGR and UMGNV.  For a court to exercise specific jurisdiction over a non-forum state defendant,

the lawsuit must arise out of or relate to the defendant's contacts with the forum state.

Walden v. Fiore, 571 U.S. 277, 284 (2014).  A plaintiff must establish three things for a

court to possess specific jurisdiction over a non-forum state defendant:

> First, the defendant must have "purposefully directed [its] activities" at the forum. The first prong is a "threshold" inquiry.  "Second, the litigation must 'arise out of or relate to' at least one of those activities."  Third, if the two prior conditions are satisfied, a court may exercise specific personal jurisdiction should it otherwise "comport with 'fair play and substantial justice.'"

CBD & Sons, Ltd. v. Setteducati, No. 3:18-CV-4276-BRM-DEA, 2019 WL 396982, at *6,

D.N.J. Jan. 31, 2019), appeal dismissed sub nom., No. 19-1502, 2019 WL 4160152

(3d Cir. May 28, 2019) (internal citations omitted).

It is undisputed that neither corporate Defendant existed at the time that the

alleged activities took place.  Defs. UMGR and UMGNV's Br. at 12; see generally

Pl.'s Resp.  Even so, Plaintiff's claims relate to the companies in existence at the time of

the alleged incidents: Uptown and MCA, now allegedly part of UMGR and UMGNV.  To

obtain personal jurisdiction over the current corporate Defendants, Plaintiff claims that

UMGR and UMGNV are "successors in interest" to Uptown and MCA.

Am. Compl. ¶¶ 5, 6.

To determine whether personal jurisdiction over a successor corporation exists,

"courts apply the same test used for successor liability."  Ortho-Clinical Diagnostics, Inc.

v. Physicians Stat Lab, Inc., No. 21-2530, 2021 WL 4284581, at *2 (D.N.J. Sep. 21, 2021).

"The general rule of corporate-successor liability is that when a company sells its assets

to another company, the purchaser is not liable for the debts and liabilities of the seller

simply because it has succeeded to the ownership of the assets of the seller."  Oticon,

Inc. v. Sebotek Hearing Sys., LLC, 865 F. Supp. 2d 501, 514 (D.N.J. 2011); see also Glynwed, Inc. v. Plastimatic, Inc., 869 F. Supp. 265, 271 (D.N.J. 1994) ("It is well settled that 'where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the debts and liabilities of the transferor.' Fletcher Cyc. Corp. § 7122 (Perm.Ed.1990)").

There are exceptions to the general rule, and the Third Circuit has recognized that "the jurisdictional contacts of a predecessor corporation may be imputed to its successor corporation without offending due process." In re Nazi Era Cases Against German Defendants Litigation, 153 Fed. App. 819, 825 (3d Cir. 2005) (emphasis added). Thus for personal jurisdiction to exist over a successor corporation, a plaintiff must sufficiently plead that: "(1) the successor expressly or impliedly assumes the predecessor's liabilities; (2) there is actual or de facto consolidation or merger of the seller and the purchaser; (3) the purchaser is a mere continuation of the seller; or (4) the transaction is entered into fraudulently to escape liability." Id.

The first exception—that "the successor expressly or impliedly assumes the predecessor's liabilities"—is "usually straightforward in application" and looks to the terms of the agreement between the predecessor and successor. Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 464 (3d Cir. 2006). Here, Plaintiff does not allege that there was an agreement between Uptown, MCA, and UMGR, let alone assert any facts as to the terms of any such agreement.[6] See generally Am. Compl. Similarly, Plaintiff does

---

[6] Plaintiff fails to make any such allegations at to UMGNV. See supra footnote 5.

not plead any facts as to the fourth exception, that Uptown and MCA merged into UMGR

fraudulently to escape liability.  Id.  Accordingly, the court will focus on the "second and

third grounds—de facto merger and continuation—which 'are genuinely treated

identically.'"  Ortho-Clinical Diagnostics, 2021 WL 4284581, at *2 (citing Berg Chilling

Sys., 435 F.3d at 564–65).

> In determining merger and continuation, courts consider four factors:
>
> (1) "continuity of management, personnel, physical location, assets, and general business operations"; (2) "a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible"; (3) "assumption ... of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor"; and (4) "continuity of ownership/shareholders." Glynwed, Inc. v. Plastimatic, Inc., 869 F. Supp. 265, 275–76 (D.N.J. 1994).

Ortho-Clinical Diagnostics, 2021 WL 4284581, at *2.

Even liberally construed, the amended complaint does not sufficiently plead facts

that meets the four-factor test for successor liability.  While Plaintiff makes the conclusory

allegations that Uptown and MCA "merged into [UMGR], which is a subsidiary

of [UMGNV]," and that UMGR and UMGV are "successors in interest"

to Uptown and MCA," Am. Compl. ¶¶ 4, 5, she does not allege any required facts

regarding the management, dissolution, continuation, or ownership of Uptown, MCA,

UMGR, or UMGNV.  Without a demonstration that Defendants UMGR or UMGNV are

successors-in-interest to MCA and Uptown, the court cannot conclude that it has specific

jurisdiction over Defendants UMGR or UMGNV.

Because personal jurisdiction has not attached to Defendants UMGR or UMGNV, their joint motion to dismiss is granted.[7]

## B. Jurisdiction Over Defendant Combs

## 1. General Personal Jurisdiction

Plaintiff maintains that Defendant Combs is subject to the general jurisdiction of this Court because his "significant business operations in New Jersey," "New Jersey-based resources," and "long-standing industry relations within New Jersey" amount to "affiliations with [New Jersey] that are so continuous and systematic that he is essentially at home." Pl.'s Resp. at 46 (citing Daimler, 571 U.S. at 137). Plaintiff's jurisdictional theory is flawed for two reasons. First, Plaintiff misconstrues Daimler, and second, conflates the general jurisdiction analysis for an individual with that of a corporation. See 571 U.S. at 137 (emphasis added).

As a general principle, an individual, such as Defendant Combs, is subject to the general jurisdiction of the forum state where he is domiciled. Id. Despite Plaintiff's claims, Defendant Combs' alleged activities in New Jersey are irrelevant for the purpose of general jurisdiction. Because Plaintiff alleges in her amended complaint that Defendant Combs "was at all relevant times a resident and domiciled in the

---

[7] Because the court grants Defendants UMGR and UMGNV's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the court does not need to reach their Rule 12(b)(6) motion to dismiss.

State of New York," Am. Compl. ¶ 8, Defendant Combs is not subject to the general jurisdiction of this Court.[8]

## 2. Specific Personal Jurisdiction

Having addressed that there is no general jurisdiction over Defendant Combs, the court must determine whether it has specific jurisdiction. Specific jurisdiction over a non-forum state defendant, who has not consented to suit[9], exists if he "'purposefully directed' his activities at residents of the forum [state] and the litigation resulted from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp., 471 U.S. at 472 (internal citations omitted); see also Ataman v. Parris, Civ. No. 23-20994, 2024 WL 4289577, at *3 (D.N.J. Sept. 25, 2024). Additionally, "New Jersey allows for 'the exercise of personal jurisdiction over a nonresident defendant who commit[s] a single tortious act, whether negligent or intentional, within New Jersey." Id. at *4 (quoting Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 147 (3d Cir. 1992)); see Carteret, 954 F.2d at 148.

In this action, Plaintiff claims that specific jurisdiction over Defendant Combs exists because the tortious actions giving rise to Plaintiff's causes of action took place in New Jersey. See Am. Compl. Interestingly, Defendant Combs does not dispute that Plaintiff's allegations—if taken as true—provide the court with personal jurisdiction.

---

[8] Plaintiff similarly alleges in her amended complaint, and argued at oral argument, that for purposes of general personal jurisdiction, it is the predicate act that gives rise. Am. Compl. ¶ 8; Oral Arg. Tr. At 45:24–46:2.

[9] Plaintiff does not allege, nor does the court find, on its own initiative, that Defendant Combs consented to jurisdiction.

However, Defendant Combs claims that: (1) "[a]lthough typically a court must accept a plaintiff's allegations as true on a motion to dismiss, a court should not do so where, as here, material facts alleged in an amended pleading directly contradict those made repeatedly in prior pleadings"; and therefore (2) "[o]nce the court discredits Plaintiff's . . . allegation that she and [Defendant] Combs were in New Jersey . . . Plaintiff cannot satisfy the requirements of personal jurisdiction." Def. Combs' Br. at 13, 19. In support of his argument, Defendant Combs asks the court to not credit Plaintiff's allegations as true, citing that "[n]umerous courts, including the Middle District of Pennsylvania, the Federal Circuit Court, and [some] within the Second Circuit[,] have addressed this precise issue and held that a court need not unequivocally credit allegations in an amended pleading under circumstances akin to those involved here." Id. at 13. In particular, Defendant Combs seeks to have the court set aside two binding principles: (1) that the court must accept Plaintiff's allegations as true, and (2) that jurisdiction follows only from the amended complaint.

First, Defendant Combs asks the court to set aside the Third Circuit's repeated holding in deciding a motion under Rule 12(b)(2). This court will not do. Even though a plaintiff bears the burden of establishing a prima facie case of the court's personal jurisdiction, the court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Laurel Gardens, LLC v. Mckenna, 948 F.3d 105, 113 n.1 (3d Cir. 2020).

Second, Defendant Combs asks that the court disregard the Supreme Court's rule that "[t]he plaintiff is the master of the complaint." Royal Canin U.S.A., Inc. v.

Wullschleger, 604 U.S. 22, 36 (2025).  In Royal Canin, the Supreme Court held that, when

a plaintiff amends her complaint to eliminate federal claims after removal to federal court,

the federal court loses supplemental jurisdiction over state-law claims.  604 U.S. 22.

In reaching its conclusion, the Supreme Court relied on the "the usual procedural

principle" that "jurisdiction follows from (and only from) the operative pleading."  Id. at 35

(emphasis added).   More specifically, the Supreme Court explained:

> Begin from the beginning: The plaintiff is "the master of the complaint," and
> therefore controls much about her suit. . . . And the plaintiff's control over
> those matters extends beyond the time her first complaint is filed.  If a
> plaintiff amends her complaint, the new pleading "supersedes" the old one:
> The "original pleading no longer performs any function in the case."  Or as
> we put the matter over a century ago: "When a petition is amended," the
> "cause proceeds on the amended petition."   So changes in parties, or
> changes in claims, effectively remake the suit.   And that includes its
> jurisdictional basis: The reconfiguration accomplished by an amendment
> may bring the suit either newly within or newly outside a federal court's
> jurisdiction.

Id. at 35–36 (internal citations omitted) (emphasis added).

Because the Supreme Court, in part, based its holding on "a bevy of rules hinging

federal jurisdiction on the allegations made in the amended complaint" and

"Congress's usual view of how amended pleadings can . . . wipe the jurisdictional slate

clean," id. at 29, 34, it is no surprise that its holding has since been applied broadly.

The Third Circuit has applied Royal Canin to hold that district courts cannot look to an

original complaint to "help fill the factual void in [an] amended complaint" because "'[i]f a

plaintiff amends his complaint, the new pleading supersedes the old one:

The original pleading no longer performs any function in the case.'"  March v. Dep't

of Def., No. 25-1650, 2025 WL 2417754, at *2 (3d Cir. Aug. 21, 2025) (emphasis added).

Since the court will solely examine Plaintiff's amended complaint, it accepts the allegations that the predicate act with Defendant Combs took place in New Jersey. Accordingly, it has personal jurisdiction and denies his Rule 12(b)(2) motion to dismiss.

### C. Failure to State a Claim Upon Which Relief Can be Granted

The court will now consider Defendant Combs' motion to dismiss for failure to state a claim under Rule 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. In deciding a motion to dismiss for failure to state a claim, the court must "accept all factual allegations as true and construe the complaint in the light most favorable to the Plaintiff." Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

Defendant Combs argues that the court should dismiss Plaintiff's amended complaint for two reasons.  First, Defendant Combs argues that Plaintiff's causes of action for negligent infliction of emotional distress ("NIED") and violation of the Mann Act fail to state a claim upon which the court can grant relief. Second, Defendant Combs argues that the court should dismiss Plaintiff's amended complaint for Plaintiff's claims of battery, assault/sexual assault, and NIED because they are time-barred.  The court addresses each argument in turn.

Court No. 2:24-cv-24-07729                                                    Page 19

### 1. Failure to State a Claim for NIED

Defendant Combs argues that Plaintiff's claim of NIED must be dismissed because the amended complaint "does not allege that [Defendant] Combs' conduct was negligent." Def. Combs' Br. at 39. In response, Plaintiff maintains that she "has alleged severe emotional distress resulting from the trauma inflicted by Defendant's conduct." Pl.'s Resp. at 73.

To state a claim for NIED in New Jersey[10], a plaintiff must plead that: "(1) a duty of reasonable care was owed by the defendant to the plaintiff, (2) that duty was breached, (3) the plaintiff suffered severe emotional distress, and (4) the breach was a proximate cause of injury." Doe v. Hosbach, Civ. No. 24-4756, 2025 WL 2444239, at *6 (citing G.D. v. Kenny, 984 A.2d 921, 933 (N.J. Super. Ct. App. Div. 2009), aff'd, 15 A.3d 300 (2011)). Plaintiff's NIED claim fails the first requirement because she does not allege in the amended complaint that Defendant Combs owed a duty of care. See Am. Compl. ¶¶ 126–138 (alleging that duty of care was owed by Defendants UMGR and UMGNV, and a previous Defendant who is no longer party to this action). Accordingly, the court grants Defendant's motion to dismiss Plaintiff's NIED claim.[11]

---

[10] There are two ways that a plaintiff can plead a claim of NIED. See Jablonowska v. Suther, 948 A.2d 610, 617–18 (2008). The court does not address one of the two ways, which involves that Plaintiff "witnessed a serious bodily injury or death of a space or intimate familial relationship," id., because it is not alleged, disputed, or applicable.

[11] Because the court grants Defendant Combs' Rule 12(b)(6) motion to dismiss Plaintiff's NIED claim, the court does not address whether the NIED claim is otherwise time-barred.

## 2. Failure to State a Claim for Mann Act Violation

Defendant Combs similarly argues that the court must dismiss Plaintiff's claim for violation of the Mann Act under 18 U.S.C. § 2421, et seq., because there is no "private right of action for the Mann Act."  Def. Combs.' Mot. at 21.  In her response brief, Plaintiff argues—for the first time—that her Mann Act claim is actionable under the Child Abuse Victims' Rights Act ("CAVRA"), 18 U.S.C. § 2255.[12]

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A Rule 12(b)(6) motion then "tests the sufficiency of the pleading requirements of Rule 8(a)."  Siwulec v. J.M. Adjustment Servs., 465 Fed. Appx. 200, 202 (3d Cir. 2012).  Because the purpose of Rule 8 is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Twomby, 550 U.S. at 555 (2007), "[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."  Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) (internal quotation and citation omitted).

As Defendant correctly argues, Plaintiff only pleads violation of the Mann Act in her amended complaint and not CAVRA.  See Am. Compl.  The court notes that the Mann Act statutes "are criminal statutes and do not give rise to any private right of action" in and of themselves.  Jordan v. Cicchi, Civ. No. 08-6088, 2010 WL 848809, at *12 (D.N.J. Mar. 9, 2010), aff'd in part, vacated in part on other grounds, 428 Fed. Appx. 195

---

[12] CAVRA provides a private right of action for alleged victims of certain sexual misconduct who were minors at the time of the misconduct.  See 18 U.S.C. § 2255.

Court No. 2:24-cv-24-07729                                                      Page 21

(3d Cir. 2011).   Unfortunately for Plaintiff, her argument that her Mann Act claim is

actionable under CAVRA is an impermissible attempt to amend her complaint by brief.

Importantly, Plaintiff's counsel acknowledged at oral argument that the court cannot

consider claims alleged outside of the pleadings:

> The court: I think the law is pretty clear that I cannot take cognizance of
> additional information or allegations, representations made in a responding
> brief to a motion to dismiss.  I am confined to the four corners of the
> complaint, in this instance an amended complaint, and any attachments
> thereto.  That's the length and breadth of what I can look at right?
> . . .
> Plaintiff's counsel: You know, I guess I wouldn't bother going through the
> remainder of my arguments here, because again, a lot of this stuff is stuff
> that I learned and discovered after the second amended complaint was
> filed.  And these are arguments that I made in my opposition brief.  So I
> don't want to again waste the court's time because the court just made very
> clear that Your Honor cannot consider things that are not written in the
> actual second amended complaint.

Oral Arg. Tr. at 108:2–8, 109:8–17.

Consequently, Plaintiff has not stated a claim upon which relief can be granted.[13]

The court grants Defendant Combs' motion to dismiss Plaintiff's tenth cause of action,

violation of the Mann Act.

---

[13] To support her Mann Act claim, Plaintiff alleges that "Defendants have violated 22 U.S. Code § 7101, et seq., that provides for criminal penalties for violations of the Statute as well as civil cause of action."  Compl. ¶ 205.  This similarly does not provide an avenue for civil action for a Mann Act violation because 22 U.S.C. § 7101, et seq., is a different Act that requires a separate cause of action with supporting allegations.

Court No. 2:24-cv-24-07729                                                      Page 22

### 3. Timeliness as to Battery and Assault

Lastly, the court turns to Plaintiff's remaining two causes of action against Defendant Combs: battery and assault.  In 2019, the New Jersey Legislature amended the Child Sexual Abuse Act ("CSAA") to permit plaintiffs to bring sexual assault claims as an adult, that would otherwise be time-barred, if the predicate act took place while the plaintiff was a minor.  See N.J. Stat. Ann. § 2A:14-2a.  This change in the law extended the statute of limitations for any "injury resulting from the commission of sexual assault, any other crime of sexual nature, a prohibited sexual act . . ., or sexual abuse" against a minor, id., so that "'regardless of when the cause of action accrued, i.e., when it was reasonably discoverable that the sexual abuse of a child caused injuries, a complaint is timely if filed before the plaintiff reaches fifty-five years of age.'"  Hosbach, 2025 WL 2444239, at *2 (quoting W.S. v. Hildreth, 268 A.3d 1038, 1043 (N.J. Super. Ct. App. Div. 2021), aff'd, 287 A.3d 421 (2023)).

Defendant Combs argues that Plaintiff's tort claims "should be dismissed because these decades-old claims are time-barred" because "the CSAA Amendment violates [Defendant] Combs' Due Process rights."  Def. Combs' Br. at 34.  When dealing with an issue of the statute of limitations at the motion to dismiss stage, the Third Circuit has held that "the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in the motion to dismiss."  Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (citing Robinson v. Johnson, 313 F.3d 128, 134–35 (3d Cir. 2002)).  An exception exists,

> only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  However, "if the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)."

Id. (internal citations omitted).

The amended complaint alleges that Plaintiff was 16 years old at the time that she was sexually assaulted in 1990.  Am. Compl. ¶¶ 3, 25.  This most likely puts her date of birth in 1974.  Fifty-five years after 1974—the tolling window under the CSAA Amendment—is 2029.  Since the time-bar is "not apparent on the face of the [amended] complaint," id., the aforementioned exception does not apply.[14]

---

[14] Defendant Combs ends his argument with "and insofar as [Plaintiff's] claims for assault, battery, and NIED relate to allegations that Mr. Combs choked her, they are not covered by the recent amendment because choking does not constitute sexual misconduct." Def. Combs' Br. at 34.  Defendant Combs does not provide any further citations or argument as to why the alleged choking does not constitute "sexual assault, any other crime of a sexual nature, a prohibited sexual act . . . or sexual abuse." N.J.S.A. 2A:14-2(a)(1).  Therefore, the court also denies Plaintiff's motion to dismiss Plaintiff's claims on this basis.

Court No. 2:24-cv-24-07729                                                          Page 24

### IV. Conclusion

For the reasons set forth above, the court will grant Defendants UMGR and UMGNV's motion to dismiss.  It will deny Defendant Combs' motion to dismiss for lack of personal jurisdiction but will grant his motion to dismiss for failure to state a claim as to Plaintiff's tenth cause of action, violation of the Mann act, and third cause of action, NIED. Lastly, the court will deny Defendant Combs' motion to dismiss Plaintiff's first two causes of action, battery and assault.



/s/ Leo M. Gordon
Leo M. Gordon, Judge
U.S. Court of International Trade
(sitting by designation in the District of New Jersey)



Dated: January 14, 2026
          Newark, New Jersey